IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (DSD/FLN) |
| vs. | : | |
| AVERY DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,897,930**

Pursuant to Fed. R. Civ. P. 56(a), defendant Avery Dennison Corporation ("Avery") moves the Court for summary judgment on the ground that Avery, as a matter of law, does not infringe any claim of 3M's U.S. Patent No. 5,897, 930 ("the '930 patent"), literally or under the doctrine of equivalents.

**EXHIBIT A**

# TABLE OF CONTENTS

**(Page)**

I. INTRODUCTION ........ 1

II. SUMMARY OF ARGUMENT ........ 2

A. A Single Determination Based on This Court's Prior Ruling Will Establish No Literal Infringement ........ 2

B. Two Additional Grounds Preclude Literal Infringement as a Matter of Law ........ 2

C. There is No Equivalents Infringement as a Matter of Law ........ 3

III. THE CLAIMED INVENTION OF THE '930 PATENT ........ 4

IV. AVERY'S EZ FILM LINER ........ 5

V. THE STANDARD FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT ........ 8

A. Summary Judgment Standard ........ 8

B. The Two-Step Infringement Analysis ........ 9

VI. AVERY'S EZ FILM LINER DOES NOT LITERALLY INFRINGE THE '930 PATENT BASED ON THIS COURT'S PRIOR CLAIM CONSTRUCTION OF THE WORD "EMBOSSED" ........ 9

VII. AVERY'S EZ FILM LINER DOES NOT LITERALLY INFRINGE THE '930 PATENT BECAUSE A LINER WITH EMBEDDED INK DOTS CANNOT CONSTITUTE A LINER WITH A "FIRST EMBOSSED PATTERN FORM[ING] AN ARRAY OF DEPRESSIONS" ........ 12

VIII. AVERY'S EZ FILM LINER DOES NOT LITERALLY INFRINGE THE '930 PATENT BECAUSE IT IS NOT SEQUENTIALLY EMBOSSED ........ 14

IX. AVERY DOES NOT INFRINGE THE '930 PATENT UNDER THE DOCTRINE OF EQUIVALENTS ........ 16

A. The Simultaneously Single Embossed/Embedded Feature Avery EZ Film is, as a Matter of Law, More Than Insubstantially Different From the Double, Sequential Embossments Specified in Each Claim ........ 17

**TABLE OF CONTENTS (cont'd)**

**(Page)**

B. There is No Equivalents Infringement as a Matter of Law Because 3M's Theory of Equivalence Would Entirely Vitiate the "Multiple, Sequentially Embossed Patterns" and "First Embossed Pattern" Elements of the Claims ........ 18

C. There is No Equivalents Infringement as a Matter of Law Because 3M Expressly Disclaimed Single Step Embossing from the Scope of its Patent Claims ........ 19

D. Even Assuming That 3M Disclosed Single Step Embossing of the Patterns in the Specification, Because 3M Did Not Claim Coverage for Such, 3M is Precluded, as a Matter of Law, from Asserting Equivalents ........ 20

E. There is No Equivalents Infringement Because the Ink Printing and Simultaneously Embedding/Embossing Features of Avery's EZ Film Does Not Perform Substantially The Same Function, in Substantially the Same Way to Achieve Substantially the Same Result as the "Multiple, Sequential Embossment" and "First Embossed Pattern" Elements in the '930 Patent ........ 21

X. CONCLUSION ........ 22

# TABLE OF AUTHORITIES

**(Page)**

**Cases**

3M Innovative Properties Co. v. Avery Dennison Corp.,
185 F. Supp. 2d 1031 (D. Minn. 2002) .......... 1

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) .......... 9

Bell Atlantic v. Covad Communs. Group, Inc.,
262 F.3d 1258 (Fed. Cir. 2001) .......... 11

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) .......... 9

Desper Prods., Inc. v. Qsound Labs, Inc.,
157 F.3d 1325 (Fed. Cir. 1998) .......... 9, 10

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,
535 U.S. __ (2002) .......... 17

Hormone Research Foundation, Inc. v. Genetech, Inc.
904 F.2d 1558 (Fed. Cir. 1990) .......... 15

Intellicall, Inc. v. Phonometrics, Inc.,
952 F.3d 1384 (Fed. Cir. 1992) .......... 9

Johnson & Johnson Associates, Inc. v. R.E. Service Co.,
285 F. 3d 1046 (Fed. Cir. 2002) .......... 22

Johnson Worldwide Associates, Inc. v. Zebco Corp.,
175 F. 3d 985 (Fed. Cir. 1999) .......... 13

K-2 Corp. v. Salomon S.A.,
191 F.3d 1356 (Fed. Cir. 1999) .......... 20

London v. Carson Pirie Scott & Co.,
946 F.2d 1534 (Fed. Cir. 1991) .......... 18

Moore U.S.A., Inc. v. Standard Register Co.,
229 F.3d 1091 (Fed. Cir. 2000) .......... 18

Pennwalt Corp. v. Durand-Wayland, Inc.,
833 F. 2d 931 (Fed. Cir. 1987) .......... 10

SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.
242 F. 3d 1337 (Fed. Cir. 2001) .......... 19

## TABLE OF AUTHORITIES (cont'd)

(Page)

Solomon v. Kimberly-Clark Corporation,
216 F. 3d 1372 (Fed. Cir. 2000) ........ 14

Southwall Technologies, Inc. v. Cardinal IG Co.,
54 F.3d 1570 (Fed. Cir. 1995) ........ 9, 10

Townsend Engineering Co. v. HiTec Co.,
829 F.2d 1086 (Fed. Cir. 1987) ........ 8

Unidynamics Corp. v. Automatic Products, Int'l,
157 F.3d 1311 (Fed. Cir. 1998) ........ 15

