IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S**
**REPLY CLAIM CONSTRUCTION BRIEF**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION AND OVERVIEW OF DISPUTED CLAIM TERMS................II

II. AVERY PROPOSES THE ONLY LEGALLY CORRECT CONSTUCTION OF "DEPRESSIONS" ...............................................................II

A. Correcting 3M's Misstatements.................................................................. ii

B. 3M's Proposed Construction of "Depression" Should be Rejected Because it is Not in Accordance with the Ordinary Meaning of the Term ........................................................................................ iii

C. Throughout the '930 Patent 3M Used the Word "Depressions" in its Ordinary and Accustomed Meaning...................................................... iii

D. 3M's Arguments that the Ordinary Meaning of the Word "Depressions" as Used in the Claims Includes Empty and Filled Depressions is Wrong .......................................................................... iv

E. 3M's Argument That Avery's Proposed Construction Would Exclude a Preferred Embodiment is Factually Wrong................................ vi

F. 3M's Strained Claim Construction Proposal is Fashioned to Escape Summary Determination of Non-Infringement .............................. vii

G. If 3M's Proposed Definition Were Adopted And Read to Encompass A Web With Embedded Material, 3M's Patent Would Be Invalid ................................................................................... viii

III. 3M'S PROPOSED DEFINITION OF "CARRIER WEB" IGNORES THE TERM "CARRIER"........................................................................... IX

IV. 3M'S PROPOSED DEFINITION OF "LANDS" IMPOSES A VAGUE RESTRICTION........................................................................................X

V. CONCLUSION ........................................................................................ XI

## I. INTRODUCTION AND OVERVIEW OF DISPUTED CLAIM TERMS

Avery is an innovator, not a copier. Respecting 3M's '930 Patent, Avery developed a manufacturing process which did not use a tool to form a pattern of depressions in the surface of a carrier web as required by claim 1 of the '930 patent. Instead, Avery embedded hardened ink dots flush with the surface of its web product to assure that it did not infringe 3M's '930 patent. The legal constructions offered by 3M of "depressions," "carrier web," and "lands" are demonstrably wrong and should be rejected. For the reasons set forth below, none of 3M's arguments or constructions have legal merit and Avery's proposed definitions should be adopted.[1]

## II. AVERY PROPOSES THE ONLY LEGALLY CORRECT CONSTUCTION OF "DEPRESSIONS"

### A. Correcting 3M's Misstatements

It is both regrettable and telling that Avery must begin this reply argument by correcting 3M's misstatement of Avery's proposed construction for the word "depression." 3M tells this Court that Avery proposes the following definition of depression: "Hollow or open areas below the surface that must be empty." (3M Br. p.5). That statement is false. Avery's proposed definition of "depressions" is its ordinary meaning – "hollow or open areas below the surface." (Avery Br. p.11). Avery's proposed construction of "depressions" never included the phrase "that must be empty." This is because hollow or open areas below the surface (i.e., depressions) are necessarily empty. Otherwise, they are not hollow or open. Thus, the correct statement of the parties' competing constructions for the word "depressions" is as follows:

| | |
|---|---|
| ***Avery's Definition***: | Hollow or open areas below the surface. |
| ***3M's Definition***: | A depressed or sunken place or part of the carrier web. As used in Claim 1 of the '930 Patent, the depressions can be either "filled" or "empty." |

[1] Once the claims are construed, Avery will be prepared to make a *prima facie* showing that no factual disputes exist and non-infringement and/or invalidity can be summarily adjudicated without trial.

**B. 3M's Proposed Construction of "Depression" Should be Rejected Because it is Not in Accordance with the Ordinary Meaning of the Term**

Although purportedly 3M agrees with Avery that the term "depressions" should be construed in accordance with its ordinary meaning, 3M urges this Court to adopt a construction different from that ordinary meaning. 3M misstated Avery's proposed construction because it is trying to convince this Court that the ordinary meaning of the single word "depression" includes both empty and filled areas below a surface. This is nonsense. If an open or hollow area below a surface has been "filled," the surface no longer has an open or hollow area. To say otherwise is self-contradictory. While a surface depression certainly ***can*** be filled, once filled the surface depression ceases to exist. Following the filling of a depression, it would be accurate to say the surface contains a depression that "has been filled" or to describe the area of the former depression as a "filled depression," but it would be gibberish to describe the area as still containing a "depression." Stated simply, a "filled depression" is not the same structure as a "depression." A hollow or open area below a surface, once filled, is no longer a hollow or open area below a surface.

