Cv 01-1781 JRT/FLN

FISH & RICHARDSON P.C.,P.A.

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Telephone
612 335-5070

Facsimile
612 288-9696

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

July 5, 2005

**VIA MESSENGER**

Honorable John R. Tunheim
U. S. District Court
U.S. Courthouse, Suite 13E
300 South 4th Street
Minneapolis, MN 55415

Re: *3M Innovative Properties Co. v. Avery Dennison Corp.*
Civil Action No. 01-1781 JRT/FLN

Dear Judge Tunheim:

I write on behalf of plaintiffs 3M Innovative Properties Company and 3M Company ("3M") in response to Mr. Hadley's June 30, 2005 letter to you requesting permission for defendant Avery Dennison Corporation ("Avery") to bring a third summary judgment motion in this case.

This patent case has been pending for nearly four years. During that time, Avery has continued to sell its infringing EZ Film product unabated, gaining a foothold in the commercial graphics market at 3M's expense and causing significant damage to 3M. Given this situation, Avery's continuing attempts to delay this case should be rejected, and 3M respectfully requests that this case be set for trial expeditiously.

**ARGUMENT**

**I. Procedural Background**

Before addressing the substance of Avery's letter, a few procedural points should be addressed. In advance of the August 30, 2004 *Markman* hearing before the Court, it was expected by the parties that should Avery prevail upon the claim constructions it was advocating for "depressions" or "carrier web," Avery might request the opportunity to bring a summary judgment motion of non-infringement. The parties had conducted extensive discovery on Avery's EZ Film liner, and while it is untrue that the "structural characteristics" of that liner are "not disputed," as claimed by Avery, it is fair to say that the record was sufficiently developed such that summary judgment proceedings might have been appropriate.

SCANNED
JUL 11 2005
U.S. DISTRICT COURT MPLS

Avery's constructions of the two disputed terms were rejected by this Court. Because of this, Avery must now argue invalidity of the patent-in-suit. Notably, Avery's newest invalidity argument is based on a decades-old 3M patent ("the McGrath Patent") that is directed to a completely different technology than the invention described and claimed in the patent-in-suit ("the Calhoun Patent"), which Avery did not assert as anticipating during the previous discovery period in this case.[1]

As demonstrated below, Avery's position is based on fundamental misunderstandings about both the law of anticipation and what the McGrath Patent actually teaches. While 3M and its technical expert are cataloging the many differences between the McGrath Patent and the Calhoun Patent, at a minimum, the McGrath Patent is plainly missing at least two elements expressly required in claim 1 of the Calhoun Patent: (1) "an array of depressions;" and (2) "wherein the height of the ridges over the lands ranges from about 3 to about 45 μm." As a result, as a matter of law the McGrath Patent cannot anticipate claim 1.

Moreover, Avery has provided no rationale as to why all of the arguments it wishes to make regarding McGrath could not be made directly to a jury. Avery will have every ability to present its case and to cross-examine 3M's witnesses regarding the McGrath Patent. Now is not the time for those arguments, especially considering the further delay that another round of summary judgment briefing will cause in a case that is nearly four years old.

## II. Summary Judgment Of Anticipation Is Rarely Proper

As Avery cited no case authority in support of its request, 3M will briefly recap the law of anticipation. A patent is presumed valid. 35 U.S.C. § 282. The burden of establishing invalidity of a patent rests on the party asserting invalidity. *Id.* The presumption of patent validity may be rebutted only by clear and convincing evidence. *Poly-America, L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1308 (Fed. Cir. 2004).

Anticipation is a question of fact for the trier of fact, in this case the jury. *Elan Pharms., Inc. v. Mayo Found. for Medical Education and Research*, 304 F.3d 1221, 1227 (Fed. Cir. 2002). Invalidity for anticipation requires that all of the elements and limitations of the claim be found within a single prior art reference. *Scripps Clinic & Research Found. v. Genentech, Inc.*, 927 F.2d 1565, 1576 (Fed. Cir. 1991). To be anticipating, a prior art reference must disclose "each and every limitation of the

[1] In fact, while Avery provided 3M with a list of some 372 patents Avery claimed to "anticipate and/or render obvious" the Calhoun patent during the original fact discovery period, the newly-asserted McGrath patent did not make that list.

claimed invention, must be enabling, and must describe the claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention." *In re Paulsen*, 30 F.3d 1475, 1478-79 (Fed. Cir. 1994).

Avery's request is not simply to be allowed to present evidence of anticipation at trial, but to be granted *summary judgment* of anticipation. Avery's burden is thus even steeper than it would be at trial. Because anticipation is an issue of fact, summary judgment is rarely proper, particularly where the issue is one over which experts disagree. *See Nystrom v. Trex Co., Inc.*, 374 F.3d 1105, 1117-18 (Fed. Cir. 2004) (reversing grant of summary judgment of anticipation). The court must draw all inferences in 3M's favor in considering any summary judgment motion, and, in doing so, if there is a genuine issue of material fact relevant to any one of the factors described above, summary judgment is not proper. *Helifix, Ltd. v. Blok-Lok, Ltd.*, 208 F.3d 1339, 1346 (Fed. Cir. 2000).

