IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

v.

AVERY DENNISON CORPORATION,

Defendant.

Civil Action No. 01-1781 (JRT/FLN)

**3M'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO STRIKE AVERY'S "SUPPLEMENTAL AND REVISED EXPERT REPORT OF DR. ANTHONY J. MCHUGH REGARDING INVALIDITY OF U.S. PATENT NO. 5,897,930 PURSUANT TO FED. R. CIV. P. 26(A)(2)(B)"**

After this case returned to the District of Minnesota from the Federal Circuit last year, Defendant Avery Dennison Corporation ("Avery") asked permission to serve a redlined "Supplemental and Revised Expert Report" from its invalidity expert, Dr. Anthony McHugh. Although Magistrate Judge Noel denied Avery's motion, Judge Tunheim reversed this ruling in part, allowing Avery to supplement its expert report only "in the manner in which it had been proposed."

Almost a year later and after Judge Tunheim has now ruled against it on claim construction motions, Avery has served a new, supplemental expert report six days after the Court-ordered deadline for doing so. Additionally, Avery has once again raised brand-new, undisclosed theories of invalidity, and Avery's expert has now disclosed that (1) he is relying on two new prior art references that Avery has *never* before disclosed to Plaintiffs or the Court; and (2) he is relying on post-discovery "testing" that he conducted

and which has never been turned over to plaintiffs 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company ("3M"). If Avery's last-minute expert testimony were allowed, it would severely prejudice 3M, as 3M can only rely on what Avery provided during the fact discovery period. Avery recognizes this prejudice, as is apparent from what Avery told the Court in July, 2002 in successfully striking a supplemental expert report that 3M attempted to serve:

> Avery will be severely prejudiced by 3M's strategic decision to withhold Dr. Cohen's analysis and opinions, and then spring it on Avery after the close of expert disclosures and discovery, and in the midst of briefing on a summary judgment motion.

(Avery Dennison Corporation's Memorandum of Law in Support of Motion To Strike Expert Report and Preclude Testimony, Docket No. 89 at 13.)

If Avery's reasoning was true in 2002 during the briefing of summary judgment motions, it is certainly true three years later, especially when the Court has set a firm trial date. There is no reason that Avery could not have raised any of these issues during the fact discovery period in this case or, at the very least, in the redlined "supplemental and revised" expert report Avery asked the Court's permission to serve last year. 3M respectfully requests that the Court strike the entire report as untimely, or at least those portions of Avery's new "supplemental and revised" expert report that could have, and should have, been disclosed earlier.[1]

[1] If the Court does not strike the challenged portions of the new "supplemental and revised" report, 3M respectfully requests that its expert, Dr. A. Brent Strong, be allowed to substantively respond to those portions of Dr. McHugh's report.

# I. Background

## A. Initial Proceedings and Appeal to the Federal Circuit

This patent suit has been pending for almost four years. On September 27, 2001, 3M brought suit to stop Avery from infringing 3M's United States Patent No. 5,897,930 ("the '930 Patent"). After an initial summary judgment ruling by Judge Doty and appeal to the Federal Circuit following a stipulated dismissal by the parties, the Federal Circuit reversed Judge Doty's claim construction and grant of summary judgment of noninfringement to Avery on December 2, 2003 and remanded the case for further proceedings consistent with its decision. *See generally 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003). The Federal Circuit's decision largely adopted the claim construction 3M advocated from the beginning. Avery petitioned for rehearing and rehearing en banc of the Federal Circuit's decision, but Avery's petition was denied on January 20, 2004. (Ex. A.)

## B. Proceedings on Remand

On remand, the case was reassigned to Judge Tunheim and Magistrate Judge Noel, who both held pretrial status conferences on April 21, 2004, following the parties' submission of case summaries and proposed trial plans. After the status conference on that date, Magistrate Judge Noel ordered that "[n]o further supplementation of expert reports will be permitted," in accordance with the parties' prior stipulation to that effect. (April 21, 2004 Court Minutes – Civil, Docket No. 154; Ex. B.)

**C. Avery's Motion to Supplement Expert Reports**

Avery then moved to set aside portions of Magistrate Judge Noel's Order. (Docket No. 157.) Avery was so undeterred by that order that Avery actually attached two "redlined" supplemental expert reports to its motion, including one on invalidity. (Docket No. 158, Avery Exs. 7, 8.) According to Avery, its expert, Dr. Anthony J. McHugh, had "already supplemented his reports based on the Federal Circuit's new claim constructions," "redlined" copies of which were exhibits to Avery's moving brief. (Docket No. 158 at 9.)

