# EXHIBIT F

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY<br><br>and<br><br>MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>AVERY DENNISON CORPORATION<br><br>Defendant. | Civil Action No. 01-CV-1781 (DSD/FLN) |

**AVERY DENNISON CORPORATION'S SECOND SUPPLEMENTAL RESPONSE TO 3M'S INTERROGATORY NO. 5**

Pursuant to Fed. R. Civ. P. 33, Defendant Avery Dennison Corporation ("Avery") hereby objects and provides this second supplemental response to Plaintiffs 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company (collectively, "3M") Interrogatory No. 5 from its First Set of Interrogatories (Nos. 1-15), as follows.

**RESTRICTED CONFIDENTIAL--**

**COUNSEL ONLY**

## RESERVATIONS OF RIGHTS

Avery provides this second supplemental response to Interrogatory No. 5 of 3M's First Set of Interrogatories without prejudice to Avery's right to further supplement and amend its response. Avery also reserves the right to produce or use any information or documents that are discovered after service of this second supplemental response in support of or in opposition to any motion, in depositions, or at trial. In responding to the Interrogatory No. 5, Avery does not waive any objections on the grounds of privilege, relevance, authenticity, or admissibility of the information contained in this second supplemental response. Avery expressly reserves the right to the use of this second supplemental response or the subject matter contained in them during any subsequent proceeding, including the trial of this or any other action.

## GENERAL OBJECTIONS

Avery incorporates the general objections from its first supplemental response to Interrogatory No. 5 in full, including the objection to the Time Period.

## SECOND SUPPLEMENTAL INTERROGATORY ANSWER AND OBJECTIONS

These objections are based solely upon the information presently known to Avery. Avery specifically incorporates each of the General Objections into its second supplemental response for 3M's Interrogatory No. 5 irrespective of whether such Objection is expressly referred to by Avery's response to that specific discovery request. The repetition or omission of a particular General Objection in the response is not a waiver of any of Avery's General Objections.

This second supplemental response is based solely upon the information presently known to Avery. Fact and expert discovery in this matter is not complete. For example, Avery has not completed the depositions of John Hornickel or the 30(b)(6) deposition relating to the Sawka patent. In addition, Avery has requested certain documents that have not yet been produced, including certain prior art. Until all this discovery is complete, Avery cannot respond fully to this interrogatory. Avery reserves its right to further supplement and/or amend this response once the discovery is completed.

Subject to the foregoing General Objections, Avery provides the following second

supplemental response and additional objections to Interrogatory No. 5:

**INTERROGATORY NO. 5:**

State all bases (in the form of a claim chart) for Avery's contention that the '930 Patent is invalid under 35 U.S.C. §§ 101, 102, 103, or 112, including by identifying for each claim of the '930 Patent the specific reference(s) that allegedly anticipates the claim or renders it obvious, the specific subsection(s) of § 102 pursuant to which each such reference is contended to be prior art to the '930 Patent, where each element of the claim is found in each of such reference(s), the specific combination or combinations of such references that allegedly render the claim obvious, all suggestions or motivations to make such combination or combinations, the level of skill in the applicable art, the specific subsection(s) of § 112 that form the basis for Avery's contention of invalidity under that section of the Patent Act and the basis for that contention, the basis for Avery's contention of invalidity under § 101, and each person with factual information supporting Avery allegations of invalidity under 35 U.S.C. §§ 101, 102, 103, or 112 and the nature and extent of the information known to each person material to this defense.

**SECOND SUPPLEMENTAL ANSWER AND ADDITIONAL OBJECTIONS:**

Avery objects to this interrogatory because Interrogatory No. 5 is not one interrogatory. It separately requests a multitude of information about Avery's invalidity contentions with respect to each of claims 1-12, and the identity of each person with factual information supporting Avery's invalidity contentions. Accordingly, by answering so-called "Interrogatory No. 5," Avery deems 3M to have expended 12 of its 25 allotted interrogatories.

Avery also objects to this interrogatory to the extent that it seeks information protected by the attorney-client privilege and/or the work-product doctrine. Subject to the foregoing special and General Objections, and pending completion of discovery and further investigation, and further reserving its right to further supplement and amend upon obtaining further discovery, Avery supplements its response as follows.

Avery further contends that each claim of the '930 patent is invalid (i) under 35 U.S.C. § 102(g) because prior to Dr. Calhoun's invention described in the '930 patent, Dr. Sher made the

invention without abandoning, suppressing, or concealing it; (ii) under 35 U.S.C. § 102(f) because the '930 applicants themselves did not invent the subject matter sought to be patented; and (iii) under 35 U.S.C. § 112, ¶ 1 for failure to set forth the best mode known to and contemplated by the true inventors of carrying out the invention described and claimed in the '930 patent.

**Claim Construction**

With respect to construction of claims 1-12 of the '930 patent, Avery's contentions are set forth in Avery's "Amended Claim Construction Contentions And Present List of Invalidating Prior Art," dated May 4, 2002, which is incorporated herein in full as if set forth in full herein.

**Prior Invention By Dr. Sher**

Dr. Calhoun testified that he conceived of the invention claimed in the 930 patent (excluding the ridge height limitation) no earlier than April 19, 1995. Separately, Dr. Sher had earlier conceived an invention relating to graphic films. Specifically, Dr. Sher's laboratory notebook shows that on January 13, 1995—approximately three months before Dr. Calhoun's earliest possible date of conception—Dr. Sher, together with Dan Fleming of 3M, had conceived every element of the invention claimed in the '930 patent (including ridge heights within the claimed range). (See 3M 018504). Dr. Sher confirmed the prior conception during his deposition. Dr. Sher did not abandon, suppress, or conceal his prior invention. To the contrary, Dr. Sher reduced the invention to practice and 3M, Dr. Sher's assignee, applied for and obtained a separate patent resulting from Dr. Sher's work and invention. (See U.S. Patent 6,197,397 (the '397 patent)). Accordingly, Dr. Sher invented the subject matter of each claim in the '930 patent before Dr. Calhoun's invention of same, and Dr. Calhoun's '930 patent is invalid under 35 U.S.C. § 102(g).

**Failure To Name the Correct Inventors**

The '930 patent does not name all the correct inventors. During prosecution of the application for the '930 patent, the patent examiner made clear that he allowed the claims only because he was unaware of prior art suggesting or teaching "a carrier web with ridges and land

[sic] that ranges [sic] from about 3 to 45 μm." (See Notice of Allowability, p. 2, para. 2). Accordingly, the ridge height limitation added during prosecution was clearly necessary to be added to the other claim limitations to distinguish the claimed elements as patentably novel in the mind of the Examiner at that time. Yet, Dr. Calhoun testified that neither he nor Mr. Koskenmaki conceived of or developed the 3 to 45 μm ridge height limitation. In fact, Dr. Calhoun did not recall who invented the critical height limitation recited in each claim of the '930 patent. Nor did Dr. Calhoun recall doing any work on the invention except taking a piece of Controltac Plus liner and embossing it during his lunch hour. Likewise, Dr. Calhoun's notebooks do not show any work relating to ridge height limitation of the '930 patent claims.

Dr. Calhoun, however, did recall that Mr. Meixner and Dr. Sher did work that may have resulted in the claimed ridge height limitation. Supporting Dr. Calhoun's recollection, Dr. Sher testified that he worked with Messrs. Loncar and Meixner in determining optimal ridge heights on a carrier web used in connection with pressure sensitive adhesive claimed in his '397 patent. (See Sher Deposition, p. 39). Dr. Sher's laboratory notebooks support his testimony, showing considerable work relating to ridge height analysis. Thus, Sher, Meixner and/or Loncar should have been named inventors on the '930 patent. Because only Dr. Calhoun and Mr. Koskenmaki are listed as inventors of the '930 patent, and they admittedly did not invent the entire subject matter of the '930 patent, the patent is invalid under 35 U.S.C. § 102(f).

Other facts give rise to an inference that the erroneous naming of inventors for the '930 patent arose from a deceptive intent. Specifically, the facts strongly suggest that all the inventors were not listed (i) to avoid a double patenting rejection, (ii) to keep certain knowledge of the unnamed inventors as a trade secret, and (iii) to avoid disclosing to the PTO all prior art known to all the true inventors.

*The Concealed Double Patenting Problem*

Had 3M disclosed all the correct inventors, the circumstances surrounding the application for the '930 patent made it a likely candidate for a double patenting rejection. 3M filed the applications for both the '930 patent (application no. 775,736) and for the '397 patent

(application no. 775,844) on the same day. The specification of the two applications are largely duplicative. Indeed, the two applications incorporate each other by reference and share an identical preferred embodiment. More importantly, the Calhoun and Sher patents, as issued, meet the double patenting test. The subject matter of at least one claim in the Sher '397 patent is not patentably distinct from at least one claim in the Calhoun '930 patent. For example, claim 12 of the Calhoun '930 patent contains each limitation in claim 23 of the Sher patent. Likewise, Sher claim 23 is obvious in light of Calhoun claim 12. Other claims between the two patents are similar in scope.

3M, as a custom and practice, seeks to prosecute and be awarded as many patents as possible, whether or not they are valid. This conduct is fundamental to 3M's wrongful and anticompetitive business strategy of aggressively enforcing patents that are invalid, or which do not cover the accused products or processes, to force competitors without substantial market share to expend an extraordinarily disproportionate amount of money defending patent infringement actions and to ultimately drive them from the marketplace.

3M engaged in this wrongful deceptive conduct in connection with the applications that led to the issuance of the '930 and the '397 patents.

3M knew that filing two very similar applications on the same day with the same inventors could give rise to a double patenting rejection of either or both applications. In fact, about the time 3M filed the two applications for Calhoun '930 and Sher '397, 3M was facing a double patenting rejection under similar circumstances. Specifically, the patent office had rejected as invalid another 3M patent application on double patenting grounds where 3M had filed on the <u>same</u> day two applications by the <u>same</u> inventors that covered essentially the same subject matter. Ultimately, the Federal Circuit upheld the rejection. <u>See</u> <u>In re Berg</u>, 140 F.3d 1428 (Fed. Cir. 1998).

To avoid and deceptively conceal the very same double patenting invalidity problem to the Sher and/or Calhoun patent applications that 3M was facing in the <u>Berg</u> applications, 3M selectively named a different set of inventors for each of the Calhoun and Sher applications. For


RESTRICTED CONFIDENTIAL--COUNSEL ONLY

the application for the '930 patent 3M listed Calhoun and Koskenmaki as inventors, whereas for the application for the '397 patent 3M listed Sher, Mexiner, Loncar, and Calhoun as inventors. For the reasons discussed above, the application for the '930 patent did not list all the proper inventors—Sher, Meixner, and/or Loncar should have been named. By concealing the true inventorships and naming different inventors, 3M greatly reduced the risk of a double patenting invalidity rejection of one or the other of the applications. In fact, 3M's deceptive strategy worked—with different inventors named on the two patent applications, 3M did avoid a double patenting rejection and was awarded an invalid '930 patent which it has wrongfully used to drive a legitimate competitor--Avery--from the marketplace defined by the products in suit.

*The Concealed Best Mode Problem*

3M did not include all the actual inventors of the '930 patent in order to keep as a trade secret certain aspects of embossing the liner disclosed in the '930 patent. Dr. Calhoun testified that he conceived the idea of adding a second embossment to the liner used in 3M's then existing Controltac Plus product to make air egress channels in the adhesive layer. But Dr. Calhoun's testimony and his laboratory notebooks both make clear that he did no work to determine the best way for making embossments that optimize air egress properties in the adhesive. Instead, Sher, Meixner, and Loncar extensively studied for nearly one year the air egress achieved in an adhesive by various embossed ridge shapes, sizes, and patterns on a liner. By not naming Sher, Meixner, and/or Loncar as inventors on the application for the '930 patent, 3M was able to keep its extensive work regarding the optimal embossing methods a trade secret. 3M's own documents confirm that 3M's strategy for its new graphic films included seeking patent protection on the web and the adhesive, while keeping its embossing method a trade secret. (See Exhibit 504 (3M 017850)). Yet, not including Sher, Meixner, and/or Loncar as named inventors to keep their embossing techniques as trade secrets is inherently deceptive.

In terms of the best mode for embossing known to at least Dr. Sher, but not disclosed in the '930 patent application, Dr. Sher determined optimal embossed ridge shape, orientation, and intersection replication. For example, Dr. Sher's notebooks show that, prior to the December 31,

1996 filing date for the '930 patent, he learned that (1) a "double" ridge shape at a 45 degree angle provided faster air egress, (2) better air egress was achieved using a ridge cross section area exceeding 2500 square microns, (3) variations in embossing temperature and pressure affected intersection definition (resulting in less air blockage), (4) a higher embossing temperature produced a better intersection definition, (5) the ridges should be curved in shape rather than with vertical walls, (6) deeper channels combined with narrower channel width provided better intersection definition, and (7) a "volcano" shape at the intersection leads to air blockage.

*The Concealed Prior Art Problem*

3M did not include all the actual inventors of the '930 patent in order to conceal and avoid submitting certain prior art to the patent office in connection with prosecution of the patent application. During prosecution of the application for the '930 patent, 3M disclosed only prior art relating to embossing. However, 3M did not disclose prior art relating to air egress in pressure sensitive adhesives, including prior art disclosing small embossments in a liner to make air egress channels. These references known to 3M and the true inventors but not disclosed include: U.S. Patent No. 3,301,741; U.S. Patent No. 4,023,570; U.S. Patent No. 4,397,905; U.S. Patent No. 5,268,228; U.S. Patent No. 5,298,791; U.S. Patent No. 5,650,215; foreign patent documents: 0 580 981 B1 (DE); 0 279 579 (EP); 0459 059 A2 (EP); 1 511 060 (GB); 3 243 677 (JP); 7-138541 (JP); 0 580 981 B1 (EP); and Japanese Utility Model Application 2587198.

Although the named inventors of the '930 patent may have been unaware of such references, persons who should have been named as inventors had knowledge of most or all of these references. In fact, Dr. Sher maintained several files in which he kept some of this art.

**Failure To Disclose Best Mode Known to True Inventors**

Even if 3M had named the correct inventors (or could do so now), the '930 patent would still be invalid under 35 U.S.C. § 112, ¶ 1 (best mode) for the reasons described above.

**Knowledgeable Persons**:

Individuals knowledgeable about the foregoing include, but are not limited to, the '930

patent inventors, the inventors of U.S. Patent Nos. 6,197,397 and 6,203,885, individuals involved in the prosecution of the foregoing patents, other 3M employees involved in the development of the Controltac, Controltac Plus and Controltac Plus Comply products, and Dr. Anthony J. McHugh.

Should 3M attempt to, or in fact, change the named inventors on the '930 patent, Avery reserves the right to offer additional expert opinions on issues that relate to changed inventorship, including, but not limited to, deceptive intent, the best mode and double patenting.

DATED: June 24, 2002

HENNIGAN, BENNETT & DORMAN

By ______________________
Armand F. Ayazi

David P. Pearson
WINTHROP & WEINSTEIN, P.A.
3000 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
Armand F. Ayazi
HENNIGAN, BENNETT & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO, BOISSELLE & SKLAR, P.L.L.
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-6155 - Facsimile