# EXHIBIT G

IN
THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | |
| Plaintiffs, | Civil Action No. 01-CV-1781 (DSD/FLN) |
| vs. | |
| AVERY-DENNISON CORPORATION, | |
| Defendant. | |

**DEFENDANT'S AMENDED CLAIM CONSTRUCTION CONTENTIONS AND PRESENT LIST OF INVALIDATING PRIOR ART**

Defendant Avery Dennison Corporation ("Avery"), in view of intervening discovery, investigation and further analysis, hereby amends its submission made pursuant to paragraph 2 of the parties' Stipulation to Amend Pretrial Schedule, dated March 26, 2002. Investigation and discovery is ongoing in this case. Avery provides this amended submission based on information currently known to it and based on its investigation and discovery thus far. Fact discovery in this matter is not complete. Specifically, and for example, Avery has noticed the deposition of Clyde Calhoun, a co-inventor of the '930 patent, and his deposition is not yet scheduled. In addition, expert discovery in this case has not yet begun. Avery provides this submission without prejudice to Avery's right to later supplement or amend its submission in view of additional discovery, investigation and analysis. Avery also reserves the right to produce, use or rely upon any information, document or prior art that are discovered or brought to its attention after the service of this submission in support of or in opposition to any motion, in depositions, or at trial.

Subject to the foregoing limitations, Avery amends its list of invalidating prior art and claim construction contentions as follows:

## A. Each Item of Prior Art That Defendant Contends Anticipates or Renders Obvious Any Claim of the '930 Patent

Avery states that it may rely upon the references cited during the prosecution of the '930 patent and any continuation, divisional, cross-referenced, related U.S. and/or foreign applications or patents to support Avery's prior art invalidity defenses under 35 U.S.C. §§ 102 and/or 103. In addition, Avery contends that one or more of the references identified in the list below or (others to be identified later) anticipate and/or render obvious each claim of the patent-in-suit, and also evidence the state of the art and the level of skill in the relevant art during the relevant timeframe.

The prior inventions and works of Mike Hannington on embossed retroreflective material identified in his April 12, 2002 deposition in this action.

USPN 1,511,060
USPN 1,541,311
USPN 1,056,482

USPN 2,555,564
USPN 2,592,801
USPN 2,196,804

USPN 3,301,741
USPN 3,944,692
USPN 3,611,919
USPN 3,331,729
USPN 3,036,945
USPN 3,314,838
USPN 3,346,105
USPN 3,413,168
USPN 3,616,156
USPN 3,386,846
USPN 3,993,815
USPN 3,922,435
USPN 3,802,947
USPN 3,615,992
USPN 3,741,786
USPN 3,953,639
USPN 3,409,991
USPN 3,997,702
USPN 3,779,850
USPN 3,927,706
USPN 3,814,647

USPN 3,769,114
USPN 3,887,678

USPN 4,713,273
USPN 4,023,570
USPN 4,397,905
USPN 4,861,635
USPN 4,968,562
USPN 4,994,322
USPN 4,913,926
USPN 4,289,821
USPN 4,322,450
USPN 4,427,732
USPN 4,377,050
USPN 4,761,320
USPN 4,889,234
USPN 4,054,697
USPN 4,151,319
USPN 4,376,151
USPN 4,587,152
USPN 4,556,595
USPN 4,605,592
USPN 4,735,837
USPN 4,855,170
USPN 4,986,866
USPN 4,965,113
USPN 4,873,132
USPN 4,859,512
USPN 4,728,380
USPN 4,430,137
USPN 4,743,488
USPN 4,666,751
USPN 4,775,572
USPN 4,053,669
USPN 4,539,056
USPN 4,333,980
USPN 4,736,048
USPN 4,544,590
USPN 4,163,822
USPN 4,529,654
USPN 4,517,044
USPN 4,092,198
USPN 4,037,816
USPN 4,223,067
USPN 4,546,900
USPN 4,615,754
USPN 4,612,075
USPN 4,329,385

USPN 4,981,544
USPN 4,902,594
USPN 4,288,481
USPN 4,089,731
USPN 4,131,663
USPN 4,035,549
USPN 4,946,527
USPN 4,948,663
USPN 4,737,112
USPN 4,629,663
USPN 4,606,962
USPN 4,568,602
USPN 4,555,284
USPN 4,548,862
USPN 4,547,431
USPN 4,546,037
USPN 4,546,029
USPN 4,518,643
USPN 4,472,480
USPN 4,219,376
USPN 4,214,028
USPN 4,171,397
USPN 4,415,615
USPN 4,374,883
USPN 4,418,120
USPN 4,166,152
USPN 4,726,982
USPN 4,732,800
USPN 4,702,948
USPN 4,109,665
USPN 4,400,422
USPN 4,396,448
USPN 4,552,615
USPN 4,720,325
USPN 4,326,002
USPN 4,325,768
USPN 4,158,073
USPN 4,988,567
USPN 4,630,891
USPN 4,551,297
USPN 4,320,162
USPN 4,045,153
USPN 4,985,342
USPN 4,978,565
USPN 4,930,266
USPN 4,908,273
USPN 4,894,277
USPN 4,822,687

USPN 4,818,610
USPN 4,814,040
USPN 4,385,951
USPN 4,637,943
USPN 4,287,013
USPN 4,783,354

USPN 5,405,675
USPN 5,141,790
USPN 5,298,791
USPN 5,296,277
USPN 5,362,516
USPN 5,268,228
USPN 5,437,754
USPN 5,449,540
USPN 5,462,765
USPN 5,643,668
USPN 5,906,883
USPN 5,227,233
USPN 5,344,693
USPN 5,866,220
USPN 5,487,929
USPN 5,676,787
USPN 5,194,299
USPN 5,273,805
USPN 5,589,246
USPN 5,591,290
USPN 5,958,309
USPN 5,246,762
USPN 5,008,139
USPN 5,061,535
USPN 5,073,457
USPN 5,080,957
USPN 5,130,185
USPN 5,322,731
USPN 5,344,681
USPN 5,458,983
USPN 5,607,763
USPN 5,625,006
USPN 5,665,446
USPN 5,090,762
USPN 5,039,172
USPN 5,871,607
USPN 5,342,469
USPN 5,705,011
USPN 5,958,447
USPN 5,508,084
USPN 5,203,941

USPN 5,506,031
USPN 5,889,118
USPN 5,599,618
USPN 5,154,956
USPN 5,229,186
USPN 5,158,557
USPN 5,250,253
USPN 5,234,734
USPN 5,693,405
USPN 5,304,272
USPN 5,169,704
USPN 5,051,310
USPN 5,037,680
USPN 5,032,003
USPN 5,698,276
USPN 5,639,530
USPN 5,405,675
USPN 5,147,698
USPN 5,374,468
USPN 5,718,789
USPN 5,858,160
USPN 5,582,102
USPN 5,455,103
USPN 5,425,977
USPN 5,079,058
USPN 5,145,544
USPN 5,691,034
USPN 5,585,178
USPN 5,382,464
USPN 5,300,340
USPN 5,141,740
USPN 5,087,494
USPN 5,017,255
USPN 5,354,597
USPN 5,501,679
USPN 5,429,856
USPN 5,458,719
USPN 5,338,590
USPN 5,278,271
USPN 5,650,215

USPN 6,197397
USPN 6,203,885 B1
USPN 6,123,890
USPN 6,083,616
USPN 6,315,851 B1
USPN 6,015,606
USPN 6,077,560

USPN 6,129,971
USPN 6,217,981
USPN 6,074,745
USPN 6,060,159

JP 09114383A1
JP 01684502 A
JP 07090231 A
JP 09141812 A
JP 04031478 A
JP 05261867 A
JP 05254066 A
JP 05254061 A
JP 03231981 A
JP 08100155 A
JP 02025229
JP 08048951 A1
JP 08048951 A2

JP 11323790A2
JP 10274940A2

JP 2229875 A
JP 2587198
JP 271629
JP 2075679 A

JP 3-243677
JP 3062874 A

JP 59078285 A
JP 5-309885
JP 5269846
JP 59-53787
JP 5314259 A
JP 5271629 A
JP 55129477A1
JP 55129477A2
JP 5,9053787
JP 5229270 A
JP 59053787 A

JP 6-212131
JP 61254334 A
JP 63193982A
JP 60204643A1
JP 60204643A2
JP 63223081A
JP 6-184502

JP 61293281 A
JP 6184502 A

JP 7-138541

JP 85-0111156
JP 8225776 A
JP 8193830 A

JP 9235525 A1
JP 9-157612
JP 9277460
JP 9235525
JP 9114383A2
JP 9277460 A

0 429 269 A1

DE 3,417,746 A1

DE 4,411,562 A1
DE 4,411,562 C2

EP 0,459,059A2
EP 0,580,981B1
EP 0,479,223 B1
EP 0,752,498 A3
EP 0,752,498 A2
EP 0,784,544 B1
EP 0,429,269 A1
EP 0,725,809B1
EP 0,313,766B1
EP 0,288,733B1
EP 0,602,599A1
EP 0,622,431 A1
EP 0,705,894 A2
EP 0,572,227 A1
EP 0,508,722 A1
EP 0,539,099 A3
EP 0,352,998 B1
EP 0,547,593 A1
EP 0,257,984 B1
EP 0,696,603 A1
EP 0,336,431 A3
EP 0,683,216 A1
EP 0,336,431 B1
EP 0,669,350 A1
EP 0,274,875 A1
EP 0,529,546 A1

EP 0,570,512 B1
EP 0,529,546 B1
EP 0,507,878 B1
EP 0,570,515 B1
EP 0,336,693 B1
EP 0,279,579 B1

EP 1,0119,55A1
EP 175,513 B

EP 276,557 A
EP 276,557 B
EP 257,984 A
EP 439,941 A
EP 439,941 B
EP 411,820 A
EP 411,820 B
EP 444,354 B
EP 521,875 B
EP 500,590 B
EP 609,603 A
EP 647,256 B
EP 88301088
EP 90312546

GB 1,511,060
GB 1,510,810
GB 1,541,311
GB 2,290,692
GB 2,019,315
GB 9,512,661.1

WO 9718276A1
WO 9829231

PCT/US 99/03414
PCT/US 99/23020

PCT/WO 00/69985
PCT/WO 073083A1
PCT/WO 073082A1
PCT/WO 00/69985

PCT/WO 85/04602

PCT/WO 99/65999
PCT WO 99/35201
PCT/WO 98/29516
PCT/WO 97/23577

PCT/WO 97/26286
PCT/WO 95/33575
PCT/WO 95/33565A1
PCT/WO 96/11116
PCT/WO 95/11945
PCT/WO 93/03107
PCT/WO 92/05314
PCT/WO 98/27857
PCT/WO 99/23020
PCT/WO 99/35201
PCT/WO 99/61321
PCT/WO 99/00271
PCT/WO 97/01776
PCT/WO 97/31077
PCT/WO 9632248
PCT/WO 9816362A1
PCT/WO 93/0512
PCT/WO 98/18878
PCT/WO 93/03107
PCT/WO 97/46631
PCT/WO 9420585
PCT/WO 95/11945 A
PCT/WO 9400525 A
PCT/WO 97/25268 A
PCT/WO 9725256 A
PCT/WO 91/15365 A
PCT/WO 9107277 A

RE 23,843
RE 24,906
RE 23,910

**B. Defendant's Amended Statement of Proposed Claim Construction**

The following is Avery's Amended Statement of Proposed Claim Construction for those claim elements in claims 1-12 of the patent-in-suit, USPN 5,897,930 ("the '930 patent"), that Avery understands are disputed between Avery and 3M. Avery incorporates as if set forth in full herein its arguments and contentions regarding claim construction of the '930 patent set forth in its briefing, supporting declarations, and hearing in connection with Avery's opposition to plaintiffs' motion for a preliminary injunction. Avery further incorporates in full the intrinsic and extrinsic evidentiary support concerning the construction of the '930 patent claims set forth in the Court's Order, dated February 15, 2002, denying 3M's motion for a preliminary injunction.

**Claim 1:**

*A carrier web comprising*:

Avery's Proposed Construction:

> The terms "web" and "carrier web" should be construed according to their ordinary and accustomed meaning to a person to ordinary skill in the art ("ordinary and accustomed meaning").
>
> A "web" is generally planar or sheet material, and is capable of being embossed. (*See* col. 3:58-59, "web 10 … that is capable of being embossed."). The term "*embossed*" is defined *infra*.
>
> A "carrier web" is a web that carries or is intended to carry another material such as pressure sensitive adhesive. (*See*, *infra*, Office Action, "Web can serve as a permanent backing or a disposable release liner.").
>
> The term "comprising" should be construed according to its ordinary and accustomed meaning. In the context of "a carrier web comprising," it means that the "carrier web" must include the features or limitations set forth in the body of the claim.

**Intrinsic Evidence:**

Claims:

Ordinary and accustomed meanings of "web," "carrier," and "comprising." For example, "carrier" is defined in dictionaries as "one that transports or conveys."

"The method of claim 6, further comprising the step of filling depressions created by the first embossing step with a material before performing the second embossing step." (claim 7).

"The method of claim 7, further comprising the step of filling depressions created by the second embossing step." (claim 8).

"A method of using a web of claim 1 as a release liner for a pressure sensitive adhesive, comprising the step of filling the multiple embossed pattern with a pressure sensitive adhesive." (claim 12).

Specification:

"The carrier webs are useful for release liners for pressure sensitive adhesives and a number of other industrial and consumer applications." (Abstract).

"This invention relates to embossed webs useful as liners for pressure sensitive adhesives and other industrial applications." (1:4-6).

"One example of an adhesion interface requiring peak performance is a durable film displaying image graphics adhered to substrates, where the film is a backing material upon which an adhesive layer is added for adhesion to the substrate." (1:15-19).

"A multiple embossed web can be used as a releasable storage liner for pressure sensitive adhesive or a transfer liner for moving pressure sensitive adhesive from one web to a substrate." (1:57-60).

"Another aspect of the present invention is a carrier web having at least one surface that is multiple, sequentially embossed, wherein depressions created from the prior embossing pattern(s) are substantially preserved during the subsequent embossing pattern(s) even though the subsequent embossing pattern(s) are superimposed on the depressions from the prior embossing pattern(s)." (2:4-10).

"Although the multiple embossing steps could be combined into a single step with the design of a suitable tool or mold, the advantage of multiple steps is that the depressions formed by the prior step(s) can be filled with material prior to the subsequent embossing step(s). The number of same or different materials can be as many as the number of sequential step(s) or can be any subset of them. Once the number of same or different materials reside in the multiple embossed web, they can be removed from their multiple depth depressions for use or for further manufacturing or assembly." (2:11-22).

"A wide variety of materials can benefit from being introduced into the embossed web. Nonlimiting examples of the materials include adhesives, resins, polymers, particles, slurries, or dispersions." (2:22-25).

"When the embossed web is meant to be the final article rather than a means of continued manufacturing, the materials introduced into depressions created by a first embossing then are subjected to a subsequent embossing to form the final article. In this embodiment, liquids such as soaps, lubricants, perfumes, and abrasive slurries can fill one or more levels of the embossed depressions." (2:26-32).

"The multiple embossed webs of the present invention can provide a vast array of combinations given the multitude of embossed patterns, the multiplicity of embossings, and the variety of materials introduced into the embossed web." (2:34-37).

"While the most common multiple embossing of a carrier web is a double embossed web used as a release liner for pressure sensitive adhesives, the invention is not limited to merely double embossing. A variety of complex embossed patterns can be created to advantage for a number of industrial applications, such as:

> air bleed Segmented Adhesive Transfer Tapes (SATT) (as disclosed in U.S. Pat. Nos. 5,344,681 and 5,449,540 (both Calhoun et al. and incorporated by reference herein) that are: a) positionable, b) repositionable, or c) consist of two different adhesives;
>
> abrasives that are: a) dual shaped and b) consist of two different mineral sizes;
>
> scouring pads;
>
> bumped pads on flexible printed circuits;
>
> carriers for medicaments or cosmetics;
>
> and the like." (2:38-55).

"Another feature of the multiple embossed webs is the formation of a complex topography on the surface of the web that can be used as a liner for a field of pressure sensitive adhesive, a carrier for abrasive slurries used for later manufacturing, bumped pads for flexible printed circuits, or a carrier for medicaments or cosmetics." (3:3-8).

"Another feature of the multiple embossed webs is the ability to control the layered introduction of same or different materials into depressions of differing depths for later use or further manufacturing." (3:12-15).

"An example of the use of multiple embossed webs of the present invention is as

a release liner as disclosed in copending U.S. patent application Ser. No. 08/775,844 (Sher et al.) (Attorney Docket 52771USA9A) incorporated by reference herein." (3:33-37).

"Web 10 can be any web known to those skilled in the art that is capable of being embossed." (3:58-59).

"When webs of the invention are used as release liners, such liners are typically polyethylene coated papers with commercial silicone release coatings; polyethylene coated poly(ethylene terephthalate) films with commercial silicone release coatings; or cast polypropylene films which can be embossed with pattern(s) while making such films, and thereafter coated with commercial silicone release coatings. Additional useful liners are identified in the Calhoun et al. and Wilson et al. patents." (3:64-4:6).

"FIG. 3 shows an example of the complex topography that can be created on webs of the present invention for use as a release liner as disclosed in copending U.S. patent application Ser. No. 08/775,844 (Sher et al.) (Attorney Docket 52771USA9A) incorporated by reference herein. This scanning electron micrograph shows a liner 20 having a surface 22 with one pattern 24 of interconnected embossings and a second pattern 26 of embossings. More than two patterns can be added." (4:57-65).

"Between the time of making the two embossing patterns, a desired material can be introduced into second embossing pattern 26, such as glass beads, in a manner as disclosed in U.S. Pat. No. 5,296,277 (Wilson et al.), incorporated by reference herein." (5:10-14).

"When a liner 20 is used to contact adhesive to obtain a topography produced from patterns 24 and 26, the percentage area of lands 27 to surface 22 (B to A) can range from about 35% to about 99%." (5:43-47).

"Because the multiple embossings of the web occur sequentially, material can be placed in the depressions caused by first pattern being formed before the second embossing pattern is applied." (6:66-7:2).

"When pressure sensitive adhesive is the desired material to be formed in the pattern(s) embossed in the web 10 or 20, such pressure sensitive adhesives can be selected from a variety of conventional adhesive formulations to achieved the meshed topography on web 10 or 20." (7:7-11).

"When other materials such as soaps, lubricants, perfumes, abrasive slurries, or any other solution, emulsion, dispersion, or other liquid are desired to be used with webs of the present invention, one skilled in the art without departing from the scope of the present invention can readily determine the array of combinations possible, given the multitude of possible embossed patterns, the multiplicity of possible embossings, and the variety of possible materials to be introduced into the embossed carrier web operating as a transfer article or as a final article for storage of the other material. With some materials, such as soaps or perfumes, the

embossed web is preferably used as the final article." (7:26-37).

"A second embossed Controltac™ Plus liner with its depressions filled with a glass bead slurry was embossed a second time with a tool having square posts 2.5 mm on a side and separated by intersecting grooves 0.38 mm wide. After the second embossing step, an adhesive tape was laminated to the surface of the liner and then delaminated for examination under an optical microscope." (7:65-8:5).

"A release liner consisting of three layers with the core being 97 microns poly(ethylene terephthalate), 21-22 microns polyethylene with a matte finish on a back side layer, and 21-22 microns polyethylene with a glossy finish on the front side with a silicone release coating on the glossy side was microembossed with small pits on the glossy silicone-coated side and the pits filled with fine glass beads according to the procedure described in U.S. Pat. No. 5,362,516." (8:13-21).

"An acrylic pressure sensitive adhesive solution (described as Adhesive Solution 1 in U.S. Pat. No. 5,296,277 and modified with 18.5 per hundred resin (phr) of a resin—Nirez™ 2019 from Arizona Chemical Co.) was prepared and dried at 66° C. for 10 minutes to form an adhesive film about 32 microns thick. The exposed adhesive side were laminated at room temperature to a 46 micron thick placticized, white flexible and conformable vinyl film identical to that used in 3M™ Controltac™ Plus Graphic Marking Film Series 180-10. The lamination used a Vanquisher roll laminator (Stoughton Machine and Manufacturing Co., Inc., Stoughton Wisconsin) at 200 kPa (30 psi) gauge pressure and a speed of about 2.5 cm/second to afford an essentially flat construction. After removal of the release liner the exposed pressure sensitive adhesive surface had continuous recessed micro-channels and intersections (corresponding to the micro-ridges of the removed release liner)." (8:51-67).

<u>File History</u>:

"A method of using a web of Claim 1 as a release liner for a pressure sensitive adhesive." (Original Claim 17).

"Calhoun et al. ('765) teaches a carrier web. . . . Calhoun teaches the flexible carrier web can serve as a permanent backing or a disposable release liner." (Office Action, October 20, 1997, p. 4).

"Calhoun et al. ('540) teaches a carrier web with recesses or pockets containing pressure sensitive adhesive. . . . The [original] claim [18] is broad, thus the disclosure by the ('540) 'reference . . . is interpreted as the method of using the carrier web' as a final article storage of another material. The other material is the 'adhesive' . . . ." (*Id.*, at p. 5).

"12. (Amended) A method of using a web of claim 1 as a release liner for a pressure sensitive adhesive, <u>comprising the step of filling the multiple embossed pattern with a pressure sensitive adhesive</u>." (Response to Office Action, January 02, 1998, Amended Claim 12).

"18. (Amended) A method of using a web of claim 1 as a final article for storage of another material comprising the step of filling the multiple embossed pattern with a liquid. (*Id.*, Amended Claim 18).

"In Patent '681, there is only one embossed pattern, that can be filled with the same or different adhesives." (*Id.* at p. 4).

"Again, Applicants are claiming a multiple embossed pattern, whereas Patent '765 discloses only a single embossed pattern, regardless of how many different materials occupy different levels of that single embossed pattern." (*Id.*).

"Claim 18 relies on Claim 1 to provide the structure of the multiple embossed patterns of the surface of the web and provides a method of using where that complex pattern of differing depths of embossing is used by filling such depressions with a liquid." (*Id.*).

"Neither Patent '765 nor Patent '681 disclose or suggest the construction of a web that has multiple embossed patterns, where the first embossed pattern is in the second embossed pattern, nor the unexpected benefits that result from the ability to form two different sets of depressions. These prior disclosures of inventor Calhoun with others are single-embossed products, even though one or more materials can occupy depressions formed from the single embossing." (*Id.* at p. 5).

"Original claim 18 is drawn to a method of using a web of claim 1 as a final article for storage of another material. Amended claim 18 is drawn to a method of using a web of claim 1 as a final article for storage of another material comprising the step of filling multiple embossed pattern." (Office Action, April 30, 1998, pp. 2-3).

"It would have been obvious to one of ordinary skill in the art at the time of applicant's invention to fill in the recesses with different substances as taught by Calhoun ('681)." (*Id.* at p. 8).

"The Interview Summary correctly describes the discussion and the presentation of a comparison between a sample of commercially available adhesive-backed graphics material that can lead to trapped bubbles of air with a sample of carrier a web of the present invention that forms patterns of air egress on adhesive-back graphic material that can easily dissipate trapped bubbles of air. A piece of the latter sample was provided for the Office file for further review." (Amendment & Response, August 3, 1998, pp. 2-3).

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997), p.215
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).

Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh

*at least one surface that has a multiple embossed pattern having a first embossed pattern and a second embossed pattern, wherein the first embossed pattern forms an array of depressions, wherein the depressions of the first embossed pattern are in the second embossed pattern*:

Avery's Proposed Construction:

The meaning of "*embossed*": "A topography created on material by impressing a corresponding inverse topography on its surface." Where, as in this case, 3M now contends that the hardened ink dots flexographically printed on the accused Avery liner constitutes an embossing tool, the following clarifying additional construction of the word "*embossed*" is required. "An embossed pattern requires the use of tooling. Use of an embossing tool to create an embossed pattern requires the impressing of the tool into the material and the removal of the tool from the material."

The meaning of "*the first embossed pattern forms an array of depressions*": "An array of embossed depressions created in the surface of a material by first impressing onto the surface an embossing tool having a corresponding topography that is the inverse of the desired topography of the array of depressions." Or simply put, "an embossed pattern ... of depressions" means a pattern formed by "embossing" the material, as defined above, using an embossing tool.

The meaning of "*depression*," according to its ordinary and accustomed meaning: "An empty area that is sunk below its surroundings; a hollow that is capable of being filled or is fillable."

The meaning of "*pattern*," according to its ordinary and accustomed meaning: "A consistent characteristic form," or "systematic arrangement and design." A "*pattern*" within the meaning of the '930 patent claims implies a geometric form or configuration that is repeatable, repeated or duplicated. The meaning of "*array*," according to its ordinary and accustomed meaning: "An orderly arrangement." An "*embossed pattern [that] forms an array of depressions*" means: "An orderly arrangement of embossed depressions (as defined) that is consistent, repeatable and repeated." Pattern refers to both the repeated geometric form of each depression and the arrangement of identical geometric forms across a surface.

A surface that has a "*multiple embossed pattern having a first embossed pattern, and a second embossed pattern . . . wherein the depressions of the first pattern . . . are in the . . . second embossed pattern*" means multiple embossments which are applied one after the other thereby constituting sequentially embossed patterns.

The above clause of claim 1 thus means: "[The carrier web] has at least one

surface having multiple, sequentially embossed patterns: a first embossed pattern obtained from impressing onto the material a tool having on its surface a topography that is the inverse of the desired topography of the first embossed pattern of depressions, removing the tool from the material, followed by a second embossed pattern obtained from impressing onto the material another tool having on its surface a topography that is the inverse of the desired topography of the second embossed pattern of lands and ridges between the lands, and removing said tool from the material."

Claims:

Ordinary and accustomed meaning of "*first*," "*second*," "*embossed*," "*embossed pattern" and "multiple embossed pattern*." Use of the term "*embossed*" as descriptive of the way or process by which a pattern of depressions is created in a surface.

Use of the functional and process-oriented term "*embossing*" and "*embossed*" in dependent claims 2-5, as well as in other claims:

> "The web of claim 1, wherein a depth of depressions caused in the surface by any embossing pattern can range from a minor fraction of an original thickness of web to almost the entire original thickness." (claim 2).
>
> "The web of claim 1, wherein the surface can be embossed with any pattern ranging from a minor fraction of an area of the surface to the entire area of the surface." (claim 3).
>
> "The web of claim 1, wherein a shape of embossings for any pattern can range from a constant radius of curvature to a polygonal shape of at least 2 surfaces." (claim 4).
>
> "The web of claim 1, wherein a width of embossings in any pattern can range from about 1 μm to about 10,000 μm." (claim 5).

Language in claims 2, 4, 6-8, 10 and 12 that indicate "depression" is an empty area that can be filled, and further that the shape of an embossed depression has a constant, defined characteristic form, such as: "depth of depressions" (claim 2), "shape of embossing for any pattern can range from a constant radius of curvature . . ." (claim 4), "depression created from the first embossing . . . preserved during the second embossing step" (claim 6), "filling depressions created by the first embossing step" (claim 7), "filling depressions created by the second embossing step" (claim 8), "shape of embossings for any embossing step from a constant radius of curvature . . ." (claim 10), and "filling the multiple embossed pattern" (claim 12).

Specification:

The following exemplary excerpts from the specification's description of the invention confirm the ordinary understanding of "*embossed pattern*" as a pattern

obtained by "*embossing*" the web with the appropriate embossing tool. An "embossed pattern" is a topography or pattern of depressions created or made by "embossing," i.e., by impressing onto the web an embossing tool having the desired corresponding inverse topography on its surface, and removal of the tool from the web:

> The patterns of embossing can be Euclidean or fractal created from machine tools. . . . (abstract)
>
> "Embossed" means a topography on a web or on tooling having an effective three-dimensional pattern that generates a difference in surface planar dimension in the liner or the tooling. (col. 1, lns. 61-64).
>
> For example, in Fig. 3, lands 27 are discontinuous, because separate projections on the tooling for forming pattern 24 do not intersect with one another. Likewise, depressions 29 are discontinuous because separate projections on the tooling for forming pattern 26 do not intersect with one another. (col. 5, lns. 25-30).
>
> In other words, the topography of the tool(s) is an obverse image of the final topography of the microreplicated adhesive, with the liner 20 serving as the inverse image for transferring the image of the tool(s) to the microreplicated adhesive. Therefore, the topography(ies) of the embossing tool(s) for liner 20 is essentially the topography of the microreplicated adhesive. (col. 5, lns. 36-42).
>
> Because the embossing of pattern 26 occurs before the embossing of pattern 24, the depths identified here are the cumulative effect of both embossings, not necessarily the height of the embossing tool. (col. 6, lns. 16-19).
>
> Precision of topographical formation of web 10 or 20 can be achieved using a variety of machining techniques. The machine tool industry is capable of creating tools with any pattern desired by those skilled in the art. (col. 6, lns. 48-51).
>
> Tools can range from planar presses to cylindrical drums to other curvilinear shapes, depending on how it is desired to employ the embossing steps. (col. 6, lns. 56-68).
>
> Nonlimiting examples of sources of tooling include commercial sources of photolithographic printing plates and cylinders, precision engraved plates and cylinders, laser machined plates and cylinders, and the like. (col. 6, lns. 59-63).

*See also* the following references in the specification that clarify and confirm the above-noted definitions of "*pattern*," "*array*" and "*depression*": Figures 1, 2 and 3 and all references to said figures in the specification; col. 2, lns. 13-21; col. 2, lns. 28-33; col. 2, lns. 60-65; col. 3, lns. 12-15; col. 3, lns. 16-18; col. 4, lns. 9-12

(referring to Figures 1 and 2); col. 4, lns. 23-24; col. 4, lns. 27-28; col. 4, lns. 32-36; col. 4, lns. 51-54; col. 4, lns. 61-65; col. 5, lns. 3-4; col. 5, lns. 10-13; col. 5, ln. 67-col. 6, ln. 4; col. 6, lns. 8-10; col. 6, lns. 14-20; col.6, lns. 21-22; col. 6, lns. 25-34; col. 6, lns. 52-54; col. 6, ln. 67-col. 7, ln. 5; col. 7, lns. 52-58; col. 7, ln. 66-col. 8, ln. 2; col. 8, lns. 7-8; col. 8, lns. 18-22 and col. 8, lns. 34-39.

The specification discloses and describes only sequential embossings of a web by appropriate toolings (of which toolings the specification gives examples). Moreover, in each and every one of the commercial Examples 1, 2, and 3 set forth in the specification, the '930 patent teaches only that embossing tools are sequentially impressed into the liner or web surface and then removed therefrom to create and reveal multiple, sequential embossed patterns on a surface of the web:

Example 1

> An embossed Controltac™ Plus liner (commercially available from 3M, St. Paul, Minn.) with empty depressions was embossed with a metal tool having 0.25 mm diameter posts that were arranged in a square lattice pattern to provide 190 posts/cm². (col. 7, lns. 46-50).

Example 2

> A second embossed Controltac™ Plus liner with its depressions filled with a glass bead slurry was embossed a second time with a tool having square posts 2.5 mm on a side and separated by intersecting grooves 0.38 mm wide. (col. 7, ln. 66 to col. 8, ln. 2).

Example 3

> A second emboss pattern was imposed upon the release liner by passing the release liner between an 85 durometer silicone rubber roll and an engraved metal roll. The engraved pattern was recessed lines (micro-grooves) with dimensions about 80 microns wide and 24 microns deep. The grooves were 1.3 mm apart and formed a square grid with grooves oriented 45 degrees to the circumference of the roll. (col. 7, lns. 22-30).

**a) Stated Advantages of Multiple, *Sequential* Embossments**

In the specification's Summary of Invention, the patent states the advantages of the claimed webs having multiple, sequentially embossed patterns over the single embossed webs (and note the use of the terms "prior," "during," "subsequent," "preserved in" and "sequential," which clearly denote multiple, sequential embossings):

> Another aspect of the present invention is a carrier web having at least one surface that is multiple, sequentially embossed, wherein depressions created from the prior embossing pattern(s) are substantially preserved during the subsequent embossing pattern(s) even though the subsequent embossing pattern(s) are superimposed on the depressions from the prior

> embossing pattern(s).
>
> Although the multiple embossing steps could be combined into a single step with the design of a suitable tool or mold, the advantage of multiple steps is that the depressions formed by the prior step(s) can be filled with material prior to the subsequent embossing step(s). The number of same or different materials can be as many as the number of sequential step(s) or can be subset of them. (col. 2, lns. 4-17) (emphasis added).
>
> When the embossed web is meant to be the final article rather than a means of continued manufacturing, the materials introduced into depressions created by a first embossing then are subject to a subsequent embossing to form the final article. (col. 2, lines 27-31) (emphasis added).
>
> Another aspect of the invention is a method of embossing, comprising the steps of embossing a carrier web having at least one surface with a first pattern, to crate a first pattern of depression; embossing the surface with a second pattern, to create a second pattern of depressions; wherein the depressions created from the first embossing step are substantially preserved during the second embossing step even though the second embossing step superimposes the second pattern on the depressions created from the first embossing step. (col. 2, lines 56-65) (emphasis added).
>
> An advantage of the present invention is to create a means of sequential manufacturing of articles using different depths of depressions and same or different materials. (col. 3, lines 16-18) (emphasis added).

**b) Described Embodiments: Only Multiple (Double), *Sequential* Embossments**

The '930 specification describes embodiments that pertain only to webs having multiple, sequentially embossed patterns that are temporally sequenced and are superimposed over each other (and note the use of terms "before," "during," "sequential," "order of," "between the time of," and "superimposed"):

> FIG. 1 depicts a web 10 having a surface 12 with one pattern 14 of embossings made according to a first embossing step of the present invention. FIG. 2 depicts that web 10 having the surface 12 (with embossing pattern 14) having been subjected to a second pattern 16 of embossings made according to the present invention. (col. 3, lns. 52-56).
>
> A multiple embossed web 10 seen in FIG. 2 can have any dimensions required for the sequential formation of a complex topography. (col. 4, lns. 7-9).
>
> Further, web 10 has a total area "A", a first area "B" having depressions created during embossing of pattern 14 and an area "C" having depressions created during embossing of pattern 16. FIG. 2 shows how depressions formed in pattern 14 over the entire surface 12 of web 10 and also reside in the larger depressions formed in pattern 16. (col. 4, lns. 30-36).

> A sequential manufacturing process for web 10 or liner 20 determines the order of embossings. The manufacturing of the double embossed liner 20 actually requires the formation of the smaller embossing pattern 26 first, followed by the formation of the larger embossing pattern 24, second. Between the time of making the two embossing patterns, a desired material can be introduced into second embossing pattern 26, such as glass beads, in a manner as disclosed in U.S. Pat. No. 5,296,277 (Wilson et al.), incorporated by reference herein. (col. 5, lns. 5-14).
>
> The patterns 24 and 26 can be varied according to requirements in the art recognizing that the patterns are superimposed on one another. For example, in FIG. 3, lands 27 are discontinuous, because separate projections on the tooling for forming pattern 24 do not intersect with one another. Likewise, depressions 29 are discontinuous because separate projections on the tooling for forming pattern 26 do not intersect with one another. (col. 5, lns. 23-30).
>
> Because the embossing of pattern 26 occurs before the embossing of pattern 24, the depths identified here are the cumulative effect of both embossings, not necessarily the height of the embossing tool. (col. 6, lns. 16-19).
>
> A multiple embossed web of the present invention can be used for the formation of materials that utilize the complex topography of the surface of the web. Because the multiple embossings of the web occur sequentially, material can be placed in the depressions caused by first pattern being formed before the second embossing pattern is applied. (col. 6, ln. 64 to col. 7, ln. 6)

**c) All Three Commercial Examples: Only Double, *Sequential* Embossments**

The '930 patent also sets forth three (3) commercial examples of webs that embody the invention: each and every one of Examples 1, 2 and 3 concerns a release liner that has a double, sequentially embossed pattern of specified height of lands over ridges limitation. Example 1 relates to double, sequentially embossed web:

> Example 1
>
> An embossed Controltac® Plus liner . . . with empty depressions was embossed with a metal tool having 0.25 mm diameter posts that were arranged in a square lattice pattern to provide 190 posts/cm$^2$. . . . Examination of the surface of the liner using scanning electron microscopy revealed depressions from the (commercial) first emboss at the bottom of the depressions produced from the second embossing. . . . However, the second embossing step did not remove the presence of the depressions created by the first embossing step. A multiple embossed web was formed. (col. 7, lns. 45-63).
>
> Example 2 relates to a double, sequentially embossed web wherein the first embossment's depressions were filled with glass beads:

Example 2

A second embossed Controltac® Plus liner with its depressions filled with a glass bead slurry was embossed a second time with a tool. . . . After the second embossing step, an adhesive tape was laminated to the surface of the liner and then delaminated for examination under an optical microscope. Clumps of glass beads were observed on the surface of the adhesive of the tape with the adhesive with the adhesive surface having intersecting grooves matching the pattern of the tool used in the second embossing. The resulting tape was a positionable adhesive tape with a topography of air channels after application of a tape to a substrate. (col. 7, ln. 64 to col. 8, ln. 11).

And, Example 3, too, involves a web having a double, sequentially embossed pattern:

Example 3

A release liner. . . was microembossed with small pits. . . *A* second emboss pattern was imposed on the release liner by passing the liner between [a] . . . rubber roll and an engraved metal roll. (col. 8, lns. 12-25).

The specification repeatedly emphasizes that the invention is that of webs having multiple, sequentially embossed patterns, and thus buttresses the plain meaning of "first" and "second" embossed patterns of claim 1 as being sequentially imposed on the carrier web.

<u>File History</u>:

**a) Originally Filed Claim 1: "Multiple Sequentially Embossed" Web**

As originally filed, claim 1 read:

A carrier web, comprising:

at least one surface that is multiple, sequentially embossed with a pattern, wherein depressions created from the prior embossing pattern(s) are substantially preserved during the subsequent embossing pattern(s) even though the subsequent embossing pattern(s) are superimposed on the depressions from the prior embossing pattern(s).

Originally filed claim 1 was directed to multiple, sequential embossed patterns.

**b) First Office Action Rejection: Claim Vagueness And Invalidity**

The Patent Examiner rejected all of the originally filed claims on a number of statutory grounds, including anticipation and obviousness in view of two prior 3M patents under 35 U.S.C. §§ 102 and 103, and also that the claims were vague and unclear and thus indefinite under 35 U.S.C. § 112, ¶ 2:

Claims 1-18 are rejected under 35 U.S.C. § 112 and second paragraph, as the claimed invention is not described in such full, clear, concise and for failing to particularly point out and distinctly

> claim the subject matter which the applicant regards as his invention.
>
> Claim 1 is confusing in the recitation of "one surface that is multiple, sequentially embossed." What is the intent of applicant?
>
> Claim 1 recites that limitation "prior embossing pattern." There is insufficient antecedent basis for this limitation in the claim. . . .

**c) First Amended Claim 1: Rephrased With Alternate Terms *"First"* Embossed Pattern of Depressions That "Are In" a "Second" Embossed Pattern**

To overcome the vagueness and anticipation/obviousness rejections, 3M submitted an Amended claim 1, which replaced and rephrased the objectionable terms "sequential," "prior," "superimposed" and "subsequent" with alternate terms "first" and "second":[1]

> 1. (Amended) A carrier web, comprising:
>
> at least one surface that <u>has a multiple embossed pattern having a first embossed pattern and a second embossed pattern</u>, [is multiple, sequentially embossed with a pattern,] wherein depressions <u>of</u> [created from] the <u>first embossed</u> [prior embossing] <u>pattern are</u> [pattern(s) are substantially preserved during] <u>in the second</u> [subsequent embossing pattern(s)] <u>embossed pattern</u> [even though the subsequent embossing pattern(s) are superimposed on the depressions from the prior embossing pattern(s).].

In its remarks accompanying the Amended claim 1, the applicants stated that the claim as amended and rephrased overcame the lack of antecedent basis and vagueness problems. (The Examiner was persuaded on this issue, as seen below.) Notably, the applicants continued to take the position that the Amended claim 1 continued to be directed to multiple, sequentially embossed patterns where the first embossed pattern survives the embossing of the second pattern. Specifically, in response to the anticipation and obviousness rejections, the applicants distinguished the prior patents and asserted the scope of amended claim 1 as follows:

> . . . [The] '681 [patent] does not disclose the creation of multiple embossed pattern having a first embossed pattern and a second embossed pattern. The [Patent] Office has correctly stated that two different adhesives are possible according to the teachings of the Patent '681. That is true. But Applicants are claiming two different embossment patterns where the first embossed pattern survives the embossing of the second pattern. . . .
>
> Applicants' Claims 1, 3-8, 10, 13-15, 17 and 18 are also novel over

---

[1] Language added to claim 1 is underlined, while deleted language from original claim 1 is bracketed.

> Patent '765. . . There is nothing in Patent '765 that teaches that one can have two different embossed patterns, where the first pattern survives the embossing of the second pattern to create a complex pattern of differing depths of embossing.
>
> * * * *
>
> Neither Patent '765 nor Patent '681 discloses or suggest the construction of a web that has multiple embossed patterns, where the first embossed pattern is in the second embossed pattern. . . . This invention unexpectedly has found that the depressions formed during the first embossed step are not lost when the second embossing step is performed.

In deposition, John Hornickel, the attorney who drafted the amendments, confirmed that the amendments to claim 1 were designed to overcome the vagueness rejection by incorporating defined terms, not to broaden the claims.

**d) Second Office Action: Vagueness Objection Overcame but Claims Rejected as Invalid in view of Prior Art**

The claims as amended and rephrased overcame the vagueness problem. But the Examiner was not persuaded by the applicants' arguments regarding the novelty of the claimed invention. In fact, even though the applicants argued that the invention was limited to multiple, *sequential* embossings, the Patent Examiner yet rejected as invalid the amended claims in view of at least five (5) additional prior art references that taught multiple embossed patterns where the first embossed pattern survives the second embossment; in a second Office Action rejecting all of the amended claims:

> Lewicki teaches a method and a sheet or web comprising at least one surface (wear layer 26) that has a multiple embossed pattern having a first and second embossed pattern. . . . Thus, Lewicki teaches an embossing pattern in an embossing pattern.
>
> * * * *
>
> Claims 1, 3-7 are rejected under 35 U.S.C. § 102(b) as being anticipated by EP 0 313766 A2.
>
> EP 0 313766 teaches a film or web wherein the film is first subjected to macro embossing followed by a micro embossing step. Claims 1, 3-7 are drafted in the product-by-process format.
>
> * * * *
>
> GB 1 543 977 teaches a sheet or web wherein the sheet is first subjected to shallow emboss followed by a deep emboss step. . .
>
> * * * *
>
> Thomas ('919) teaches two or more embossing station forming repetitive superimposed continuous embossments in the web

> (claim 1).
>
> Ruppel ('464) teaches *big* "bosses" alternating with "little bosses" are positioned in congruent and tip-to-tip relation with the bosses of the second embossed ply while the big bosses of the first ply are simultaneously positioned between two bosses of the second ply (column 2, lines 15-26; figures 2-5).
>
> Schulz ('162) teaches a web having multiple embossed pattern having a first embossed pattern and a second embossed pattern wherein the first pattern is in the second pattern (figures 3, 6, 8; columns 2-4; claims 1-18).

The above excerpts make plain that the Examiner was keyed on not only multiple embossing, but exactly and only on those that occur sequentially.

**e) Issued Claim 1: Added Height Range Limitation to Distinguish Prior Art**

In response to the Examiner's second rejection and to overcome the various invalidity rejections over the cited prior art, the applicants again amended the claims--but only to incorporate a height of ridges over lands limitation that the applicants asserted distinguished the claimed carrier webs having multiple, sequential embossings from the prior art. The following limiting language was added to the end of claim 1:[2] "wherein the second embossed pattern comprises lands and ridges between the lands, and wherein the height of the ridges over the lands ranges from about 3 to about 45 $\mu$m." (*Id.*) With this amendment, the applicants argued that claim 1 should be allowed over each of the multiple, sequential embossing references because none of the those references disclosed patterns with the heights of ridges over lands of about 3 to 45 microns:

> Amendments to Claims 1 and 8 overcome the rejections citing Lewicki, EP 0 313 766 publication, and GB 1 543 977 publication. Each of these references are concerned with a series of multiple depressions where the larger surface area depressions are almost an order of magnitude larger than the height range claimed between ridges and lands that comprise the result of the second embossing pattern or step, respectively, of Claims 1 and 8: from about 3 to 45 micrometers.

*Id.*, p. 3. In allowing the twice-amended claim 1 to issue, the Patent Examiner explained in the "Statement of Reasons for Allowance," that the rejections were withdrawn because, as represented by 3M, "The prior art does not suggest or teach a carrier web with ridges and lands that ranges from 3 to 45 $\mu$m." *Id.*, p. 2.

The prosecution history confirms that claim 1 is limited to a multiple, sequentially embossed pattern of specified height ranges.

---

[2] Prior to submitting its amendment, the applicants conducted an in-person interview with the Examiner wherein 3M indicated that it "will amend claim and put in additional limitation to distinguish over the prior art."

**Extrinsic Evidence**:

Dictionaries, including the American Heritage Dictionary (3d Ed. 1992), pp. 102, 503 and 1329; Roget's II The New Thesaurus (1980), p. 673.

3M patents and other patents employing the term emboss, embossing and embossed

3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

TAPPI 1993-1994 Technical Information Sheet
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).

Expert testimony of Dr. Anthony J. McHugh

Deposition testimony of Mark Timmerman 30(b)(6), Dan Fleming 30(b)(6), Mike Hannington, Doug Lilac, Frank Sher, and John Hornickel.

Process And Equipment For In-line Post-Extrusion Forming, *Plastic Machinery & Equipment*, (August 1998) (Timmerman Depo. Exh. 28).

Deposition testimony of Calisto, at p. 101.

*Wherein the height of the ridges over lands ranges from about from about 3 to about 45 µm*:

Avery's Proposed Construction:

Ordinary and accustomed meaning of each term applies.

**Extrinsic Evidence**:

Expert testimony of Dr. Anthony J. McHugh.

Dictionaries, including the American Heritage Dictionary (3d Ed. 1992).

**Claim 2:**

*The web of claim 1, wherein a depth of depressions caused in the surface by any embossing pattern can range from a minor fraction of an original thickness of web to almost the entire original thickness.*

Avery's Proposed Construction:

This claim includes each limitation of claim 1 as well as the additional limitation denoted by the "whereby" clause. *See* claim 1's analysis for construction of "carrier web," "embossed," "embossed pattern," and "depressions."

The phrase "depressions caused in the surface by any embossing pattern" means empty or hollow, sunk areas created in the liner surface by the use of any embossing tool. Use of an embossing tool to create an embossed pattern requires the impressing of the tool onto the surface of the material and removal of the tool from the material, thereby causing or leaving behind "depressions" or "empty" or "hollow" areas into the surface of the liner.

With the exception of the foregoing terms, claim 2 should be construed according to its ordinary and accustomed to mean: "a multiple, sequentially embossed carrier web wherein the depth of the hollow, empty depressions caused by any embossed pattern can range from a minor fraction to almost the entire original thickness of the carrier web."

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claim 1, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 3:**

*The web of claim 1, wherein the surface can be embossed with any pattern ranging from a minor fraction of an area of the surface to the entire area of the surface.*

Avery's Proposed Construction:

This claim includes each limitation of claim 1 as well as the additional limitation denoted by the "wherein" clause. *See* claims 1 and 2's construction of "carrier web," "embossed," "embossed pattern" and other terms in common with claim3 Ordinary and accustomed meaning as to the rest of the terms.

**Intrinsic Evidence**:

*See* analysis of common terms in claims 1 & 2, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 4:**

*The web of claim 1, wherein a shape of embossings for pattern can range from a constant radius of curvature to a polygonal shape of at least **2** surfaces.*

Avery's Proposed Construction:

This claim includes each limitation of claim 1 as well as the additional limitation denoted by the "wherein" clause. *See* construction of "embossed," and "embossed pattern" in claim 1, "embossed with any pattern" in claim 3 and other pertinent terms in claims 1-3. The balance of claim 4 should be construed according to its ordinary and accustomed meaning.

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-3, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh

**Claim 5:**

*The web of claim 1, wherein a width of embossings in any pattern can range from about 1 μm to about 10,000 μm* .

Avery's Proposed Construction:

This claim includes each limitation of claim 1 as well as the additional limitation denoted by the "wherein" clause. *See* construction of "embossing," embossed pattern," in claim 1, as well as the construction of pertinent terms in claims 2-4. With the exception of the foregoing, the claim should be construed according to its ordinary and accustomed meaning.

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-4, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh

3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 6:**

*A method of embossing, compromising the steps of:*

*(a) embossing a carrier web having at least one surface with a first pattern, to create a first pattern of depressions;*

*(b) embossing the surface with a second pattern, to create a second pattern of depressions comprising lands and ridges*;

*wherein the depressions created from the first embossing step are substantially preserved during the second embossing step even though the second embossing step superimposes the second pattern on the depressions created by the first embossing step, and wherein the height of the ridges over the lands ridges from about 3 to about 45 μ m*.

Avery's Proposed Construction:

Claim 6 is a method claim comprising of two sequential embossing steps. As explained in detail above in connection with claim 1 (the analysis and proposed constructions of which are incorporated herein), "*embossing*" is a process by which a material can be *embossed.* A material is "*embossed*" using an embossing tool, whereby the tool, having the desired topography, is impressed onto the surface of the material and is then removed therefrom.

Using the proposed constructions of the pertinent terms from claims 1-5, claim 6 defines "a method of *embossing* [as defined above and in claims1-5] comprising two sequential embossing steps: (1) first one surface of a carrier web is *embossed* [as defined] with a first pattern, resulting in a first pattern or array of *depressions* [as defined], and (2) second, that same surface is *embossed* again, but with a second pattern, resulting in a second pattern of depressions including lands and ridges. Moreover, the first embossed pattern survives the second embossing step, even though the second embossed pattern is superimposed on the first embossed pattern., and further that the height of ridges over lands (both created by the second embossing step) is in the range of about 3 to 45 microns."

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-5, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).

The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 7:**

*The method of claim 6, further comprising the step of filing depressions created by the first embossing step with a material before performing the second embossing step.*

Avery's Proposed Construction:

Using the proposed constructions of the pertinent terms from claims 1-5 & 6, claim 7 means: "The embossing method of claim 6 further including an interim method step whereby the depressions of the first embossed pattern are filled with a material prior to the second embossing step."

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-6, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 8:**

*The method of claim 7, further comprising the step of filing depressions created by the second embossing step.*

Avery's Proposed Construction:

Using the proposed constructions of the pertinent terms from claims 1-7, claim 8 means: "The embossing method of claim 7 further including a method step whereby the depressions of the second first embossed pattern are filled with a material."

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-7, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 9:**

*The method of claim 6, wherein the surface can be embossed during any embossing step in an area ranging from a minor fraction of the area of the surface to the entire area of the surface.*

Avery's Proposed Construction:

*See* claim 3 above. Construction of the pertinent terms of claims 1-8 is incorporated herein. The balance of the terms should be construed according to their ordinary and accustomed meaning.

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-8, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 10:**

*The method of claim 6, wherein a shape of embossings for any embossing step can range from a constant radius of curvature to a polygonal shape of at least 2 surfaces.*

Avery's Proposed Construction:

*See* claim 4 above. Construction of the pertinent terms of claims 1-9 is incorporated herein. The balance of the terms should be construed according to their ordinary and accustomed meaning.

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-9, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 11:**

*The method of claim 6, wherein a width of embossings for any embossing step can range from about 1 μ m to about 10,000 μ m.*

Avery's Proposed Construction:

*See* claim 5 above. Construction of the pertinent terms of claims 1-10 is incorporated herein. The balance of the terms should be construed according to their ordinary and accustomed meaning.

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claims 1-10, which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms.

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

**Claim 12:**

*A method of using a web of claim 1 as a release liner for a pressure sensitive adhesive, comprising the step of filing the multiple embossed pattern with a pressure sensitive adhesive.*

Avery's Proposed Construction:

*See* claim 1 above. Construction of the pertinent terms of claim 1-11 is incorporated herein. The balance of the terms should be construed according to their ordinary and accustomed meaning.

Claim 12 means: "A method of using a carrier web that is multiple, sequentially embossed as a release liner for a pressure sensitive adhesive including the step of filling the depressions of multiple embossed pattern with a pressure sensitive adhesive."

**Intrinsic Evidence**:

*See* analysis of pertinent terms in claim 1, 7 & 8 which is incorporated herein. Ordinary and accustomed meaning as to the rest of the terms, including the term "filling."

**Extrinsic Evidence**:

The American Heritage Dictionary (3d Ed. 1992).
The American Heritage Dictionary (3d Ed. 1997).
Other Dictionaries.
Pulp and Paper, *Chemistry & Chemical Technology*, (3d Ed. 1980).
The Dictionary of Paper, *American Paper & Pulp Association* (1965).
Encyclopedia of Polymer Science and Engineering (Vol. 5).
Handbook of Adhesives (2d Ed. 1977).
Whittington's Dictionary of Plastics (3d Ed. 1993).
Expert testimony of Dr. Anthony J. McHugh
3M's representations in court proceedings (Avery Dennison v. 3M, Civil No. 01-125JJF USDC (D. Del. 2001)) re commonly understood meaning of "embossing"

DATED: May 4, 2002

HENNIGAN, BENNETT & DORMAN

Armand F. Ayazi

David P. Pearson
WINTHROP & WEINSTINE, P.A.
3000 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
Armand F. Ayazi
HENNIGAN, BENNETT & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-1260 - Facsimile