IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>AVERY DENNISON CORPORATION,<br><br>Defendant. | : | Civil Action No. 01-CV-1781 (JRT/FLN) |

**AVERY DENNISON CORPORATION'S OPPOSITION TO 3M'S MOTION TO STRIKE SUPPLEMENTAL AND REVISED EXPERT REPORT OF DR. ANTHONY J. MCHUGH REGARDING INVALIDITY OF U.S. PATENT NO. 5,987,930**

# TABLE OF CONTENTS

**Page**


I. INTRODUCTION ........ 1

II. STATEMENT OF FACTS ........ 4

III. ARGUMENT ........ 7

A. Dr. McHugh's Identification of the Wood and McKenzie Patents in the Supplemental Report Complies With Judge Tunheim's August 30 Order ........ 7

B. Dr. McHugh's Reference to Existing Tests in the Supplemental Report Complies With Judge Tunheim's August 30 Order ........ 9

C. Dr. McHugh's Supplemental Invalidity Report Is Timely ........ 10

D. Even if Dr. McHugh Failed to Meet the Magistrate Judge's Two Week Time Period, the Six-Day Delay Was Caused by Excusable Neglect and 3M Suffered No Resulting Prejudice ........ 11

*1. The Wood and McKenzie Patents Are Highly Relevant* ........ 12

*2. Any Delay In Serving Dr. McHugh's Supplemental Report Is Excusable* ........ 12

*3. 3M Cannot Show That It Is Prejudiced by Either the Supplementation Or Any Delay* ........ 13

IV. CONCLUSION ........ 14

# TABLE OF AUTHORITIES

**Page**

**Cases**

3M Innovative Prop. v. Nelson, Inc., 59 Fed. R. Serv. 3d (Callaghan) 300, 2004 U.S. Dist. LEXIS 15435 at 8-9 (D. Minn. Aug. 8, 2004) ..... 8

Alford v. National Post Office Mail Handlers, 576 F. Supp. 278 (E.D. Mo. 1983) ..... 11

ATD Corp. v. Lydall, Inc., 159 F.3d 534 (Fed. Cir. 1998) ..... 9

Donnelly Corp. v. Gentex Corp., 37 U.S.P.Q. 2d 1146, 1995 U.S. Dist. LEXIS 20525 (W.D. Mich. Aug. 23, 1995) ..... 9

Franco v. Yale University, 2002 U.S. Dist. LEXIS 689 (D. Conn. Jan. 9, 2002) ..... 10

Patterson v. F.W. Wollworth Co., 786 F.2d 874 (8th Cir. 1986) ..... 12

United States v. Ibarra, 502 U.S. 1, 112 S.Ct. 4 (1991) ..... 10

Upsher Smith Labs., Inc. v. Mylan Labs., Inc., 944 F. Supp. 1411 (D. Minn. 1996) ..... 11

**Statutes**

35 U.S.C. § 102(a) ..... 9

35 U.S.C. § 282 ..... 8, 9

**Rules**

Fed. R. Civ. P. 26(e) ..... 2, 8, 9

Fed. R. Civ. P. 37(c)(1) ..... 11

Fed. R. Civ. P. 6(b) ..... 11

## I. INTRODUCTION

3M's motion to strike should be denied based on the unambiguous wording of Judge Tunheim's August 30, 2004 Order allowing supplemental expert reports. The District Court's Order expressly allowed for supplementation following its ruling on claim construction (which it issued approximately 10 months after the claim construction hearing). While the Court's Order allowing supplementation provided that no new experts, experimentation, or other discovery would be permitted, it contained no restrictions on citing new, invalidating prior art or citing already completed analyses of existing prior art. Nor did the Court's Order impose a deadline following the claim construction ruling for exchanging supplemental expert reports.

Despite the unambiguous wording of the Court's August 30 Order, 3M seeks to strike portions of Dr. McHugh's supplemental report as outside the scope of permissible supplementation, or, alternatively, to strike Dr. McHugh's supplemental report entirely as untimely. But the reasons 3M offers for either alternative do not justify striking any or all of Dr. Mc Hugh's supplemental report:

***First***, there is no basis for striking the "Wood" and "McKenzie" prior art references from Dr. McHugh's supplemental invalidity report. 3M's argument that Dr. McHugh's supplemental invalidity report should be limited to the prior art references included in a unsigned, draft "redlined" version provided to the Court in a motion more than a year ago lacks any basis in law. Furthermore, nothing in Judge Tunheim's August 30, 2004 Order allowing supplemental expert reports states or implies that Avery's expert could not rely on new prior art once the Court finalized the construction of the remaining claim terms. To the contrary, Avery premised its request for supplemental expert reports, in part, on the fact that the validity of 3M's patent could not be fully accessed until the Court provided the final meaning of the claim terms in dispute.

Additionally, Dr. McHugh's identification of new prior art in support of a previously-asserted invalidity opinion should be allowed under Fed. R. Civ. P. 26(e).

***Second***, Dr. McHugh did no new "experimentation" in connection with his supplemental invalidity report. Rather, Dr. McHugh simply referred to prior photographs of 3M's reflective materials (which embody the McGrath prior art reference) that Avery had taken unrelated to this litigation. These photographs were taken years ago as part of competitive analyses; they were not taken or directed by Dr. McHugh; and Dr. McHugh simply used the results of Avery's prior analysis to further confirm his independent findings. Judge Tunheim's Order disallowed new "experimentation," and no new "experimentation" was done.

***Third***, Dr. McHugh's supplemental report was either timely, if one considers the legal effect of Avery's timely filing of its motion for reconsideration of he Court's Memorandum Opinion and Order Construing Disputed Claims, or it was served a few days late as a result of clearly excusable neglect. Nearly 10 months had passed from the time the Court allowed supplemental reports to the claim construction decision, and over eight months had passed from the Magistrate Judge's 15-minute telephonic conference. Upon receiving the claim construction ruling, Avery's counsel examined the file, finding only Judge Tunheim's Order allowing supplementation. Judge Tunheim's Order contained no deadlines for supplementation, and counsel assumed that the parties would confer on dates. Avery's trial counsel never received Magistrate Judge Noel's October 5, 2004 Court Minutes, and did not recall either the telephonic conference or any discussion of deadlines for supplemental reports eight months earlier. Moreover, Avery's counsel knows of no way it could have calendared the two week deadline contained in Magistrate Judge Noel's Court Minutes because the parties had no idea when Judge Tunheim would issue the claim construction ruling.

***Fourth***, No prejudice whatsoever befalls 3M from the acts it complains of. 3M in fact offers no explanation as to how it is prejudiced by allowing any or all of Dr. McHugh's supplemental invalidity report. Both the "Wood" and "McKenzie" references show embossed webs for reflective sheeting, and Avery told 3M a year ago that reflective sheeting art invalidates its patent under the claim constructions 3M proposes. Also, the Wood and McKenzie references are well known to 3M – indeed, both are 3M patents. Besides its familiarity with the patents, 3M cannot contend it needs discovery regarding these two references because it took no discovery whatsoever on the prior art discussed in Dr. McHugh's original report. For the same reason, 3M cannot claim prejudice from the prior tests that Dr. McHugh examined: 3M certainly has examined its own materials, and 3M's expert was free to consult those tests in responding to Dr. McHugh's supplemental report. As for timing, the six-day delay could not have prejudiced 3M. Trial is not set to take place until December, and Judge Tunheim's Order allowing supplementation expressly disallowed new discovery. Dr. McHugh did not even see 3M's supplemental expert report on infringement until after he signed his supplemental expert report on invalidity, and Avery offered to let 3M further supplement it infringement report if anything in Avery's supplemental invalidity report required a response. Avery also agreed to extent the time for any response to Dr. McHugh's supplemental invalidity report.

***Fifth***, this Court should not "presume" prejudice based on the fact that it earlier struck a 3M expert report as untimely. To the contrary, 3M's prior gamesmanship with an expert, which it strategically decided not to even identify within a date-certain deadline, and then disclosed after the close of all expert discovery along with volumes of new test data (which had been done before fact discovery ended but not produced), stands in stark contrast to the circumstances here.

3M's motion should be denied.

## II. STATEMENT OF FACTS

On August 30, 2004, Judge Tunheim issued an Order permitting both parties to supplement expert reports once the Court issued final claim construction rulings:

> The parties will be permitted to file supplemental expert reports reflecting the claim constructions provided by the Federal Circuit and this Court. However, no new experts, experimentation, or other discovery will be permitted.

(Declaration of Lawrence M. Hadley ("Hadley Dec."), Ex. 1.)

In making the request for supplemental expert reports following claim construction, Avery provided draft, unsigned, supplemental infringement and invalidity reports as exemplars so the Court could see the type of supplementation Avery proposed upon the conclusions of the trial court's claim construction tasks. (Moerke Dec., Ex. E.) Avery did not, however, request that supplementation be limited to the unsigned drafts it submitted, and Judge Tunheim's August 30 Order allowing supplementation imposed no such limitation.

Dr. McHugh's draft supplemental report provided an additional basis for invalidation supporting Dr. McHugh's previously expressed opinions regarding anticipation and obviousness. Specifically, Dr. McHugh added that, if a material embedded into a web could be considered an "embossed depression" (as 3M contends), then 3M's own reflective sheeting (which 3M developed in the 1960s, 70s and 80s) invalidated its '930 patent. Dr. McHugh provided two examples of reflective sheeting – the McGrath '159 Patent and the Jack '775 Patent. (Id.) Even before disclosing Dr. McHugh's draft supplemental report, Avery notified 3M that the breadth of the claim construction positions it had advocated could not be distinguished from reflective sheeting developed long ago. (Hadley Dec., Ex. 2.) Thus, the additional reasons supporting Dr. McHugh's invalidity positions could not have surprised 3M.

On October 5, 2004, Magistrate Judge Noel held a short telephonic conference to discuss the case status. The parties informed Magistrate Judge Noel that the District Court had taken the claim construction issues under submission, that the Court would allow the experts to supplement their reports after the claim construction decision (without new experts, experimentation, or discovery), and that the Court would consider whether to allow new summary judgment motions after its claim construction rulings. (Hadley Dec., ¶ 4.) Later that day, Magistrate Judge Noel prepared Minutes of the conference, which states, (under the heading “initial”): “2 weeks after JRT rules on claim construction issues. Under the heading “rebuttal,” the Minutes state: “2 weeks after initial reports are served.” (Id., Ex. 3.)

Over eight months later, on June 20, 2005, Judge Tunheim issued a Memorandum Opinion and Order Construing Disputed Claims. Upon receiving Judge Tunheim’s claim construction rulings, Avery’s counsel checked its files to reconstruct what Judge Tunheim had ordered regarding expert reports. Avery’s counsel located Judge Tunheim’s August 30 Order but did not see Magistrate Judge Noel’s October 5 Minutes or recall that the telephonic hearing had taken place. (Id., ¶ 5.) Avery’s counsel later confirmed that it did not have a copy of Magistrate Judge Noel’s Court Minutes in its files. (Id.)

Approximately one week later, Judge Tunheim set a Status Conference for July 6, 2005. On June 30, 2005, Avery, pursuant to Local Rule 7.1(g) requested permission to seek reconsideration of Judge Tunheim claim construction rulings. (Hadley Dec., Ex. 4.) During the July 6 Status Conference, the Court set trial for December 12, 2005. Additionally, the Court heard argument on Avery’s request for reconsideration and took the matter under submission. After the Status Conference, Avery’s and 3M’s counsel conferred regarding supplementation of expert reports in accordance with Judge Tunheim’s August 30 Order. When Avery’s counsel inquired about dates, 3M’s counsel stated that Magistrate Judge Noel had set dates for two weeks

after the Court's claim construction rulings. Avery's counsel responded that he had not seen Judge Noel's Order in his files, and asked 3M's counsel to send a copy. (Hadley Dec., ¶ 7.)

Later that afternoon, 3M's counsel emailed Avery's counsel a copy of Magistrate Judge Noel's October 5, 2004 Court Minutes, which Avery's counsel received the next day upon returning to Los Angeles. After reviewing Judge Noel's Court Minutes, Avery's counsel responded to 3M, assuring that the supplemental invalidity report would be provided as soon as possible. Avery also offered 3M's the opportunity to provide a further supplementation of its infringement expert report and to extend the service of any rebuttal to Avery's supplemental expert report. (Hadley Dec., Ex. 5.)

Four days later, Avery served Dr. McHugh's supplemental expert report on invalidity. (Moerke Dec., Ex. D.) Dr. McHugh's supplemental report largely repeated both his initial report and the unsigned draft that Avery filed in August 2004. In fact, Dr. McHugh's final supplemental invalidity report differs substantively from the draft report in just two minor ways. First, Dr. McHugh cited two additional reflective web patents – the Wood and McKenzie Patents (both belonging to 3M) – in support of his already-expressed opinion that 3M's infringement position regarding embedding broadens its '930 patent to the point of invalidity.[1] Second, Dr. McHugh, in support of his opinion about the structure of the reflective web patents, references testing of 3M's reflective materials that Avery performed years ago.[2]

During the meet and confer on this motion, Avery's counsel make clear that it had no objection to 3M's expert, in rebutting, Dr. McHugh's citation to the Wood and McKenzie

---

[1] The McKenzie Patent is discussed in the McGrath Patent (which Avery disclosed to 3M last year), and discloses the same reflective structure as shown in the McGrath Patent. The Wood Patent discloses a very similar reflective structure. (See Moerke Dec., Ex. D.)

[2] As noted in 3M's memorandum, Dr. McHugh's report also contained a new opinion regarding proper inventorship. During the meet and confer on 3M's motion, Avery agreed to

Patents, examining 3M's tests of reflective materials made according to those patents. (Hadley Dec., ¶ 10.)

## III. ARGUMENT

### A. Dr. McHugh's Identification of the Wood and McKenzie Patents in the Supplemental Report Complies With Judge Tunheim's August 30 Order

Judge Tunheim's August 30, 2004 Order expressly allowed "supplemental reports reflecting claim construction provided by the Federal Circuit and this Court." (Hadley Dec., Ex. 1.) Tellingly, 3M fails to provide Judge Tunheim's controlling August 30, 2004 Order with its motion, but instead cites selected pages from the transcript of the argument. 3M's suggestion – that this Court be guided by the arguments rather than the plain words of the Court's Order – cannot prevail.

Dr. McHugh's Supplemental Invalidity Report contains nothing beyond what the Court directly allowed in its Order. Dr. McHugh accepted the claim constructions provided by the Federal Circuit and this Court, and affirmed his prior invalidity opinions. In further support of those opinions, Dr. McHugh cited two new prior art references – Wood and McKenzie. With the Court's claim constructions, Dr. McHugh concluded that those references invalidate 3M's patent (if the jury accepts 3M's argument that embedding one material into another creates an "embossed depression" – a proposition that Dr. McHugh continues to dispute). Without question, the Court understood that Avery's expert sought to evaluate the proper scope of the prior art once claim constructions were finalized. Had Judge Tunheim intended to bar Avery's expert from citing new prior art in a supplemental invalidity report, he would have said so in the Order.

3M suggests that Avery "could have" included the Wood and McKenzie references in the draft supplemental invalidity report it submitted to the Court with its request for

---

delete this opinion from Dr. McHugh's supplemental report.

supplementation. But Avery provided the draft report simply to illustrate the type of supplementation it proposed – namely, the identification of new art and analysis of that art without new experts, experimentation, or discovery. Avery never said it should be limited to the single new reference (McGrath) contained in the draft report. Nor did Judge Tunheim. Likewise, Avery never indicated to the Court that the draft report contained an exhaustive list of the prior art Dr. McHugh intended to rely upon if the Court allowed supplementation. Indeed, at the time, neither Avery nor Dr. McHugh had the benefit of the Court's claim constructions. In any event, Judge Tunheim's Order does not limit supplementation to prior art that was unavailable to Avery last August – before the claim construction ruling. Thus, Dr. McHugh's discussion of the Wood and McKenzie patents in his supplemental invalidity report is entirely within the Court's permission.

Moreover, the Federal Rules of Civil Procedure expressly allow supplementation of expert reports. Fed. R. Civ. P. 26(e). Courts often allow the supplementation under Rule 26(e) to include newly-discovered prior art, so long as the supplementation takes place more than 30-days before trial in accordance with 35 U.S.C. § 282. For example, the District Court of Minnesota rejected a similar motion to strike supplemental prior art in a patent case, which the defendant disclosed in accordance with Fed. R. Civ. P. 26(e). 3M Innovative Prop. v. Nelson, Inc., 59 Fed. R. Serv. 3d (Callaghan) 300, 2004 U.S. Dist. LEXIS 15435 at 8-9 (D. Minn. Aug. 8, 2004). In Nelson, the district court concluded that the disclosure of new prior art did not amount to "asserting a new contention, but rather providing additional facts to support a previously asserted contention." Id. Likewise here, Dr. McHugh's supplemental report provides no new contentions – his invalidity opinions were expressed in the initial invalidity report. Rather, Dr. McHugh reliance on two new prior art references provide additional facts to support his invalidity opinion. Courts also allow supplementation of new prior art where the plaintiff

will have an opportunity to rebut the new art. See Donnelly Corp. v. Gentex Corp., 37 U.S.P.Q. 2d 1146, 1995 U.S. Dist. LEXIS 20525 (W.D. Mich. Aug. 23, 1995) (defendant allowed to "supplement" motion for summary judgment of invalidity with new prior art because plaintiff "can be provided the opportunity to rebut….") Here, 3M's expert – Dr. Strong – has been allowed to rebut Dr. McHugh's statements regarding the Wood and McKenzie patents.[3]

### B. Dr. McHugh's Reference to Existing Tests in the Supplemental Report Complies With Judge Tunheim's August 30 Order

At pages 15-17 of his supplemental invalidity report, Dr. McHugh discusses the McKenzie and McGrath patents, explaining how (using 3M's view of embossed depressions) these references disclose each limitation of the '930 patent at issue in this case. (Moerke Dec., Ex. D.) Both the McKenzie and McGrath patents disclose the same reflective sheeting structure, which includes embossed ridges. To establish that these patents anticipate the '930 patent, the ridges disclosed in McKenzie/McGrath must fall within the 3-45 micron height range claimed in the '930 patent. 35 U.S.C. § 102(a). Dr. McHugh refers to passages in the McKenzie/McGrath specifications from which the ridge height can be determined. (Ex. D at 16-17.) In support of his reading of the McKenzie/McGrath patents, Dr. McHugh examined photographs of 3M's reflecting sheeting made in accordance with the McKenzie/McGrath method, and reported what he saw:

---

[3] 3M's reliance on ATD Corp. v. Lydall, Inc., 159 F.3d 534, 551 (Fed. Cir. 1998) is misplaced. In ATD, the defendant argued that the district court erred by not allowing it to raise a prior art reference during trial even though the defendant disclosed the reference 30 days prior pursuant to 35 U.S.C. § 282. Unlike ATD, Avery does not content that section 282 mandates admissibility of the Wood and McKenzie references to show invalidity. Rather, Avery contents that Dr. McHugh's discussion of the Wood and McKenzie references should be allowed as compliant with Judge Tunhiem's Order and proper supplementation under Fed. R. Civ. P. 26(e).

> "Tests of 3M reflective materials confirm that the ridge height will not exceed the diameter of the microspheres, and generally extend less than 90% of the sphere diameter."

(Ex. D at 17.)

In connection with allowable supplementation, Judge Tunheim's August 20, 2004 Order states that "no new experts, experimentation, or other discovery will be permitted." (Hadley Dec., Ex. 1.) Dr. McHugh followed this instruction and did no new experimentation. He simply looked at previously-taken photographs and reported what he saw. 3M's argument that Dr. McHugh did new "testing" is simply untrue, and his examination of existing photographs, just like his examination of new prior art patents, is well within the scope of permissible supplementation under Judge Tunheim's Order.

**C. Dr. McHugh's Supplemental Invalidity Report Is Timely**

3M argues that Dr. McHugh's supplemental invalidity report is untimely because it was served 20 days after the Court's claim construction ruling rather than the two weeks listed in Magistrate Judge Noel's October 5, 2004 Court Minutes. Yet 10 days after the Court's claim construction ruling, Avery filed a request to seek reconsideration on two limited points pursuant to Local Rule 7.1(g).

In most circumstances, a timely request to seek reconsideration of a decision extends deadlines starting from the decision date until the request for reconsideration is decided. For example, the 30 day time limit for filing an appeal does not begin until a timely filed motion for reconsideration is decided. United States v. Ibarra, 502 U.S. 1, 112 S.Ct. 4, 5 (1991). Likewise, the Connecticut District Court ruled that a timely filed motion to reconsider the denial of a motion to dismiss extended the time for filing an answer until the reconsideration was decided. Franco v. Yale University, 2002 U.S. Dist. LEXIS 689 (D. Conn. Jan. 9, 2002). See also Alford

v. National Post Office Mail Handlers, 576 F. Supp. 278, 288 (E.D. Mo. 1983) (finding it "reasonable" for defendants to await the outcome of a motion for reconsideration denying dismissal of certain claims before responding to a summary judgment motion within the prescribe period).

Although Local Rule 7.1(g) does not address the effect of reconsideration on deadlines, it made sense to determine whether the Court would modify its claim constructions before providing final expert opinions on invalidity. After all, the Court allowed the parties to supplement expert reports for the sole purpose of taking into account final claim constructions. If Dr. McHugh has provided a supplemental report, and the Court reconsidered and changed its claim constructions, Dr. McHugh's time and effort would have been wasted. Considering that no trial date had even been set when Avery moved for reconsideration, awaiting a ruling on the reconsideration request could not have prejudiced either party. Thus, the Court should find that Avery's timely request for reconsideration of the claim construction ruling extended the time for supplementing expert reports.

### D. Even if Dr. McHugh Failed to Meet the Magistrate Judge's Two Week Time Period, the Six-Day Delay Was Caused by Excusable Neglect and 3M Suffered No Resulting Prejudice

The Federal Rules of Civil Procedure give courts wide discretion to grant extension were a failure to act resulted from excusable neglect. See Fed. R. Civ. P. 6(b). Indeed, Minnesota courts have cautioned that "blind adherence to the time constraints of a Scheduling Order, without a proper regard for the bases and effects of the non-compliance, may well be inconsistent with the dominant interest of a Trial in ascertaining the truth." Upsher Smith Labs., Inc. v. Mylan Labs., Inc., 944 F. Supp. 1411, 1438 (D. Minn. 1996). For outright failures to disclose required discovery information, the Advisory Committee Notes to Fed. R. Civ. P. 37(c)(1) list four factors for assessing the substantiality of any proffered justification, as well as the

harmlessness of the failure: (1) the importance of the excluded material; (2) the explanation of the party for its failure to comply with the required disclosure; (3) the potential prejudice that would arise from allowing the material to be used at Trial, or on a Motion; and, (4) the availability of a continuance to cure such prejudice. See also Patterson v. F.W. Wollworth Co., 786 F.2d 874, 879 (8th Cir. 1986) (listing four similar factors for consideration when a party fails to disclose "the testimony of a witness . . . in a manner complying with a pretrial order."). Each factor favors excusing any neglect in this case.

***1. The Wood and McKenzie Patents Are Highly Relevant***

Dr. McHugh's supplemental invalidity report explains that 3M seeks a reading of its patent that , if accepted, would not only cover Avery's accused product, but cover the prior art Wood and McKenzie references as well. The '930 patent calls for two embossed patterns on a web – a first pattern of embossed depressions, and a second pattern of embossed lands and ridges. Avery's accused product contains an embossed pattern of lands and ridges. As opposed to a pattern of embossed depressions, Avery's accused product contains ink dots embedded flush into the web surface. If "embossed depressions" covers embedded ink dots, as 3M contents, then its patent cannot be valid because both the Wood and McKenzie patents combine an embedded material with embossed lands and ridges. Thus, the Wood and McKenize references are highly relevant to prevent 3M from construing its patent so broadly that it reads on the prior art.

***2. Any Delay In Serving Dr. McHugh's Supplemental Report Is Excusable***

Aside from filing a motion for reconsideration within the prescribed time period, any delay should excused. Nearly 10 months passed from the time the Court allowed supplemental reports to the claim construction decision. When Judge Tunheim issued the claim construction ruling, Avery's counsel check Judge Tunheim's August 30, 2004 Order and saw no deadline for supplementing expert reports. Counsel simply did not recall the 15 minute telephonic hearing

before Magistrate Judge Noel eight months earlier. Nor did counsel recall any discussion of the timing for expert reports or Magistrate Judge Noel's Court Minutes. (Hadley Dec., ¶ 5.) Avery's counsel checked the files maintained for the case, and Magistrate Judge Noel's Court Minutes were not in the file. (Id.) Finally, Avery's counsel knows of no way that Magistrate Judge Noel's two week deadline for supplementation could have been calendared since no party had any idea when Judge Tunheim would issue his claim construction rulings.

***3. 3M Cannot Show That It Is Prejudiced by Either the Supplementation Or Any Delay***

3M will suffer no prejudice from receiving Dr. McHugh's supplemental invalidity report on July 11 rather than July 6 – a six day difference. First, Dr. McHugh did not receive the supplemental infringement report of 3M's expert before preparing his supplemental invalidity report. Second, trial is not scheduled until December 12, so a six-day delay cannot seriously impair trial preparation for a case pending since 2002. Third, the Court's August 30, 2004 Order disallowed further discovery, so 3M could not have engaged in discovery even if the Wood and McKenzie references had been disclosed six days earlier. Besides, 3M engaged in no discovery on any of the other prior art references that Avery disclosed, including the McGrath patent that Dr. McHugh discussed in his draft supplemental report last year. Fourth, the Wood and McKenzie references show embossed webs for reflective sheeting, and Avery told 3M a year ago that reflective sheeting art invalidates its patent under the claim constructions 3M proposes. Fifth, the Wood and McKenzie references are well known to 3M – indeed, both are 3M patents. Sixth, 3M can talk with the inventors of the Wood and McKenzie patents and examine materials made in accordance with the patents without formal discovery. Finally, the Court allowed 3M's expert to rebut Dr. McHugh's supplemental invalidity report, and Avery offered to extend the rebuttal time corresponding to any delay in service.

While 3M offers no evidence establishing that a six-day delay caused any prejudice, 3M suggests that this Court should "presume" prejudice because it earlier struck an untimely report of a 3M expert – Dr. Cohen. Yet the circumstances surrounding Dr. Cohen's reports markedly differ from the facts here and demonstrate why striking Dr. McHugh's report would be unjustified. In the original case management order, this Court set dates certain for expert initial and rebuttal reports, and stated that a failure to meet these dates would warrant striking an expert report. Well before the due dates for 3M's initial infringement report, 3M hired Dr. Cohen had had him do extensive testing on Avery's accused product. 3M did not produce Dr. Cohen's testing during discovery. Moreover, on the due date for 3M's infringement expert reports, 3M did not disclose the identity of Dr. Cohen or any of his testing or opinions. Rather, 3M elected to rely on a different infringement expert – Dr. Strong. Then, well after the due date for rebuttal reports and after the close of all expert discovery, 3M identified Dr. Cohen along with a report and the testing he had done prior to the date for expert disclosures. Recognizing the type of sandbagging that 3M attempted, the Court properly struck Dr. Cohen's report and testing.

In contrast, the Court set no date certain for supplementing expert reports. Moreover, Avery did make an intentional decision to not supplement Dr. McHugh's report, and then change its mind after discovery. Rather, Avery's counsel simply did not recall the two week deadline, but did file a timely motion for reconsideration. Once Avery's counsel became aware of the deadline, Dr. McHugh prepared a supplemental report within four days. Finally, Dr. McHugh did not offer extensive new testing that Avery initially elected to withhold – he simply cited two new prior art references, similar to references already cited, to support existing invalidity opinions based on new claim constructions.

## IV. CONCLUSION

For the foregoing reasons, Avery respectfully asks that 3M's motion be denied.

DATED: August 8, 2005

Respectfully submitted,

/S/ Lawrence M. Hadley ___________________

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

David P. Pearson (#0084712)
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-1260 - Facsimile