IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

vs.

AVERY DENNISON CORPORATION,

Defendant.

Civil Action No. 01-CV-1781 (JRT/FLN)

**DECLARATION OF LAWRENCE M. HADLEY IN SUPPORT OF AVERY DENNISON CORPORATION'S OPPOSITION TO 3M'S MOTION TO STRIKE SUPPLEMENTAL AND REVISED EXPERT REPORT OF DR. ANTHONY J. MCHUGH REGARDING INVALIDITY OF U.S. PATENT NO. 5,987,930**

I, Lawrence M. Hadley, declare and state as follows:

1. I am an attorney with the law firm of Hennigan, Bennett & Dorman, counsel for Avery Dennison Corporation ("Avery") in this matter. I make this Declaration in support of Avery Dennison Corporation's Opposition to 3M's Motion to Strike Avery's Supplemental and Revised Expert Report of Dr. Anthony J. McHugh. I have personal knowledge of the facts set forth herein, and if called upon to testify, I could and would competently testify as to these facts.

2. On August 30, 2004, Judge Tunheim issued an Order permitting both parties to supplement expert reports once the Court issued final claim construction rulings: A true and correct copy of Judge Tunheim's August 30, 2004 Order is attached as Exhibit 1.

3. On June 1, 2004, Avery notified 3M that the breadth of the claim construction positions it had advocated could not be distinguished from reflective sheeting developed long ago. A true and correct copy of Avery's June 1, 2004 letter is attached as Exhibit 2.

4. On October 5, 2004, Magistrate Judge Noel held a short telephonic conference to discuss the case status. The parties informed Magistrate Judge Noel that the District Court had

taken the claim construction issues under submission, that the Court would allow the experts to supplement their reports after the claim construction decision (without new experts, experimentation, or discovery), and that the Court would consider whether to allow new summary judgment motions after its claim construction rulings. Later that day, Magistrate Judge Noel prepared Minutes of the conference. A true and correct copy of Magistrate Judge Noel's Court Minutes is attached as Exhibit 3.

5. On or about June 21, 2005, I received by email a copy of Judge Tunheim's claim construction rulings dated June 20, 2005. After reading the rulings, I check the files that our law firm maintains for this case to see if any orders pertained to next steps or deadlines. Approximately 10 months had passed since any significant activity in this case, and I did not recall the status of discovery or expert matters. Upon checking our files, I located Judge Tunheim's August 30 Order and noted that the Court had allowed supplemental expert reports, but that the Court did not set a deadline for supplementing. I check the file further, and it did not contain Magistrate Judge Noel's October 5 Court Minutes. Nor did I recall that Magistrate Judge Noel had either held the telephonic conference eight months earlier or set a two week time period for supplementing expert reports.

6. Over the next 10 days, Avery's counsel evaluated the claim construction ruling with the client. Ultimately, Avery decided to ask the Court for reconsideration on two issues in the claim construction decision. On June 30, 2005, Avery filed, pursuant to Local Rule 7.1(g) a request for permission to seek reconsideration. A true and correct copy of Avery's request for reconsideration is attached as Exhibit 4.

7. On July 6, 2005, the Court held a Status Conference. Following the conference, I spoke with 3M's counsel regarding supplemental expert reports. 3M's counsel stated that Magistrate Judge Noel had set dates for two weeks after the Court's claim construction rulings. I responded that I had not seen Judge Noel's Order in our files, and did not recall a two week deadline. Consequently, I asked 3M's counsel to send a copy of the order.

8. Upon returning to Los Angeles the next day, I saw that 3M's counsel had emailed to me Magistrate Judge Noel's Court Minutes. After reviewing Magistrate Judge Noel's Court Minutes, I send an email to 3M's counsel stating that the supplemental invalidity report would be provided as soon as possible. I also offered 3M the opportunity to provide a further supplementation of its infringement expert report and to extend the service of any rebuttal to Avery's supplemental expert report. A true and correct copy of my email to 3M's counsel is attached as Exhibit 5.

9. I then proceeded to contact Dr. McHugh to work on preparing the supplemental rebuttal report. Dr. McHugh was out of town, so it took me a day to locate him. I did not provide 3M's supplemental expert report on infringement to Dr. McHugh until he had signed and we had served his supplemental invalidity report on July 11, 2005.

10. During the meet and confer on this motion, I told 3M's counsel that Avery had no objection to 3M's expert, in rebutting, Dr. McHugh's citation to the Wood and McKenzie Patents, examining 3M's tests of reflective materials made according to those patents.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 8th day of August, 2004, in Los Angeles, California.

/S/ Lawrence M. Hadley
Lawrence M. Hadley

# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

## CIVIL MOTION HEARING

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY AND MINNESOTA MINING AND MANUFACTURING COMPANY, Plaintiffs, | ) | **COURT MINUTES** BEFORE: John R. Tunheim U.S. District Judge |
| v. | ) | Case No: 01-1781 JRT/FLN |
| | ) | Date: August 30, 2004 |
| | ) | Deputy: Lou Jean M. Gleason |
| AVERY DENNISON CORPORATION, | ) | Court Reporter: Kristine Mousseau |
| | ) | Time Commenced: 9:25 a.m. |
| | ) | Time Concluded: 10:48 a.m. |
| Defendant. | ) | Time in Court: 1 Hours & 23 Minutes |

**Hearing on: Claim Construction and Appeal of Magistrate Noel's Pretrial Order dated 4/21/04.**

APPEARANCES:

Plaintiff: John C. Adkisson, Jonathan E. Singer, Juanita Brooks, Gregory Madera, and Kevin H. Rhodes
Defendant: David P. Pearson, Roderick G. Dorman, and Lawrence M. Hadley

**IT IS ORDERED:

Defendant's Motion for Review of Magistrate Judge Noel's Order dated 4/21/04 [Docket No. 157] is **GRANTED**. Paragraphs 3 and 4 of the Magistrate Judge's Order [Docket No. 154] are **REVERSED**. The parties will be permitted to file supplemental expert reports reflecting the claim constructions provided by the Federal Circuit and this Court. However, no new experts, experimentation, or other discovery will be permitted. Additionally, following this Court's Order on the claim construction issues, defendant's will be permitted to request the Court's permission to file a motion for summary judgment. The request should be submitted by letter brief of no more than five pages and should be submitted within one week of this Court's order on claim construction. The plaintiff will be permitted respond by letter of no more than five pages within one week of defendant's request.

__ **Written order forthcoming on Claim Construction.**

s/Lou Jean M. Gleason
Calendar Clerk

M:\templates\cv-motion - Art III.wpt

Form Modified: 2/12/04

# EXHIBIT 2

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
601 SOUTH FIGUEROA STREET
SUITE 3300
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1135
HADLEYL@HBDLAWYERS.COM

June 1, 2004

**VIA FACSIMILE AND U.S. MAIL**

Jonathan E. Singer, Esq.
John C. Adkisson, Esq.
Fish & Richardson P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota 55402

Juanita R. Brooks, Esq.
Fish & Richardson P.C.
12390 El Camino Real
San Diego, California 92130-2081

Re: *3M v. Avery Dennison*

Dear Counsel:

I write to bring to your attention two prior art references. We believe these references conclusively anticipate 3M's '930 patent based on the claim construction positions advocated by 3M based upon the Federal Circuit's December 2, 2003 opinion.

3M has asserted broad constructions for the terms used in claim 1 of the '930 patent. For example, 3M has argued that an "embossed" surface includes a surface with one material embedded into another. Similarly, 3M has argued that a "depression" exists in a surface even when that surface contains no open cavities, but rather has another material embedded into it flush. Finally, 3M has asserted (and the Federal Circuit has ruled) that the "first" and "second" embossed patterns recited in claim 1 of the '930 patent can be formed simultaneously. Absent these broad constructions, Avery's EZ Film cannot infringe the '930 patent for the reasons stated in Judge Doty's October 19, 2002 decision granting Avery summary judgment.

If 3M's claim construction positions were adopted, the '930 patent would be anticipated by at least two United States patents—U.S. patent 4,025,159 (assigned to 3M) and U.S. patent 3,989,775. The '159 patent discloses a sheeting with a pattern of square, intersecting ridges between 4 and 120 microns in height. Embedded microspheres are interspersed between the ridges. Similarly, the '775 patent discloses an embossed sheet

material with embedded retro-reflective spheres. In several of the disclosed embodiments, the height of the embossed ridges is less than 73.5 microns.

The following claim charts show that both the '159 and '775 patents, using 3M's constructions, read on each limitation of claim 1of 3M's '930 patent:

| '930 Patent | 3M's Proposed Construction | '159 Patent | '775 Patent |
|---|---|---|---|
| 1. A carrier web, comprising: | A web that carries or that has carried another material, or that is capable of carrying another material, such as pressure sensitive adhesive; a web is generally planar or sheet material. | Base sheet material 11 meets 3M's definition. | The plastics matrix sheet 21 meets 3M's definition. |
| at least one surface that has a multiple embossed pattern having a first embossed pattern and a second embossed pattern, | "multiple embossed" refers to the web structure and includes embossed patterns formed separately and simultaneously.<br><br>"embossed" refers to the web structure and includes any "three-dimensional topography." A surface is embossed when another material is embedded into it.<br><br>"pattern" means any formation of | Disclosed structure meets 3M's definition. Area beneath embedded spheres 17 form first embossed pattern. Intersecting ridges 13 form second embossed pattern. Patterns are formed separately. | Disclosed structure meets 3M's definition. Area beneath embedded spheres 24 form first embossed pattern. Figure 7 shows three-dimensional topography of the embossed second pattern. Patterns are formed simultaneously. |

| '930 Patent | 3M's Proposed Construction | '159 Patent | '775 Patent |
|---|---|---|---|
| | embossings that can utilize any theory of geometry, including without limitation, Euclidian geometry and fractal geometry. | | |
| wherein the first embossed pattern forms an array of depressions, | "depression" means any reduction in surface height or lowering of one region of the carrier web relative to surrounding regions of the carrier web. An area beneath an embedded material is a depression in the web.<br><br>"array" means arranged in regular order. | Spheres 16 are partially embedded into the web.<br><br>Spheres are arranged in regular order. | Spheres 23 are partially embedded into the web.<br><br>Spheres are arranged in regular order. |
| wherein the depressions of the first embossed pattern are in the second embossed pattern, | Applying term "superimposed" from the definition of "multiple embossed," the two patterns must be in the "same region" of the carrier web. | Spheres are located in the "embossed" pattern. | Spheres are located in the "embossed" pattern. |
| wherein the second embossed pattern comprises lands and ridges | A "land" is a lower region of the carrier web. | Intersecting lines 13 meet 3M's definition of ridges. Areas between lines | Peaks shown in figure 7 meet 3M's definition of ridges. Areas between peaks |

| '930 Patent | 3M's Proposed Construction | '159 Patent | '775 Patent |
|---|---|---|---|
| between the lands, | A "ridge" is a crest or a relatively long, relatively narrow raised region of the carrier web, located between lands. | 13 meet 3M's definition of lands. | meet 3M's definition of lands. |
| and wherein the height of the ridges over the lands ranges from about 3 to about 45 $\mu$m. | None offered | Ridge height equals distance from web surface to bottom of cover film 12. Distance between top of microspheres and cover film 12 is as thin as a monomolecular layer of air. Spheres are embedded into web surface 40% to 60% of their diameter. Spheres range from 10 to 200 microns. Thus, ridge height ranges from about 4 to 120 microns. | Embossing may be superficial, preferably deep enough to change angle of incidence of spheres 35 to 80 degrees from line vertical through sphere center. Examples describe embossing to a "maximum" depth of 73.5 microns. |

Both the '159 and '775 patents disclose the remaining limitations of dependent claims 2-5 as well.

In view of these prior art references, 3M can no longer maintain its patent infringement action against Avery in good faith. If you have any reason to believe that the '930 patent is valid despite the prior art references discussed in this letter, and that Avery, at the same time, still infringes the '930 patent, I ask that you provide a detailed explanation prior to June 7, 2004 (one week before Avery's opening claim construction brief is due). Otherwise, Avery demands that 3M immediately dismiss the action. I

would be happy to discuss with you the terms under which the action might be dismissed without further litigation or legal proceedings.

Please be advised that failure to dismiss an action maintained in bad faith can have significant consequences. First, maintaining a patent infringement suit on a knowingly invalid patent for anticompetitive reasons violates antitrust laws. Handgards, Inc. v. Ethicon, Inc., 743 F.2d 1282 (9th Cir. 1985). Second, submitting pleadings to a court advocating a position that, based on information learned during the case, knowingly cannot be sustained exposes the client and its counsel to sanctions under Fed. R. Civ. P. 11. Third, continuing a patent infringement case in bad faith may entitle the prevailing party to attorneys fees under section 285 of the Patent Act. Finally, under California law, attorneys and their client face liability for malicious prosecution if they continue prosecuting a lawsuit after discovering during litigation that the action lacks probable cause. Zamos v. Stroud, 32 Cal. 4th 958, 12 Cal. Rptr. 3d 54 (2004).

Sincerely,

Lawrence M. Hadley

# EXHIBIT 3

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

# FOLLOW-UP CASE MANAGEMENT CONFERENCE

3M Innovative Properties Co. et al.,

Plaintiffs,

v.

Avery-Dennison Corp

Defendant.

**COURT MINUTES**
Case Number: 01-1781 JRT/FLN

| | |
|---|---|
| Date: | October 5, 2004 |
| Court Reporter: | n/a |
| Time Commenced: | 9:00 a.m. |
| Time Concluded: | 9:15 a.m. |
| Time in Court: | 15 Minutes |

Pretrial Conference before Franklin L. Noel, United States Magistrate Judge, at Minneapolis, Minnesota.

APPEARANCES:

For Plaintiff: John Adkisson, Juanita Brooks

For Defendant: Larry Hadley, David Pearson

A. DESCRIPTION OF THE CASE

1. Nature of the case: Patent claims

2. Legal and factual issues:

a) Liability: ____________________

b) Damages: ____________________

B. THE PLEADINGS

1. All filed? Complete

a. Anticipated amendments? No

b. Additional parties? No

2. Jury demand:

a. yes ☒ no ☐

b. Any issue with respect to jury demand? ______

3. Amend Pleadings:

a. Add parties/claims/defenses n/a

b. Punitive damages motion ______

C. DISCOVERY

1. Limitations on Discovery:

a) Interrogatories n/a
b) Depositions n/a
c) Requests for Admission n/a
d) Document Requests n/a
e) Rule 35 Medical Exam ______
f) Other ______

2. Pre-Discovery Disclosures ______

3. Discovery cut-off Done

4. Other deadlines Within one week after Judge Tunheim rules on claim construction issues, Defendant will, by letter, request permission to file summary judgment motion; Plaintiff will respond, by letter, within one week after Defendant's letter is served.

5. Experts: YES ☒ NO ☐

a. Identity ______
Initial 2 weeks after JRT rules on claim construction issues Rebuttal 2 weeks after initial reports are served

b. Substance of Testimony ______
Initial See above Rebuttal see above

c. Depositions; Number ______; Date ______

D. MOTIONS

1. Non-dispositive n/a

2. Dispositive n/a

E. TRIAL READINESS

a. Estimated Trial Time: ____________________

b. Trial Ready Date: TBA

Follow-up case management conference to be scheduled for a date in mid December, 2004, by telephone

s/Franklin L. Noel
U. S. Magistrate Judge

# EXHIBIT 4

HENNIGAN, BENNETT & DORMAN LLP
LAWYERS
601 SOUTH FIGUEROA STREET
SUITE 3300
LOS ANGELES, CALIFORNIA 90017
TELEPHONE (213) 694-1200
FACSIMILE (213) 694-1234

DIRECT PHONE (213) 694-1135
HADLEYL@HBDLAWYERS.COM

June 30, 2005

**VIA HAND DELIVERY**

The Honorable John R. Tunheim
United States District Court
13E U.S. Courthouse, 300 South Fourth Street
Minneapolis, Minnesota 55415

**Re:** ***3M Innovative Properties Co. v. Avery Dennison Corp., Case No. 01-1781 JRT/FLN***

Dear Judge Tunheim:

Pursuant to Local Rule 7.1(g), defendant Avery Dennison Corporation ("Avery") respectfully seeks permission to file a limited motion for reconsideration of the Court's June 20, 2005 Memorandum and Opinion Construing Disputed Claims ("Opinion"). Avery's proposed motion would seek reconsideration on a very narrow issue that, without correction, would result in reversible error on appeal.

The Court's Opinion defined "depressions" as "lower, sunken, or depressed areas of the carrier web" and declined to adopt Avery's proposed additional limitation, "which is capable of being filled." In reaching this decision, the Court addressed Avery's argument that dependent claim 12 requires "open" depressions in independent claim 1. (Op. at 7-9.) The Court found Avery's argument regarding "open" depressions similar to Avery's earlier argument that 3M wrote claim 1 in the "product-by-process" format. As the Court correctly noted, the Federal Circuit rejected this argument, finding claim 1 to be entirely structural, and not written in the product by process format. *3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1372 (Fed. Cir. 2003).

The fact that the Federal Circuit found claim 1 to be entirely structural and not a product-by-process claim is legally irrelevant to whether the structure of the depressions described in claim 1 are empty or filled. The Federal Circuit never addressed that issue. We know from the Federal Circuit's ruling that claim 1 was not written in "product-by-process" format, and that the serial embossing clearly present in

method claim 6 cannot be read into product claim 1. Claims 1 and 6 of the '930 patent are both independent. It is well settled that limitations in one independent claim cannot be read into another independent claim. *Forest Labs, v. Abbott Labs.*, 239 F.3d 1305 (Fed. Cir. 2001). Independent claims are considered separately, and Avery never argued otherwise.

Claim 12 differs. It is not an independent claim. Rather, it is ***dependent*** on claim 1. In other words, the elements of claim 1 must be read in conjunction with claim 12, as if they were all in one claim. 35 U.S.C. § 112(4). Indeed, the elements of both claims must be read into each other when considering the meaning of claim 12. Thus, the Federal Circuit's statements regarding the relationship between claims 1 and 6 – both independent claims – are irrelevant to the relationship between claim 1 and its dependent claim 12.

Considered together as we must, the elements of claim 1 in conjunction with the elements of claim 12 create a "hybrid" product-by-process claim. In accordance with the Federal Circuit's decision, the claim 1 elements recite a web structure. The elements of claim 12 undisputedly recite a process step grafted onto the web structure of claim 1 – namely, filling the embossed pattern (including the depressions) with an adhesive. It is equally undisputable that the claim 12 and 1 combination includes a method step of filling the depressions after they are made. Nothing in the earlier Federal Circuit decisions concerning claim 6 requires a contrary conclusion. The "filling" step, of course, is not part of claim 1 standing alone. But as explained in Avery's claim construction brief, if the structural depressions of claim 1 must be filled in claim 12 (as the express language of claim 12 mandates), then they must be "open" in the recited structure of claim 1.

Finally, footnote 4 of the Opinion correctly notes that the patent specification discloses embodiments of the invention with both empty and filled depressions. But that disclosure does not determine how 3M elected to claim its invention. 3M could (and did) claim the "empty" depression embodiment in claim 1 and the "filled" depression embodiment in dependent claim 12.

For the foregoing reasons, Avery respectfully asks that the Court allow it to bring a motion for reconsideration on this limited, single issue.

Sincerely,

Lawrence M. Hadley

492270

# EXHIBIT 5

**Larry Hadley**

**From:** Larry Hadley
**Sent:** Thursday, July 07, 2005 1:27 PM
**To:** 'John Adkisson'
**Cc:** Roderick G. Dorman
**Subject:** RE: 3M/Avery: Judge Noel's October 5, 2004 Order

John:
I was going from Judge Tunheim's August 30, 2004 order, which did not set deadlines. Since we filed a request for reconsideration within the time period (and our experts are both university professors currently on summer break), I had assumed we would agree to a schedule that makes sense once we know whether the court will reconsider. Also, Judge Noel's order is unclear as to what is considered initial and what is considered rebuttal, and how a request for reconsideration affects the timing.
Any event, I don't think either party should be prejudiced. Our supplemental report will be substantially the same as the redlined report we already served last August. Nothing in Strong's supplemental infringement report will be considered in Dr. McHugh's supplemental invalidity report. However, if there is anything in the supplemental invalidity report that you believe requires further supplementation from Dr. Strong, we will not object to you filing an additional infringement document, and we agree that you should have two weeks from service of the supplemental invalidity report to respond to that report. Our supplemental report will be served on you tomorrow or Monday. Rod has to review it, and he is out of the office following his Wednesday chemotherapy treatment.

-----Original Message-----
From: John Adkisson [mailto:Adkisson@fr.com]
Sent: Wednesday, July 06, 2005 1:57 PM
To: Larry Hadley; Roderick G. Dorman
Cc: Jonathan Singer
Subject: 3M/Avery: Judge Noel's October 5, 2004 Order

Larry:

I have attached Judge Noel's Order of 10/5/04, which sets a date for Avery to provide its supplemental expert report on invalidity "two weeks after Judge Tunheim rules on claim construction issues." While we served our supplemental invalidity report on Avery yesterday, July 5, we did not receive a supplemental report from Avery as required by the Court's schedule. When we talked about this issue after today's conference with Judge Tunheim, you told me that you did not recall the above order, and that you would attempt to provide us with Avery's supplemental expert report shortly.

We are troubled by Avery's noncompliance with the Court's Order, especially because Avery's noncompliance with the Court's Order gives Avery the opportunity to review 3M's submissions (including Dr. Strong's
report) in advance of filing its expert report, when the Court and the parties had contemplated a mutual exchange. As such, we reserve the right to move to strike Avery's supplemental expert report on invalidity as untimely.

JCA