Exhibit 1

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

RECEIVED
SEP 10 2004
CLERK
U.S. DISTRICT COURT
MINNEAPOLIS, MINNESOTA

---

3M Innovative Properties Company and Minnesota Mining and Manufacturing Company,

Plaintiffs,

vs.

Avery Dennison Corporation,

Defendant.

File No. 01cv1781 (JRT/FLN)

Minneapolis, Minnesota
August 30, 2004
9:25 A.M.

---

BEFORE THE HONORABLE JOHN R. TUNHEIM
UNITED STATES DISTRICT COURT JUDGE
(**CLAIM CONSTRUCTION HEARING**)

APPEARANCES

For the Plaintiffs: JUANITA BROOKS, ESQ.
JONATHAN E. SINGER, ESQ.
JOHN C. ADKISSON, ESQ.
GREGORY MADERA, ESQ.
KEVIN H. RHODES, ESQ.

For the Defendant: RODERICK G. DORMAN, ESQ.
LAWRENCE M. HADLEY, ESQ.
DAVID P. PEARSON, ESQ.

Court Reporter: KRISTINE MOUSSEAU, CRR-RPR
1005 United States Courthouse
300 Fourth Street South
Minneapolis, Minnesota 55415
(612) 664-5106

173

Proceedings recorded by mechanical stenography; transcript produced by computer.

MR. HADLEY: I believe that the term "planar" does mean flat. A second problem with 3M's definition is the use of the term "generally planar." I have no clue as to how planar something must be to be generally planar.

Certainly, even with a constant radius of curvature, if you look at the very bottom of the curvature at a small enough level, you will find an area that is relatively flat. The concern I have with 3M's proposed definition is that it requires construction in and of itself.

THE COURT: Okay.

MR. HADLEY: Your Honor, I am prepared also to address the other motion. I don't know if you would like me to do that now.

THE COURT: Why don't you? That's fine. We'll just take a moment right now.

MR. HADLEY: As Your Honor knows, Avery has appealed the decision of Magistrate Judge Noel in two respects. First, that there will be no supplementation of expert reports, and then secondly with respect to the issue of whether this Court will consider further dispositive motions.

The issues before Judge Noel were not briefed, and Judge Noel did not consider evidence, particularly with respect to the issue of supplementing expert reports. What

the parties did do was to submit simultaneous status conference statements.

And in Avery's status conference statement, it said that it would be asking for supplementation of expert reports, and it provided the federal circuit case indicating that supplemental expert reports following dispositive claim construction rulings are appropriate.

But none of the evidence was submitted before the magistrate judge regarding the -- or no briefing was done on the legal standard, and no evidence was submitted regarding the scope of the parties' stipulation or the intent behind the parties' stipulation. That has been presented for the first time before this Court in the appeal.

We asked during the status conference in front of Magistrate Judge Noel whether he would issue his ruling as a tentative and allow the parties to brief, and his position was that he would go ahead for the sake of time management, make his ruling final and allow us to either bring a motion for reconsideration in front of him or to appeal to this Court.

And at the status conference before this Court, we raised the issue with Your Honor and decided that it would be best to raise as an appeal. There are three reasons why we think that the Court should allow the

supplemental expert reports.

The first reason is that the law allows it. Both the *Cellpro* case by the federal circuit and the district court case in *Becton Dickinson* recognized that once claim construction rulings are made that experts should be allowed to supplement expert reports and to provide opinions of infringement and validity based on what the Court determines are the relevant legal standards from claim construction.

The parties' stipulation was not intended to depart from that settled case law. The parties' stipulation was to follow what the case law says by providing a good cause exception to supplementing expert reports to address different claim constructions.

What happened was that the parties disputed which procedure the district court should adopt so that the summary judgment could be appealed to the federal circuit. Both parties were preparing to file motions to the district court, and as good lawyers will do, the parties recognized that the Court is busy and that it was probably better to try to agree on something rather than burden the Court with hearing a motion.

3M insisted on if it was going to stipulate on having a stipulation that precluded supplementing expert reports unless good cause existed. We didn't want that

language, and in subsequent communications which have been presented to the Court, the parties agreed that good cause would be met if the case law allowed supplementing expert reports.

From Avery's position, we said if the case law supports it, why do we need a stipulation. 3M said, if the case law supports it, why would you oppose a stipulation. And to simply prevent burdening the Court with a motion that was unnecessary, we decided to go along with the latter option of having a stipulation, even though we believed it was largely unnecessary since the case law, the good cause standard would be supported by -- would be supported if the case law allowed supplementing expert reports.

It was simply to save the Court the time and effort to hear a motion that could be resolved by stipulation. 3M also argues that Avery should have anticipated different claim constructions and had its expert opine in the alternative.

First of all, there is no case law that mandates that expert reports in patent cases assume hypothetically or that experts assume hypothetically various claim constructions and offer opinions based on those alternates.

In fact, such a requirement would make it virtually impossible to prepare expert reports since it is

well settled that a Court can adopt claim constructions that are not advanced by either party. It would put experts in a very difficult situation if that were the law.

3M also points to the *Union Carbide* case where a district court in Delaware disallowed supplementing expert reports. That case is distinguishable on a number of levels that are all described in our papers, which I think explains very well why the court, the district court in that case, did not allow supplementing expert reports.

It wasn't just a matter of supplementing expert reports. It was a matter of taking extensive, new discovery, offering new testing, new data, new experts, no opinions. Here we're not seeking to offer new experts, new testing, new data, new opinions.

We simply want the opportunity to revise the expert reports to reflect not only what the federal circuit said about claim construction but what this Court will ultimately decide regarding claim construction of the terms that are before the Court now.

One other large difference I think between the *Union Carbide* case and this situation is that in this situation the Court gave us the claim constructions at the preliminary -- following the preliminary injunction stage. What Avery did was simply give the Court's decision to the expert and tell the expert to write an expert report, which

removable protective liner over said surface layer, including a plastic surface layer formed with surface depressions closely matching the surfaces of the micro balls extending beyond the adhesive surface.

So what you have got is, you have got this plastic layer on type of the micro balls, and when they're describing the surface of that plastic layer, there are depressions that are formed on that surface because of the earlier embedded micro balls.

So what occurs here is far from being helpful to them. This, in the plain meaning of the word "depressions" when we're talking about a depression in a surface, supports what we're saying.

The last point, Your Honor, with respect to -- with respect to this case, the proposal that we made to this Court to simply get that very short letter to you after you ruled, I don't think there is a dispute about how my client's product is made.

We used to have a dispute about whether there was sequential embossing and some preliminary embossment of the ink dots, the hardened ink dots, but those issues have been rendered legally irrelevant by the federal circuit's ruling that this has no process limitations.

We're just talking about structure, and it's absolutely undisputed that in fact their own experts have

admitted this, that when my client single embosses a pattern of lands and ridges that it has -- it embeds hardened ink dots flush with the surface.

So we're talking about a flush surface, and we are focusing on the surface. We're only talking depressions if we are describing depressions of that polyethylene that have been pushed down because of those ink dots.

We don't have a dispute as to structure. So really the whole fight here I think is legal, and I do believe, and what I don't want to have happen because it would be a waste of time is, that there is no prejudice with respect to us briefly supplementing once you rule our only expert report.

That was the bargain that we struck to basically do that, and, Your Honor, obviously in submitting to you and lodging with you a proposed supplemental expert report in the context of our motion to overturn his ruling, it was to indicate to you how simple this was, that it was not burdensome, and it was not to violate any magistrate order.

THE COURT: What about the additional prior art that was cited? Was that necessary because of the differing --

MR. DORMAN: Claim constructions. What happens is, when you have a different claim construction, that

creates legally relevant differences as to what prior art now causes their claims to be invalid, and our position is, if you're going to now argue that embedding ink dots creates depressions, that just embedding creates surface depressions, then we're going to use your own art to show that this patent is invalid, and interestingly, their arguments have changed as to what words mean.

They started with emboss meaning the ordinary meaning. When they saw they are losing that, then they argued that the definition of embossed pattern in the patent was something different than the ordinary meaning even though the judge, Judge Doty, simply understood that to be the ordinary meaning although it was an awkward expression of it.

The bottom line is, there is no reason, there is no good reason to deny our request to supplement that single one and then cause this appealable issue to exist, and then if we have to try this case, go up and have it sent down because we didn't have that opportunity which --

MR. HADLEY: If I could raise one issue on the prior art issue?

THE COURT: That's fine.

MR. HADLEY: Both sides exchanged extensive lists -- both sides. Avery submitted an extensive list to 3M of potential prior art references. In the expert

reports, and by the way, at least one, and I believe two of the references that are now discussed in the supplemental McHugh report are listed in the disclosures that Avery made.

But in order to bring some efficiency to the process, in the original expert report, Dr. McHugh focused on I believe one or two prior art references based on the constructions that existed at that point.

What the supplemental report simply does is not propose to take 300 other prior art references but rather to say that if the claims are construed based on the, one, new definitions provided by the federal circuit and, two, depending on how this Court construes the claim terms, the initial prior art references that I relied on may not have much relevance, but on the other hand, these three other prior references will now become the relevant focus.

And, again, the validity of the patent should be judged on the legal standard of the claim constructions not on a rejected standard of claim construction.

MS. BROOKS: Your Honor, could I just, two very quick issues?

THE COURT: Go ahead, Ms. Brooks. That's fine.

MS. BROOKS: First of all, I would like to give the Court Danielson that we have been discussing at length so that Your Honor has a copy of it. Just very quickly,