IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs

v.

AVERY DENNISON CORPORATION,

Defendant.

Civil Action No. 01-1781 JRT/FLN

**3M'S RESPONSE TO AVERY'S DENNISON CORPORATION'S OBJECTIONS TO MAGISTRATE JUDGE'S ORDER GRANTING IN PART 3M'S MOTION TO STRIKE SUPPLEMENTAL AND REVISED EXPERT REPORT OF DR. ANTHONY MCHUGH**

Two months ago, Avery Dennison Corporation ("Avery") tried to insert into this case two brand-new invalidity arguments and previously undisclosed testing information by submitting yet another "Supplemental and Revised Expert Report of Dr. Anthony McHugh." Avery attempted to insert these new arguments and information into the case *after* fact discovery had closed, *after* expert discovery had closed, and *after* this Court had overruled Magistrate Judge Noel to allow Avery to submit an earlier, supplemental "redlined" expert report last summer.

As soon as 3M received Avery's latest "Supplemental and Revised Expert Report," 3M asked Magistrate Judge Noel to strike the new material submitted by Avery. In support of its argument, 3M pointed out that nothing prevented Avery from disclosing this material during the discovery period in this case, or, at the very least, in the first additional expert report that this Court allowed last summer. Magistrate Judge Noel

granted 3M's motion to strike portions of Dr. McHugh's report, but now Avery asks the Court to reverse Magistrate Judge Noel a second time. The Court should reject Avery's request because there is nothing about Magistrate Judge Noel's decision that is "clearly erroneous or contrary to law."

The deadlines established by the Court were established for a reason, and Avery has provided the Court with no legitimate excuse for its noncompliance with those deadlines or the resultant prejudice to 3M just two months before trial. Avery should not be allowed to sandbag 3M by providing its invalidity arguments for the first time in an expert's "supplemental" submission served after the close of discovery, especially when Avery had multiple previous opportunities to provide that information to 3M. The parties are barely two months away from trial, and it would be extremely unfair and prejudicial for 3M to have to respond to these new arguments now instead of focusing its efforts on trial preparation.

## I. BACKGROUND

Almost four years ago to the day, 3M brought suit to stop Avery from infringing 3M's United States Patent No. 5,897,930 ("the '930 Patent"). After Judge Doty's initial claim construction and summary judgment rulings, and appeal to the Federal Circuit following a stipulated dismissal, the Federal Circuit reversed Judge Doty on December 2, 2003 and remanded the case. *See generally 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003).

On remand, the case was reassigned to Judge Tunheim and Magistrate Judge Noel, who both held pretrial status conferences on April 21, 2004. On that date, Magistrate

Judge Noel ordered that "[n]o further supplementation of expert reports will be permitted." (Doc. No. 154.)

### A. Avery Successfully Asked the Court in 2004 to Supplement Its Expert Report and Add the McGrath, Jack, and Rusincovitch Patents.

Avery appealed to the Court in 2004, asking the Court to set aside portions of Magistrate Judge Noel's April 21, 2004 Order. (Doc. No. 154.) In its moving papers, Avery represented that its expert had "already supplemented his reports based on the Federal Circuit's new claim constructions." (Doc. No. 158 at 9.) As part of its submission, Avery attached a "redlined" copy of the "Supplemental Expert Report" on invalidity as an exhibit. (*Id*.) In that "Supplemental Expert Report," Avery's expert raised three new prior art references (the McGrath, Jack, and Rusincovitch patents), and Avery's expert provided extensive invalidity arguments based on those three references. (Ex. A.[1])

Avery represented that it needed "limited" supplementation of expert reports solely to address changes in the claim construction. For example, Avery stated that "[l]imited supplementation" was needed so that "Avery's expert can offer opinions based on the law of this case," i.e., the Federal Circuit's claim construction. (Doc. No. 158 at 1.) Avery further represented that it did "not seek to reopen discovery or have its expert conduct new tests and experiments."

[1] All references to exhibits refer to exhibits attached to the Declaration of Katherine A. Moerke filed concurrently.

Avery said the same thing at the August 30, 2004 oral argument before this Court and assured the Court that the focus of its "Supplemental Expert Report" would now be on the three new prior art references—namely McGrath, Jack, and Rusincovitch:

> What the supplemental report simply does is not propose to take 300 other prior art references but rather to say that if the claims are construed based on the, one, new definitions provided by the Federal Circuit, and two, depending on how this Court construes the claim terms, the initial prior art references that I relied on may not have much relevance, *but on the other hand, these three other prior references will now become the relevant focus*.

(Ex. B at 52 (emphasis added).)

The Court granted Avery's motion during its August 30, 2004 hearing. Specifically, the Court ruled from the bench that it would allow limited supplementation of expert reports:

> With respect to the appeals from the magistrate judge, the Court is going to overrule the magistrate judge and will permit revision of the expert report to reflect the Federal Circuit's and this Court's claim construction. *The Court intends just simply to allow the supplementation in the manner in which it has been proposed and not to start this whole process anew.*

(*Id*. at 54 (emphasis added).) It is apparent that the Court relied on Avery's representations as to the limited scope of supplementation sought. The Court Minutes also reflected the limited scope of supplementation permitted: "The parties will be permitted to file supplemental expert reports reflecting the claim construction provided by the Federal Circuit and this Court. However, no new experts, experimentation, or other discovery will be permitted." (Doc. No. 172.)

After the Court ruled from the bench at the hearing, Avery sought clarification with respect to the ruling:

> We have to admit to the possibility that the Court in ruling on the claim constructions before it may have a different view than anybody does or has a different view than we have asserted. Do I understand your order to allow us to file a supplemental expert report that takes into account anything that you say in connection with that order so that—using the document that we have now?

(Ex. B at 54-55.) In response, the Court made it clear that Avery's actual supplemental report could differ from Avery's redlined report, *but only if the Court adopted some unanticipated claim construction*: "If the Court adopts a construction that was not anticipated, the Court will permit that." (*Id*. at 55.) Magistrate Judge Noel held a follow-up case management conference on October 5, 2004 and ordered that the parties' initial supplemental expert reports allowed by the Court would be due two weeks after the Court issued its claim construction order. (Doc. No. 178.)

### B. Avery's July 11, 2005 Supplemental Report Added Two Additional Invalidity Arguments and Referenced Testing Information that Had Never Been Disclosed to 3M.

On June 20, 2005, the Court issued its "Memorandum Opinion and Order Construing Disputed Claims," which rejected Avery's construction of the terms "depressions" and "carrier web." (*See* Doc. No. 181 at 6-11, 13.) Two weeks later, on July 5, 2005, 3M served its supplemental expert report on infringement, as required by Magistrate Judge Noel's October 5, 2004 Order. Avery, however, did not timely serve its supplemental expert report on invalidity. Instead, six days after it was due, on July 11, 2005, Avery served the "Supplemental and Revised Expert Report of Dr. Anthony J. McHugh Regarding Invalidity of U.S. Patent No. 5,897,930 Pursuant to Fed. R. Civ. P. 26(a)(2)(B)." (Ex. C.)

In addition to being late, Avery's new report differed from its 2004 redlined report in two notable respects. First, in his July 11, 2005 expert report, Avery's expert opined for the first time that Claims 1-5 of the '930 patent were anticipated and were rendered obvious by two previously-undisclosed prior art references: United States Patents Numbers 3,190,178 (McKenzie) and 4,075,049 (Wood). Second, the new report referenced testing of 3M products conducted by Avery's expert that had never been disclosed to 3M. (*Id.* at 17.) None of that testing—or any of the materials relating to that testing—had ever been turned over to 3M, and that remains true to this day.

### C. Magistrate Judge Noel Properly Struck the New Content in Avery's New Report on August 24, 2005.

Because Avery's new report was late and exceeded the scope of supplementation allowed by the Court, 3M filed a motion to strike the new invalidity arguments and reference to the testing material on August 1, 2005. (Doc. No. 188.) Magistrate Judge Noel heard oral argument on 3M's motion on August 15, 2005.

At the hearing, Magistrate Judge Noel was explicit that he would base his ruling on the substance of the Court's earlier ruling allowing Avery to supplement its expert report:

> I mean, see, to me—what I'm going to do, I will tell you, is apparently for some reason—well, for reasons known to me, the transcript of the proceedings before Tunheim on the 30th are not in the computer and I need to get them from the clerk's office. And what I'm going to do is read it and make a decision regarding what I think Judge Tunheim meant in his minute order of August 30. And if it complies with what I think he intended, then it's in. If it doesn't, then it's out.

(Ex. D at 24.)

Magistrate Judge Noel granted 3M's motion in an order issued on August 24, 2005. (Doc. No. 201.) Specifically, he ruled that "[i]nsofar as Plaintiffs move to strike the portions of the supplemental report that relate to the Wood and McKenzie patents, the Motion is granted," and, "[i]nsofar as Plaintiffs move to strike the portions of the supplemental report that relate to previously undisclosed testing that involved photos of Plaintiffs' reflective sheeting, the Motion is granted." (*Id.*) Now, Avery asks the Court to reverse Magistrate Judge Noel once again.

## II. ARGUMENT

"The standard of review applicable to an appeal of a magistrate judge's order on a nondispositive issue is extremely deferential." *Reko v. Creative Promotions, Inc.*, 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999). A district judge may not modify or set aside a magistrate judge's order on a non-dispositive matter unless the order is clearly erroneous or contrary to law. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). Avery notes this standard in its moving brief (Avery Mem. at 7), but does not apply it. The reason is apparent: Avery cannot satisfy it.

There is no question that Magistrate Judge Noel had the authority to strike Avery's new report—in part or in whole—in order to prevent prejudice to 3M and to avoid rewarding Avery's lack of diligence. Courts may strike expert testimony if a party fails to obey a scheduling or pretrial order. *See* Fed. R. Civ. P. 16(f), 37(b)(2)(B), and 37(c); *Boardman v. Nat'l Med. Enter.*, 106 F.3d 840, 843 (8th Cir. 1997). Likewise, if an expert submits new opinions in violation of a court's order, that testimony is appropriately excluded. *See, e.g.*, *Rodriguez v. Pataki*, 293 F. Supp. 2d 305, 310 (S.D.N.Y. 2003)

(striking a revised expert report because it went beyond the limited modification previously allowed by the court); *Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 586, (D.N.J.), *aff'd*, 156 F.R.D. 589 (D.N.J. 1994) (granting a motion to preclude expert testimony of an expert witness untimely designated in violation of court order).

### A. The Scope of Avery's New Report Violated the Court's Order Allowing Limited Supplementation, and Magistrate Judge Noel Properly Struck Parts of the Report to Enforce that Order.

Avery's first argument—that in 2004, "the Court imposed no limitation on any expert to cite new prior art or reference existing photographs"—is flatly incorrect. (*See* Avery Mem. at 5.) While the Court allowed limited supplementation, the Court did not issue Avery a free pass to cite any new prior art it wished. In fact, the Court could not have been clearer that it intended to allow supplementation only in the manner in which Avery had previously proposed it: "*The Court intends just simply to allow the supplementation in the manner in which it has been proposed and not to start this whole process anew.*" (*Id.* (emphasis added).)

Avery attempts to excuse the new content in its 2005 expert report by referring to the redlined report it submitted to the Court in 2004 as "an exemplar of a supplemental invalidity report," a "draft exemplar," "an example," and the like throughout its brief. (*See, e.g.*, Avery Mem. at 1-2, 4.) Avery did not refer to the redlined invalidity report as an "exemplar," however, when seeking the Court's permission to file it. Instead, Avery represented that Dr. McHugh had "already supplemented his reports based on the Federal Circuit's new claim constructions" and told the Court in 2004 that the three new prior art

references cited in the redlined report—McGrath, Jack, and Rusincovitch—would become the "focus" of Avery's argument. (*See* Doc. No. 158 at 9; Ex. B at 52.)

Therefore, Avery's assertion that Magistrate Judge Noel's decision "directly conflicts with, and effectively overturns, this Court's August 30, 2004 Order" is dead wrong. (*See* Avery Mem. at 2, 8.) Instead, Magistrate Judge Noel's decision was intended to, and did, *enforce* the Court's August 30, 2004 order. Magistrate Judge Noel explained that he would review the August 30, 2004 hearing transcript and rule on 3M's motion accordingly: "[W]hat I'm going to do is read it and make a decision regarding what I think Judge Tunheim meant in his minute order of August 30. *And if it complies with what I think he intended, then it's in. If it doesn't, then it's out.*" (Ex. D at 24 (emphasis added).) Plainly, Magistrate Judge Noel determined that Avery's report did not comply with the Court's order. And, in accordance with his stated intention at the hearing, Magistrate Judge Noel struck those parts of the report that exceeded the scope of supplementation allowed.

**B. Overturning Magistrate Judge Noel Again Would Prejudice 3M.**

3M will be prejudiced if the Court overturns Magistrate Judge Noel's order properly striking parts of Avery's supplemental expert report. Indeed, the prejudice to 3M would be extreme. Trial is scheduled to begin on December 12, 2005, and motions in limine are due in less than two months. Accordingly, 3M's focus is on trial preparation. It should not be forced to divert its resources away from trial preparation to address Avery's brand-new invalidity arguments—arguments that could have been made at a point in time when 3M actually could have taken discovery on those references. Now,

because discovery is closed, 3M cannot serve interrogatories or document requests or take deposition testimony related to the new content in Avery's report. And 3M should not have to redo its expert reports to respond to Avery's brand-new invalidity arguments, when it was Avery that plainly violated multiple Court orders setting deadlines and limits.

Aside from prejudice, as Rule 16 makes clear, the focus of the Court's inquiry is properly on *Avery's* diligence in not disclosing the prior art references and tests sooner. *See* Fed. R. Civ. P. 16(b) advisory committee's note (1983); *Bradford v. DANA Corp*., 249 F.3d 807, 809 (8th Cir. 2001) (explaining that the "primary measure" is the non-compliant party's "diligence in attempting to meet the case management order's requirements"); *see also Luigino's Inc. v. Perzrow Co., Inc*., 178 F.R.D. 523, 525 (D. Minn. 1998) (explaining that Rule 16(b) focuses on the showing of good cause and diligence by the non-compliant party, not whether the opposing party will be prejudiced). Avery has offered no reason why these two new prior art references could not have been disclosed sooner. Indeed, given that the patents issued in 1965 and 1978, respectively, Avery had every opportunity to disclose them to 3M during the original fact discovery period in this case.

Avery also concedes that the Court's June 20, 2005 claim construction ruling—which largely adopted 3M's proposed constructions—was not unanticipated. Given that concession, there is no way for Avery to square the Court's following statement with its current position: "If the Court adopts a construction that was not anticipated, the Court will permit that." (*Id*. at 55.) The Court adopted an anticipated claim construction, and

as such, Avery was *not* permitted to start the process anew by raising new invalidity arguments at the eleventh hour.

Finally, Avery attempts to justify the inclusion of these new references by claiming that they "were not relevant before the Federal Circuit's opinion and this Court's claim constructions, but were relevant after those events." (Avery Mem. at 8.) But if Wood and McKenzie were relevant after the Federal Circuit's claim construction, Avery should have cited them previously, and at the very least in the "redlined" expert report that the Court allowed Avery to serve on August 30, 2004. Avery should not be allowed to add additional references now, especially because 3M has no effective way to determine Avery's position on those references prior to trial.[2]

### C. Magistrate Judge Noel's Decision Striking the Portions of the Supplemental Report that Relate to Previously Undisclosed Testing Is Not Clearly Erroneous or Contrary to Law.

Magistrate Judge Noel properly struck those parts of Avery's new report that included new testing of 3M products. This testing was contrary to the Court's explicit order and Avery's explicit representations. In granting Avery's motion to supplement, the Court made it plain that further testing was not permitted. (Doc. No. 172 ("However, no new experts, experimentation, or other discovery will be permitted.").)

[2] Avery also cites a few cases for the proposition that supplemental expert reports are proper after a changed claim construction. (Avery Mem. at 7-8.) But Avery already relied on this proposition in support of its request seeking supplementation, and the Court allowed Avery to supplement its report. Thus, even if Avery is correct that the "rules of the game changed" following the Federal Circuit decision, Avery already had the chance to address those rules in its redlined report. There is nothing in any of the cases Avery cites that allows a party two separate chances to supplement, which is what Avery is seeking here.

In fact, Avery represented that no further testing would be performed. In its 2004 brief, Avery said this repeatedly. (Doc. No. 158 at 1 ("Avery does not seek to reopen discovery or have its expert conduct new tests and experiments."); *id*. at 7-8 ("[T]he case law does not allow new reports from new experts, new inspections, testing, and experiments, the generation of new data, and the introduction of voluminous new discovery—and Avery does not seek to do so here.").) Likewise, at oral argument, Avery said that "[t]he experts . . . should not be allowed to do new testing." (Ex. B at 20.)

Further, Avery distinguished case law on this basis: "*Union Carbide* is inapposite. . . . The defendants' new experts [in *Union Carbide*] also offered additional testing data . . . ." (Doc. No. 158 at 6.) Likewise, Avery said,

> 3M also points to the *Union Carbide* case where a district court in Delaware disallowed supplementing expert reports. The case is distinguishable on a number of levels . . . . It wasn't just a matter of supplementing expert reports. It was a matter of taking extensive, new discovery, offering new testing, new data, new experts, no [new] opinions. Here we're not seeking to offer new experts, new testing, new data, new opinions.

(Ex. B at 18.)

Avery's misrepresentations are even more egregious because the Court explicitly relied upon them in allowing the "limited" supplementation of expert reports Avery sought. The Court said it granted Avery's motion to supplement only "*in the manner in which it has been proposed*." (*Id*. at 54 (emphasis added).)

Avery tries to justify the new testing now by referring to this testing as "photographs" throughout its brief. (*E.g.*, Avery Mem. at 2 (referring to "existing photographs of 3M products"), passim.) Avery even claims that 3M "wrongly

characterized" this new content as "tests" when Avery's new report itself referred to "*[t]ests* of 3M reflective materials." (*See* Avery Mem. at 10; Ex. C at 17 (emphasis added).) Avery's present word choice cannot excuse it from its failure to comply with the Court's order.

Basically, Avery's argument is that its expert's testing is not "new" because the photographs are "old." But *when* the photographs were purportedly taken is immaterial—the point is that the testing was never disclosed previously in discovery and, hence, is new to 3M. Magistrate Judge Noel properly struck this content.

## III. CONCLUSION

For the foregoing reasons, 3M respectfully requests that this Court affirm Magistrate Judge Noel's August 24, 2005 Order in its entirety.

Dated: September 26, 2005

FISH & RICHARDSON P.C., P.A.

By: s/ Katherine A. Moerke

Jonathan E. Singer (#283459)
John C. Adkisson (#266358)
Katherine A. Moerke (#312277)
FISH & RICHARDSON P.C., P.A.
3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks (Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Tel: (858) 678-5070
Fax: (858) 678-5099

Kevin H. Rhodes
3M Innovative Property Company
3M Center
P.O. Box 33427
St. Paul, MN 55133

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES COMPANY AND
MINNESOTA MINING AND MANUFACTURING COMPANY

60315893.doc