# D

UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

3M Innovative Properties Company, et al.,

Plaintiffs,

vs. File No. 01-CV-1781

Avery-Dennison Corporation,,

Defendant.

---

COPY

THE HONORABLE FRANKLIN L. NOEL

United States Magistrate Judge

* * *

TAPE-RECORDED HEARING

TRANSCRIPT OF PROCEEDINGS

* * *

Date: 8/15/05

Reporter: Lisa M. Thorsgaard

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

3M Innovative Properties Company, et al.,
Plaintiffs,
vs. File No. 01-CV-1781
Avery-Dennison Corporation,,
Defendant.

---

THE HONORABLE FRANKLIN L. NOEL
United States Magistrate Judge

* * *

TAPE-RECORDED HEARING
TRANSCRIPT OF PROCEEDINGS
* * *

Date: 8/15/05
Reporter: Lisa M. Thorsgaard



A P P E A R A N C E S

UNIDENTIFIED COUNSEL, appeared on behalf of Plaintiff.

MR. DAVID P. PEARSON, Attorney at Law, Winthrop & Weinstine, Suite 3500, 225 South Sixth Street, Minneapolis, Minnesota 55402-4629, appeared on behalf of Defendant.



P R O C E E D I N G S

(Wherein the following tape-recorded proceedings were had)

PLAINTIFF'S COUNSEL: -- Your Honor, was in April of 2004 which was just after the case was remanded from the Federal Circuit. And at that time there was a disagreement about whether any post-appeal discovery should be had at all and it was our position that there should be none. And at that time Avery took the position that there should be some limited post-appeal discovery. And we went back into Your Honor's conference room and discussed the issue, and after that conference you issued a ruling and said no post-appeal discovery at all.

Well, after that Avery appealed your ruling to Judge Tunheim. And as part of that appeal, they presented Judge Tunheim with a red lined expert report and said essentially this is what we want to put in. And in that Avery told Judge Tunheim that if Judge Tunheim were to accept 3M's argument on some outstanding claim construction motions, that these three prior art



references will become a relevant focus of Avery's case. And those are new prior art references that had not been disclosed to us before but they were contained in this red lined version that was submitted to Judge Tunheim.

We opposed that appeal, and at oral argument on a claim construction ruling or claim construction hearing, Judge Tunheim heard oral argument on the appeal and agreed with Avery and said I will allow supplementation in the manner in which it had been proposed. After he made that statement, Avery's counsel said to Judge Tunheim, well, Judge, I have to confess that there may be a situation in which in ruling on your claim construction motions, that you're going to come up with a claim construction that neither one of us had anticipated. And Judge Tunheim said, well, if I do that, essentially you can put in new stuff but otherwise, I'll allow supplementation in the way that it's been proposed to me which is namely that the supplemental or the red lined expert report that was submitted.

We got on the phone with Your Honor in October of 2004. We set some deadlines for when

the supplemental expert reports were going to be submitted. We both agreed that it would be an exchange, a simultaneous exchange two weeks after Judge Tunheim had ruled on the claim construction issues. We would go forward on the issues on which the parties bear the burden of proof. Two weeks later rebuttal expert reports would be served.

Well, we got Judge Tunheim's claim construction order on June 20 of this year and there were no surprises in that order. It was essentially Judge Tunheim adopted largely our positions straight down the line. And in accordance with the agreement that we reached on July 5, we served --

THE COURT: This is still construing the same terms that the Federal Circuit construed in connection with the appeal?

PLAINTIFF'S COUNSEL: There are some additional kind of cleanup terms that -- the Federal Circuit's construed two or three terms as part of the appeal. When we got back, Avery said, well, we need to construe a couple more before we go to trial. And we said that's fine. And so these (unintelligible) terms that



were at issue in the appeal. These were kind of cleanup terms that Judge Tunheim had -- was construing in his June 20 order.

So we got Judge Tunheim's order on June 20, and two weeks later we served our supplemental expert report and we waited and we didn't get Avery's that day. And the next day we were actually in front of Judge Tunheim. And I talked to Avery's counsel, Mr. Hadley, and I said where is your expert report? And he said oh, we forgot about that deadline. We'll get it to you as soon as we can. So five days later on July 11 we finally get the Avery supplemental expert report. And it's not just a supplemental expert report once we look at it. It includes two new prior art references that weren't disclosed during fact discovery, weren't disclosed in the red lined expert report that were submitted to Judge Tunheim as part of the appeal. Brand new prior art references.

Additionally, we also in that report there's reference made to some testing that was done by Avery's expert apparently in the last couple years. And it's our position that that's directly contrary to what Judge Tunheim ruled in



his order where no additional testing would be permitted.

So it's our position, Your Honor, in this motion that it's far too late in the game. We've got a trial certain date of December 12 of this year. So we're less than four months from trial as we sit here today. It's far too late in the game for Avery to be putting in brand new prior art references and relying and disclosing testing that their expert has conducted that we never even seen documentation to support. They never even produced that documentation.

In its response brief Avery focuses a lot of its energy on saying, well, 3M wouldn't be prejudiced at all if this were to be allowed. But the relevant focus of a Rule 16(B) inquiry is not whether we're going to be prejudiced. That's certainly something that the court can consider but it's Avery's diligence in meeting the deadlines. That's the (unintelligible) case that we cite in our brief. And let's look at what Avery has done in terms of diligence.

On the timing issue Avery simply just missed the deadline, and Mr. Hadley submitted in his brief said, well, we just didn't get the



order. Well, it was e-mailed to seven members of their team and so they knew about the deadline. And while I can sympathize with people missing deadlines, that certainly isn't Avery being diligent and the kind of diligence that should be rewarded.

On the substance, the two patents that they're now trying to put in, two brand new patents, were issued in 1965 and 1978. There's no reason that these things couldn't have been disclosed during the fact discovery period. We had extensive submissions back and forth about what they would be relying on in terms of invalidating references at trial. They served us with 370 references during the fact discovery period. So there's no reason these couldn't have been put in during the fact discovery period.

And finally, with respect to the testing, in Avery's response brief they say, well, this was conducted years ago so this isn't really new testing. Well, it's new to us because the first time we saw the testing was in the supplemental expert report that we got on July 11. So the testing is brand new to us, and whether Avery's

been sitting on it for two years or not doesn't really matter because it's new to us and we're trying to prepare our case for trial and now we got the spectra of this testing that they're planning to rely on that was done a couple years ago. Again, no reason or no explanation in Avery's brief as to why this couldn't have been submitted during the fact discovery period.

So you add it all up, you got a late served expert report, you got old patents that could have been disclosed during the fact discovery period, you got old testing that could have been disclosed during the fact discovery period.

Now, let me just say one quick word about prejudice because Avery does claim that we suffer no prejudice if this were allowed. But in terms of the prejudice, the fact discovery period is closed. We don't have the ability to now, now that we finally learned that they may be relying on these at trial, we can't ask them interrogatories. We can't ask them document requests. We can't get deposition testimony. And this is precisely the kind of thing that we were worried about when we sat in your



conference room in April of 2004 that if all of a sudden discovery was opened up again, that we would have a hard time putting any sort of deadline or any sort of control on it. We're trying to get our case ready for trial. So that's why we say that these are too late in the game.

In our brief we cite Avery -- we had this issue in front of you two or three years ago where we actually tried to put in an expert report and Avery stood up here and said it's too late. We're in the middle of summary judgment motions. We're going to be prejudiced. And you agreed with Avery at that time. You said, 3M, you shouldn't be putting in these kinds of things late in the game. We think the same ruling should apply to Avery.

With respect to the relief we're seeking, we think the lateness of Avery's expert report could justify the entire report being stricken. But we understand that Judge Tunheim allowed supplementation. What we're just seeking from this Court is an order simply excluding the new stuff, the new testing and the two new prior art references that were disclosed for the first



time to us on July 11.

And if Your Honor has any additional questions, that's all I have.

THE COURT: Okay. Thank you. Mr. Pearson.

MR. PEARSON: May it please the Court. David Pearson on behalf of Avery-Dennison.

3M has taken a timeliness issue and attempted to convert that into a substantive attack on Dr. MaGue's supplemental report. I intend to demonstrate to the Court this morning that the substantive attack has no merit and the timeliness issue should be resolved on Avery-Dennison in the interest of justice and to allow this case to be adjudicated fairly and on the merits.

As counsel set forth in his opening, the Federal Circuit in its decision rewrote the claim interpretation. The case had been prosecuted and discovered based on a claim interpretation by the trial court. Summary judgment was granted in favor of Avery based on that claim interpretation. The case went up to the Federal Circuit. The Federal Circuit



reversed and essentially rewrote the claims, reinterpreted the claims. We ask leave of the Court to file a supplemental expert report in light of that new claim interpretation. Judge Tunheim authorized that, and he said specifically the parties will be permitted to file supplemental expert reports reflecting the claim construction provided by the Federal Circuit and this Court.

THE COURT: What is it about Judge Tunheim's claim construction that for the first time notified you that it had to have these two other references in your prior art?

MR. PEARSON: Let me address -- that's exactly where I was going. The answer to the question is as follows. We submitted a exemplar supplemental report to the court and said this is the kind of report that we are thinking of submitting.

THE COURT: Based on what the federal circuit said?

MR. PEARSON: Based upon what the Federal Circuit said. And we included in that a discussion of invalidity based upon prior art references. My review of the record tells

me that we didn't represent to the court -- I'm sorry, we didn't intend to represent to the court that that supplemental report was going to be the only report word for word what we were going to submit. We said this is the kind of report we intend to offer.

Once the court, Judge Tunheim authorized us to proceed forward, we then continued the analysis process on arguments that had already been disclosed to 3M. And in his letter of June 1, 2004 Mr. Hadley articulates in great detail the basis for the invalidity argument, identifies prior art. This is the new prior art references, the alleged new prior art references are simply a continuation of that analysis and additional prior art, consistent with the opinion offered in the supplemental exemplar, consistent with Mr. Hadley's letter of June 1, 2004 and consistent with what Judge Tunheim said. Judge Tunheim said you can submit a supplemental report reflecting the claim construction of the Federal Circuit and this court. And the claim construction opined to by -- or the invalidity opined to by Dr. MaGue is consistent with and based on the Federal



Circuit's interpretation.

THE COURT: Is there anything about Judge Tunheim's claim construction -- let me go back. As I understand it, the Federal Circuit construed two terms, embossed and embossed matrix or something, embossed. I don't know. Some words, right? Is there anything about the additional words that Tunheim construed that generated this reference to the prior art or is it just two more patents that relate to the same stuff that the Federal Circuit was talking about?

MR. PEARSON: I don't know the basis for Dr. MaGue's addition of those particular prior art references. I believe it is more the latter than the former. In other words, his opinion and the addition of these prior art references is based more on what the Federal Circuit said as opposed to Judge Tunheim's consideration and interpretation of those claim terms.

Having said that, Your Honor, the opinion of Dr. MaGue is fully consistent with Judge Tunheim's order which allowed us, Avery, to submit an amended supplemental report based on



both the Federal Circuit, the Federal Circuit's interpretation and Judge Tunheim's interpretation. He did not say in his order that we were limited and could not submit new prior art. We didn't represent that we would submit new prior art and it's very consistent with what one would expect. The expert took the expanded claim term language, reviewed that in relationship to prior art and identified that prior art as a part of his ongoing analysis of the claim terms and the validity of the patent. And so we think that the MaGue opinion is precisely consistent with what the spirit and the letter of what Judge Tunheim said.

It's important to note, Your Honor, that in his order, Judge Tunheim said no new experts, experimentation, or discovery shall be permitted by either side. He didn't say don't submit any new prior art references to me. And we think that this is fully consistent with that order and what was authorized by the court in allowing supplemental reports.

THE COURT: Let me make sure we're all looking at the same thing. The only order on August 30 is a minute entry by the



courtroom deputy or is there an actual written order that sets forth the way he decided about supplemental report?

MR. PEARSON: Well, I'm referring to I believe it is a minute order.

THE COURT: All I've got on the docket is August 30, docket entry 172, minute entry for proceedings held before JRT, claim construction hearing and motion hearing held on August 30. And it says the appearances and it is ordered, defendant's motion for review of Magistrate Judge Noel's order dated 4/21/04, docket No. 157 is granted. Paragraphs 3 and 4 of Magistrate Judge's order, docket No. 154 are reversed. The parties will be permitted to file supplemental expert reports reflecting claim constructions provided by the Federal Circuit and this court. However, no new experts, experimentation, or other discovery will be permitted. Additionally, following this court's order on the claim construction issues, defendants will be permitted to request the court's permission to file a motion for summary judgment. The request should be submitted by letter brief of no more than five pages and

should be submitted within one week of this court's order on claim construction. Plaintiff will be permitted to respond by letter no more than five pages within one week of defendant's request.

Is that the extent of the order --

MR. PEARSON: That is the extent of the order, Your Honor, correct. And as I pointed out, the order does not limit the supplementation to simply Judge Tunheim's interpretation but specifically incorporates the Federal Circuit's interpretation and there's no limitation in his order regarding new prior art references.

THE COURT: But you had submitted to Judge Tunheim a proposed new expert report that accounted for what the Federal Circuit has said. Is that correct or incorrect?

MR. PEARSON: It was an example -- it's partially correct. It was an example of the kind of report we intended to submit.

THE COURT: And how is it described to him?

MR. PEARSON: We indicated to



him that this was an example illustrative of the kind of report we intended to submit to the court. We did not represent that it would be the only report, that it was the final report, that there would be no additions or modifications to the report as the process proceeded forward. We wanted to assure the court that we were within certain boundaries. But nevertheless, we understood that the supplementation process was, in fact, a process and that Dr. MaGue would be allowed to continue that process if the court authorized supplemental reports. If not, then the order is somewhat meaningless. We could have said, well, here's the report. We offer this report and --

THE COURT: Well, that's what 3M thinks happened is that I said you can't do anything. Just go to trial. We're done. You've been to the court appeals. You can't just keep doing this over and over again. Go to trial. And Tunheim reversed me and said no, things have changed because the Court of Appeals has a different view than either party did and different views than the court below did so you get to supplement. But as I understand 3M's



argument, that's the extent of the supplementation you're going to get, what you proposed to Judge Tunheim. Here's what we say we need to do in light of what the Federal Circuit did and that's it. And you're telling me no, that Judge Tunheim just sort of intended to reopen it all up and everybody gets to go forward and write whatever they want to write.

MR. PEARSON: I'm not saying that. I'm not saying that at all. In fact, I'm being very clear, I think, about what I'm saying and I think we're basing it very clearly on his report. I mean his order. And his order says parties will be allowed to file supplemental expert reports reflecting the claim construction provided by the Federal Circuit and this court. Dr. McGue does that. He's also -- Judge Tunheim is also very clear regarding no new experimentation. He doesn't say no new prior art references. And clearly the prior art references were disclosed to them. The whole concept was disclosed to them in Mr. Hadley's letter. And so we think that --

THE COURT: The date of Hadley's letter is what?



MR. PEARSON: June 1, 2004.

THE COURT: Before the hearing before Tunheim? Two months before?

MR. PEARSON: Correct.

THE COURT: (Unintelligible).

MR. PEARSON: It was not our intent, it was not Avery's intent to use this example report as the definitive final report. It has been modified in several minor -- in several ways. Those ways are important to us but they are not the kind of modifications that constitute surprise or justify rejection of the report in whole or in part and it's consistent with what we think Judge Tunheim contemplated by the order.

THE COURT: What about the observation on the photographs or whatever it is that they claim is being experimentation and you claim it is not? Is there anything else on the prior art? I think I understand your position is that it's prior art.

MR. PEARSON: It's prior art and we think it's consistent with what the court ruled.

On the testing or experimentation, again,

21

when the claim terms are redefined, the information, in this case photographs, that were not germane to the analysis now become relevant. These were not new photographs. They were not taken after the discovery period ended. There's no basis for their claim of its new discovery. It's prior work done by this expert.

THE COURT: Was it fully disclosed to them?

MR. PEARSON: I believe we disclosed all of the information that was available, and clearly it was part of the information that was available to them. If they wanted to conduct his deposition and look at that information, I'm sure they could have done that. But the order specifically says no new experts, no new experimentations is how we read it.

THE COURT: Right. And they claim it's new to them because whatever it is he did -- as I understand it, all you're saying is he looked at a photograph and then made an observation about what he saw.

MR. PEARSON: Correct.

THE COURT: And their contention

22

is they never knew he saw that before, and your position is, well, too bad. You looked at it and that's not an experiment?

MR. PEARSON: It's not a new experiment. I mean, the whole -- in reevaluating the question of the validity of the patent Dr. MaGue, of course, would have looked at various kinds of information, including these photographs, to evaluate the patent here in relationship to prior art. And the scope of that changed when the terms of the claim were fundamentally reinterpreted by the Federal Circuit. So material that was outside the bounds of relevance now becomes relevant and germane to the analysis. So that was brought into the analysis after the Federal Circuit's interpretation. And as a part of the supplementation (unintelligible) not new experimentation conducted following the close of discovery.

THE COURT: The relevance of whatever it is he observes on the photograph is relevant only because of what the Federal Circuit said or because of what Judge Tunheim has said since then?

23

MR. PEARSON: I think it's largely relevant because of what the Federal Circuit had said.

THE COURT: And was this photographic observation included in the exemplar report you submitted to Judge Tunheim?

MR. PEARSON: I'm not certain about that. I don't believe it was.

THE COURT: Okay.

MR. PEARSON: But the -- targeting back to the argument I articulated a moment ago, Judge Tunheim's order did not limit supplemental report to the example that was presented (unintelligible) and made it very clear that the supplemental report could incorporate claim constructions provided by the Federal Circuit which is what we did. And therefore, we think that in accordance with the authorization provided by Judge Tunheim, the photographic reference which had not been relevant or germane and then became relevant or germane is entirely proper consistent with both the letter and spirit of the order.

THE COURT: Okay.

MR. PEARSON: Let me talk about

24

the issue of timeliness. We have a six-day delay. We apologize to the Court and counsel for the fact that there was a delay. It wasn't on my calendar either.

THE COURT: You know what? Skip it. What I'm going to decide won't relate to timeliness. I mean, see, to me -- what I'm going to do, I will tell you, is apparently for some reason -- well, for reasons known to me, the transcript of the proceedings before Tunheim on the 30th are not in the computer and I need to get them from the clerk's office. And what I'm going to do is read it and make a decision regarding what I think Judge Tunheim meant in his minute order of August 30. And if it complies with what I think he intended, then it's in. If it doesn't, then it's out. And the six-day delay isn't going to impact my decision.

MR. PEARSON: Understood.

THE COURT: Anything else on the substance?

MR. PEARSON: No, sir.

THE COURT: Okay.

MR. PEARSON: Thank you.

THE COURT: With that, anything

else?

PLAINTIFF'S COUNSEL: Just a couple quick points, Your Honor. This letter that was sent to us on June 1, 2004 dealt with two references. It dealt with the McGraph reference. It dealt with the Jack reference. Both of those were in supplemental expert report, both of those were in the red lined report, both of those were in. That letter did not at all deal with the two references that we're fighting about today which are the Wood reference and the McKenzie reference. Those were disclosed to us for the first time on July 11 of this year. There's no question.

THE COURT: To be clear, though. These are patents that you owned, correct?

PLAINTIFF'S COUNSEL: These are 3M patents. Absolutely.

THE COURT: And just to be also clear, the relief you're seeking is essentially two require that their report they submitted to Judge Tunheim in advance of the August 30 hearing would be the report they can rely on?

PLAINTIFF'S COUNSEL: The references therein. That's right.



THE COURT: What you're asking me to do is to strike the references to Woods and McKenzie and to strike whatever it is MaGue saw on the photograph that he looked at --

PLAINTIFF'S COUNSEL: Strike all the references to the testing because we never seen the photograph and it wasn't -- that discussion was not in the exemplar report that they submitted to Judge Tunheim.

THE COURT: And you do not have a photograph that he looked at?

PLAINTIFF'S COUNSEL: No. In terms of the transcript, Your Honor, and I've got a copy here and I can make it available to your personnel if that would facilitate things, but I would encourage you to look at page 52 of the transcript in which Mr. Hadley says these three prior art references, and there he's talking about McGraph, Jack, and another patent that were in the exemplar report. If the Court adopts 3M's construction, those three will become the relevant focus. That's what he said on the transcript.

And then the other passage I would ask you to take a look at is on pages 54 and 55 of



that transcript where Avery's counsel gets up and says, Judge Tunheim, if you do something that we didn't anticipate, essentially can we put in more new stuff. And Judge Tunheim says if the Court comes up with something that neither party anticipated, I will allow that. And that's hard to reconcile with Avery's position here today that this was just an open ended order that would allow any supplementation into the record. So pages 52 and 55 of the transcript, I believe, are illustrative of our point.

THE COURT: Okay. Thank you.

PLAINTIFF'S COUNSEL: Thank you.

MR. PEARSON: If I May, Judge. I do want to emphasize to the Court that 3M will have the opportunity to rebut this report and they have submitted supplemental report and we, just like they, are not permitted to conduct any discovery regarding their supplemental expert report.

THE COURT: What's the status of the discovery of the photograph that was looked at? If they don't have it, do you have reason to believe they do?



MR. PEARSON: I can't -- I don't know the status of that.

THE COURT: Okay. All right. I'll take the matter under advisement and issue an order shortly. Thank you.

* * *

STATE OF MINNESOTA )
) ss.
COUNTY OF WASHINGTON)

BE IT KNOWN, that I transcribed the audiotape relative to the matter contained herein;

That the proceedings were recorded electronically and stenographically transcribed into typewriting, that the transcript is a true record of the proceedings, to the best of my ability;

That I am not related to any of the parties hereto nor interested in the outcome of the action;

IN EVIDENCE HEREOF, WITNESS MY HAND.

____________________

Lisa M. Thorsgaard

A

ability 9:19 29:11
about 3:9 6:11 8:2 8:12 9:15,25 12:10 14:3,8,12 16:2 19:11 20:16 21:23 23:8,25 25:11 26:19
Absolutely 25:18
accept 3:24
accordance 5:14 23:18
accounted 17:17
action 29:15
actual 16:1
actually 6:8 10:10
add 9:9
addition 14:14,17
additional 5:20 7:1 11:2 13:16 14:8
Additionally 6:21 16:20
additions 18:5
address 12:14
adjudicated 11:16
adopted 5:12
adopts 26:21
advance 25:22
advisement 28:4
after 3:7,16,18 4:11 5:4 21:5 22:16
again 9:6 10:2 18:20 20:25
ago 8:21 9:6 10:9 23:12
agreed 4:9 5:2 10:14
agreement 5:14
al 1:4
alleged 13:14
allow 4:10,20 11:16 27:6,9
allowed 7:15 9:17 10:21 14:24 18:11 19:14
allowing 15:21
already 13:9
amended 14:25
analysis 13:9,15 15:10 21:3 22:15 22:16
another 26:19
answer 12:15
anticipate 27:3
anticipated 4:17 27:6
anything 14:2,7 18:18 20:19 24:20 24:25
apologize 24:2
apparently 6:23 24:8
appeal 3:20 4:6,9 5:18,22 6:1,20
appealed 3:18
appeals 18:19,22
appearances 16:10
appeared 2:4,10
apply 10:17
April 3:7 10:1
argument 3:24 4:7 4:9 13:12 19:1 23:11
arguments 13:9
art 3:25 4:2 6:16,20 7:9 10:24 12:13 12:25 13:13,13,14 13:16 14:10,15,18 15:5,6,9,10,19 17:13 19:20,20 20:20,21,22 22:10 26:18
articulated 23:11
articulates 13:11
asking 26:1
assure 18:7
attack 11:11,13
attempted 11:10
Attorney 2:8
audiotape 29:4
August 15:25 16:7 16:10 24:15 25:22
authorization 23:19
authorized 12:5 13:7 15:21 18:12
available 21:12,13 26:14
Avery 3:12,18,22 4:9 5:23 6:13 7:8 7:13,22,23 8:5 9:16 10:8,11,14 10:17 11:23 14:24
Avery's 4:2,12 6:7,9 6:23 7:19 8:20,25 9:7 10:19 20:7 27:1,7
Avery-Dennison 1:7 11:8,15

B

back 3:14 5:22 8:12 14:4 23:11
bad 22:2
based 11:21,23 12:20,22,24 13:25 14:18,25
basing 19:12
basis 13:12 14:14 21:6
bear 5:6
became 23:21
become 4:1 21:3 26:22
becomes 22:14
before 4:4 5:24 16:8 20:2,3,3 22:1 24:10
behalf 2:4,11 11:7
being 8:5 10:20 19:11 20:18
believe 14:15 16:5 21:10 23:8 27:11 27:25
below 18:24
best 29:11
both 5:2 15:1 23:22 25:7,8,9
boundaries 18:8
bounds 22:14
brand 6:20 7:8 8:8 8:25
brief 7:13,21,25 8:20 9:7 10:8 16:25
brought 22:15
burden 5:6

C

C 2:1 3:1
calendar 24:4
case 3:8 4:2 7:20 9:3 10:5 11:16,20 11:24 21:2
certain 7:5 18:8 23:7
certainly 7:18 8:4
changed 18:22 22:11
circuit 3:8 5:18 11:19,25,25 12:9 12:21,23 13:22 14:5,12,19 15:1 16:17 17:18 19:5 19:16 22:13,24 23:3,17
Circuit's 5:21 14:1 15:1 17:12 22:16
cite 7:21 10:8
claim 3:24 4:7,7,15 4:16 5:4,9 9:16 11:20,21,24 12:4 12:8,11 13:21,23 14:3,21 15:8,11 16:8,16,21 17:2 19:15 20:18,19 21:1,6,20 22:11 23:16
claims 12:1,2
cleanup 5:20 6:2
clear 19:11,18 23:15 25:15,20
clearly 19:12,20
21:12
clerk's 24:12
close 22:19
closed 9:19
come 4:16
comes 27:5
Company 1:4
complies 24:16
computer 24:11
concept 19:22
conduct 21:14 27:19
conducted 7:10 8:21 22:19
conference 3:15,16 10:1
confess 4:13
connection 5:18
consider 7:19
consideration 14:20
consistent 13:16,18 13:19,25 14:23 15:6,13,20 20:13 20:23 23:22
constitute 20:12
construction 3:25 4:7,8,15,16 5:5,10 12:8,11 13:22,23 14:3 16:9,21 17:2 19:15 26:21
constructions 16:17 23:16
construe 5:23
construed 5:18,21 14:5,9
construing 5:17 6:3
contained 4:4 29:5
contemplated 20:14
contention 21:25
continuation 13:15
continue 18:11
continued 13:8
contrary 6:25
control 10:4
convert 11:10
copy 26:14
Corporation 1:7
correct 17:8,18,20 20:4 21:24 25:16
counsel 2:4 3:6 4:12 5:19 6:9 11:18 24:2 25:2,17,24 26:5,12 27:1,14
COUNTY 29:2
couple 5:23 6:24 9:5 25:3
course 22:7
court 1:1 5:16 7:18 10:23 11:4,7,12 11:22 12:3,9,10 12:17,20 13:1,3,7
13:23 14:2 15:21 15:23 16:6,18 17:15,23 18:3,8 18:12,16,19,22,24 19:16,24 20:2,5 20:16,23 21:8,19 21:25 22:21 23:4 23:9,24 24:2,5,20 24:23,25 25:15,19 26:1,10,20 27:5 27:13,16,22 28:3
courtroom 16:1
court's 16:20,23 17:2

D

D 3:1
date 1:21 7:5 19:24
dated 16:12
David 2:8 11:7
day 6:7,7
days 6:12
deadline 6:11 7:24 8:3 10:4
deadlines 4:25 7:20 8:4
deal 25:10
dealt 25:4,5,6
December 7:5
decide 24:6
decided 16:2
decision 11:19 24:13,18
Defendant 1:8 2:11
defendants 16:22
defendant's 16:11 17:4
definitive 20:8
delay 24:2,3,18
demonstrate 11:12
deposition 9:23 21:14
deputy 16:1
described 17:24
detail 13:12
different 18:23,24
diligence 7:19,22 8:5
diligent 8:5
directly 6:25
disagreement 3:9
disclosed 4:3 6:17 6:18 8:11 9:11,13 10:25 13:10 19:21 19:22 21:9,11 25:13
disclosing 7:9
discovered 11:21
discovery 3:10,14 3:17 6:17 8:11,15 8:17 9:8,12,13,18

10:2 15:17 16:19
21:5,6 22:20
27:20,23
**discussed** 3:15
**discussion** 12:24
26:8
**DISTRICT** 1:1,2
**docket** 16:7,7,13,14
**document** 9:22
**documentation**
7:11,12
**doing** 18:20
**done** 6:23 7:22 9:5
18:18 21:7,15
**down** 5:13
**Dr** 11:11 13:24
14:14,23 18:11
19:17 22:7
**during** 6:17 8:11,15
8:17 9:8,11,13

**E**

**E** 2:1,1 3:1,1
**either** 15:18 18:23
24:4
**electronically** 29:9
**embossed** 14:5,6,6
**emphasize** 27:16
**encourage** 26:16
**ended** 21:5 27:9
**energy** 7:14
**entire** 10:20
**entirely** 23:22
**entry** 15:25 16:7,8
**essentially** 3:21
4:18 5:12 12:1
25:20 27:3
**et** 1:4
**evaluate** 22:9
**even** 7:11,12
**everybody** 19:7
**EVIDENCE** 29:18
**exactly** 12:15
**example** 17:20,21
18:1 20:8 23:13
**exchange** 5:3,3
**excluding** 10:23
**exemplar** 12:17
13:17 23:6 26:8
26:20
**expanded** 15:8
**expect** 15:7
**experiment** 22:3,5
**experimentation**
15:17 16:19 19:19
20:18,25 22:19
**experimentations**
21:17
**expert** 3:21 4:22 5:1
5:7 6:6,10,14,15
6:18,23 7:10 8:24
9:10 10:10,19
12:3,7 15:7 16:16
17:16 19:15 21:7
25:7 27:20
**experts** 15:16 16:18
21:17
**explanation** 9:6
**extensive** 8:12
**extent** 17:6,7 19:1
**e-mailed** 8:1

**F**

**facilitate** 26:15
**fact** 6:17 8:11,15,17
9:8,11,13,18
18:10 19:10 24:3
**fairly** 11:16
**far** 7:4,7
**favor** 11:23
**federal** 3:8 5:17,21
11:19,25,25 12:8
12:21,23 13:22,25
14:4,11,19 15:1,1
16:17 17:12,17
19:4,16 22:12,16
22:23 23:2,17
**fighting** 25:11
**file** 1:6 12:3,7 16:15
16:23 19:14
**final** 18:4 20:8
**finally** 6:13 8:19
9:20
**fine** 5:25
**first** 8:22 10:25
12:12 25:13
**five** 6:12 16:25 17:4
**focus** 4:1 7:16 26:22
**focuses** 7:13
**following** 3:3 16:20
22:19
**follows** 12:16
**forgot** 6:11
**former** 14:16
**forth** 8:12 11:18
16:2
**forward** 5:5 13:8
18:7 19:8
**four** 7:6
**FRANKLIN** 1:11
**from** 3:8 7:6 10:22
24:12
**front** 6:8 10:9
**fully** 14:23 15:20
21:8
**fundamentally**
22:12

**G**

**G** 3:1
**game** 7:4,8 10:7,16
**generated** 14:9
**germane** 21:3 22:15
23:21,22
**gets** 19:7 27:1
**go** 5:5,24 14:4
18:18,20 19:7
**going** 4:16 5:1 7:17
10:13 12:15 13:3
13:5 19:2 24:6,8
24:13,18
**granted** 11:23
16:13
**great** 13:11

**H**

**Hadley** 6:9 7:24
13:11 26:17
**Hadley's** 13:18
19:22,24
**HAND** 29:18
**happened** 18:17
**hard** 10:3 27:7
**Having** 14:22
**heard** 4:8
**hearing** 1:15 4:8
16:9,9 20:2 25:23
**held** 16:8,9
**HEREOF** 29:18
**hereto** 29:15
**him** 17:24 18:1
**Honor** 3:7 4:24 7:3
11:2 14:22 15:15
17:8 25:3 26:13
**HONORABLE**
1:11
**Honor's** 3:15

**I**

**identified** 15:9
**identifies** 13:13
**illustrative** 18:1
27:11
**impact** 24:18
**important** 15:15
20:10
**included** 12:23 23:5
**includes** 6:15
**including** 22:8
**incorporate** 23:16
**incorporates** 17:11
**incorrect** 17:18
**indicated** 17:25
**information** 21:2
21:11,13,15 22:8
**Innovative** 1:4
**inquiry** 7:16
**intend** 11:12 13:2,6
**intended** 17:21 18:2
19:6 24:16
**intent** 20:7,7
**interest** 11:15
**interested** 29:15
**interpretation**
11:20,22,24 12:4
14:1,20 15:2,3
17:11,12 22:17
**interrogatories**
9:22
**invalidating** 8:14
**invalidity** 12:24
13:12,24
**issue** 3:16 6:1 7:23
10:9 11:9,14 24:1
28:4
**issued** 3:16 8:9
**issues** 5:5,6 16:21

**J**

**Jack** 25:6 26:19
**JRT** 16:8
**Judge** 1:12 3:19,20
3:23,23 4:5,8,12
4:13,17 5:4,9,12
6:2,4,8,19,25
10:21 12:4,11
13:7,19,20 14:3
14:19,23 15:2,14
15:16 16:12 17:10
17:16 19:3,6,17
20:14 22:24 23:6
23:12,19 24:14
25:22 26:9 27:2,4
27:15
**Judge's** 16:14
**judgment** 10:12
11:23 16:24
**July** 5:15 6:13 8:24
11:1 25:14
**June** 5:10 6:3,5
13:11,18 20:1
25:4
**just** 3:7 6:14 7:23
7:25 9:15 10:22
14:10 18:18,20
19:6 25:2,19 27:8
27:19
**justice** 11:15
**justify** 10:20 20:12

**K**

**keep** 18:20
**kind** 5:20 6:1 8:5
9:24 12:18 13:5
17:21 18:2 20:11
**kinds** 10:15 22:8
**knew** 8:2 22:1
**know** 14:7,13 24:5
28:2
**known** 24:9 29:4

**L**

**L** 1:11
**language** 15:8
**largely** 5:12 23:2
**last** 6:23
**late** 7:4,7 9:9 10:6
10:12,16
**lateness** 10:19
**later** 5:7 6:5,12
**latter** 14:16
**Law** 2:8
**learned** 9:20
**leave** 12:2
**less** 7:6
**let** 9:15 12:14 14:3
15:23 23:25
**letter** 13:10,18
15:14 16:25 17:3
19:23,25 23:23
25:3,9
**let's** 7:21
**light** 12:4 19:4
**like** 27:19
**limit** 17:9 23:12
**limitation** 17:13
**limited** 3:13 15:4
**line** 5:13
**lined** 3:21 4:4,22
6:18 25:8
**Lisa** 1:22 29:22
**look** 6:15 7:21
21:14 26:16,25
**looked** 21:22 22:2,7
26:4,11 27:23
**looking** 15:24
**lot** 7:13

**M**

**M** 1:22 29:22
**made** 4:11 6:22
21:22 23:14
**Magistrate** 1:12
16:12,14
**MaGue** 13:24 14:23
15:12 18:11 22:7
26:3
**MaGue's** 11:11
14:14
**make** 15:23 24:13
26:14
**manner** 4:10
**material** 22:13
**matrix** 14:6
**matter** 9:2 28:4
29:5
**may** 4:14 9:20 11:6
27:15
**McGraph** 25:5
26:19
**McGue** 19:17
**McKenzie** 25:12
26:3
**mean** 19:13 22:5
24:7

**meaningless** 18:14
**meant** 24:14
**meeting** 7:19
**members** 8:1
**merit** 11:13
**merits** 11:17
**middle** 10:12
**Minneapolis** 2:10
**Minnesota** 1:2 2:10 29:1
**minor** 20:9
**minute** 15:25 16:5,7 24:15
**missed** 7:24
**missing** 8:4
**modifications** 18:6 20:11
**modified** 20:9
**moment** 23:12
**months** 7:6 20:3
**more** 5:24 14:10,16 14:18 16:25 17:3 27:4
**morning** 11:12
**motion** 7:4 16:9,11 16:23
**motions** 3:25 4:15 10:13

N

**N** 2:1 3:1
**namely** 4:21
**need** 5:23 19:4 24:11
**neither** 4:17 27:6
**never** 7:11,12 22:1 26:6
**nevertheless** 18:9
**new** 4:2,19 6:16,20 7:8 8:8,21,22,25 9:2 10:23,24,24 12:4 13:13,14 15:4,6,16,19 16:18 17:13,16 19:18,19 21:4,6 21:16,17,20 22:4 22:18 27:4
**next** 6:7
**NOEL** 1:11
**Noel's** 16:12
**none** 3:12
**note** 15:15
**notified** 12:12

O

**O** 3:1
**observation** 20:17 21:23 23:5
**observes** 22:22
**October** 4:25
**offer** 13:6 18:15
**offered** 13:17
**office** 24:12
**oh** 6:11
**Okay** 11:4 23:9,24 24:23 27:13 28:3
**old** 9:10,12
**once** 6:15 13:7
**one** 4:17 9:15 15:7 17:1,4
**ongoing** 15:10
**only** 13:4 15:24 18:4 22:23
**open** 27:8
**opened** 10:2
**opening** 11:18
**opined** 13:23,24
**opinion** 13:17 14:17 14:22 15:12
**opportunity** 27:17
**opposed** 4:6 14:19
**oral** 4:6,8
**order** 5:10,11 6:3,4 7:1 8:1 10:23 14:24 15:3,16,20 15:25 16:2,5,12 16:14,21 17:2,6,8 17:9,13 18:13 19:13,13 20:15 21:16 23:12,23 24:15 27:9 28:5
**ordered** 16:11
**other** 12:13 14:16 16:19 26:24
**otherwise** 4:19
**out** 17:9 24:17
**outcome** 29:15
**outside** 22:13
**outstanding** 3:24
**over** 18:20,20
**owned** 25:16

P

**P** 2:1,1,8 3:1
**page** 26:16
**pages** 16:25 17:4 26:25 27:10
**Paragraphs** 16:13
**part** 3:19 5:22 6:19 15:10 20:13 21:12 22:17
**partially** 17:20
**particular** 14:15
**parties** 5:6 12:6 16:15 19:14 29:14
**party** 18:23 27:6
**passage** 26:24
**patent** 15:11 22:7,9 26:19
**patents** 8:7,9 9:10 14:10 25:16,18
**Pearson** 2:8 11:5,6 11:7 12:14,22 14:13 16:4 17:7 17:19,25 19:9 20:1,4,6,22 21:10 21:24 22:4 23:1,7 23:10,25 24:19,22 24:24 27:15 28:1
**people** 8:4
**period** 8:11,16,18 9:8,12,14,19 21:5
**permission** 16:23
**permitted** 7:2 12:6 15:17 16:15,20,22 17:3 27:19
**personnel** 26:15
**phone** 4:24
**photograph** 21:22 22:22 26:4,7,11 27:23
**photographic** 23:5 23:20
**photographs** 20:17 21:2,4 22:9
**Plaintiff** 2:5 17:2
**Plaintiffs** 1:5
**PLAINTIFF'S** 3:6 5:19 25:2,17,24 26:5,12 27:14
**planning** 9:5
**please** 11:6
**point** 27:12
**pointed** 17:9
**points** 25:3
**position** 3:11,13 6:24 7:3 20:20 22:2 27:8
**positions** 5:13
**post-appeal** 3:10,14 3:17
**precisely** 9:24 15:13
**prejudice** 9:16,17 9:18
**prejudiced** 7:15,17 10:13
**prepare** 9:3
**presented** 3:20 23:14
**prior** 3:25 4:2 6:16 6:20 7:9 10:24 12:13,24 13:13,13 13:14,16 14:10,15 14:18 15:5,6,9,10 15:19 17:13 19:19 19:20 20:20,21,22 21:7 22:10 26:18
**proceed** 13:8
**proceeded** 18:7
**proceedings** 1:16 3:4 16:8 24:10 29:8,11
**process** 13:9 18:6 18:10,10,12
**produced** 7:12
**proof** 5:7
**proper** 23:22
**Properties** 1:4
**proposed** 4:11,21 17:16 19:3
**prosecuted** 11:21
**provided** 12:8 16:17 19:16 23:16 23:19
**put** 3:22 4:19 8:8,17 10:10 27:4
**putting** 7:8 10:3,15

Q

**question** 12:16 22:6 25:14
**questions** 11:3
**quick** 9:15 25:3

R

**R** 2:1 3:1
**reached** 5:14
**read** 21:17 24:13
**ready** 10:5
**really** 8:21 9:2
**reason** 8:10,16 9:6 24:9 27:24
**reasons** 24:9
**rebut** 27:17
**rebuttal** 5:7
**reconcile** 27:7
**record** 12:25 27:10 29:10
**recorded** 29:8
**red** 3:20 4:4,22 6:18 25:8
**redefined** 21:1
**reevaluating** 22:6
**reference** 6:22 14:9 23:20 25:6,6,12 25:12
**references** 4:1,3 6:16,20 7:9 8:14 8:15 10:25 12:13 12:25 13:14,14 14:15,18 15:19 17:14 19:20,21 25:5,10,25 26:2,6 26:18
**referring** 16:5
**reflecting** 12:7 13:21 16:16 19:15
**regarding** 17:13 19:18 24:14 27:20
**reinterpreted** 12:2 22:12
**rejection** 20:12
**relate** 14:11 24:6
**related** 29:14
**relationship** 15:9 22:10
**relative** 29:5
**relevance** 22:14,21
**relevant** 4:1 7:16 21:3 22:14,23 23:2,21,21 26:22
**relief** 10:18 25:20
**rely** 9:5 25:23
**relying** 7:9 8:13 9:21
**remanded** 3:8
**reopen** 19:7
**report** 3:21 4:22 6:6 6:10,14,15,18,21 8:24 9:10 10:11 10:19,20 11:11 12:3,17,18 13:3,4 13:6,21 14:25 16:3 17:17,21 18:2,4,4,6,15,15 19:13 20:8,8,13 23:6,13,15 25:8,9 25:21,23 26:8,20 27:17,18,21
**Reporter** 1:22
**reports** 5:1,7 12:7 15:22 16:16 18:13 19:15
**represent** 13:1,2 15:5 18:3
**request** 16:22,24 17:5
**requests** 9:23
**require** 25:21
**resolved** 11:14
**respect** 8:19 10:18
**respond** 17:3
**response** 7:13 8:20
**reversed** 12:1 16:15 18:21
**review** 12:25 16:11
**reviewed** 15:8
**rewarded** 8:6
**rewrote** 11:19 12:1
**right** 14:7 21:19 25:25 28:3
**room** 3:15 10:1
**Rule** 7:16
**ruled** 5:4 6:25 20:24
**ruling** 3:17,19 4:7 4:14 10:17

S

**S** 2:1 3:1
**same** 5:17 10:16 14:11 15:24
**sat** 9:25
**saw** 8:23 21:23 22:1 26:4

saying 7:14 19:9,10 19:11 21:21
says 16:10 19:13 21:16 26:17 27:2 27:4
scope 22:10
see 24:7
seeking 10:18,22 25:20
seen 7:11 26:7
sent 25:4
served 5:8,15 6:5 8:14 9:10
set 4:25 11:18
sets 16:2
seven 8:1
several 20:9,10
shortly 28:5
side 15:18
simply 7:23 10:23 13:15 17:10
simultaneous 5:3
since 22:25
sir 24:22
sit 7:7
sitting 9:1
situation 4:14
Sixth 2:9
six-day 24:1,18
Skip 24:5
some 3:13,24 4:25 5:20 6:22 14:7 24:9
something 7:18 14:6 27:2,5
somewhat 18:14
soon 6:12
sorry 13:2
sort 10:3,4 19:6
South 2:9
specifically 12:6 17:11 21:16
spectra 9:4
spirit 15:13 23:23
ss 29:1
STATE 29:1
statement 4:12
States 1:1,12
status 27:22 28:2
stenographically 29:9
still 5:16
stood 10:11
straight 5:13
Street 2:10
stricken 10:20
strike 26:2,3,5
stuff 4:19 10:24 14:11 27:4
submissions 8:12
submit 13:5,20
14:25 15:4,6,18 17:22 18:2
submitted 4:5,23 5:2 6:19 7:24 9:8 12:16 16:24 17:1 17:16 23:6 25:21 26:9 27:18
submitting 12:19
substance 8:7 24:21
substantive 11:10 11:13
sudden 10:2
suffer 9:17
Suite 2:9
summary 10:12 11:22 16:23
supplement 18:25
supplemental 4:22 5:1 6:6,13,14 8:23 11:11 12:3,7,17 13:3,17,21 14:25 15:22 16:3,16 18:13 19:14 23:13 23:15 25:7 27:18 27:20
supplementation 4:10,20 10:22 17:10 18:10 19:2 22:18 27:9
support 7:11
sure 15:23 21:15
surprise 20:12
surprises 5:11
sympathize 8:3

T

take 26:25 28:4
taken 11:9 21:5
talk 23:25
talked 6:9
talking 14:12 26:19
tape-recorded 1:15 3:3
targeting 23:11
team 8:2
tell 24:8
telling 19:5
tells 12:25
term 15:8
terms 5:17,20,22,25 6:2 7:22 8:13 9:18 14:5,21 15:11 21:1 22:11 26:13
testimony 9:23
testing 6:22 7:1,10 8:19,22,23,25 9:4 9:12 10:24 20:25 26:6
Thank 11:4 24:24 27:13,14 28:5
their 7:10 8:2 21:6
21:25 25:21 27:20
thing 9:24 15:24
things 8:10 10:16 18:22 26:15
think 10:16,19 15:12,19 19:11,12 19:23 20:14,20,23 23:1,18 24:14,16
thinking 12:19
thinks 18:17
Thorsgaard 1:22 29:22
though 25:15
three 3:25 5:21 10:9 26:18,21
time 3:9,12 8:23 10:3,14 11:1 12:12 25:13
timeliness 11:9,14 24:1,7
timing 7:23
today 7:7 25:11 27:8
told 3:22
transcribed 29:4,9
transcript 1:16 24:10 26:13,17,23 27:1,11 29:10
trial 5:24 7:5,7 8:14 9:3,21 10:5 11:22 18:18,21
tried 10:10
true 29:10
trying 8:8 9:3 10:5
Tunheim 3:19,20 3:23,23 4:5,8,13 4:18 5:4,12 6:2,8 6:19,25 10:21 12:5 13:7,19,20 14:8 15:14,16 17:16 18:21 19:3 19:6,17 20:3,14 22:24 23:6,19 24:10,14 25:22 26:9 27:2,4
Tunheim's 5:9 6:4 12:11 14:3,20,24 15:2 17:10 23:12
two 5:3,7,21 6:5,16 8:7,8 9:1 10:9,24 12:13 14:5,10 20:3 25:5,10,21
typewriting 29:10

U

under 28:4
understand 10:21 14:4 18:25 20:20 21:21
understood 18:9 24:19
UNIDENTIFIED 2:4
unintelligible 5:25 7:20 20:5 22:18 23:14
United 1:1,12
use 20:7

V

validity 15:11 22:6
various 22:8
version 4:5
very 15:6 19:11,12 19:18 23:14
view 18:23
views 18:24
vs 1:6

W

waited 6:6
want 3:22 19:8 27:16
wanted 18:7 21:14
WASHINGTON 29:2
wasn't 24:3 26:7
way 4:20 16:2
ways 20:10,10
week 17:1,4
weeks 5:3,7 6:5
Weinstine 2:9
well 3:18 4:13,18 5:9,23 7:14,25 8:1 8:20,22 16:4 18:14,16 22:2 24:9
went 3:14 11:24
were 3:4,23 4:4 5:1 5:11 6:1,1,8,19 7:15 8:9 9:17,25 10:25 13:4 15:4 18:8 19:21 21:2,4 21:4 22:11 25:7,8 25:9,13 26:20 29:8
weren't 6:16,17
We'll 6:11
we're 7:6,17 9:2 10:4,12,13,18,22 15:24 18:18 19:12 25:11
We've 7:5
while 8:3
whole 19:21 20:13 22:5
Winthrop 2:9
WITNESS 29:18
Wood 25:11
Woods 26:2
word 9:15 13:4,4
words 14:7,8,17
work 21:7
worried 9:25
wouldn't 7:14
write 19:8,8
written 16:1

Y

year 5:10 7:6 25:14
years 6:24 8:21 9:1 9:5 10:9

0

01-CV-1781 1:6

1

1 13:11,18 20:1 25:4
11 6:13 8:24 11:1 25:14
12 7:5
154 16:14
157 16:13
16(B) 7:16
172 16:7
1965 8:9
1978 8:9

2

20 5:10 6:3,5
2004 3:7 4:25 10:1 13:11,19 20:1 25:4
225 2:9

3

3 16:13
3M 1:4 7:14 10:14 11:9 13:10 18:16 25:18 27:16
3M's 3:24 18:25 26:21
30 15:25 16:7,10 24:15 25:22
30th 24:11
3500 2:9
370 8:15

4

4 16:13
4/21/04 16:12

5

5 5:15
52 26:16 27:10
54 26:25
55 26:25 27:10
55402-4629 2:10

8

8/15/05 1:21