IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, Plaintiffs, | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | |
| AVERY-DENNISON CORPORATION, Defendant. | |

**AVERY DENNISON CORPORATION'S REPLY MEMORANDUM OF LAW IN OPPOSITION TO 3M'S MOTION TO STRIKE AVERY'S SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 14**

## I. INTRODUCTION

3M's motion to somehow "strike" Avery's supplemented interrogatory answer is simply gamesmanship by which 3M seeks to prevent Avery from presenting highly relevant and important testimony at trial in order to avoid an adjudication of Avery's advice-of-counsel defense on the merits. 3M asserted a claim of "willful" infringement against Avery at the beginning of this lawsuit. 3M conducted full discovery regarding Avery's advice-of-counsel defense to 3M's original willful infringement theory. 3M did not inform Avery until October 2005 that it was asserting willful infringement based on a new theory, i.e., Avery's conduct subsequent to the Federal Circuit's decision in this case. When 3M informed Avery about 3M's new willfulness theory and inquired as to whether Avery would raise the advice-of-counsel defense, Avery timely disclosed the

information contained in its supplemental response to Interrogatory 14. This disclosure is no surprise to 3M because the substantive bases for the legal advice rendered to Avery about the good faith, meritorious defenses that it has to 3M's patent infringement claim were disclosed to 3M long ago. While couched in terms of a discovery motion to strike Avery's amended answer to this interrogatory, in fact 3M is attempting to bootstrap a "discovery" motion into a motion in limine to prevent Avery from presenting critically important evidence in its defense against 3M's claim of willful infringement.

In its shrill Memorandum of Law, 3M claims that it will be severely prejudiced if Avery is permitted to amend its interrogatory answer because 3M was not able to conduct depositions regarding the information disclosed in the amended answer during the discovery phase of this lawsuit. 3M ignores, and fails to inform the Court, that under no circumstances could 3M have conducted discovery about the legal advice disclosed in Avery's amended interrogatory answer. The reason for this is simple and apparent: 3M's willful infringement claim pertains to Avery's conduct subsequent to issuance of the Federal Circuit's decision that reversed summary judgment in the favor of Avery and that reinterpreted the claims of the patent-in-suit. This decision was rendered long after the discovery period ended in this lawsuit. Thus, the advice of counsel that Avery received regarding this decision was given, and could only have been given, long after the close of discovery. This Court did not allow any further fact deposition discovery in this case following the conclusion of the appeal process.

Accordingly, given the court-imposed limitations on discovery after the Federal Circuit's decision, there is no possible way in which 3M could have conducted discovery

about the facts and information that were disclosed in Avery's supplemental response to Interrogatory 14. 3M's real complaint is not with Avery's supplementation, which was timely and in accord with the discovery rules. Rather, 3M's complaint is with the Court's prior ruling that no further discovery would be allowed after the appeal process. Avery's disclosure was proper, 3M has not been prejudiced, and therefore this Motion should be denied.

## II. ARGUMENT

3M's motion is plainly deficient both factually and legally. Avery timely and fully disclosed its original good-faith defense during discovery; Avery supplemented its prior interrogatory answer to disclose facts that took place well after discovery closed and after this case was remanded from the Federal Circuit; and, in any event, 3M could not have conducted discovery regarding these additional facts because the Court previously ruled that fact discovery would not be reopened after remand from the Federal Circuit. Avery has done nothing wrong; 3M has not been prejudiced by any of Avery's conduct; and there is no reason to now "strike" Avery's supplemented interrogatory answer or limit Avery's ability to present that evidence at trial.

### A. Avery Disclosed Facts Pertaining to Its Pre-Appeal Advice-of-Counsel Defense, and 3M Conducted Full Discovery Regarding This Defense During the Discovery Period.

At the commencement of this patent infringement lawsuit, 3M claimed "willful" infringement against Avery. Avery waived the applicable attorney-client privilege and allowed 3M to conduct discovery about Avery's advice-of-counsel defense to 3M's claim of willful infringement. Since the Federal Circuit had not interpreted the claims of the

'930 patent, neither 3M's willfulness theory nor Avery's advice-of-counsel defense included the yet-to-be-issued Federal Circuit decision or its implications for this lawsuit. While 3M appears to argue that Avery somehow constrained 3M's ability to conduct discovery about Avery's advice-of-counsel defense, the record clearly demonstrates that 3M conducted full discovery regarding this defense as it existed prior to the Federal Circuit's decision.

First, Avery produced to 3M the very letter upon which its advice-of-counsel defense was based. (*See* Ex. C to Adkisson Aff.) This January 18, 2002 letter written by Mr. William C. Tritt, a patent attorney with the law firm of Renner, Otto, Boisselle & Sklarr, L.L.P., set forth in detail the substantive opinions of Mr. Tritt regarding whether Avery infringed the '930 patent. (*Id.*) 3M deposed Mr. Tritt at length about the legal advice that he gave to Avery regarding whether Avery's product infringed the '930 patent. (Ex. D.) Mr. Tritt testified that he rendered legal advice to Avery in the spring of 2000 that Avery's "print and emboss process" did not infringe the '930 patent and that this advice was subsequently memorialized in a written opinion of noninfringement, Ex. 50 to Mr. Tritt's deposition. 3M deposed Mr. Tritt about the analysis underlying his conclusion that Avery's "print and emboss process" did not infringe the claims of the '930 patent and questioned him about his communications with Avery on the infringement issue. (*Id.* at p. 69.)

Subsequently, 3M conducted the deposition of Mr. John Cornell, Avery's in-house patent counsel who had responsibility for monitoring and supervising this litigation and inquired of Mr. Cornell regarding the advice of counsel that Avery had received

regarding Avery's noninfringement of the '930 patent. 3M received the written opinion of noninfringement upon which Avery's advice-of-counsel defense was based, deposed the patent attorney who authored the noninfringement opinion, and deposed the in-house attorney who received the noninfringement opinion. (Exs. C, D, E.) Therefore, Avery had no duty to supplement its response to Interrogatory 14 during the pendency of the suit and prior to the Federal Circuit's ruling. *See* Fed. R. Civ. P. 26(e)(2) (A duty to amend or supplement a prior response exists only if the "information has not otherwise been made known to the other parties during the discovery process or in writing."); *see also* 8 Wright, Miller, & Marcus, *Federal Practice and Procedure: Civil 2d* § 2049.1 ("[T]here is no need as a matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.").

Avery's advice-of-counsel defense was, and continues to be, meritorious. This is amply demonstrated by the fact that the Court denied 3M's motion for preliminary injunction based on Avery's analysis and interpretation of the claims of the '930 patent. Thereafter, and following the close of discovery in this case, the Court granted summary judgment in favor of Avery and dismissed all of 3M's infringement claims. (*See* Doc. No. 127.) There can be no doubt that Avery had a good faith belief, based upon a competent opinion from legal counsel, that the manufacturing process for the product at issue here did not infringe any claims of the '930 patent. The basis for Avery's advice-of-counsel defense, as it existed when discovery closed in this lawsuit, was the subject of full discovery by 3M.

**B. Avery's In-House Patent Counsel Properly Analyzed Avery's Defenses Subsequent to the Federal Circuit's Decision, and Avery Timely Disclosed that Advice.**

The Federal Circuit issued its decision overturning the trial court's grant of summary judgment in favor of Avery and interpreting the claims of the '930 patent on December 2, 2003. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003). This Court then considered the proper construction of disputed claims following remand from the Federal Circuit, and the Court issued its decision construing disputed claims on June 20, 2005. *See* "Memorandum and Opinion and Order Construing Disputed Claims" (Doc. No. 181). Thus, the adjudication process for interpreting the proper construction of the claims of the '930 patent, which began with the trial court's summary judgment decision, was not concluded until June 20, 2005. *Id.*

Throughout the course of this litigation Avery's in-house counsel, Mr. John Cornell, monitored the litigation and the legal and factual bases for Avery's defense to 3M's patent infringement claims. (Cornell Aff. at ¶ 4.) Mr. Cornell is personally familiar with the claims and issues raised by 3M in this litigation because he has been involved with the case since its commencement. (*Id.* at ¶ 3.) Throughout this litigation Mr. Cornell formed professional opinions concerning the strengths and the merits of 3M's claims and Avery's defenses based on his extensive analysis of such claims and defenses, as well as his analysis of all the evidence in the case prior to and subsequent to the issuance of the Federal Circuit's decision. (*Id* at ¶ 4.) Avery's management has

relied upon those opinions to determine whether Avery has a good faith basis to continue to manufacture and sell the alleged infringing product. (*Id.* at ¶ 4.)

Mr. Cornell formed an opinion that Avery has a valid, good faith defense to this action (*Id.* at ¶¶ 5-6.). Mr. Cornell has advised Avery the '930 patent is invalid for a variety of reasons. Following the issuance of the Federal Circuit's decision, Mr. Cornell reaffirmed his invalidity opinion. He continues to believe that prior art renders the '930 patent invalid, and consequently Avery has a legal right to sell the alleged infringing product because 3M does not have a legal, valid patent. (*Id.* at ¶¶ 4, 5.)

In view of the fact that 3M and Avery were to engage in court-ordered mediation in October 2005 and that this case was proceeding to trial in December 2005, Mr. Cornell evaluated Avery's defenses to 3M's claims in the Fall of 2005. Mr. Cornell continued to believe that Avery had a valid, good faith defense, based in part on the invalidity of the '930 patent. (*Id.* at ¶ 6.) As settlement discussions with 3M approached, Mr. Cornell gave legal advice to Avery management regarding Avery's good faith position in late September and early October 2005. (*Id.* at ¶ 7.)

The substance of this opinion and the fact that Avery would be relying on Mr. Cornell's legal opinion as part of its advice-of-counsel defense was disclosed to 3M on November 4, 2005, approximately 30 days later, and supplemented with additional detail on November 7, 2005 (as set forth in the letter 3M's counsel wrote to the Court on November 9, 2005). Thus, Avery disclosed Mr. Cornell's opinion in a reasonable amount of time, i.e., within approximately 30 days after the legal advice was rendered.

There is no merit in 3M's claim of surprise because the factual bases for Mr. Cornell's legal opinion of invalidity have been known to 3M for years. Mr. Cornell has advised, prior to and subsequent to the Federal Circuit's opinion, that the '930 patent is invalid because it was anticipated and obvious in light of prior art. Mr. Cornell's legal opinion that Avery has not infringed the '930 patent is predicated, in part, upon Mr. Cornell's review of the non-infringement and invalidity reports of Dr. McHugh. The factual underpinnings of Mr. Cornell's legal opinion are therefore no surprise to 3M—both Dr. McHugh's initial and revised reports, as well as the prior art references upon which Dr. McHugh (and hence Mr. Cornell) have relied, were disclosed to 3M long ago. A draft of Dr. McHugh's revised report was provided to 3M on August 30, 2004, and the final revised report was submitted to 3M on July 11, 2005. Both the draft report and the final revised expert report of Dr. McHugh set forth in detail the prior art references which, in part, form the basis for Mr. Cornell's legal opinion that Avery has a meritorious invalidity defense. (Cornell Aff. ¶¶ 5-6.) Therefore, 3M has had knowledge about substantive basis for Mr. Cornell's opinion for over a year, with the exception of two prior art references disclosed in July 2005.

Avery has a valid advice-of-counsel defense to 3M's new willfulness claim. The factual bases for Mr. Cornell's legal opinion rendered to Avery were disclosed long ago. Accordingly, 3M's claim of unreasonable delay and sudden surprise is feigned rather than real.

**C. 3M Is Improperly Using a Purported "Discovery Motion" to Avoid a Motion in Limine Before the Trial Court and to Obtain a Premature Decision Regarding the Admissibility of Mr. Cornell's Testimony Regarding the Advice-of-Counsel Defense.**

This motion to "strike" is improper and misplaced. These issues should be raised by a motion in limine, or, most properly, should be brought by way of objection during the course of Mr. Cornell's trial testimony. 3M cannot "strike" an interrogatory answer simply because 3M believes the information in the interrogatory answer is "inadmissible" at trial. *See Nichols v. Am. Nat. Ins. Co*., 154 F.3d 875, 885 (8th Cir. 1998) (recognizing that a party has a duty, pursuant to Federal Rule of Civil Procedure 26(b)(1) to answer interrogatories even if the answer would not be admissible at trial). Avery received legal advice as set forth in its supplemental interrogatory answer. The facts as stated in the interrogatory answer are accurate. If 3M has objections to the admissibility of these facts, then such objections should be raised at a different time and in a different context, i.e., they should be brought before the Trial Court in a motion in limine.[1] 3M's transparent attempt to bootstrap a purported discovery issue into a motion resolving the

[1] The impropriety of this Motion can be demonstrated by considering 3M's recent amended discovery responses. On November 10, 2005, 3M served a significant number of previously undisclosed documents on Avery in response to Avery's document requests. The production of these documents is arguably untimely since discovery closed in this case in May, 2002. Nevertheless, Avery could hardly bring a motion to "strike" 3M's response, i.e., the production of additional documents. The documents exist; they have been disclosed. By the same token, 3M cannot bring a motion to "strike" the "facts" set forth in Avery's amended answer to Interrogatory 14. The question of whether the recently produced 3M documents or the facts disclosed in Avery's recently amended interrogatory answer are admissible is a question to be decided by the Trial Court at the time of trial or pursuant to a motion in limine.

admissibility of the facts disclosed by Avery, thereby removing the question from the Trial Court's consideration, is improper. This Motion should therefore be denied.

**D. 3M Has Not Been Prejudiced by Avery's Supplemental Interrogatory Answer Because It Could Not Conduct Any Deposition Discovery About Events After the Federal Court's Decision, Including Avery's Advice-of-Counsel Defense Relating to That Decision.**

Fact discovery in this case ended on May 1, 2002. (Doc. No. 57.) When this lawsuit was remanded to this Court, the Court ruled, in part based on 3M's urging, that no additional fact discovery, including deposition discovery, would be permitted. (*See* Doc. No. 154.) The only exception to this was two depositions conducted by agreement of the parties after the case was remanded to the trial court, (*see* Doc. No. 154), but neither party has sought to, or has been allowed to, conduct any further depositions.

3M argues vociferously that it has been prejudiced because it was unable to conduct deposition discovery about Avery's advice-of-counsel defense because Avery did not submit its supplemental answer until November 4, 2005, as amended November 7, 2005. This is a classic red herring. Avery could not have supplemented its interrogatory answer regarding its advice-of-counsel defense as it relates to the Federal Circuit's decision until after the Federal Circuit issued its opinion, by which time discovery was closed. While 3M complains about its inability to depose Mr. Cornell, whether Avery supplemented its interrogatory answer in November 2005, November 2004, or November 2003, is of no legal significance since 3M was precluded from conducting such a deposition in any event pursuant to the Court's order preventing further discovery.

### E. Avery's Disclosure Was Timely.

3M's argument that Avery should have supplemented its interrogatory answer long before it did is without merit. Both 3M and Avery have had an ongoing obligation to seasonably supplement both interrogatory answers and responses to document requests. 3M waited until October 2005 to inform Avery that it was seeking willful infringement damages based on Avery's conduct after the Federal Circuit's decision in this case. While 3M castigates Avery for the purported untimely disclosure of its amended answer to Interrogatory 14, in truth any delay was actually caused by 3M's failure to amend its theory of willful infringement. (*See* Larry Hadley Aff. at ¶¶ 4-5.)

While Mr. Cornell had provided ongoing legal advice to Avery regarding the good faith nature of its non-infringement and invalidity defenses, Avery had not supplemented its interrogatory answer regarding the advice-of-counsel defense because 3M had not disclosed, and Avery did not understand, that 3M had developed a new theory of willfulness predicated on the Federal Circuit's decision and the claim construction opinions issued by the Federal Circuit. (*Id.* at ¶ 5.) Prior to the issuance of the Federal Circuit decision, there was no need to update Avery's prior interrogatory answer. 3M informed Avery about its willfulness theory based on Avery's conduct after the Federal Circuit's decision conduct in October 2005. Once Avery became aware of 3M's new willfulness theory, it seasonably disclosed the facts relating to its advice-of-counsel defense based on Avery's conduct after the Federal Circuit's decision. *See Engineered Prods. Co v. Donaldson Co.*, 313 F. Supp. 2d 951, 1005-06 (N.D. Iowa 2004) (finding that, in a patent case, a party was "substantially justified" in failing to disclose expert

report on the issue of double patenting because the need for an expert only arose after the district court's summary judgment order on the double patenting issue, and the late disclosure was harmless because the subsequent report was consistent with a previous affidavit and the opposing party would not be surprised at trial); *Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, No. Civ. 99-1356 (JRT/FLN), 2004 WL 2066823 (D. Minn. Sept. 7, 2004) at *4 (allowing defendants to introduce evidence of the defense of invalidity based on plaintiff's own product, even though the defense was not raised in a prior summary judgment motion, because the defense was disclosed "as soon as practicable" and was convinced that plaintiff was not caught "flat-footed" by the defense),[2] *cited in* Pls.' Mem. at 9.

Avery supplemented its interrogatory answer within a reasonable time period (approximately 30 days) after 3M disclosed its new willfulness theory. *See* Fed. R. Civ. P. 26(e) advisory committee's note—1993 ("Supplementation need not be made as each new item of information is learned but should be made at appropriate intervals during the discovery period, and with special promptness as the trial date approaches."). While 3M claims that the supplemental answer should have been provided to it earlier, this would not have affected 3M's ability to depose Mr. Cornell since discovery closed approximately three and one-half years ago. And the disclosure of this information surely does not prejudice 3M's ability to prepare for trial. 3M has a fleet of skilled attorneys representing it in the lawsuit—attorneys who are well versed in the patent infringement and advice-of-counsel issues—and they should have little problem in

[2] A copy of the *Anchor Wall Systems* case is attached. (*See* Kaiser Aff. Ex. 1.)

assessing Avery's supplemental interrogatory answer. This disclosure was not made during or on the eve of trial, and six weeks is ample time for 3M to prepare, particularly since 3M has known about the substantive basis for Mr. Cornell's opinion since at least August 2004.

This is not the case where a witness or other discovery materials were disclosed at the "eleventh hour" to surprise the opposing party at trial. *See ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.*, 53 F.3d 186, 190 (8th Cir. 1995) (finding that a plaintiff did not candidly respond to a defendant's discovery questions and excluding evidence because plaintiff throughout discovery stated it did was not seeking a certain category of damages, but had a "change of heart" after discovery closed); *accord Klonoski v. Mahlab*, 156 F.3d 255, 269-72 (1st Cir. 1998) (reversing trial court's admission of letters not disclosed until after the cross-examination of the witness with knowledge of them). Avery disclosed these facts with reasonable promptness after 3M informed Avery about 3M's new willfulness theory, and 3M's shrill arguments about "severe prejudice" are hollow and baseless.

Finally, even if the Court should conclude that there was somehow a failure to disclose, the appropriate sanction would not be exclusion of the evidence. "Exclusion of evidence is a harsh penalty, and should be used sparingly." *Schwing GmbH v. Putzmeister, Inc.*, 168 F. Supp. 2d 1023, 1025 (D. Minn. 2001) (quotations omitted), *overruled on other grounds*, 305 F.3d 1318 (Fed. Cir. 2002); *see also id.* (analyzing factors such as the importance of the excluded evidence, potential prejudice to the opposing party, the availability of other remedies to cure any prejudice, including the

reopening of discovery or a continuance, and whether the offering party intended to ambush the opposing party with the evidence, and determining that exclusion of the evidence was unwarranted); *Engineered Prods. Co.*, 313 F. Supp. 2d at 1005 (refusing to exclude "very important" evidence which became most relevant after a previous summary judgment ruling); *Heartland Bank v. Heartland Home Fin. Inc.*, 335 F.3d 810, 817 (8th Cir. 2003) (noting the responsibility of the district court to consider alternative sanctions when the sanction of striking evidence is "tantamount to the dismissal" of a party's claims or defenses). There is simply no support for 3M's proposal to gag Avery's witnesses on the issue of their defenses to 3M's willfulness claim. Mr. Cornell's testimony on the advice-of-counsel defense is critical, and Avery will be prejudiced if it is not allowed.

**F. 3M's Argument That Mr. Cornell's Legal Advice Is Insufficient for an Advice-of-Counsel Defense Is Irrelevant.**

3M argues, at least obliquely, that the Court should strike Avery's supplemental interrogatory answer, and thereby prevent Mr. Cornell from testifying at trial, because the legal advice rendered by Mr. Cornell is insufficient to establish the advice-of-counsel defense. This argument is both wrong and irrelevant to the issues here.

3M's argument is wrong because Mr. Cornell is a trained patent attorney, he is familiar with the product at issue, he is well versed in the issues relating to interpretation of the '930 patent claims, he is extremely familiar with the defenses which Avery has raised in this litigation, and therefore he has the requisite training, experience and foundation to provide an opinion to Avery regarding whether there is the good faith basis

for its defenses. *BIC Leisure Prods., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214, 1223 (Fed. Cir. 1993). Further, whether Mr. Cornell's legal advice is sufficient to establish an advice-of-counsel defense to willful infringement is a fact question to be decided at trial as part of the totality of the circumstances. *Id.* at 1222; *see also Graco v. Brinks Mf'g Co.*, 60 F.3d 785, 792-93 (Fed. Cir. 1995) (recognizing that willful infringement is to be determined by evaluating the totality of the circumstances and reversing the district court's finding of willfulness based on an opinion of counsel providing a "detailed infringement analysis" that was "well-supported and believable"). Whether Mr. Cornell provided a timely and competent legal opinion to Avery, whether Mr. Cornell had a sufficient basis for his opinion, whether Avery acted in response to his opinion, and other similar issues, are properly the subject of testimony at trial and should be evaluated together with other fact issues. 3M's attack on the timeliness of Avery's interrogatory supplementation is a back-door and improper attempt to exclude important testimony which should be presented at trial.

3M's November 9, 2005 letter to this Court further demonstrates the improper and misplaced nature of this Motion. 3M claims that Avery's supplemental interrogatory answer should be stricken because the legal advice which Avery received regarding the good faith nature of its defenses included the reliance upon the revised expert report of Dr. McHugh and the Wood and McKenzie prior art references. 3M argues that because the Court has stricken these references from Dr. McHugh's report, Avery could not have relied upon these prior art references or Dr. McHugh's revised expert report in assessing

the *bona fide* nature of its defenses to 3M's infringement claim. Of course, this is both legally and factually wrong.

3M is presumably seeking willful infringement damages based on the Federal Circuit's decision, damages which would begin to accrue on the date the Federal Circuit issued its decision and through the end of trial. The "totality of circumstances"—the relevant consideration in evaluating Avery's conduct and whether it engaged in willful infringement—should be evaluated based on what Avery knew and the legal advice it received during that entire time period. If Avery reasonably believed that it had a valid defense to 3M's patent claim based on the revised report of Dr. McHugh and/or on the Wood and McKenzie prior art references at any point during the period for which 3M seeks willful infringement damages, then these facts are relevant and admissible *for the purpose of determining willfulness*, regardless of whether those facts are admissible for purposes of invalidating 3M's patent. After all, the willfulness inquiry is an inquiry into "state of mind," involving questions of "intent, belief and credibility." *SRI In'l v. Adv. Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Cornell Research Found. v. Hewlett-Packard Co.*, 223 F.R.D. 55, 72 (N.D.N.Y 2003). Avery could reasonably rely upon facts in Dr. McHugh's revised report in believing it had a good faith defense to infringement, regardless of whether those portions of Dr. McHugh's report were subsequently ruled inadmissible for what was viewed as untimely disclosure.

Consequently, 3M's attack on Mr. Cornell's legal advice is misplaced. Whether Mr. Cornell's opinion was incorrect or whether the prior art he considered in assessing invalidity are inadmissible at trial are irrelevant; they are irrelevant as to both this Motion

and to the question of whether Mr. Cornell can testify about these matters at trial. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992) ("While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend upon its legal correctness. Indeed, the question arises only where counsel was wrong. Rather counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable."); *accord Graco v. Binks Mfg. Co.*, 60 F.3d 785, 793 (Fed. Cir. 1995) ("Whether or not an opinion was 'legally' correct is not the proper focus."). Even if prior art references upon which Mr. Cornell's legal advice was based cannot be considered in evaluating the invalidity of the '930 patent at trial, these facts are, nevertheless, properly a part of Avery's advice-of-counsel defense and are relevant to the question of whether Avery had a good faith basis for believing that its defenses to 3M's infringement claim were valid.

In short, there is absolutely no basis for 3M to seek to limit Avery's ability to present relevant facts at trial which post-date the close of discovery, such as those disclosed in its amendment to Interrogatory 14.

## III. CONCLUSION

For all the reasons stated herein, Avery respectfully requests that the Court deny 3M's Motion to strike Avery's supplemental response to Interrogatory 14 or otherwise limit Avery's ability to present that evidence at trial.

DATED: November 14, 2005

Respectfully submitted,

s/David P. Pearson

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile

2540201v3