Exhibit 1a

**H**
Only the Westlaw citation is currently available.

United States District Court,
D. Minnesota.
ANCHOR WALL SYSTEMS, INC. Plaintiff,
v.
ROCKWOOD RETAINING WALLS, INC., a Minnesota corporation; GLS Industries, Inc., a Minnesota corporation; Equipment, Inc., a Minnesota corporation; Raymond R. Price, an individual; and Gerald P. Price, an individual, Defendants.
**No. Civ.99-1356 JRT/FLN.**

Sept. 7, 2004.

Alan Gary Carlson and Dennis Bremer, Carlson Caspers Vandenburgh & Lindquist, Minneapolis, MN, and Douglas A. Strawbridge, Anchor Wall Systems, Minnetonka, MN, for plaintiff.

Randall Thomas Skaar and Scott Gregory Ulbrich, Patterson Thuente Skaar & Christensen, Minneapolis, MN, and Malcolm Lane Moore, Moore Hansen & Sumner, Minneapolis, MN, for defendants.

MEMORANDUM OPINION AND ORDER

TUNHEIM, J.

***1** This long-running dispute involves six patents, grouped into two families, which for convenience the Court will refer to as the '363 family and the '015 family. The patents disclose and disclaim, *inter alia,* the interlocking feature of masonry blocks that can be stacked to form retaining walls that resist ground pressure without requiring any additional support (such as cement, mortar, or locking pins). The '015 patents relate to plaintiff's "rear-lipped Diamond" retaining wall block, which is a smaller block that can be used by homeowners and "do-it-yourselfers," while the '363 family relates to plaintiff's larger "Vertica" retaining wall block used primarily by architects, engineers, and contractors. This Opinion and Order addresses numerous pending motions, including plaintiff's motion *in limine* to limit evidence on invalidity; plaintiff's motion for partial summary judgment on validity and enforceability, two motions by defendants for summary judgment; and motions to strike by both sides.

PROCEDURAL HISTORY [FN1]

FN1. Instead of attempting to provide a global "Facts" section encompassing adequate facts for all pending motions, this Opinion and Order sets out relevant background facts in the discussion of each particular motion.

I. DISTRICT COURT HISTORY

United States District Judge David S. Doty granted partial summary judgment of noninfringement to defendants. Performing the claim construction, the Court defined the terms "back surface", "protrusion" and "mate" in the '363 family of patents. The Court found no literal infringement on the '363 family based on his construction of the terms.

Judge Doty also addressed the '015 family of patents; Judge Doty construed "generally parallel," but declined to construe "substantially horizontal." Judge Doty found no literal infringement based on his definition of "generally parallel."

Judge Doty also determined that the Federal Circuit's en banc opinion in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kaunshiki Co.,* 234 F.3d 558 (Fed.Cir.2000), required an absolute bar to the application of the doctrine of equivalents because he found that Anchor made a narrowing amendment

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

to certain claims of the '015 patent during prosecution. After Judge Doty's decision, the Supreme Court reversed the Federal Circuit, and rejected an absolute bar approach to prosecution history estoppel. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002).

II. FEDERAL CIRCUIT

Plaintiff appealed to the United States Court of Appeals for the Federal Circuit. The Federal Circuit ("the Circuit") reversed in part, affirmed in part, and remanded. *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.,* 340 F.3d 1298 (Fed.Cir.2003)
.

A. Claim Construction

The Circuit first provided a summary of the patents at issue, and then addressed the District Court's claim construction--most of which the Circuit corrected. In particular, the Circuit constructed the at-issue terms as follows:

| TERM | CIRCUIT DEFINITION | REJECTED DEFINITION |
|---|---|---|
| "back surface" | "a surface at the back of the block" | construed to require a back surface "spanning the full width of the block" |
| "protrusion" | "something that protrudes" | construed to require the limitation of "have a central narrow portion" |
| "mate" | "to join or fit together" and not rejecting the third limitation as set out by J. Doty | construed to require three limitations (1) a close confinement of the protrusion within the inset(s) of two or more blocks; (2) an ability to secure the blocks in place in a |

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

| | | |
|---|---|---|
| | | forwards and backwards directions; and (3) an interlocking of the protrusion with the insets |
| "generally parallel" | "envisions some amount of deviation from exactly parallel" | limited to the ordinary meaning of parallel--"a mathematical concept"; "everywhere equal distant" |
| "substantially horizontal" | Provided no definition but noted "the entire omission of a claim interpretation analysis from the opinion, and the conclusory factual findings on infringement each provide an independent basis for remand" | No definition |

B. Application of Corrected Claim Construction

***2** Applying these terms, the Circuit held that it was error to find no infringement on summary judgment. The Circuit concluded that it "cannot determine with certainty, based on the factual record before us, whether there are any genuine issues of material fact regarding infringement by the accused products in light of our revised claim construction." *Id.* at 1312. Therefore, the Circuit remanded for the District Court to determine whether outstanding issues of fact preclude a grant of summary judgment motions.

C. Doctrine of Equivalents

Due to the Supreme Court's reversal of the Federal Circuit's *Festo* opinion, the Circuit vacated that portion of the District Court's opinion and remanded "to determine, in the first instance, whether Anchor can rebut the *Festo* presumption." *Id.*

D. Additional Matters

Claim 70 of the '713 patent (of the '015 patent family) was also addressed by both the District Court and the Circuit. Judge Doty granted partial summary judgment on this issue, but the parties disputed whether that partial summary judgment was intended to apply to both literal infringement and infringement pursuant to the doctrine of equivalents, or whether it was only a determination of no literal infringement. It does not appear that Anchor challenged Judge Doty's determination that Claim 70 of the '713 patent is not literally infringed. Anchor did argue, however, that genuine issues of material fact remained for infringement under the doctrine of equivalents.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The Circuit surmised that language in the District Court's opinion made it "appear that the District Court granted partial summary judgment to Rockwood only with respect to literal infringement and did not address infringement of claim 70 of the '713 patent under the doctrine of equivalents." *Id.* at 1313 (emphasis added). The Circuit concluded:

> To the extent that the district court's judgment constituted a grant of partial summary judgment of noninfringement of Claim 70 of the '713 patent under the doctrine of equivalents, we vacate that portion of the judgment and remand to the district court to articulate whether any triable issues of fact with respect to infringement of this claim by equivalents exists. If none exists, or if the issue was never briefed or argued to the district court, summary judgment in Rockwood's favor may be appropriate. Otherwise, trial on this issue, and resolution of any other relevant issues remaining in this case (e.g., validity) would be appropriate.

*Id.*

ANALYSIS

I. PLAINTIFF'S MOTIONS IN LIMINE

Plaintiff asks the Court to preclude defendants from arguing defenses identified after he close of discovery. Specifically, plaintiff wants to prevent defendants from arguing any of the theories of the case that were disclosed in an August, 2001, unverified "supplemental" discovery response. Included in this response were arguments that the '363 patent family was invalid under § 102 in view of the "Japanese Reference" and the Rockwood Classic block. The supplemental response also stated additional grounds of invalidity for the '015 family of patents. Defendants argued that the '015 family was invalid under § 103 in view of a combination of the Johnson Block with an Anchor block; that the '015 family was invalid and unenforceable on the ground that Anchor allegedly committed inequitable conduct in prosecuting the patents; and that the '015 family was invalid under § 102 in view of the Keystone Garden Wall block.

***3** Plaintiff did not stipulate to these tardy identifications, and plaintiff further suggests that it conducted no discovery regarding these defenses. Plaintiff argues that it is common for courts to preclude an infringement defendant from arguing a theory or relying on prior art evidence that should have been, but was not, identified in response to contention interrogatories. To be admissible, plaintiff argues, defendants must show their tardy identification was either justified or harmless.

Defendants suggest that their supplemental disclosure was "seasonable," and further that plaintiff waived this argument by responding on the merits at the prior summary judgment motion, without moving to strike or objecting to the argument. Although plaintiff did note, in its response to defendant's motion to strike the declaration of Janopaul [Docket No. 100] that the supplemental interrogatory was untimely, plaintiff did not formally move to strike the supplemental response. In addition, plaintiff did not discuss, in its opposition to defendants' motion for summary judgment before Judge Doty, that the defense should be stricken. Instead, plaintiff responded on the merits to the Japanese art argument. However, defendants did not raise the "Classic Block" ground for invalidity during the prior summary judgment motion.

"For litigation to function efficiently, parties must provide clear and accurate responses to discovery requests. Parties are 'entitled to accept answers to previous interrogatories as true, and to refrain from seeking additional discovery directed to the same issue." ' *ELCA Enters., Inc. v. Sisco Equip. Rental & Sales, Inc.,* 53 F.3d 186, 189 (8th Cir.1995) (affirming exclusion of evidence where "ELCA did not candidly respond to the defendants' questions. Instead, after misleading the defendants for several months, ELCA made an eleventh-hour attempt to switch the basis for its alleged damages.... We will not validate such lack of candor ...") (quoting *Averbach v. Rival Mfg. Co.,* 879 F.2d 1196, 1201 (3d Cir.1989)).

"A party that ... fails to disclose information required by Rule 26(a) ... shall not be permitted to use [the nondisclosed information] as evidence at a trial, at a hearing, or on a motion" unless such failure was "harmless" or there was "substantial

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

justification" for the failure. Fed.R.Civ.P. 37(c)(1). "Rule 16 gives the district court the authority to set management deadlines and to impose sanctions for their violation." *Trost v. Trek Bicycle Corp.,* 162 F.3d 1004, 1008 (8th Cir.1998) (citing Fed.R.Civ.P. 16(b), (c)(5)-(7), (f)). The Court is permitted to exclude untimely evidence unless the failure to disclose was "either harmless or substantially justified." *Id.*

Rule 26(e)(2) of the Federal Rules of Civil Procedure imposes upon a party "a duty to seasonably amend a prior response to an interrogatory ... if the party learns that the response is in some material respect incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."

*4 The Court is concerned that defendant failed to raise the Japanese art defense in a timely manner. However, plaintiff addressed the Japanese reference argument on the merits in the prior round of summary judgment motions without moving to strike the tardy discovery response. Judge Doty excluded plaintiff's tardy expert testimony in which plaintiff attempted to address the merits of the Japanese reference defense. Judge Doty noted that plaintiff should have objected to the late disclosure, rather than submitting its own tardy response. In this way, Judge Doty strictly enforced the scheduling deadline, and that strict enforcement was upheld by the Circuit. This Court will continue in that manner, and will not exclude the defense of anticipation by the Japanese prior art, because plaintiff should have objected or moved to strike during the previous round of summary judgment motions.

A related issue the Court must resolve is the motion to exclude testimony by witness Janopaul as that testimony relates to the Japanese art. Plaintiff submits a fact affidavit from witness Janopaul in support of its argument on the merits of the Japanese reference. A purported expert declaration on these same issues was struck by Judge Doty, and that decision was upheld by the Circuit. However, the affidavit now under consideration is not an expert affidavit, but merely a fact affidavit. The Court therefore will allow it. The Court will not, however, allow additional discovery on the Japanese art issue. [FN2]

FN2. The Court will allow plaintiff to engage an individual to provide a translation of the Japanese reference, to the extent plaintiff disagrees with the translation provided by defendants.

Unlike the Japanese reference, the defense of invalidity based on plaintiff's own Pinned Diamond block was not raised in the prior summary judgment motion. Defendants suggest that they have "good cause" for the tardy disclosure of this defense. Specifically, defendants argue that the documents relating to this defense have at all times been in plaintiff's possession, because the defense is premised on a protest that plaintiff made to the United States Patent Office. Defendants indicate that these documents should have been timely disclosed to defendants, but were not. Defendants instead received the documents in relation to litigation defendants are engaged in with another party. The Court is satisfied that defendants disclosed this defense as soon as practicable, and that the disclosure, if untimely, was substantially justified. In addition, the Court is not persuaded that plaintiff has been caught "flat-footed," and is therefore prejudiced by the defense. Plaintiff clearly contemplated the relationship between the at-issue patents and the Pinned Diamond block as it sought to patent the at-issue blocks. Plaintiff's expert, Carl Moy, cited the Anchor protest as material he considered in his report addressing the defendants' expert report on invalidity. The motion to exclude this defense is therefore denied.

The defense of invalidity based on Rockwood Classic block was not addressed in the prior round of summary judgment. Defendants nonetheless argue that objection to this theory of defense has been waived. For this waiver argument, defendants primarily rely on a First Circuit case, *DesRosiers v. Moran,* 949 F.2d 15, 21-22 (1st Cir.1991). In *DesRosiers,* an inmate sued the prison where he was incarcerated for alleged constitutional violations.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The inmate raised a failure to comply with discovery argument at a pretrial conference. The issue was not resolved, and he failed to raise the issue again until trial. Although the inmate raised the issue at trial, the trial court deferred ruling on it, and the inmate did not re-raise the discovery issue. The trial court ultimately determined that the argument was waived, because the inmate knew about the discovery violation, and had several opportunities to cure the violation. The appellate court refused to grant a retrial, in part because the plaintiff had sought none of the possible remedies for discovery violations. The court noted:

> ***5** Ordinarily, if a failure to make timely discovery comes to light before or during trial, the remedy is to order the information produced and to take immediate steps to cure any prejudice. Depending on the nature of the breach, such curative steps might involve a continuance, *see, e.g., Jackson [v. Harvard Univ.],* 900 F.2d [464], 468-69 [ (1st Cir.1990) ], a mistrial, *see, e.g ., Taylor v. Illinois,* 484 U.S. 400, 413 (1988) (listing possible remedies for discovery violations, including the declaration of a mistrial), a preclusionary order, *see, e.g., Navarro de Cosme v. Hospital Pavia,* 922 F.2d 926, 932 (1st Cir.1991); *Fashion House, Inc. v. K Mart Corp.,* 892 F.2d 1076, 1081-82 (1st Cir.1989), or striking the responsible party's pleadings, *see, e.g., Marquis Theatre Corp. v. Condado Mini Cinema,* 846 F.2d 86, 88-90 (1st Cir.1988).

*Id.* at 21-22.

The instant case differs significantly--plaintiff does not ask the Court for a retrial, instead, plaintiff asks the Court to determine, in the first instance, whether a discovery violation indeed occurred. Several remedies are feasible, including allowing plaintiff an opportunity to conduct limited discovery. However, the remedy of additional discovery is not sought by plaintiff. Plaintiff argues that this case is ready for trial. The Court agrees that further delay in this five-year-old dispute would not serve the interests of the parties, or the Court's interest in the prompt and efficient resolution of disputes.

Instead, the Court will exclude the defense of invalidity based on Rockwood's Classic block, because that was not raised as a defense at prior summary judgment. The best time to object and move to strike the defense likely would have been at the time of the tardy submission. Perhaps the next best time to object is when the issue is first raised by the defense. Because the issue was not raised in the previous summary judgment motion, it is appropriately raised now. The Court continues Judge Doty's practice of strict enforcement of discovery deadlines, and therefore grants plaintiff's motion to exclude the defense of invalidity based on the Rockwood Classic block. That defense may not be raised in trial, and will not be addressed in this summary judgment opinion and order.

II. STANDARD FOR SUMMARY JUDGMENT IN A PATENT CASE

"Summary judgment is appropriate in a patent case, as in other cases [,] ... when the standards set forth in Rule 56(c) are satisfied." *Nike, Inc. v. Wolverine World Wide, Inc.,* 43 F.3d 644, 646 (Fed.Cir.1994); *Conroy v. Reebok Int'l, Ltd.,* 14 F.3d 1570, 1575 (Fed.Cir.1994). That is, summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The propriety of summary judgment ordinarily turns on whether or not there are genuine issues of material fact that must be resolved by the trier of fact. On the other hand, questions of law are particularly amenable to summary judgment precisely because they do not turn on factual disputes. *See, e.g., Varilease Tech. Group, Inc. v. United States,* 289 F.3d 795, 798 (Fed.Cir.2002). "A disputed fact is material if it might affect the outcome of the suit such that a finding of that fact is necessary and relevant to the proceedings." *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed.Cir.2001) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

***6** "While the burden rests on the party moving for summary judgment to show 'that there is an absence of evidence to support the non-moving party's case,' the nonmoving party must affirmatively

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

demonstrate by specific factual allegations that a genuine issue of material fact exists for trial." *Id.* at 971 (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322-23 (1986)). On a motion for summary judgment, the Court views all the facts in the light most favorable to the nonmoving party and gives that party the benefit of all reasonable inferences that can be drawn from the facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

III. PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON VALIDITY AND ENFORCEABILITY

Defendants argue that the '015 patent family is invalid and unenforceable because plaintiff failed to list Richard Stehly, a former company president, as an inventor on the patents. The patents instead named as inventors Dick Sievert [FN3] and Michael Woolford, both former employees of plaintiff. Plaintiff requests summary judgment, suggesting that no evidence supports a finding that Stehly is an inventor. Even if the evidence did support such a finding, plaintiff's argument continues, there is no evidence that the failure to include Stehly as an inventor was the product of any deceptive intent.

FN3. Mr. Sievert is deceased.

A. Background [FN4]

FN4. The following recitation presents either undisputed facts, presents the facts in the light most favorable to the nonmoving party (here, defendants), or clearly identifies the disputed facts.

Glen Bolles, CEO of Anchor, contacted Dick Stehly sometime in 1987 to talk about Stehly possibly working for Anchor. (Jan. 8, 2004 Decl. of D. Stehley, Ex. 2 to Ulbrich Decl. [Docket No. 157] ). [FN5] Anchor acquired Anchor Block Company ("ABC"), in 1988; Anchor's CEO (Glenn Bolles) asked Dick Sievert to design two retaining wall blocks. The parties disagree about Sievert's role in the company. Plaintiff suggests Sievert was the "block designer," while defendants say he was "manager of block production." The parties agree that Sievert designed the "Diamond" block. The "Diamond" design initially included pins to interlock the blocks together. Sievert also designed a "Terrastone" / "Aztech" block, which was rectangular and used a tongue-and-groove interlocking design.

FN5. Attorney Ulbrich presented the Court with numerous declarations. Unfortunately, the declarations are all entitled "Declaration of Scott G. Ulbrich." This practice has made it difficult for the Court to locate particular documents, and renders citation cumbersome. In the future, counsel is ordered to number declarations, i.e., "Second Declaration ...", if counsel anticipates submitting more than one declaration.

When these blocks were first exhibited, competitors complained that the blocks infringed patents, so plaintiff set about redesigning them. Plaintiff held several meetings, some of which Stehly attended. Plaintiff claims that Sievert was the only employee who initially believed the rear lipped product could be invented and manufactured. Plaintiff also claims that Sievert, Bolles, and Ted Guth (operations manager) drew concept sketches, but Stehly did not draw any concept sketches.

Plaintiff emphasizes that there is no evidence that Stehly conceived of the rear-lipped design, or played any part in selecting the final Diamond design. Plaintiff concedes that Stehly testified (as did others) that he made foam versions of the blocks in April of 1989, but plaintiff claims that this was "long after" the design was conceived and discussed by others.

*7 Defendants' version of events is meaningfully different. Defendants criticize plaintiff for attempting to mislead the Court into conflating invention of the lipped Aztech with the lipped Diamond block. Defendants suggest that Sievert focused on the Aztech block re-design and was busy overseeing the large production runs of the "new

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Page 9 of 21



lipped Aztech block" until at least March of 1989. Stehly, according to defendants, was focused on redesigning the Pinned Diamond block. Defendants suggest that when Stehly created the different sets of foam molds, he was able to determine how to configure the block so that it could be mass produced.

Defendants refer to these foam blocks as "prototypes" and note that Stehly had the blocks on display in his office before Mike Woolford (one of the named inventors) joined Anchor. From this, defendants argue that the Court can infer that Stehly must have been an inventor.

It is not disputed that Stehly was asked to resign from Anchor on June 9, 1989. It is also not disputed that Woolford began work for Anchor only after Stehly left. As part of the severance negotiations, Stehly asked for a royalty for his work on the Diamond product. Defendants also emphasize that Stehly was not informed of the design applications Anchor filed. Defendants characterize this as something of a cover-up or conspiracy. In addition, defendants set forth testimony by several witnesses, including one of the named inventors, that indicates that Stehly played some role in the invention.

B. Applicable Law and Application

Patents are presumed valid and enforceable. 35 U.S.C. § 282. "[E]ach patent also receives the presumption that its named inventors are the true and only inventors. *Hess v. Advanced Cardiovascular Sys., Inc.,* 106 F.3d 976, 980 (Fed.Cir.1997). When an invention is the work of several inventors, they must jointly apply for the patent. 35 U.S.C. § 116; 35 U.S.C. § 111. Omission of an inventor invalidates a patent unless the omission was an error "without any deceptive intention." *Acromed Corp. v. Sofamor Danek Group, Inc.,* 253 F.3d 1371, 1379 (Fed.Cir.2001) (citing 35 U.S.C. § 256; 35 U.S.C. § 102(f) (additional citation omitted)).

In this case, defendants claim that the patent is invalid because the application did not state that Stehly was one of the inventors. To rebut the presumption that the patent's named inventors are the true and only inventors, defendants must present clear and convincing evidence that the omitted individual actually invented the claimed invention. *Acromed,* 253 F.3d at 1379 (citing *Environ Prods. v. Furon Co.,* 215 F.3d 1261, 1265 (Fed.Cir.2000)).

"Conception is the touchstone of inventorship." *Burroughs Wellcome Co. v. Barr Lab., Inc.,* 40 F.3d 1223, 1227 (Fed.Cir.1994). For an individual to be a joint inventor, therefore, that person "must have contributed to the conception of the invention." *Acromed,* 253 F.3d at 1380 (citation omitted). "Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention as it is applied in practice." *BJ Servs. Co. v. Halliburton Energy Servs., Inc.,* 338 F.3d 1368, 1373 (Fed.Cir.2003) (citing *Sewall v. Walters,* 21 F.3d 411, 415 (Fed.Cir.1994)). "Beyond conception, a purported inventor must show that he made a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and [did] more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Acromed,* 253 F.3d at 1380 (quotation omitted).

***8** On a motion for summary judgment, the Court shall "view the evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *Eli Lilly & Co. v. Barr Labs., Inc.,* 251 F.3d 955, 962 (Fed.Cir.2001). Where the clear and convincing standard is applicable, a nonmovant cannot survive summary judgment by presenting facts sufficient to satisfy the preponderance of the evidence standard. *Liberty Lobby,* 477 U.S. at 255-56. The clear and convincing standard has been defined by the Supreme Court as follows: "if [the plaintiff] could place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable." ' *Colorado v. New Mexico,* 467 U.S. 310, 316 (1984) (addressing water rights between Colorado and New Mexico) (citing C. McCormick, Law of Evidence § 320, p. 679 (1954) ). The Court continued, "[t]his would be true, of course, only if the material [plaintiff] offered

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

instantly tilted the evidentiary scales in the affirmative when weighed against the evidence ... offered in opposition." *Id.* (citing McBaine, *Burden of Proof: Degrees of Belief,* 32 Calif. L.Rev. 242, 251-54 (1944)). *See also Cruzan v. Dir., Mo. Dep't of Health,* 497 U.S. 261, 282 (1990) (labeling the clear and convincing evidence standard as an "intermediate standard"); *Buildex, Inc. v. Kason Indus., Inc.,* 849 F.2d 1461, 1463 (Fed.Cir.1988); *Cornell v. Nix,* 119 F.3d 1329, 1334-35 (8th Cir.1997) (discussing "clear and convincing" standard in habeas corpus context).

A purported co-inventor's testimony, standing alone, cannot meet the "clear and convincing" standard. *Trovan, Ltd. v. Sokymat SA, Irori,* 299 F.3d 1292, 1302 (Fed.Cir.2002) (citing *Price v. Symsek,* 988 F.2d 1187, 1194 (Fed.Cir.1993)). While it is true that "[c]orroborating evidence may take many forms," it is preferable to have "physical records that were made contemporaneously with the alleged prior invention." *Id.* (citing *Sandt Tech., Ltd. v. Resco Metal & Plastics Corp.,* 264 F .3d 1344, 1350-51 (Fed.Cir.2001) (additional citation omitted). "Circumstantial evidence about the inventive process may also corroborate." *Id.* Further, "oral testimony of someone other than the alleged inventor may corroborate." *Id.* (citation omitted).

Plaintiff's argument is persuasive, and the standard defendants must meet is high. *See, e.g., Hess,* 106 F.3d at 981 (affirming district court's conclusion after a trial that plaintiff was not coinventor even though plaintiff was able to point to "snippets of the [defendants'] testimony in which, he asserts, the [defendants] conceded that Mr. Hess was responsible for significant portions of the invention the '071 patent disclosed. Those statements, however, cannot bear the weight Mr. Hess gives them. In the context of the entire record, they do not refute the factual sufficiency of the evidence supporting the district court's decision."). That said, defendants have pointed to more than a small amount of evidence that would enable the Court, as the fact finder, to determine that Stehly was an inventor and that failing to name him on the patent was with deceptive intent. *BJ Servs. Co. v. Halliburton Energy Servs., Inc.,* 338 F.3d 1368, 1373 (Fed.Cir.2003) ( "Inventorship is a question of law with factual underpinnings."). For these reasons, plaintiff's motion for summary judgment on validity and enforceability is denied.

IV. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY FOR THE '363 FAMILY OF PATENTS

*9 Defendants assert three grounds for summary judgment for plaintiff's infringement claims for the '363, '183, and '129 Patents. First, defendants claim that Anchor's '363 patents are invalid because they were anticipated by a Japanese Patent Publication. Second, defendants claim that their "Classic block" is invalidating prior art that was developed and sold prior to the priority date of Anchor's patent claims. Finally, and alternatively, defendants argue that their blocks do not infringe because they do not "mate" as that term was constructed by the Federal Circuit.

Plaintiff suggests that defendants' noninfringement arguments are frivolous and would require the Court to ignore the Federal Circuit's claim construction. Plaintiff further argues that defendants' alleged bases of invalidity were raised for the first time after the close of discovery, and depend upon secret witnesses and inadmissible, unauthenticated documents. Because the Court decided that the Japanese reference was adequately disclosed, the Court will address on the merits defendants' argument regarding the Japanese reference. The Court will not address defendants' argument that the Classic Block was prior art, because the Court has granted plaintiff's motion to exclude that theory of defense.

A. Background [FN6]

> FN6. The following background is either undisputed, or is presented in the light most favorable to the nonmoving party--here, the plaintiff.

Anchor is the assignee of three relevant patents, the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.