Exhibit 1b

'363, '183, and '129 patents. [FN7] Anchor alleges that defendants' "Classic block" product infringes claim 4 of the '363 Patent, claims 14, 15, 18, 32, 38, 39, 40 and 42 of the '183 Patent, and claims 1, 3, 5, 6, 8, 14, 25, and 27 of the '129 patent. Defendants argue that the asserted claims of the '183 patent are only entitled to a priority date of May 4, 1993, and the asserted claims of the '129 Patent are entitled only to a priority date of October 1, 1993.

FN7. The full U.S. Patent Nos. are, respectively, 5,490,363, 5,704,183 and 5,711,129.

B. Applicable Law and Application

Patents are presumed valid. 35 U.S.C. § 282. However, "[a] patent is invalid for anticipation when the same device or method, having all of the elements and limitations contained in the claims, is described in a single prior art reference." *ATD Corp. v. Lydall, Inc.,* 159 F.3d 534, 545 (Fed.Cir.1998); 35 U.S.C. § 102(b). "An anticipating reference must describe the patented subject matter with sufficient clarity and detail to establish that the subject matter existed and that its existence was recognized by persons of ordinary skill in the field of the invention." *Id.* An invention is anticipated if it "was patented or described in a printed publication in this or a foreign county ... more than one year prior to the date of application for patent in the United States." *Helfix Ltd. v. Blok-Lok, Ltd.,* 208 F.3d 1339, 1346 (Fed.Cir.2000) (quoting 35 U.S.C. § 102(b)). An invention is anticipated "if a patentee's invention has been made by another, prior inventor who has not abandoned, suppressed or concealed the invention." *Dow Chem. Co. v. Astro-Valcourt, Inc.,* 267 F.3d 1334, 1339 (Fed.Cir.2001); 35 U.S.C. § 102(g). For the accused infringer to succeed on an anticipation invalidity claim, the infringer must show that the prior art reference discloses "each and every limitation of the claimed invention." *Schering Corp. v. Geneva Pharms., Inc.,* 339 F.3d 1373, 1377 (Fed.Cir.2003) ( "[A]nticipation [occurs] if a single prior art reference discloses each and every limitation of the claimed invention."). The accused infringer must also show that the prior art is enabling, and must show that the prior art describes the claimed invention sufficiently to have placed it in possession of a person of ordinary skill in the field of the invention. *Id.; see also Freeman v. Minn. Mining and Mfg. Co.,* 675 F.Supp. 877 (D.Del.1987) (denying summary judgment because a material question of fact as to enabling existed).

***10** In analyzing anticipation arguments, courts first construe the claim, then compare the construed claim to the prior art. *Helfix,* 208 F.3d at 1346. The second step--comparing the construed claim to the prior art--is a question of fact. *Oakley, Inc. v. Sunglass Hut Int'l,* 316 F.3d 1331, 1339 (Fed.Cir.2003).

An accused infringer challenging the validity of a patent "bears the burden of showing invalidity by facts supported by clear and convincing evidence." *Robotics Vision Sys., Inc. v. View Eng'g, Inc.,* 189 F.3d 1370, 1377 (Fed.Cir.1999) (emphasis added). Oral testimony is rarely enough to show invalidity and typically must be bolstered by some additional evidence. *See, e.g., Lacks Indus. v. McKechnie Vehicle Components USA, Inc.,* 322 F.3d 1335, 1349-50 (Fed.Cir.2003) (discussing a priority dispute). As discussed above, where the clear and convincing standard is applicable, a nonmovant cannot survive summary judgment by presenting facts sufficient to satisfy the preponderance of the evidence standard. *Liberty Lobby,* 477 U.S. at 255-56. The clear and convincing standard is met "if [the plaintiff] could place in the ultimate factfinder an abiding conviction that the truth of its factual contentions are 'highly probable." ' *Colorado v. New Mexico,* 467 U.S. at 316 (citation omitted).

1. Japanese reference

The Japanese reference was published November 10, 1984 and the '363 family of patents have an effective filing date (according to defendants) of October 6, 1992. The applicable statutory section (§ 102(b)) requires that to be considered prior art the reference need only predate the invention by one year. Defendants then argue the remainder of the requirements by comparing, in chart form, the Japanese art with the claim language of the patents

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

in suit.

The Court is not persuaded that defendants have established by any standard, let alone a clear and convincing one, that the Japanese reference anticipates, and therefore invalidates, the '363 and '129 patents.

It is true that the Japanese reference appears similar--it seems to disclose masonry blocks that make up retaining walls. Nonetheless, given the reference (and that is all the Court is given) some attributes could be different. Defendants' argument--made by labeling the Japanese reference using language from plaintiff's claims, and then making the conclusory statement that no reasonable jury could find the Japanese reference does not anticipate--is insufficient as a matter of law, and as a matter of common sense. Skilled as they might be in the art of trial advocacy, there is no indication in the record that the defendants' trial attorneys are competent to translate or interpret the Japanese reference or its drawings.

Plaintiff argues, not without force, that the Japanese reference appears to disclose blocks intended to be used with mortar to build retaining walls. Defendants disagree with this proposition, but defendants misplace the burden in their argument. It is not plaintiff's burden to show that the prior art did not anticipate--it is defendants' burden to demonstrate, by clear and convincing evidence, that the Japanese reference does anticipate. If it is just as feasible that the Japanese reference discloses blocks with significant differences, or if the Japanese reference was not enabling, then defendants have not met their burden on summary judgment.

***11** The differences Anchor also points to are as persuasive as defendants' analysis of the reference. Therefore defendants' motion for summary judgment on the ground that the '363 and '129 patents are invalid due to anticipation by the Japanese reference, is denied.

2. The "mate" argument

Defendants argue that the Classic block does not literally infringe because it does not "mate." Anchor argues that this is the construction of "mate" that was rejected by the Federal Circuit. This Court agrees. Defendants advertise the Classic block as "locking" together--and also advertise the Classic block's "interlocking" features. The Circuit defined "mate" as "to join or fit together." 340 F.3d at 1309. This definition supports plaintiff's argument, especially when it is read against the rejected more narrow construction, which required two limitations that were determined by the Circuit to be erroneous. *Id.* (rejecting the following limitations (1) a close confinement of the protrusion within the inset(s) of two or more blocks; (2) an ability to secure the blocks in place in a forwards and backwards direction; and approving as unchallenged the limitation of an interlocking of the protrusion with the insets).

Plaintiff argues that no reasonable jury could find that the Classic block does not "mate" therefore summary judgment for Anchor is appropriate. Though the Court agrees that plaintiff has the better argument, it is not the case that a reasonable jury would have no choice but to find plaintiff's argument persuasive. This question of fact is within the province of the jury, and will be so submitted.

V. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT OF NON-INFRINGEMENT AND INVALIDITY FOR THE '015 FAMILY OF PATENTS

As to this family of patents, the Federal Circuit remanded several issues. First, the Circuit indicated that the District Court must determine if there is literal infringement as a matter of law, given the Circuit's construction of "generally parallel." The Court will also address the proper construction of "substantially horizontal" and address the *Festo* presumption. Finally, the Court addresses claim 70 and '713. Specifically, the Court will determine whether potential infringement of the doctrine of equivalents was briefed and argued to Judge Doty. If so, the Court will address whether claim 70 of the '713 patent infringed under the doctrine of equivalents.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In this motion, defendants request summary judgment that the accused Cottage Stone II, III, and IV block products do not infringe plaintiff's asserted U.S. Patents Nos. 5,827,015 ("the '015 Patent") and 6,142,713 ("the '713 patent"). Defendants argue that under the "corrected" claim construction, as provided by the Federal Circuit, the accused blocks are not "generally parallel" as the Circuit construed that claim. Defendants claim the accused products do not infringe the limitations of the asserted claims of the '015 Patent under the doctrine of equivalents, because the doctrine is unavailable for certain claim limitations due to narrowing amendments made for patentability purposes.

***12** Finally, defendants make a "prosecution laches" argument--suggesting that plaintiff unreasonably and unjustifiably delayed prosecution of the '015 patent in order to permit the retaining wall block market to develop, which prejudiced defendants and other competitors.

A. Background

Anchor's '015 and '713 are "related parent-child" pair of utility that disclose blocks used to form retaining walls. The top and bottom surfaces of the blocks are flat (no ridges or gaps). The accused infringing blocks are defendants' "Cottage Stone" blocks. The blocks are relatively similar, except the Cottage Stone II blocks have grooves in the bottom, and a concave bottom. Defendants say this is a substantial improvement, because with defendants' blocks, the previous course of blocks does not have to be free of debris before adding the next layer.

Defendants' Cottage Stone II block was the subject of a patent application filed on August 19, 1999. The patent examiner determined that the design was sufficiently different from plaintiff's '015 so as to be entitled to a patent, and the patent 6,250,850 issued on June 26, 2001.

Cottage Stone III was designed, according to defendants, before January 10, 2000. The alleged infringed block ('713) did not obtain patent allowance until November 7, 2000. The novel features in the Cottage Stone III were notches in the sidewalls, a channeled area on the bottom surface in front of the rear lip, even more of a concave bottom, and a displaced rear lip. Again, the blocks can tolerate debris on the prior layer/course. The rear lip was offset to increase strength, and the notches make the blocks lighter and more consumer friendly.

Cottage Stone IV was designed, according to defendants, prior to May 4, 2001. Essentially, the Cottage Stone IV altered the face to make it more attractive. Patent No. 6,183,168 B1 ("the '168 patent") was issued as to Cottage Stone IV. Infringement of the '168 patent does not appear at issue, because defendants were granted summary judgment, and plaintiff did not appeal.

Defendants allege that plaintiff unreasonably and unjustifiably delayed the prosecution of their allegedly infringed block products so that they could entice competitors to start using similar designs. According to defendants, when plaintiff finally allowed the patents to issue, plaintiff began suing competitors. Defendants argue that plaintiff did this by creating a family of patents ('015, '713, and '168 patents) which are all children of a chain of patents plaintiff originally filed in 1989. It was not until 1998 that plaintiff finally allowed a patent to issue to cover its successful Diamond and Windsor block designs.

B. Analysis

1. Literal infringement

Defendants argue there is no literal infringement because, even given the Federal Circuit's construction of "generally parallel," the Cottage Stone blocks are not generally parallel. Defendants invite the Court to revisit the claim construction to make it more specific--an invitation that, while perhaps the Court could entertain, the Court declines. The Federal Circuit construed the claim as specifically as the Circuit found necessary. If the Circuit had intended "generally parallel" to have an outside limit, it would have, and certainly could have, included such a limit.

***13** Although the Court declines to define

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

"generally parallel" more specifically than did the Circuit, the Court finds merit in defendants' argument that the accused blocks do not infringe. Considering the Cottage Stone blocks' grooves, the multifaceted and curved lower face, and the concave bottom, defendants' argument is persuasive. Defendants present an expert who opines that between 74.46 and 82.21% (depending on which version of Cottage Stone) of the lower face is "non-parallel." Defendants also point out that plaintiff itself has argued that the "few wrinkles" are important (explaining this point by comparing modern hairpins /bobby pins with old style straight hair pins). On the other hand, plaintiff presents an expert who indicates that the blocks are generally parallel. Accepting defendants' argument risks reading "generally" out of the claim, an error this Court will not repeat. Because a reasonable jury could find that the accused blocks are "generally parallel" given the Circuit's definition, the Court will not grant defendants' motion for summary judgment on this basis.

Defendants also argue that Cottage Stone III and IV cannot literally infringe, because the "rear lip does not have a 'rear face which is an extension of the block rear face." ' As plaintiff points out, neither the District Court nor the Circuit construed the term "extension." Given the Circuit's definition of "protrusion" as "something that protrudes" the Court defines "extension" as "something that extends." The debate is how specific this limitation is--if the back surface of the rear lip must be in the same plane as the rear-most surface of the block, then defendants' blocks do not literally infringe. However, this reading is too narrow because extension is merely "something that extends."

It is true that the lip is offset in the Cottage Stone versions and is not offset in plaintiff's versions. However, the Court cannot find that reasonable minds could not find literal infringement here. The Court is not persuaded that an "extension" of the rear lip necessarily excludes an offset lip. Such a reading also calls to mind the rejected construction of "back" which erroneously required "a back surface "spanning the full width of the block."

2. Substantially horizontal

The Federal Circuit did not define "substantially horizontal" and specifically ordered the District Court to do so. The Court therefore construes this term, using the multi-step approach set out by the Federal Circuit. *Vitronics Corp. v. Conceptronic, Inc.,* 90 F.3d 1576, 1582-83 (Fed.Cir.1996); *see also Markman v. Westview Instr., Inc.,* 52 F.3d 967, 979 (Fed.Cir.1995) (*en banc* ), *aff'd,* 517 U.S. 370 (1996).

The steps include (1) determine the ordinary meaning of the claims themselves; (2) analyze ordinary meaning in light of the intrinsic evidence; and (3) consult extrinsic evidence when permitted. *Vitronics,* 90 F.3d at 1582-83.

***14** The dictionary definition of "horizontal" provided by defendants is "a line or plane assumed, for the purpose of measurement or description, to be parallel with the horizon." *New Comprehensive Int'l Dictionary of the English Language,* p. 608, Fund & Wagnalls (1978). Another dictionary, *Merriam-Webster's Collegiate Dictionary,* p. 558, Mish & Morse (10th ed.), provides several entries for "horizontal." The most relevant of those is as follows: "1b: parallel to, in the plane of, or operating in a plane parallel to the horizon or to a base line." ("Horizon" is defined in *Merriam-Webster's Collegiate Dictionary* as "the apparent junction of earth and sky.")

The most relevant entry for "substantial" in *Merriam-Webster's Collegiate Dictionary* is "being largely, but not wholly that which is specified." *Merriam-Webster's,* p. 1170. This is not too far off the definition for "generally" discussed by the Federal Circuit. *See also Cordis Corp. v. Medtronic AVE, Inc.,* 339 F.3d 1352, 1360-61 (Fed.Cir.2003) (discussing construction of "substantially" and rejecting construction that "substantially uniform thickness" meant varying by .001 inches or less).

The Court therefore construes "substantially horizontal" as allowing for some deviation from exactly horizontal, and horizontal as "a line or plane parallel to the horizon or a base line." Such a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

reading also comports with the prosecution history. Plaintiff specified during the prosecution that "substantially horizontal" was meant to cover blocks that had 'modifications' in their bottom surfaces. (Strawbridge '015 Decl., Ex. 49 at 15.)

Defendants' argument that there is no literal infringement requires a finding that, because of the concaveness and grooves in the bottom of the Stone Blocks, no reasonable jury could determine that the bottom surface is "substantially horizontal." The Court again finds merit in this argument, but also finds that a reasonable jury could find literal infringement, given the modifier, "substantially."

3. *Festo* & doctrine of equivalents

The Federal Circuit directed the District Court to determine "whether Anchor can rebut the *Festo* presumption" in relation to infringement of claims 38 and 50 of the '015 patent. *Anchor Wall Sys., Inc.* 340 F.3d at 1312. Defendants suggest that plaintiff invoked the *Festo* presumption, and that Judge Doty found that plaintiff invoked the presumption of amendment estoppel with respect to the limitation "generally parallel." 252 F.Supp.2d at 854. The parties disagree about the precise issue this Court must address. Defendants indicate that the only question here is whether plaintiff can rebut the *Festo* presumption. Plaintiff, on the other hand, argues that the presumption has not been invoked. Plaintiff contends that the *Festo* presumption does not apply because "[t]hese claims had the 'generally parallel' language from the beginning." Plaintiff continues, "the 'generally parallel' limitation in these claims is, if anything, broader than the 'parallel' and 'planar' limitations recited in the original claims of the application which matured into the '015 patent."

***15** Despite plaintiff's efforts, given the clear language of the Circuit, the Court agrees with defendants, and will begin its analysis by assuming that the *Festo* presumption has been invoked, and will addresses whether plaintiff can rebut the *Festo* presumption. [FN8]

FN8. In addition, it is clear that Judge Doty found that the *Festo* presumption had been invoked. Plaintiff does not argue that this particular holding was appealed.

The *Festo* presumption refers to the scope and extent to which prosecution history estoppel is a bar to the doctrine of equivalents. The Supreme Court held that a narrowing amendment during prosecution is not a complete bar to the doctrine of equivalents. Rather, only those amendments relating to a "substantial question of patentability" raise the bar. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002), *remanded to* 344 F.3d 1359 (Fed.Cir.2003).

The Supreme Court identified three factors by which a patentee may overcome the *Festo* presumption. *Id.; see also* 344 F.3d 1359, 1368 (discussing three ways to rebut the presumption). First, the patentee may show that the equivalents were unforeseeable at the time of amendment, and thus, beyond a fair interpretation of what was surrendered. 344 F.3d at 1369 (citation omitted). The patentee may alternatively show that the rationale underlying the amendment bears no more than a tangential relation to the equivalent in question. *Id.* "In other words, this criterion asks whether the reason for the narrowing amendment was peripheral, or not directly relevant, to the alleged equivalent." *Id.* Finally, the patentee may show "some other reason suggesting that the patentee could not reasonably have described the insubstantial substitute in question." *Id.* at 1370.

When a party invokes the second noted method--that the rationale for the narrowing amendment was only tangentially related to the equivalent in question--the party must provide objective evidence "based solely upon the public record of the patent's prosecution." *Id.* at 1369. The Federal Circuit instructs, "whether the patentee has established a merely tangential reason for a narrowing amendment is for the court to determine from the prosecution history record without the introduction of additional evidence, except, when necessary, testimony from those skilled in the art as to the interpretation of that record." *Id.*

Plaintiff raises the second noted method, arguing

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

that the purpose of using the 'generally parallel' limitation bore absolutely no relation to the equivalent in question. (Pl.'s Opp'n Br. at 19.) Citing to the declaration of plaintiff's in-house attorney, plaintiff argues that the purpose of reciting "generally parallel" was to clarify that the invention was not limited to blocks having exactly parallel surfaces. *Id.* Defendants suggest that plaintiff has not pointed to evidence sufficient to overcome the *Festo* presumption because it has pointed to no admissible or relevant evidence. [FN9] Defendants suggest that the Court is limited strictly to the prosecution history to determine whether the *Festo* presumption has been overcome. That is a slight exaggeration, as the Court may look to testimony from those skilled in the art to interpret the prosecution history. *Festo,* 344 F.3d at 1369. The Court cannot determine, on this record, that plaintiff will be unable to rebut the *Festo* presumption. Plaintiff has presented sufficient evidence to preclude summary judgment for defendants on this issue.

FN9. Defendants make a motion to strike evidence submitted by plaintiff regarding this issue. The Court, as set out below, denies this motion, therefore plaintiff has submitted evidence to overcome the presumption.

***16** Defendants further argue that even if the *Festo* bar did not preclude plaintiff from arguing the doctrine of equivalents, the curved lower surface of the Cottage Stone products is not an equivalent to "generally parallel" under the doctrine of equivalents because this feature is independently patented in the claims of Rockwood's '850 Patent. The grant of a patent on the accused device is evidence of the substantiality of differences. *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1570 (Fed.Cir.1996). [FN10] Defendants argue, "[r]easonable minds ... would not differ with the patent examiner in finding" that defendants' blocks did not infringe. (Memo. in Supp. of Summ. J. at 21.) Defendants' prediction might be correct--it might be that a factfinder will agree. This is not the same, however, as saying that "reasonable minds could not differ." Because reasonable minds could differ on this conclusion, summary judgment is not appropriate.

FN10. Defendants cite *Zygo Corp. v. Wyko Corp.,* 79 F.3d 1563, 1570 (Fed.Cir.1996) for the proposition that the doctrine of equivalents cannot be applied if the accused infringing device is covered by a separate patent that references the alleged infringed patent. The Court is not convinced that the *Zygo* opinion stands for such an unyielding proposition. The *Zygo* Court certainly found that the doctrine of equivalents did not apply, and discussed the fact that the alleged infringer had cited the allegedly infringed product, but no court has cited *Zygo* for the broad proposition cited by defendants. *See, e.g., Aeroquip Corp. v. United States,* 37 Fed. Cl. 139, 146 (Fed.Cl.1997) (describing *Zygo* as follows: "In *Zygo,* the Federal Circuit noted that the accused infringer cited the accuser's patent while the accused was seeking to patent its own interferometer. The court found that granting a patent to the accused after citation to and consideration of the accuser's patent was relevant to the issue of whether the accused's invention was substantially similar.") (emphasis added).

4. Claim 70 of '713

Claim 70 of the '713 patent presents a separate issue. The Circuit vacated the District Court's opinion "[t]o the extent that [the opinion] constituted a grant of partial summary judgment of noninfringement of Claim 70 of the '713 patent under the doctrine of equivalents." 340 F.3d at 1313 . The Circuit remanded for this Court "to articulate whether any triable issues of fact with respect to infringement of this claim by equivalents exists." *Id.* The Circuit also noted, however, that "if the issue was never briefed or argued to the district court, summary judgment in Rockwood's favor may be appropriate." *Id.* (emphasis added).

The Court begins, therefore, by determining if the

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

issue was ever briefed or argued; if it was not, the Court will grant defendants' motion for summary judgment on this discrete issue.

Defendants, predictably, argue that the issue was not briefed or argued. Plaintiff argues it was. Given the task of discerning what was raised and argued previously, this Court is at a distinct disadvantage, as it was not involved in the case during the prior round of summary judgment. Therefore, the Court relies on the parties to familiarize the Court with this issue, and to provide the Court with clear and specific evidence regarding the question. Regrettably, neither party adequately supports or explains its position. For example, plaintiff points to a statement in its Supplemental Answers to Interrogatories, in which plaintiff states "that the claims of the '713 and '168 patents alleged [that are] infringed literally by the Cottage Stone III are also infringed under the doctrine of equivalents ... because the lower/bottom surface/face of the Cottage Stone III is functionally equivalent to the lower/bottom surface/face of the claimed block, because it keeps the courses of blocks level." (Bremer Decl. in Opp'n to Defs.' Mot. for Summ. J. at Ex. 9 (emphasis added).) That the issue was raised in a supplemental interrogatory response does not mean, however, that it was briefed and argued to the District Court in the prior summary judgment argument. The Court was able to locate reference to this argument in briefs to the Federal Circuit, and plaintiff provided an excerpt from its previous summary judgment brief that arguably raises the issue. In response, defendants do not explain how plaintiff's prior summary judgment brief does not raise the issue. Defendants also do not address plaintiff's supplemental interrogatory responses. Defendants instead rely on a footnote in the previous summary judgment order. This Court cannot discern why the Court provided the cited footnote, and the footnote does not appear to constitute a holding but rather a summary to aid the reader. [FN11]

FN11. The at-issue footnote is at 252 F.Supp.2d at 851 n. 18. The Court also wonders why, if the footnote were dispositive, the Circuit would have remanded with the direction to address whether the issue had in fact been raised below.

*17 Defendants have not provided sufficient evidence to the Court to rebut plaintiff's suggestion that this issue was raised and argued. Therefore, the Court turns to the Circuit's direction to "articulate whether any triable issues of fact with respect to infringement of this claim [claim 70 of the ' 713 patent] by equivalents exists." 340 F.3d at 1313.

As the Circuit noted, "infringement under the doctrine of equivalents frequently turns on questions of fact, such as whether the allegedly infringing device performs substantially the same function in substantially the same way to achieve substantially the same result as the claimed invention." *Id.* (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40 (1997)). Plaintiff here argues that defendants' blocks are equivalent, and that the changes are superficial only and were made merely to avoid infringement. However, plaintiff provides little by way of argument, and instead makes the conclusory statement that "Defendants have had the chance to argue the merits, and have opted not to. The issue ..., thus, is an issue of fact to be resolved by a jury at trial." Given the utter lack of briefing on the merits of this issue, the Court cannot determine the issue on summary judgment. The motion for summary judgment is therefore denied, and this issue will be submitted to the jury.

5. Prosecution laches

Defendants argue that Anchor unreasonably and unjustifiably delayed prosecution of the '015 patent in order to permit the retaining wall block market to develop, which prejudiced defendants and other competitors. Both parties requests summary judgment on defendant's affirmative defense of prosecution laches.

Prosecution laches "is an equitable defense to a charge of patent infringement" that has been recognized, though not thoroughly discussed, by the Federal Circuit. *See Stambler v. RSA Security, Inc.,*

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

243 F.Supp.2d 74, 75 (D.Del.2003) (lamenting that "neither Congress nor the Federal Circuit has provided any further guidance on the legal standards applicable to the prosecution laches defense" and granting summary judgment to plaintiff on defendant's affirmative defense of prosecution laches); *see also Symbol Techs. v. Lemelson Med.,* 277 F.3d 1361 (Fed.Cir.2002) (recognizing that the equitable doctrine of laches may be applied to bar enforcement of patent claims that issued after an unreasonable and unexplained delay in prosecution even though the applicant complied with pertinent statutes and rules), *remanded to* 301 F.Supp.2d 1147 (D.Nev.2004).

This doctrine has been used to combat what some commentators describe as a frequently "used and abused" practice of "continuation" applications. *See generally* Mark A. Lemley and Kimberly A. Moore, *Ending Abuse of Patent Continuations,* 84 B.U. L.Rev. 63, 64 (2004). "Continuation" is the term used to describe an applicant's ability to get perpetual "bites at the apple" by resubmitting applications. *Id.* Continuations allow "applicants dissatisfied with the course of patent prosecution" to "abandon an application and file a continuation." *Id.* "Alternatively, a patentee can prosecute one or more patents to issue and also keep a continuation application on file, hoping to win a better patent from the PTO in the future." *Id.* Patentees control whether or not a patent issues, even if the PTO has approved the patent. *Id.* ("Even when the examiner concludes that an invention is patentable and issues a 'notice of allowance,' the patent applicant always retains the right to abandon the application that was deemed patentable and start the process over again."). "Applicants similarly manipulate the system by taking the patent awarded by the PTO, but also seeking additional or broader claims arising out of the same patent application." *Id.* (also discussing problems with continuation). [FN12]

FN12. These commentators believe that these practices constitute "abuse" of the continuation process. Other commentators no doubt believe that these practices are good for competition. There is no disagreement that the practices are allowed by the PTO.

***18** Although the Federal Circuit has not given district courts a great deal of guidance in applying prosecution laches, [FN13] other district courts addressing the issue have first evaluated "whether a patent was obtained after an unreasonable and unexplained delay in prosecution." *Symbol Techs.,* 301 F.Supp.2d at 1155 (citations and internal quotations omitted). "[I]n reviewing the record to determine whether the delay at issue was unreasonable and unexplained, the court must consider the fact that prosecution laches is an equitable tool which has been used sparingly in only the most egregious of cases." *Id.* (quotations omitted).

FN13. *See generally* Michael T. Hawkins, Comment, *Prosecution Laches in the Wake of* Symbol Technologies, *What is "Unreasonable and Unexplained" Delay?,* 87 Minn. L.Rev. 1621 (2003) (discussing the Federal Circuit's opinion, and endeavoring to articulate "a prosecution laches test that appropriately balances the interest in providing fair incentives to inventors with the interest of protecting those who are prejudiced by unreasonably delayed patent claims").

For example in *Symbol Technologies* (on remand), the district court, after a trial, held that an "18 to 39 year delay in filing and prosecuting the asserted claims under the fourteen patents-in-suit after they were first purportedly disclosed in the 1954 and 1956 applications was unreasonable and unjustified and that the doctrine of prosecution laches renders the asserted claims unenforceable." *Id.* at 1155. *Compare Chiron Corp. v. Genentech, Inc.,* 268 F.Supp.2d 1139, 1143-44, 1148 (E.D.Cal.2002) (denying summary judgment to patentee on laches issue because delay of more than fifteen years from earliest filing date to issuance was unexplained); *with Stambler,* 243 F.Supp.2d at 76 (holding "[a]s a matter of law" that "the Stambler patents did not issue after an unreasonable delay" where patents issued less than two and one-half years (measured from the application date) or less than seven years

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(measured from the original application); *Intuitive Surgical, Inc. v. Computer Motion, Inc.,* No. 01-203-SLR, 2002 WL 31833867, at *4-6 (D.Del. Dec. 10, 2002) (conducting trial on the issue and finding no laches where delay from earliest claim of priority to issuance was nine years).

Applying these principles here, Anchor first argues that defendants have waived the equitable defense of prosecution laches by failing to raise it until three years into this litigation. Anchor concedes that defendants pled "laches" in their initial answer, but Anchor suggests "prosecution laches" is an entirely different defense. Neither party cites to case law in support of their respective views on this question. Courts and commentators, however, clearly treat prosecution laches as a "new" defense, while the more straightforward defense of laches certainly is not new. *See, e.g.,* Lemley and Moore, *supra,* at 65 (noting that "In the last ten years, [the courts] created an entirely new defense of prosecution laches." The authors later note, however, that prosecution laches is really a "revived" defense).

The Court agrees that "laches" is distinct from "prosecution laches." However, plaintiff was on notice that laches, of some sort, would be a defense in this matter. Plaintiff did not inquire with any specificity about the type of laches that would be at issue. The Court therefore declines to exclude the defense for failure to plead.

***19** Plaintiff supports its position by detailing the prosecution history of the at-issue patents. Plaintiff attempts to distinguish this case from ones in which prosecution laches has succeeded as a defense by noting that, due to the enactment of GATT, "all of the claims in Anchor's '015 patent ... and Anchors '713 ... patent expire no later than June of 2010 ..." This is relevant because one reason courts apply laches is to prevent patentees from wrongfully obtaining extra-long patents by filing continuation after continuation. However, this is only one rationale, and is not necessarily determinative of the issue.

It has been fourteen years since plaintiff began prosecutions (1990). This is toward the high end as compared to the few cases discussing the doctrine. Plaintiff notes that it has been prosecuting the patent applications non-stop and has allowed eight patents to issue. Plaintiff also has been defending its patents against alleged infringement (in the "Keystone" cases), and has prosecuted and received several foreign patents. Despite these arguments, neither party has presented sufficient evidence to convince the Court that summary judgment is appropriate on this issue.

V. DEFENDANTS' MOTION TO STRIKE

A. Bremer Rule 56(f) declaration

Plaintiff submitted a declaration of Dennis C. Bremer in connection with plaintiff's opposition to defendants' motion for summary judgment regarding the '363 family of patents. Defendants object to the declaration, arguing it is procedurally deficient, and is contrary to plaintiff's prior representations to the Court. Defendants also argue the declaration is an improper attempt to file a reply in plaintiff's motion in limine dispute and should be struck on that basis as well.

All evidentiary material made in support of or in opposition to a motion for summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e); *see, e.g., Stuart v. Gen. Motors Corp.,* 217 F.3d 621, 635 n. 20 (8th Cir.2000) (stating that documents that fail to comply with Rule 56(e) cannot be considered in deciding motion for summary judgment); *Townsend v. American Express Fin. Corp.,* No. Civ. 02-4260, 2004 WL 45501 (D.Minn. Jan. 5, 2004) (striking two letters in opposition to summary judgment, the first because the letter was unsigned and there was no evidence authenticating it, and the second as inadmissible hearsay). Affidavits based upon "information and belief" are insufficient as a matter of law. *Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.,* 283 F.Supp.2d 1018, 1027 (N.D.Iowa 2003) (citing *Automatic Radio Mfg. Co. v. Hazeltine Research,* 339 U.S. 827, 831 (1950)).

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Affidavits not meeting these standards are not properly relied upon by the Court. *Id.* Thus, a court may strike portions of affidavits that lack personal knowledge, contain hearsay, or rest upon conclusory statements.

***20** The Court is not persuaded by defendants' objections and declines to strike the declaration. The declaration is not impermissibly contrary and is not procedurally improper. Plaintiff is required only to state what additional discovery is necessary and how it is relevant to the opposition of the pending motion for summary judgment. Those requirements are satisfied in this declaration.

B. Pages 12-13 and 21-23 of Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment on Invalidity.

This motion is denied. Some arguments plaintiff makes in opposing summary judgment are also made in plaintiff's motion in limine, however, the theory of both motions is the same--namely, that defendants' invalidity defenses should be excluded. These pages are not improper and will not be stricken.

C. Janopaul declaration (in re the '363 patents)

This declaration will not be stricken for the reasons set forth in the Court's discussion of the Japanese reference defense.

D. Strawbridge declaration

Defendants move to strike portions of two declarations of Douglas A. Strawbridge. Strawbridge is the general counsel for Anchor. He is properly a fact witness and was disclosed as an expert witness as well. Since he is an officer of Anchor, he was not required to submit an expert report. To the extent his declaration contains "expert" opinion, it is permissible.

E. Janopaul declaration (re: the '015 family)

Plaintiff argues that this declaration is consistent with Janopaul's expert report and should not be excluded on that ground. The Court reviewed the Janopaul deposition and it was clear that, while Janopaul understands masonry blocks, he is not familiar with patent law terms. Some of the need for clarification likely stems from counsel for defendants insisting on using very "legal" terms, when he could have easily asked questions that Janopaul would have understood. The Court will not strike the declaration.

VI. PLAINTIFF'S MOTION TO STRIKE THE AKIRA YAMADA DECLARATION

Defendants submit the declaration of Akira Yamada dated May 13, 2004. Yamada purports to be a professional translator, and translates patent documents from English to Japanese, and Japanese to English. He submits an affidavit in which he avers that the translation of the Japanese reference as submitted by defendants is "to the best of [his] knowledge and belief, ... true." Plaintiff attacks as insufficient Yamada's affidavit, arguing it does not satisfy the requirements of Rules 604 or 901 of the Federal Rules, or Rule 56(e).

Defendants point out that it does not even need to submit an affidavit as foundation for the Japanese reference because it has been before the Court for years without objection. Defendant also addresses the merits, suggesting that Yamada is qualified, and the declaration satisfies the requirements of the federal rules. Defendant finally points out that the Reference has the seal of the Japanese Patent office and the signature of the certifying officer, and therefore needs no additional certification.

***21** The affidavit will not be stricken for failure to comply with Rule 604. Yamada does not purport to be the individual who created the translation, therefore, Rule 604 does not require exclusion of the affidavit. In addition, plaintiff did not choose to challenge the authenticity of the translation in the previous round of summary judgment motions. However, the Court will allow plaintiff to submit its own translation, should plaintiff desire to do so.

This case will be placed on the Court's next available trial calendar.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

ORDER

Based upon the foregoing, the submissions of the parties, the arguments of counsel and the entire file and proceedings herein, IT IS HEREBY ORDERED that:

1. Plaintiff's motion in limine [Docket No. 124] is GRANTED in part and DENIED in part as follows:

   a. The motion is DENIED insofar as it seeks to exclude the defense of invalidity based on the Japanese reference.

   b. The motion is DENIED insofar as it seeks to exclude the defense of invalidity based on Anchor's prior art of the Pinned Diamond Block product.

   c. The motion is GRANTED insofar as it seeks to exclude the defense of invalidity based on the Rockwood Classic block.

2. Plaintiff's motion for partial summary judgment of validity and enforceability [Docket No. 128] is DENIED.

3. Defendants' motion for summary judgment (re: the '363 family of patents) [Docket No. 133] is DENIED.

4. Defendants' motion for partial summary judgment (re: the '015 family of patents) [Docket No. 136] is DENIED.

5. Defendants' motion to strike [Docket No. 167] is DENIED;

6. Plaintiff's motion to strike the declaration of Akira Yamada [Docket No. 172] is DENIED.

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.