IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE (NO. 2) TO EXCLUDE ARGUMENT THAT A USED OR SPENT RELEASE LINER INFRINGES THE PATENT-IN-SUIT**

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Defendant Avery Dennison Corporation ("Avery") has separately moved for judgment on the pleadings as to 3M's claims for contributory infringement and inducement of infringement. For the reasons stated in Avery's motion, judgment should be granted to Avery on those claims. If 3M's claims for contributory and inducing infringement are dismissed, 3M should be precluded from arguing to the jury that a used or spent release liner infringes the patent-in-suit.

Throughout this case, 3M has only alleged that Avery's EZ Series Fleet Marking Film ("EZ Film") infringes the patent-in-suit, and that Avery infringes the '930 patent for making and selling the EZ Film. As made and sold by Avery, the EZ Film contains two parts: (1) a vinyl film with an adhesive on one side and a printable surface on the other side, and (2) an attached "release liner." The release liner is comprised of a paper layer and a layer consisting of two polymers – a polyethylene plastic with embedded polyurethane dots. Additionally, the polyethylene/polyurethane contains an embossed pattern forming surface ridges. According to 3M, the EZ Film infringes its '930 patent on "multiple embossed webs" because the release liner, as attached to the film, it has two embossed patterns. It is undisputed that 3M's patent only covers webs or liners with two or more embossed patterns – one pattern of "embossed … depressions," and a second "embossed" pattern of "lands and ridges." While Avery and 3M do not dispute that the liner part of the accused EZ film contains an "embossed" pattern of "lands and ridges," the parties dispute whether the liner contains the requisite first "embossed pattern … forming an array of depressions." Avery contends that no such embossed pattern of depressions exists on the liner portion of its EZ Film. 3M, on the other hand, points to the areas where the polyurethane dots embed into the polyethylene as the "embossed pattern … forming an array of depressions."

Although this dispute has been crystallized for resolution by the jury, 3M apparently now seeks to argue a "fall back" position to the jury. According to 3M's experts, if the EZ Film as made and sold by Avery – with a liner consisting of the polyurethane embedded into the polyethylene – does not contain the embossed array of depressions, then the release line still

contains the necessary embossed array of depressions after it is used. Specifically, when a purchaser of the EZ Film separates the two parts – *i.e.*, the release liner from the vinyl film, most of the polyurethane dots separate from the polyethylene and transfer to the adhesive side of the film. This leaves small holes in the polyethylene where the polyurethane had been embedded. 3M describes these small holes as the "embossed array of depressions" recited in its '930 patent.

Aside from whether these remaining holes can be considered an "embossed … array of depressions," as that phrase is used in 3M's patent, 3M's contention suffers an evidentiary defect. It is undisputed that Avery only makes and sells the accused EZ Film with the release liner attached to the film. The release liner is never removed from the film until ***after*** it is used, long after it leaves Avery's possession. While 3M may contend that Avery "contributes" to the creation of a spent or used release liner, or that Avery "induces" the creation of the spent release liner, it has not sufficiently pleaded these theories of liability in its complaint. Indeed, 3M's complaint only makes vague reference to claims of contributory and inducing infringement – references that fall well short of the pleading standard set by the Federal Circuit for such claims. Avery has filed a Motion for Judgment on the Pleadings as to any claims for contributory or inducement of infringement. If the Court grants Avery's motion for judgment on the pleadings (as it should under settled precedent), then 3M will have no legal theory under which it can hold Avery liable for the spent release liner. Without a legal theory of liability, 3M should be barred from suggesting or arguing to the jury that the spent or used release liner infringes the '930 patent.

Finally, 3M's infringement claims have not been based on any theory that Avery provides a device that is incorporated into another article to create an infringing product. In this case, 3M's infringement contentions focus only on what Avery sells, not on what happens during the course of use to modify the accused product. Under these circumstances, 3M cannot succeed on contributory or inducing infringement claims even if it had properly pled them. For this independent reason, 3M should not be permitted to argue that a spent or used release liner infringes its patent.

## II. INFRINGEMENT ARGUMENTS DIRECTED AT THE SPENT OR USED RELEASE LINER SHOULD BE BARRED IF THE COURT GRANTS AVERY'S CO-PENDING MOTION FOR JUDGMENT ON THE PLEADINGS

3M has accused Avery of directly infringing the patent-in-suit under 35 U.S.C. §271(a):

> Except as otherwise provided in this title, whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent.

The determination of direct infringement focuses on a comparison between the structure of the accused products (*i.e*. those products made, sold, offered for sale, used or imported) and the claims of the patent. *Johnson & Johnston Associates Inc. v. R.E. Service Co., Inc.*, 285 F.3d 1046, 1052 (Fed. Cir. 2002) ("the law of infringement compares the accused product with the claims as construed by the court."); *Cross Medical Products, Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) ("Literal infringement requires that each and every limitation set forth in a claim appear in the accused product."). Therefore, for purposes of direct infringement under 35 U.S.C. §271(a), the only relevant structure is that of the products made, sold, offered for sale, used or imported into the United States by Avery.

Throughout this case, 3M has argued that Avery is liable for infringing 3M's '930 patent based on the manufacture and sale of its EZ Film in the United States. When Avery sells its EZ Film, the liner is attached to the adhesive and film and the polyurethane dots (which 3M points to as an embossed array of depressions) are embedded into the polyethylene layer of the liner. Likewise, during manufacturing, the polyurethane dots remain embedded in the polyethylene of the liner. Avery does not make, sell, offer for sale, use, or import EZ Film products with the liner stripped from the adhesive, nor has 3M alleged this. Thus, the only evidence that is relevant to a determination of direct infringement is the structure of Avery's accused product with the liner attached to the adhesive, *i.e.* the structure of the product that Avery makes, uses, sells, and offers for sale.

As a "fall-back" position (in the event the jury does not buy 3M's contention that embedded polyurethane dots create an embossed array of depressions in the liner), 3M seeks to

argue that the spent or used release liner contains the requisite embossed array of depressions. In fact, several of 3M's experts have provided reports detailing the structure of a liner after it has been used – long after Avery makes or sells the accused EZ Film product.

3M should be precluded from making this "fall back" argument to the jury at trial. First, it is undisputed that the used liner 3M's experts have analyzed is not what Avery makes, uses, sells, or offers for sale. Avery does not make, use, sell, or offer for sale spent or used release liners. Indeed, it is undisputed that the liner is removed from the film only after the accused EZ Film product leaves Avery's control. Because Avery does not make, use, sell, offer for sale or import into the United States any products with the liner stripped, evidence regarding the structure of such products is irrelevant to the issue of direct infringement. 3M should not be allowed to suggest otherwise to the jury.

Nor should 3M be allowed to raise its "fall-back" argument under a theory of contributory or inducement of infringement. As explained in Avery's co-pending Motion for Judgment on the Pleadings, 3M has failed to plead claims for contributory infringement and inducement of infringement. While 3M's complaint makes vague references to those secondary theories of infringement liability, 3M's complaint lacks any of the factual allegations needed to state a cause of action. Accordingly, Avery expects that its Motion for Judgment on the Pleadings will be granted. Once granted, 3M will lack any conceivable legal theory for holding Avery liable based on the structure of used or spend release liners. Thus, 3M should not be allowed to argue that a spent or used release liner meets the limitations of any claim in the '930 patent. F.R.E. 401 ("'Relevant evidence,' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); *Dethmers Mfg. Co., Inc. v. Automatic Equipment Mfg. Co.*, 73 F. Supp.2d 997, 1006 (N.D. Iowa 1999) (excluding from evidence letter relevant only to dismissed trade secret claim).

## III. EVEN IF THE COURT DENIES AVERY'S MOTION FOR JUDGMENT ON THE PLEADINGS, 3M SHOULD NOT BE ALLOWED TO ARGUE THAT A SPENT OR USED RELEASE LINER INFRINGES ITS PATENT

Regardless of whether the Court grants Avery's Motion for Judgment on 3M's claims for contributory and inducement of infringement, 3M should not be permitted to make its "fall-back" argument regarding the used or spent release liner. Substantial authority exists holding that post-sale modifications to a product – like removing a release liner from a film – cannot support a claim for contributory infringement or inducement of infringement. Similarly, in *Elyria Nat. Rubber Heel Co. v. I.T.S. Rubber Co.*, 263 F. 979 (6th Cir. 1920), the Sixth Circuit considered a similar issue. There, the patent involved a heel attachment to a shoe. *Id.* at 981. The patentee argued that the defendant's products infringed the patent because the lower surface wore down with use and became identical to the patented heel attachment. *Id.* The Sixth Circuit concluded that there was no contributory infringement under these circumstances. *Id.* at 981-82. The Court reasoned that "[t]he patent relates to an article manufactured for sale in the patented form, and, normally, the monopoly must be judged by the situation at the time of sale." *Id.* at 981. In *Omark Industries, Inc. v. The Carlton Company*, 458 F.Supp. 449 (D. Or. 1978), *aff'd*, 652 F.2d 783 (9th Cir. 1980), the District Court of Oregon reached a similar conclusion. In rejecting the patentee's claim for contributory infringement, the court stated that "[t]he manufacture of an article which as a result of wear becomes identical with the patented article does not necessarily constitute infringement." *Id.* at 453-54. *See also Cadwell v. Firestone Tire & Rubber Co.*, 13 F.3d 483, 488 (E.D.N.Y. 1926) (rejecting a similar theory of secondary infringement).

In light of this authority, allowing 3M to proceed with novel contributory and inducement of infringement theories at this late a stage in the litigation would unduly prejudice Avery. 3M did not adequately plead a theory of contributory infringement or inducement of infringement. Still further, 3M did not disclose such a theory of contributory infringement or inducement of infringement in its Claim and Infringement Contentions, in its responses to Avery's Interrogatory Nos. 3 and 14 regarding 3M's infringement contentions, or in its expert reports. Accordingly, Avery did not take discovery on any such theory of contributory infringement and inducement of

infringement. Thus, 3M should not be allowed to argue that Avery can be liable under undisclosed theories of contributory infringement and inducement of infringement based on the used or spent release liner. Fed. R. Civ. P. 37(c).

## IV. CONCLUSION

For the foregoing reasons, Avery respectfully requests that the Court exclude, in limine, any argument by 3M at trial that a used or spent release liner infringes any claim of the '930 patent.

DATED: November 14, 2005

Respectfully submitted,

/S/ Lawrence M. Hadley

David P. Pearson
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400 - Telephone
(612) 604-6892 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-1260 - Facsimile

## CERTIFICATE OF SERVICE

On November 14, 2005, I served a copy of the within document described as **AVERY DENNISON CORPORATION'S MEMORANDUM IN SUPPORT OF MOTION IN LIMINE (NO. 2) TO EXCLUDE ARGUMENT THAT A USED OR SPENT RELEASE LINER INFRINGES THE PATENT-IN-SUIT** by transmitting via United States District Court for the District of Minnesota Electronic Case Filing Program the document listed above by uploading the electronic files for each of the above listed document on this date, addressed as set forth below.

Jonathan E. Singer
John C. Adkisson
Fish & Richardson, P.C.
60 South Sixth Street, Suite 3300
Minneapolis, Minnesota 55402

Juanita R. Books
Fish & Richardson, P.C.
12390 El Camino Real
San Diego, California 92130-2081

/S/ Lawrence M. Hadley
Lawrence M. Hadley