IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>AVERY-DENNISON CORPORATION,<br><br>Defendant. | Civil Action No. 01-CV-1781 (JRT/FLN) |

**AVERY DENNISON CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO 3M'S MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE STRICKEN FROM AVERY'S SUPPLEMENTAL EXPERT REPORT**

## I. INTRODUCTION

3M's motion to exclude *all* evidence stricken from Avery's expert report is based upon a fundamental misunderstanding about the effect of an order striking portions of an expert report for untimely disclosure. According to 3M, such an order completely erases the stricken evidence, as if the evidence never did and still does not exist, either in the courtroom or outside it. This is not the law, nor could it be.

Avery of course understands that the Court's order prevents it from introducing the stricken evidence through its expert *in support of its claim of patent invalidity*. Avery is not making any attempt to circumvent that order. However, this evidence is properly admissible in support of Avery's *defense to 3M's claim of willful infringement*. That inquiry, which focuses on Avery's good-faith belief that it did not infringe 3M's patent

and that 3M's patent is invalid, necessarily turns upon the facts that formed the basis for Avery's beliefs. In this case, Avery relied, in part, upon certain prior art in concluding that the 3M patent is invalid. These same prior art references were subsequently stricken from the report of Avery's expert. But that later order, striking the prior art references from an expert report, cannot negate *nunc pro tunc* Avery's independent reliance upon that same evidence in determining that 3M's patent was invalid, and that therefore Avery could continue to manufacture its product in good faith. These prior art references were part of Avery's "intent" and "state-of-mind" as it assessed the merits of its infringement and invalidity defenses. In short, Avery is entitled to present all the evidence upon which it relied in coming to its good-faith belief that it did not infringe a valid 3M patent, regardless of whether such evidence is admissible for other purposes.

Furthermore, the striking of factual evidence from an expert report precludes an expert from relying upon it, but does not prevent it from being introduced as non-expert evidence. Accordingly, Avery is entitled to present certain factual evidence, such as prior art patents and its photographs of 3M's reflective sheeting, through its fact witnesses in support of its claim of patent invalidity, even though that evidence was stricken from the report of Avery's expert.

Avery requests that the Court deny 3M's motion to the extent it seeks to prevent Avery from presenting evidence in support of its defense to 3M's claim of willfulness.

## II. FACTUAL BACKGROUND

### A. Procedural History

At the commencement of this patent infringement lawsuit, 3M claimed "willful" infringement against Avery. Avery defended this claim with evidence of its reliance upon the advice of counsel indicating non-infringement and invalidity, among other things. 3M conducted full discovery about Avery's advice-of-counsel defense. 3M deposed Mr. Tritt, the patent attorney who rendered a non-infringement opinion to Avery both before and after this lawsuit commenced, and Mr. John Cornell, Avery's in-house patent counsel who received the legal advice from Mr. Tritt.

After the close of discovery, Avery brought a motion for summary judgment. The Trial Court (Doty, J.) granted summary judgment in favor of Avery. 3M appealed this decision to the Federal Circuit, which in December 2003 overturned the Trial Court's grant of summary judgment in favor of Avery and re-interpreted the claims of the '930 patent. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003). This Court then considered the proper construction of disputed claims following remand from the Federal Circuit, and the Court issued its decision construing disputed claims on June 20, 2005. *See* "Memorandum and Opinion and Order Construing Disputed Claims" (Doc. No. 181).

### B. Avery Received Legal Advice Based On The Wood And McKenzie Prior Art Defenses Before They Were Stricken From Dr. McHugh's Report.

Throughout the course of this litigation, Avery's in-house counsel, Mr. John Cornell, continually monitored the litigation and the legal and factual bases for Avery's

defense to 3M's patent infringement claims. (Cornell Aff. at ¶ 4.) Mr. Cornell is personally familiar with the claims and issues raised by 3M in this litigation because he has been involved with the case since its commencement. (*Id.* at ¶ 3.) Throughout this litigation Mr. Cornell formed his own professional opinions concerning the strengths and the merits of 3M's claims and Avery's defenses based on his own extensive analysis of such claims and defenses, as well as his analysis of all the evidence in the case prior to and subsequent to the issuance of the Federal Circuit's decision. (*Id.* at ¶ 4.) Based on his personal analysis, Mr. Cornell has rendered legal opinions to Avery, and Avery's management has relied upon those opinions to determine whether Avery has a good faith basis to continue to manufacture and sell the alleged infringing product. (*Id.* at ¶ 4.)

Mr. Cornell formed an opinion that Avery has a valid, good faith defense to this action. (*Id.* at ¶¶ 5-6.). Mr. Cornell has advised Avery the '930 patent is invalid for a variety of reasons, including his legal opinion that the '930 patent was anticipated and made obvious by the Wood and McKenzie prior art and the reflective sheets made according to these patents. (*Id.* at ¶ 5(c)). These facts were part of the constellation of factors that Mr. Cornell considered and relied on in formulating his legal opinions of the merits of Avery's defenses.

Following the issuance of the Federal Circuit's decision and Judge Tunheim's decision regarding claim construction, Mr. Cornell reaffirmed his invalidity opinion. Mr. Cornell reassessed the merits of Avery's defenses to 3M's claims in early July 2005, and following issuance of this Court's final order of June 20, 2005 construing disputed claim terms. (Cornell Aff. at ¶ 4.) Mr. Cornell rendered legal advice to Avery in late

September or early October 2005 regarding the good faith, meritorious nature of Avery's noninfringement and invalidity defenses. (*Id.*) He continues to believe that prior art renders the '930 patent invalid and that, consequently, Avery has a legal right to sell the alleged infringing product because 3M does not have a legal, valid patent. (*Id.* at ¶¶ 4, 5.)

### C. The Court's October 20, 2005 Order Striking The Wood And McKenzie References From Dr. McHugh's Report Was Issued After Avery Received Legal Advice Based On These References.

After the Federal Court's decision in this case, Avery sought the Court's permission to amend and supplement its expert's report to account for the District Court and Federal Circuit's new interpretations of the '930 patent. This permission was ultimately granted by the Court. (Doc. No. 172.) On July 11, 2005 Avery served upon 3M the supplemental and revised report of its expert, Dr. McHugh, regarding the invalidity of the '930 patent. Dr. McHugh's supplemental report largely repeated both his initial report and the unsigned draft that Avery provided to 3M in August 2004. In fact, Dr. McHugh's final supplemental invalidity report differs from the August 2004 draft report in just two minor ways. First, Dr. McHugh cited two additional reflective web patents—the Wood and McKenzie patents (both belonging to 3M)—in support of his already-expressed opinion that 3M's infringement position regarding embedding broadens its '930 patent to the point of invalidity. Second, as a part of his analysis of infringement and invalidity issues, Dr. McHugh referenced photographs of 3M's reflective materials that Avery took years ago—before this litigation even commenced.

3M moved to strike these two additional patent references and prior photographs from Dr. McHugh's report, alleging that they went beyond the Court's order allowing

supplementation. The Court granted that motion in an Order issued October 20, 2005, and those references were stricken from Dr. McHugh's report. (Doc. Nos. 201 & 211.) The Order stated that the cited portions of Dr. McHugh's report were "stricken;" the orders did not state that the stricken evidence was inadmissible for any purpose whatsoever at trial. (*Id.*) This Order was issued after Mr. Cornell had conducted various analyses of Avery's defenses to 3M's claims and after he had given legal advice to Avery regarding the meritorious nature of these defenses.

## III. ARGUMENT

Avery does not dispute that the Court struck certain evidence—consisting of the Wood and McKenzie prior art references and Avery's prior testing of the 3M product—from Dr. McHugh's expert report because of the timing of its disclosure. That stricken evidence will not be presented by Dr. McHugh in his testimony that 3M's patent is invalid.

However, before the Order striking this evidence was issued, Avery and its legal counsel did rely upon that same prior art evidence in evaluating the merits of is defenses and in deciding to continue to manufacture the allegedly infringing product. In his assessment of the merits of Avery's invalidity defense following issuance of the Federal Circuit's decision in this case, Mr. Cornell considered the Wood and McKenzie prior art references, as well as other prior art. Avery and Mr. Cornell determined that Avery's invalidity defense was still meritorious and that the '930 patent was invalid. Because 3M is now claiming that Avery willfully infringed the '930 patent after the Federal Circuit's decision, Avery is entitled to explain and offer testimony about the basis for its good-

faith belief about the invalidity of the '930 patent from the time that decision was issued until the present. The fact that some of the Wood and McKenzie prior art was stricken from an expert report *after* Avery and its in-house counsel had evaluated this same prior art and based certain opinions and actions on it, does not and cannot retroactively erase these facts from the minds of Avery's managers and its legal counsel. Therefore, this evidence is quite properly part of the willfulness inquiry.

### A. Because Avery Relied Upon The Woods And McKenzie References, This Prior Art Must Be Admitted In Connection With Avery's Defense To 3M's Willfulness Claim.

3M claims that Avery willfully infringed its patent after the Federal Circuit's decision in this case. This charge of "willfulness" requires an inquiry into Avery's "state of mind," involving questions of "intent, belief and credibility." *SRI Int'l v. Advanced Tech. Labs.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997); *Pall Corp. v. Micron Separations, Inc.*, 66 F.3d 1211, 1221 (Fed. Cir. 1995). "Whether infringement is 'willful' is by definition a question of the infringer's intent." *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992) (quoting *Gustafson, Inc. v. Intersystems Indus. Prods.*, 897 F.2d 508, 510-11 (Fed. Cir. 1990)). The willfulness inquiry involves consideration of the "totality of circumstances" surrounding the alleged infringer's decision to continue its alleged infringing conduct. *BIC Leisure Prods., Inc. v. Windsurfing Int'l., Inc.*, 1 F.3d 1214, 1222 (Fed. Cir. 1993); *Graco v. Brinks Mfg. Co.*, 60 F.3d 785, 792-93 (Fed. Cir. 1995).

Avery's "state-of-mind" and its "belief" regarding the meritorious nature of its defenses to 3M's patent infringement claims included Avery's assessment of the Woods

and McKenzie prior art as well as other prior art that was relevant to Avery's invalidity defense. *See* Cornell Aff. at ¶ 5. Avery analyzed and reasonably relied upon prior art references in Dr. McHugh's revised report in forming its belief that it had a good faith defense to infringement. *See id*. These facts are part of the "totality of circumstances" inquiry that must be considered by the finder of fact in assessing Avery's decision to continue its manufacture of its alleged infringing product. This is true regardless of whether those portions of Dr. McHugh's report were subsequently ruled inadmissible to prove 3M's patent was invalid because of what was viewed as untimely disclosure. Because Avery reasonably believed that it had a valid defense to 3M's patent claim based in part on the Wood and McKenzie prior art references, these facts are relevant and admissible *for the purpose of determining whether any alleged infringement was willful*, even if those facts are not admissible for purposes of invalidating 3M's patent. *See Pioneer Hi-Bred Int'l, Inc. v. Ottawa Plant Food, Inc.*, 219 F.R.D. 135, 146-47 (N.D. Iowa 2003) (holding legal opinion admissible for purposes of defense to willfulness claim, though not admissible for purposes of showing non-infringement); *see also Anchor Wall Sys. v. Rockwood Retaining Walls, Inc.*, No. Civ. 99-1356 (JRT/FLN), 2004 WL 2066823 (D. Minn. Sept. 7, 2004) at *4. For instance, in *Anchor Wall Systems*, the Court struck an expert affidavit relating a prior art reference upon which the defendants relied in arguing patent invalidity. *Id.* The defendants then submitted a factual affidavit regarding that same reference, and the plaintiff made a motion *in limine* to exclude it from evidence. *Id.* Noting that "the affidavit now under consideration is not an expert affidavit, but merely a fact affidavit," this Court (which received the case after remand

from the Federal Circuit) ruled that the factual affidavit could be admitted in evidence. *Id.* In the same way, evidence excluded from Dr. McHugh's expert report is not erased from the record; rather, it still must be admitted when offered for other purposes such as a defense to a claim of willfulness.[1]

3M cannot create an artificial reality by purporting to "strike" facts which were in the consciousness of Avery's in-house counsel and which were a part of Avery's "state-of-mind" when Avery evaluated its invalidity defense in this lawsuit. The Court's after-the-fact decision excluding these prior art references from Dr. McHugh's decision cannot be applied retroactively to expunge these facts from the totality of facts considered by Avery and its in-house counsel. Indeed, the Federal Circuit has held that "[i]n making a determination of willfulness, the court is also *required* to consider mitigating or ameliorating factors." *Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1530 (Fed. Cir. 1993) (emphasis added). Avery's reliance upon the evidence later stricken from Dr. McHugh's report is exactly the type of "mitigating or ameliorating factor" that must be considered in connection with 3M's willfulness claim; that evidence simply cannot be excluded.

---

[1] The Wood and McKenzie references were considered by Avery and were part of its analysis of the merit of its invalidity defense long before this Court struck them from Dr. McHugh's report, and thus the decision in *Anchor Wall Systems* is particularly apt here.

**B. Even If The Court Determines That Avery's Counsel Was Incorrect In His Opinion That The '930 Patent Is Invalid Based In Part On Material Later Stricken From An Expert Report, That Legal Opinion And Its Grounds Still Must Be Admitted In Evidence.**

The fallacy of 3M's argument is highlighted by the fact that it was Mr. John Cornell, Avery's in-house patent attorney, who provided Avery with his ongoing legal opinion that the '930 patent was invalid based on extensive evidence that included the Wood and McKenzie patents, and resulting reflective sheets. 3M is essentially arguing that even though Mr. Cornell independently relied upon evidence that was later stricken from an expert report, his opinion that the '930 patent was invalid was wrong and therefore cannot be admitted.

3M's argument confuses and distorts the relevant legal issues. It is well established that whether Mr. Cornell's opinion was incorrect or whether the prior art he considered in assessing invalidity are inadmissible at trial are irrelevant. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). The issue is not whether the Wood and McKenzie references appear in Dr. McHugh's revised report or in any expert report, or whether these prior art references render the '930 patent invalid. The issue is whether Mr. Cornell formed a competent legal opinion which included these prior art references and whether Avery reasonably relied upon that opinion in assessing whether to continue its defense of this lawsuit and the manufacture of the alleged infringing product. Indeed, the Federal Circuit has recognized that a legal opinion should rarely be excluded from an alleged infringer's willfulness defense based on alleged deficiencies in that opinion:

> While an opinion of counsel letter is an important factor in determining the willfulness of infringement, its importance does not depend upon its legal

> correctness. Indeed, the question arises only where counsel was wrong. Rather counsel's opinion must be thorough enough, as combined with other factors, to instill a belief in the infringer that a court might reasonably hold the patent is invalid, not infringed, or unenforceable.

*Id.*; *accord Graco v. Binks Mfg. Co.*, 60 F.3d 785, 793 (Fed. Cir. 1995) ("Whether or not an opinion was 'legally' correct is not the proper focus."). Thus, the appropriate inquiry centers on whether the legal opinion rendered to Avery was "thorough enough" for Avery to rely upon in good faith, not whether the prior art references which formed the basis for the opinion can be offered for, or actually prove, invalidity. *Ortho*, 959 F.2d at 944. Therefore, all the bases for Mr. Cornell's legal opinion—including the Wood and McKenzie references later stricken from Dr. McHugh's report—are admissible in evidence. Certainly, 3M should not be allowed to prevent Mr. Cornell from testifying about the full basis for his opinion, and then challenge that opinion as not being "thorough enough" to support an advice-of-counsel defense to willfulness.

Thus, even if prior art references upon which Mr. Cornell's legal advice was based cannot be considered in evaluating the invalidity of the '930 patent at trial, these facts are, nevertheless, properly a part of Avery's advice-of-counsel defense. They are necessarily relevant to the question of whether Avery had a good faith basis for believing that its defenses to 3M's infringement claim were valid. This evidence cannot be excluded when offered for this purpose.

### C. Evidence Of Avery's Photographs Of 3M's Reflective Sheeting Is Admissible As Non-Expert Evidence, Even Though It Was Stricken From Dr. McHugh's Report.

Besides being admissible as part of Avery's defense to 3M's willfulness claim, evidence of Avery's photographs of 3M's reflective sheeting is also admissible as non-expert evidence in support of Avery's claim that the '930 patent is invalid. It is well established that evidence stricken from an expert report can still be admitted as factual evidence from the appropriate fact witnesses. As discussed above, in the *Anchor Wall Systems* case this Court similarly struck an expert affidavit relating a prior art reference, but then allowed in evidence a subsequent factual affidavit regarding that same reference, noting that "the affidavit now under consideration is not an expert affidavit, but merely a fact affidavit." 2004 WL 2066823 (D. Minn. Sept. 7, 2004) at *4; *see also Paradigm Sales, Inc. v. Weber Marking Sys., Inc.*, 880 F. Supp. 1247, 1251 (N.D. Ind. 1995) (holding that where exhibit is stricken for late disclosure, witnesses can still testify to underlying facts).

In the same way, Dr. McHugh is prevented from relying upon Avery's photographs of 3M's reflective sheeting in his testimony, but Avery is not precluded from presenting that evidence through appropriate fact witnesses.

## IV. CONCLUSION

For all the reasons stated herein, Avery respectfully requests that the Court deny 3M's Motion to the extent it seeks to prevent Avery from presenting evidence in support of its defense to 3M's claim of willfulness.

Dated: November 21, 2005

Respectfully submitted,

/S/ David P. Pearson
David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 – Telephone
(612) 347-0600 – Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 – Telephone
(216) 621-1234 – Facsimile

2546036v2