IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (DSD/FLN) |
| vs. | : | |
| AVERY DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S OPPOSITION TO 3M'S MOTION IN LIMINE TO EXCLUDE ALL EVIDENCE AND ARGUMENT REGARDING INVENTORSHIP**

Avery Dennison Corporation ("Avery") hereby opposes 3M Innovative Properties Company and Minnesota Mining and Manufacturing's ("3M") Motion *in Limine* to Exclude All Evidence and Argument Regarding Inventorship ("Motion").

## I. INTRODUCTION

3M remarkably argues that regardless of whether the patent is invalid under §102(f), Avery should be precluded from presenting its §102(f) defense because Avery cannot prove that 3M may be unable to correct inventorship under 35 U.S.C. §256. By this motion, 3M invites reversible error. In a virtually identical case, the Federal Circuit reversed a district court's decision to exclude evidence of improperly named inventors where the district court had acted for the very reasons advocated by 3M in its Motion. In reversing the district court, the Federal Circuit held that it is error for a district court to preclude a defendant from presenting a §102(f) defense to the jury simply because inventorship may later be corrected under section 256. According to the Federal Circuit, the issue of invalidity under §102(f) must be presented to the jury. In the event the jury finds the patent invalid, a patentee may then proceed with a noticed hearing under section 256. While Avery agrees that the issue of "deceptive intent" in omitting a named inventor is a question for the Court, not the jury, in a section 256 proceeding, the underlying issue of proper inventorship of the '930 patent must go to the jury irrespective of 3M's untimely and conclusory contentions regarding 3M's ultimate ability to make a post-trial correction.

## II. ARGUMENT

### A. Federal Circuit Authority Dictates the Denial of 3M's Motion.

3M asks that the Court preclude Avery from presenting to the jury any evidence or argument regarding Avery's defense of invalidity under 35 U.S.C. §102(f), because according to 3M, Avery cannot prove that the patent is uncorrectable under 35 U.S.C. §256. In *Pannu v. Iolab Corporation*, 155 F.3d 1344 (Fed. Cir. 1998), the Federal Circuit reversed a district court's decision to grant the exact relief 3M seeks here. In *Pannu*, the

district court did allow the issue of improper inventorship under §102(f) go to they jury, "[b]ecause Iolab had not submitted any evidence suggesting Pannu's bad faith, [and] the court ruled that the patent would be correctable under 35 U.S.C. §256 (1994) and thus could not be invalidated for improper inventorship." *Id*. at 1347. In reversing the district court, the Federal Circuit stated that "[w]e agree with Iolab that the district court erred by not sending the inventorship issue to the jury." *Id.* at 1348. The Federal Circuit then explained that "[w]hen a party asserts invalidity under §102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor…***[A] patent with an improper inventorship does not avoid invalidation simply because it might be corrected under section 256***." *Id.* at 1350 (emphasis added). Although 3M cites *Pannu* in its moving papers, it tellingly omits any reference to the fact that the Federal Circuit's holding that section 102(f) invalidity defenses must go to the jury regardless of any potential for correction under section 256.[1] For this reason alone, 3M's motion must be denied.

Moreover, if Avery is able to prove invalidity under §102(f), and 3M subsequently seeks to correct the inventorship of the patent to add Dr. Sher as an inventor, additional grounds for invalidity and unenforceability will arise. "If the patent is corrected under section 256, Iolab may of course reassert its defense based on the theory that the proper inventive entity failed to disclose its best mode. This is because the jury's finding on the best mode issue was predicated on Pannu being the sole inventor." *Pannu*, 155 F.3d at 1351, n.5. 3M's effort to forego the procedure of actually correcting the inventorship

---

[1] 3M also cites *Cargil, Inc. v. Sears Petroleum & Transp. Corp.*, 2005 WL 2043996 (N.D.N.Y. Aug. 25, 2005) as "suggest[ing] that, when there is no evidence of deceptive intent, the issue of inventorship need not be presented to the jury. *Cargil* allowed the issue of inventorship to be put to the jury despite the absence of evidence on deceptive intent.

under §256 by having this Court preemptively bar Avery's section 102(f) incorrect inventorship defense would deprive Avery of its ability to present additional best mode and inequitable conduct defenses that will arise if the jury agrees that Dr. Sher is an inventor. Under *Pannu*, 3M cannot block these defenses by avoiding the hearing under section 256.

**B. Avery Has Ample Evidence That The Patent Is Invalid Under 35 U.S.C. §102(f)**

Motions *in limine* are not the proper forum for challenging the sufficiency of evidence on affirmative defenses. 3M could have sought summary adjudication on Avery's section 102(f) defense, but did not. Thus, 3M cannot now complain that Avery lacks sufficient evidence to present its incorrect inventorship defense at trial.

Even if this Court were inclined to turn motions *in limine* into a back-door motion for summary adjudication, 3M could not prevail in proving that Avery lacks sufficient evidence to support its section 102(f) defense. Contrary to 3M's dismissive characterization of Avery's incorrect inventorship defense, the evidence that 3M failed to name all proper inventors is overwhelming. It is undisputed that the height of the embossed "ridges" over the "lands" in the 3 to 45 micron range is a critical element of each claim. In fact, in an Examiner's Statement of Reasons for Allowance, the Patent Examiner expressly stated that that Patent Office allowed the '930 patent ***only because*** the prior art did not show embossed ridges in the recited 3-45 micron height range. (Hadley Declaration, Ex. 1, p. 2, ¶ 2) When asked about the claimed ridge heights, Dr. Calhoun, the named inventor, testified that he did no work to determine the optimal range claimed in the patent. Instead, Dr. Calhoun suspected that another 3M employee did all work relating to ridge heights. Dr. Sher confirmed this in his deposition, and the

laboratory notebooks of both employees verify that Dr. Sher identified the ridge heights claimed in the '930 patent. (Hadley Declaration, Ex. 2, p. 38, l. 21 – p. 40, l. 3)

"Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent." *Pannu*, 155 F.3d at 1351. "All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." *Id.*

It is beyond reasonable dispute that Dr. Sher should have been named as a co-inventor to the '930 patent, because he contributed not only a element of each claim, but an element that formed the only allegedly novel feature of the patent.[2] Thus, if 3M had sought summary adjudication on Avery's section 102(f) defense, Avery's evidence would have been more than sufficient to raise a triable issue of fact.

### C. Evidence of Deceptive Intent Lacks Any Relevance to Avery's Improper Inventorship Defense

3M argues that Avery lacks evidence of "deceptive intent" needed to oppose a motion to correct inventorship under 35 U.S.C § 256. If 3M brings a motion to correct inventorship, Avery will present evidence that 3M is barred from doing so. But neither

---

[2] As it turns out, the claimed ridge heights were actually very well known in the prior art. Indeed, Dr. Sher maintained a file of prior art, which included patents disclosing embossed ridges within the range identified in the '930 patent for air egress. But neither Dr. Sher nor anyone else at 3M disclosed these patents to the Patent & Trademark Office as part of the application for the '930 patent.

this *in limine* motion nor this trial is the appropriate proceeding for litigating whether 3M can correct inventorship of the '930 patent. Avery agrees that whether 3M can correct the named inventors under section 256 is not a proper issue for the jury. For that reason, Avery has filed its own motion *in limine* to exclude 3M from offering any evidence or argument that improper inventorship can be corrected under section 256. And Avery will not argue to the jury that inventorship cannot be corrected based on deceptive intent. Section 256 ought not be mentioned at all by anyone at this trial.

## III. CONCLUSION

For the foregoing reasons, Avery respectfully requests that 3M's Motion to Exclude All Evidence and Argument Regarding Inventorship be denied.

DATED: November 21, 2004

Respectfully submitted,

s/David P. Pearson

David P. Pearson
WINTHROP & WEINSTINE, P.A.
Suite 3500
225 South Sixth Street
Minneapolis, Minnesota 55402
(612) 604-6400 - Telephone
(612) 604-6800 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
Armand F. Ayazi
HENNIGAN, BENNETT & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO, BOISSELLE & SKLAR, P.L.L.
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-6155 - Facsimile

2553693v1