IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (DSD/FLN) |
| vs. | : | |
| AVERY DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S OPPOSITION TO 3M'S MOTION IN LIMINE TO EXCLUDE EVIDENCE OF AVERY'S '049 METHOD PATENT**

# I. INTRODUCTION

The Court should permit Avery to introduce its U.S. Patent No. 6,630,049 at trial (along with several related patent applications). Evidence of Avery's patent and patent applications on its accused EZ Film are highly relevant to two issues – 3M's claim that Avery willfully infringes the '930 patent and 3M's claim that Avery infringes under the doctrine of equivalents.

First, Avery's '049 and related patent applications are relevant and admissible to rebut 3M's charge that Avery willfully infringes the '930 patent. According to the Federal Circuit, willful patent infringement involves a consideration of the totality of the circumstances, including the defendant's intent. An important consideration in determining a defendants' intent is whether the defendant reasonably believed its activities fell within its own patent claims. Another critical factor is whether the defendant attempted to design around the claims of the asserted patent. Avery's patent and patent applications on the method of making the accused EZ Film product and the structure of that product provides relevant, admissible evidenced that Avery respected what it understood was 3M's patented technology, and developed its own. It also shows that Avery's design-around efforts were sufficiently different from 3M's to be patentably novel.

3M's motion argues that Avery's '049 patent lacks any relevance because it only goes to the "method" of making the accused EZ Film product, and 3M no longer asserts any method claims. The first point is wrong; the second point is legally irrelevant. 3M asserts that Avery is liable for willful infringement from the inception of this case. Moreover, "willfulness" is analyzed by examining intent and conduct from the commencement of alleged infringing activities. From the inception of this case, 3M asserted infringement of both the product *and* method claims of the '930 patent, and

alleged that Avery willfully infringed both sets of claims. While this Court granted judgment in Avery's favor on the method claims (which the Federal Circuit upheld), Avery's method for making the accused EZ Film product remains part of the totality of the circumstances relevant to Avery's intent to willfully infringe. Avery must be allowed to offer evidence that it improved on both the product and method claimed in 3M's '930 patent in its own distinct way – a way which does not infringe, and cannot constitute willful infringement.

Second, Avery's patented method of making its accused EZ Film product is relevant to 3M's infringement claims under the doctrine of equivalents. One test for infringement under the doctrine of equivalents is whether the accused product performs substantially the same function in substantially the same way to achieve substantially the same result. Avery will argue that the way by which Avery's EZ Film achieves the functions performed by the '930 patent differs substantially from the product described in the patent. Embedded, hardened, polyurethane ink dots (Avery's product) provide slidability and repositionability characteristics differently from depressions filled with a glass bead/adhesive slurry (3M's '930 patent). Indeed, the U.S. Patent & Trademark Office found Avery's "way" of achieving that product feature patentably distinct over the methods described in 3M's '930 patent. By asserting infringement under the doctrine of equivalents, 3M has injected these different methods of making the accused products squarely into this case. Thus, evidence that Avery has patented its own way is highly relevant and admissible.

## II. ARGUMENT

### A. Avery's '049 Patent and Related Patent Applications Are Highly Relevant to Avery's Defense to Willful Infringement

3M contends in its motion *in limine* that Avery's '049 patent is irrelevant, because the '049 patent has method claims and 3M is asserting claims of the '930 patent which are product claims. 3M therefore contends that the '049 patent cannot be evidence of non-infringement of 3M's product claims by Avery. Avery does not contend that the '049 patent is evidence of non-infringement by Avery, but Avery does contend that the '049 patent is relevant to Avery's defense to 3M's willful infringement claims.

Whether Avery is guilty of willful infringement is a *significant* issue in this case. If 3M can prove that Avery's infringement was done willfully, then Avery may be subject to treble damages pursuant to 35 U.S.C. § 284 and Avery may have to pay 3M's attorneys' fees pursuant to 35 U.S.C. § 285. When considering the issue of willful infringement, courts must evaluate the totality of the surrounding circumstances. *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992). "Whether infringement is 'willful' is by definition a question of the infringer's intent." *Id.* Thus, when considering the totality of the circumstances and when considering the accused infringer's intent, a court must be able to consider all of the relevant evidence and argument involving all circumstances which will demonstrate that the accused infringer did not have a willful intent to infringe the patent.

In considering a defendant's lack of intent to willfully infringe, evidence of the defendant's own product and method patents relating to its accused products are highly relevant and admissible. For example, evidence demonstrating a lack of intent to willfully infringe includes a defendant's reasonable belief that its activities fall within its own patent claims. *Id.* (citing *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 867

(Fed. Cir. 1986) ("defendant's reasonable belief that its activities fell within its own patent claims, although irrelevant in an infringement analysis, is a factor in determining intent with respect to willful infringement."). Likewise, evidence that the accused infringer attempted to design around the patent-in-suit demonstrates a lack of intent needed to support willful infringement. Specifically, attempting to design around a patent is not copying and therefore should not result in a finding of willful patent infringement. *Westavco Corp. v. International Paper Co.*, 991 F.2d 735, 745 (Fed. Cir. 1993) ("Westavco did not copy IPC's product, but instead attempted to design around IPC's product. . . . Although this attempt to design around IPC's product proved unsuccessful, as evidenced by the court's finding of infringement, Westavco should not be found to have willfully infringed based on its attempt."). Indeed, the act of designing around is encouraged. *State Industries, Inc. v. A.O. Smith Corp.*, 751 F.2d 1226, 1235-36 (Fed. Cir. 1985) ("It [designing around] should not be discouraged by punitive damage awards except in cases where conduct is so obnoxious as clearly to call for them.").

### 1. Avery Reasonably Believes that Its Accused Activities Fall Within the Claims of the '049 Patent

At trial, Avery is entitled to show that it did not act with willful intent, because Avery believes that its methods used to make the EZ Film fall within the method claims of the '049 patent – entitled "Adhesive Articles with Improved Air Egress and Methods of Making the Same." While the '049 patent contains only method claims, the patent is still relevant to Avery's intent with respect to willful patent infringement from the inception of this case.

3M blithely tells this Court it is not asserting the '930 patent method claims against Avery without telling this Court it previously asserted those claims against Avery and there has been an adjudication in Avery's favor that Avery does not infringe those

claims. Summary judgment of non-infringement of the method claims was entered by Judge Doty, and that portion of Judge Doty's decision was undisturbed by the Federal Circuit. Because 3M contended that Avery willfully infringed *all* of the claims of the '930 patent, Avery's intent regarding those method claims remains highly relevant to the "totality of the circumstances" test for willful infringement. It is also relevant because Avery's EZ Film product is made using the method which 3M originally had accused of infringement, but which has since been held to be non-infringing. In other words, Avery must be allowed to tell the jury that 3M's willful infringement claims included both the product and related method claims, and that Avery did not act willfully with respect to the method claims because Avery reasonably believed that its method was covered by its own '049 patent. *See Ortho Pharm.*, 959 F.2d at 944; *King Instrument*, 767 F.2d at 867.

**2. Avery's '049 Patent Is Evidence that Avery's Intent was to Design Around 3M's '930 Patent**

The '049 patent also demonstrates that Avery believed that its accused method for making its EZ Film product is a design around to the '930 patent. There are clear differences between Avery's method, as disclosed and claimed in the '049 patent, and the claims of 3M's '930 patent (as found by the Court). These differences demonstrate that: (1) Avery *believed* that it was not copying 3M's design; (2) Avery *believed* that it had designed around 3M's claims; and (3) Avery *believed* its method was so different from 3M's and knew that it was entitled to its own patent protection. Avery's intent with respect to its design around of 3M's method is also relevant to Avery's intent with respect to the EZ Film product, because the accused EZ Film product is made using this method.

In short, Avery's attempt to design around 3M's patented method claims in the '930 patent remains an integral part of the totality of the circumstances, relevant to

Avery's intent, irrespective of whether 3M currently accused Avery of infringing the method claims. *Westavco*, 991 F.2d at 745. Thus, all evidence of the design around, including the fact that Avery was able to obtain its own patent on the improvement to 3M's method, has relevance to Avery's alleged willful infringement.

### 3. Avery's Currently-Pending Patent Applications Related to the '049 Patent Are Also Part of the Totality of the Circumstances and Relevant to the Question of Avery's Intent

Avery has four currently-pending patent applications, which are related to the '049 patent. These applications have all been published and are publicly available. Each application contains an exemplary product claim which covers Avery's EZ Film product:

| Avery Patent Application | Exemplary Product Claim |
|---|---|
| 1. **U.S. Published Application No. 2001/0031353**, filed on December 21, 2000, published on October 18, 2001 (this is a non-provisional application from provisional application no. 60/199,244, the same provisional application for the '049 patent). | **Claim 1** – An adhesive article comprising:<br><br>a facestock having a front surface and a back surface;<br><br>a continuous layer of adhesive having an upper surface and a lower surface and end edges, wherein the upper surface of the adhesive is adhered to the back surface of the facestock; and<br><br>a pattern of non-adhesive material forms embedded into the upper surface of the adhesive layer, each of said non-adhesive material forms having a top surface, wherein the top surfaces of the non-adhesive material forms are even with or below the plane of the upper surface of the adhesive layer. |

| Avery Patent Application | Exemplary Product Claim |
|---|---|
| 2. **U.S. Published Application No. 2004/0213993**, filed on May 25, 2004, published on October 28, 2004 (this is a divisional application from U.S. Published Application No. 2001/0031353 (No. 1, above)). | **Claim 1** -- An adhesive article comprising:<br><br>a facestock having a front surface and a back surface;<br><br>a continuous layer of adhesive having an upper surface and a lower surface and end edges, wherein the upper surface of the adhesive is adhered to the back surface of the facestock; and<br><br>a pattern of non-adhesive material forms that provide a path for air egress to an end edge, wherein the non-adhesive material forms are embedded into the upper surface of the adhesive layer, each of said non-adhesive material forms having a top surface, wherein the top surfaces of the non-adhesive material forms are even with or below the plane of the upper surface of the adhesive layer. |
| 3. **U.S. Published Application No. 2001/0052384**, filed on December 21, 2000, published on December 20, 2001 (this is a non-provisional application from provisional application no. 60/199,244, the same provisional application for the '049 patent). This application is now abandoned, in favor of the continuation application (No. 4, below). | **Claim 31** – An adhesive article comprising:<br><br>a release liner having a release surface and a back surface;<br><br>a continuous layer of adhesive having a front surface and a back surface and end edges, wherein the front surface of the adhesive is adhered to the release surface of the release liner; and<br><br>a pattern of non-adhesive material forms embedded into the release surface of the release liner, said non-adhesive material forms having a top surface. |

| <u>**Avery Patent Application**</u> | <u>**Exemplary Product Claim**</u> |
|---|---|
| 4. **U.S. Published Application No. 2005/0208252**, filed on May 13, 2005, published on September 22, 2005 (this is a continuation application from U.S. Published Application No. 2001/0052384 (No. 3, above)). | **Claim 1** – A release liner comprising<br><br>a moldable polyolefin layer,<br><br>a release layer overlying the polyolefin layer, the release layer having a top surface,<br><br>a plurality of printed ink forms embedded into the release layer, the ink forms having a top surface, wherein the top surface of the ink forms is even with or below the top release surface of the release layer,<br><br>wherein the release liner has an embossed raised pattern of microstructures on the top release surface. |

Although 3M's motion does not address these pending, related patent applications regarding the products disclosed in the specification of the '049 patent, Avery will also seek to introduce these patent applications into evidence as part of the totality of the circumstances, which evidence of Avery's lack of intent to willfully infringe 3M's patent.

The fact that these patent applications have not yet issued as patents is irrelevant to the issue of Avery's *intent* with respect to its defense to 3M's willfulness claim. The patent applications (whether issued or not) demonstrate that Avery reasonably *believes* that its EZ Film product (which falls within the claims of the patent applications) is patentably novel and different from 3M's '930 patented product. Avery's reasonable belief is a critical factor in demonstrating Avery's lack of willful intent. *See Ortho Pharm.*, 959 F.2d at 944; *King Instrument*, 767 F.2d at 867.

### 4. The *EZ Dock* Case is Distinguished From this Case

3M cites *EZ Dock, Inc. v. Schafer Sys., Inc.*, No. Civ. 98-2364 (RHK/AJB), 2003 WL 1610781, at *11 (D. Minn. March 8, 2003) as support for excluding the '049 patent. In *EZ Dock*, the defendant appeared to have obtained two patents which it contended related to a "connector design" and a "support structure." *Id.* Neither of the parties identified the patents to the court. *Id.* The court held that, because the claims in the patent-at-issue do not cover a "connector design" or a "support structure," the defendants' patents were irrelevant to the issue of the defendant's infringement of the patent-in-suit. *Id.*

In *EZ Dock*, the defendant contended that the fact that its patents were issued is evidence that the accused device was not copied from the patent-at-issue, which rebuts the claim of willful infringement. The court did not address this contention, however, because it had already determined that none of the claims-at-issue had anything to do with "connector designs" or "support structures" and thus the defendant's patents were irrelevant to infringement.

Unlike *EZ Dock*, there is no dispute that both 3M's '930 patent and Avery's '049 patent and related patent applications contain claims pertaining to the very liners for graphic films, which are accused products in this case. Likewise, in contrast to *EZ Dock*, Avery's '049 patent and the related applications do cover Avery's accused method and product. Thus, Avery's '049 patent and related applications are relevant to the totality of the circumstances (including intent) that must be evaluated in determining whether Avery reasonably believed it did not infringe both the method and product claims of the '930 patent when it offered its EZ Film product for sale. *See Ortho*, 959 F.2d at 944.

### B. Avery's Method for Making the Accused EZ Film, as Described in the '049 Patent, is Relevant to Infringement Under the Doctrine of Equivalents

Besides accusing Avery of literally infringing claim 1 of the '930 patent, 3M asserts that Avery infringes under the doctrine of equivalents. One test for determining infringement under the doctrine of equivalents is whether the accused product performs substantially the same function in substantially the same way to achieve substantially the same result. *Warner-Jenkinson Co. v. Hilton-Davis Chem. Co.*, 520 U.S. 17, 40, 137 L. Ed. 2d 146, 117 S. Ct. 1040 (1997). To defend against 3M's claim of infringement under the doctrine of equivalents, Avery is entitled to show that the repositionability of its EZ Film is accomplished in a substantially different "way" from the way described in the '930 patent. Instead of having an array of depressions filled with a glass bead/adhesive slurry ('930 patent), the EZ Film product uses an embedded, hardened ink dot ("Avery's product"). Thus, Avery's different product created by a different method is material to 3M's claim for infringement under the doctrine of equivalents.

To defend against 3M's assertion of infringement under the doctrine of equivalents, Avery will show not only that its "way" of making the accused EZ Film differs substantially from the method described in the '930 patent, but that Avery's method is patentably distinct. By offering the '049 patent as evidence, Avery will be able to establish that U.S. Patent & Trademark Office found Avery's "way" novel and patentable over the methods described in 3M's patent for making a release liner for a graphic film. Even though 3M now only asserts a product claim, the allegation of infringement under the doctrine of equivalents injects the differences in methods squarely into this case. Thus, evidence that Avery has patented its own way is highly relevant and admissible. This Court should not foreclose Avery from relying on this critical evidence.

## III. CONCLUSION

For the foregoing reasons, 3M's motion should be denied in full. While 3M suggests that evidence of Avery's '049 patent could confuse the jury on the issue of literal infringement, any such potential confusion can be addressed through an appropriate jury instruction.

DATED: November 21, 2005

Respectfully submitted,

s/ David P. Pearson

David P. Pearson
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400 - Telephone
(612) 604-6800 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-1260 - Facsimile

2554272v1