IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S PROPOSED JURY INSTRUCTIONS**

## 1.1 PRELIMINARY INSTRUCTIONS

Ladies and gentlemen: I will take a few moments now to give you some initial instructions about this case and about your duties as jurors. At the end of the trial I will give you further instructions. I may also give you instructions during the trial. Unless I specifically tell you otherwise, all such instructions – both those I give you now and those I give you late – are equally binding on you and must be followed.

From the evidence you will decide what the facts are. You are entitled to consider that evidence in the light of your own observations and experiences in the affairs of life. You will then apply those facts to the law which I give you in these and in my other instructions, and in that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in my instructions, whether you agree with it or not.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness says, or only part of it, or none of it.

In deciding what testimony to believe, consider the witnesses' intelligence, their opportunity to have seen or heard the things they testify about, their memories, any motives they may have for testifying a certain way, their manner while testifying, whether they said something different at an earlier time, the general reasonableness of their testimony and the extent to which their testimony is consistent with other evidence that you believe.

Do not allow sympathy or prejudice to influence you. The law demands of you a just verdict, unaffected by anything except the evidence, your common sense, and the law as I give it to you.

***Authority***: Manual of Model Civil Jury Instructions for the District Courts of the Eighth Circuit (hereinafter referred to as "Eight Circuit Model Instructions").

## 1.2 PRELIMINARY INSTRUCTIONS – EVIDENCE LIMITATIONS

I have mentioned the word "evidence." Evidence includes the testimony of witnesses; documents and other things received as exhibits; any facts that have been stipulated – that is, formally agreed to by the parties; and any facts that have been judicially noticed – that is facts which I say you must accept as true.

Certain things are not evidence. I will list those things for you now:

1. Statements, arguments, questions and comments by lawyers are not evidence.
2. Exhibits that are identified by a party but not offered or received in evidence are not evidence.
3. Objections are not evidence. Lawyers have a right and sometimes an obligation to object when they believe something is improper. You should not be influenced by the objection. If I sustain an objection to a question or an exhibit, you must ignore the question or the exhibit and must not try to guess what the information might have been.
4. Testimony and exhibits that I strike from the record, or tell you to disregard, are not evidence and must not be considered.
5. Anything you see or hear about this case outside the courtroom is not evidence.

Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose. I will tell you when that occurs, and instruct you on the purposes for which the item can and cannot be used. You should also pay particularly close attention to such an instruction, because it may not be available to you in writing later in the jury room.

Finally, some of you may have heard the terms "direct evidence" and "circumstantial evidence." You are instructed that you should not be concerned with

those terms, since the law makes no distinction between the weight to be given to direct and circumstantial evidence.

***Authority***: Eight Circuit Model Instructions.

## 1.3 PRELIMINARY INSTRUCTIONS – BENCH CONFERENCES AND RECESSES

During the trial it may be necessary for me to speak with the lawyers out of your hearing, either by having a bench conference here while you are present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is to decide how certain evidence is to be treated under the rules of evidence which govern the trial, and to avoid confusion and error. We will, of course, do what we can to keep the number and length of these conferences to a minimum.

***Authority***: Eight Circuit Model Instructions.

**1.4 PRELIMINARY INSTRUCTIONS – NO TRANSCRIPT AVAILABLE**

At the end of the trial you must make your decision based on what you recall of the evidence. You will not have a written transcript to consult. You must pay close attention to the testimony as it is given.

If you wish, however, you may take notes to help you remember what witnesses said. If you do take notes, please keep them to yourself until you and your fellow jurors go to the jury room to decide the case. And do not let note-taking distract you so that you do not hear other answers by the witness. The Clerk will provide each of you with a pad of paper and pen or pencil. At each recess, leave them in the jury room. When you leave at night, your notes will be secured and not read by anyone.

***Authority***: Eight Circuit Model Instructions.

## 1.5 PRELIMINARY INSTRUCTIONS – CONDUCT OF THE JURY

Finally, to insure fairness, you as jurors must obey the following rules:

First, do not talk to among yourselves about this case, or about anyone involved with it, until the end of the case when you go to the jury room to decide your verdict.

Second, do not talk with anyone else about this case, or about anyone involved with it, until the trial has ended and you have been discharged as jurors.

Third, when you are outside the courtroom, do not let anyone tell you anything about the case, or about anyone involved with it. If someone should try to talk to you about the case, please report it to me.

Fourth, during the trial you should not talk with or speak to any of the parties, lawyers or witnesses involved in this case – you should not even pass the time of day with any of them. It is important not only that you do justice in this case, but that you also give the appearance of doing justice. If a person from one side of the lawsuit sees you talking to a person from the other side – even if it is simply to pass the time of day – an unwarranted and unnecessary suspicion about your fairness might be aroused. If any lawyer, party or witness does not speak to you when you pass in the hall, ride in the elevator or the like, remember it is because they are not supposed to talk or visit with you either.

Fifth, do not read any news stories or articles about the case, or about anyone involved with it, or listen to any radio or television reports about the case or about anyone involved with it.

Sixth, do not do any research (including research in the dictionary) or make any investigation about the case on your own.

Seventh, do not make up your mind during the trial about what the verdict should be. Keep an open mind until after you have gone to the jury room to decide the case and you and your fellow jurors have discussed the evidence.

***Authority***: Eight Circuit Model Instructions.

**1.6 PRELIMINARY INSTRUCTIONS – OUTLINE OF TRIAL**

The trial will proceed in the following manner:

First, the plaintiffs' attorney may make an opening statement. Next, the defendant's attorney may make an opening statement. An opening statement is not evidence but is simply a summary of what the attorney expects the evidence to be.

The plaintiffs will then present evidence and counsel for defendant may cross-examine. Following the plaintiffs' case, the defendant may present evidence and plaintiffs' counsel may cross-examine.

After presentation of evidence is complete, the attorneys will make their closing arguments to summarize and interpret the evidence for you. As with opening statements, closing arguments are not evidence. The court will instruct you further on the law. After that you will retire to deliberate on your verdict.

***Authority***: Eight Circuit Model Instructions.

**1.7 PRELIMINARY INSTRUCTIONS – BURDENS OF PROOF**

In any legal action, facts must be proved by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used.

The first burden of proof standard requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probable true than not true.

The second burden of proof standard is a higher one. It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

I will now give you some background about the nature of this case and the issues you will be deciding. For each issue, I will instruct you as to the burden of proof that will apply. At the end of the trial I will review for you the burden of proof to apply, either the more probable than not standard or the highly probable standard, to each issue in this case.

***Authority***: The Federal Circuit Bar Association Model Patent Jury Instructions (hereinafter referred to as "Federal Circuit Patent Instructions").

## 2.1 PATENT INSTRUCTIONS – THE PARTIES AND THE NATURE OF THE CASE

This is a patent case. It involves U.S. Patent No. 5,897,930. Patents are often referred to by their last three digits. The patent in this case will be referred to as the '930 patent.

The '930 patent relates to embossed webs useful as liners for adhesive-based products and other applications. During the trial the parties will offer testimony to familiarize you with this technology.

3M Innovative Properties Company and Minnesota Mining and Manufacturing, the plaintiffs in this case, contend that Avery-Dennison Corporation, the defendant in this case, is infringing the '930 patent by its making, selling and offering for sale Avery's EZ Film products.

Defendant denies that it is infringing and contends that the '930 patent is invalid.

I will explain to you the meaning of these contentions in my final instructions after you hear all the evidence.

You will now see a short video presentation that explains the U.S. patent system, the parts of a patent, and how a person gets a patent.

***Authority***: Federal Circuit Patent Instructions (Modified to reflect showing of video on U.S. patent system).

## 3. INSTRUCTIONS FOR USE DURING TRIAL (IF NECESSARY)

### 3.1 DUTIES OF JURY: RECESSES

We are about to take a recess and I remind you of the instruction I gave you earlier. During this recess or any other recess, you must not discuss the case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, please let me know about it immediately. Finally, keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.

I may not repeat these things to you before every recess, but keep them in mind throughout the trial.

***Authority***: Eight Circuit Model Instructions

### 3.2 STIPULATED FACTS

The plaintiffs and the defendants have stipulated – that is, they have agreed – that certain facts are as counsel have just stated. You should, therefore, treat those facts as having been proved.

***Authority***: Eight Circuit Model Instructions

**3.3 JUDICIAL NOTICE**

I have decided to accept as proved the following facts: ____________________.

You must accept these facts as proved.

***Authority***: Eight Circuit Model Instructions

## FINAL INSTRUCTIONS

## 4. THE PARTIES AND THEIR CONTENTIONS

I will now review for you the parties in this action and the position of the parties that you will have to consider in reaching your verdict.

As I have told you, this is a patent case involving the '930 patent, which relates to embossed webs useful as liners for adhesive-based products.

3M Innovative Properties Company and Minnesota Mining and Manufacturing, the plaintiffs in this case, contend that Avery-Dennison Corporation, the defendant in this case, is infringing the '930 patent by its making, selling and offering for sale Avery's EZ Film products. Plaintiffs contend that they are entitled to damages caused by that infringement.

Defendant denies that it is infringing and contends that the '930 patent is invalid for a number of reasons.

As I have explained, in any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used.

The first burden of proof standard requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is more probable true than not true.

The second burden of proof standard is a higher one. It requires that you must be persuaded that it is highly probable that what the party seeks to prove is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

For each issue, I will review for you the burden of proof to apply, either the more probable than not standard or the highly probable standard, to each issue in this case.

***Authority***: Federal Circuit Patent Instructions.

## 5. THE PATENT SYSTEM

At the beginning of the trial, I showed you a videotape providing general information about patents and the patent system. I will now give you more detailed instructions about the patent laws that specifically relate to this case. If you would like to review my instructions at any time during your deliberations, they will be available to you in the jury room.

***Authority***: Federal Circuit Patent Instructions.

**6. THE CLAIMS OF THE PATENT IN SUIT**

As you learned from the videotape at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are comprised of words and phrases, called “limitations”. For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

***Authority***: Federal Circuit Patent Instructions (Modified).

## 6.1 CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words in the patent claims.

It is my job as Judge to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings I give you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before I instruct you about the meaning of the words of the claims, I will explain to you the different types of claims that are at issue in this case.

***Authority***: Federal Circuit Patent Instructions.

## 6.2 INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claim 1 of the '930 patent, for example, is an independent claim.

A dependent claim refers to at least on other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

Claims 2 to 5 are dependent claims. They each refer to claim 1. To determine what dependent claims 2 to 5 cover, the words of those claims and the words of claim 1 must be read together.

***Authority***: Federal Circuit Patent Instructions.

**6.3 "COMPRISING" CLAIMS**

The beginning portion, or preamble, of claim 1 of the '930 patent uses the word "comprising". "Comprising" means "including" or "containing". A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

Claims 2 to 5 of the '930 patent also use the "comprising" language.

***Authority***: Federal Circuit Patent Instructions.

## 6.4 LIMITATIONS OF THE CLAIMS AT ISSUE

I have now instructed you as to the types of claims at issue in this case. I will next define the meaning of the words in the patent claims at issue. You must use the definitions I provide to you in your consideration of infringement and invalidity issues.

"Embossed" means a topography on a web or on tooling having an effective three-dimensional pattern that generates a difference in surface planar dimension in the liner or the tooling. For purposes of this definition "tooling" means a device that can be used to impress a pattern into a web.

"Multiple embossed" means two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing.

"Array" means an orderly arrangement.

"Ridges" means an elongated crest or raised strip.

"Pattern" means any formation of embossings that can utilize any theory of geometry, including without limitation, Euclidian geometry and fractal geometry.

"Depressions" means lower, sunken, or depressed areas of the carrier web.

"Carrier web" means material with at least one surface that carries, can carry, or has carried another material.

"Lands" means areas of the surface of the carrier web between the ridges.

***Authority***: Federal Circuit Patent Instructions, using Federal Circuit and District Court claim constructions.

## 7. INFRINGEMENT

### 7.1 PATENT INFRINGEMENT GENERALLY – DIRECT INFRINGEMENT

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement". In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers".

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare patent claims 1 to 5, as I have defined them, to the accused product, and determine whether or not there is infringement. You should not compare defendant's product with any specific examples set out in the '930 patent, or with plaintiffs' product. The only correct comparison is with the language of the claim itself, as I have explained its meaning to you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on my instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. I will first discuss direct infringement.

In this case, plaintiffs assert that defendant's product directly infringes claims 1 to 5 of the '930 patent. It is your job to determine whether or not plaintiffs have proved by the more probable than not standard that defendant has directly infringed any of claims 1 to 5 of the '930 patent.

***Authority***: Federal Circuit Patent Instructions.

## 7.2 INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS

In order to infringe a patent claim, a product must include every limitation of the claim. If defendant's product omits even a single structure recited in a claim, then you must find that defendant has not infringed that claim. You must consider each of the '930 patent claims separately.

A claim limitation may be present in an accused product in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product just as it is described in the claim language, either as I have explained that language or, if I did not explain it, as you understand it.

A claim limitation is present in an accused product under the doctrine of equivalents if the difference between the claim limitation not literally found and the corresponding feature in the accused product are insubstantial. In deciding whether there is infringement under the doctrine of equivalents, each element or limitation contained in a patent claim is important. Therefore, the question is whether the defendant's product contains an equivalent for each element of the claim. The question is not whether the defendant's product overall is equivalent to the plaintiff's invention as a whole.

Application of the doctrine of equivalents is the exception, however, not the rule. Patent claims must be clear enough so that the public has fair notice of what was patented. Notice permits other parties to avoid actions which infringe the patent and to design around the patent. On the other hand, the patent owner should not be deprived of the benefits of his patent by competitors who appropriate the essence of an invention while barely avoiding the literal language of the patent claims.

One way to determine this is to look at whether or not the claim element or limitation not literally found and the corresponding feature in the accused product

accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the claim element or limitation not literally found and the corresponding feature in the accused product are interchangeable. However, the doctrine of equivalents cannot be used to find infringement when the accused product is missing a claim element or limitation entirely.

A person of ordinary skill is a person with average education and training in the field.

***Authority***: Federal Circuit Patent Instructions; Instructions from American Intellectual Property Law Association; Northern District of California Model Patent Jury Instructions; District of Delaware Model Patent Jury Instructions; *London v. Carson PirieScott & Co.*, 946 F.2d 1534,1538,20 U.S.P.Q.2d 1456,1458 (Fed. Cir. 1991); *Graver Tank & Mfg. v. Linde Air Prod. Co.*, 339 U.S. 605, 608; *Moeller v. Ionetics, Inc.*, 794 F.2d 653,229 U.S.P.Q. 992,995 (Fed. Cir. 1986); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24, 117 S. Ct. 1040, 1047 (1997); *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 122 S. Ct. 1831, 1839 (2002).

### 7.2.1 PERFORMANCE OF FUNCTION OF CLAIM IN SUBSTANTIALLY DIFFEERENT WAY

Even if the accused product falls within the literal scope of claims 1 to 5 of the ‘930 patent, the product does not infringe that claim if the product is so far changed in principle from the invention described in the patent specification that persons of ordinary skill in the field would find that the product performs the required function of the invention in a substantially different way.

***Authority***: Northern District of California Model Patent Jury Instructions; *Graver Tank & Mfg. v. Linde Air Prod. Co.*, 339 U.S. 605, 608-09 (1950).

**7.3 DETERMINATION OF INFRINGEMENT**

Taking each claim of the '930 patent separately, if you find that plaintiffs have proved that it is more probable than not that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in defendant's accused product, then you must find that defendant's product infringes that claim.

***Authority***: Federal Circuit Patent Instructions.

**7.4 INFRINGEMENT OF DEPENDENT CLAIMS**

My instructions on infringement so far have related to independent claims. As I told you, the ‘930 patent also contains dependent claims. A dependent clam includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that independent claim 1 of the ‘930 patent has been infringed, you must separately determine whether dependent claims 2 to 5 have also been infringed. If you find that the independent claim 1 is not infringed, then you must also find that the dependent claims 2 to 5 are not infringed.

***Authority***: Federal Circuit Patent Instructions.

## 10. VALIDITY

### 10.1 VALIDITY IN GENERAL

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms "new," "useful" and "non-obvious" have special meanings under the patent laws. I will explain these terms to you as we discuss defendant's grounds for asserting invalidity.

The invention claimed in a patent must also be adequately described. In return for the right to exclude others from making, using, selling or offering for sale the claimed invention, the patent owner must provide the public with a complete description in the patent of the invention and how to make and use it.

Defendant has challenged the validity of the '930 patent claims on a number of grounds. Defendant must prove that a patent claim is invalid by the highly probable standard.

I will now explain to you each of defendant's grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

***Authority***: Federal Circuit Patent Instructions.

**10.2 DEFINITENESS**

The patent laws have requirements for the way in which patent claims are written. Patent claims must be sufficiently clear that a person of ordinary skill in the field of the invention reading them is able to determine what the claims cover and what they do not cover. A person of ordinary skill is a person of average education and training in the field. If a patent claim does not meet this requirement, then the claim is said to be indefinite, and the claim is invalid.

The amount of detail required for a claim to be definite depends on the particular invention, the prior art and the description of the invention contained in the patent. A patent claim, when read along with the rest of the patent, must reasonably inform those skilled in the field of the invention what the patent claims cover. Simply because claim language may not be precise does not automatically mean that the claim is indefinite. The claim language need only be as precise as the subject matter permits.

Defendant contends that claims 1 to 5 of the '930 patent are invalid because the language of the claims is indefinite. If you find that defendant has proved that it is highly probable that claims 1 to 5 of the '930 patent are indefinite because a person of ordinary skill in the art would not understand what is, and what is not, covered by the claims, you must then find that those claims are invalid.

***Authority***: Federal Circuit Patent Instructions.

**10.3 THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art".

Defendant is relying on various items of prior art. Defendant and plaintiff agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '930 patent:

United States Patent No. 5,405,675 - (the Sawka '675 patent)

United States Patent No. 5,141,790 – (the Calhoun '790 patent)

United States Patent No. 3,301,741 – (the Henrickson '741 patent)

United States Patent No. 3,887,678 – (the Lewicki '678 patent)

United States Patent No. 5,229,186 – (the Tribble '186 patent)

European Patent Office Publication No. 0 313766 (the Cabe patent)

Patent Abstracts of Japan Publication No. 59078285A - October 28, 1982 (the Mitsui patent)

Utility Model Application No. 2587198 - Translated from Japanese

United States Patent No. 3,413,168 – Danielson

United States Patent No. 3,331,729 - Danielson

Defendant is also relying on items that plaintiffs do not agree are prior art. Defendant must prove by the highly probable standard that these items are prior art. In order to do so, defendant must prove that the items fall within one or more of the different categories of prior art recognized by the patent laws. These categories include anything that was invented by another person in this country before the inventor made the invention, if the other person did not abandon, suppress or conceal his or her prior invention.

***Authority***: Federal Circuit Patent Instructions.

### 10.3.1 PRIOR ART – DATE OF INVENTION

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called "date of invention".

I will now tell you how to determine that date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is December 31, 1996. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on

reducing the invention to practice. Interruption necessitated by the everyday problems and obligations on the inventor or others working with him or her do not prevent a finding of diligence.

I will now describe the specific requirements for the prior art categories relied on by defendant in this case that are in dispute.

***Authority***: Federal Circuit Patent Instructions.

**10.3.2 PRIOR ART – PRIOR INVENTION**

An invention made by another person before the inventor on the patent made the invention is prior art to the patent claim, unless that other person abandoned, suppressed or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table on March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercise "reasonable diligence" in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or he do not prevent a finding of diligence.

Let's change our example slightly. Mr. Smith conceived of his table on February 1 and reduced it to practice on April 1. Ms. Jones conceived of the table on January 1,

one month before Mr. Smith's conception, and built it on May 1, one month after Mr. Smith's reduction to practice. If Ms. Jones was reasonably diligent in building the table from the time just before Mr. Smith's February 1 conception up to the time that she built the table on May 1, she is the first inventor of the table and her invention is prior art to Mr. Smith's patent claims.

The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

In this case, defendant contends that the embossed webs evidenced in the laboratory notebooks of Dr. Frank Sher was a prior invention to the '930 patent claims.

***Authority***: Federal Circuit Patent Instructions.

**10.4 DERIVATION / INVENTORSHIP**

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. An inventor on a patent is not the true inventor if he "derived" the invention from someone else. A patent is invalid if it fails to name all of the joint inventors.

In some patents, there is more than one inventor. A patent that does not identify all of the co-inventors is invalid. All that is required of a co-inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent.

In this case, defendant contends that claims 1 to 5 of the '930 patent are invalid because Dr. Frank Sher was a co-inventor of the '930 patent and was not identified as a co-inventor. If you find that defendant has proved that it is highly probable that Dr. Frank Sher was a co-inventor of claims 1 to 5 of the '930 patent, then you must find that the claims are invalid.

***Authority***: Federal Circuit Patent Instructions; *Pannu v. Iolab Corporation*, 155 F.3d 1344 (Fed. Cir. 1998).

## 10.5 ANTICIPATION/LACK OF NOVELTY

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was “anticipated” by the prior art. An invention that is “anticipated” by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the highly probable standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or presented in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

In this case, defendant contends that claims 1 to 5 of the ‘930 patent are invalid because they are anticipated by United States Patent No. 5,405,675 - (the Sawka ‘675 patent)

If you find that defendant has proved that it is highly probable that claims 1 to 5

are anticipated, then you must find that the claims are invalid.

***Authority***: Federal Circuit Patent Instructions

**10.6 OBVIOUSNESS**

As I mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time he the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Defendant has the burden of proving by the highly probable standard that claims 1 to 5 of the '930 patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the inventor's field at the time the invention was made.

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

First, what is the scope of and content of the prior art?

Second, what differences, if any, are there between the invention of the claims of

the patent and the prior art?

Third, what was the level of ordinary skill in the art at the time the invention was made?

Fourth, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the ‘930 patent claims would have been obvious.

I will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

***Authority***: Federal Circuit Patent Instructions

### 10.6.1 THE SCOPE AND CONTENT OF THE PRIOR ART

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by defendant. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

***Authority***: Federal Circuit Patent Instructions

## 10.6.2 DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestions for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

***Authority***: Federal Circuit Patent Instructions

### 10.6.3 LEVEL OF ORDINARY SKILL

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

***Authority***: Federal Circuit Patent Instructions

### 10.6.4 OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS

You should also consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1. Commercial success of products covered by the patent claims.
2. A long-felt need for the invention.
3. Failed attempts by other to make the invention
4. Copying of the invention by others in the field.
5. Unexpected results achieved by the invention.
6. Praise of the invention by the infringer or others in the field.
7. The taking of licenses under the patent by others.
8. Expressions of surprise by experts and those skilled in the art at the making of the invention.
9. The patentee proceeded contrary to the accepted wisdom of the prior art.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

***Authority***: Federal Circuit Patent Instructions

### 10.6.5 DETERMINATION OF OBVIOUSNESS

Defendant contends that the invention claimed in claims 1 to 5 of the '930 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of the following items of prior art in combination with one another:

United States Patent No. 5,141,790 – (the Calhoun '790 patent)

United States Patent No. 3,301,741 – (the Henrickson '741 patent)

United States Patent No. 3,887,678 – (the Lewicki '678 patent)

United States Patent No. 5,229,186 – (the Tribble '186 patent)

European Patent Office Publication No. 0 313766 (the Cabe patent)

Patent Abstracts of Japan Publication No. 59078285A - October 28, 1982 (the Mitsui patent)

Utility Model Application No. 2587198 - Translated from Japanese

If you find that defendant has proved obviousness by the highly probable standard, then you must find that the claims are invalid for obviousness.

***Authority***: Federal Circuit Patent Instructions

**11. DAMAGES**

***Avery proposes that no jury instruction on damages be provided in light of the parties' stipulation. In the event the Court believes it should say something about damages, Avery proposes the following:***

In this case, you will not consider the issue of damages even if you fine that defendant has infringed a valid claim of the '930 patent. Whether and to what extent any damages are to be awarded in this case will be determined by the Court and not by you, the jury.

DATED: November 28, 2005

Respectfully submitted,

/S/David P. Pearson
David P. Pearson
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-1260 - Facsimile