IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AVERY DENNISON CORPORATION,<br><br>Defendant. | Civil Action No. 01-1781 JRT/FLN |

**3M'S STATEMENT OF THE CASE**

Pursuant to the Court's October 18, 2005 Local Rule 39.1 Memorandum, 3M (3M Innovative Properties Company and Minnesota Mining and Manufacturing Company collectively) respectfully submits its statement of the case. Because the parties have stipulated as to damages in this case, the trial will only encompass the issues of infringement and validity.[1] The Court has set a firm trial date of December 12, 2005, and the parties agree that trial, including the jury charge, will be completed by December 23, 2005.

## I. Background

3M claims that Avery Dennison Corporation's EZ Film product infringes the asserted claims of 3M's United States Patent No. 5,897,930 ("the '930 patent").

[1] In its complaint, 3M included a count that Avery willfully infringed 3M's '930 patent. As 3M advised the Court at today's Pretrial Conference, however, 3M is dropping its willfulness claim in an effort to streamline the trial of this case.

**A. The Patent-in-Suit**

3M's '930 patent arose from the work of two 3M scientists, Clyde Calhoun and David Koskenmaki, who invented a special type of "carrier web," such as the release liners used to protect pressure-sensitive adhesive on the backs of sheets of plastic film. The front of the plastic film typically is imprinted with advertising graphics, and the graphics film is applied to a surface, such as the side of a truck. The release liner is removed from the graphics film to expose the adhesive on the back of the film just before the film is applied to the surface. 3M's Commercial Graphics Division has commercialized this invention in the microstructured liners of 3M's Controltac™ graphic films with Comply™ adhesive performance (3M's Comply™ product). These are large-scale graphic films used to "wrap," for example, trucks and buses with advertising.

The carrier webs described and claimed in the '930 patent have a microstructured surface topography, referred to as a "multiple embossed pattern." In the preferred embodiment of the '930 patent, the "multiple embossed pattern" includes two patterns. The first pattern is an array of depressions spread over the surface of the release liner. The second pattern is comprised of "lands" and "ridges" that crisscross through the pattern of depressions, as shown below in Figure 3 of the '930 patent, to which labels have been added for clarity:




FIG.3

Through this invention, 3M provided commercial graphics installers with two features that they needed to ensure a fast, high-quality result: air bleed and repositionability. Repositionability is achieved by virtue of the release liner's depressions—during manufacture of Comply™, a layer of glass microbeads is positioned between the release liner and the adhesive. These microbeads settle into the depressions embossed in the release liner. When the graphic film is used and the release liner is peeled back from the adhesive layer on the graphic film, the microbeads remain stuck in the adhesive layer and protrude from the graphic film's sticky side. Thus the graphic film does not have a flat adhesive surface. The protruding microbeads prevent the graphic film from initially adhering tightly to the application surface, so that the graphic film can be easily repositioned.

Air bleed is accomplished via the pattern of lands and ridges. During manufacture of a graphic film, the adhesive layer is applied to the release liner. The ridges in the

release liner impress a pattern of small grooves into the adhesive. When the release liner is peeled back from the adhesive, these grooves remain in the surface of the adhesive layer. Once the graphic film is adhered to an application surface, the grooves provide exit paths for any air bubbles to escape. Entrapped air flows through the grooves to the edge of the graphic film and then is expelled, as the graphic film is firmly pressed into place. 3M's Comply™ product, which embodies this patented technology, is now 3M's flagship commercial graphics film product.

3M contends that Avery infringes claim 1 of the '930 patent, which provides as follows:

> 1. A carrier web, comprising:
>
> at least one surface that has a multiple embossed pattern having a first embossed pattern and a second embossed pattern, wherein the first embossed pattern forms an array of depressions, wherein the depressions of the first embossed pattern are in the second embossed pattern, wherein the second embossed pattern comprises lands and ridges between the lands, and wherein the height of the ridges over the lands ranges from about 3 to about 45 µm.

In addition, 3M also contends that Avery infringes claims 2 through 5 of the '930 patent. Under the claim construction rulings issued by the Federal Circuit and this Court, 3M will prove at trial that Avery's EZ Film product has the elements of each of these claims both literally and under the doctrine of equivalents.

### B. Procedural Background

A little more than four years ago, on September 27, 2001, 3M filed this case against Avery, alleging that Avery's EZ Film product infringes 3M's '930 patent. Just as is taught in the '930 patent, the liners of Avery's EZ Film product impart air bleed and

repositionability to the adhesive surface through two patterns—(1) depressions and (2) lands and ridges—on the microstructured surface of a liner that imparts the corresponding inverse structure onto the adhesive surface.

The Court denied 3M's preliminary injunction motion on February 19, 2002 and entered summary judgment of noninfringement in favor of Avery on October 21, 2002,. On December 2, 2003, the Federal Circuit reversed the Court's claim construction, vacated the grant of summary judgment, and remanded the case. *3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365 (Fed. Cir. 2003). This Court had originally interpreted 3M's asserted claims to be drafted in product-by-process format and further limited them to liners with multiple embossed patterns formed using a sequential embossing process. In vacating the grant of summary judgment, the Federal Circuit reversed this claim construction and adopted 3M's position that the asserted claims are purely structural in nature. On June 21, 2004, the Supreme Court denied Avery's petition for a writ of certiorari to review the Federal Circuit's ruling.

On remand, the case was reassigned to Judge Tunheim. On August 30, 2004, the Court held a *Markman* hearing to construe claim terms in the '930 patent that the Federal Circuit had not addressed in its decision. On June 20, 2005, the Court issued its claim construction ruling. On July 7, 2005, the Court rejected Avery's attempt to file another summary judgment motion and set a trial date of December 12, 2005.

## II. Issues for Trial

Because the parties have stipulated as to damages, the remaining issues for trial are infringement and validity.

**A. Infringement**

3M has the burden of proving infringement by a preponderance of the evidence. *See Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005) (citing *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001)). As 3M will prove at trial, and as shown in the depiction of the liner of Avery's EZ Film product, each of the elements of claim 1 of the '930 patent is literally present in Avery's accused EZ Film:




To prove infringement, 3M primarily will present the testimony of its expert, Dr. A. Brent Strong, a Professor of Materials Science and Manufacturing Engineering at Brigham Young University. Dr. Strong has worked in the field of materials science for more than 20 years, and in his expert report, Dr. Strong describes the structure of Avery's EZ Film and concludes that it meets every limitation of claims 1-5 of the '930 patent. 3M will also present the testimony of Mark Cavaleri, who performed testing to determine

the height of ridges over lands in Avery’s EZ Film product, and Mike R. Kesti, who scanned electron microscope images of Avery’s EZ Film.

In addition to literal infringement, 3M intends to prove at trial that Avery’s EZ Film also infringes claims 1-5 of the ’930 patent under the doctrine of equivalents. As with literal infringement, 3M bears the burden of demonstrating infringement under the doctrine of equivalents by a preponderance of the evidence. *See Cross Med. Prods.*, 424 F.3d at 1310 (citing *Advanced Cardiovascular Sys.*, 261 F.3d at 1336). 3M will show (again principally through Dr. Strong’s testimony) that any alleged difference between Avery’s EZ Film and the elements of claims 1-5 in the ’930 patent would be, at most, insubstantial and, as such, Avery’s EZ Film also infringes under the doctrine of equivalents. *See, e.g.*, *WMS Gaming, Inc. v. Int’l Game Tech.*, 184 F.3d 1339 (Fed. Cir. 1999) (affirming the district court’s holding of infringement under the doctrine of equivalents because there was “no clear error in the district court’s finding of insubstantial differences between the claimed invention and the accused device”).

Finally, if Avery argues incorrectly at trial that its EZ Film product does not infringe the ’930 patent before the film is removed from the liner, 3M will also prove that, even if Avery’s argument were correct, Avery would still infringe the patent through its own testing of the product, through contributory infringement, and through inducing its customers to infringe the ’930 patent.

In order to prevail on its claims of inducing and contributory infringement, 3M must prove the elements by a preponderance of the evidence. *See Centricut, LLC v. The Esab Group, Inc.*, 390 F.3d 1361, 1367 (Fed. Cir. 2004). Avery is liable for contributory

infringement if it "'knew that the combination for which its components were especially made was both patented and infringing' and that [its] components have 'no substantial non-infringing uses.'" *Cross Med. Prods.*, 424 F.3d at 1312 (quoting *Golden Blount, Inc. v. Robert H. Peterson Co.*, 365 F.3d 1054, 1061 (Fed. Cir. 2004)). 3M will prevail on its claim of contributory infringement if it proves these elements along with an act of direct infringement by another party. In order to prevail on its claim of inducing infringement, 3M must prove that someone directly infringed the '930 patent and that Avery both knowingly induced and possessed a specific intent to encourage that direct infringement. *Minn. Mining and Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002).

**B. Invalidity**

Because patents are presumed valid, Avery has the burden of proving its invalidity defenses by clear and convincing evidence. *See State Contracting & Eng'g Corp. v. Condotte Am., Inc.*, 346 F.3d 1057, 1067 (Fed. Cir. 2003) ("A party seeking to establish that particular claims are invalid must overcome the presumption of validity in 35 U.S.C. § 282 by clear and convincing evidence."). After the claim construction rulings by the Federal Circuit and this Court adverse to its prior positions, Avery raised new validity challenges based on decades-old 3M patents directed to retroreflective sheeting, which disclose a different technology than the invention described and claimed in the patent-in-suit. Avery has also raised a validity challenge based on inventorship. Avery cannot meet its burden of proof on any of these invalidity defenses, and the '930 patent should not be held invalid.

**1. Anticipation**

Avery contends that the ’930 patent is anticipated by three prior 3M patents, the Sawka, McGrath, and Jack patents, United States Patents Nos. 5,405,675, 4,025,159, and 3,989,775 respectively. To prove that an asserted claim of the ’930 patent is invalid as anticipated pursuant to 35 U.S.C. § 102, Avery must show by clear and convincing proof that a single prior art reference discloses each and every limitation of that claim. *See DaycoProds., Inc. v. Total Containment, Inc*., 329 F.3d 1358, 1368 (Fed. Cir. 2003).

In support of its anticipation defense, Avery has offered only cursory arguments that fail to acknowledge the clear distinctions between the elements recited in claim 1 of the ’930 patent and the clear teachings of these prior art references. To respond to these arguments, 3M will present expert testimony from Dr. Strong in which Dr. Strong will explain that each of these three references is missing critical elements described and claimed in the ’930 patent. Avery will not be able to prove by clear and convincing evidence at trial that these patents invalidate the ’930 patent because none of them discloses every limitation of any asserted claim.

**2. Obviousness**

Avery also contends that the ’930 patent is obvious. To prove that an asserted claim of the ’930 patent is invalid as obvious, Avery must show that “the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art.” *See* 35 U.S.C. § 103. Further, even if all of the limitations of an asserted claim can be found in the prior art references, Avery cannot

show that the claim is obvious without also proving a motivation to combine those references at the time of the invention, which in this case is 1995, rather than from hindsight. *See Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1371 (Fed. Cir. 2000).

In support of its obviousness arguments, Avery takes a number of references from different fields of technology and combines those references into the invention claimed in the ’930 patent, without ever explaining why one of skill in the art would have been motivated to do so. This is insufficient proof of obviousness. *See Ecolochem*, 227 F.3d at 1375 (“Because we do not discern any evidentiary basis for the finding by the district court that there was a suggestion, teaching, or motivation to combine the prior art references cited against the claimed invention, the district court’s conclusion of obviousness cannot stand.”). Thus, Avery will not be able to prove by clear and convincing evidence at trial that the ’930 patent was obvious.

**3. Inventorship**

Avery contends that the ’930 patent is invalid under 35 U.S.C. § 102(f) because Dr. Frank Sher is omitted as an inventor. Because 3M named the correct inventors on the ’930 patent, this contention lacks any evidentiary basis whatsoever. In any event, Avery certainly cannot prove this contention by the clear and convincing proof required.

Moreover, because 35 U.S.C. § 256 allows for the correction of inventorship, the Federal Circuit has explained that, “[t]o invalidate a patent based on incorrect inventorship it must be shown not only that the inventorship was incorrect, but that correction is unavailable under Section 256.” *C.R. Bard, Inc. v. M3 Sys., Inc.*, 157 F.3d

1340, 1352 (Fed. Cir. 1998); *see also Viskase Corp. v. American Nat'l Can Co*., 261 F.3d 1316, 1328-29 (Fed. Cir. 2001) ("35 U.S.C. § 256 provides that an error of inventorship does not invalidate the patent if such error 'can be corrected as provided in this section.'"); *Pannu v. Iolab Corp*., 155 F.3d 1344, 1351 n.4 (Fed. Cir. 1998) ("[Because] lack of deceptive intent, as a negative, may be hard for a patentee to prove when it claims relief under the statute, good faith is presumed in the absence of a persuasive showing of deceptive intent."). Avery cannot establish either requirement.

First, Dr. Sher has never testified that he was an inventor. Nor has Avery presented any evidence suggesting that Dr. Sher invented the claimed range in the '930 patent. The patent's inventorship is not incorrect, and Avery will not be able to prove otherwise to the jury.

Second, "section 256 . . . allows correction . . . in [] nonjoinder cases where the unnamed inventor is free of deceptive intent." *Stark v. Advanced Magnetics, Inc*., 119 F.3d 1551, 1555 (Fed. Cir. 1997)). Avery has not even alleged that Dr. Sher acted with "deceptive intent" in not being named as an inventor on the '930 patent. Nor is there any evidence of any deceptive intent on his part. Thus, Avery would not be able to prove deceptive intent to the Court in a section 256 proceeding. *See Marketel Intern., Inc. v. Priceline.com*, 138 F. Supp. 2d 1210, 1213 (N.D. Cal. 2001) ("Correction of inventorship under section 256 is resolved by bench trial and is not submitted to a jury.").

Moreover, not only is Avery incapable of establishing that the '930 patent is invalid because of incorrect inventorship, but also a patent corrected pursuant to 35 U.S.C. § 256 is fully enforceable. *See Viskase Corp. v. American Nat'l Can Co*., 261

F.3d 1316, 1328-29 (Fed. Cir. 2001) ("Absent fraud or deceptive intent, the correction of inventorship does not affect the validity or enforceability of the patent for the period before the correction.").

### C. Damages

As noted above, the parties stipulated to past damages at a twenty percent royalty rate at the outset of this case, because 3M's primary objective is to obtain injunctive relief preventing Avery from infringing 3M's patented technology directed to microstructured liners for large-scale graphic films. Accordingly, damages are not an issue for trial.

Dated: November 28, 2005

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke

Jonathan E. Singer (#283459)
John C. Adkisson (#266358)
Katherine A. Moerke (#312277)
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks
(Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Tel: (858) 678-5070
Fax: (858) 678-5099

Kevin H. Rhodes (#318115)
3M Innovative Property Company
3M Center
P.O. Box 33427
St. Paul, MN 55133

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY

60326474