IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S**
**STATEMENT OF THE CASE**

Defendant Avery Dennison Corporation ("Avery") hereby provides its Statement of the Case in accordance with Local Rule 39.1 and the Order of this Court. This statement reflects new positions taken by 3M during the November 28, 2005 Pretrial Conference and issues decided by the Court during the conference.

## I. OVERVIEW OF FACTS

### A. <u>3M's '930 Patent</u>

3M accuses Avery of infringing U.S. Patent No. 5,897,930 by making and selling its EZ Series Fleet Marking Film. 3M asserts claims 1-5 only. Claims 6-12 are no longer at issue following this Court's grant of Summary Judgment in favor of Avery, and the subsequent decision by the Federal Circuit.

Claim 1 of the '930 patent is an independent claim. Claims 2-5 are dependent on claim 1. Claim 1 recites a carrier web comprising at least one surface that has a "multiple embossed pattern," which consists of a "first embossed pattern" and a "second embossed pattern" in which:

(a) the first embossed pattern forms an array of depressions,

(b) the depressions of the first embossed pattern are in the second embossed pattern, and

(c) the second embossed pattern comprises lands and ridges between the lands, and wherein the height of the ridges over the lands ranges from about 3 to about 45 microns.

According to the '930 patent specification, a carrier web containing the two embossed patterns is useful as a liner for a pressure sensitive adhesive, or for other purposes. When used as a liner for a pressure sensitive adhesive, the two embossed patterns make an attached graphic film easier to install. Specifically, the first embossed pattern of depressions provide hardened "pegs" on the adhesive so the film can be more easily repositioned prior to sticking. The second embossed pattern of lands and ridges provide channels in the adhesive so trapped air can be more easily removed from under the film.

Importantly, none of these "use" features are part of claim 1. Moreover, when the two embossed patterns are used as a liner for a pressure sensitive adhesive, the method of making the liner becomes critical. As described in the specification, the two embossed patterns must be made in sequence. After embossing the first pattern of depressions, the holes are filled with particles, such as small glass beads. Then the second embossed pattern of lands and ridges is applied. In this way, the glass beads can transfer to the adhesive to form the "pegs" on the adhesive. Claims 6 through 12 recite the appropriate method. But according to the Federal Circuit, claims 1-5 recite just the "structure" of a carrier web with two embossed patterns, without any limitation on the method for making the embossed patterns.

All relevant terms of claims 1-5 have been defined. This Court provided constructions for "embossed," "multiple embossed," "pattern," "array," "depressions," "lands," and "ridges." The Federal Circuit provided a definition for the term "tooling," which is part of the patent's definition of "embossed."

**B. Avery's EZ Film Liner**

In the mid-1990s, Avery began developing its own "easy application" graphic film with positionability and air egress features. Early in the development, Avery began exploring methods of printing polyurethane ("PU") ink on a polyethylene ("PE") liner and embossing patterns in the PE liner to provide air egress.

Before commercializing its EZ liner product, Avery learned about 3M's '930 patent and the two separate, embossed patterns claimed in that patent. Accordingly, Avery knew that it could not—and did not—use two embossed patterns on the liner for its EZ Film. Instead, respecting 3M's patent claims and using its own ink embedding/single embossment method, Avery developed a liner that contains only one embossed pattern with embedded PU ink dots.

## II. SUMMARY OF ISSUES FOR TRIAL

Following the pretrial conference in this matter, the issues for trial are limited to whether Avery infringes the '930 patent (either literally or under the doctrine of equivalents) and whether the '930 patent is invalid for anticipation, obviousness, prior invention, or incorrect inventors. 3M has withdrawn its claim that Avery willfully infringes the '930 patent, and Avery has withdrawn its defense that the '930 patent is indefinite. Finally, damages are not at issue in this case based on a stipulation between the parties.

**A. Non-Infringement**

3M has the burden of proving infringement by a preponderance of the evidence. SmithKline Diagnostics, Inc. v. Helena Labs, Corp., 859 F.2d 878, 889 (Fed. Cir. 1988). Determining infringement is a two step process: (1) interpreting the claims, and (2) finding whether the accused device comes within the scope of the construed claims. Id. The claim construction step has been completed by the Court in accordance with Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996). The determination of infringement is a question of fact for the jury. In re Hayes Microcomputer Prods., 982 F.2d 1527, 1541 (Fed. Cir. 1992).

### 1. *Avery Does Not Literally Infringe the '930 Patent*

Literal infringement occurs when each claim limitation is found exactly in the accused device. Pennwalt Corp. v. Durand-Wayland, Inc., 833 F.2d 931, 934 (Fed. Cir.), cert. denied, 485 U.S. 961 (1988).

Avery does not dispute that the surface structure of the liner for the EZ Film has an embossed pattern of lands and ridges within the requisite height range. Accordingly, the issue is whether Avery's liner has a surface structure consisting of a "first embossed pattern [that] forms an array of depressions."

Avery will offer the testimony of Michael Hannington and Douglas Lilac to establish that the surface structure of Avery's accused EZ Film contains no first embossed pattern forming an array of depressions. Avery's liner is made of a multi-layer material, consisting of paper, and insulating layer, and top polymer layer. The top polymer layer – which is the relevant surface structure – consists of polyethylene and polyurethane ink dots. The polyurethane ink dots are dispersed throughout and encased within the polyethylene. 3M points to these areas of embedded polyurethane ink as the "first embossed pattern [forming] an array of depressions." But Dr. Anthony McHugh will explain that polyurethane encased within polyethylene does not form a surface with a "embossed pattern" under the Court's claim constructions. Dr. McHugh will also explain that, under the Court's claim constructions, polyurethane encased within polyethylene on Avery's liner does not form a surface structure consisting of an "array of depressions."[1]

[1] During the Pretrial Conference, 3M suggested that it "may" contend Avery might be liable for secondary infringement by "contributing" to infringement by its customers or "inducing" its customers to infringe. 35 U.S.C. § 271(b) and (c). But Avery cannot be liable under either secondary theory. First, in 3M's March 29, 2002 Claim and Infringement Contentions, 3M did not disclose any theory of contributory or inducing infringement. Rather, 3M limited its infringement contentions to direct literal infringement only. Second, 3M's expert, Dr. Brent Strong, offered no opinion regarding contributory or inducing infringement in either his expert report or during his deposition. Finally, even if the Court were to allow the jury to consider contributory infringement or inducing infringement, Avery would still prevail. Simply put, Avery's release liner, even after use, still lacks the requisite "embossed pattern" and "array of depressions."

### 2. *Avery Does Not Infringe the '930 Patent Under the Doctrine of Equivalents*

If a claim element is not literally found in an accused device, in limited instances infringement may still exist under the doctrine of equivalents. But infringement under the doctrine of equivalents is available only if the differences are "insubstantial" between the claim element not literally found and the corresponding feature in the accused product. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 24, 117 S. Ct. 1040, 1047 (1997); Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 122 S. Ct. 1831, 1839 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."). One way of determining whether those differences are "insubstantial" is by examining whether the claim element and the corresponding feature in the accused product perform substantially the same function in substantially the same way to achieve substantially the same result. Warner-Jenkinson, 520 U.S. at 39-40.

Under the "all elements" or "all limitations" rule, the doctrine of equivalents must be applied to the individual claim elements or limitations, not to the claimed invention as a whole. Id. at 30. Thus, when the accused product or process is missing a claim limitation entirely, infringement under the doctrine of equivalents cannot exist as a matter of law. Id. Applying this rule, if the jury finds, as it must, that the liner for Avery's accused EZ Film lacks the requisite "first embossed pattern [forming] an array of depressions," then infringement cannot exist, as a matter of law, under the doctrine of equivalents. Moreover, infringement cannot exist under the doctrine of equivalents because Avery's liner performs the function of the "first embossed pattern" (i.e., positionability) in a substantially different way. Rather than making embossed depressions and filling with glass beads, Avery embeds ink dots at the same time it makes the embossed lands and ridges.

**B. Invalidity**

Avery has the burden of proving that the '930 patent is invalid under the highly probable standard. While patents are "presumed valid," the presumption is simply a procedural device. It "imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption." Fed. R. Evid. 301; DMI, Inc. v. Deere & Co., 802 F.2d 421, 427 (Fed. Cir. 1986). Thus, "the presumption is one of law, not fact, and does not constitute 'evidence' to be weighed against a challenger's evidence." Avia Group Int'l, Inc. v. L.A. Gear Cal., 853 F.2d 1557, 1562 (Fed. Cir. 1988).

Applying the "highly probable" standard, Avery will prove that the '930 patent is invalid on four grounds: (1) failure to name correct inventors, (2) prior invention, (3) anticipation, and (4) obviousness.

**1. *The '930 Patent Fails to Name All Correct Inventors***

The Patent Act prohibits the grant of a patent to those who did not invent the subject matter claimed:

> "A person shall be entitled to a patent unless . . . . (f) he did not himself invent the subject matter to be patented." 35 U.S.C. §102(f).

Whether a patent fails to name all actual inventors is a question of fact for the jury. Pannu v. Iolab Corporation, 155 F.3d 1344, 1348 (Fed. Cir. 1998) ("[w]e agree with Iolab that the district court erred by not sending the inventorship issue to the jury.").[2]

If a person makes a significant contribution to an invention, that person must be named as an inventor on the patent document. "Inventors may apply for a patent jointly

[2] If the jury finds that 3M omitted a named inventor, 3M may seek to correct inventorship through the procedure established under 35 U.S.C §256. Whether 3M is entitled to the correction, however, is not an issue for this trial. In fact, the Court has ruled *in limine* that nether party can tell the jury about the correction process under section 256.

even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent." Pannu, 155 F.3d at 1351. "All that is required of a joint inventor is that he or she (1) contribute in some significant manner to the conception or reduction to practice of the invention, (2) make a contribution to the claimed invention that is not insignificant in quality, when that contribution is measured against the dimension of the full invention, and (3) do more than merely explain to the real inventors well-known concepts and/or the current state of the art." Id.

The evidence that 3M failed to name all proper inventors is overwhelming. It is undisputed that the height of the embossed "ridges" over the "lands" in the 3 to 45 micron range is a critical element of each claim. In fact, in an Examiner's Statement of Reasons for Allowance, the Patent Examiner expressly stated that that Patent Office allowed the '930 patent only because the prior art did not show embossed ridges in the recited 3-45 micron height range. When asked about the claimed ridge heights, Dr. Calhoun, the named inventor, testified that he did no work to determine the optimal range claimed in the patent. Instead, Dr. Calhoun suspected that another 3M employee did all work relating to ridge heights. Dr. Frank Sher, an inventor on another patent application that 3M filed the same day as the application for the '930 patent, confirmed in his deposition that he determined the optimal ridge highs. Furthermore, Dr. Sher's laboratory notebooks confirm that he determined the range for ridge height claimed in the '930 patent. On the other hand, Dr. Calhoun's laboratory notebooks contain no mention of ridge height. Thus, the jury will have no choice but to find the '930 patent invalid under 35 U.S.C. §102(f).

### 2. *Another 3M Employee Invented the Subject Matter of the '930 Patent Prior to the Named Inventors*

The United States follows a "first to invent" rule, meaning that a patent is not valid, irrespective of filing date, if someone else invented the subject matter claimed before the named inventor:

> "A person shall be entitled to a patent unless . . . . (g)… before such person's invention thereof, the invention was made in this country by another inventor who had not abandoned, suppressed, or concealed it. In determining priority of invention under this subsection, there shall be considered not only the respective dates of conception and reduction to practice of the invention, but also the reasonable diligence of one who was first to conceive and last to reduce to practice, from a time prior to conception by the other." 35 U.S.C. §102(g).

Dr. Sher's laboratory notebooks confirm that he conceived every aspect of the invention described in claim 1 of the '930 patent, including the requisite ridge heights, at least six months prior to Dr. Calhoun. Indeed, according to Dr. Calhoun, he never determined the optimal ridge heights, which form a critical part of claim 1. Furthermore, Dr. Sher did not abandon, suppress or conceal his invention. To the contrary, every aspect of claim 1 of the '930 patent is disclosed in Dr. Sher's patent on "Adhesives Having A Microreplicated Topography" – U.S. Patent No. 6,197,397. While 3M filed the application for Dr. Sher's patent the same day as it filed the application for the '930 patent, 3M can offer no explanation as to why it favored Dr. Calhoun over Dr. Sher on the latter application.

In a closely analogous case, the Federal Circuit upheld a finding of patent invalidity under section 102(g) where two employees of the same company independently conceived the same invention, but the company elected to seek patent protection for the employee who invented second in time. Checkpoint Systems, Inc. v. ADT Ltd., 54 F.3d 756, 762 (1995) ("While it may seem odd that invalidation of a patent will result when an employer had two inventors who independently made the invention, this result follows from [the patentees] own actions.... ). For the same reason, 3M's decision to seek a patent on Dr. Calhoun's purported invention, independently of the patent on Dr. Sher's invention, must result in the invalidity of Dr. Calhoun's '930 patent

because Dr. Sher invented the same subject matter first.

### *3. The '930 Patent Is Anticipated by Sawka '675 Patent*

3M's '930 patent is invalid because the inventions recited in claims 1-5 were described in a printed publication before 3M's earliest date of invention. 35 U.S.C. §102(a). Under section 102(a) a patent is invalid where "the invention was . . . described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent…." 35 U.S.C. §102(a); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000).

In this case, 3M has successfully argued that claims 1-5 of the '930 patent describe only structure without any process limitations. Accordingly, the term "multiple embossed pattern" in claims 1-5 do not require that the patterns be created in sequence. Likewise, under 3M's reading of the patent, claim 1 simply requires a surface with two separate "topographies" – one of depressions and another of ridges. 3M's broad reading opens the universe of prior art: Any prior patent disclosing two embossed topographies with depressions and ridges in the 3-45 micron range anticipates the '930 patent.

Avery did not need to look far for such a patent. 3M's own U.S. Patent No. 5,405,675 to Sawka discloses every limitation of claims 1-5 in the '930 patent. Dr. McHugh will compare the disclosure of the Sawka '675 patent to claims 1-5 and show that each limitation is met. Indeed, figure 1 of the '675 patent plainly shows a web with two distinct topographies of depressions and ridges. In the specification, the '675 patent discusses potential ridge heights, and states that for certain applications, ridges heights within the 3 to 45 micron range can be used. Thus, claims 1-5 of the '930 patent are invalid over Sawka '675.

### *4. The Claims of the '930 Patent Are Obvious*

Under 35 U.S.C. §103, a patent is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." Id.; Robotic Vision Sys., Inc. v. View Eng'g, Inc., 189 F.3d 1370, 1376 (Fed. Cir. 1999). The ultimate question of

obviousness turns on four factors: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) objective indicia of non-obviousness. Graham v. John Deere Co., 383 U.S. 1, 17 (1966).

As originally filed, 3M's application for the '930 patent claimed only two embossed patterns on a single web without any required height dimensions. At first, the Patent Examiner rejected the claims citing prior art showing embossed depressions used to impart positioning pegs on a pressure sensitive adhesive. 3M amended its application to make clear that the claims required two separate embossed patterns. But the Patent Examiner again rejected 3M's application after finding at least four prior art references that showed two embossed patterns on the same surface. In response to the rejections, 3M amended its claims a second time to specify that the second embossed pattern required very small ridges – ranging from about 3 to 45 microns. In allowing the claims to issue, the Patent Examiner explained, in a prosecution document entitled the "Statement of Reasons for Allowance," that the rejections were withdrawn because, as represented by the applicants, "The prior art does not suggest or teach a carrier web with ridges and lands that ranges from 3 to 45 μm."

As Dr. McHugh will explain, several prior art references teach precisely what 3M claimed was lacking in the prior art. Specifically, two Japanese references -- JP 2587198 and JP 59-78285 – explicitly describe embossed ridges within the prescribed size limitation, which impart air egress channels in a pressure sensitive adhesive. When combined with the prior art disclosing embossed depressions for imparting positioning pegs, every aspect of the '930 patent was well known to those skilled in the art well in advance of 3M's application. Additionally, the motivation to combine depressions for positionability with ridges for air egress was inherent in the problem to be solved. In fact, the prior art cited by the Patent Examiner provided any necessary teaching that two embossed patterns could be combined simultaneously on the same web surface. Thus, the "subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art." 35 U.S.C. §103.

## III. ESTIMATED TIME FOR TRIAL

The Court has set two weeks for trial beginning December 12, 2005. Avery estimates that it will present its defense in 3-4 trial days. Avery understands that 3M estimates 3-4 trial days for its affirmative case. Assuming one day for both jury selection and jury change, Avery anticipates that the jury could begin deliberating on December 21 or 22.

DATED: November 29, 2005

Respectfully submitted,

/S/David P. Pearson

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile

2559475v1