UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

v.

AVERY DENNISON CORPORATION,

Defendant.

Civil No. 01-1781 (JRT/FLN)

**DRAFT #2**

THE COURT'S INSTRUCTIONS TO THE JURY

---

Now that you have heard the evidence and the argument, the Court will give you instructions on the law and on your duties as jurors.

INSTRUCTION 1.

Written copies of the instructions the Court is about to give you will be available to you in the jury room. The Court emphasizes, however, that this does not mean they are more important than the Court's earlier instructions. Please remember that *all* instructions, whenever given and whether in writing or not, must be followed.

The lawyers have quite properly referred to some of the governing rules of law in their arguments. If, however, any difference appears to you between the law as stated by the lawyers and the law as stated by the Court in these instructions, you must follow the Court's instructions.

From the evidence you will decide what the facts are. You are entitled to consider the evidence in light of your own observations and experiences in the affairs of life. You will then apply those facts to the law that the Court gives you in these and in other instructions, and in that way reach your verdict. You are the sole judges of the facts; but you must follow the law as stated in the Court's instructions whether you agree with it or not.

---

(Counsel: Please note that citations will not be on the final copies provided to the jurors.)

Model Civil Jury Instructions for the Eighth Circuit, § 3.01 (2005) *(m)*;
3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 103.01 (5th Ed.) *(m)*.



DRAFT #2

INSTRUCTION 2.

At no time during the course of this trial has the Court intended to give any opinion or suggestion as to what your verdict should be – not in these instructions, nor in any of the Court's rulings, actions, or remarks.

You must perform your duties as jurors without bias or prejudice as to any party. The law does not permit you to be governed by sympathy, prejudice or public opinion. All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.

---

Model Civil Jury Instructions for the Eighth Circuit, § 3.02 (2005) (*m*);
3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 103.01 (5th Ed.) (*m*).



DRAFT #2

INSTRUCTION 3.

3M Innovative Properties Company and Minnesota Mining and Manufacturing Company are the plaintiffs in this case. In these instructions, the companies will be referred to as "the plaintiffs" or "3M."

Avery Dennison Corporation is the defendant in this case. The company will be referred to as "the defendant" or "Avery."



DRAFT #2

INSTRUCTION 4.

You should consider and decide this case as a dispute between persons of equal standing in the community, of equal worth, and holding the same or similar stations in life. A corporation is entitled to the same fair trial as a private individual. All persons, including corporations, partnerships, unincorporated associations, and other organizations, stand equal before the law, and are to be treated as equals.

3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 103.12 (5th Ed.).

INSTRUCTION 5.

The evidence in this case consists of the testimony of witnesses, documents and other things received as exhibits, and any facts that have been stipulated – that is, formally agreed to by the parties.

Please remember also what is not evidence.

1. Statements, arguments, questions and comments by lawyers representing the parties in the case are not evidence.

2. Objections are not evidence. Lawyers have a right to object when they believe something is improper. You should not be influenced by the objection. If the Court sustained an objection to a question, you must ignore the question and not guess what the answer might have been or consider any answer inadvertently given before the Court could sustain the objection.

3. [Testimony that the Court struck from the record, or told you to disregard, is not evidence and must not be considered.]

4. Anything you saw or heard about this case outside the courtroom is not evidence.

[Furthermore, a particular item of evidence is sometimes received for a limited purpose only. That is, it can be used by you only for one particular purpose, and not for any other purpose.]

Please remember also that you should not be concerned with the terms "direct evidence" and "circumstantial evidence." The law makes no distinction between direct



DRAFT #2

and circumstantial evidence. You should give all evidence the weight and value you believe it is entitled to receive.

Model Civil Jury Instructions for the Eighth Circuit, § 1.02 (2005) *(m)*.

INSTRUCTION 6.

You are to consider only the evidence in the case. But in your consideration of the evidence you are not limited to the statements of the witnesses. In other words, you are not limited solely to what you see and hear as the witnesses testify. You are permitted to draw from facts that you find have been proved, such reasonable inferences as seem justified in the light of your experience.

Inferences are deductions or conclusions that reason and common sense lead you to draw from facts that have been established by the evidence in the case.

3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.20 (5th Ed.) *(m).*

INSTRUCTION 7.

In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You may believe all of what a witness said, you may believe only part of what a witness said, or you may believe none of what a witness said.

In deciding what testimony to believe, you may consider the witness's intelligence, the opportunity the witness had to have seen or heard the things testified about, the witness's memory, any motives that witness may have for testifying a certain way, the manner of the witness while testifying, whether that witness said something different at an earlier time, the general reasonableness of the testimony, and the extent to which the testimony is consistent with any evidence that you believe.

In deciding whether or not to believe a witness, keep in mind that people sometimes hear or see things differently and sometimes forget things. You need to consider therefore whether a contradiction is an innocent misrecollection or lapse of memory or whether it is an intentional falsehood. That may depend on whether the contradiction has to do with an important fact or only with a small detail.

---

Model Civil Jury Instructions for the Eighth Circuit, § 3.03 (2005) (*m*).

INSTRUCTION 8.

The testimony of a witness may be discredited or, as we sometimes say, impeached by contradictory evidence, or by evidence that at some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness's present testimony.

If you believe any witness has been impeached and thus discredited, it is your exclusive right to give the testimony of that witness such weight, if any, as you may think it deserves.

If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony of that witness or you may give it such weight as you may think it deserves.

An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason.

3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 105.04 (5th Ed.) *(m).*

INSTRUCTION 9.

The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions. An exception to this rule exists as to those witnesses that we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, or profession may state their opinions as to relevant and material matter, in which they profess to be expert, and may also state their reasons for the opinion.

You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves. If you decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, then you may disregard the opinion entirely.

3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 104.40 (5th Ed.) *(m).*



DRAFT #2

INSTRUCTION 10.

DELETED BY AGREEMENT OF THE PARTIES – NOT RELEVANT

3 O'Malley, Grenig & Lee, *Federal Jury Practice and Instructions*, § 105.02 (5th Ed.) *(m).*

INSTRUCTION 11.

**THE PARTIES AND THEIR CONTENTIONS**

This is a patent case involving the ’930 patent, which relates to embossed webs useful as liners for adhesive-based products and for other purposes. The Court will now review for you the parties in this action and the position of the parties that you will have to consider in reaching your verdict.

3M Innovative Properties Company and Minnesota Mining and Manufacturing Company, the plaintiffs in this case, contend that Avery-Dennison Corporation, the defendant in this case, is infringing the ’930 patent by its making, selling and offering for sale Avery’s EZ Film products.

Avery denies that it is infringing and contends that the ’930 patent is invalid for a number of reasons.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation §§ 4, 4.1 – 4.3.



DRAFT #2

INSTRUCTION 12.

**SUMMARY OF PATENT ISSUES**

There are three major issues in this case:

1) Whether Avery directly infringes the ’930 patent (literally or under the doctrine of equivalents);

2) Whether Avery indirectly infringes the ’930 patent (by inducing infringement or contributing to infringement)

3) Whether the patent is invalid (by prior invention, incorrect inventorship, anticipation, or obviousness).

For the purpose of this case, you are not to consider the issues of infringement of claims 6-12 of the ’930 patent or the issue of damages.

Direct Infringement ........................................ Instruction #

Literal ........................................ Instruction #

Under the Doctrine of Equivalents ........................................ Instruction #

Indirect Infringement ........................................ Instruction #

Contributory Infringement ........................................ Instruction #

Inducing Infringement ........................................ Instruction #

Validity ........................................ Instruction #

Prior Invention ........................................ Instruction #

Inventorship ........................................ Instruction #

Anticipation ........................................ Instruction #

Obviousness ........................................ Instruction #

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 4.4.

INSTRUCTION 13.

## BURDENS OF PROOF

As the Court has explained, in any legal action, facts must be proven by a required standard of evidence, known as the "burden of proof." In a patent case such as this, there are two different burdens of proof that are used.

The first burden of proof standard is called "preponderance of the evidence." It requires that, in order for a party to prevail, you must be persuaded that what the party seeks to prove is **more probably true than not true**.

The second burden of proof standard is called "clear and convincing evidence." It is a higher one. It requires that you must be persuaded that it is **highly probable** that what the party seeks to prove is true.

You may have heard of a burden of proof that is used in criminal cases called "beyond a reasonable doubt." That requirement is the highest burden of proof. It does not apply to a patent case such as this one, and you should, therefore, put it out of your mind.

A fact is determined by considering all of the evidence and deciding which evidence is more believable. If, on any issue in the case, the evidence is equally balanced, you cannot find that issue has been proved. The greater number of witnesses or exhibits a party has presented does not necessarily determine the preponderance of the evidence.

For each issue, the Court will review for you the burden of proof to apply, either the more probable than not standard or the highly probable standard, to each issue in this case.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation §§ 1, 4.4.



DRAFT #2

INSTRUCTION 14.

## THE PATENT SYSTEM

At the beginning of the trial, you were shown a video presentation providing general information about patents and the patent system. The Court will now give you more detailed instructions about the patent laws that specifically relate to this case.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 5.



DRAFT #2

INSTRUCTION 15.

**THE CLAIMS OF THE PATENT IN SUIT**

As you learned from the video presentation at the beginning of the trial, the claims of a patent are the numbered sentences at the end of the patent. The claims describe the invention made by the inventor and describe what the patent owner owns and what the patent owner may prevent others from doing. Claims may describe products, such as machines or chemical compounds, or processes for making or using a product.

Claims are comprised of words and phrases, called "limitations". For example, a claim that covers the invention of a table may recite the tabletop, four legs and the glue that secures the legs to the tabletop. The tabletop, legs and glue are each a separate limitation of the claim.

The claims at issue here (Claims 1-5) are copied below.

What is claimed is:

1. A carrier web, comprising: at least one surface that has a multiple embossed pattern having a first embossed pattern and a second embossed pattern, wherein the first embossed pattern forms an array of depressions, wherein the depressions of the first embossed pattern are in the second embossed pattern, wherein the second embossed pattern comprises lands and ridges between the lands, and wherein the height of the ridges over the lands ranges from about 3 to about 45 µm.

2. The web of claim 1, wherein a depth of depressions caused in the surface by any embossing pattern can range from a minor fraction of an original thickness of web to almost the entire original thickness.



**DRAFT #2**

3. The web of claim 1, wherein the surface can be embossed with any pattern ranging from a minor fraction of an area of the surface to the entire area of the surface.

4. The web of claim 1, wherein a shape of embossings for any pattern can range from a constant radius of curvature to a polygonal shape of at least 2 surfaces.

5. The web of claim 1, wherein a width of embossings in any pattern can range from about 1 µm to about 10,000 µm.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 6.

INSTRUCTION 16.

## CONSTRUCTION OF THE CLAIMS

In deciding whether or not an accused product infringes a patent, the first step is to understand the meaning of the words in the patent claims.

It is the Court's job to determine what the patent claims mean and to instruct you about that meaning. You must accept the meanings the Court gives you and use them when you decide whether or not the patent is infringed, and whether or not it is invalid.

Before you are instructed about the meaning of the words of the claims (see Instruction #??), the Court will explain to you the different types of claims that are at issue in this case.

It may be helpful to refer to the copy of the '930 patent that you have been given during the discussion of the claims at issue here. The claims are at the end of the patent, starting in column 9.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 6.1.

INSTRUCTION 17.

## INDEPENDENT AND DEPENDENT CLAIMS

Patent claims may exist in two forms, referred to as independent claims and dependent claims. An independent claim does not refer to any other claim of the patent. Thus it is not necessary to look at any other claim to determine what an independent claim covers. Claim 1 of the ’930 patent, for example, is an independent claim.

A dependent claim refers to at least one other claim in the patent. A dependent claim includes each of the limitations of the other claim or claims to which it refers, as well as the additional limitations recited in the dependent claim itself. Therefore, to determine what a dependent claim covers, it is necessary to look at both the dependent claim and the other claim or claims to which it refers.

Claims 2 to 5 are dependent claims. They each refer to claim 1. To determine what dependent claims 2 to 5 cover, the words of those claims and the words of claim 1 must be read together.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 6.2.



DRAFT #2

INSTRUCTION 18.

## COMPRISING CLAIMS

The beginning portion, or preamble, of claim 1 of the '930 patent uses the word "comprising." "Comprising" means "including" or "containing." A claim that uses the word "comprising" or "comprises" is not limited to products having only the elements that are recited in the claim, but also covers products that add additional elements.

Let's take our example of the claim that covers a table. If the claim recites a table "comprising" a tabletop, legs and glue, the claim will cover any table that contains these structures, even if the table also contains other structures, such as a leaf or wheels on the legs.

Claims 2 to 5 of the '930 patent also use the "comprising" language because they are dependent on claim 1.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 6.5.1.



DRAFT #2

INSTRUCTION 19.

**LIMITATIONS OF THE CLAIMS AT ISSUE**

You have been instructed as to the types of claims at issue in this case. The Court will next define the meaning of the words in the patent claims at issue. You must use the definitions the Court provides to you in your consideration of infringement and invalidity issues.

"**Embossed**" means a topography on a web or on tooling having an effective three-dimensional pattern that generates a difference in surface planar dimension in the liner or the tooling. For purposes of this definition "tooling" means a device that can be used to impress a pattern into a web.

"**Multiple embossed**" means two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of embossing.

"**Array**" means an orderly arrangement.

"**Ridges**" means an elongated crest or raised strip.

"**Pattern**" means any formation of embossings that can utilize any theory of geometry, including without limitation, Euclidian geometry and fractal geometry.

"**Depressions**" means lower, sunken, or depressed areas of the carrier web. Depression may be either empty or filled according to any number of processes or uses.

"**Carrier web**" means material with at least one surface that carries, can carry, or has carried another material.

"**Lands**" means areas of the surface of the carrier web between the ridges.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 6.6.



DRAFT #2

INSTRUCTION 20.

**PATENT INFRINGEMENT, GENERALLY – DIRECT INFRINGEMENT**

A patent owner has the right to stop others from using the invention covered by its patent claims during the life of the patent. If any person makes, uses, sells or offers to sell what is covered by the patent claims without the patent owner's permission, that person is said to infringe the patent. This type of infringement is called "direct infringement." In addition to enforcing a patent against a direct infringer, a patent owner also has the right to enforce the patent against those who are known as "indirect infringers."

In reaching your decision on infringement, keep in mind that only the claims of a patent can be infringed. You must compare patent claims 1 to 5, as the Court has defined them, to the accused product, and determine whether or not there is infringement. You should not compare Avery's EZ Film product with any specific examples set out in the '930 patent, or with 3M's product. The only correct comparison is with the language of the claim itself, with the meaning the Court has given you.

You must consider each claim individually and must reach your decision as to each assertion of infringement based on the Court's instructions about the meaning and scope of the claims, the legal requirements for infringement, and the evidence presented to you by the parties. The Court will first discuss direct infringement.



DRAFT #2

Whether or not Avery knew that what it was doing was an infringement does not matter. A person may be found to be a direct infringer of a patent even if he or she believed in good faith what he or she was doing was not an infringement of any patent, and even if he or she did not even know of the patent.

In this case, 3M asserts that Avery's EZ Film product directly infringes claims 1 to 5 of the '930 patent. It is your job to determine whether or not 3M has proved by the **more probable than not** standard that Avery has directly infringed any of claims 1 to 5 of the '930 patent.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.1.



DRAFT #2

INSTRUCTION 21.

**INFRINGEMENT – EVERY CLAIM LIMITATION MUST BE PRESENT, EITHER LITERALLY OR UNDER THE DOCTRINE OF EQUIVALENTS**

In order to infringe a patent claim, a product must include every limitation of the claim. If Avery's product omits even a single structure recited in a claim, then you must find that Avery has not infringed that claim. You must consider each of the '930 patent claims separately.

A claim limitation may be present in an accused product in one of two ways, either literally or under what is known as the doctrine of equivalents. A claim limitation is literally present if it exists in the accused product just as it is described in the claim language, either as the Court has explained that language or, if it was not explained, as you understand it.

A claim limitation is present in an accused product under the doctrine of equivalents if the difference between the claim limitation and a comparable element of the accused product are insubstantial. In deciding whether there is infringement under the doctrine of equivalents, each element or limitation contained in a patent claim is important. Therefore, the question is whether the Avery's EZ Film product contains an equivalent for each element of the claim. The question is not whether the Avery's product overall is equivalent to the 3M's invention as a whole.



DRAFT #2

One way to apply the doctrine of equivalents is to look at whether or not the claim element or limitation and a comparable element of the accused product performs substantially the same function, in substantially the same way, to achieve substantially the same result. Another way is to consider whether or not people of ordinary skill in the field of the invention believe that the claim limitation and a comparable element of the accused product are interchangeable. However, the doctrine of equivalents cannot be used to find infringement when the accused product is missing a claim element or limitation entirely.

A person of ordinary skill is a person with average education and training in the field. The belief of such a person must be based on what was known at the time of the activities which constitute the alleged infringement, and not what was known at the time the patent application was filed or when the patent was issued. Thus, the inventor need not have foreseen, and the patent need not describe, all potential equivalents to the invention covered by the claims. Also, slight changes in technique or improvements made possible by technology developed after the patent application is filed may still be considered equivalent for the purpose of the doctrine of equivalents.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.3.

INSTRUCTION **21a**

Even if the accused product falls within the literal scope of claims 1 to 5 of the ’930 patent, the product does not infringe that claim if the product is so far changed in principle from the invention described in the patent specification that persons of ordinary skill in the field would find that the product performs the required function of the invention in a substantially different way.

---

Northern District of California Model Patent Jury Instructions; *Graver Tank & Mfg. V. Linde Air Prod. Co.*, 339 U.S. 605, 08-09 (1950)..



**DRAFT #2**

INSTRUCTION 22.

## DETERMINATION OF INFRINGEMENT

Taking each claim of the ’930 patent separately, if you find that 3M proved that it is **more probable than not** that each and every limitation of the claim is present, either literally or under the doctrine of equivalents, in Avery’s accused EZ Film product, then you must find that Avery’s EZ Film product infringes that claim.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.7.



DRAFT #2

INSTRUCTION 23.

**INFRINGEMENT OF DEPENDENT CLAIMS**

Instructions on infringement so far have related to independent claims. The ’930 patent also contains dependent claims. A dependent claim includes each of the limitations of the independent claim to which it refers, plus additional elements.

If you find that independent claim 1 of the ’930 patent has been infringed, you must separately determine whether dependent claims 2 to 5 have also been infringed. If you find that the independent claim 1 is not infringed, then you must also find that the dependent claims 2 to 5 are not infringed.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.10.



DRAFT #2

INSTRUCTION **23a**

**INFRINGEMENT AND IMPROVEMENTS TO PATENTED INVENTION**

Avery has presented evidence that its EZ Film represents an improvement of the invention described in the ’930 patent claims. Proof of this fact does not necessarily mean that the accused product does not infringe 3M’s patent claims. The tests for infringement remain as the Court has instructed. As long as you find that Avery’s accused product includes all of the limitations of at least one of the ’930 patent claims, either literally or under the doctrine of equivalents, then you must find that the ’930 patent claims are infringed by Avery’s accused product, despite Avery’s alleged improvements.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.11.

INSTRUCTION 24.

**INDIRECT INFRINGEMENT**

As you have been told, in addition to enforcing a patent against a direct infringer, a patent owner may also enforce the patent against indirect infringers. There are two types of indirect infringement: inducing infringement and contributory infringement. The act of encouraging or inducing others to infringe a patent is called "inducing infringement." The act of contributing to the infringement of others by, for example, supplying them with components used in the patented invention is called "contributory infringement."

There can be no indirect infringement unless someone is directly infringing the patent. Thus, in order to prove that Avery is inducing another person to infringe or contributing to the infringement of another, 3M must prove that it is **more probable than not** that the other person is directly infringing at least one claim of the patent.

In this case, 3M accuses Avery of inducing or contributing to the infringement of claims 1 through 5 of the '930 patent. 3M must prove that it is **more probable than not** that Avery has induced or contributed to the infringement of any of these claims.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.12.



**DRAFT #2**

INSTRUCTION 25.

## INDUCING PATENT INFRINGEMENT

A person induces patent infringement if he or she purposefully causes, urges or encourages another to infringe a patent. Inducing infringement cannot occur unintentionally. This is different from direct infringement, which, as you've been told, can occur unintentionally. In order to prove inducement, the patent owner must prove that it is more probable than not that the accused inducer knew of the patent and encouraged or instructed another person to use a product in a manner that infringes the patent. The patent owner must also prove that it is more probable than not that the other person infringed the patent. A person can be an inducer even if he or she thought that what he or she was encouraging or instructing the other person to do was not an infringement.

3M asserts that Avery induced patent infringement. 3M must prove four things by the **more probable than not** standard:

> *First*, Avery encouraged or instructed another person how to use a product in a manner that you, the jury, find infringes the '930 patent claims.
>
> *Second*, Avery knew of the '930 patent.
>
> *Third*, Avery knew or should have known that its encouragement or instructions would likely result in the other person doing that which you find to be an infringement of the '930 patent.
>
> *Fourth*, the other person infringed the '930 patent.



DRAFT #2

If, and only if, you are persuaded of each of these four things may you find that Avery induced patent infringement.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.12.1.

INSTRUCTION 26.

**CONTRIBUTORY INFRINGEMENT**

Contributory infringement can occur when a supplier provides a part or a component to another for use in a patented product or machine, or in a patented process. In order for there to be contributory infringement, the person who received the component must infringe the patent. The component must also have certain characteristics. First, the component must be a material part of the invention. Second, the component must be especially made or adapted for use in a manner that infringes the patent, and the supplier must know that the component was especially made for that use. Third, the component must not have a substantial use that does not infringe the patent. A component that has a number of non-infringing uses is often referred to as a staple or commodity article. Providing such a staple or commodity article is not contributory infringement, even if the person to whom the article was supplied uses it in an infringing manner.

In this case, 3M asserts that Avery's selling or supplying EZ Film is contributing to the infringement of claims 1 through 5 of the '930 patent. In order to establish that Avery has contributorily infringed those claims, 3M must prove five things by the **more probable than not** standard:

*First*, Avery knew of the patent.

*Second*, Avery's EZ Film is a material component of the claimed invention and Avery sold or supplied that component.

*Third*, Avery knew that the intended use of the product would infringe the patent.



DRAFT #2

*Fourth*, the component is not a staple or commodity article.

*Fifth*, the component was actually used in a manner that you find infringes the patent.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 7.12.2.

INSTRUCTION 27.

## VALIDITY – IN GENERAL

Only a valid patent may be infringed. For a patent to be valid, the invention claimed in the patent must be new, useful and non-obvious. A patent cannot take away from people their right to use what was known or what would have been obvious when the invention was made. The terms “new,” “useful” and “non-obvious” have special meanings under the patent laws. The Court will explain these terms to you in the discussion of Avery’s grounds for asserting invalidity.

Avery has challenged the validity of the ’930 patent claims on a number of grounds. Avery must prove that a patent claim is invalid by the **highly probable** standard.

The Court will now explain to you each of Avery’s grounds for invalidity in detail. In making your determination as to invalidity, you should consider each claim separately.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.



DRAFT #2

INSTRUCTION 28.

**THE PRIOR ART**

Under the patent laws, a person is entitled to a patent only if the invention claimed in the patent is new and unobvious in light of what came before. That which came before is referred to as the "prior art".

Avery is relying on various items of prior art. Avery and 3M agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '930 patent:

United States Patent No. 5,405,675 - (the Sawka '675 patent)

United States Patent No. 5,141,790 – (the Calhoun '790 patent)

United States Patent No. 3,301,741 – (the Henrickson '741 patent)

United States Patent No. 3,887,678 – (the Lewicki '678 patent)

United States Patent No. 5,229,186 – (the Tribble '86 patent)

European Patent Office Publication No. 0 313766 (the Cabe patent)

Patent Abstracts of Japan Publication No. 59078285A – October 8, 1982
(the Mitsui patent)

Utility Model Application No. 2587198 - Translated from Japanese

United States Patent No. 4,025,159 (McGrath)

United States Patent No. 3,989,775 (Jack)

United States Patent No. 4,713,272

United States Patent No. 4,713,273

United States Patent No. 5,296,277



DRAFT #2

United States Patent No. 5,362,516

United States Patent No. 3,611,919

United States Patent No. 4,320,162

United States Patent No. 5,382,464

[British ’060]

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.3.

INSTRUCTION 29.

**PRIOR ART – DATE OF INVENTION**

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called “date of invention”.

The Court will now tell you how to determine that date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as “conception” of the invention. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as “reduction to practice.” An invention is said to be “reduced to practice” when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a “constructive reduction to practice.” In this case, that date is December 31, 1996. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the

prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruption necessitated by the everyday problems and obligations on the inventor or others working with him or her do not prevent a finding of diligence.

The Court will now describe the specific requirements for the prior art category relied on by Avery in this case that are in dispute.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.3.1.

INSTRUCTION 30.

**PRIOR ART – PRIOR INVENTION**

An invention made by another person before the inventor on the patent made the invention is prior art to the patent claim, unless that other person abandoned, suppressed or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table on March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercise "reasonable diligence" in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort.



DRAFT #2

Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

Let's change our example slightly. Mr. Smith conceived of his table on February 1 and reduced it to practice on April 1. Ms. Jones conceived of the table on January 1, one month before Mr. Smith's conception, and built it on May 1, one month after Mr. Smith's reduction to practice. If Ms. Jones was reasonably diligent in building the table from the time just before Mr. Smith's February 1 conception up to the time that she built the table on May 1, she is the first inventor of the table and her invention is prior art to Mr. Smith's patent claims.

The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

In this case, Avery contends that the laboratory notebooks of Dr Frank Sher evidence his prior invention to the '930 patent claims.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.3.9.



**DRAFT #2**

INSTRUCTION 31.

**INVENTORSHIP**

The patent laws require that the inventor on a patent be the true inventor of the invention covered by the patent claims. In some patents, there is more than one inventor. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent. A patent is invalid if it fails to name all of the joint inventors.

To be an inventor, a person must contribute in some significant manner to the claimed invention. The contribution must not be insignificant in quality, when that contribution is measured against the dimension of the full invention. Further, the person must do more than merely provide well-known principles or explain the state of the art.

In this case, defendant contends that claims 1 to 5 of the ’930 patent are invalid because Dr. Frank Sher was a co-inventor of the ’930 patent and was not identified as a co-inventor. If you find that defendant has proved that it is **highly probable** that Dr. Frank Sher was a co-inventor of claims 1 to 5 of the ’930 patent, then you must find that the claims are invalid.

---

*Pannu v. Iolab Corporation*, 155 F.3d 1344 (Fed. Cir. 1998); ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.4.

INSTRUCTION 32.

**ANTICIPATION/LACK OF NOVELTY**

A person cannot obtain a patent on an invention if someone else has already made the same invention. In other words, the invention must be new. If an invention is not new, we say that it was “anticipated” by the prior art. An invention that is “anticipated” by the prior art is not entitled to patent protection. A party challenging the validity of a patent must prove anticipation by the **highly probable** standard.

In order for a patent claim to be anticipated by the prior art, each and every limitation of the claim must be present within a single item of prior art, whether that prior art is a publication, a prior patent, a prior invention, a prior public use or sale, or some other item of prior art. You may not find that the prior art anticipates a patent claim by combining two or more items of prior art.

A printed publication or patent will not be an anticipation unless it contains a description of the invention covered by the patent claims that is sufficiently detailed to teach a skilled person how to make and use the invention without undue experimentation. That means that a person skilled in the field of the invention reading the printed publication or patent would be able to make and use the invention using only an amount of experimentation that is appropriate for the complexity of the field of the invention and for the level of expertise and knowledge of persons skilled in that field.

In deciding whether or not a single item of prior art anticipates a patent claim, you should consider that which is expressly stated or presented in the item of prior art, and also that which is inherently present. Something is inherent in an item of prior art if it is



DRAFT #2

always present in the prior art or always results from the practice of the prior art, and if a skilled person would understand that to be the case.

In this case, Avery contends that claims 1 to 5 of the ’930 patent are invalid because they are anticipated by United States Patent No. 5,405,675 (the Sawka ’675 patent)

If you find that Avery has proved that it is **highly probable** that claims 1 to 5 are anticipated, then you must find that the claims are invalid.

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.6.



DRAFT #2

INSTRUCTION 33.

**OBVIOUSNESS**

As mentioned earlier, an inventor is not entitled to a patent if his or her invention would have been obvious to a person of ordinary skill in the field of the invention at the time he the invention was made.

Unlike anticipation, obviousness may be shown by considering more than one item of prior art. The question is, would it have been obvious for a skilled person who knew of the prior art to make the claimed invention? If the answer to that question is yes, then the patent claims are invalid. Avery has the burden of proving by the **highly probable** standard that claims 1 to 5 of the ’930 patent are invalid for obviousness.

Obviousness is determined from the perspective of a person of ordinary skill in the field of the invention. The issue is not whether the claimed invention would have been obvious to you, to me as a judge, or to a genius in the field of the invention. Rather, the question is whether or not the invention would have been obvious to a person of ordinary skill in the field of the invention.

In deciding obviousness, you must avoid using hindsight; that is, you should not consider what is known today or what was learned from the teachings of the patent. You should not use the patent as a road map for selecting and combining items of prior art. You must put yourself in the place of a person of ordinary skill in the inventor’s field at the time the invention was made.



**DRAFT #2**

You must also keep in mind that the test for obviousness is not whether or not it would have been obvious to try to make the invention, but rather whether or not the invention would have been obvious to a person of ordinary skill in the inventor's field at the time the invention was made.

In determining whether or not these claims would have been obvious, you should make the following determinations:

*First*, what is the scope of and content of the prior art?

*Second*, what differences, if any, are there between the invention of the claims of the patent and the prior art?

*Third*, what was the level of ordinary skill in the art at the time the invention was made?

*Fourth*, are there any objective indications of non-obviousness?

Against this background, you must decide whether or not the invention covered by the '930 patent claims would have been obvious.

The Court will now describe in more detail the specific determinations you must make in deciding whether or not the claimed invention would have been obvious.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.7.



DRAFT #2

INSTRUCTION 34.

**THE SCOPE AND CONTEXT OF THE PRIOR ART**

Determining the scope and content of the prior art means that you should determine what is disclosed in the prior art relied on by Avery. You must decide whether this prior art was reasonably relevant to the particular problem the inventor faced in making the invention covered by the patent claims. Such relevant prior art includes prior art in the field of the invention, and also prior art from other fields that a person of ordinary skill would look to when attempting to solve the problem.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.8.1.



DRAFT #2

INSTRUCTION 35.

**DIFFERENCES BETWEEN THE INVENTION OF THE CLAIMS AND THE PRIOR ART**

In determining the differences between the invention covered by the patent claims and the prior art, you should not look at the individual differences in isolation. You must consider the claimed invention as a whole and determine whether or not it would have been obvious in light of all of the prior art.

In deciding whether to combine what is described in various items of prior art, you should keep in mind that there must be some motivation or suggestions for a skilled person to make the combination covered by the patent claims. You should also consider whether or not the prior art "teaches away" from the invention covered by the patent claims. The question to be answered is: Would someone reading the prior art be discouraged from following the path taken by the inventor?

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.8.2; Federal Circuit Bar Association Model Patent Jury Instructions.



DRAFT #2

INSTRUCTION 36.

**LEVEL OF ORDINARY SKILL**

Obviousness is determined from the perspective of a person of ordinary skill in the art. This person is presumed to know all of the prior art, not just what the inventor may have known. When faced with a problem, this ordinary skilled person is able to apply his or her experience and ability to the problem and also to look to any available prior art to help solve the problem.

Factors to consider in determining the level of ordinary skill in the art include the educational level and experience of people working in the field, the types of problems faced by workers in the art and the solutions found to those problems, and the sophistication of the technology in the field.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.8.3.



DRAFT #2

INSTRUCTION 37.

## OBJECTIVE INDICATIONS CONCERNING OBVIOUSNESS

You should also consider what are referred to as objective indications of non-obviousness. Some of these indications of non-obviousness are:

1. Commercial success of products covered by the patent claims.
2. A long-felt need for the invention.
3. Failed attempts by other to make the invention.
4. Copying of the invention by others in the field.
5. Unexpected results achieved by the invention.
6. Praise of the invention by the infringer or others in the field.
7. The taking of licenses under the patent by others.
8. Expressions of surprise by experts and those skilled in the art at the making of the invention.
9. The patentee proceeded contrary to the accepted wisdom of the prior art.

The presence of any of these objective indications may suggest that the invention was not obvious. These objective indications are only relevant to obviousness if there is a connection, or nexus, between them and the invention covered by the patent claims. For example, commercial success is relevant to obviousness only if the success of the product is related to a feature of the patent claims. If the commercial success is the result of something else, such as innovative marketing, and not to a patented feature, then you should not consider it to be an indication of non-obviousness.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.8.4.

INSTRUCTION 38.

**DETERMINATION OF OBVIOUSNESS**

Avery contends that the invention claimed in claims 1 to 5 of the ’930 patent would have been obvious to a person of ordinary skill in the field of the invention at the time the invention was made in light of the following items of prior art in combination with one another:

United States Patent No. 5,141,790 – (the Calhoun ’790 patent)

United States Patent No. 3,301,741 – (the Henrickson ’741 patent)

United States Patent No. 3,887,678 – (the Lewicki ’678 patent)

United States Patent No. 5,229,186 – (the Tribble ’186 patent)

European Patent Office Publication No. 0 313766 (the Cabe patent)

Patent Abstracts of Japan Publication No. 59078285A – October 28, 1982
(the Mitsui patent)

Utility Model Application No. 2587198 - Translated from Japanese

If you find that Avery has proved obviousness by the **highly probable** standard, then you must find that the claims are invalid for obviousness

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.8.5.



DRAFT #2

INSTRUCTION 39.

In conducting your deliberations and returning your verdict, there are certain rules you must follow.

*First*, when you go to the jury room, you must select one of your members as your foreperson. That person will preside over your deliberations.

*Second*, it is your duty, as jurors, to discuss this case with one another in the jury room. You should try to reach agreement if you can do so without infringing on individual judgment, because a verdict must be unanimous.

Each of you must make your own conscientious decision, but only after you have considered all the evidence, discussed it fully with your fellow jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinions if the discussion persuades you that you should. But do not change your opinion simply because other jurors think it is right, or simply in order to reach a verdict. Remember at all times that you are not partisans. You are judges – judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

*Third*, if you need to communicate with the Court during your deliberations, you may send a note to me through the marshal, signed by one or more jurors. The Court will respond as soon as possible in writing. Remember that you should not tell anyone during your deliberations – including me – how the jury stands, numerically or otherwise.

*Fourth*, your verdict must be based solely on the evidence and on the law that the Court has given to you in these instructions. Nothing The Court have said or done is intended to suggest what your verdict should be – that is entirely for you to decide.

*Finally*, the verdict form is simply the written notice of the decision that you reach in this case. You will take this form to the jury room and when each of you has agreed on the verdict, your foreperson will fill in the form, sign and date it, and advise the marshal that you are ready to return to the courtroom.



**DRAFT #2**