IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

vs.

AVERY-DENNISON CORPORATION,

Defendant.

Civil Action No. 01-CV-1781 (JRT/FLN)

**AVERY DENNISON CORPORATION'S REVISED PROPOSED JURY INSTRUCTIONS NUMBERS 29, 30 AND 31**

Avery respectfully submits revised proposed jury instructions Nos. 29 (Date of Invention), 30 (Inventorship) and 31 (Prior Invention) and case law.

Respectfully submitted,

/S/ David P. Pearson
David P. Pearson
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 – Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

INSTRUCTION 29.

**PRIOR ART – DATE OF INVENTION**

Many of the different categories of prior art refer to the date at which the inventor made the invention. This is called "date of invention".

The Court will now tell you how to determine that date.

There are two parts to the making of an invention. The inventor has the idea of the invention. This is referred to as "conception" of the invention. Conception is the formation in the mind of the inventor of a definite and permanent idea of the complete and operative invention, as it is hereafter to be applied in practice. A conception of an invention is complete when the inventor has formed the idea of how to make and use every aspect of the claimed invention, and all that is required is that it be made without the need for any further inventive effort. The actual making of the invention is referred to as "reduction to practice". An invention is said to be "reduced to practice" when it is made and shown to work for its intended purpose.

Under the patent laws, the date of invention is generally the date that the patent application was filed. This is also referred to as a "constructive reduction to practice". In this case, that date is December 31, 1996. Ordinarily, art dated before the application filing date is prior art to the patent claims.

There are, however, two circumstances under which art dated before the application filing date is not prior art. The first occurs when the inventor on the patent

reduced the invention to practice before the date of the art. Art dated after the reduction to practice is not prior art to the patent claims.

The second circumstance under which art dated before the application filing date is not prior art occurs when the inventor conceived of the invention before the date of the prior art and exercised reasonable diligence from just before the date of the art up to the date of the inventor's reduction to practice. In that case, art dated after the conception date is not prior art to the patent claims.

Remember, reduction to practice occurs either as of the filing of the patent application or when the invention was actually made and was shown to work for its intended purpose. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruption necessitated by the everyday problems and obligations on the inventor or others working with him or her do not prevent a finding of diligence.

The Court will now describe the specific requirements for the prior art category relied on by Avery in this case that are in dispute.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.3.1. *Hybritech, Inc. v. Monoclonal Antibodies, Inc.*, 802 F.2d 1367, 1376 (Fed. Cir. 1986); *Sewall v. Walters*, 21 F.3d 411, 415 (Fed. Cir. 1994).

INSTRUCTION 30.

## INVENTORSHIP

The patent laws require that the inventory on a patent be the true inventor of the invention covered by the patent claims. In some patents, there is more than one inventor. Inventors may apply for a patent jointly even though (1) they did not physically work together or at the same time, (2) each did not make the same type or amount of contribution, or (3) each did not make a contribution to the subject matter of every claim of the patent. A patent is invalid if it fails to name all of the joint inventors.

To be an inventor, a person must contribute in some significant manner to the claimed invention. The contribution must not be insignificant in quality, when that contribution is measured against the dimension of the full invention. Further, the person must do more than merely provide well-known principles or explain the state of the art.

In this case, defendant contends that claims 1 to 5 of the '930 patent are invalid because one or more co-inventors of the '930 patent were not identified as a co-inventor. If you find that defendant has proved that it is **highly probable** that any person other than Clyde Calhoun and David Koskenmaki was a co-inventor of claims 1 to 5 of the '930 patent, then you must find that the claims are invalid.

---

*Pannu v. Iolab Corporation*, 155 F.3d 1344 (Fed. Cir. 1998); ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.4.

INSTRUCTION 31.

**PRIOR ART – PRIOR INVENTION**

An invention made by another person before the inventor on the patent made the invention is prior art to the patent claim, unless that other person abandoned, suppressed or concealed his or her invention.

As a general rule, the first person to reduce an invention to practice is said to be the first inventor. An invention is reduced to practice either when a patent application is filed or when the invention is made and shown to work for its intended purpose. Thus, if another person reduces to practice an invention before the inventor on the patent, then the reduction to practice by the other person will be prior art to the patent claims.

Let's consider an example. Mr. Smith has a patent on a table. He reduced his table to practice on April 1. Ms. Jones invents the same table. She built her table on March 1, one month before Mr. Smith reduced his table to practice. Ms. Jones' invention of the table is prior art to Mr. Smith's patent claims because Ms. Jones reduced her table to practice one month before Mr. Smith's reduction to practice.

There is, however, an important exception to this general rule. Someone who was first to conceive of an invention but reduced it to practice after someone else will be the first inventor if he or she was the first to conceive of the invention and he or she exercise "reasonable diligence" in reducing the invention to practice from a time just before the other person's conception. Conception of an invention occurs when the inventor has

formed the idea of how to make and use every aspect of the patented invention, and all that is required is that it be made, without the need for any further inventive effort. Reasonable diligence means that the inventor worked continuously on reducing the invention to practice. Interruptions necessitated by the everyday problems and obligations of the inventor or those working with him or her do not prevent a finding of diligence.

Let's change our example slightly. Mr. Smith conceived of his table on February 1 and reduced it to practice on April 1. Ms. Jones conceived of the table on January 1, one month before Mr. Smith's conception, and built it on May 1, one month after Mr. Smith's reduction to practice. If Ms. Jones was reasonably diligent in building the table from the time just before Mr. Smith's February 1 conception up to the time that she built the table on May 1, she is the first inventor of the table and her invention is prior art to Mr. Smith's patent claims.

The final requirement for a prior invention to be prior art is that the prior inventor did not abandon, suppress or conceal his or her invention. Generally, an invention was not abandoned, suppressed or concealed if the invention was made public, sold or offered for sale, or otherwise used for a commercial purpose. The filing of a patent application that discloses the invention is evidence that the invention was not abandoned, suppressed or concealed.

In this case, Avery contends the laboratory notebook of Dr. Frank Sher evidences a prior invention to the '930 patent claims.

---

ABA Section of Litigation, Model Jury Instructions: Patent Litigation § 9.3.9.

LEXSEE 21 F3D 411

**JEFFREY R. SEWALL and RONALD G. WALTERS, Appellants, v. RONALD G. WALTERS, Appellee.**

**93-1230**

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

*21 F.3d 411; 1994 U.S. App. LEXIS 6567; 30 U.S.P.Q.2D (BNA) 1356*

**April 7, 1994, Decided**

**SUBSEQUENT HISTORY:** Rehearing Denied May 19, 1994, Reported at: *1994 U.S. App. LEXIS 12419.*

**PRIOR HISTORY:** **[**1]** Appealed from: United States Patent and Trademark Office Board of Patent Appeals and Interferences. Patent Interference No. 102,434

**DISPOSITION:** AFFIRMED.

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Appellants challenged an order of the United States Patent and Trademark Office Board of Patent Appeals and Interferences finding that appellee was the sole inventor of a particular count of a joint invention.

**OVERVIEW:** Appellee inventor was a consultant for a technology corporation and appellant was an employee of the corporation. The corporation filed a patent application and named appellee and appellant as joint inventors. The corporation was the assignee of the patent application. Appellee later filed an identical application, which was unassigned, asserting sole inventorship of the subject matter of a particular count of the invention. Appellant argued that he was also a joint inventor of the subject matter. The Board of Patent Appeals and Interferences held that appellee was the sole inventor of the subject matter in question. On appeal, the court held that any co-inventive contributions that appellant might have made to the subject matter of the count were completely optional.

**OUTCOME:** The order of the Board of Patent Appeals finding that appellee was the sole inventor of the subject matter of the particular count was affirmed, because the count did not require the use of appellant co-inventor's contributions.

**LexisNexis(R) Headnotes**

***Patent Law > Originality > Joint & Sole Inventorship***
***Patent Law > U.S. Patent & Trademark Office Proceedings > General Overview***
***Patent Law > Jurisdiction & Review > Standards of Review > General Overview***

[HN1] Determining "inventorship" is nothing more than determining who conceived the subject matter at issue, whether that subject matter is recited in a claim in an application or in a count in an interference. Conception, and consequently inventorship, are questions of law that a court reviews de novo; of course, any facts found in reaching an inventorship holding are reviewed for clear error.

***Patent Law > Originality > Joint & Sole Inventorship***
***Patent Law > Date of Invention & Priority > General Overview***

[HN2] In an originality case, the issue is not who is the first or prior inventor, but who made the invention. The "inventorship" issue to be decided is thus merely who conceived the invention for which patent protection is sought, and not who first conceived that invention.

***Patent Law > Claims & Specifications > Enablement Requirement > General Overview***
***Patent Law > Originality > Joint & Sole Inventorship***
***Patent Law > Date of Invention & Priority > General Overview***

[HN3] Conception exists when a definite and permanent idea of an operative invention, including every feature of the subject matter sought to be patented, is known. Conception is complete when one of ordinary skill in the art could construct the apparatus without unduly extensive research or experimentation.

***Patent Law > Ownership > Patents as Property***
***Patent Law > Originality > Joint & Sole Inventorship***
[HN4] It is elementary that inventorship and ownership are separate issues. Inventorship is a question of who actually invented the subject matter claimed in a patent. Ownership, however, is a question of who owns legal title to the subject matter claimed in a patent, patents having the attributes of personal property. Who ultimately possesses ownership rights in the subject matter has no bearing whatsoever on the question of who actually invented the subject matter.

**COUNSEL:** Daniel W. McDonald, Merchant, Gould, Smith, Edell, Welter & Schmidt, P.A., of Minneapolis, Minnesota, argued for appellants.

James P. O'Shaughnessy, Foley & Lardner, of Milwaukee, Wisconsin, argued for appellee. With him on the brief was E. John Brzytwa, Cavitch, Familo & Durkin Co., L.P.A., of Cleveland, Ohio.

**JUDGES:** Before ARCHER, Chief Judge, * RICH, Circuit Judge, and LAY, Senior Circuit Judge. **

* Judge Archer assumed the position of Chief Judge on March 18, 1994.

** The Honorable Donald P. Lay of the United States Court of Appeals for the Eight Circuit sitting by designation.

**OPINIONBY:** RICH

**OPINION:** **[*413]** RICH, Circuit Judge.

Sewall, et. al. (Sewall) appeals from the December 11, 1992, decision of the Board of Patent Appeals and Interferences (Board) of the United States Patent and Trademark Office (PTO), awarding the subject matter of the sole count in issue to Ronald G. Walters on the basis that he is the sole inventor of that subject matter. Consistent with our discussion below, we affirm.

I. BACKGROUND

A. The Count

The count is directed **[**2]** to an apparatus for back projecting data provided by a computer tomography (CT) scanner or other object image scanner into an image matrix location. n1 The count reads:

> An apparatus for back projecting data provided by a CT scanner or other object image scanner into an image matrix location, wherein the data are associated with a particular view of a test subject, comprising:
>
> a. a projection data memory means for storing projection data;
>
> b. a linearization pointer memory means for storing a set of projection data memory pointers;
>
> c. scaling means operatively connected to the linearization pointer memory means for selecting a member of the set of projection data memory pointers;
>
> d. means operatively connected to the scaling means and the projection data memory means for determining, based on the selected projection data memory pointer, the projection data associated with the image matrix location; and
>
> e. means operatively connected to the determining means for accumulating the projection data associated with the image matrix location.

n1 See *In re Abele, 684 F.2d 902, 214 U.S.P.Q. (BNA) 682 (CCPA 1982)* (provides general background information regarding CT technology).

**[**3]**

The apparatus recited in the count is an improvement over the apparatus described and claimed in U.S. Patent No. 4,293,912 ('912 patent), issued to Walters on October 6, 1981. The improvement rests in the addition of element b, the "linearization pointer memory means for storing a set of projection data memory pointers." The linearization pointer memory means compensates for distortion in the raw data received by the CT scanner.

At the time here involved, Walters was a consultant to Star Technologies, Inc. (Star), and Sewall was an employee of Star. On November 18, 1988, Star filed an application (Sewall application) containing claims corresponding to the subject matter of the count and naming Sewall and Walters as joint inventors. Star is the assignee of the Sewall application. Then, on February 1, 1988, Walters filed an identical application (Walter application), which is unassigned, asserting sole inventorship of that subject matter. This interference proceeding ensued, at which time the party Sewall, et. al. was designated senior party on the basis of their **[*414]** earlier

filing date. However, the party Walters was, on motion, later given the benefit of the filing date of the Sewall [**4] application, wherefore neither party is in fact either senior or junior since both parties have the same filing date. The issue on appeal is merely one of joint or sole inventorship. As the original second to file, however, Walters had the burden to show his asserted sole inventorship.

B. Development of Invention

Walters came up with the idea of adding element b to the apparatus described in his '912 patent sometime in late 1982 or early 1983. Around that time, Mr. Salquist of Star contacted Walters to discuss the possibility of Walters entering into a consulting relationship with Star to develop a medical imaging system. During one discussion, Walters disclosed to Salquist his idea for the back projecting apparatus recited in the count, including his idea of adding element b to the '912 apparatus. Salquist indicated interest in the proposed device, and this led to meetings between Walters and Mr. Cannon of Star. During one such meeting on April 22, 1983, Walters explained his back projecting apparatus to Cannon and scribbled notes on a copy of the '912 patent to illustrate his idea of modifying the '912 device through the addition of element b. To represent element b, Walters [**5] added a block to figure 6 of the '912 patent to connect block 114, a scaling means, to block 120, a projection data memory means for storing projection data. Walters explained at that time that element b would be a linearization table that would modify the addresses in the projection data memory of block 120 to accommodate any distortion in the projection data collected by the CT scanner.

The foregoing discussions led to a meeting on July 25, 1983, between Walters and Sewall, a chip designer with Star. During this meeting, Walters explained his proposed back projecting apparatus to Sewall, and Sewall took notes and marked up a copy of the '912 patent to indicate Walters' improvement over the '912 device. In August of 1983, Sewall wrote a summary of the discussions held during the July meeting, at Walters request, which confirmed that Walters came up with the idea of placing a linearization pointer memory means between blocks 114 and 120. Following this meeting, Walters undertook the responsibility of delivering to Star a design for a commercially functional back projecting apparatus. Sewall's part in this project was to implement Walters' design in chip form.

Prior to designing the [**6] hardware structure in detail, however, Walters believed it prudent to carry out a computer simulation of the proposed back projecting apparatus to ensure that it would function adequately. To this end, Walters independently wrote detailed register level specifications for conducting a complete computer simulation of the core elements of his back projecting apparatus and transmitted these specifications to Star to carry out the simulation. Walters intended that the register level specifications serve as a blueprint for the hardware. Accordingly, he instructed Star to adhere strictly to the protocols he had established and not make any functional revisions. In accordance with Walters' instructions, Star completed the computer simulation around April of 1984.

Sewall completed the design of the hardware structure following this successful simulation. In doing so, Sewall had no latitude to make any functional changes to the system that Walters had specified. The first prototype of the chip-based back projecting apparatus was completed at least as early as July of 1985, and Walters stated in his Preliminary Statement in the interference that the subject matter of the count was first reduced [**7] to practice at least as early as this date.

C. Board Decision

The Board held that Walters' communication of his idea to Sewall on July 25, 1983, constituted a complete conception of the back projecting apparatus of the count. Consequently, the Board held that Walters was the sole inventor of that subject matter.

In reaching this conclusion, the Board stated that there was no evidence of record indicating that more than ordinary skill would have been needed to reduce to practice Walters' proposed back projecting apparatus [*415] at the time he communicated his concept to Sewall. The Board found as a factual matter that, at the time that Walters communicated his concept to Sewall, the functions of element b were fully capable of being implemented by a programmer of ordinary skill in the art by programming a general purpose computer to perform the required mathematical functions or by a hardware designer by combining discrete, known elements such as adders, multipliers, etc., to perform these functions. The Board further noted that Sewall admitted that Walters conceived the mathematical algorithm underlying the apparatus of the count, including element b, and that Sewall had to follow [**8] that algorithm to develop the hardware architecture for the apparatus.

The Board went on to note that the count does not require the use of circuit chips such as those designed by Sewall. The Board further stated that, even if the count were so limited, there was no persuasive evidence that more than ordinary skill in the art would have been needed to implement Walters' concept in chip form. n2