IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AVERY DENNISON CORPORATION,<br><br>Defendant. | Civil Action No. 01-1781 JRT/FLN |

**3M'S MEMORANDUM OF LAW REGARDING AVERY'S IMPROPER WITNESS EXAMINATION AND ARGUMENT ON JAPANESE PATENT '541**

Avery's use of Japanese Patent 7-138541 (Defense Exhibit No. 543) during the cross-examination of Dr. Frank Sher and Avery's express intended use of this reference during closing argument are improper and contrary to the law.

Avery contends that it is not using the reference as prior art, but that is exactly what Avery is doing. Accordingly, in accord with Avery's prior stipulation and pretrial submissions, the Court should not permit further mention of this reference in evidence or in closing argument.

# I. BACKGROUND

## A. Avery Stipulated What Prior Art References Would Be a Part of This Trial, and Japanese Patent '541 Was Not One of Them.

In response to 3M's motion in limine concerning what prior art would properly be a part of this trial, Avery responded that it agreed with 3M "on the scope of prior art Avery can introduce into evidence to support its claims of patent invalidity (both anticipation and obviousness)." (Doc. No. 263 at 1.) Avery could not have been more clear in its express agreement regarding prior art references:

> As set forth in 3M's brief, Avery agrees that the following prior art references are properly part of the upcoming trail as anticipatory references pursuant to 35 U.S.C. § 102:
>
> - U.S. Patent No. 5,405,675 (Sawka)
> - U.S. Patent No. 4,025,159 (McGrath)
> - U.S. Patent No. 3,989,775 (Jack)
>
> Likewise, in addition to these three references, Avery agrees that the following prior art references are properly part of the upcoming trial as obviousness references pursuant to 35 U.S.C. § 103:
>
> - JP 2587198
> - JP 59-78285
> - U.S. Patent No. 4,713,273
> - U.S. Patent No. 3,301,741
> - U.S. Patent No. 5,141,790
> - U.S. Patent No. 5,296,277
> - U.S. Patent No. 5,362,516
> - U.S. Patent No. 3,887,678
> - U.S. Patent No. 5,229,186
> - EP 0313766 B1
> - GB 1543977
> - U.S. Patent No. 3,611,919
> - U.S. Patent No. 4,320,162
> - U.S. Patent No. 5,382,464

(*Id*. at 1-2.)

Avery went even further than listing the prior art that it agreed would be a part of this trial. Avery also expressly represented that it "will not seek to introduce other prior art references in support of its claims that the '930 patent is invalid as anticipated or obvious." (*Id*. at 2.)

**B. Avery's Proposed Verdict Form Does Not Include Japanese Patent '541.**

Avery's submitted verdict form conformed with the agreement in its motion in limine response and did not list any additional prior art references. But Avery's verdict form went even further in limiting the prior art that would be a part of trial by listing Sawka as the only purportedly anticipatory reference (omitting the other two references listed in 3M's motion in limine and Avery's response) and only two Japanese references in combination only with the cited references in the '930 patent with respect to Avery's obviousness defense.[1] (Doc. No. 280 at 4.)

---

[1] (The way Avery proposed to combine these references in its verdict form and the current draft verdict form by the Court improperly asks the jury to consider all the references the patent examiner considered during prosecution of the '930 patent as one agglomerated reference. This contravenes the rule that prior art references may not be combined unless there is a motivation to combine them. To combine references, the jury must make a factual finding that a person of ordinary skill in the art would have had a motivation to combine the references. *See Group One Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1304 (Fed. Cir. 2005) ("Motivation to combine is a question of fact."). Avery's proposed questions advise the jury that it can look at all of the references considered during prosecution as one super-reference. Furthermore, the proposed verdict form does not allow the jury to identify which specific combination of references makes obvious the claims of the '930 patent if the jury determines that any claim of the patent is obvious. The verdict form should require the jury to report which (if any) references make obvious which claims. *See Connell v. Sears, Roebuck & Co.*, 722 F.2d 1542, 1547 (Fed. Cir. 1983) ("Submission of the obviousness question to the jury should therefore be

### C. Avery's Proposed Jury Instructions Do Not Include Japanese Patent '541.

In conformity with Avery's proposed verdict form, Avery's jury instructions also further limited the prior art. Once again, Avery noted its agreement with 3M regarding what constitutes the prior art in this case:

> Defendant and plaintiff agree that the following items are prior art, and there is no dispute that these items came before the invention claimed in the '930 patent:
> United States Patent No. 5,405,675 – (the Sawka '675 patent)
> United States Patent No. 5,141,790 – (the Calhoun '790 patent)
> United States Patent No. 3,301,741 – (the Henrickson '741 patent)
> United States Patent No. 3,887,678 – (the Lewicki '678 patent)
> United States Patent No. 5,229,186 – (the Tribble '186 patent)
> European Patent Office Publication No. 0 313766 (the Cabe patent)
> Patent Abstracts of Japan Publication No. 59078285A - October 28, 1982 (the Mitsui patent)
> Utility Model Application No. 2587198 - Translated from Japanese
> United States Patent No. 3,413,168 – Danielson
> United States Patent No. 3,331,729 – Danielson

(Doc. No. 279 at 30.)

### D. Avery's Expert Reports on Invalidity Did Not Address Japanese Patent '541.

Not only did all of Avery's pretrial submissions exclude Japanese Patent '541 as relevant prior art, but also Avery's expert reports on invalidity excluded this reference. Neither Dr. Anthony McHugh's May 2002 invalidity report nor his July 2005

---

accompanied by detailed special interrogatories . . . ."); *Richardson-Vicks Inc. v. Upjohn Co.*, 122 F.3d 1476, 1484-85 (Fed. Cir. 1997) ("[T]he district court should have submitted to the jury the factual inquiries underlying a § 103 determination in the form of special interrogatories. While the form of jury verdict is normally a matter of discretion with the trial court, one court has noted that 'the failure to utilize this method in a patent case places a heavy burden of convincing the reviewing court that the trial judge did not abuse his discretion.'") (quoting *Baumstimler v. Rankin*, 677 F.2d 1061, 1071-72 (5th Cir. 1982)).)

"supplemental and revised" invalidity report addressed, or even mentioned, this reference.

**E. Avery Questioned Dr. Sher About Japanese Patent '541 at Trial.**

Although Avery excluded Japanese Patent '541 from its pretrial submissions and expert reports, Avery's counsel examined Dr. Frank Sher about this specific reference during his cross examination. (*See* 12/14/05 Transcript at 546-55.)

Some of Avery's questions were directed to what the '541 Japanese reference disclosed regarding air egress:

> Q. So this document, you'd agree, communicates the general idea certainly of grooves being in adhesive to assist to remove air bubbles, correct?

(*Id*. at 551, lines 17-19.)

Other questions were directed to whether or not the reference was actually in Dr. Sher's file:

> MR. DORMAN: Your Honor, I have a document I don't intend to publish to the jury, but with the Court's permission I would like to give a copy to counsel. It's simply -- *I believe this document would demonstrate that this exhibit that has been in evidence was in his files.*

(*Id*. at 552, lines 6-10 (emphasis added).)

> My question is: Does this refresh your recollection as to whether or not you had by 1996 a copy of this Japanese prior art patent in your file?

(*Id*. at 554-55.)

## II. ARGUMENT

### A. What Dr. Sher Knew Was in the Prior Art Is Irrelevant.

After 3M raised an issue with Avery's introduction of Japanese Patent '541 in contravention of its stipulation and pretrial submissions, Avery told the Court that Avery was introducing the reference only to show that *Dr. Sher* knew that the concept of providing air egress through channels in adhesive was in the prior art:

> The only purpose of me demonstrating or using this patent was to demonstrate and confirm that *this witness prior to filing his patent had a general knowledge that the idea of putting channels in adhesive to accommodate air bleed was known*, and this document has been on their exhibit list, and that's the purpose for which it is going to be used.

(12/15/05 Transcript at 567, lines 11-17 (emphasis added); *see also id*. at 568, lines 17-20 ("I'm going to reference it in confirmation of his admission that he generally knew that air bleed could be accomplished by putting channels in adhesive, but that's the limited use to which I intend to put that reference . . . .").)

What Dr. Frank Sher knew or did not know about this reference is not material to any issue in dispute at trial. As the Court has already ruled, the issue of deceptive intent, which is related to the correction of inventorship pursuant to 35 U.S.C. § 256, is not properly a part of this trial because it is an issue for the Court, not the jury.

Nor is Dr. Sher's knowledge as an alleged inventor material to any issue in dispute at trial. Dr. Sher is not an inventor of the patent-in-suit, but the knowledge of an inventor is irrelevant is any event. The law on obviousness is concerned with a hypothetical inventor and what this hypothetical inventor would know:

> The issue of obviousness is determined entirely with reference to a *hypothetical* "person having ordinary skill in the art." It is only that hypothetical person who is presumed to be aware of all the pertinent art. The actual inventor's skill is irrelevant to this inquiry, and this is for a very important reason. The statutory emphasis is on a person of *ordinary* skill. Inventors, as a class, according to the concepts underlying the Constitution and the statutes that have created the patent system, possess something—call it what you will—which sets them apart from the workers of *ordinary* skill, and one should not go about determining obviousness under § 103 by inquiring into what *patentees* (i.e., inventors) would have known or would likely have done, faced with the revelation of references.

*Standard Oil Co. v. American Cyanamid Co*., 774 F.2d 448, 454 (Fed. Cir. 1985) (emphasis in original). The law is not concerned with the actual knowledge of the actual inventor. Thus, even if Dr. Sher were an inventor of the '930 patent, as Avery wrongly contends, Dr. Sher's actual knowledge is irrelevant to the question of obviousness or any other issue in dispute at trial.

Moreover, to the extent that Avery wants to use Dr. Sher's knowledge to show what one of ordinary skill would know, Dr. Sher is not one of ordinary skill in the art of embossing. (*See* 12/15/05 Transcript at 572, lines 2-6 ("[T]he jury has to consider what one of ordinary skill in the art would generally know, intuit it, et cetera, just what's out there, and that in that context is that background information is all that we're talking about here."). Instead, Dr. Sher is one of extraordinary skill in the field of chemistry. Thus, what he knew also has no bearing on the knowledge of the hypothetical person of ordinary skill in the art.

### B. The Only Possible Relevance of Japanese Patent '541 Is with Respect to Obviousness.

Avery argued that Japanese Patent '541 was relevant to show what Dr. Sher knew about the prior art and that this reference was not being used with respect to the issue of obviousness. (E.g., 12/15/05 Transcript at 567, lines 18-19 ("We don't propose to argue it with respect to the obviousness.").) This is plainly incorrect.

Avery first represented that the reference was being used to show what Dr. Sher knew, but then Avery represented that the reference was being used not as to what Dr. Sher, knew, but what one of ordinary skill in the art would have known:

> When Mr. Hannington is going to be on the stand, one of the things Mr. Hannington is going to talk about is what people of ordinary skill in the art knew at this point in time. All I was establishing is that the -- is that the general knowledge of putting channels in adhesive to accomplish air bleed was known and would have been known to anybody of ordinary skill in the art, which is general background knowledge, highly relevant to this jury's deliberations on invalidity issues generally. . . . It has to do with what one of ordinary skill in the art, that hypothetical person at that time would have known from that prior art that I described to the jury as being in the garage walls, just generally. That's the only purpose for which it was presented, and I have not argued otherwise or indicated by my examination otherwise.

(12/15/05 Transcript at 569, lines 19 -24, 570, lines 1-2, 4-10.)

As 3M said at oral argument, this "purpose"—"what one of ordinary skill would know is out there on the garage walls, that's part of obviousness." (*Id*. at 571, lines 1-3.) Indeed, this is a question related only to obviousness. Obviousness requires the jury to make four factual determinations and the "scope and content of the prior art" is one of them: (1) "the scope and content of the prior art"; (2) "differences between the prior art and the claims at issue"; (3) "the level of ordinary skill in the pertinent art"; and (4)

secondary considerations, if any, such as commercial success, unexpected results, copying, long-felt but unresolved need, and the failure of others to develop the invention. *See Graham v. John Deere Co*., 383 U.S. 1, 17-18 (1966).

Thus, contrary to its claim otherwise, Avery used and intends to use the ’541 reference with respect to obviousness. Because the reference is not on the stipulated list of prior art, and because Avery has already been allowed its one “do-over”—the British reference that also was not on the stipulated list—Avery should not be permitted to use the reference for any reason at trial or in closing argument.

## III. CONCLUSION

For these reasons, 3M respectfully requests that the Court preclude any further use of this reference by Avery.

Dated: December 19, 2005

FISH & RICHARDSON P.C., P.A.

By: s/ Katherine A. Moerke

Jonathan E. Singer (#283459)
John C. Adkisson (#266358)
Katherine A. Moerke (#312277)
FISH & RICHARDSON P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks
(Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Tel: (858) 678-5070
Fax: (858) 678-5099

Kevin H. Rhodes (#318115)
3M Innovative Property Company
3M Center
P.O. Box 33427
St. Paul, MN 55133

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES
COMPANY AND
MINNESOTA MINING AND
MANUFACTURING COMPANY

60330310.doc