IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AVERY DENNISON CORPORATION,<br><br>Defendant. | Civil Action No. 01-1781 JRT/FLN |

**3M'S MEMORANDUM OF LAW IN SUPPORT OF ITS PROPOSED JURY INSTRUCTION ON CLAIM CONSTRUCTIONS**

This brief supports 3M's proposed jury instruction providing claim constructions in accordance with the rulings of the Federal Circuit and this Court providing the meanings of "multiple embossed" and "depressions" as a matter of law.

# I. BACKGROUND

## A. 3M's Requested Instruction on Claim Constructions

3M requests the following jury instruction on claim constructions:

> "Embossed" means a topography on a web or on tooling having an effective three-dimensional pattern that generates a difference in surface planar dimension in the liner or the tooling.
>
> "Multiple embossed" means two or more embossing patterns are superimposed on the web to create a complex pattern of differing depths of

embossing. The term "multiple embossed" is not limited to a sequential embossing process.[1]

"Array" means an orderly arrangement.

"Ridges" means an elongated crest or raised strip.

"Pattern" means any formation of embossings that can utilize any theory of geometry, including without limitation, Euclidian geometry and fractal geometry.

"Depressions" means lower, sunken, or depressed areas of the carrier web. "Depressions" may be either empty or filled according to any number of processes and uses.[2]

"Carrier web" means material with at least one surface that carries, can carry, or has carried another material.

"Lands" means areas of the surface of the carrier web between the ridges.

This requested instruction includes additional judicial constructions of the claim terms "multiple embossed" and "depressions" taken directly from the Federal Circuit's and this Court's claim construction rulings. The additional construction 3M requests on "multiple embossed" was not a part of 3M's original proposed jury instructions, but 3M now requests that this additional construction be given to the jury because of Avery's arguments and witness examinations that invite the jury to make findings contrary to the law of the case.

---

[1] *3M Innovative Properties Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1372 (Fed. Cir. 2003) ("The district court erred when it defined the term 'multiple embossed patterns' to include a limitation that the patterns be created sequentially."). (Doc. No. 181 at 8 (citing *3M Innovative Properties Co.*, 350 F.3d at 1372) ("In considering 3M's appeal of this case, the Federal Circuit addressed the argument that because method claim 6 clearly indicated a sequential embossing process, 'multiple embossed patterns,' as used in claim 1, must be defined as involving a sequential embossing process. The Federal Circuit rejected this argument, stating that 'the limitation of serial embossing clearly present in method claim 6 cannot be read into claim 1.'").

[2] This part of the instruction is supported by this Court's ruling "that the term 'depressions,' as used in claim 1, may be either empty or filled according to any number of processes and uses and is most appropriately defined broadly as 'lower, sunken, or depressed areas of the carrier web.'" (Doc. No. 181 at 9.)

**B. Resolved Legal Issues**

During the litigation of the disputed claim terms before the Federal Circuit and then before this Court on remand, Avery argued repeatedly that the constructions of these terms were questions of law to be resolved in the *Markman* context.

For example, with respect to the term "depressions," Avery argued to this Court that the construction the Court ultimately adopted was "gibberish" and "nonsense":

> 3M misstated Avery's proposed construction because it is trying to convince this Court that the ordinary meaning of the single word "depression" includes both empty and filled areas below a surface. This is nonsense. If an open or hollow area below a surface has been "filled," the surface no longer has an open or hollow area. To say otherwise is self-contradictory. While a surface depression certainly can be filled, once filled the surface depression ceases to exist. Following the filling of a depression, it would be accurate to say the surface contains a depression that "has been filled" or to describe the area of the former depression as a "filled depression," but it would be gibberish to describe the area as still containing a "depression."

(Doc. No. 171 at iii.)

The Federal Circuit and this Court resolved these claim construction issues against Avery. First, with respect to the claim term "multiple embossed," the Federal Circuit ruled that "[t]he district court erred when it defined the term 'multiple embossed patterns' to include a limitation that the patterns be created sequentially." *3M Innovative Properties Co.*, 350 F.3d at 1372. This Court recognized this aspect of the Federal Circuit's ruling in its subsequent claim construction decision on remand:

> In considering 3M's appeal of this case, the Federal Circuit addressed the argument that because method claim 6 clearly indicated a sequential embossing process, "multiple embossed patterns," as used in claim 1, must be defined as involving a sequential embossing process. The Federal

> Circuit rejected this argument, stating that "the limitation of serial embossing clearly present in method claim 6 cannot be read into claim 1."

(Doc. No. 181 at 8 (citing *3M Innovative Properties Co.*, 350 F.3d at 1372).)

Second, with respect to "depressions," this Court ruled "that the term 'depressions,' as used in claim 1, may be either empty or filled according to any number of processes and uses and is most appropriately defined broadly as 'lower, sunken, or depressed areas of the carrier web.'" (Doc. No. 181 at 9.)

Avery is now trying to pretend that none of this happened and these resolved legal issues have somehow transformed into factual issues for the jury.

### C. Avery's Argument and Examination at Trial Contrary to the Claim Constructions

Avery has repeatedly argued at trial contrary to the above claim constructions. As shown in the following examples, Avery has attempted throughout the trial to suggest that the meanings of these terms are open questions to the jury.

#### 1. Avery Has Suggested that "Multiple Embossed Patterns" Must Be Created Sequentially.

Throughout its argument and witness examinations in this trial, Avery has suggested to the jury that the term "multiple embossed" in claim 1 of the '930 patent requires that the multiple patterns are created in two sequential steps.

Avery's improper suggestion began with the cross-examination of Dr. Calhoun:

> Q. When you use the phrase "double emboss," does that mean emboss two different patterns sequentially or does it mean emboss two different patterns at one time or can it mean both?
> A. Well, yesterday we talked about where if you had the suitable tool you could do the two steps in one.

> Q. Okay. But my question is: Back in 1992 when you wrote, The current idea is to double emboss a film as follows, what was in your head concerning -- what did you have in mind at that point in time that you depicted on that page?
> A. Well, I think the idea at that time was to make a positionable segmented adhesive transfer tape.

(12/14/05 Trial Transcript at 407:7-18.)

Avery also improperly made this suggestion throughout its direct examination of Mr. Hannington. For example, Avery elicited the following testimony:

> Q. So as you told us earlier in your testimony today, that you were respectful of those rights and you were not going to be doing sequential embossments; am I right?
> A. Yes, sir.
> Q. So these ideas don't include what you understood was 3M's way of doing it that they may get patent protection on?
> A. Yes, sir. In fact, I looked at some of these as -- 3M and their patents said you wouldn't want to do this, in other words, do the multiple level embossing, because you can't fill those dimples up. And I get kind of curious about that. You know what, maybe there are ways you could fill those little dimples up afterwards. Just ideas.
> Q. Now, do any of these 13 ideas have sequential embossing with a slurry of glass beads put in between?
> A. No, sir.

(12/16/05 Trial Transcript at 946:2-16; *see also id*. at 910:17-911:2; *id*. at 913- 14; *id*. at 915:19-916:16; *id*. at 918:19-919:6.)

Finally, Avery continued to suggest that sequential embossing is a requirement of the '930 patent in its examination of its expert witness, Dr. Anthony J. McHugh:

> Q. Now, to get the -- both the positionability and air egress, does the '930 patent at least explain whether the embossings must be made in some particular order?
> A. Yeah, what it describes is a sequential order, the first embossed pattern being the depressions. You make those first so you can fill them with the glass beads, and then in the next step, you make your second embossed pattern, which is the lands and ridges.

(12/19/05 Trial Transcript at 1111:2-9; *see also id*. at 1112:23-1113:9; *id*. at 1116:11-13.)

**2. Avery Has Suggested that "Depressions" Must Be Empty.**

Additionally, throughout its argument and witness examinations in this trial, Avery has suggested to the jury that "depressions" in claim 1 of the '930 patent must be empty and cannot be filled.

As with Avery's other improper suggestions in conflict with the judicial claim constructions, it began with the cross-examination of Dr. Calhoun:

> Q. Now, is it your understanding that it's not possible to fill an embossed depression with adhesive if it's already been filled?
> A. I don't believe that claim 1 mentions an adhesive. I guess I don't understand your question, sir.
> Q. You would agree with me that you can't fill a depression with anything that has already been filled; would you agree with that statement?
> A. You can't fill something that's already been filled?
> Q. Yes.
> A. I'm not positive what you're getting at. I mean, if you had like a liquid in a container, you could put solid in it. I'm not sure what you're driving at.

(12/14/05 Trial Transcript at 418:17-419:4.)

It continued with the cross-examination of Dr. Strong:

> Q. Now, if we could shrink ourselves to about one quarter of the size of a human hair and stand on the surface of Avery's liner after it comes out of the embossing roll and the ink is pressed into the surface of the liner, we would see mountains, the big ridges, right?
> A. Yeah, they would be pretty high above us.
> Q. Okay. There wouldn't be any open holes we could fall into, right?
> A. If you're talking about the depression underneath the ink form, you would not be able to fall into it because that depression is filled with the ink form.

(12/16/05 Trial Transcript at 817:1-11; *see also* 12/15/05 Trial Transcript at 768:17-770:1; 12/16/05 Trial Transcript at 815:23-816:16; *id*. at 820:14-821:13.)

Perhaps most clearly of all, Avery's direct examination of Mr. Hannington drew out Avery's legally erroneous non-infringement position:

> Q. In your technical judgment, are you -- is Avery practicing or producing the patent that you understand to be described in claim 1 of the '930 patent?
> A. No, sir.
> Q. Why not?
> A. Well, for a number of reasons. The first one is that you would expect an embossing tool to leave a complementary shape. In other words, whatever the shape of the embossing tool is, that's the shape that should be left in the liner. The second one is the surface of our liner is flat. *It has depressions, I guess, if you want to call it that, but they're filled*, so what is that surface, is it depressed or is it flat?

(12/16/05 Trial Transcript at 942:13-25 (emphasis added); *see also id*. at 925:21-926:5.)

## II. ARGUMENT

As demonstrated above, Avery has consistently invited the jury to disregard the judicial constructions of the claim terms "multiple embossed" and "depressions." Accordingly, instructions to the jury the are the only way to cure what has happened and to ensure that the Court fulfills its *Markman* "power and obligation" to determine the meaning of the language in patent claims. *See Markman v. Westview Instruments, Inc*., 52 F.3d 967, 979 (Fed. Cir. 1995) ("We therefore settle inconsistencies in our precedent and hold that in a case tried to a jury, the court has the power and obligation to construe as a matter of law the meaning of language used in the patent claim.").

This Court and the Federal Circuit have previously determined the proper meaning of these originally disputed claim terms. Therefore, the claim constructions are now the

law of the case. In light of Avery's legally incorrect statements and arguments at trial inviting the jury to nullify the Court's claim construction rulings, this Court must adopt jury instructions that cure the inequities caused by Avery's conduct. These instructions should provide the jury with an accurate and a complete picture of the legal rulings that the jury must apply to the disputed facts. 3M's proposed jury instructions provide this complete and accurate view.

### A. Federal Circuit Case Law Controls and Favors 3M's Proposed Jury Instructions.

Jury instructions on issues of patent law are subject to the law of the Federal Circuit. *Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1363 (Fed. Cir. 2004). The "duty of a trial court in any jury trial is to give instructions which are meaningful, not in terms of some abstract case, but which can be understood and given effect by the jury once it resolves the issues of fact which are in dispute." *Id.* at 1365. As such, jury instructions must not only be accurate, but must also be clear, objective, and adequate when taken as a whole. *Id.* This last point is essential in the context of this case because "instructions take on meaning from the context of what happened at trial, including how the parties tried the case and their arguments to the jury." *Hilton Davis Chem. Co. v. Warner-Jenkinson Co.*, 62 F.3d 1512, 1522 (Fed. Cir. 1995), *rev'd on other grounds*, 520 U.S. 17 (1997).

Although the Court's draft jury instruction on claim constructions accurately reflects the ultimate constructions of claim terms that were adopted by the Federal Circuit and this Court, the instruction is incomplete. In light of Avery's suggestions to the jury

regarding the meaning of these terms during the course of the trial, the draft instruction does not provide the jury with a full and adequate description of the law the jury must apply to the facts. Therefore, 3M proposes a jury instruction that will not allow the jury to nullify the law as a result of Avery's deliberate attempts to cause this result.

### B. Avery's Attempts to Make Claim Construction a Question of Fact Rather Than a Matter of Law Must Be Cured by Adequate Jury Instructions.

It is black letter law that claim construction is a legal matter for the court to decide rather than a question of fact for the jury. *Markman*, 52 F.3d at 979. Therefore, district courts must "instruct the jury on the meanings to be attributed to all disputed terms used in the claims in suit so that the jury will be able to 'intelligently determine the questions presented.'" *Sulzer Textil*, 358 F.3d at 1366. This means that district courts must, "*at minimum* take steps to assure that the jury understands that it is not free to consider its own meanings for disputed claim terms and that the district court's claim construction, determined as a matter of law, is adopted and applied by the jury in its deliberation of the facts." *Id.* (emphasis added).

Avery is attempting to usurp judicial rulings by introducing legal issues of claim constructions at trial, which Avery knows are *not* fact questions. The claim constructions suggested by Avery are directly contrary to the law of this case, and therefore would likely cause jury confusion about how to apply the claim constructions provided by the Court. Therefore, additional instructions to clarify the constructions for the jury are proper. 3M's proposed additional instructions are consistent with the law of this case, and they are also consistent with Federal Circuit precedent above—namely, ensuring that

the jury is not tempted to consider Avery's suggested meanings for the disputed claim terms in place of the judicially decided claim constructions.

**C. 3M Will Likely Be Prejudiced If Avery's Incorrect Legal Arguments Are Not Cured With Adequate Jury Instructions.**

As demonstrated above, Avery has been attempting to introduce confusion into these proceedings by arguing issues of law that have already been decided. This confusion will likely result in prejudice to 3M's case if not cured by 3M's proposed jury instruction clarifying the issues. Therefore, to avoid any possibility of prejudice, 3M respectfully requests that the Court issue its proposed instruction to the jury at the conclusion of the case.

"A jury verdict will be set aside, based on erroneous jury instructions, if the movant can establish that 'those instructions were legally erroneous,' and that 'the errors had prejudicial effect.'" *Sulzer Textil*, 358 F.3d at 1363. If the Court refuses to issue 3M's proposed jury instruction on claim constructions, and the jury is therefore confused about the issues in the case, that instruction will be prejudicial and 3M would therefore deserve a new trial. *Ecolab, Inc. v. Paraclipse, Inc.*, 285 F.3d 1362, 1373 (Fed. Cir. 2002) ("An erroneous instruction regarding claim interpretation that affects the jury's decision on infringement is grounds for a new trial.").

In particular, because the adequacy of jury instructions must be viewed in the context of what has happened at trial, including the improper arguments Avery has made to the jury regarding claim constructions issues, *see Hilton Davis*, a proper jury instruction on claim constructions in this case must include clarifying constructions.

More specifically, the instructions must be crafted to eliminate any potential confusion that Avery has improperly brought to the jury. 3M's proposed instructions accomplish this goal.

Moreover, legal error in a jury instruction has a prejudicial effect if it is found that it *could have* changed the result of the case. *See Ecolab*, 285 F.3d at 1374. This is a lesser standard than actually having to prove that the instruction did, in fact, affect the outcome of the case. Avery's suggested claim constructions that it has been presenting to the jury are contrary to the law of the case, and therefore, it is very likely that the jury will be confused as to which constructions to follow. Without further clarification in the form of 3M's proposed jury instructions, it is not difficult to see how this would cause a prejudicial effect—i.e., that if the jury rules in favor of Avery without any clarifying instructions, it will clearly be possible that the jury's decision could have been the result of the confusion improperly introduced by Avery. By definition, that would make the refusal to issue clarifying constructions prejudicial against 3M.

## III. CONCLUSION

For these reasons, 3M respectfully requests that the Court provide 3M's requested instruction to the jury regarding the claim constructions that govern this case as a matter of law.

Dated: December 19, 2005

FISH & RICHARDSON P.C., P.A.

By: s/ Katherine A. Moerke
Jonathan E. Singer (#283459)
John C. Adkisson (#266358)
Katherine A. Moerke (#312277)
FISH & RICHARDSON P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks
(Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Tel: (858) 678-5070
Fax: (858) 678-5099

Kevin H. Rhodes (#318115)
3M Innovative Property Company
3M Center
P.O. Box 33427
St. Paul, MN 55133

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES
COMPANY AND
MINNESOTA MINING AND
MANUFACTURING COMPANY

60330555.doc