IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (DSD/FLN) |
| vs. | : | |
| AVERY DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S BENCH MEMORANDUM RE: ADMISSIBILITY OF J.P. HEI 7-138541 (EX. 543) PRIOR ART REFERENCE WITHOUT CAUTIONARY JURY INSTRUCTION**

## I. INTRODUCTION

3M contends that the prior Japanese art reference to J.P. Hei 7-138541 (Exhibit No. 543), which Avery moved into evidence on December 14 during the cross-examination of Mr. Frank Sher, should not have been admitted into evidence. In the alternative, 3M contends that, if the J.P. Hei prior art reference is admitted into evidence, then the Court should provide a cautionary jury instruction limiting the jury's use of this reference. Neither contention is legally correct.

The Court was correct to admit the prior art reference Exhibit No. 543 with no cautionary jury instruction. The J.P. Hei prior art reference is in the same field of art as the '930 patent (both relate to film having pressure sensitive adhesives) and addresses the air egress problem which the '930 patent addresses and purports to solve.

## II. THE J.P. HEI PRIOR ART REFERENCE IS RELEVANT AND ADMISSIBLE WITHOUT ANY CAUTIONARY INSTRUCTIONS

### A. The '930 Patent Address the Problem of Air Egress in Films Having Pressure Sensitive Adhesives

The '930 patent addresses the problem of how to remove entrapped air between a film having a pressure sensitive adhesive and the substrate without either having to remove and reapply the film or having to perforate the film:

> Adhesion of a large image graphic film to substrates encounters the problem of entrapped air between the film and the substrate. Anyone who has ever attempted to hang wallpaper can appreciate the frustration that can arise when entrapped air beneath an adhesive-backed film can not be removed easily. The most common solutions to this problem are to remove and reapply the film or to perforate the film to release the entrapped air. Multiple attempts to adhere the same film to a substrate can compromise the pressure sensitive adhesive or increase the probability of uneven or misaligned film on the substrate. Perforating a film mars its appearance. The removal of air bubbles is also labor intensive.

('930 patent, 1:19-31)

Improved air egress is even described as one of the advantages of the invention of the '930 patent:

> Another advantage of the present invention is the ability to use a variety of types of pressure sensitive adhesives while also providing an ability to "outgas" the pressure sensitive adhesive after adhesion of the web to the substrate. Included among such types of pressure sensitive adhesives are those disclosed in U.S. Pat. Nos. 5,296,277 and 5,362,516 (both Wilson et al.) and 5,141,790 (Calhoun et al.), the disclosures of which are incorporated by reference therein.

('930 patent, 3:25-32).

**B. The J.P. Hei Prior Art Reference Demonstrates that it was Generally Known to the Hypothetical Person of Ordinary Skill in the Art to Use Channels in Pressure Sensitive Adhesives to Solve the Air Egress Problem**

The J.P. Hei prior art reference was used during Dr. Sher's testimony to demonstrate that the general idea of embossing a release liner with grooves to impart channels in an adhesive layer to effect air egress was known and old—it was not new. In the J.P. Hei reference, the section identified as "The Problem Solved by the Invention" states in pertinent part: "However, with the above-mentioned conventional adhesion process film, it has been almost impossible to paste such an adhesive film main body onto the surface to be pasted without causing wrinkles or air bubbles." The section of the J.P. Hei prior art reference entitled "Method for Solving the Problem" in pertinent part then says, "[w]ith respect to the adhesive film main body and the release liner which are mutually laminated, fine concave grooves are formed in a superposed shape with an embossing process extruded from the side of the said release liner." Dr. Sher did not dispute that this idea and information was old and not novel.

**C. <u>The J.P. Hei Prior Art Reference is Relevant and Admissible, Because the Person of Ordinary Skill in the Art is Presumed to Know the Relevant Prior Art</u>**

"The issue of obviousness is determined entirely with reference to a *hypothetical* 'person having ordinary skill in the art.'" *The Standard Oil Co. v. American Cyanamid Co.*, 774 F.2d 448, 454 (Fed. Cir. 1985) (emphasis in original). The hypothetical person of ordinary skill in the art is "presumed to know the relevant prior art." *Custom Accessories, Inc. v. Jeffrey-Allen Industries, Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986). Further, the test for obviousness has been described by the Federal Circuit as "whether the teachings of the prior art, taken as a whole, would have made obvious the claimed invention." *In re Gorman*, 933 F.2d 982, 986 (Fed. Cir. 1991), *citing*, *In re Young*, 927 F.2d 588, 591 (Fed. Cir. 1991).

Thus, the jury, when considering obviousness, should be permitted to consider the J.P. Hei prior art reference, as it is part of the prior art as a whole and the hypothetical person of ordinary skill in the art is presumed to have been aware of it. The Court should also not limit the scope of the jury's consideration of this reference with the use of a cautionary jury instruction, as requested by 3M, because the hypothetical person of ordinary skill in the art would not have been limited in his or her consideration of this prior art reference. The jury should be able to make the same consideration of the prior art that the hypothetical person of ordinary skill in the art is legally presumed to have made.

**D. <u>The J.P. Hei Prior Art Reference is Relevant to the Issue of Obviousness Because It Addresses the Same Problem as that Addressed by the Claimed Invention</u>**

As demonstrated above, both the '930 patent and the J.P. Hei prior art reference address the same air egress problem. This fact alone makes Exhibit 543 relevant to the issue of obviousness as an invalidating reference and/or as evidence of motivation. *See, In re GPAC*, 57 F.3d 1573, 1578 (Fed. Cir. 1995), *citing*, *In re Clay*, 966 F.2d 656, 658 (Fed. Cir. 1992) (holding that twelve secondary references are relevant to obviousness: "If a reference disclosure relates to

the same problem as that addressed by the claimed invention, 'that fact supports the use of that reference in an obviousness rejection. An inventor may well have been motivated to consider the reference when making his invention.'")

**E. The J.P. Hei Prior Art Reference is Relevant to the Jury's Determination of the Level of Ordinary Skill in the Art**

The determination of the level of ordinary skill in the art "is an integral part of the *Graham* [obviousness] analysis." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 666 (Fed. Cir. 2000), *quoting*, *Custom Accessories*, 807 F.2d at 962 ("Without [a determination of the level of ordinary skill in the art], a district court cannot properly assess obviousness, because the critical question is whether a claimed invention would have been obvious at the time it was made to one with ordinary skill in the art.")

In determining the level of skill of the hypothetical person of ordinary skill in the art, the jury may consider various factors, including the "1) the types of problems encountered in the art; 2) the prior art solutions to those problems; 3) the rapidity with which innovations are made; 4) the sophistication of the technology; and 5) the educational level of active workers in the field." *Ruiz*, 234 F.3d at 666, *citing*, *Custom Accessories*, 807 F.2d at 962.

The J.P. Hei prior art reference is thus relevant to the determination of the level skill in the art. It demonstrates the types of problems encountered in the art (air egress problems) and it demonstrates the prior art solutions to those problems. It is therefore relevant and admissible for this reason as well.

**F. The *Graham v. John Deere* Case is Distinguished from this Case**

3M contends that, based on the case of *Graham v. John Deere Co.*, 383 U.S. 1, 25 (1966) the Court should exclude the J.P. Hei prior art reference from evidence. In *Graham*, the district court precluded the patentee from arguing at trial that its patent claims were valid based on the flexibility of the structure. The Supreme Court upheld this ruling, based on the fact that

flexibility was not a claim of the patent in suit *and* was not a significant feature of the patent in suit. *Graham*, 383 U.S. at 25.

In this case, unlike *Graham*, air egress is a significant feature of the '930 patent. Although improved air egress is not a limitation of claims 1-5 of the '930 patent, providing air egress is the stated purpose of the invention of the '930 patent and is described as being one of the advantages of the invention. (*See,* '930 patent, 1:19-31; 3:25-37).

Because the '930 patent is intended to solve the air egress problem, the hypothetical person of ordinary skill in the art would have been motivated to look to references (like the J.P. Hei reference) which relate to possible solutions to that problem. *See, Ruiz*, 234 F.3d at 665; *In re Huang*, 100 F.3d 135, 139 n. 5 (Fed. Cir. 1996) ("In his application, Huang acknowledges that shock generated by impact is a well known problem in the art. This well known problem would have directed one of ordinary skill in the art to Lau, which is entitled 'Shock Absorbing Sheet Material.'"); *In re GPAC*, 57 F.3d at 1578 ("An inventor may well have been motivated to consider the reference [which discloses the same problem addressed by the claimed invention] when making his invention.")

## III. <u>CONCLUSION</u>

For the foregoing reasons, the Court was legally correct to have admitted the J.P. Hei prior art reference without any cautionary jury instruction.

DATED: December 20, 2005

Respectfully submitted,

/S/ Lawrence M. Hadley

David P. Pearson
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 604-6400 - Telephone
(612) 604-6892 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNETT & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 694-1234 - Facsimile

Jay R. Campbell
RENNER OTTO BOISSELLE & SKLAR
1621 Euclid Avenue, 19th Floor
Cleveland, Ohio 44115
(216) 621-1113 - Telephone
(216) 621-1260 - Facsimile