IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S NOTICE OF MOTION AND MOTION FOR A NEW TRIAL ON ISSUES OF INVALIDITY**

**[REQUEST FOR BRIEFING SCHEDULE AND ORAL ARGUMENT]**

TO PLAINTIFFS 3M INNOVATIVE PROPERTIES COMPANY AND MINNESOTA MINING AND MANUFACTURING COMPANY AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant Avery Dennison Corporation ("Avery") hereby moves the Court, pursuant to Rule 59(a) of the Federal Rules of Civil Procedure, for an Order granting Avery a new trial, on the issues of whether claims 1-5 of U.S. Patent 5,897,930 ("the '930 patent") are invalid as anticipated or obvious pursuant to 35 U.C.S. § 102(a) and 103.

Avery makes this motion on the following grounds. When a verdict is against the clear weight of the evidence, even if substantial evidence supports a jury's verdict, a trial court has a duty to set aside the verdict. In fact, in considering a new trial request, the district court must weigh the evidence and assess for itself the credibility of witnesses.

Moreover, the district court does not presume that the verdict is correct; nor need it view the evidence in the light most favorable to the party in whose favor the verdict was rendered.

In this case, the jury's verdict that claims 1-5 of the '930 patent are valid, and neither anticipated nor obvious over the prior art, goes against the clear weight of the evidence. Indeed, overwhelming and non-contradicted evidence establishes that claims 1-5 of the '930 patent lack validity for the reasons explained below.

**A. Anticipation**

Under section 102(a) a patent is invalid where "the invention was . . . described in a printed publication in this or a foreign country, before the invention thereof by the applicant for a patent…." 35 U.S.C. §102(a); Ecolochem, Inc. v. S. Cal. Edison Co., 227 F.3d 1361, 1367-70 (Fed. Cir. 2000).

As construed by the Court, claims 1-5 of the '930 patent simply require a surface with two separate "topographies" – one of consisting of an embossed pattern forming an array of depressions, and the other consisting of "lands and ridges" with the ridges between about 3-45 microns above the lands. Additionally, the embossed pattern of depressions must be "in" the pattern of lands/ridges.

U.S. Patent No. 5,405,675 to Sawka discloses every limitation of claims 1-5 in the '930 patent. Dr. McHugh testified that the '675 patent contained each limitation, and 3M offered no evidence, expert or otherwise, rebutting Dr. McHugh's testimony. On its face, the '675 patent discloses a web with two embossed patterns and expressly describes the patterns as having both "depressions" and "ridges." Furthermore, the specification of the

‘675 patent discusses potential ridge heights, and states that for certain applications, ridges heights within the 3 to 45 micron range can be used. 3M disputed none of this evidence.

In argument, 3M suggested that the Sawka ‘675 patent lacks three limitations of claims 1-5 of the ‘930 patent. Each is demonstrably present.

First, 3M argued that the Sawka ‘675 patent lacks an “array” of depressions. But the specification of the ‘675 patent states that the embossed patterns can have “virtually any shape or designs.” Accordingly, the depressions can be in an array.

Second, 3M suggested that the first pattern of depressions is not “in” the pattern of lands/ridges. Yet Figure 1 of the ‘675 patent shows ridges interspersed with depressions. Additionally, the specification expressly states that both embossed patterns can exist “simultaneously.” Thus, the depressions can plainly exist between ridges, just as described in the ‘930 patent.

Third, 3M argued that the word “lands” does not appear in the ‘675 patent. While the word “lands” does not appear, it is well settled that a claim limitation can be found either expressly or inherently in a prior art reference. Here, 3M’s own witness, Dr. Cavaleri, testified that “ridges” and “depressions” cannot exist on a web surface unless a base or reference surface also exists. According to Dr. Cavaleri, persons skilled in the art commonly call this reference surface a “land.” Consistent with Dr. Cavaleri’s testimony, Dr. McHugh identified a “land” reference surface on Figure 1 of the ‘675 patent, with “ridges” rising above the surface and “depressions” extending below the surface.

Because the clear weight of evidence established that each claim limitation in claims 1-5 of the ‘930 patent can be found either expressly or inherently in the Sawka ‘675 patent, this Court should grant a new trial on anticipation.

**B. Obviousness**

Under 35 U.S.C. §103, a patent is invalid “if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.” Id.; Robotic Vision Sys., Inc. v. View Eng’g, Inc., 189 F.3d 1370, 1376 (Fed. Cir. 1999). The ultimate question of obviousness turns on four factors: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) objective indicia of non-obviousness. Graham v. John Deere Co., 383 U.S. 1, 17 (1966).

The evidence at trial regarding the prosecution history for the ‘930 patent established that the Patent Examiner found nearly all features of claims 1-5 in the prior art – namely, a first pattern of embossed depressions and webs having two simultaneous embossed patterns where the first embossed pattern is located “in” the second embossed pattern. After rejecting 3M’s proposed claims twice, 3M amended its claims, this time specifying that the second embossed pattern required very small ridges – ranging from about 3 to 45 microns. In allowing the claims to issue, the Patent Examiner explained, in a prosecution document entitled “Statement of Reasons for Allowance,” that the

rejections were withdrawn because, as represented by the applicants, "The prior art does not suggest or teach a carrier web with ridges and lands that ranges from 3 to 45 µm."

3M's own inventor, Dr. Calhoun, as well as experts for both Avery and 3M, testified that the prior art disclosed precisely the small ridges between 3 and 45 microns, which 3M claimed the prior art lacked. Japanese Publication No. 59078285A (the "Mitsui patent") and GB Patent Specification No. 1,511,060 (the "Unitika patent") both explicitly describe embossed ridges that impart air egress channels in a pressure sensitive adhesive. Additionally, both references disclose embossed ridge heights within the range claimed in the '930 patent. The Mitsui patent discloses ridge heights up to 15 microns and the Unitika patent discloses ridge heights 40 microns and above. Thus, all witnesses agreed that every aspect of the '930 patent – embossed depressions for positionability (found 3M's own ControlTac Plus product), embossed ridges for air egress (known but not disclosed to the Patent Examiner), and the ability to combine two embossed patterns on the same web surface – was known to those skilled in the art (including 3M's own inventors) well in advance of 3M's application.

In the face of this evidence, 3M made two arguments to the jury. First, 3M argued to the jury that that the Patent Examiner technically did "know" about the Unitika patent, since the same Examiner considered both the Sher and Calhoun applications. According to 3M, it properly brought the Unitika patent to the Examiner's attention as part of the application for the Sher '397 patent by "incorporating by reference" the application for the Sher '397 patent into the application for the '930 patent. But the law does not support 3M's argument to the jury that it properly brought the Unitika patent to the Examiner's

attention. Under 37 C.F.R. §§ 1.56, 1.97, and 1.98, information material to a patent application must be provided to the Patent Office as part of an Information Disclosure Statement ("IDS"). Additionally, a physical copy of all foreign patent documents must be provided to the Examiner. The undisputed facts establish that 3M did not bring the Unitika patent to the Examiner's attention in the prescribed manner as part of the application that issued as the '930 patent. 3M's argument to the contrary was legal error, and alone warrants a new trial on the obviousness issue.

Secondly, 3M argued that the prior art did not provide the requisite motivation or suggestion for a skilled person to make the combination covered by the patent claims. Yet the law plainly holds that a motivation to combine can be found either explicitly or implicitly from the nature of the problem to be solved. In this case, the nature of the problem to be solved, as described in the specification of the '930 patent, is removing air bubbles when applying large scale graphic films (including positionable films such as 3M's existing ControlTac Plus product) without removing and reapplying or perforating the film. Simply making ridges on the liner, as taught in both the Mitsui and Unitika patents, inherently provided the solution. Indeed, Mr. Meixner, 3M's own witness, freely admitted that it was obvious to simply add ridges to the ControlTac Plus product (which already had depressions filled with glass beads for positionability) once customers told 3M that they wanted an easier and less time-consuming way to remove air bubbles when applying the ControlTac Plus product.

Because the clear weight of evidence establishes that the subject matter of the '930 patent, as a whole, would have been obvious at the time the invention was made to a

person having ordinary skill in the art, this Court should grant Avery a new trial on obviousness.

**REQUEST FOR BRIEFING SCHEDULE AND ORAL ARGUMENT**

Avery asks that this Court set a briefing schedule for legal memoranda supporting and opposing this Motion for a new trial. Avery proposes the following briefing schedule (which Avery proposes with the other post-trial motions it is filing today):

| | |
|---|---|
| Avery's opening memorandum of law: | February 10, 2006 |
| 3M's opposition memorandum of law: | March 3, 2006 |
| Avery's reply memorandum of law: | March 17, 2006 |

Additionally, Avery respectfully asks that the Court schedule oral argument on Avery's post trial motions. Avery believes that argument on its post trial motions is especially critical considering the short length of time that the jury spent deliberating. Avery asks that argument on its post-trial motions be set for April 3, 2006 or the next convenient date for the Court and the parties.

Finally, 3M has applied to the Court for a permanent injunction. The parties will complete briefing on that motion according to a schedule to be determined. However, Avery believes that issues regarding 3M's entitlement to an injunction, the scope of an injunction, any stay of an injunction, and permissible design-around activities should be determined only after this Court rules on Avery's post trial motions.

DATED: January 10, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile

## CERTIFICATE OF SERVICE

On January 10, 2006, I served a copy of the within document described as **AVERY DENNISON CORPORATION'S NOTICE OF MOTION AND MOTION FOR A NEW TRIAL ON ISSUES OF INVALIDITY [REQUEST FOR BRIEFING SCHEDULE AND ORAL ARGUMENT]** by transmitting via United States District Court for the District of Minnesota Electronic Case Filing Program the document listed above by uploading the electronic files for each of the above listed document on this date, addressed as set forth below.

Jonathan E. Singer
John C. Adkisson
Katherine A. Moerke
Fish & Richardson, P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, Minnesota 55402

Juanita R. Books
Fish & Richardson, P.C.
12390 El Camino Real
San Diego, California 92130-2081

/S/ Lawrence M. Hadley
Lawrence M. Hadley