IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>AVERY-DENNISON CORPORATION,<br><br>Defendant. | Civil Action No. 01-CV-1781 (JRT/FLN) |

**AVERY DENNISON CORPORATION'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL ON ISSUES OF INFRINGEMENT**

**[REQUEST FOR BRIEFING SCHEDULE AND ORAL ARGUMENT]**

TO PLAINTIFFS 3M INNOVATIVE PROPERTIES COMPANY AND MINNESOTA MINING AND MANUFACTURING COMPANY AND TO THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that defendant Avery Dennison Corporation ("Avery") hereby moves the Court, pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure, for an Order granting Avery judgment as a matter of law, or, alternatively, a new trial, on the issue of whether Avery's EZ Series Fleet Marking Film ("EZ Film") infringes claims 1-5 of U.S. Patent 5,897,930 ("the '930 patent"), directly, by inducement, or under the doctrine of equivalents.

Avery makes this motion on the following grounds:

**A. <u>Request for Judgment As A Matter of Law</u>**

Avery is entitled to judgment as a matter of law because the evidence, even with all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion: Avery's EZ Film does not infringe claims 1-5 of the '930 patent either directly, by inducement, or under the doctrine of equivalents.

***1. Direct Infringement***

For direct infringement, 3M provided no competent evidence showing that Avery's EZ Film is a carrier web containing the requisite "first embossed pattern [that] forms an array of depressions" (which claims 1-5 all require). Avery's liner, as sold, lacks "depressions." 3M based its argument to the jury on the incorrect notion that Avery's liner does not include the polyurethane ink dots and that an embedded material is structurally indistinguishable from a "filled depression." Likewise, applying the correct claim constructions, Avery's liner never has an "embossed pattern," either as sold or after the customer removes the liner from the film.

Avery's evidence regarding the structure of its accused EZ Film was undisputed. As sold by Avery, its EZ Film contains a liner backing, coated with adhesive, and affixed by lamination to a vinyl film. In this regard, the liner "carries" the adhesive and the laminated film. Avery's liner consists of (1) a polypropylene base layer, (2) a layer of paper, (3) a layer of embossable polyethylene with embedded polyurethane dots, and (4) a layer of silicone.

On surface of the top layer, the polyurethane dots are embedded flush with the polyethylene so that no open or depressed areas extend below the surface. The

polyethylene/polyurethane surface, therefore, carries the adhesive and film, forming an integral part of the carrier web. Additionally, the polyurethane bonds with the polyethylene, leaving no "void" areas within the upper polymer layer. Undisputed evidence also showed that the polyurethane dots are embedded within the polyethylene as fractured particles. Each "area" of fractured polyurethane dots differs in shape and size, as do each individual fractured particle. Finally, the polyurethane, as it exists below the surface of the polyethylene, lacks any resemblance to the polyurethane prior to embedding because it changes shape when embedded, essentially inverting and forming "fingers" that extend into the polyethylene.

Upon use by a customer, the polyurethane separates from the polyethylene (with the adhesive and film), leaving holes where the polyurethane fragments had been embedded. These holes are irregular in shape and random across the surface of the entire carrier web. Following separation from the film, customers dispose of the spent release liner; 3M presented no evidence that the spent release liner has any other use.

Based upon these undisputed facts, and the legal claim constructions provided by the Court, no reasonable juror could find that 3M satisfied its burden of proof that Avery directly infringes.

a) As sold by Avery, the EZ Film lacks an embossed pattern forming an array of "depressions." 3M's witnesses conceded that no open or depressed areas exist beneath the "lands" of Avery's carrier web. 3M's expert (Dr. Strong) suggested that the polyurethane did not form part of the carrier web, but instead made depressions in the carrier web. Yet Dr. Strong's testimony ignored the Court's definition of "carrier web" –

i.e., a web that carries something. The undisputed facts showed that both the polyethylene ***and the polyurethane*** carry the adhesive and film. Thus, the polyurethane must be considered part of the carrier web, not a material that makes "depressions" in the carrier web.

3M further suggested that the polyethylene material contained depressions that were "filled" with polyurethane. But Dr. McHugh's undisputed evidence established that a surface having "filled" depressions differs in significant structural ways from a surface with one material embedded into another. Specifically, Dr. McHugh cited at least four structural differences establishing that the embedded polyurethane did not form "filled" depressions on the surface of Avery's liner. First, unlike a filled depression, the polyurethane bonded to the polyethylene in Avery's liner. Second, unlike a filled depression, no voids existed between the two polymers at the surface of Avery's liner. Third, unlike a filled depression, the polyethylene area beneath the polyurethane varied in size and shape. Fourth, unlike a filled depression, the embedded polyurethane formed a smooth contiguous surface on Avery's liner. Moreover, a "filled" depression cannot exist without first creating an open depression, and it is undisputed that Avery's liner ***never*** has open depressions that are filled. Thus, Avery requests judgment as a matter of law that its EZ Film, as sold by Avery, does not directly infringe the '930 patent.

b) Applying the applicable claim constructions provided by this Court, Avery's liner (both as sold and following removal by a customer) never has an "embossed pattern" forming depressions. Even accepting 3M's argument that the polyurethane is not part of the liner (which is legally incorrect under the Court's

definition of "carrier web"), the areas beneath the polyurethane do not, as a matter of law, meet the Court's definitions of "embossed" and "pattern." The Court's definition of "embossed" requires a surface structure with more than just a simple "topography." Rather, the surface must have a difference in "surface planar dimension" of a type that a "web" or "tooling" could "generate." Under the definition of "pattern," that "web" or "tooling" must "utilize" some "theory of geometry." Despite these definitions, 3M offered no evidence that areas beneath the polyurethane on Avery's liner contained formations that could have been "generated" from a "web or tooling" utilizing some "theory of geometry." To the contrary, Dr. McHugh's undisputed testimony established that the area beneath every polyurethane fragment differs in shape and size in random and unpredictable ways, not forming any geometric shape. Similarly, Dr. McHugh's undisputed testimony, confirmed by Mr. Hannington, established that areas beneath the polyurethane result from the polyurethane changing shape as it becomes embedded – leaving a formation that could not have been generated from a "web or tooling" with any geometric shape.

No testimony or evidence of 3M contradicted these facts. Dr. Strong's testimony quibbled with the Court's construction of the word "embossed," stating that it only required a "topography," which was not correct, and Dr. Cavaleri testified that each embedded polyurethane fragment (i.e., the alleged depression) differed in shape, size, and distribution.

For these reasons, Avery is entitled to judgment as a matter of law that its EZ Film as sold does not directly infringe the '930 patent, and that its spent release liner,

following separation from the adhesive and film, does not directly infringe either.

### *2. Indirect Infringement*

Under the Court's instructions to the jury, inducing infringement requires that some other person directly infringe. As discussed above, Avery's spent release liner cannot infringe the '930 patent because it lacks an "embossed pattern" forming an array of depressions. Accordingly, Avery is entitled to judgment as a matter of law on inducing infringement because no other person directly infringes the '930 patent.

Avery is entitled to judgment as a matter of law on 3M's inducement claim because no other person directly infringes the '930 patent for a second reason. To directly infringe, a person must make, use, sell, or offer for sale an infringing product. 35 U.S.C. § 271(a). 3M offered no evidence that Avery's customers use, sell, or offer for sale a spent release liner. Similarly, Avery's customers do not "make" a release liner, just as a person does not "make" wall paper by tearing old wall paper from a wall, (even if a spent release liner is still a "carrier web".

### *3. Doctrine of Equivalents*

Under the Court's instructions to the jury, the doctrine of equivalents cannot be used to find infringement when the accused product is missing a claim element or limitation entirely. For the reasons discussed above, Avery's liner (both as sold and following use) lacks an entire claim element – namely, the first embossed pattern forming an array of depressions. As a matter of law, without this requisite element, no reasonable juror could find infringement under the doctrine of equivalents.

Additionally, infringement cannot exist under the doctrine of equivalents applying the "function/way/result" test. Assuming "positionability" as the function of the first embossed pattern of depressions (even though ease of positioning does not appear in the claim language), the undisputed evidence showed that Avery's "way" of achieving positionability through embedding polyurethane differs substantially, and indeed provides efficiencies, over 3M's emboss and fill "way." Thus, Avery respectfully asks that the Court grant Avery judgment as a matter of law on 3M's infringement claims.

**B. <u>Request for New Trial</u>**

When a verdict is against the clear weight of the evidence, even if substantial evidence supports a jury's verdict, a trial court has a duty to set aside the verdict. Here, for the same reasons discussed above, the jury's verdict on direct infringement, inducing infringement, and infringement under the doctrine of equivalents, runs counter to the clear weight of the evidence regarding the structure of Avery's EZ Film. Thus, in the alternative to judgment as a matter of law, Avery respectfully requests a new trial on 3M's infringement claims.

## REQUEST FOR BRIEFING SCHEDULE AND ORAL ARGUMENT

Avery asks that this Court set a briefing schedule for legal memoranda supporting and opposing this Motion for judgment as a matter of law or, alternatively, for a new trial. Avery proposes the following briefing schedule (which Avery proposes with the other post-trial motions it is filing today):

| | |
|---|---|
| Avery's opening memorandum of law: | February 10, 2006 |
| 3M's opposition memorandum of law: | March 3, 2006 |
| Avery's reply memorandum of law: | March 17, 2006 |

Additionally, Avery respectfully asks that the Court schedule oral argument on Avery's post trial motions. Avery believes that argument on its post trial motions is especially critical considering the short length of time that the jury spent deliberating. Avery asks that argument on its post-trial motions be set for April 3, 2006 or the next convenient date for the Court and the parties.

Finally, 3M has applied to the Court for a permanent injunction. The parties will complete briefing on that motion according to a schedule to be determined. However, Avery believes that issues regarding 3M's entitlement to an injunction, the scope of an injunction, any stay of an injunction, and permissible design-around activities should be determined only after this Court rules on Avery's post trial motions.

DATED: January 10, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile

**CERTIFICATE OF SERVICE**

On January 10, 2006, I served a copy of the within document described as **AVERY DENNISON CORPORATION'S NOTICE OF MOTION AND MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL ON ISSUES OF INFRINGEMENT [REQUEST FOR BRIEFING SCHEDULE AND ORAL ARGUMENT]** by transmitting via United States District Court for the District of Minnesota Electronic Case Filing Program the document listed above by uploading the electronic files for each of the above listed document on this date, addressed as set forth below.

Jonathan E. Singer
John C. Adkisson
Katherine A. Moerke
Fish & Richardson, P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, Minnesota 55402

Juanita R. Books
Fish & Richardson, P.C.
12390 El Camino Real
San Diego, California 92130-2081

/S/ Lawrence M. Hadley
Lawrence M. Hadley