IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/JMM) |
| vs. | : | |
| AVERY DENNISON CORPORATION, | : | |
| Defendant. | : | |

**DEFENDANT AVERY DENNISON CORPORATION'S REVISED SECOND AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS TO COMPLAINT**

**(DEMAND FOR JURY TRIAL)**

Defendant Avery Dennison Corporation ("Avery") answers the Complaint of 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company (collectively, "3M") and sets forth its affirmative defenses and counterclaims as follows:

**NATURE OF THIS ACTION**

1. Avery admits the allegations in paragraph 1 of the Complaint but denies committing any acts of infringement.

**THE PARTIES**

2. Avery lacks sufficient knowledge and information to either admit or deny the allegations contained in paragraph 2 of the Complaint. Therefore, Avery denies the allegations.

3. Avery lacks sufficient knowledge and information to either admit or deny the allegations contained in paragraph 3 of the Complaint. Therefore, Avery denies the allegations.

4. Avery admits the allegations in paragraph 4 of the Complaint, but notes that Avery Dennison is not hyphenated.

**JURISDICTION AND VENUE**

5. Avery admits the allegations in paragraph 5 of the Complaint.

Responding to paragraph 6, Avery admits that the Court has personal jurisdiction over Avery, admits that Avery does business in Minnesota, and admits that Avery transacts business in Minnesota. The remainder of paragraph 6 states legal conclusions that do not require a response.

6. Responding to paragraph 7, Avery admits that venue is proper in this judicial district.

**RESPONSE TO FIRST CLAIM FOR RELIEF**

7. Responding to paragraph 8, Avery admits that the face of the ‘930 patent states that it issued on April 27, 1999, and that it is entitled “Multiple Embossed Webs.” Avery lacks sufficient knowledge and information to either admit or deny the remaining allegations contained in paragraph 8 of the Complaint. Therefore, Avery denies those allegations.

8. Avery denies the allegations in paragraph 9 of the Complaint.

9. Avery denies the allegations in paragraph 10 of the Complaint.

10. Avery denies the allegations in paragraph 11 of the Complaint.

11. Avery denies the allegations in paragraph 12 of the Complaint.

**RESPONSE TO PRAYER FOR RELIEF**

12. To the extent a response is necessary to 3M’s prayer for relief, Avery denies that 3M is entitled to the relief requested in the Complaint or to any relief whatsoever.

**AFFIRMATIVE DEFENSES**

**FIRST AFFIRMATIVE DEFENSE**

13. 3M’s Complaint fails to state a claim upon which relief may be granted.

**SECOND AFFIRMATIVE DEFENSE**

14. On information and belief, 3M’s claims against Avery are barred because each and every claim in United States Patent No. 5,897,930 (the ‘930 patent) is void and invalid because it fails to meet the conditions for patentability set forth in 35 U.S.C. § 1 et seq., including, *inter alia*, §§ 101, 102, 103, and 112.

**THIRD AFFIRMATIVE DEFENSE**

15. Avery has not infringed, induced infringement, or contributed to the infringement of the ‘930 patent, and is not infringing, inducing infringement, or contributing to the infringement of the ‘930 patent, because no act of Avery comes within the scope of any valid claim(s) of the ‘930 patent.

**FOURTH AFFIRMATIVE DEFENSE**

16. 3M’s claims for infringement are limited and/or barred in whole or in part pursuant to 35 U.S.C. § 287.

**FIFTH AFFIRMATIVE DEFENSE**

17. By reason of proceedings in the United States Patent and Trademark Office during the prosecution of the application that resulted in the ‘930 patent, and by reason of the admissions and representations therein made by or on behalf of the applicants for said patent, 3M is estopped from construing the claims of the ‘930 patent, even if this were otherwise possible, to cover and include any act of Avery.

**SIXTH AFFIRMATIVE DEFENSE**

18. The allegedly infringing products are so far different in principle from that disclosed in the ‘930 patent, and are so different in structure, function, operation, and result from that disclosed in the ‘930 patent, that Avery’s accused products cannot infringe any claim of the ‘930 patent.

**SEVENTH AFFIRMATIVE DEFENSE**

19. 3M’s claim for infringement of the ‘930 patent is limited and/or barred by the equitable doctrines of laches and unclean hands.

**EIGHTH AFFIRMATIVE DEFENSE**

20. 3M’s claims against Avery are barred because each and every claim in the ‘930 patent is void and unenforceable. During prosecution of the application that resulted in the ‘930

patent, persons with knowledge of the application failed to advise the Patent and Trademark Office ("PTO") of the existence of material prior art that was then known to them. These persons are John H. Hornickel, and Clyde Calhoun. On the same day 3M filed its application for the '930 patent, Mr. Hornickel and Dr. Calhoun filed another application on an alleged invention related to the inventions claimed in the '930 patent—application no. 08/775,844 (issued as U.S. Patent No. 6,197,397). The application for the '397 patent shows that both Mr. Hornickel and Dr. Calhoun had knowledge of a prior art reference highly material to the patentability of the claims set forth in the application for the '930 patent – the GB Patent Specification No. 1,511,060 (the "Unitika '060 patent").

21. The Unitika '060 patent is highly material. The application for the '930 patent described the invention as solving the problem of removing air bubbles, when applying large scale graphic films, without reapplying or perforating the film. According to the specification of the '930 patent, Dr. Calhoun solved this problem by embossing the liner for such films with a pattern of lands and ridges, which create air egress channels in the adhesive. Likewise, the Unitika '060 patent describes this very solution to the air bubble problem. Moreover, in an Examiner's "Statement of Reasons for Allowance," the Examiner stated that he would allow the application for the '930 patent because "[t]he prior art does not suggest or teach a carrier web with ridges and lands that ranges from 3 to 45 µm." Yet the Unitika '060 patent expressly shows that embossing ridges at 40 and 45 microns results in channels that allowed for complete "degassing."

22. Considerable evidence gives rise to an inference of intent to deceive. Mr. Hornickel and Dr. Calhoun were familiar with the Unitika '060 patent when they applied for the '930 patent. Neither Mr. Hornickel nor Dr. Calhoun submitted the Unitika '060 patent to the Examiner when applying for the '930 patent.

23. Under Patent Office regulations in effect at the time (37 C.F.R. §§ 1.56, 1.97, and 1.98), information material to a patent application must be provided to the Patent Office as part of an Information Disclosure Statement ("IDS"). Additionally, a physical copy of all foreign patent documents must be provided to the Examiner. 3M did not bring the Unitika patent to the Examiner's attention in the prescribed manner as part of the application that issued as the '930 patent.

24. In the application for the Sher '397 patent, Mr. Hornickel and Dr. Calhoun described the Unitika '060 patent, but never mention that the ridges taught in the '060 patent create air egress channels. Moreover, Mr. Hornickel and Dr. Calhoun stated in the Sher application that the ridges taught in the Unitika '060 patent needed to be "at least 45 [microns], and then only if the width of the recesses is at least 130 [microns]." These statements are false and deceptive because the Unitika '060 patent disclosed complete air egress with ridges as small as 40 microns and recess width at 100 microns.

**COUNTERCLAIMS**

Defendant Avery Dennison Corporation ("Avery"), as and for its counterclaims against Plaintiffs 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company (collectively "3M"), alleges as follows:

25. In this action, Avery seeks (a) declaratory judgment of noninfringement, invalidity, and unenforceability pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202 of 3M's '930 Patent, and (b) attorneys' fees pursuant to 35 U.S.C. § 285.

26. Counterclaimant Avery is a Delaware Corporation having its principal place of business at 150 North Orange Grove Boulevard, Pasadena, California 91103.

27. On information and belief, counterdefendant 3M Innovative Properties Company is a Delaware Corporation having its principal place of business at 3M Center, St. Paul, Minnesota 55133-3427.

28. On information and belief, counterdefendant Minnesota Mining and Manufacturing Company is a Delaware Corporation having its principal place of business at 3M Center, St. Paul, Minnesota 55133-3427.

29. This Court's jurisdiction over the subject matter of these counterclaims is based on 28 U.S.C. §§ 1331 and 1338.

30. Venue in this District is based on 28 U.S.C. §§ 1391(b) 1391(c) and 1400(b).

**FIRST COUNTERCLAIM FOR RELIEF:**
**DECLARATORY JUDGMENT OF INVALIDITY AND UNENFORCEABILITY OF U.S. PATENT NO. 5,897,930**

31. Avery realleges counterclaim paragraphs 22 through 27 above.

32. This counterclaim arises under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United States Code.

33. In its Complaint, 3M has alleged that it is the owner of the '930 patent, and that the patent is valid and enforceable. Avery contends, among other things, that the '930 patent is void, invalid, and unenforceable for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and 112.

34. By this counterclaim, Avery seeks a declaratory judgment that the '930 patent is invalid for failure to comply with the requirements of 35 U.S.C. §§ 101, 102, 103, and 112.

35. 3M's claims against Avery also are barred because each and every claim in the '930 patent is void and unenforceable. During prosecution of the application that resulted in the '930 patent, persons with knowledge of the application failed to advise the Patent and Trademark

Office ("PTO") of the existence of material prior art that was then known to them. These persons are John H. Hornickel, and Clyde Calhoun. On the same day 3M filed its application for the '930 patent, Mr. Hornickel and Dr. Calhoun filed another application on an alleged invention related to the inventions claimed in the '930 patent—application no. 08/775,844 (issued as U.S. Patent No. 6,197,397). The application for the '397 patent shows that both Mr. Hornickel and Dr. Calhoun had knowledge of a prior art reference highly material to the patentability of the claims set forth in the application for the '930 patent – the GB Patent Specification No. 1,511,060 (the "Unitika '060 patent").

36. The Unitika '060 patent is highly material. The application for the '930 patent described the invention as solving the problem of removing air bubbles, when applying large scale graphic films, without reapplying or perforating the film. According to the specification of the '930 patent, Dr. Calhoun solved this problem by embossing the liner for such films with a pattern of lands and ridges, which create air egress channels in the adhesive. Likewise, the Unitika '060 patent describes this very solution to the air bubble problem. Moreover, in an Examiner's "Statement of Reasons for Allowance," the Examiner stated that he would allow the application for the '930 patent because "[t]he prior art does not suggest or teach a carrier web with ridges and lands that ranges from 3 to 45 μm." Yet the Unitika '060 patent expressly shows that embossing ridges at 40 and 45 microns results in channels that allowed for complete "degassing."

37. Considerable evidence gives rise to an inference of intent to deceive. Mr. Hornickel and Dr. Calhoun were familiar with the Unitika '060 patent when they applied for the '930 patent. Neither Mr. Hornickel nor Dr. Calhoun submitted the Unitika '060 patent to the Examiner when applying for the '930 patent.

38. Under Patent Office regulations in effect at the time (37 C.F.R. §§ 1.56, 1.97, and 1.98), information material to a patent application must be provided to the Patent Office as part of an Information Disclosure Statement ("IDS"). Additionally, a physical copy of all foreign patent documents must be provided to the Examiner. 3M did not bring the Unitika patent to the Examiner's attention in the prescribed manner as part of the application that issued as the '930 patent.

39. In the application for the Sher '397 patent, Mr. Hornickel and Dr. Calhoun described the Unitika '060 patent, but never mention that the ridges taught in the '060 patent create air egress channels. Moreover, Mr. Hornickel and Dr. Calhoun stated in the Sher application that the ridges taught in the Unitika '060 patent needed to be "at least 45 [microns], and then only if the width of the recesses is at least 130 [microns]." These statements are false and deceptive because the Unitika '060 patent disclosed complete air egress with ridges as small as 40 microns and recess width at 100 microns.

40. Avery is informed and believes, and based thereon alleges, that 3M denies some or all of the contentions contained in paragraphs 31-39 above. Accordingly, a valid and justiciable controversy has arisen and exists between Avery and 3M.

41. A judicial declaration is necessary and appropriate at this time in order that Avery may ascertain its rights and duties with respect to activities that 3M alleges infringe the '930 patent.

**<u>SECOND COUNTERCLAIM FOR RELIEF:</u>**
**<u>DECLARATORY JUDGMENT OF NON-INFRINGEMENT</u>**

42. Avery realleges counterclaim paragraphs 22 through 34 above.

43. This counterclaim arises under the patent laws of the United States, Title 35 of the United States Code, and the Declaratory Judgment provisions of §§ 2201 and 2202 of Title 28 of the United States Code.

44. In its Complaint, 3M alleges that it is the owner of the '930 patent, and that Avery has infringed, has induced infringement, and has contributed to the infringement of the patent. Avery denies those allegations. Avery contends, among other things, that it does not infringe the '930 patent literally or under the doctrine of equivalents, or by inducing or contributing to infringement. A justiciable controversy therefore exists between Avery and 3M.

45. By this counterclaim, Avery seeks a declaratory judgment that has not committed any act of infringement of the '930 patent.

46. A judicial declaration is necessary and appropriate at this time in order that Avery may ascertain its rights and duties with respect to activities that 3M alleges infringe the '930 patent.

**THIRD COUNTERCLAIM FOR RELIEF:**
**ATTORNEYS FEES PURSUANT TO 35 U.S.C. § 285**

47. Avery realleges counterclaim paragraphs 22 through 39 above.

48. Each claim of the '930 patent requires a carrier web having (a) two or more separate embossments, and (b) a pattern of depressions created by the first embossment.

49. Before filing this action, 3M's employee, Dr. Michael Kesti, examined a piece of liner from Avery's EZ Series Fleet Marking Film ("EZ product").

50. Based on his examination, Dr. Kesti concluded that bumps on the adhesive surface of the EZ produce were made from a polyurethane material.

51. Dr. Kesti further concluded that that the most likely method for creating the polyurethane dots on the adhesive surface was that the dots were printed on the liner and then forced into the liner by a single embossing process. Dr. Kesti further believed that Avery forced the dots into the liner by passing the liner, which had been printed with dots, through a nip, in which one surface that made contact with the liner was engraved with a hexagon pattern, and the

force going through the nip impressed the hexagon pattern into the liner as well as pushed the polyurethane dots into the liner.

52. Based on Dr. Kesti's conclusions, 3M knew that Avery's liner on the EZ product lacked at least (a) two or more separate embossments, and (b) a pattern of depressions created by the first embossment, as required by the '930 patent.

53. Despite this knowledge, 3M filed this action against Avery, and even sought to preliminarily enjoin Avery from making or selling its EZ products during this case.

54. After 3M moved for a preliminary injunction, Avery informed 3M of the process by which it makes its EZ product, confirming the conclusions that Dr. Kesti had reached following his testing of Avery's EZ product. 3M, however, refused to withdraw its motion for preliminary injunction and to dismiss this case.

55. 3M's actions in bringing this lawsuit and moving for a preliminary injunction has cost Avery considerable attorneys fees.

56. Based on the exceptional circumstances of accusing Avery of infringement after performing tests that established Avery did not infringe, and maintaining both the lawsuit and a motion for preliminary injunction after Avery confirmed how it makes the EZ product, entitles Avery to its reasonable attorneys fees in this case.

## PRAYER FOR RELIEF

WHEREFORE, Avery prays for judgment as follows:

1. That 3M take nothing by its Complaint;
2. That 3M's Complaint be dismissed with prejudice;
3. That a declaratory judgment be entered adjudging that United States Letters Patent No. 5,897,930 is invalid, void and unenforceable;

4. That a declaratory judgment be entered adjudging that Avery has not committed any act of infringement, or any act of inducing infringement, of United States Letters Patent No. 5,897,930;

5. For a declaration that this is an exceptional case under 35 U.S.C. § 285 and that Avery be awarded its attorneys fees and costs in this action; and,

6. That Avery be awarded such other further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Demand for a jury trial is hereby made.

DATED: January 10, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile