IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

vs.

AVERY-DENNISON CORPORATION,

Defendant.

Civil Action No. 01-CV-1781 (JRT/FLN)

**AVERY DENNISON CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL ON ISSUES OF INVALIDITY**

# TABLE OF CONTENTS

**(Page)**

I. INTRODUCTION ..... 1

II. LEGAL STANDARDS FOR JUDGMENT AS A MATTER OF LAW AND MOTIONS FOR A NEW TRIAL ..... 3

III. AVERY IS ENTITLED TO JUDGMENT OR A NEW TRIAL ON ANTICIPATION ..... 4

A. The Doctrine of Inherency Allows for Anticipation Even When a Claim Element Is Not Expressly Disclosed In a Single Prior Art Reference ..... 4

B. The Clear Weight of Evidence Establishes that Each Limitation of Claims 1-5 of the '930 Patent is Disclosed Either Expressly or Inherently in the Sawka '675 Patent ..... 6

IV. AVERY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON OBVIOUSNESS ..... 11

A. 3M Did Not Properly Bring the Unitika Patent Before the Patent Examiner ..... 14

B. The Evidence Established A Motivation to Combine the Two Embossed Patterns Disclosed in the Prior Art ..... 16

1. Motivation Can Be Found Implicitly or Explicitly in the Nature of The Problem to be Solved ..... 16

2. The Admitted Evidence Established A Motivation to Combine ..... 18

C. 3M's Arguments Regarding Secondary Considerations of Non-Obviousness Misstated the Law ..... 20

1. 3M Failed to Present Proper Evidence Supporting a "Long-Felt Need" ..... 22

2. 3M Failed to Present Proper Evidence Supporting "Commercial Success" ..... 23

# TABLE OF CONTENTS (cont'd)

**(Page)**


3. 3M Failed to Present Proper Evidence Supporting "Copying" ........ 24

V. CONCLUSION ........ 25

# TABLE OF AUTHORITIES

(Page)

## Cases

3M Innovative Props. Co. v. Avery Dennison Corp.,
1364 (Fed. Cir. 2003), cert. denied,
124 S. Ct. 2877 (2004) .......... 6

Advanced Display Sys., Inc. v. Kent State Univ.,
212 F.3d 1272 (Fed. Cir. 2000) .......... 4, 22

Ashland Oil, Inc. v. Delta Resins & Refractories, Inc.,
776 F.2d at 291 (Fed. Cir. 1985) .......... 21

Atlas Powder Co. v. IRECO Inc.,
190 F.3d 1342 (Fed. Cir. 1999) .......... 5

Brown & Williamson Tobacco Corp. v. Philip Morris Inc.,
229 F.3d 1120 (Fed. Cir. 2000) .......... 18, 19

Demaco Corp. v. F. Von Langsdorff Licensing Ltd.,
851 F.2d 1387, 7 USPQ2d 1222 (Fed. Cir.), cert. denied,
488 U.S. 956, 102 L. Ed. 2d 383, 109 S. Ct. 395 (1988) .......... 23

Eli Lilly & Co. v. Barr Labs., Inc.,
251 F.3d 955 (Fed. Cir. 2001) .......... 5

Graham v. John Deere Co.,
383 U.S. 1 (1966) .......... 12

Helifix Ltd. v. Blok-Lok, Ltd.,
208 F.3d 1339 (Fed. Cir. 2000) .......... 4

In re Huang,
100 F.3d 135 (Fed. Cir. 1996) .......... 17, 18

In re Keller,
642 F.2d 413 (CCPA 1981) .......... 17

In re Kotzab,
217 F.3d 1365 (Fed. Cir. 2000) .......... 16, 17

In re Paulsen,
30 F.3d 1475 (Fed. Cir. 1994) .......... 23

## TABLE OF AUTHORITIES (cont'd)

**(Page)**

In re Steel Company,
265 F.3d 1354 (Fed. Cir. 2001) ..................... 17, 18

MercExchange, LLC v. eBay, Inc.,
401 F.3d 1323 (Fed. Cir. 2005) ..................... 11

Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.,
707 F.2d 1376 (Fed. Cir. 1983) ..................... 22

Oxford Gene Tech. Ltd. v. Mergen Ltd.,
345 F. Supp.2d 444 (D. Del. 2004) ..................... 21

Perricone v. Medicis Pharm. Corp.,
432 F.3d 1368 (Fed. Cir. 2005) ..................... 5

Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc.,
75 F.3d 1568 (Fed. Cir. 1996) ..................... 17

Ruiz v. A.B. Chance Co., 234 F.3d 654, 665 (Fed. Cir. 2000) ..................... 17

Schering Corp. v. Geneva Pharms., Inc.,
339 F.3d 1373 (Fed. Cir. 2003) ..................... 4, 5

Sjolund v. Musland,
847 F.2d 1573 (Fed. Cir. 1988) ..................... 22, 23

SmithKline Beecham Corp., v. Apotex Corp.,
403 F.3d 1331 (Fed. Cir. 2005) ..................... 4

Structural Rubber Prods. Co. v. Park Rubber Co.,
794 F.2d 794 (Fed. Cir. 1984) ..................... 13

**Statutes**

35 U.S.C. § 102(a) ..................... 4

35 U.S.C. § 103 ..................... 12

**Rules**

35 C.F.R. § 1.97 ..................... 15

35 C.F.R. § 1.98(a) ..................... 15

## TABLE OF AUTHORITIES (cont'd)

**(Page)**

37 C.F.R. § 1.56(a) .......... 15

Fed. R. Civ. P. 50(b) .......... 1

Fed. R. Civ. P. 59(a) .......... 1

# I. INTRODUCTION

Pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure, Avery seeks an Order granting judgment as a matter of law, or, alternatively, a new trial on the issue of whether claims 1-5 of U.S. Patent 5,897,930 ("the '930 patent") are valid over the prior art.

Avery is entitled to judgment as a matter of law , or alternatively, a new trial, on invalidity for the following reasons:

***Anticipation***

Each limitation of claims 1-5 of the '930 patent is disclosed in U.S. Patent 5,405,675 (the Sawka '675 patent), either expressly or inherently. Starting with the '930 patent, under the claim constructions provided by the Federal Circuit and this Court, claims 1-5 describe only a surface structure for a carrier web. That surface structure has two embossed patterns – a pattern forming an array of depressions and a pattern of lands and ridges within a specified height range. The only other requirement is that the depressions be "in" the lands/ridges. Claims 2-5 broadly recite that the embossed patterns can be virtually any size or geometric shape, and can cover all or only a small portion of the surface.

The specification and figures in the Sawka '675 patent discloses a structure falling squarely within the broad scope of the '930 patent claims. Dr. McHugh's testimony confirmed that the Sawka '675 patent disclosed each limitation of claims 1-5, and 3M offered no evidence in rebuttal. On cross-examination, Dr. McHugh agreed that the Sawka patent includes ***embodiments***, which do not have depressions in an "array," and in

which the second embossed pattern replaces the first pattern. But Dr. McHugh's agreement is immaterial to an anticipation analysis. The issue is not whether the Sawka patent discloses embodiments falling outside the scope of claims 1-5 of the '930 patent. It does. Rather, the issue is whether the Sawka patent also discloses embodiments that do fall within the scope of claims 1-5 – and Sawka plainly discloses such embodiments.

Additionally, Dr. McHugh agreed on cross examination that the word "lands" does not appear in the Sawka patent. But again, Dr. McHugh's admission is no concession on anticipation. While the word "lands" does not appear in the specification, lands are inherently part of the Sawka '675 disclosure. As Dr. Cavaleri testified, a surface (such as the surface described in the Sawka '675 patent) cannot have ridges and depressions without some base reference surface. Dr. Cavaleri further conceded that such a reference surface is commonly called a "land." Because a person skilled in the art would find lands inherent in the '675 patent, the jury's verdict on anticipation contradicts the evidence.

***Obviousness***

The undisputed evidence at trial established that the structure recited in claims 1-5 of the '930 patent results from taking an existing Controltac Plus liner (with either open or filled embossed depressions) and embossing a second pattern of ridges within a 3 to 45 micron height range. 3M already owned a patent on its existing Controltac Plus liner – U.S. Patent 5,141,790 (the '790 patent). According to the Patent Examiner, the claims were allowed only because the prior art did not disclose ridges/lands within the 3 to 45 micron range. But at least two prior patents (the Unitika and Matsui patents) disclose exactly what the Examiner found missing in the art. Thus, 3M could not dispute that the

Examiner erred, and that a combination of the '790 patent with either Unitika or Matsui patents teach each limitation of the '930 patent claims at issue.

Moreover, Dr. McHugh provided unopposed evidence that persons skilled in the art, at the time of the alleged invention of the '930 patent, would have been motivated to combine the embossed ridges known in the art for air egress with the embossed depressions known in the art for positionability. 3M presented no rebuttal validity evidence, and did not recall Dr. Strong to defend Avery's invalidity challenge. Indeed, the combination is inherent in the problem of to be solved – making graphic films easier to apply. Even 3M's own witness, Mr. Meixner, admitted that the motivation was obvious.

Similarly, 3M's argument to the jury that Avery failed to present evidence on the secondary considerations of non-obviousness is legally incorrect and contradicts the admitted evidence. Avery did not have the burden of proof to establish the absence of secondary considerations of non-obviousness – it was 3M's obligation to prove such consideration. While 3M offered some evidence of success of its commercial product and an alleged "need," 3M failed to tie the evidence to any patent claim. Thus, 3M committed legal error in arguing to the jury that these secondary considerations compelled the rejection of Avery's obviousness defense, and the jury's verdict cannot be sustained.

## II. LEGAL STANDARDS FOR JUDGMENT AS A MATTER OF LAW AND MOTIONS FOR A NEW TRIAL

Avery's Memorandum of Law in Support of its Motion on Infringement issues sets forth the legal standards for judgment as a matter of law and new trials. To avoid

repeating these standard, Avery incorporates them by reference in this motion.

## III. AVERY IS ENTITLED TO JUDGMENT OR A NEW TRIAL ON ANTICIPATION

### A. The Doctrine of Inherency Allows for Anticipation Even When a Claim Element Is Not Expressly Disclosed In a Single Prior Art Reference

As the jury was instructed, a patent claim is invalid by reason of anticipation if "the invention was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicant for patent . . . ." 35 U.S.C. § 102(a), (Jury Instr. 31). Anticipation based on a printed publication under section 102(a), including a prior art patent, requires the presence in the publication of each and every limitation of the claimed invention. Advanced Display Sys., Inc. v. Kent State Univ., 212 F.3d 1272, 1282 (Fed. Cir. 2000) (citation omitted).

Although anticipation requires that each limitation of a patent claim be "present" in a single prior art reference, "a prior art reference may anticipate without disclosing a characteristic of the claimed invention if that missing feature is necessarily present, or inherent, in the single anticipating reference." SmithKline Beecham Corp., v. Apotex Corp., 403 F.3d 1331, 1343 (Fed. Cir. 2005) (quoting Schering Corp. v. Geneva Pharms., Inc., 339 F.3d 1373, 1377 (Fed. Cir. 2003)). See also Helifix Ltd. v. Blok-Lok, Ltd., 208 F.3d 1339, 1347 (Fed. Cir. 2000) (even if a piece of prior art does not expressly disclose a limitation, it anticipates if a person of ordinary skill in the art would understand the prior art to disclose the limitation and could combine the prior art description with his own knowledge to make the claimed invention). As the Federal Circuit recently

confirmed, anticipation by inherency can be found even when a person of ordinary skill in the art may not recognize the inherent characteristics or functioning of the prior art:

> A single prior art reference that discloses, either expressly or inherently, each limitation of a claim invalidates that claim by anticipation. Thus, a prior art reference without express reference to a claim limitation may nonetheless anticipate by inherency. Under the principles of inherency, if the prior art necessarily functions in accordance with, or includes, the claims limitations, it anticipates. Moreover, "inherency is not necessarily coterminous with knowledge of those of ordinary skill in the art. Artisans of ordinary skill may not recognize the inherent characteristics or functioning of the prior art.

Perricone v. Medicis Pharm. Corp., 432 F.3d 1368, 1368 (Fed. Cir. 2005) (citations omitted). See also Schering Corp. v. Geneva Pharms., 339 F.3d 1373, 1377 (Fed. Cir. 2003) (rejecting the contention that inherent anticipation requires recognition in the prior art).

A claim limitation is inherent if it is the "'natural result flowing from' the explicit disclosure of the prior art." Schering, 339 F.3d at 1379 (quoting Eli Lilly & Co. v. Barr Labs., Inc., 251 F.3d 955, 970 (Fed. Cir. 2001)). Moreover, it is well settled that the mere recognition of a claimed new benefit inherent in the prior art cannot give rise to a patentable invention. See Atlas Powder Co. v. IRECO Inc., 190 F.3d 1342, 1347 (Fed. Cir. 1999) ("The discovery of a previously unappreciated property of a prior art composition, or of a scientific explanation for the prior art's functioning, does not render the old composition patentably new to the discoverer.") Thus, the anticipation doctrine takes into account the natural and inherent characteristics and benefits of a prior art structure even if those characteristics and benefits are not fully recognized within the art field at the time of the prior art disclosure. See Perricone, 432 F.3d at 1368.

### B. The Clear Weight of Evidence Establishes that Each Limitation of Claims 1-5 of the '930 Patent is Disclosed Either Expressly or Inherently in the Sawka '675 Patent

As construed by the Court, claims 1-5 of the '930 patent simply require a surface with two separate "topographies" – one of consisting of an "embossed pattern" forming an "array of depressions," and the other consisting of "lands and ridges" with the ridges between about 3-45 microns above the lands. Additionally, the embossed pattern of depressions must be "in" the pattern of lands/ridges. (Jury Instr. 15, 18). Furthermore, the depressions of the first embossed pattern may be "filled or unfilled." (Jury Instr. 18). Importantly, as construed by the Federal Circuit, the two embossed patterns can be made simultaneously with a single embossing tool. 3M Innovative Props. Co. v. Avery Dennison Corp., 1364 (Fed. Cir. 2003), cert. denied, 124 S. Ct. 2877 (2004). Claim 2 states that the depressions can be virtually any depth. Claim 3 states that the two patterns can cover all or only a small portion of the carrier web surface. Finally, claims 4 and 5 specify that either embossed pattern can be virtually any size or geometric shape. (Jury Instr. 14).

The overwhelming weight of evidence supports Avery's contention that Sawka '675 patent discloses every limitation of claims 1-5 in the '930 patent, either expressly or inherently. Dr. McHugh testified that the '675 patent contained each limitation, and 3M offered no evidence, expert or otherwise, rebutting Dr. McHugh's testimony. (Tr. 1169:21-1170:2 (McHugh)). On its face, the '675 patent discloses a web with two embossed patterns and expressly describes the patterns as having both "depressions" and "ridges." (Dx 85). Indeed, Figure 1 of the Sawka '675 patent shows both ridges (18) and

depressions (16), with the depressions arranged in an array and interspersed among the ridges:




FIG.1

The specification of the Sawka '675 patent confirms that the depressions can be located "in" the lands. Specifically, column 15, lines 52-60 describes an example in which two simultaneous embossed patterns were created by "thermomechanically embossing" the film, then high frequency" embossing a second pattern. These two steps "provide the film with simultaneous first and second embossed patterns that were different." (Dx 85, Col. 15, ll. 58-60).

Finally, the specification of the Sawka '675 patent discusses potential ridge heights, and states that for certain applications, ridges heights within the 3 to 45 micron range can be used. In particular, the specification states that the base layer thickness can range from 25 to 350 microns when the film is used for motor vehicle applications. (Dx 85, Col. 5, ll. 14-16). It further states that the depth of the embossed pattern is preferably no more that 1/3 the thickness of the base layer. (Id. Col. 4, ll. 6-10). For example, if the base layer is 30 microns thick, then the embossed pattern would be 10 microns deep. (Tr. 1162:7-21 (McHugh)). Thus, the range of depths, even measuring from the top of a ridge

to the bottom of a depression, can plainly fall within the 3 to 45 micron range recited in claim 1 of the '930 patent. (Tr. 1162:7-21 (McHugh)).

During Dr. McHugh's cross-examination, 3M's counsel suggested that the Sawka '675 patent lacks three limitations of claims 1-5 of the '930 patent. Yet Dr. McHugh disagreed with each point, and on re-direct explained why each point fails.

First, during cross examination and in closing argument, 3M's counsel contended that if Avery's liner did not have an "array" of depressions because over 10% of the polyurethane dots fall off, then the Sawka '675 patent could not disclose an array of depressions. (Tr. 1185:8-15, 1500-01). Contrary to 3M's argument, these contentions are fully consistent. Even if the polyurethane dots on Avery's liner are printed in an "orderly arrangement" (the Court's definition of "array"), randomly losing 10% can make the arrangement disorderly. Unlike the resulting arrangement on Avery's liner, the Sawka '675 patent expressly states that "the actual embossed pattern may have virtually any shape or design, including a pebbled, sandblasted, brushed, grained ... appearance." (Ex. 85, Col., 4, ll 13-15). Obviously, the words "virtually any design" can encompass an "orderly arrangement" independent of whether Avery's liner lacks an orderly arrangement of polyurethane dots.[1]

Second, on cross-examination, 3M suggested that the first pattern of depressions is not "in" the pattern of lands/ridges by pointing Dr. McHugh to language in the

[1] Since the jury apparently found Avery's liner to have an "orderly arrangement" of polyurethane dots, despite the random losses, 3M's "consistency" argument means that the jury should also have found that the Sawka '675 patent anticipates the '930 patent. Just as 3M's counsel argued that Avery cannot "have it both ways," (Tr. 1500:20-1501:2), the evidence could not support the jury's decision to give "both ways" to 3M.

specification stating that the base layer "may" be heated to remove a prior embossed pattern "so that it can be replaced with an alternative pattern." (Dx 85, Col. 4, ll 31-34). Dr. McHugh did not dispute that application of a second embossed pattern "may" replace the first pattern. While the Sawka '675 patent discloses "selective replacement," Dr. McHugh also explained that elsewhere the specification expressly disclosed two simultaneous embossed patterns. (Tr. 1268:13-1269:21 (McHugh)); Dx 85 Col. 15, ll 58-60). Indeed, Figure 1 of the '675 patent shows ridges interspersed with depressions. (Dx 85, fig. 1). Thus, the depressions can plainly exist between ridges, just as described in the '930 patent.

Third, 3M pointed out in cross examination and argued during closing that the word "lands" does not appear in the '675 patent. (Tr. 1264:16 – 1265:10; 1499:20 – 1500:19 (Closing)). Additionally, 3M contended that the ridge heights in Sawka could not be known without the allegedly missing "lands." (Id.) While the word "lands" does not appear in the Sawka patent, 3M's argument overlooks both the doctrine of inherency and the Court's claim constructions. Simply put, lands are necessarily inherent in the Sawka patent. In fact, 3M's own witness, Dr. Cavaleri, testified that "ridges" and "depressions" (both shown in Sawka) cannot exist on a web surface unless a base or reference surface also exists. (Tr. 696- 98 (Cavaleri)). According to Dr. Cavaleri, persons skilled in the art commonly call this reference surface a "land.":

> Q. Well, you had to select a reference plane to determine whether something was raised and something was lower, correct?
>
> A. That's correct.

. . . .

Q. Have you ever heard of the term "lands"?

A. Yes.

Q. Would that be another term for the reference point or surface area?

A. It could be, yes.

(Tr. 696, 698 (Cavaleri)).

Just as Dr. Cavaleri had to identify an arbitrary reference plain (which he called a land) to measure the heights of ridges and the depths of depressions, such a reference surface inherently exists in the Sawka ‘675 patent. No other conclusion is possible; Sawka ‘675 expressly describes ridges and depressions, and Dr. Cavaleri confirmed that ridges and depressions cannot exist without a “land” reference surface. Moreover, the Court defined “lands” as “areas of the surface of the carrier web between the ridges.” (Jury Instr. 18). Figure 1 of Sawka shows multiple ridges. Under the Court’s constructions, lands are, by definition, the area between.

Accordingly, lands must be part of the Sawka ‘675 patent even if the patent documents do not expressly identify the reference surface. Just as Dr. Cavaleri was free to arbitrarily select a reference surface so he could measure ridges and depressions with his profilometer, (Tr. 696-98 (Cavaleri)), Dr. McHugh properly identified a reference surface as the “lands” on Figure 1 of the Sawka ‘675 patent:




FIG.1

Dr. McHugh's selected reference surface is consistent with the identification in Figure 1 of "depressions" (16) below the reference surface, and "ridges" (18) above the surface. Moreover, with the selected reference surface, it is beyond reasonable dispute that ridge heights can be measured. Thus, 3M's argument fails against both the law of inherency and the clear weight of evidence.

Because the evidence does not support the jury's rejection of Avery's anticipation defense, and the clear weight of evidence established that each claim limitation in claims 1-5 of the '930 patent can be found either expressly or inherently in the Sawka '675 patent, this Court should grant judgment as a matter of law, or alternatively, a new trial, on anticipation. See MercExchange, LLC v. eBay, Inc., 401 F.3d 1323, 1335 (Fed. Cir. 2005) (reversing the denial of post-trial motions on anticipation where a prior art reference disclosed each limitation of the asserted patent claims).

## IV. AVERY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW OR A NEW TRIAL ON OBVIOUSNESS

Patents are invalid "if the differences between the subject matter sought to be

patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." 35 U.S.C. § 103; (Jury Instr. 32). The ultimate question of obviousness turns on four factors: (1) the scope and content of the prior art, (2) the differences between the prior art and the claims at issue, (3) the level of ordinary skill in the art, and (4) objective indicia of non-obviousness. Graham v. John Deere Co., 383 U.S. 1, 17 (1966); (Jury Instr. 32).

Avery demonstrated by the clear and convincing weight of evidence that the subject matter of claims 1-5 of '930 patent would have been obvious to a person of ordinary skill in the art at the time of the invention. Five facts, undisputed by 3M at trial, compel this result:

- During prosecution of the application for the '930 patent, 3M's attorneys met with the Patent Examiner after the Examiner had twice rejected 3M's proposed claims. According to the meeting notes, 3M informed the examiner that its claimed invention pertained to the removal of air bubbles from graphic films by making microscopic ridges in a liner. After demonstrating the removal of air bubbles, 3M agreed to amend its proposed claims to add a limitation for the microscopic ridges. (Dx 102 at 65).
- 3M amended its proposed claims as agreed by adding the following language: "wherein the second embossed pattern comprises lands and ridges between the lands, and wherein the height of the ridges over the lands ranges from about 3 to about 45 [microns]." (Id. at 69).

- The Patent Examiner allowed the amended claims. In so allowing, the Examiner gave the following reasons for allowance: "The reasons for withdrawing the objections of record are as follows: The prior art does not suggest or teach a carrier web with ridges and land that ranges from about 3 to 45 microns." (Id. at 71).
- At least two prior art references – the Unitika patent (Dx 512) and Matsui patent (Dx 644) – disclose exactly what the Examiner said was lacking in the prior art: ridges and lands between 3 and 45 microns. (Tr. 403:9-14 (Calhoun)). Moreover, the Unitika and Matsui patents teach ridges and lands within the claimed height range for the same purpose described by 3M during the meeting with the Examiner – namely, the removal of air bubbles when applying adhesive-coated materials to a substrate.
- When either the Unitika or Matsui patents are combined with the Calhoun '790 patent (Px 20), each limitation of claims 1-5 of the '930 patent is disclosed.

In the face of these undisputed facts, 3M made three arguments to the jury: (1) the Unitika patent was properly before the Patent Examiner during prosecution of the '930 patent, (2) Avery provided no motivation to combine except a "long-felt need," and (3) Avery provided no expert evidence on the secondary considerations of non-obviousness. Because each argument is either legally incorrect or in conflict with the record, Avery should be granted judgment or a new trial on obviousness. See Structural Rubber Prods. Co. v. Park Rubber Co., 794 F.2d 794, F.2d 707, 713 (Fed. Cir. 1984) (remainding for

"retrial on the issue of obviousness" based on the "absence of evidence on novelty."

### A. 3M Did Not Properly Bring the Unitika Patent Before the Patent Examiner

In closing argument and during Dr. McHugh's cross-examination, 3M's counsel suggested to the jury that the Patent Examiner considered the Unitika patent in allowing the claims of the '930 patent. (Tr. 1498-99 (closing)). In other words, 3M intentionally led the jury to believe that the Patent Office, contrary to the Examiner's statement of reasons for allowance, found the '930 patent non-obvious irrespective of the prior art teaching a web for removing air bubbles with embossed ridges between 3 and 45 microns.

According to 3M's argument, 3M actually brought the Unitika patent to the Examiner's attention during prosecution of the '930 patent. It did so by citing the Unitika patent in the application for the Sher '397 patent (Dx 51) – which 3M filed the same day as the '930 application – and then "incorporating by reference" the Sher '397 application in the '930 application. In the application for the '397 patent, 3M disclosed and purported to describe the Unitika patent.[2] Because the same Patent Examiner (Danny Lee) considered the application for the '930 patent and initially considered the application for the Sher '397 patent, 3M argued that its "incorporation by reference" legally brought the Unitika patent to the Examiners attention during prosecution of the application for the '930 patent. (Tr. 1243-44 (McHugh), Tr. 1498-99 (closing)).

---

[2] Dr. Calhoun, a named inventor on the '930 patent, is also a named inventor on the Sher '397 patent. (Px 18 and Px 51). At trial, Dr. Calhoun admitted that the description of the Unitika patent contained in the specification of the Sher '397 patent is not accurate. (Tr. 398:10 -403:14 (Calhoun)).

3M offered no support for its contention that it properly brought the Unitika patent to the Examiner's attention, because no support exists. Patent Office regulations govern the ways in which prior art is properly brought before a Patent Examiner. Specifically, 37 C.F.R. § 1.56(a) provides that "the duty to disclose all information known to be material to patentability is deemed to be satisfied if all [such] information . . .was cited by the Office or submitted to the Office in the manner prescribed by §§ 1.97(b)-(d) and 1.98." (See Dx 218). Under sections 1.97(b)-(d) all information material to a patent application must be provided to the Patent Office as part of an Information Disclosure Statement ("IDS"). (Id.; 35 C.F.R. § 1.97). Additionally, under section 1.98, the IDS must include a physical copy of all foreign patent documents. (Id., 35 C.F.R. § 1.98(a)).

Contrary to its argument, 3M did not bring the Unitika patent to the Examiner's attention in the proscribed manner. The file history for the '930 patent contains two Information Disclosure Statements. (Dx 102 at 34, 37 and 45-46). Neither IDS discloses the Unitika patent.[3] Likewise, 3M did not provide a legible copy of the Unitika patent – a foreign patent document – as required under the regulations. Moreover, even if the Sher application could be incorporated by reference into the application for the '930 patent, 3M has no support for the notion that ***prior art*** considered as part of the Sher application becomes part of the "incorporation" when 3M only incorporated the Sher ***application***.

[3] The same 3M attorney, John Hornickle, drafted the applications for both the '930 patent (Px 18).and the Sher '397 patent. (Px 51). Interestingly, around the same time Mr. Hornickle provided the IDS's as part of the application for the '930 patent, he provided the IDS's a part of the application for the Sher '397 patent. But unlike the IDS's for the '930 patent, Mr. Hornickle included the Unitika patent in the IDS for the Sher '397 patent. Plainly, Mr. Hornickle knew of the Unitika patent, but elected to keep it away from the prosecution of the '930 patent.

For these reasons, 3M did not properly bring the Unitika patent before the Patent Examiner as part of the prosecution of the '930 patent. 3M's failure to do so is consistent with the Examiner's statement that the prior art did not disclose ridges within the height range that 3M claimed in the '930 patent application. 3M should not have been allowed to argue otherwise to the jury and its ability to so argue plainly affected the jury's verdict on obviousness. Certainly, 3M's argument must have convinced the jury that the Unitika patent lacked relevance to whether the '930 patent would have been obvious to a person skilled in the art. Thus, Avery is entitled to judgment or, alternatively, a new trial to o prevent manifest injustice from 3M's legally incorrect argument.

### B. The Evidence Established A Motivation to Combine the Two Embossed Patterns Disclosed in the Prior Art

#### 1. Motivation Can Be Found Implicitly or Explicitly in the Nature of The Problem to be Solved

In determining whether a particular patent claim is obvious over a single prior art reference or a combination of references, the Federal Circuit requires that the accused infringer show that there is some motivation, suggestion, or teaching in the prior art to modify the reference or to combine the references. In re Kotzab, 217 F.3d 1365, 1369-1370 (Fed. Cir. 2000). This teaching, suggestion, or motivation may be found, either explicitly or implicitly, in the prior art, in the knowledge of persons skilled in the art, or in the nature of the problem to be solved:

> Our court has provided a great deal of guidance on what kind of factual findings the district court may make in determining a reason, suggestion, or motivation to combine. The reason, suggestion, or motivation to combine may be found explicitly or implicitly: 1) in the prior art references themselves; 2) in the knowledge of those of ordinary skill in the art that certain

> references, or disclosures in those references, are of special interest or importance in the field; or 3) from the nature of the problem to be solved, leading inventors to look to references relating to possible solutions to that problem.

Ruiz v. A.B. Chance Co., 234 F.3d 654, 665 (Fed. Cir. 2000) (internal citations and quotations omitted). If the teaching, suggestion, or motivation is implicit, "[t]he test for an implicit showing is what the combined teachings, knowledge of one of ordinary skill in the art, and the nature of the problem to be solved as a whole would have suggested to those of ordinary skill in the art." In re Kotzab, 217 F.3d at 1370 (citing In re Keller, 642 F.2d 413, 425 (CCPA 1981)). See also In re Steel Company, 265 F.3d 1354, 1361-1362 (Fed. Cir. 2001) (finding motivation to combine two prior art references that both addressed the problem of enhancing the magnetic properties of electrical steel).

Additionally, when examining whether a motivation to combine exists implicitly or explicitly in the "nature of the problem to be solved," Riiz, 234 F.3d at 665, the problem to be solved may be defined directly in the patent-in-suit. In re Huang, 100 F.3d 135, 139 n.5 (Fed. Cir. 1996) ("In his application, Huang acknowledges that shock generated by impact is a well known problem in the art."). See also Pro-Mold and Tool Co. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1573 (Fed. Cir. 1996) ("The reason to combine [two references disclosing different features for a card holder] arose from the very nature of the subject matter involved, the size of the card intended to be enclosed. .... Accordingly, the size of the card provided the motivation to combine the features of the prior art card holders . . . so that it was not larger or smaller than the card, but rather substantially the size of the card."). Similarly, improved performance of an existing product can provide the motivation to combine that product with a feature from the prior

art, provided those skilled in the art would have the technical capability to add the prior art feature. Brown & Williamson Tobacco Corp. v. Philip Morris Inc., 229 F.3d 1120, 1125-1128 (Fed. Cir. 2000) (holding that prior art, which disclosed lower burn rates for tobacco products with smaller circumferences, provided the necessary motivation to combine that reference with existing products).

**2. The Admitted Evidence Established A Motivation to Combine**

Here, ample evidence supported a motivation to combine. The Calhoun '790 patent on 3M's Controltac Plus product teaches an embossed pattern in an array of depressions. These depressions are filled with a glass slurry to create non-tacky pegs on the adhesive after removal, which makes application of graphic films easier. (Px 20). Similarly, the Unitika and Mitsui patents teach embossed ridges within the 3 to 45 micron height range, which form air channels in the adhesive. (Dx 512, 644). This too makes graphic films easier to apply. Because these prior art references all address the same problem – making films easier to apply – sufficient motivation exists to combine the references. See In re Steel Company, 265 F.3d 1354 at 1361-1362.

Moreover, both the application for the '930 patent and the application for the Sher '397 patent (which 3M incorporated by reference) directly define the nature of the problem to be solved – namely, making graphic films easier to apply by allowing for the removal of trapped air between a film and a substrate. (Px 18, Col. 1, ll 8-31). See In re Huang, 100 F.3d at 139 n.5. According to the specification for the '930 patent, making the small pattern of lands and ridges provides the solution to the air bubble problem. (Px 18, Col. 7 ln 65 – Col. 9 ln. 30). The specification also teaches that the invention

described in the '930 patent may be used with a variety of types of prior art liners for graphic films, including the liner disclosed in the '790 patent:

> Another advantage of the present invention is the ability to use a variety of types of pressure sensitive adhesives while also providing an ability to "outgas" the pressure sensitive adhesive after adhesion of the web to the substrate. Included among such types of pressure sensitive adhesives are those disclosed in U.S. Pat. Nos. 5,296,277 and 5,362,516 (both Wilson et al.) and 5,141,790 (Calhoun et al.), the disclosures of which are incorporated by reference therein.

(Px 18, Col 3, ll 25-32).

As the patent specification acknowledges, one of ordinary skill in the art, at the time of the invention, would have been motivated to combine the solution for removing air bubbles (which, although undisclosed in the patent specification, was already known in the prior art) with other prior carrier webs, such as the carrier web of the '790 patent. (Px. 20). Dr. Calhoun admitted that persons skilled in the art, at the time of the invention, were technically capable of combining small ridges for air egress with the depressions for posititionability disclosed in the '790 patent. (Tr. 397:9-16; Tr. 364:18 - 365:2). (Calhoun)). Because persons skilled in the art would recognize that the resulting combination would improve performance in applying films, motivation to combine is easily established. Brown & Williamson, 229 F.3d at 1125-1128. 3M's witness, Larry Meixner, summed up the obviousness of this motivation best:

> Q. And you knew that if you could be successful in embossing a Controltac 2 liner that had the depressions filled with glass beads, you would solve this problem, right? You could get the air out?
>
> A. Yes.

Q. And that was no secret to anybody, was it?

A. No.

Q. It was pretty obvious, right?

A. Yes

(Tr. 483:9-17 (Meixner)).

3M's argument that Avery only cited a supposed "long felt need" as the motivation to combine directly contradicts Dr. McHugh's testimony. Instead, Dr. McHugh testified regarding the motivations discussed above. (Tr. 1143:23 - 1147:9 (McHugh)). In fact, 3M provided no evidence that installers had been demanding films with easier air egress properties for "decades," as 3M's counsel improperly argued to the jury during closing. (Tr. 1495:1-5 (Closing)). Nor could 3M offer such evidence: The very "solution" to the air bubble problem supposedly solved by 3M had been known for decades, and 3M's own inventors knew it. (Tr. 481:14 – 23 (Meixner)). Thus, Avery established the motivation to combine, and 3M's arguments regarding motivation conflicted with the admitted evidence.

### C. 3M's Arguments Regarding Secondary Considerations of Non-Obviousness Misstated the Law

During Dr. McHugh's cross-examination, 3M's counsel repeatedly chastised Dr. McHugh for not considering "objective indicia of non-obviousness" such as failure of others in the face of a long-felt need, commercial success, licensing, professional approval, and copying. (Tr. 1232:13 – 1235:6 (McHugh)). Likewise, during closing, 3M's counsel suggested to the jury that it could reject Avery's obviousness defense for the sole reason that it did not offer expert testimony on these secondary considerations.

(Tr. 1494:14 - 1495:23 (closing)). Once again, 3M's arguments rested on an erroneous legal premise.

Dr. McHugh did not testify on direct examination about the so-called "objective indicia of non-obviousness" because Avery did not have the burden of proof on this factor. Rather, once Avery established a *prima-facie* case of obviousness, the burden shifted to 3M to present evidence of non-obviousness, including evidence regarding any of the objective criteria. Ashland Oil, Inc. v. Delta Resins & Refractories, Inc., 776 F.2d at 291-92 (Fed. Cir. 1985); Oxford Gene Tech. Ltd. v. Mergen Ltd., 345 F. Supp.2d 444, 456 (D. Del. 2004) ("It is not until 'a *prima facie* case has been established, [that] the burden shifts to the patentee to go forward with rebuttal evidence showing facts supporting nonobviousness' . . .any discussion of secondary considerations at this stage would be premature.") (citing Ashland Oil). Dr. McHugh's testimony regarding the scope and content of the prior art, the differences between the prior art and the claims at issue, and the motivation to combine, plainly established a *prima facie* case of obviousness. At that point, Avery had no obligation, through Dr. McHugh or anyone else, to address and preemptively "rebut" secondary considerations of non-obviousness, which 3M had not offered and never established. Suggesting otherwise, during Dr. McHugh's cross-examination and in closing argument, amounts to legal error compelling, at the very least, a new trial.

Nor did 3M's attempt to interject evidence of "commercial success" and "copying" during its direct case, or its argument about "long felt need" during closing, satisfied 3M's burden of proof on the secondary considerations in a way that required any

response during Avery's case. To the extent 3M offered any evidence regarding secondary considerations during its affirmative case, 3M's evidence failed to satisfy the necessary elements for each criteria.

### 1. 3M Failed to Present Proper Evidence Supporting a "Long-Felt Need"

Despite repeatedly arguing to the jury that a "long felt need" existed for the inventions claimed in the '930 patent (Tr. 1494, 1497 (Closing)), 3M failed to adduce evidence supporting any such need. First, an alleged "need" is not enough – the patent owner must provide evidence of "failed attempts by others" to meet the unmet need. See Advanced Display Systems, Inc. v. Kent State Univ., 212 F.3d 1272, 1285-86 (Fed. Cir.), cert. denied, 532 U.S. 904 (2000). 3M offered no evidence that others had tried but failed to solve the air egress problem. Nor could it; the problem had already been solved.

Second, the patent owner must show that the need was both recognized and persistent. Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc., 707 F.2d 1376, 1382 (Fed. Cir. 1983). Here, of course, the need was neither recognized nor persistent because persons skilled in the art had known for decades how to remove air bubbles by embossing ridges. (Tr. 481:14 – 23 (Meixner)).

Third, the patent owner must show that its solution to the alleged need ***is part of the claimed invention***. Sjolund v. Musland, 847 F.2d 1573, 1581 (Fed. Cir. 1988). Thus, even if 3M's "Comply" product provided a solution to the air bubble problem, 3M did not make that solution part of claims 1-5 of the '930 patent. 3M's witnesses admitted that its "Comply" product achieves air egress because 3M embosses the ridges in sequence, after making and filling the embossed depressions. (Tr. 661:24 – 662:25

(Calisto)). But claims 1-5, as construed by the Courts, do not require any sequential process. Consequently, the long felt need that 3M's counsel alleged could not support the verdict. For this reason alone, the jury's verdict on non-obviousness cannot stand. See Sjolund, 847 F.2d at 1582 (overturning a jury's verdict rejecting an obviousness defense where the patentee's solution to an alleged "long felt need" was not part of the claimed invention.).

### 2. 3M Failed to Present Proper Evidence Supporting "Commercial Success"

For the same reasons, the testimony of Mr. Calisto regarding the commercial success of 3M's Comply product lacks relevance to obviousness. As with a long felt need, the patent owner must prove a nexus between any commercial success and the claimed invention:

> When a patentee offers objective evidence of nonobviousness, there must be a sufficient relationship between that evidence and the patented invention. See Demaco Corp. v. F. Von Langsdorff Licensing Ltd., 851 F.2d 1387, 1392, 7 USPQ2d 1222, 1226 (Fed. Cir.), cert. denied, 488 U.S. 956, 102 L. Ed. 2d 383, 109 S. Ct. 395 (1988). "The term 'nexus' is used, in this context, to designate a legally and factually sufficient connection between the proven success and the patented invention, such that the objective evidence should be considered in the determination of nonobviousness. The burden of proof as to this connection or nexus resides with the patentee." Id.

In re Paulsen, 30 F.3d 1475, 1482 (Fed. Cir. 1994).

3M failed to offer any evidence regarding the requisite nexus. Indeed, on cross examination, Mr. Calisto admitted that claim 1 does not specify the requirements that resulted in the alleged commercial success of the Comply product:

> Q. . . . . First of all, let's -- there's nothing in claim 1 about how the product has to operate, right, it's just a structure?
>
> A. Correct.
>
> Q. And in that structure, there is nothing in this claim that identifies the two things that you said lead to commercial success, correct?
>
> A. That's correct.

(Tr. 667:9 – 16 (Callisto)).

### 3. 3M Failed to Present Proper Evidence Supporting "Copying"

While 3M argued to the jury that Avery had "copied" its patent, (Tr. 1494:8-13 (closing)), 3M again adduced no admissible evidence of copying. At best, during Mr. Hannington's cross examination, Mr. Hannington admitted that he considered the diamond-shaped pattern for the lands and ridges, which 3M uses in its commercial product. (Tr. 1038:7-24 (Hannington)). But 3M's patent does not claim a diamond-shaped pattern; nor could it: Diamond-shaped patterns have been long known in the prior art.

Furthermore, the Federal Circuit already affirmed that Avery does not infringe the method claims of the '930 patent. This affirmation proves that Avery developed a different process for achieving positionabiliy and air egress in an graphic film.

Finally, 3M's witnesses, including Mr. Calisto, testified that claims 1-5 have no requirement for positionability or air egress. Thus, no evidence supported 3M's argument that Avery copied 3M's patent to make its EZ Film. As Mr. Hannington confirmed, if Avery copied, it would have introduced a competing product in months rather than spending years in research and development. (Tr. 959:9-16 (Hannington)).

In sum, Avery did not present evidence on objective considerations of non-obviousness because 3M never met its burden on those factors. Thus, 3M's arguments to the jury on non-obviousness rested on insufficient evidence and legally erroneous standards. Judgment in favor of Avery or, alternatively, a new trial to prevent injustice, should be granted.

## V. CONCLUSION

For the foregoing reasons, Avery respectfully asks that the Court grant Avery judgment as a matter of law or, alternatively, a new trial, on issues of anticipation and obviousness.

DATED: February 10, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile