IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

vs.

AVERY-DENNISON CORPORATION,

Defendant.

Civil Action No. 01-CV-1781 (JRT/FLN)

**AVERY DENNISON CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW OR, ALTERNATIVELY, FOR A NEW TRIAL ON ISSUES OF INFRINGEMENT**

# TABLE OF CONTENTS

**(Page)**


I. INTRODUCTION ........ 5

II. SUMMARY OF ARGUMENTS ........ 5

III. AVERY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON DIRECT, INDIRECT AND THE DOCTRINE OF EQUIVALENTS INFRINGEMENT ISSUES ........ 7

A. Legal Standards on Motions for Judgment as a Matter of Law ........ 7

B. 3M Offered Insufficient Evidence to Support the Jury's Verdict on Direct Infringement, Inducing Infringement, and Infringement Under the Doctrine of Equivalents ........ 9

1. No Substantial Evidence Supports the Jury's Verdict on Direct Infringement ........ 10

a) The Structure of Avery's Accused EZ Film Is Undisputed ........ 10

b) No Reasonable Juror Could Find That 3M Proved Direct Infringement ........ 13

2. 3M Offered Insufficient Evidence to Support a Verdict of Indirect Infringement ........ 22

3. 3M Failed To Offer Evidence Sufficient to Support A Judgment of Infringement Under the Doctrine of Equivalents ........ 24

IV. AVERY IS ENTITLED TO A NEW TRIAL ON DIRECT, INDIRECT, AND DOCTRINE OF EQUIVALENTS INFRINGEMENT ISSUES ........ 26

A. Legal Standard on Motions for New Trial ........ 26

B. Avery Should Be Granted A New Trial On Infringement Issues ........ 28

V. CONCLUSION ........ 30

## TABLE OF AUTHORITIES

**(Page)**

**Cases**

Akamai Techs., Inc. v. Cable & Wireless Internet Servs.,Inc.,
344 F.3d 1186 (Fed. Cir. 2003) ........ 9

Amerinet, Inc. v. Xeros Corp.,
972 F.2d 1483 (8th Cir. 1992) ........ 8

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1983) ........ 8, 9

BBA Nonwovens Simpsonville v. Superior Nonwovens,
303 F.3d 1332 (Fed. Cir. 2002) ........ 27

Belk v. City of Eldon,
228 F.3d 872 (8th Cir. 2000) ........ 27

Century Wrecker Corp. v. E.R. Buske Mf'g Co.,
931 F. Supp. 1256 (N.D. Iowa 1996) ........ 27

Consol. Edison Co. v. NLRB,
305 U.S. 1978 (1938) ........ 9

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,
535 U.S. 722, 122 S. Ct. 1831 (2002) ........ 24

Gray v. Bicknell,
86 F.3d 1472 (8th Cir. 1996) ........ 27

In re Hayes Microcomputer Prods.,
982 F.2d 1527 (Fed. Cir. 1992) ........ 10

Johnson v. New York N.H. & H.R. Co.,
344 U.S. 48, 73 S. Ct. 125 (1952) ........ 7

Larson v. Miller,
76 F.3d 1446 (8th Cir. 1996) ........ 8

London v. Carson Pirie Scott & Co.,
946 F.2d 1534 (Fed. Cir. 1991) ........ 18

**TABLE OF AUTHORITIES (cont'd)**

**(Page)**

Markman v. Westview Instruments, Inc.,
517 U.S. 370 (1996) .......... 10

Moba B.V. v. Diamond Automation, Inc.,
325 F.3d 1306 (Fed. Cir. 2003) .......... 23

Novartis Pharm. Corp v. Abbot Labs.,
375 F.3d 1328 (Fed. Cir. 2004) .......... 8, 9

Pannu v. Iolab Corp.,
155 F.3d 1344 (Fed. Cir. 1998) .......... 9

Pharm. Corp. v. Abbot Labs.,
375 F.3d 1328 (Fed. Cir. 2004) .......... 9

SmithKline Diagnostics, Inc. v. Helena Labs. Corp.,
859 F.2d 878 (Fed. Cir. 1988) .......... 10

Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co.,
308 F.3d 1167 (Fed. Cir. 2002) .......... 27

Unitherm Food Sys., Inc. v. Swift-Ekrich, Inc.,
__ U.S. __, __ S. Ct. __, 2006 WL 151970 at *3-4 (Jan. 23, 2006) .......... 7, 8

Walsh v. Nat'l Computer Sys., Inc.,
332 F.3d 1150 (8th Cir. 2003) .......... 8

Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,
520 U.S. 17, 117 S. Ct. 1040 (1997) .......... 24, 25

Wash Solutions, Inc. v. PDQ Mfg., Inc.,
395 F.3d 888 (8th Cir. 2005) .......... 28

White v. Pence,
961 F.2d 776 (8th Cir. 1992) .......... 27

**Statutes**

35 U.C.S. § 271(b) .......... 23

35 U.S.C. § 271(a) .......... 23, 29

## TABLE OF AUTHORITIES (cont'd)

**(Page)**

### Rules

Fed. R. Civ. P. 50(a) .......... 8

Fed. R. Civ. P. 50(b) .......... 5, 7, 8

Fed. R. Civ. P. 59(a) .......... 5, 27

Fed. R. Civ. P. 59 .......... 26, 27

# I. INTRODUCTION

Pursuant to Rules 50(b) and 59(a) of the Federal Rules of Civil Procedure, Avery seeks an Order granting judgment as a matter of law, or, alternatively, granting a new trial, on the issue of whether Avery's EZ Series Fleet Marking Film ("EZ Film") infringes claims 1-5 of U.S. Patent 5,897,930 ("the '930 patent"), directly, by inducement, or under the doctrine of equivalents.

This case is uniquely appropriate for judgment as a matter of law. Critically examined, the only factual infringement issues in this case – the precise structure of Avery's accused EZ film and its components – were not disputed during the trial. Where, as here, the actual structure of the accused product and its components is established, and no reasonable juror could find otherwise, this Court can and should resolve the infringement issues irrespective of the verdict.[1]

# II. SUMMARY OF ARGUMENTS

Avery is entitled to judgment as a matter of law or, in the alternative, a new trial. As to the direct infringement claims, 3M failed to prove that the following claim limitations were found in the Avery product for the following reasons:

[1] This Court's careful consideration of this motion will be the first time the evidence at trial will be evaluatively measured against this Court's claim constructive rulings. As 3M's counsel reported in the attached news release (Exhibit A), the jury returned its verdict in less than three hours following our eight day trial. While Avery is fully aware of the case law holding that so short a deliberation in and of itself is not grounds for a new trial, we should not indulge the fiction that the specifics of the particular infringement inquiries were actually considered by the jury. During that less than three hour period, the jury was taken to lunch by the Federal Marshall, elected a foreman, and completed voluminous special verdict forms.

1. There is no "embossed pattern" of depressions in the Avery product because the structure of the imbedded polyurethane could not be created by a tool and therefore does not and cannot meet the definition of "embossed" in the '930 patent.

2. There is no "embossed pattern" of depressions in the Avery product because the structure of the imbedded polyurethane does not and cannot meet the definition of "pattern" in the '930 patent.

3. There is no first embossed pattern of "depressions" in the surface of the carrier web because the undisputed evidence established that the embedded polyurethane was flush with the surface and comprised part of the carrier web; and,

4. The requirement of a first embossed pattern of "depressions," even if it could be legally satisfied by a "filled depression" (which Avery disputes), is structurally different from the structure of polyurethane embedded into polyethylene.

As to 3M's vicarious infringement claim, for the same reasons Avery does not directly infringe, no Avery customer directly infringes either. Moreover, 3M offered no evidence that any customer has committed an act of direct infringement by making, using, selling, or offering for sale an allegedly infringing carrier web.

As to 3M's claim for infringement under the doctrine of equivalents, Avery's liner cannot infringe because Avery's liner, as a matter of law, lacks a surface with the requisite "first embossed pattern [forming] an array of depressions" or its equivalent for

all the reasons expressed in Avery's challenge to 3M's direct infringement claim. Additionally, no substantial evidence supported a verdict of infringement under the function/way/result test for doctrine of equivalents.

Alternatively, even if 3M offered sufficient evidence to withstand judgment as a matter of law on any infringement issue, Avery should be granted a new trial on infringement because the clear weight of evidence overwhelmingly established that Avery's EZ Film liner does not infringe any of claims 1-5 of the '930 patent.

## III. AVERY IS ENTITLED TO JUDGMENT AS A MATTER OF LAW ON DIRECT, INDIRECT AND THE DOCTRINE OF EQUIVALENTS INFRINGEMENT ISSUES

### A. Legal Standards on Motions for Judgment as a Matter of Law

A Rule 50(b) motion allows a party to renew a Motion for Judgment as a Matter of Law made at the close of evidence. Fed. R. Civ. P. 50(b); see also Unitherm Food Sys., Inc. v. Swift-Ekrich, Inc., __ U.S. __, __ S. Ct. __, 2006 WL 151970 at *3-4 (Jan. 23, 2006) (analyzing the necessity of filing a Rule 50(b) motion after filing a Rule 50(a) motion in a patent infringement case). "[T]he 'requirement of a timely application for judgment after verdict is not an idle motion' because it 'is … an essential part of the rule, firmly grounded in principles of fairness.'" Unitherm, __ U.S. __, __ S. Ct. __, 2006 WL 151970 at * 4 (quoting Johnson v. New York N.H. & H.R. Co., 344 U.S. 48, 53, 73 S. Ct. 125 (1952)).

In short, a rule 50(b) motion challenges the legal sufficiency of evidence supporting a jury's verdict. Such a motion ***must*** be granted if there "is no legally

sufficient evidentiary basis for a reasonable jury to find for [the prevailing] party on that issue" and a claim or defense "cannot under the controlling law be maintained or defeated without a favorable finding on that issue." Fed. R. Civ. P. 50(a).

In patent cases, the Federal Circuit applies the law of the regional circuit court. See, e.g., Novartis Pharm. Corp v. Abbot Labs., 375 F.3d 1328, 1332 (Fed. Cir. 2004); Unitherm, __ U.S. __, __ S. Ct. __, 2006 WL 151970 at *3 (recognizing the Federal Circuit's application of the regional circuit law to Rule 50 motions). Within the Eighth Circuit, Rule 50 requires that the Court make a threshold determination of whether sufficient evidence exists to create a fact issue for the jury or whether a judgment as a matter of law is warranted. See Amerinet, Inc. v. Xeros Corp., 972 F.2d 1483, 1505 (8th Cir. 1992). In this regard, a Rule 50(b) motion essentially requires application of the same test as a motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51 (1983).

Although the Court, in considering a Rule 50(b) motion, should give the non-moving party the benefit of all reasonable inferences, Walsh v. Nat'l Computer Sys., Inc., 332 F.3d 1150, 1158 (8th Cir. 2003) (quotations and citations omitted), the non-moving party may not be accorded "the benefit of unreasonable inferences, or those at war with the undisputed facts." Larson v. Miller, 76 F.3d 1446, 1452 (8th Cir. 1996). The mere presence of some facts supporting the verdict is insufficient; there must be more than a mere "scintilla" of evidence to support the jury's decision. See Anderson, 477 U.S. at 251; Bankers Trust Co., 20 F.3d at 1100 (citation omitted). Thus, a motion for judgment as a matter of law must be granted when there was not evidence presented "which a jury

could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (citations and quotations omitted).

The Federal Circuit has articulated nearly identical standards for Rule 50 motions. According to the Federal Circuit, judgment as a matter of law after a jury's verdict is appropriate when the "'jury's findings, presumed or express, are not supported by substantial evidence or, if they were, that the legal conclusion(s) implied [by] the jury's verdict cannot in law be supported by those findings.'" Novartis Pharm. Corp v. Abbot Labs., 375 F.3d 1328, 1332 (Fed. Cir. 2004) (quoting Pannu v. Iolab Corp., 155 F.3d 1344, 1348 (Fed. Cir. 1998)) (modification in Novartis) (further citations omitted). The Federal Circuit also recognizes that "[a] factual finding is supported by substantial evidence if a reasonable jury could have found in favor of the prevailing party in light of the evidence presented at trial. 'Substantial evidence is more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Akamai Techs., Inc. v. Cable & Wireless Internet Servs.,Inc., 344 F.3d 1186, 1192 (Fed. Cir. 2003) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 1978, 229 (1938)) (further citations and quotations omitted). If the court is "convinced that a reasonable jury could not have found in that party's favor" the judgment as a matter of law must be granted. Id.

### B. 3M Offered Insufficient Evidence to Support the Jury's Verdict on Direct Infringement, Inducing Infringement, and Infringement Under the Doctrine of Equivalents

Avery is entitled to judgment as a matter of law because the evidence, even with

all reasonable inferences in favor of the verdict, could lead a reasonable person to only one conclusion: Avery's EZ Film does not infringe claims 1-5 of the '930 patent either directly, by inducement, or under the doctrine of equivalents because it lacks the requisite "first embossed pattern [that] forms an array of depressions" (which claims 1-5 all require).

### 1. No Substantial Evidence Supports the Jury's Verdict on Direct Infringement

Infringement in this case must be decided as a matter of law. It is well settled that consideration of infringement requires a two-step process: (1) construing disputed claim terms, and (2) determining whether the accused device comes within the scope of the construed claims. SmithKline Diagnostics, Inc. v. Helena Labs. Corp., 859 F.2d 878, 889 (Fed. Cir. 1988). Claims are construed as a matter of law by Courts, just as this Court did. Markman v. Westview Instruments, Inc., 517 U.S. 370, 384 (1996). On the other hand, the determination of infringement typically is a question of fact for the jury. In re Hayes Microcomputer Prods., 982 F.2d 1527, 1541 (Fed. Cir. 1992). But in this case, the parties did not dispute the structure of Avery's accused liner. To the contrary, all witnesses, both fact and expert, agreed on the structure. Because the parties submitted no factual disputes to the jury on infringement, this Court can and should resolve the infringement issue as a matter of law irrespective of the verdict.

#### a) The Structure of Avery's Accused EZ Film Is Undisputed

As sold by Avery, its EZ Film contains three layers: a liner backing, an adhesive

layer, and an vinyl film affixed by lamination. (Tr. 794:24-795:7 (Strong) and DDx 4)[2] 3M's infringement contentions focused on the structure of the "liner" layer of Avery's EZ Film. Structurally, the evidence established that Avery's liner consists of (1) a polypropylene base layer, (2) a layer of paper, (3) a layer of embossable polyethylene with embedded polyurethane dots, and (4) a layer of silicone. When combined with the adhesive and film layers, the polyethylene/polyurethane surface "carries" the adhesive and film. (Tr. 765:1-13) (Strong)).

Dr. McHugh provided undisputed testimony regarding how the polyurethane and polyethylene combine structurally to form the top layer. According to Dr. McHugh, the polyurethane displaces the polyethylene. At the interface of the two materials, the polyurethane bonds with the polyethylene, leaving no "void" areas within the upper polymer layer. (Tr. 1194:16-1195:4 (McHugh)). Likewise, Dr. McHugh explained that the polyurethane dots are embedded within the polyethylene as fractured particles. As demonstrated by examination under a high-power microscope, each "area" of fractured polyurethane dots differs in shape and size, as do each individual fractured particle:

---

[2] In Avery's Post-Trial Memoranda, this brief, references to the trial transcript are denoted by "Tr" followed by page number and witness, e.g., Tr ____ (McHugh). Plaintiff's Exhibits are designated "Px __". Plaintiff's Demonstrative Exhibits are designated "PDx __". Defendant's Exhibits are designated "Dx __." Defendant's Demonstrative Exhibits are designated "DDx __".




(Px 125).

Finally, Dr. McHugh testified that the polyurethane, as it exists below the surface of the polyethylene, lacks any resemblance to the polyurethane prior to embedding because it changes shape when embedded, essentially inverting and forming "fingers" that extend into the polyethylene. (Tr. 1189:23-1191:4 (McHugh)). Mr. Hannington, the inventor of Avery's EZ Film liner, confirmed this latter observation during his testimony. (Tr. 936:8-938:1 (Hannington)). 3M offered no evidence in rebuttal.

Importantly, the undisputed evidence of both 3M and Avery witnesses also showed that the polyurethane dots do not rise above or sink below the polyethylene. Rather, the polyurethane dots, together with the polyethylene, form a flush, contiguous

upper surface. (Px 219, 79, 79, 86; Tr. 699:4-706:12 (Cavaleri), 1193:17-23 (McHugh), 769:11-770:21 (Strong)). Indeed, 3M's own expert in surface topography examination, Dr. Cavaleri, testified that the surface of Avery's liner contains "lands and ridges," but that no lower or sunken areas exist within the land regions. As Dr. Cavaleri explained, his "profilometer" device, which measures surface height and depressions, shows raised areas on Avery's liner where ridges rise above the lands, but no lowered regions in the areas of the embedded polyurethane dots. (Tr. 693:15-694:19 (Cavaleri)).

**b) No Reasonable Juror Could Find That 3M Proved Direct Infringement**

Based on the undisputed facts regarding the structure of Avery's liner and this Court's legal claim constructions, 3M failed to offer facts from which a reasonable jury could find direct infringement because Avery's liner lacks the necessary "first embossed pattern [forming] an array of depressions." Indeed, as a matter of law, Avery's liner entirely lacks this necessary limitation for two separate reasons. First, the areas in which polyurethane is embedded within the polyethylene cannot constitute an "embossed pattern" under the Court's definitions of these terms. Second, the areas in which polyurethane is embedded within the polyethylene cannot meet the Court's definition of "depressions."

Embossed Pattern

Applying the applicable claim constructions provided by this Court, Avery's liner (both as sold and following removal from the film by a customer) never has an "embossed pattern" forming depressions. The structure on areas defined by the

embedded polyurethane do not, as a matter of law, meet the Court's definitions of "embossed" and "pattern." This is true whether the inquiry is one of direct infringement when the polyurethane is still in the web or the inquiry is vicarious infringement after a customer has removed the adhesive backing and the polyurethane from the release liner.

The Federal Circuit's definition of "embossed" as exactly defined in the '930 patent requires a surface structure with more than just a "topography." Rather, the surface must have a difference in "surface planar dimension" of a type that a "web" or "tooling" could "generate:"

> "Embossed" means a topography on a web or on tooling having an effective three-dimensional pattern that generates a difference in surface planar dimension in the liner or the tooling.

Under the '930 patent's definition of "pattern," that "web" or "tooling" must "utilize" some "theory of geometry:"

> "Pattern" means any formation of embossings that can utilize any theory of geometry, including without limitation, Euclidian geometry and fractal geometry.

At trial, 3M offered no evidence that areas beneath the polyurethane on Avery's liner contained formations that could have been "generated" from a "web or tooling" utilizing some "theory of geometry." To the contrary, 3M's witnesses and Avery's witnesses both testified that the structures created by embedments are irregular in size and shape and are random. 3M witness Dr. Cavaleri, with his profilometer pictures, demonstrated the unique and peculiar shape of those structures. (Px 86; Tr. 700:16-25 (Cavaleri)). Further, Dr. Cavaleri admitted that the shape of the holes created from the removal of the polyurethane when the release liner is stripped from the adhesive are

irregular in size and shape, and are random. (Id.) Correspondingly, Avery's expert, Dr. McHugh, identically testified that the area beneath every polyurethane fragment differs in shape and size in random and unpredictable ways, not forming any geometric shape. (Tr. 1196: 1-11 (McHugh)). Both Dr. McHugh and Mr. Hannington further testified that, when embedded, the polyurethane essentially "inverts" and forms "fingers" that extend into the polyethylene, similar to the following illustration:



DEFENDANT'S EXHIBIT 216

(DDx 216). The inverting and fingering results from the polyurethane changing shape as it becomes embedded – leaving a formation that could not have been generated from a "web or tooling" with any geometric shape. (Tr. 936:17 - 937:14 (Hannington); 1190:17 – 1191:4 (McHugh)).

Not only did 3M's witnesses confirm that the areas polyurethane structures and

areas beneath the polyurethane lack any known geometric shape, 3M offered no testimony or evidence contradicting these facts. For example, both Drs. Strong and Cavaleri simply pointed to photographs of Avery's liner and stated that a "pattern" exists where polyurethane had been embedded. But neither witness mentioned or applied the Court's definition of "pattern." Judgment as a matter of law is appropriate where expert testimony fails to provide evidence that the infringing device includes each limitation as required by the court's claim construction. See Texas Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1564-65 (Fed. Cir. 1996), cert denied 520 U.S. 1228 (1997) (affirming JMOL for non-infringement where court construed the claim and the patent holder failed to present expert testimony that a die pad was "connected" to an external circuit, as required under the court's proper claim construction). Thus, 3M's failure to offer evidence of a structure on Avery's liner meeting the Court's definition of "pattern" alone compels judgment for Avery as a matter of law.

Perhaps recognizing this failure of proof, 3M's counsel suggested to Dr. McHugh on cross-examination that either the shape of the embedded polyurethane or the shape of the polyethylene where polyurethane had been embedded is a "fractal" under the Court's definition of "pattern." (Tr. 1227-28 (McHugh)). But Dr. McHugh explained that fractal geometry has no application to the random polyurethane shapes embedded into the polyethylene. Rather, fractal geometry describes shapes created from repeating infinite numbers of known geometric forms. For example, the "Koch snowflake," which 3M's counsel referred to as an example of a fractal, is created by overlaying an infinite number of triangles as illustrated below:



(www.math.rice.edu~lanius/frac/koch.html). In contrast to a Koch snowflake or other fractals, the randomly-shaped polyurethane deposits, as embedded into the polyethylene, "utilizes" no known "theory of geometry." Thus, neither the shape of the polyurethane nor the shape of the underlying polyethylene can be considered an "embossed depression." (Tr. 1291-92 (McHugh)).

Dr. Strong's opinion that Avery's liner contains an "embossed pattern" also rests on a view of "embossed" conflicting with this Court's construction. Specifically, Dr. Strong conceded that he understood the Court's definition of "embossed" to simply require a "topography," and nothing else. (Tr. 821:22-823:4 (Strong)). Yet the Court's definition of "embossed" says more than just "topography." It is a "topography on a "web or tooling" – something used to impress a corresponding pattern – that "generates a difference in surface planar dimension in the liner . . ." At the very least, "embossed" is a topography of the type created when a tool of a corresponding topography has been impressed. In other words, the term "embossed" connotes a particular type of topography, differentiating non-embossed topographies. Nothing else makes sense because, as Dr. Strong agreed, virtually every surface has some "topography." (Tr. 838:24-839:4(Strong)). Indeed, even Avery's base liner, prior to any printing or embossing, has a topography of depressions as shown in the following photograph:




Restricted Confidential
Counsel Only

3M 024206

Exhibit D-4

Pltf # 97
Civ. 01-1781 (JRT/FLN)

Fundamentally, patents must serve a public notice function. London v. Carson Pirie Scott & Co., 946 F.2d 1534, 1538 (Fed. Cir. 1991) (the statutory requirement that patents "particularly point[] out and distinctly claim[] the subject matter which the applicant regards as his invention," gives "the public … fair notice of what the patentee and the Patent and Trademark Office have agreed constitute the metes and bounds of the claimed invention," allowing "other parties to avoid actions which infringe the patent and to design around the patent."). If 3M wanted to claim all webs having any "topographies," it was obligated to say so it its patent. But 3M said something different – it expressly limited its invention to "embossed patterns," and described "embossed