Wahpeton Canvas Co., Inc. v. Frontier, Inc.,
870 F.2d 1546 (Fed. Cir. 1989) ........ 11

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
520 U.S. 17, 117 S.Ct. 1040 (1997) ........ 17, 18, 19, 22

Wooster Brush Co. v. Newell Operating Co.,
46 F. Supp. 2d 713 (N.D. Ohio 1999) ........ 20

# I. INTRODUCTION

3M should have voluntarily dismissed this case last February after this Court denied 3M's preliminary injunction motion, construed the claim term "embossed," and explained why Avery's accused EZ Series Fleet Marking Films ("EZ Film liner") did not infringe the broadest, independent claim of 3M's patent. 3M Innovative Properties Co. v. Avery Dennison Corp., 185 F. Supp. 2d 1031, 1041 (D. Minn. 2002) ("Order"). Specifically, this Court found that Avery's EZ liner, made with a single embossing roll that simultaneously embosses a single hexagonal pattern and embeds pre-printed ink dots into the liner, fell outside 3M's claimed multiple, sequentially embossed web. Id. Based on this ground of non-infringement, the Court found it unnecessary to address whether embedded ink dots constitute an "embossed pattern of depressions." Id. at 1041, n. 5.

Despite the Court's non-infringement holding, 3M has prolonged this case by fabricating new infringement positions to fit the Court's claim construction that are contrary to common sense and contrary to the common or technical usage of the English language. First, to satisfy the Court's construction of "embossed," Order, at 1040, 3M takes the remarkable position that a printed ink dot is itself an "embossing tool" and that Avery's embedding of ink dots creates "a first embossed pattern . . . of depressions." Second, to satisfy this Court's requirement that there be a "multiple embossed pattern with a second embossed pattern *following* a first embossed pattern," Id. at 1041, 3M concocts two arguments: (1) Avery "partially pre-embeds" the ink before the EZ Film liner reaches the single embossing roll, and (2) from the perspective of the leading edge of the Avery liner entering the embossing roll, the single embossing roll actually embeds an ink dot before that same roll embosses a hexagon into the liner. 3M's arguments—the "partially pre-embedded" and "leading edge" arguments—are neither intellectually honest nor legally meritorious; they raise no genuine issue of material fact to defeat summary judgment of non-infringement.

## II. SUMMARY OF ARGUMENT

### A. A Single Determination Based on This Court's Prior Ruling Will Establish No Literal Infringement

***Embedding ink dots into a liner surface is not embossing.*** 3M's characterization of ink dots as an "embossing tool" is nonsense—it finds no support in any technical literature, common understanding, or in the '930 patent specification. Moreover, an ink dot cannot be an "embossing tool" as the word "embossed" is used in the '930 patent. This Court has construed the term "embossed" to mean "a topography created on material by impressing a corresponding inverse topography on its surface." Order at 1040. Consistent with the Court's construction, the only way an embossed topography can be created on a material's ***surface*** is by impressing a tool into a surface and then removing it to reveal an impression having the inverse of the embossing tool's topography. Yet, it is undisputed that Avery's hardened ink dots are softened, and then impressed flush into the liner so that no "topography" is created on the ***surface***. It is also undisputed that these ink dots are not removed before the single embossing roll impresses the inverse topography of its single hexagonal pattern on the surface of the liner.

3M's attempt to create factual arguments—which are frivolous and demonstrably false—that Avery embeds ink and embosses its liner in sequential steps, not simultaneously, is legally irrelevant. No embossment of the Avery EZ liner occurs as a matter of law other than the single embossment of the hexagonal pattern. Determining that embedding ink dots into a liner surface is not embossing alone mandates summary judgment of non-infringement.

### B. Two Additional Grounds Preclude Literal Infringement as a Matter of Law

***Avery's embedded ink dots cannot constitute a "first embossed pattern form[ing] an array of depressions."*** Each claim requires a first embossed pattern of "***depressions***." Avery's EZ liner lacks this element as well. Aside from the inherent differences between embedding and embossing, any embedded ink in Avery's liner does not form "depressions"—*i.e.*, an open or

hollow area below the liner surface. In the same way that an embossing tool, once impressed on a surface, must be removed to reveal an inverse topography of the tool, the tool must be removed to leave a "depression." Embedding ink dots into a liner does not form a "depression." As with any substance that is "embedded" in another, Avery's ink dots are impressed into the liner, displacing one material with another to create a composite, not a depression.

***Avery's liner lacks sequentially embossed patterns because the patent claims require that the first embossed pattern of depressions exist (i.e., be completed) before the second pattern of depressions are embossed on the liner.*** Avery's manufacturing process does not "partially" embed the ink dots before the liner reaches the single embossing roll. Even if it did, "partial embedding" could not satisfy the requirement of creating a "first embossed pattern form[ing] an array of depressions" prior to creating a second embossed pattern, because the patent claims require completion of a first embossed pattern followed by a second embossed pattern. Thus, even if 3M's "partial embedding" theory had any factual support, which it does not, the theory proves nothing; Avery's simultaneous completion of embedding ink dots and embossing a hexagonal pattern cannot infringe as a matter of law. The requirement in the '930 patent that a first pattern be embossed ***before*** a second pattern similarly renders legally irrelevant 3M's other factual contention that, at the point of the leading edge of the liner as it passes into the embossing roll, ink dots are embedded before a hexagon is embossed. What matters is that the embedding and embossing are indisputably completed simultaneously, not sequentially as the patent claims require.

### C. There is No Equivalents Infringement as a Matter of Law

In this case, infringement cannot exist under the doctrine of equivalents. All of the claims in the '930 patent require two, sequentially embossed patterns. Avery uses a "single embossing roller only once." Order at 1041 (emphasis added). Infringement under the doctrine

of equivalents is legally impossible where a claim element is entirely missing from the accused product and process.

## III. THE CLAIMED INVENTION OF THE '930 PATENT

This Court's Order denying a preliminary injunction provides a concise statement of the background and technology relevant to the '930 patent. Order at 1035-36. These facts are undisputed.

The '930 patent describes graphic film liners that have two embossed patterns of depressions. The embossed patterns are made in a sequential process, one after the other. Figure 1 is a cross-section illustration of the depressions (14) made on a web by the first embossment:




FIG. 1

After the first embossing step, a material such as glass beads is placed into the embossed depressions. Then the carrier web is embossed a second time with a different tool that makes a larger, interconnected pattern. ('930 patent, col. 4, ln. 61-col. 5, ln. 12; col. 6, ln. 64-col. 7, ln. 3). This interconnected pattern forms "lands" (the depressed area of the web) and "ridges" on the web surface. Figure 2 of the '930 patent is a cross section illustration of the web with the two sequentially embossed patterns:




FIG. 2

Figure 3 of the '930 patent (shown below) is a photograph of the surface of a web with the two sequentially embossed patterns:




FIG.3

## IV. AVERY'S EZ FILM LINER

In the mid-1990s, Avery began developing its own "easy application" graphic film with positionability and air egress features. Declaration of Mike Hannington ("Hannington Dec."), ¶ 3. Early in the development, Avery began exploring methods of printing polyurethane ("PU") ink on a polyethylene ("PE") liner and embossing patterns in the PE liner to provide positionability and air egress. Id., ¶ 4. Before commercializing its EZ liner product, Avery learned about 3M's '930 patent and the two separate, embossed patterns claimed in that patent.

Accordingly, Avery knew that it could not—and did not—use two, sequentially embossed patterns on the liner for its EZ Film. Id., ¶ 5. Instead, respecting 3M's patent claims and using its own ink embedding/single embossment method, Avery developed a liner that contains only one embossed pattern with embedded PU ink dots. Id.

The Court's prior Order describes Avery's manufacturing process. Order at 1036. First, at the Trinity printing plant, Avery deposits raised liquid PU "ink dots on the surface of a liner in a process known as 'flexographic printing.'" (Declaration of Anthony McHugh ("McHugh" Dec."), ¶ 7). The raised liquid "ink dots are then hardened on the liner through UV curing" process. Id. At this stage, the PU ink drops simply rest on the liner surface. As demonstrated below in both the illustration and in the magnified photograph, no two PU ink dots have exactly the same geometric shape:




**Cross-section illustration of the EZ Liner with hardened ink dots before embedding**




**Magnified photograph of the EZ Film liner after ink dot deposit step but before embedding**

Next, at the Omnova embossing facility, the EZ liner (with the hardened ink dots resting atop the liner's surface) is subjected to a ***single*** embossing step using a single embossing roll that impresses "a hexagonal pattern into the liner surface," and that simultaneously "embeds the hardened ink dots into the liner surface." Order at 1036, 1041. Significantly, the embossing tool

(or roll) used in this single step has only one topography on its surface—the hexagonal pattern. Id.

During the Avery EZ liner manufacturing process at Omnova, the printed liner first passes over a number of guide rolls and heating elements prior to reaching the embossing roll. The travel path for the liner at Omnova is illustrated below (McHugh Dec., ¶ 9):




To emboss the PE liner and embed the PU ink into the liner, the PU ink must be considerably softened and the PE layer of the liner must be nearly liquefied to a molten state. Id., ¶ 12. Accordingly, the liner travels over the heat drum, and past a Teflon roll and IR (infrared) heaters to provide the necessary heating for softening the PU ink dots and the PE liner. After the heat drum, a "squeegee roll" guides the liner around to the bed roll, the surface of which presses against the embossing roll at a pressure of approximately 600 psi. At the contact area or "nip" formed between the bed roll and the embossing roll, two events occur simultaneously: the inverse of the hexagonal pattern on the embossing roll is impressed into and then removed from the PE layer of the liner (thus "embossing" the liner with a hexagonal pattern), and the softened PU ink material is pressed into the softened liner and displaces the PE material in the liner, forming a composite polymer liner material with a flush surface. Id., ¶¶ 12-16. Next, the liner composite is cooled by passing through chill rolls that lock in place the embossed hexagonal pattern and embedded PU material. Thus, once cooled, the upper layer of the liner is no longer a

homogeneous PE material, but rather a PE/PU composite with irregularly-shaped PU material interspersed in the PE material (Id., ¶ 16):




**Magnified photograph of the EZ liner after embossing (before adhesive application)**

Because the PU ink is softened before embedding and deformed during embedding at the embossing "nip," it does not retain its original shape when pressed and mixed into the PE liner.




**(Printed Ink Dots)**




**(Embedded Ink Dots)**

Thus, the shape of the PU ink material within the PE/PU composite liner is not the shape or "inverse topography" of the PU ink as it previously sat atop the liner surface. Id., ¶¶ 17-18.

## V. THE STANDARD FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT

### A. Summary Judgment Standard

"[S]ummary judgment is as a appropriate in a patent case as in any other where no genuine issue of material fact is present and the movant is entitled to judgment as a matter of law." Townsend Engineering Co. v. HiTec Co., 829 F.2d 1086, 1089 (Fed. Cir. 1987) (affirming summary judgment of non-infringement). Avery, as the moving party, bears the initial burden of

demonstrating the absence of any genuine issue of material fact. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Once Avery makes a showing that there is no genuine issue of material fact, 3M has the burden of coming forward with evidence showing that there is a triable issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Entry of summary judgment is mandated "against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof of infringement at trial." Id. at 322. Because 3M bears the burden of proving infringement at trial, Avery "may discharge its burden by showing the district court that there is an absence of evidence to support the non-moving party's [3M's] case." Intellicall, Inc. v. Phonometrics, Inc., 952 F.3d 1384, 1389 (Fed. Cir. 1992).

**B. The Two-Step Infringement Analysis**

The determination of infringement, either literal or under the doctrine of equivalents, involves two steps. Desper Prods., Inc. v. Qsound Labs, Inc., 157 F.3d 1325, 1332 (Fed. Cir. 1998). First, the disputed terms or language of the asserted patent claim are construed to determine the claim's meaning and scope. The Court has already performed this step for most claim terms. Next, the properly construed claim is compared to the accused product or process to determine whether each and every limitation of the asserted claim is found in the accused product (or process). Southwall Technologies, Inc. v. Cardinal IG Co., 54 F.3d 1570, 1575 (Fed. Cir. 1995).

## VI. AVERY'S EZ FILM LINER DOES NOT LITERALLY INFRINGE THE '930 PATENT BASED ON THIS COURT'S PRIOR CLAIM CONSTRUCTION OF THE WORD "EMBOSSED"

"To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly." Southwall, 54 F. 3d at 1575. Under the "all limitations" rule, infringement may not be found unless 3M proves that ***each and every limitation*** of a claim in its '930 patent is met by Avery's EZ Film. See Pennwalt Corp. v. Durand-Wayland, Inc., 833 F. 2d 931, 934-36 (Fed. Cir. 1987) (*en banc*), cert. denied, 485 U.S. 961 (1988). Where, as here, there is no evidence that each limitation or feature of the claims is found in the accused product (or

process), the second step of the infringement analysis is particularly amenable to summary disposition. Desper Prods., 157 F. 3d at 1333.

This Court has construed the term "embossed" to mean "a topography created on material by impressing a corresponding inverse topography on its surface." Order at 1040. Ink dots embedded in a liner cannot satisfy the "embossed" element. This is true for two reasons. First, as construed by the Court, the topography created must be the ***surface*** topography of the material, in this case, the liner. An embedded ink dot does not create a topography on the liner by impressing a topography "on its surface." Indeed, the embedded ink creates no topography on the liner surface. Rather, the softened PU ink displaces a portion of the softened PE liner material, forming a composite PE/PU liner material with a flush surface. Second, the molten PE liner material encasing the softened, embedded PU ink dot is not the inverse topography of the hardened PU ink dot earlier flexographically printed on the liner. The laws of physics dictate the difference. Both the PU ink and PE liner material are softened at a temperature exceeding 200° F and then pressed together at 600 psi. Just as a ball of wax loses its shape if heated and pressed, the ink deforms upon entering the liner. Thus, there is no literal infringement of any claim in the '930 patent based on what this Court has already ruled.[1]

Moreover, persons skilled in the art recognize a clear distinction between embedding and embossing. Technical dictionaries recognize the difference as well. (The Encyclopedia of Polymer Science and Technology (McHugh Dec., ¶ 20, Ex. 2)). See also Bell Atlantic v. Covad Communs. Group, Inc., 262 F.3d 1258, 1267 (Fed. Cir. 2001) (providing that courts may rely upon scientific dictionaries).

Indeed, 3M's own patents plainly distinguish between embedding an embossing. 3M's first patents on positionable films—which 3M sold as the "Controltac" product—describe

---

[1] Both independent claims 1 and 6 of the '930 patent require a first embossed pattern of depressions. Because these claims are not infringed, none of the dependent claims can be literally infringed either. Wahpeton Canvas Co., Inc. v. Frontier, Inc., 870 F. 2d 1546, 1553 (Fed. Cir. 1989) ("It is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed.").

embedding into a liner small glass spheres that are pre-placed on the liner surface. (U.S. Patents 3,331,729 and 3,413,168 (McHugh Dec., ¶ 21, Exs. 3-4)). Similar to Avery's embedded ink, the embedded glass spheres transfer to the adhesive film for positionability when the liner is removed from the film. Years later, 3M applied for and obtained a patent on a new positionable film—which 3M sold as "Controltac Plus." (U.S. Patent No. 5,141,790 (McHugh Dec., ¶ 21, Ex. 5)). 3M made this film by embossing a liner surface and filling the embossed depressions with glass particles. The glass particles transfer to the adhesive film for positionablity when the liner is removed from the film. In applying for its '790 patent, 3M described embossing the liner as a novel improvement over its earlier embedding patents.[2] In accusing Avery of infringement, however, 3M takes exactly the opposite position, arguing that embedding is the same as embossing. 3M should not be allowed to expand its patent portfolio by differentiating between embedding and embossing, and then keep competitors from the market by arguing that the two processes are the same.

Although this Court's prior claim construction of the term "embossed" is case dispositive, 3M has manufactured an alleged ambiguity in the term by contending that an ink dot constitutes an "embossing tool." 3M's argument is nonsense. It wholly ignores both the technical, well understood meaning of the term "embossed" and the teachings of the patent concerning the means by which embossment is accomplished. (McHugh Dec., ¶ 20). Specifically, the '930 patent specification repeatedly confirms that impressing a corresponding inverse topography requires use of a ***machined tool***, which, when impressed and removed from the liner surface, leaves behind in the liner surface a corresponding inverse depression:

- Abstract: "The patterns of embossing can be Euclidean or fractal *created from **machine tools***. . . ."

---

[2] Notably, Clyde D. Calhoun—the inventor of '930 patent at issue here—is also the inventor of the '790 patent on embossing a liner for positionablity. Additionally, Dr. Calhoun is the named inventor on U.S. Patent 5,300, 340, which describes "printing" a pattern of electrically conductive particles on an adhesive layer, which are then "embedded" into the surface. (McHugh Dec., ¶ 21, Ex. 6). Plainly, Dr. Calhoun knows the difference between embedding and embossing, and uses the terms to describe distinct products and processes in his patents.

- Col. 5, lns. 25-30: "For example, in Fig. 3, lands 27 are discontinuous, because separate ***projections on the tooling for forming pattern 24*** do not intersect with one another. Likewise, depressions 29 are discontinuous because separate ***projections on the tooling for forming pattern 26*** do not intersect with one another."

- Col. 5, lns. 36-42: "In other words, **the *topography of the tool(s) is an obverse image of the final topography*** of the microreplicated adhesive, with the liner 20 serving as the inverse image for transferring the image of the tool(s) to the microreplicated adhesive. Therefore, the topography(ies) of the ***embossing tool(s)*** for liner 20 is essentially the topography of the microreplicated adhesive."

- Col. 6, lns. 16-19: "Because the embossing of pattern 26 occurs before the embossing of pattern 24, the depths identified here are the cumulative effect of both embossings, not necessarily the ***height of the embossing tool***."

- Col. 6, lns. 48-51: "Precision of topographical formation of web 10 or 20 can be achieved using a variety of machining techniques. The ***machine tool industry is capable of creating tools with any pattern desired by those skilled in the art.***"

- Col. 6, lns. 56-68: ***"Tools can range from planar presses to cylindrical drums*** to other curvilinear shapes, depending on how it is desired to employ the embossing steps."

- Col. 6, lns. 59-63: "Nonlimiting examples of ***sources of tooling include*** commercial sources of *photolithographic printing plates and cylinders, precision engraved plates and cylinders, laser machined plates and cylinders, and the like*."

3M's newly-minted argument—equating a softened ink dot printed on top of a liner surface with an embossing tool—can be easily addressed by this Court with a clarifying claim construction ruling concerning the term "embossed." While unnecessary to determine non-infringement, consistent with the '930 patent specification, the Court's construction of the term "embossed" could be clarified to mean "a topography created on material by impressing a ***machined tool having a*** corresponding inverse topography on its surface."

## VII. AVERY'S EZ FILM LINER DOES NOT LITERALLY INFRINGE THE '930 PATENT BECAUSE A LINER WITH EMBEDDED INK DOTS CANNOT CONSTITUTE A LINER WITH A "FIRST EMBOSSED PATTERN FORM[ING] AN ARRAY OF DEPRESSIONS"

In denying 3M's motion for preliminary injunction, this Court stated it

> need not address whether defendant's liner contains a "first embossed pattern . . . of depressions" because defendant's liner does not contain "multiple embossed patterns" and thus no infringement exists.

Order at 1041, n. 5. If this Court now addresses the proper construction of the word "depressions" as used and taught in the '930 patent, it is clear there is no literal infringement by Avery of any claim in the '930 patent.

In the patent claims, the "first embossed pattern" must form an "array of depressions." A "depression" is an empty area that is sunk below its surroundings; a hollow. (The American Heritage Dictionary (3d ed. 1992)). Construing claims begins with the ordinary and accustomed meaning of the terms in light of the specification and file history. Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F. 3d 985, 989 (Fed. Cir. 1999). Both the specification and claims make clear the '930 patent uses the term "depression" in its ordinary and accustomed sense as an empty area, sunk below the liner surface, that is capable of being filled with a material. See col. 2, lns. 13-15 ("the ***depressions*** formed by the prior step(s) ***can be filled*** with material prior to the subsequent embossing step(s)"); col. 6, ln. 66-col. 7, ln. 2 ("Because the multiple embossings of the web occur sequentially, material can be placed in the depressions caused by the first pattern being formed before the second embossing pattern is applied."); Claim 7 ("The method of claim 6, further comprising the step of ***filling depressions*** created by the first embossing step. . . ."). See also Solomon v. Kimberly-Clark Corporation, 216 F. 3d 1372, 1376 (Fed. Cir. 2000) ("depression" means a portion of material "formed by surrounding a region of substantially thinner material with a region of thicker material.").

So construed, Avery's EZ liner does not infringe because the embedded ink does not form an array of ***depressions***. The ink on Avery's liner is embedded flush with the liner surface. (McHugh Dec., ¶ 16). After embedding, no empty, sunken, or hollow area remains below the

liner surface capable of being filled. Thus, there are no first embossed "depressions" in the PE layer of the liner.[3]

## VIII. AVERY'S EZ FILM LINER DOES NOT LITERALLY INFRINGE THE '930 PATENT BECAUSE IT IS NOT SEQUENTIALLY EMBOSSED

Applying the proper construction of "multiple embossed pattern" this Court already has determined that Avery's EZ Film does not infringe claim 1:

> Here, the court finds that there is no literal infringement because defendant's liner does not have a "multiple embossed pattern having a first embossed pattern and a second embossed pattern." . . . Because defendant's liner contains no multiple embossed pattern with a second embossed pattern following a first embossed pattern, the court concludes that plaintiff's infringement claim fails.[4]

Likewise, the absence of sequential embossing in Avery's EZ Film liner precludes infringement of method claims 6-11. In its preliminary injunction reply papers, 3M conceded, as it must, that claims 6-11 are "expressly directed to a ***sequential*** embossing process."[5] (Plaintiffs'

---

[3] 3M argues that when the adhesive backed film is removed from the liner, the "ink tool" is removed with the adhesive and "embossed depressions" are left in the liner corresponding to the prior ink locations. 3M's argument leads nowhere. Once the liner is stripped from the adhesive-backed film, it is no longer the claimed "carrier web" because it no longer "carries" anything. It is simply waste paper after use. The fact that this waste paper has depressions is meaningless to whether the liner in the EZ Film product that carries the adhesive-backed film (*i.e.*, the carrier web) infringes 3M's patent. Even if the spent liner could be considered a "carrier web" and the depressions considered an "embossed pattern," there still is no infringement because the depressions left on the spent liner (after a customer has peeled off the adhesive-backed graphics product for application) are created well ***after*** Avery has embossed the lands and ridges with the hexagonal pattern on the embossing roll. All claims in the '930 patent require the opposite—*i.e.*, that the pattern of depressions be made ***first***, with the lands and ridges forming the ***second*** embossed pattern.

[4] Order at 1041. Indeed, this Court previously concluded that the record establishes that no "reasonable trier of fact" could find that Avery's EZ Film products contain this claim limitation. Id. (quoting Unidynamics Corp. v. Automatic Products, Int'l, 157 F.3d 1311, 1316-17 (Fed. Cir. 1998)).

[5] 3M made the concession in arguing that the "doctrine of claim differentiation" required the Court to construe claims 1-5 as encompassing a single embossing step. However, the doctrine of claim differentiation has no application where an independent method claim describes a process and another independent claim describes a product produced by the claimed method. Hormone Research Foundation, Inc. v. Genetech, Inc., 904 F.2d 1558, 1567 (Fed. Cir. 1990).

Reply Memorandum In Support of Motion for Preliminary Injunction, p. 4). Thus, the Court's findings for claim 1 apply equally to the method claims as well.

During the preliminary injunction proceedings, 3M did not dispute that Avery simultaneously embeds the ink dots when it embosses the hexagonal pattern into the liner. But after the Court construed "multiple embossed pattern" to require sequential embossing steps, 3M fabricated two theories as to how Avery's liner might still meet the sequential claim limitation. 3M now contends that the "squeegee roll" "partially" embeds the PU ink dots before the liner reaches the "nip," which is the area of pressure where the embossing roll presses against the rubber bed roll. 3M also says that Avery's embossing roll embeds ink dots in the leading edge of the liner as it enters the nip before a hexagon is embossed on the liner surface by that same embossing roll. Both arguments fail as a matter of law because Avery completes embedding ink and completes embossing a pattern of hexagons at the same time.

First, as construed by the Court, each claim of the '930 patent requires a first embossing step (creating a first pattern of depressions), ***followed by*** the second embossing step (creating a second pattern of lands and ridges), so that each step takes place sequentially. ('930 patent, col. 6, lns. 17-18); Order at 1041. Otherwise, the depressions made by the first embossing step could not be filled before the second embossing step. See, e.g., claim 7. Even assuming that the squeegee roll "partially" embeds the PU ink prior to the liner reaching the embossing roll (which it does not), it is undisputed that Avery does not fully embed the ink into the liner until the liner passes through the "nip" between the embossing roll and the bed roll, where the embossing of the hexagonal pattern (*i.e.*, the second step) simultaneously takes place. (McHugh Dec., ¶ 22). Thus, irrespective of whether any "pre-embedding" occurs, no infringement exists under 3M's new "partial embedding" theory because the complete embedding of the ink dots and the embossing of the entire hexagonal pattern take place simultaneously.

Similarly, 3M's argument that Avery's embossing roll embeds an ink dot before completing an embossed hexagon is legally irrelevant. It is undisputed that Avery completes its embedding of the ink dots and its embossing of the hexagonal ***pattern*** at the embossing roll, not

in sequential steps. Thus, leaving aside the fact that "embedding" as a matter of law is not "embossing," the Avery EZ Liner does not meet the "sequential embossments" limitations of each claim, even under 3M's novel (and factually erroneous) "leading edge" theory.

## IX. AVERY DOES NOT INFRINGE THE '930 PATENT UNDER THE DOCTRINE OF EQUIVALENTS

If a claim element is not literally found in an accused device, in limited instances infringement may still exist under the doctrine of equivalents. But infringement under the doctrine of equivalents is available only if the differences are "insubstantial" between the claim element not literally found and the corresponding feature in the accused product or process. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 24, 117 S. Ct. 1040, 1047 (1997); Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. __, 122 S. Ct. 1831, 1839 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."). One way of determining whether those differences are "insubstantial" is by examining whether the claim element and the corresponding feature in the accused product or process perform substantially the same function in substantially the same way to achieve substantially the same result. Warner-Jenkinson, 520 U.S. at 39-40.

In addition, in many cases, like this one, doctrine of equivalents infringement as a matter of law does not exist because the accused product or process is missing a claim limitation entirely. This is because the Supreme Court has made clear that under the "all elements" or "all limitations" rule, the doctrine of equivalents must be applied to the individual claim elements or limitations, not to the claimed invention as a whole:

> *Each element contained in a patent claim is deemed material* to defining the scope of the patented invention, and thus the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole. *It is important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.*

Id. at 30 (emphasis added). This "all limitations" or "all elements" rule is a legal limitation on the doctrine of equivalents to be determined as a matter of law by the court:

> Of course, the various legal limitations on the application of the doctrine of equivalents are to be determined by the court, either on a pretrial motion for partial summary judgment . . . . Thus, under the particular facts of the case . . . *if a theory of equivalents would entirely vitiate a particular claim element, partial or complete summary judgment should be rendered by the court*, as there would be no further *material* issue for the jury to resolve.

Id., 520 U.S. at 39 n. 8 (emphasis added).

"Application of the doctrine of equivalents is the exception, however, not the rule, for if the public comes to believe (or fear) that the language of the patent claims can never be relied upon, and that the doctrine of equivalents is simply the second prong of every infringement charge, . . . then claims will cease to serve their intended purpose. Competitors will never know whether their actions infringe a granted patent." London v. Carson Pirie Scott & Co., 946 F. 2d 1534, 1538 (Fed. Cir. 1991).

As a matter of law, Avery does not infringe any claims of the '930 patent under the doctrine of equivalents for much the same reasons as it does not literally infringe. The simultaneous, single embossed/embedded liner, as a matter of law, is substantially different from the claimed sequentially embossed patterns claimed in the patent. Moreover, any finding of infringement under the doctrine of equivalents would read elements out of the claims. Thus, Avery is entitled to summary judgment of non-infringement under the doctrine of equivalents.

**A. The Simultaneously Single Embossed/Embedded Feature Avery EZ Film is, as a Matter of Law, More Than Insubstantially Different From the Double, Sequential Embossments Specified in Each Claim**

To show infringement by equivalents, 3M must show that the claim element "first embossed pattern form[ing] an array of depressions" is equivalent to embedded ink dots. 3M fails its burden as a matter of law.

The doctrine of equivalents analysis in this case is simple because, as a matter of law, 3M cannot assert that opposite features are equivalent. Specifically, 3M's claims require creating depressions ("a hollow") by embossing; in marked contrast, Avery's process displaces material with PU ink dots ("a filled area") by embedding. See Moore U.S.A., Inc. v. Standard Register Co., 229 F.3d 1091, 1106 (Fed. Cir. 2000), cert. denied, 121 S. Ct. 1734 (2001) ("[I]t would defy

logic to conclude that a minority—the very antithesis of a majority—could be insubstantially different from a claim requiring a majority, and no reasonable juror could conclude otherwise."); see also SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc., 242 F.3d 1337, 1347 (Fed. Cir. 2001). No reasonable juror could find that embedded ink dots flush with the liner surface is equivalent to a first embossed pattern form[ing] an array of depressions. The two are opposites, and they bear no resemblance, let alone equivalence. There can be no infringement under the doctrine of equivalents.

**B. There is No Equivalents Infringement as a Matter of Law Because 3M's Theory of Equivalence Would Entirely Vitiate the "Multiple, Sequentially Embossed Patterns" and "First Embossed Pattern" Elements of the Claims**

The "all elements" rule as a matter of law precludes a finding of infringement under the doctrine of equivalents in this case. Once this Court determines that "embedding" is not "embossing," there can be no infringement under the doctrine of equivalents; as a matter of claim construction, a finding of equivalents would necessitate that both the "first embossed pattern" and the "multiple embossed pattern" elements be read out of the claims. That is legally impermissible. See Warner-Jenkinson, 520 U.S. at 29 (in applying the doctrine of equivalents, it is "important to ensure that the application of the doctrine, even as to an individual element, is not allowed such broad play as to effectively eliminate that element in its entirety.").

Under nearly identical facts, the Northern District of Ohio granted summary judgment of non-infringement, finding that an accused device using only a single application of a bonding material did not meet the equivalence test where the patent called for two distinct, sequential applications of the bonding material:

> Plaintiff Wooster's process for producing paint rollers is accomplished in one step. Defendant Newell argues that Wooster's one-step process effectively collapses the '242 patent's two-step process and is therefore not significantly different from the '242 process.
>
> * * *
>
> [T]he '242 process as construed by this Court contains separate elements which produce the final product: . . . Under the terms of the patent claims, *this process must occur in sequence.*

> *In the New Wooster process*, the formation of the core and the adhesion of the cover to the core *occur simultaneously*, facilitated by one application of liquid thermoplastic material. Wooster's one-step process is not a combination of the '242 patent's elements; it does not represent a more efficient way of applying two strips of liquid thermoplastic material. Rather, it represents a new method by which one of the two steps of the '242 patent—the second application of adhesive material and relevant cooling period—is eliminated. ***To interpret Wooster's process as equivalent to the '242 patent's elements would thus fly in the face of the Supreme Court's admonition that equivalence does not exist when a finding of equivalence would eliminate an element in the patented process.***

Wooster Brush Co. v. Newell Operating Co., 46 F. Supp. 2d 713, 721 (N.D. Ohio 1999) (emphasis added in part), *aff'd*, 250 F.3d 756 (Fed. Cir. 2000) (unpublished disposition); K-2 Corp. v. Salomon S.A., 191 F.3d 1356, 1367 (Fed. Cir. 1999) (affirming summary judgment of no equivalents, and stating that "the doctrine of equivalents cannot be used to vitiate an element from the claim in its entirety."). Like Wooster Brush, Avery's printed and single embossed (and simultaneously embedded) liner is not a combination of the '930 patent elements; it is an entirely novel process that produces positionability and air egress without the claimed, sequential, multiple embossed pattern. Thus, under the "all limitations" rule, the doctrine of equivalents cannot be used to bring Avery's novel process and liner within the scope of the '930 patent claims.

### C. There is No Equivalents Infringement as a Matter of Law Because 3M Expressly Disclaimed Single Step Embossing from the Scope of its Patent Claims

In the patent specification, 3M expressly distinguished its sequential "first" and "second" embossment elements of the claims (that is, multiple step, sequential embossings) from a single step, or simultaneous embossment feature:

> Although the multiple embossing steps could be combined into a single step with the design of a suitable tool or mold, the advantage of multiple steps is that the depressions formed by the prior step(s) can be filled with material prior to the subsequent embossing step(s).

('930 patent, col. 2, lns. 11-15). Likewise, 3M argued to the Patent Examiner that its invention was novel over the prior art precisely because of the claimed multiple, ***sequential*** embossments feature:

> Neither Patent '765 nor Patent '681 disclose or suggest the construction of a web that has multiple embossed patterns, where the first embossed pattern is in the second embossed pattern. . . . This invention unexpectedly has found that the depressions formed during the first embossing step are not lost when the second embossing step is performed.

(Declaration of Lawrence M. Hadley, Ex. 1, p. 5).

These distinguishing descriptions as a matter of law preclude a single embossing step from the scope of permissible equivalents. SciMed Life Sys., 242 F.3d at 1345 ("A particular structure can be deemed outside the reach of the doctrine of equivalents because the structure is clearly excluded from the claims whether the exclusion is express or implied."). "Having specifically identified, criticized and disclaimed [the single step embossings], [3M] cannot now invoke the doctrine [of equivalents] to embrace a structure that was specifically excluded from the claims." Id.

### D. Even Assuming That 3M Disclosed Single Step Embossing of the Patterns in the Specification, Because 3M Did Not Claim Coverage for Such, 3M is Precluded, as a Matter of Law, from Asserting Equivalents

3M's disclosure in the '930 patent that multiple patterns could be applied with a suitable tool using a single embossing step ('930 patent, col. 2, lns. 11-15) precludes a determination in this case that single-step embossings are equivalent to multiple, sequential embossings. Recently, the Federal Circuit has held that when an applicant discloses subject matter relating to the alleged invention in the specification but fails to draft claims that cover that disclosed subject matter, the applicant cannot assert that the claims cover that disclosed but unclaimed subject matter under the doctrine of equivalents:

> In this case, Johnston's '050 patent specifically limited the claims to "a sheet of aluminum" and "the aluminum sheet." The specification of the '050 patent, however, reads: "While aluminum is currently the preferred material for the substrate, other metals, such as stainless steel or nickel alloys may be used." Col. 5, lns. 5-10. ***Having disclosed without claiming the steel substrates, Johnston cannot now invoke the doctrine of equivalents to***

> ***extend its aluminum limitation to encompass steel. Thus, Johnston cannot assert the doctrine of equivalents to cover the disclosed but unclaimed steel substrate.***

Johnson & Johnson Associates, Inc. v. R.E. Service Co., 285 F. 3d 1046, 1055 (Fed. Cir. 2002) (*en banc*) (emphasis added). Thus, 3M cannot obtain coverage for single step embossing under the doctrine of equivalents. Id.

**E. There is No Equivalents Infringement Because the Ink Printing and Simultaneously Embedding/Embossing Features of Avery's EZ Film Does Not Perform Substantially The Same Function, in Substantially the Same Way to Achieve Substantially the Same Result as the "Multiple, Sequential Embossment" and "First Embossed Pattern" Elements in the '930 Patent**

Another legal yardstick for determining whether "insubstantial differences" exist between the patent claims and the corresponding features of the accused product or process is whether the claim elements and accused features perform substantially the same function in substantially the same way to achieve substantially the same result. Warner-Jenkinson Co., 520 U.S. at 39-40.

Avery's EZ Film liner does not meet this test. According to the '930 patent specification, the liner is embossed with depressions before application of the embossed lands and ridges so that "a variety of materials [can be] introduced into the embossed web." ('930 patent, col. 2, lns. 11-15). In other words, embossed depressions are first made with a machined embossing tool—comprising the function and the way—so that the depressions can be filled before application of the second embossment—the result. In contrast, the Avery EZ Film liner has no empty depressions formed from any first embossed pattern that can be subsequently filled with "a variety of materials" before application of a second embossing step. Because the liner in the EZ Film is embossed and embedded simultaneously using "a single embossing roller only once," Order at 1041, there is never a point in time "prior to the second embossing step" during which depressions created by a first process can be filled. ('930 patent, col. 2, lns. 11-15). Indeed, there are no first embossed depressions made in Avery's EZ liner. Thus, 3M cannot invoke the doctrine of equivalents to ensnare Avery's fundamentally different "function," "way" and "result" of a simultaneous, single step embossing/embedding procedure.

## X. CONCLUSION

The liner in Avery's EZ Film products and Avery's process for making it do not meet every limitation of any claim of the '930 patent either literally or under the doctrine of equivalents. Accordingly, Avery respectfully asks this Court to grant summary judgment of non-infringement and dismiss 3M's complaint in its entirety.

DATED: July 2, 2002

Respectfully submitted,

David P. Pearson
WINTHROP & WEINSTINE, P.A.
3000 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Roderick G. Dorman
Lawrence M. Hadley
Armand F. Ayazi
HENNIGAN, BENNETT & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Of Counsel:

Jay R. Campbell
RENNER OTTO, BOISSELLE & SKLAR, P.L.L.
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-6155 - Facsimile

167190\v5

**CERTIFICATE OF SERVICE**

I certify that on July 2, 2002 the true and correct copy of the foregoing **AVERY DENNISON'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT OF U.S. PATENT NO. 5,897,930** was served as follows:

John C. Adkisson
Fish & Richardson, P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, Minnesota 55402

**By facsimile and overnight delivery**

Kurt L. Glitzenstein
Fish & Richardson, P.C., P.A.
225 Franklin Street
Boston, MA 02110-2804

**By facsimile and overnight delivery**

Lisa Spears