**C. Throughout the '930 Patent 3M Used the Word "Depressions" in its Ordinary and Accustomed Meaning**

3M's inventors used the root word "depressions" 37 times in the '930 patent specification excluding the claims. The '930 patent uses the word "depressions" in the actual patent claims nine times (ignoring restatement of each independent claim in each dependent claim). In <u>every</u> instance, the word is used consistent with Avery's proposed definition. No language whatsoever from the specification, including the claims, supports 3M's assertion that "depressions" mean the same thing as "filled depressions." To the contrary, the specification never uses the term "depressions" synonymously with "filled depressions." The specification consistently uses the term "depressions" with reference to open or hollow areas below the surface, and "filled depressions" to describe a flush surface containing material subsequently inserted into an area

that ***had previously*** been a depression. 3M correctly notes that the specification explicitly discusses a carrier web in which the depressions have been filled. (3M Brief, p. 8 (citing Example 2 from the specification.)) Yet, wherever the specification discusses depressions that have been filled, it describes the surface structure not as depressions, but rather as ***filled*** depressions. Likewise, in each case, the specification expressly states that the web surface started with depressions—hollow or open areas below the surface—that were subsequently filled. Compare Col. 4, lns. 21-26 ("the depth of ***depressions*** caused in surface 12 by pattern 14 can range from a minor fraction of thickness T to almost the entire original thickness T.") with Col. 7, ln. 65 – Col. 8, ln. 1 ("A second embossed Controltac™ Plus liner with its ***depressions filled*** with a glass bead slurry was embossed a second time…."). Thus, the specification provides no support for 3M's assertion that a "depression" has the same meaning as a "filled depression."

**D. 3M's Arguments that the Ordinary Meaning of the Word "Depressions" as Used in the Claims Includes Empty and Filled Depressions is Wrong**

When the ordinary meaning of "depression" is understood, 3M's argument can be placed in context: 3M asks this Court to hold, as a matter of law, that "depression" has the same meaning as "filled depression." It does not. 3M argues that "depressions" as used in the '930 patent "exist in the carrier web, and that those depressions can either be 'filled' or 'empty.'" (3M Brief at 4.) From that observation, 3M's brief concludes that "the patent teaches that a depression in the carrier web does not cease to be a depression just because it is filled with another material." (Id.) The patent teaches no such thing. It uniformly and unambiguously teaches that a filled depression is different from and not the same as a depression. Indeed, throughout the patent, "depressions" are distinguished from "filled depressions."[2]

[2] The diagrams on pages 7 and 8 of 3M's brief illustrate the point even better. The diagram on page 7 shows "depressions"—*i.e.*, hollow or open spaces below the surface of the carrier web.

3M's supporting example for its preferred construction demonstrates the logical inconsistency of its position. 3M says, "for example, the bottom of a lake bed is a "depression" in the Earth's surface, whether that lake bed is filled with water or not." (3M Br. At p.6). The bottom of a lake bed filled with water is not a depression in the Earth's surface. The surface of the earth is defined by land and water, not by land and depressions in land which are covered by water.[3]

Because patent terms must be construed in the context of the claim language, this Court must start by examining the words 3M selected in "particularly pointing out and distinctly claiming the subject matter . . . [of its] invention." 35 U.S.C. § 112, ¶ 2; Johnson Worldwide Associates, Inc. v. Zebco Corp., 175 F.3d 985, 989 (Fed. Cir. 2000). Claim 1 of the '930 patent uses the term "depressions"; it does not use the term "filled depressions." 3M would have this Court, in violation of settled claim construction rules, add a word to Claim 1—"filled"—that does not appear in the claim language. Texas Digital Systems, Inc. v. Telegenix, Inc., 308 F.3d 1193, 1201 (Fed. Cir. 2002). 3M could have written Claim 1 to recite a "first pattern of depressions or filled depressions." It did not, and it would be error for this Court to expand the scope of Claim 1 to include something 3M did not set forth in the claim language. Autogiro Co. of America v. United States, 384 F.2d 391, 395-96 (Ct. Cl. 1967) ("[C]ourts do not rework claims. They only interpret them.").

Moreover, adding the word "filled" to Claim 1, contrary to 3M's argument, would render Claim 12 a nullity. The depressions of Claim 1 cannot be "filled" in accordance with Claim 12 if they are already filled. 3M correctly points out that the depressions can be filled according to Claim 12 if "the depressions are empty" (which, of course, they must be if they are depressions).

---

The diagram on page 8, in contrast, shows "filled depressions" or "depressions that have been filled."

[3] To further support the point, elevations are measured from sea level, not from the sea bed.

But 3M utterly fails to explain how "filled depressions"—which 3M asks this Court to read into Claim 1—can be filled **again** to meet the requirement of Claim 12. Unasserted claim language often settles disputes about the meaning of terms in asserted claims. Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996). Here, Claim 12 leaves no ambiguity about the meaning of "depressions" in Claim 1: They are hollow or open areas below the surface that can remain empty or be filled at a later time. Claim 1 does not encompass a surface in which depressions have been made and then subsequently filled. Instead, 3M claimed the "filled" embodiment in Claim 12 and other claims.[4]

**E. 3M's Argument That Avery's Proposed Construction Would Exclude a Preferred Embodiment is Factually Wrong**

Interpreting "depressions" consistent with its ordinary meaning does not exclude a preferred embodiment from the scope of 3M's patent claims. Inventors need not include every aspect of an invention in every claim. See Carl Zeiss Stiftung v. Renishaw PLC, 945 F. 2d 1173, 1181 (Fed. Cir. 1991) ("In one piece of apparatus disclosed as an embodiment of an invention, there may be several inventions; therefore, the claims are the place to look, and each claim must be considered separately."). Moreover, Claims 7, 8, and 12 all cover embodiments in which the depressions are filled. Claim 1 is limited to a different embodiment: one in which the depressions are just that—hollow or open areas below the carrier web surface. Hoganas AB v. Dresser Indus., 9 F.3d 948, 951 (Fed. Cir. 1993) ("As we have repeatedly said, the words of a claim 'will be given their ordinary meaning, unless it appears the inventor used them

[4] 3M's argument that the reference in Claim 12 to "filling" really means "coating" is absurd. 3M used the term "filling" in Claim 12, not "coating". It cannot rewrite Claim 12 years later to support a definition of "depressions" in Claim 1 that contradicts the ordinary meaning. In any event, nothing in Claim 12 or elsewhere in the '930 patent suggests that "coating" the surface with a pressure sensitive adhesive has the same meaning as "filling" the depressions. To the contrary, the '930 patent specification describes in detail how the depressions can be filled with a variety of materials including "soaps, lubricants, perfumes, and abrasive slurries." Col. 2, ln.

differently.'" (citations omitted)).

### F. 3M's Strained Claim Construction Proposal is Fashioned to Escape Summary Determination of Non-Infringement

3M attempts to equate "depressions" with "filled depressions" to keep alive its argument that the surface of Avery's accused EZ Film liner contains a pattern of "depressions" where it embeds one material into another. Specifically, Avery's liner consists of several layered materials. Uppermost is a thin layer of polyethylene upon which Avery prints and then hardens polyurethane ink dots:




To emboss a hexagonal pattern on the liner, Avery subsequently heats the ink and polyethylene into a near molten state. Avery then embosses a hexagonal pattern onto the polyethylene layer under high pressure. The heating and high pressure embossing impresses the ink flush into the liner surface, forming a composite top-surface:




Thus, once embossed, the top layer of Avery's web consists of a composite polyethylene and polyurethane material. At no time does the surface of Avery's ***carrier web*** contain

---

27-55.

"depressions."[5] Moreover, unlike Claims 7, 8, and 12, Avery does not make depressions in its liner and subsequently fill them. That is why 3M does not assert those claims against Avery and why it needs an imaginative definition of "depressions" to bring Avery's differently-structured liner within the scope of Claim 1.

### G. If 3M's Proposed Definition Were Adopted And Read to Encompass A Web With Embedded Material, 3M's Patent Would Be Invalid

In general, "claims should be so construed, if possible, as to sustain their validity." Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 1999) (internal quotation marks omitted).[6] Here, construing "depressions" in a manner that encompasses Avery's ink-embedded liner would render the '930 invalid based on 3M's own cellular sheeting patent issued more than 25 years ago. See U.S. Patent 4,025,159 (Hadley Dec., Ex. 6.) The '159 patent discloses a sheeting with a pattern of square, intersecting ridges between 4 and 120 microns in height. Embedded microspheres are interspersed between the ridges. Therefore, if embedded ink falls within the meaning of "depressions," the '159 patent would have an identical structure to that claimed in the '930 patent: a first pattern of "embossed depressions" located "in" and a second pattern of "lands and ridges" with the ridges extending within 3 and 45 microns above the lands.[7]

---

[5] These facts were undisputed in Judge Doty's October 19, 2002 Summary Judgment Order and undisturbed by the Federal Circuit on appeal. See Oct. 19, 2002 Order at 11.

[6] This rule has a number of caveats. In particular, the Federal Circuit "has admonished against judicial rewriting of claims to preserve validity. Accordingly, unless the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous, the axiom regarding the construction to preserve the validity of the claim does not apply." Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d 898, 911 (Fed. Cir. 2004) (internal quotations and citations omitted).

[7] Exhibit 7 to the Hadley Declaration (filed with the moving papers) is a claim chart showing how each limitation of claim 1, applying 3M's proposed constructions for the terms in claim 1, reads directly on the '159 patent.

## III. 3M'S PROPOSED DEFINITION OF "CARRIER WEB" IGNORES THE TERM "CARRIER"

***Avery's Definition***: Sheeting material that carriers or can function to carry another material.

***3M's Definition***: Generally planar material that carries, can carry, or that has carried another material that is releasable from the web.

One primary difference exists between Avery's proposed definition of "carrier web" and that proposed by 3M: While Avery's definition limits a carrier web to a web that carries (or is capable of carrying) another material, 3M seeks to capture material that no longer carries (and is incapable of carrying) another material. 3M incorrectly describes this difference as an attempt by Avery to impose a "temporal limitation" on the term "carrier web." (3M Brief at 11.) Avery's proposed definition has no "temporal limitation." Rather, Avery's proposed definition merely gives effect to the word "carrier"—*i.e.*, "one that carries." (Hadley Dec., Ex. 8.) 3M's proposed definition, on the other hand, gives no effect whatsoever to the word "carrier."

The examples 3M provides illustrate this point. First, 3M says that an "ice cube tray" remains an ice cube tray even after the ice cubes are taken out. Of course—because the ice cube tray can still function to make and to hold ice cubes, just as a mail carrier is still a mail carrier when he goes home for the evening. But after retirement, he is no longer a mail carrier. 3M also analogies "wallpaper." The single word "wallpaper" is a noun. Wallpaper is wallpaper before it is on a wall, while it is on a wall, and after it has been taken down from a wall to be thrown away. "Carrier" is an adjective which modifies the noun "web." It has meaning only in the function of carrying or being capable of carrying something. That is the difference. 3M entirely ignores the "carrier" part of the term "carrier web."

Nothing in either the specification or the prosecution history supports 3M's argument that a carrier web includes material that can no longer function for use as either a liner or "final article" for other purposes. Col. 2, lns 27, 39-40. While the specification states that the "carrier

web" ***can operate*** as a transfer article or as a final article of material, the specification provides no support for the notion that a material remains a carrier web after it becomes ***incapable of operating*** for such purposes. Likewise, as confirmed by the Examiner in the file history, a carrier web can be "disposable." (3M Brief at 11-12.) But once disposed, and no longer capable of carrying anything, the disposed material is no longer a "carrier web." The file history does not suggest otherwise.

Finally, 3M takes issue with the use of the term "sheeting material." In its place, 3M proposes the term "generally planar material." 3M points to a number of examples of web materials that can be created with the embossed patterns recited in the invention. (3M Brief at 13.) But each of these products, including transfer tapes, abrasive pads, scouring pads, bumped pads, etc., are typically formed on sheeting material. 3M's preference for "generally planar" is no broader; but it is more ambiguous. Simply put, 3M provides no explanation for what a "generally planar" material encompasses, and the words themselves provide no guidance. In any event, this dispute is academic: Avery does not contest that the accused EZ Film it sells has a carrier web; it does contest that the liner material from that web may be considered a "carrier web" after it has been removed, is no longer carrying anything, and is incapable of doing so.

## IV. 3M'S PROPOSED DEFINITION OF "LANDS" IMPOSES A VAGUE RESTRICTION

***Avery's Definition***: The area of the carrier web between ridges.

***3M's Definition***: Relatively planar, lower regions on the surface of the carrier web between the ridges.

3M argues that Avery's definition of "lands" is too broad. Specifically, 3M seeks to modify the definition that Avery proposes by adding the restriction that the area between the ridges be "relatively planar" and "lower."[8] The most basic definition of land is "open space."

[8] 3M's brief also states incorrectly that Avery's proposed definition uses the term "region"

While the specification illustrates and describes "lands" that are planar and lower than the surrounding ridges, nothing in the specification excludes "relatively non-planar open spaces." Indeed, the specification explains that "lands" are formed from material moving to create the ridges. Col. 4, ln. 66 – Col. 7, ln. 4. In other words, the land can take on any shape that is the inverse of the tool used to make the second embossed pattern. Because the specification places no restrictions on the shape of the tool—and indeed the specification allows for broad ranges in the dimensions of the embossed patterns (see Col. 4, lns. 22-56)—restricting lands to a "relatively planar" shape would improperly read a limitation into the claims. Texas Digital, 308 F.3d at 1201.

Moreover, adding the term "relatively planar" would create unnecessary ambiguity. 3M's definition offers no guidance as to what "relatively" means. How "planar" must a surface be to fit within the meaning of "relatively planar?" In essence, 3M's proposed definition requires more construction than the term "lands" itself. Thus, Avery's proposed definition should be adopted.

## V. CONCLUSION

For the foregoing reasons, Avery respectfully asks this Court to construe the disputed terms in the '930 patent in the manner Avery proposes.

---

instead of "area." Avery does not believe that any substantive difference exists between these terms.

DATED: August 23, 2004

Respectfully submitted,

s/David P. Pearson_____________

David P. Pearson #84712
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6692; FAX: (612) 604-6892

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200; FAX: (213) 694-1234

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113; FAX: (216) 621-1260

2139581v1