Based on these standards, a summary judgment proceeding over the McGrath patent would inevitably devolve into a "battle of experts" and would result in, at a minimum, disputed issues of fact for trial. This alone is sufficient reason to deny Avery's request.

**III. The McGrath Patent Does Not Anticipate The Calhoun Patent**

As explained in the background of the McGrath Patent, the invention Mr. McGrath described when his patent application was filed in 1976 "is first of all an advance in the art of film-covered, exposed-lens retroreflective sheeting . . . " (Col. 1, lines 5-7). The retroreflective sheeting taught by McGrath is used for highway road signs. This technology has nothing to do with the problems solved in the Calhoun Patent, namely: (1) the use of a specially-structured release liner to allow commercial graphics film to be easily repositioned; and (2) the use of a specially-structured release liner to allow air egress from the adhesive side of the graphic. In fact, the McGrath Patent is not directed to a release liner at all, but rather is directed to the structure of retroreflective materials that are completely encased by a "cover film."

**A. <u>McGrath Does Not Teach an "Array of Depressions."</u>**

In its June 20, 2005 Order, the Court construed the claim term "array" as meaning "an orderly arrangement." Order at 13. Avery's letter completely ignores the claim term "array" (as well as the Court's definition of the term), and Avery does not argue that the McGrath Patent contains an "array" as the Court has defined the term.

Avery's silence is understandable, because Avery has nothing to say. There is nothing in the McGrath Patent that teaches that the microsphere layer is laid out in "an orderly arrangement." In fact, Figure 1 of the McGrath Patent actually teaches

***the opposite*** of an "array" – *i.e.*, a random arrangement. In Figure 1 of McGrath reproduced below, the microspheres (shown as black dots within each pocket (14)) are quite clearly laid out randomly:




FIG. 1

The written specification of McGrath is otherwise silent as to the arrangement of the microspheres and how they are applied. At a minimum, the failure of the McGrath Patent to teach that the microspheres are laid out in "an orderly arrangement" creates a genuine issue of material fact precluding summary judgment of anticipation.

### B. McGrath Does Not Teach Ridges Between the Lands "Wherein the Height of the Ridges Over the Lands Ranges From About 3 to About 45 m."

To argue that McGrath teaches the "ridge height" limitation found in the Calhoun Patent, Avery must cobble together disconnected statements from Columns, 3, 4, 5 and Example 1 of the McGrath Patent. But what Avery fails to mention is that all of these statements relate to measurements of the microspheres and the polyethylene layer used in McGrath ***before*** the film is embossed by passing it "between two platens." Col. 6, lines 62-66. Avery argues that this embossing process creates the structure that allegedly anticipates claim 1 of the Calhoun Patent, but Avery fails to cite a single reference to the alleged ridge height ***after*** this structure has been created.

There is no teaching in the McGrath Patent about the height of the "bonds" (13) after the embossing procedure that creates them and adheres the support layer to the cover film. Instead, McGrath merely teaches that the "support layer is heated and pressed sufficiently so that it floods the microspheres in the area pressed and contacts the cover film 12." Column 3, lines 57-60. In order to calculate any so-called "ridge height," one must know how far the support layer and its embedded microspheres have been moved by the platens during the embossing process. In order to calculate a

"ridge height" requires at least three key measurements: (1) the diameters of the microspheres in the area of the "bonds" (13) as compared to the diameters of the microspheres in the area of the "pockets" (14); (2) how far the microspheres in the area of the "bonds" are moved by the platens during embossing; and (3) the extent to which the flooding of the support layer during the embossing moves the cover sheet (12), if at all.

Avery's arguments regarding a "monomolecular layer of air" are nonsensical. This general teaching of the necessity of spacing between the cover sheet and the microspheres does not answer the question of ***how much*** spacing is present in Example 1 after the embossing operation. If anything, this passage teaches that spacing is a must, with no upper limit placed on the amount of spacing, highlighting the fact that one must have more information to determine how much spacing is created in Example 1.

At a minimum, these unanswered technical questions create a genuine issue of material fact for trial. Avery's expert undoubtedly will argue that he is able to calculate a "ridge height" in the McGrath Patent, and 3M's expert(s) will explain that such a calculation is simply impossible without additional information that the McGrath Patent did not teach. Now is not the time to weigh the parties' arguments, which simply highlight the factual dispute as to the so-called "ridge height" in McGrath.

* * *

In sum, the McGrath Patent does not disclose each and every element of claim 1 of the Calhoun Patent. The fact issues described above would make a motion for summary judgment another unnecessary impediment to a trial on the merits. 3M respectfully requests that this Court deny Avery's request and set a trial date.

Sincerely,

John C. Adkisson

JCA/mla

cc: Lawrence M. Hadley, Esq. (via facsimile)
David P. Pearson, Esq. (via facsimile)

60303043.doc