In its motion appealing Magistrate Judge Noel's order, Avery represented that "limited" supplementation of expert reports was necessary solely to address changes in the claim construction. For example, in its moving brief, Avery stated that "[l]imited supplementation" was needed so that "Avery's expert can offer opinions based on the law of this case," i.e., the Federal Circuit's claim construction. (Docket No. 158 at 1.) Avery further represented that it did "not seek to reopen discovery or have its expert conduct new tests and experiments." (*Id.*; *see also id.* at 7-8 ("[T]he case law does not allow new reports from new experts, *new inspections, testing, and experiments, the generation of new data*, and the introduction of voluminous new discovery—*and Avery does not seek to do so here*." (emphasis added)).)

Avery's representations were the same at oral argument. When Avery's motion to submit a supplemental expert report was heard by the Court, Avery distinguished the *Union Carbide* case relied on by 3M, *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.*, 270 F. Supp. 2d 519 (D. Del. 2003), in opposition to Avery's motion

because, according to Avery, the issue in that case "wasn't just a matter of supplementing expert reports." (Ex. C at 18.) Instead, according to Avery, the issue in *Union Carbide* was "offering new testing, new data." (*Id*.)

Avery's motion to overturn Magistrate Judge Noel's April 21, 2004 Order was granted. On August 30, 2004, during the claim construction hearing, Judge Tunheim reversed Magistrate Judge Noel's order in limited part. Specifically, Judge Tunheim ruled from the bench that supplementation of expert reports would be allowed in order to address the Federal Circuit's new claim construction and the District Court's forthcoming claim construction:

> With respect to the appeals from the magistrate judge, the Court is going to overrule the magistrate judge and will permit revision of the expert report to reflect the federal circuit's and this Court's claim construction. *The Court intends just simply to allow the supplementation in the manner in which it has been proposed and not to start this whole process anew.*

(Ex. C at 54 (emphasis added).) From this language, it is apparent that Judge Tunheim relied on Avery's representations as to the limited scope of supplementation sought in granting Avery's motion. The Court Minutes also reflected the limited scope of supplementation permitted: "The parties will be permitted to file supplemental expert reports reflecting the claim construction provided by the Federal Circuit and this Court. However, no new experts, experimentation, or other discovery will be permitted." (August 30, 2004 Civil Motion Hearing Court Minutes, Docket No. 172.)

Following Judge Tunheim's ruling, Avery sought clarification with respect to the "redlined" supplemental report it had submitted with its motion. Specifically, Avery's counsel asked,

> We have to admit to the possibility that the Court in ruling on the claim constructions before it may have a different view than anybody does or has a different view than we have asserted. Do I understand your order to allow us to file a supplemental expert report that takes into account anything that you say in connection with that order so that – using the document that we have now?

(Ex. C at 54-55.) In response to Avery's question, Judge Tunheim made it clear that Avery's actual supplemental expert report could differ from Avery's "redlined" supplemental report, *but only if the Court adopted some unanticipated claim construction*: "If the Court adopts a construction that was not anticipated, the Court will permit that." (*Id*. at 55.) As discussed below, the Court did not do so.

**D. Avery's Untimely and Improper New "Supplemental and Revised" Expert Report**

Following this hearing, Magistrate Judge Noel held a follow-up case management conference on October 5, 2004. (Docket No. 178.) At that conference, Magistrate Judge Noel ordered that the parties' initial supplemental expert reports now allowed by Judge Tunheim would be due two weeks after Judge Tunheim issued his claim construction ruling and that rebuttal supplemental expert reports would be due two weeks after the initial supplemental reports were served. (*See* Follow-Up Case Management Conference Court Minutes, Docket No. 178.)

On June 20, 2005, Judge Tunheim issued the "Memorandum Opinion and Order Construing Disputed Claims." (Docket No. 181.) The Court's *Markman* order rejected Avery's construction of the terms "depressions" and "carrier web." (*See id.* at 6-11, 13.)

Two weeks after Judge Tunheim issued his *Markman* ruling, on July 5, 2005, 3M served its supplemental expert report on infringement, as required by Magistrate Judge

Noel’s October 5, 2004 Order. Avery, however, did not timely serve its supplemental expert report on invalidity. Instead, six days after it was due, on July 11, 2005, Avery served the “Supplemental and Revised Expert Report of Dr. Anthony J. McHugh Regarding Invalidity of U.S. Patent No. 5,897,930 Pursuant to Fed. R. Civ. P. 26(a)(2)(B).” (Ex. D.)

Avery’s July 11, 2005 “supplemental and revised” report differs substantially and substantively from the original “redlined” “supplemental and revised” report Avery submitted, especially in three respects. First, the new report opines that claims 1-5 of the ’930 patent are anticipated by “U.S. Patents 3,190,178 (McKenzie ’178), 4,025,159 (McGrath ’159), 4,075,049 (Wood ’049), and 3,989,775 (Jack ’775).” (Ex. D at 4; 15-20.) The original “redlined” report, however, opined that claims 1-5 of the ’930 patent are anticipated by “McGrath ’159, Jack ’775, and United States Patent 5,487,929.” (Ex. E at 3-4, 20-22.) Thus, the new “supplemental and revised” report *added* two new patents as supposedly anticipatory references—McKenzie and Wood.

Second, the new report reflects testing of 3M products that was apparently conducted by Avery’s expert. (Ex. D at 17.) According to the new report, “[t]ests of 3M reflective materials confirm that the ridge height will not exceed the diameter of the microspheres, and generally extend less than 90% of the sphere diameter.” (*Id*.) The

original "redlined" "supplemental and revised" report did not reference this testing. (*See generally* Ex. E.) Third, the new report included a new expert opinion on inventorship.[2]

In sum, none of this new content was contained in Avery's original "redlined" report submitted as an exhibit to Avery's motion for reconsideration seeking to submit a supplemental expert report. On July 29, 2005, counsel for the parties met and conferred on these issues, and Avery refused to withdraw the untimely report as a whole or the portions that relate to the new references and new testing.

## II. Argument

Avery's new "supplemental and revised" expert report is untimely and exceeds the scope of supplementation permitted by the Court. The resulting prejudice to 3M should not be excused.

3M will be prejudiced if Avery's new report is not stricken. Discovery is closed in this matter. Trial is scheduled firmly to begin on December 12, 2005, and motions in limine are due on November 14, 2005. 3M cannot be made to repeatedly respond to new arguments not disclosed during discovery, particularly arguments related to undisclosed testing by Avery. Indeed, Avery must recognize the prejudice to 3M that would result from the inclusion of its new "supplemental and revised" report—Avery successfully struck 3M's expert report by Dr. Donald K. Cohen much earlier in the case by claiming prejudice. (*See* Dennison Corporation's Memorandum of Law in Support of Motion To

[2] Specifically, the report included the entirely-new expert opinion that "Claims 1-5 fail to disclose all the proper inventors." (Ex. D at 4, 32-33.) This same argument, however, had appeared in a discovery pleading from Avery served on June 24, 2002.

Strike Expert Report and Preclude Testimony, Docket No. 89 at 6.) The prejudice to 3M from Avery's new report at this stage of the case with a set trial date in the near future is obviously far greater. Aside from prejudice, as Rule 16 makes clear, the focus of the Court's inquiry should be on Avery's diligence in not bringing these references to 3M's (or the Court's) attention sooner. *See* Fed. R. Civ. P. 16(b) advisory committee's note (1983); *Bradford v. DANA Corp*., 249 F.3d 807, 809 (8th Cir. 2001) (explaining that the "primary measure" is the non-compliant party's "diligence in attempting to meet the case management order's requirements"); *see also Luigino's Inc. v. Perzrow Co., Inc*., 178 F.R.D. 523, 525 (D. Minn. 1998) (explaining that Rule 16(b) focuses on the showing of good cause and diligence by the non-compliant party, not whether the opposing party will be prejudiced).

There is no question that the Court has the power to strike Avery's new report to prevent prejudice to 3M and to not reward Avery's lack of diligence. Courts have the authority to strike expert testimony if a party fails to obey a scheduling or pretrial order. *See* Fed. R. Civ. P. 16(f), 37(b)(2)(B), and 37(c); *Boardman v. National Med. Enter*., 106 F.3d 840, 843 (8th Cir. 1997). Likewise, if an expert submits new opinions after a court's imposed deadlines, that testimony is appropriately excluded. *See*, *e.g*., *Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 586, (D.N.J.), *aff'd*, 156 F.R.D. 589 (D.N.J. 1994) (granting motion to preclude expert testimony for expert witness untimely

---

(Ex. F at 4-5.) Avery's counsel agreed to withdraw the "inventorship" section of the report after the parties met and conferred on July 29, 2005.

designated in violation of court order). Accordingly, 3M respectfully requests that Avery's new report be stricken.

**A. Avery's New "Supplemental and Revised" Expert Report Is Untimely.**

Judge Noel ordered that supplemental expert reports would be due two weeks after the Court's claim construction ruling. (Docket No. 178.) Because the Court issued its claim construction order on June 20, 2005, the due date for the supplemental reports allowed by the Court was therefore July 5, 2005, given the July 4 Independence Day holiday. But Avery submitted the new "supplement and revised" report of Dr. McHugh on July 11, 2005. Thus, there is no question that Avery's report is untimely.

Avery's untimely report should be stricken for violating the Court's scheduling order. *See, e.g.*, *Anderson v. Raymond Corp.*, 340 F.3d 520, 524-25 (8th Cir. 2003) (holding that the district court properly struck an expert's testimony because a party disclosed the expert late); *Bizzle v. McKesson Corp.*, 961 F.2d 719, 722 (8th Cir. 1992) (holding that the district court did not err by striking the untimely designation of expert testimony). Indeed, Avery's untimely report is even more inexcusable because it was Avery who sought the Court's permission to file a supplemental report in the first place. The Court should not give Avery "a second bite at the apple." *See Anderson*, 340 F.3d at 525 ("As for [the expert witness], the district court was not required to reopen discovery to give Anderson a second bite at the apple. Nonetheless, the district court provided Anderson an opportunity to save her case by giving her a month . . . to produce a new expert. Anderson failed to do so in time.").

A scheduling order is not a "frivolous piece or paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Alholm v. American S.S. Co.*, 167 F.R.D. 75, 79 (D. Minn. 1996). "Adherence to reasonable deadlines is . . . critical to maintaining integrity in court proceedings." *Id.* (internal quotation omitted). Avery's cavalier disregard for the Court's deadline should have consequences. And missing the Court's deadline is not the only problem with Avery's new "supplemental and revised" report. Avery's report violated not only Magistrate Judge Noel's scheduling order, but also Judge Tunheim's order granting Avery's motion to file such a report in the first place.

**B. The Scope of Avery's New "Supplemental and Revised" Expert Report Violates the Court's Order.**

In allowing the supplementation of expert reports, Judge Tunheim explicitly ruled that it would "permit revision of the expert report *to reflect the federal circuit's and this Court's claim construction*." (Ex. C at 54 (emphasis added).) In addition, the Court provided further language as to its intent, making the scope of its ruling even more explicit: "*The Court intends just simply to allow the supplementation in the manner in which it has been proposed and not to start this whole process anew*." (*Id*. (emphasis added).) Accordingly, the inclusion of new matter in Avery's new "supplemental and revised" expert report clearly exceeds the limited supplementation the Court allowed, and these parts of the report should be stricken. *See, e.g.*, *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 310 (S.D.N.Y. 2003) (striking a revised expert report because it went beyond the limited modification previously allowed by the court).

**1. Avery's New "Supplemental and Revised" Expert Report Improperly Includes Two Additional Purportedly Anticipatory References.**

As discussed above, Avery's new "supplemental and revised" expert report references two new prior art patents—Wood and McKenzie—that were not referenced in the original expert report of Dr. McHugh or in the original "redlined" report that Avery submitted in support of its prior motion. (Ex. D at 4; 15-20.) This is true despite the fact that, during the fact discovery period, Avery previously provided 3M with a list of some 372 patents, all of which Avery claimed to "anticipate and/or render obvious" the Calhoun patent. (Ex. G.) There is no reason Avery could not have included those references in its original "redlined" report. Indeed, these patents are old—Wood issued in 1978 and McKenzie issued in 1965. As shown above, the Court's *Markman* ruling was not unanticipated. Indeed, the ruling largely adopted 3M's position and created no issue that would make Wood and McKenzie more relevant than they were before the ruling. Therefore, new references were not permitted by the Court. Avery should not be allowed to add additional references now, especially because 3M has no effective way to determine Avery's position on those references prior to trial.

During the parties' meet and confer, Avery's counsel suggested that Avery's supplementation was proper because the patent statute, 35 U.S.C. § 282, provides a 30-day deadline for parties to provide notice of prior art on which the party may rely at trial. But the caselaw is clear that Avery cannot use the 30-day notice requirement and a "supplemental" expert report to backdoor into the case a prior art reference it *never* disclosed in discovery. For example, in *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534 (Fed.

Cir. 1998), the Federal Circuit examined a nearly identical fact situation to that present here. In *ATD*, fact discovery closed on August 31, 1995. On December 1, 1995, Lydall served ATD with a "Notice of Prior Art Pursuant to 35 U.S.C. § 282" listing a prior art reference that had not—as here—been disclosed in response to any of the discovery requests or otherwise during the discovery period. *Id.* at 550.

On these facts, the Federal Circuit ruled unequivocally that a court order trumps the minimum Section 282 period:

> when the court has set and the parties have agreed to a discovery period, that procedure necessarily governs that trial. Thus, although § 282 sets a minimum period for the identification of prior art to be introduced as evidence of anticipation, *a specific judicial directive for the timing of discovery establishes the procedures to which the parties are bound*.

*Id.* at 551 (emphasis added). Applying *ATD*, this Court has reached a similar result. *See ADC Telecommunications, Inc. v. Thomas & Betts Corp*., 2001 WL 1381098 (D. Minn. Oct. 18, 2001) (striking prior art references, despite the defendant's argument that prior art disclosures were not due until thirty days prior to trial.)

For these reasons, those portions of Avery's new "supplemental and revised" report that relate to the Wood and McGrath patents should be stricken.

### 2. Avery's New "Supplemental and Revised" Expert Report Improperly Includes New Tests of 3M's Product.

Avery's "supplemental and revised" report also includes new testing apparently performed by Dr. McHugh related to the McGrath patent. (Ex. D at 17.) This is contrary

to the Court's explicit order, as well as to Avery's explicit representations to the Court.[3] In granting Avery's motion to reconsider, the Court made it plain that further testing was not going to be permitted as part of the supplementation of expert reports. (August 30, 2004 Civil Motion Hearing Court Minutes, Docket No. 172 ("However, no new experts, experimentation, or other discovery will be permitted.").)

In fact, Avery represented that no further testing would be performed—both in its briefing and oral argument. In its brief, Avery said this repeatedly. (Docket No. 158 at 1 ("Avery does not seek to reopen discovery or have its expert conduct new tests and experiments."); *id*. at 7-8 ("[T]he case law does not allow new reports from new experts, new inspections, testing, and experiments, the generation of new data, and the introduction of voluminous new discovery—and Avery does not seek to do so here.").) Likewise, at oral argument, Avery said that "[t]he experts . . . should not be allowed to do new testing." (Ex. C at 20.)

Further, Avery distinguished authority relied on by 3M on this very basis. In its moving brief, Avery said that "*Union Carbide* is inapposite. . . . The defendants' new experts [in *Union Carbide*] also offered additional testing data . . . ." (Docket No. 158 at 6.) And at during the hearing on its motion to supplement expert reports, Avery distinguished the *Union Carbide* case again for this same reason:

[3] During the parties' meet and confer, Avery's counsel suggested that this testing was performed "years ago," and as such, is allowable. Whether the testing was performed this year, last year, or five years ago, the fact is that it was *never* disclosed in this case until 3M received Dr. McHugh's new report on July 11. As such, Judge Tunheim's August 30, 2004 Order prohibiting any new "experimentation" squarely applies to this testing.

> 3M also points to the *Union Carbide* case where a district court in Delaware disallowed supplementing expert reports. The case is distinguishable on a number of levels . . . . It wasn't just a matter of supplementing expert reports. It was a matter of taking extensive, new discovery, offering new testing, new data, new experts, no [new] opinions. Here we're not seeking to offer new experts, new testing, new data, new opinions.

(Ex. C at 18.)

Avery's misrepresentations regarding testing are even more egregious because the Court explicitly relied upon them in allowing the "limited" supplementation of expert reports Avery sought. As shown above, the Court stated that it relied on Avery's representations in granting Avery's motion. Specifically, the Court stated that it was only granting Avery's motion to supplement "*in the manner in which it has been proposed*." (Ex. C at 54 (emphasis added).)

For these reasons, those portions of Avery's new "supplemental and revised" report that relate to post-discovery testing should be stricken.

## III. Local Rule 37.1 Certification

3M certifies that counsel for 3M and Avery met and conferred on this motion on July 29, 2005. Although Avery agreed to withdraw the new expert opinion on inventorship in the new report, the parties were otherwise unable to reach agreement with respect to 3M's motion.

## IV. Conclusion

For the reasons provided above, 3M respectfully requests that the Court strike Avery's entire "supplemental and revised" expert report on invalidity by Dr. McHugh as untimely, or, in the alternative, strike those improper portions of the report that relate to

(1) the Wood and McKenzie Patents and (2) previously-undisclosed testing on 3M's product performed by Avery's expert.

Dated: August 1, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke

Jonathan E. Singer (#283459)
John C. Adkisson (#266358)
Katherine A. Moerke (#312277)
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks (Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Tel: (858) 678-5070
Fax: (858) 678-5099

Kevin H. Rhodes
3M Innovative Property Company
3M Center
P.O. Box 33427
St. Paul, MN 55133

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY