patterns" throughout the specification of its patent. Indeed, 3M never suggested in the '930 patent that its invention covers one material embedded into another. Thus, simply arguing, *ipse dixit*, that Avery's liner contains "embossed patterns" without applying the legal definitions of either "embossed" or "pattern" cannot sustain 3M's burden of proof as a matter of law. Texas Instruments Inc., 90 F.3d at 1564-65.

Depressions

Infringement of claims 1-5 of the '930 patent require a carrier web comprising a "surface" having a first embossed pattern of "depressions." To prove the existence of a pattern of depressions in the surface of the Avery product, 3M's expert, Dr. Strong, ignored the undisputable existence of polyurethane blobs embedded into the polyurethane flush with the surface of the polyethylene. (Tr. 779:5-11 (Strong)). In fact, Dr. Strong showed the jury demonstratives which omitted the polyurethane portion of the top layer completely:




(PD Slide (Strong)).

Only by ignoring the existence of the polyurethane blobs flush with the surface could Dr. Strong testify that the surface of the carrier web had depressions. But in ignoring the polyurethane blobs flush with the surface, Dr. Strong's opinions – that

Avery's liner is a "carrier web" having surface "depressions" – runs directly afoul of this Court's claim construction of the phrase "carrier web." In other words, when the Court's definition of "carrier web" is used, it necessarily follows that polyurethane, just like the polyethylene and silicone, form part of the carrier web, producing a flush surface without "depressions." That is because a "carrier web," as defined by the Court, must carry (or have carried) another material. (Jury Instr. 18). In the case of graphic films, the carrier web "carries" the adhesive and film. (Dx 18, Col. 3, ln. 64-Col. 4, ln. 6). On cross-examination, Dr. Strong, admitted that the adhesive is in contact with (and therefore is "carried by") both the silicone and polyurethane of the top layer:

> Q. When the adhesive is applied, it's contacting two things, correct, the silicone and the polyurethane ink?
>
> A. Yes, and the silicone is following the pattern of the polyethylene even under the polyurethane.

(Tr. 765:1-13 (Strong)). Because Dr. Strong admits that the polyurethane, along with the polyethylene/silicone, carries the adhesive, his premise for finding depressions – that polyurethane is not part of the carrier web – conflicts with the Court's construction of "carrier web" and the undisputed facts. For this reason alone, Avery is entitled to judgment as a matter of law.

3M further contended that depressions exist in Avery's liner, as sold, by describing the areas beneath the polyurethane as "filled depressions." For this contention, 3M solely relied on Dr. Strong's unsupported testimony that Avery's liner contained "depressions" in the polyethylene that Avery had "filled" with polyurethane ink. (Tr. 817:7-11(Strong)). But Dr. Strong's lingual gymnastics alone cannot transform

the undisputed actual structure of Avery's liner from a surface consisting of two polymers – one embedded in another – into a surface with "filled" depressions. Simple logic dictates that a surface with "filled" depressions must have had open depressions at some point. According to Dr. McHugh, these previously open depressions, if they existed, would be structurally distinct. Yet it is disputed that Avery's liner never has open depressions, which are then filled. (Tr. 817:1-11; 852:4-13 (Strong)). Moreover, as Dr. McHugh explained, a surface (like Avery's liner) with one polymer embedded into another differs structurally from filled depressions in at least four respects:

Embedded polymers form a flush surface. "Filled depressions" leave mounds or depressed areas.

Embedded polymers form bonds, leave no internal voids. "Filled depressions" have void areas.

Embedded polymers have one material encased within another. "Filled depressions" do not have fill material encased.

Embedded polymers have irregular shapes for the embedded material. "Filled depressions" have a similar shape for each depression that has been filled.

(Tr. 1193: 7-1196:11 (McHugh)). Dr. McHugh further illustrated these differences as follows:

***Surface Structure with Filled Depression***



***Surface Structure with Embedded Material***



3M offered no evidence rebutting or contradicting Dr. McHugh's testimony.

Avery is entitled to judgment as a matter of law that its EZ Film, as sold, does not directly infringe the '930 patent. For the same reasons, Avery is entitled to judgment as a matter of law that its spent release liner, following separation from the adhesive and film, does not directly infringe.

### 2. 3M Offered Insufficient Evidence to Support a Verdict of Indirect Infringement

Vicarious patent infringement requires proof of four elements: (1) that the defendant encouraged or instructed another person how to use a product in a matter that infringes one or more patent claims, (2) that the defendant knew of the patent, (3) that defendant knew or should have known that its encouragement or instructions would likely result in the other person infringing the patent, and (4) that the other person

actually infringed the patent. 35 U.C.S. § 271(b); Moba B.V. v. Diamond Automation, Inc., 325 F.3d 1306, 1318 (Fed. Cir. 2003); (Jury Instr. 25).

3M's theory of vicarious liability is that Avery's customer is a direct infringer and that Avery induces infringement by instructing its customers to remove the release liner. When the release liner is removed, 3M contends, the spent release liner is itself an infringing product.

The parties agree that when a customer uses Avery's EZ Film, he removes the polyethylene release liner and exposes the adhesive and the polyurethane ink blobs adhered thereto. The parties further agree that when that, upon removal of the liner, depressions are created where polyurethane fragments had been previously embedded. Although depressions are created, an embossed pattern of depressions is not created. Dr. Cavaleri admitted that these depressions are irregular in size and shape, and are random across the surface of the entire carrier web. (Tr. 700:16-25 (Cavaleri)). For the reasons earlier discussed, these depressions do not satisfy the claim elements of "embossed pattern" of depressions. Accordingly, Avery is entitled to judgment as a matter of law on inducing infringement because no other person directly infringes the '930 patent.

3M did not prove the requisite direct infringement by a customer for another reason. To prove direct infringement under its inducement claim, 3M needed to present evidence showing that some customer made, used, offer for sale, or sold an infringing product – allegedly in this case, a spent release liner. 35 U.S.C. § 271(a); (Jury Instr. 19). But 3M offered no evidence that any Avery's customer used, sold, or offered for sale a

spent release liner. Following separation from the film, the spent release liner is thrown away; it is not used. Nor did 3M provide any evidence that an Avery customer "made" an infringing release liner. While Avery's customers remove the release liner from the film, they do not "make" an infringing "carrier web," even under the Court's definition of "carrier web." If, as 3M argued, the customer directly infringes because he "makes" an infringing article with depressions when he separates the release liner from the adhesive backed graphic film, that new article did not exist before it was "made" by the infringer. Since it did not exist before it was made, the article is not a "carrier web," since it does now, never has, and is not capable of carrying anything. Stated differently, customers do not "make" carrier webs by separating the liner from the film, just as a person does not "make" wall paper by removing old wall paper from a wall. Thus, as a matter of law, Avery is entitled to judgment on 3M's inducement claim.

### 3. 3M Failed To Offer Evidence Sufficient to Support A Judgment of Infringement Under the Doctrine of Equivalents

Infringement under the doctrine of equivalents is available only if the differences are "insubstantial" between the claim element not literally found and the corresponding feature in the accused product. Warner-Jenkinson Co. v. Hilton Davis Chem. Co., 520 U.S. 17, 24, 117 S. Ct. 1040, 1047 (1997); Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 122 S. Ct. 1831, 1839 (2002) ("The doctrine of equivalents allows the patentee to claim those insubstantial alterations that were not captured in drafting the original patent claim but which could be created through trivial changes."); (Jury. Instr. 20). One way of determining whether those differences are "insubstantial" is

by examining whether the claim element and the corresponding feature in the accused product perform substantially the same function in substantially the same way to achieve substantially the same result. Warner-Jenkinson, 520 U.S. at 39-40; (Jury. Instr. 20).

Under the "all elements" or "all limitations" rule, the doctrine of equivalents must be applied to the individual claim elements or limitations, not to the claimed invention as a whole. Id. at 30. Thus, when the accused product or process is missing a claim limitation entirely, infringement under the doctrine of equivalents cannot exist as a matter of law. Id.

Applying these rules, Avery's EZ Film cannot, as a matter of law, infringe the '930 patent. First, as discussed above, Avery's liner (both as sold and following use) lacks an entire claim element – namely, the first embossed pattern forming an array of depressions. As a matter of law, without this requisite element, infringement under the doctrine of equivalents cannot exist.

Additionally, infringement cannot exist under the function/way/result test for the doctrine of equivalents. First, 3M purported to offer testimony from Dr. Strong on the equivalence issue. But on cross-examination, Dr. Strong admitted that he did not know or understand the test for infringement under the function/way/result test:

> Q. Do you know how in a claim that is structure you find a function under this test?
>
> A. That's -- that seems to me a legal issue. I'm not quite sure what you're trying to get at there.
>
> Q. Well, to apply this test, you had to find a function, didn't you?
>
> A. Well, are you -- I'm sorry. I'm not sure what you mean by "function."

To find infringement under the doctrine of equivalents, evidence must be presented on a limitation by limitation basis; generalized testimony as to the overall similarity between the claims and the accused product is not sufficient. Texas Instruments Inc., 90 F.3d at 1567 (affirming JMOL for non-infringement under the doctrine of equivalents where the patent holder merely presented conclusory expert testimony in lieu of discussing how the allegedly infringing device operated similarly to the patent claim or presenting testimony explaining how exactly the function and result were the same). Thus, Dr. Strong's conclusory testimony regarding the infringement under the doctrine of equivalents, without any consideration of the appropriate standard, cannot support the jury's verdict. (Tr. 743:23-744:11 (Strong)).

Second, assuming "positionability" as the function of the first embossed pattern of depressions (even though ease of positioning does not appear in the claim language), the undisputed evidence showed that Avery's "way" of achieving positionability through embedding polyurethane differs substantially, and indeed provides efficiencies, over 3M's emboss and fill "way." (Tr. 1209:4-21 (McHugh)). Thus, this Court should grant judgment as a matter of law on 3M's claim for infringement under the doctrine of equivalents.

## IV. AVERY IS ENTITLED TO A NEW TRIAL ON DIRECT, INDIRECT, AND DOCTRINE OF EQUIVALENTS INFRINGEMENT ISSUES

### A. Legal Standard on Motions for New Trial

Under Fed. R. Civ. P. 59, motions for new trials are considered "procedural issue[s] not unique to patent law," in which the Federal Circuit will apply the law of the

regional circuit where the case lies. Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil Co., 308 F.3d 1167, 1182 (Fed. Cir. 2002) (applying Third Circuit law); BBA Nonwovens Simpsonville v. Superior Nonwovens, 303 F.3d 1332, 1336 (Fed. Cir. 2002) (applying Fourth Circuit law).

Rule 59 allows the Court to order a new trial "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a). Under Eighth Circuit law, a new trial should be granted to avoid a manifest miscarriage of justice. Belk v. City of Eldon, 228 F.3d 872, 878 (8th Cir. 2000). New trials should be granted when a jury verdict is against the weight of the evidence, constitutes an excessive verdict, or results from a trial in which manifest legal errors occurred. Gray v. Bicknell, 86 F.3d 1472, 1480 (8th Cir. 1996).

In contrast to motions for judgment as a matter of law, when considering new trial motions, a court may "rely on its own reading of the evidence—it can weigh the evidence, disbelieve witnesses, and grant a new trial even where there is substantial evidence to sustain the verdict ruling on the motion" if the court feels that a miscarriage of justice would result to let the verdict stand. White v. Pence, 961 F.2d 776, 780 (8th Cir. 1992); see also Century Wrecker Corp. v. E.R. Buske Mf'g Co., 931 F. Supp. 1256, 1265-69 (N.D. Iowa 1996) (comparing and contrasting the legal standards for evaluating motion for judgment as a matter of law and motion for new trial in patent case). This more searching review is necessary because the Court has a duty to ensure that a miscarriage of justice does not occur from an unjust verdict. See White, 961 F.2d at 780 ("[The] "true standard for granting a new trial" is simply one which measures the result

in terms of whether a miscarriage of justice has occurred"). Accordingly, district courts possess great discretion to grant a motion for new trial, Wash Solutions, Inc. v. PDQ Mfg., Inc., 395 F.3d 888, 892 (8th Cir. 2005), and that discretion should be exercised here.

**B. Avery Should Be Granted A New Trial On Infringement Issues**

Even if the Court determines that judgment as a matter of law is not warranted, the jury's verdict on direct infringement, inducing infringement, and infringement under the doctrine of equivalents, runs counter to the clear weight of the evidence regarding the structure of Avery's EZ Film.

For direct infringement, the clear weight of the evidence established that the structure of Avery's EZ Film liner differs substantially from the structure described in claim 1 of the '930 patent. Claim 1 recites a surface having a "first embossed pattern [forming] an array of depressions." Avery's liner, as sold, has no "depressions" or "embossed pattern." 3M's witnesses conceded that no lower or sunken areas can be found on the surface of Avery's liner. (Tr. 693:15-694:19 (Cavaleri); 817:1-11 (Strong)). Nor did 3M offer any credible evidence that the structure of Avery's liner contains "filled depressions." To the contrary, the clear weight of evidence showed that the polyurethane embedded into the polyethylene on Avery liner structurally differs from a "filled depression." (Tr. 1193:7-1196:11 (McHugh)).

Likewise, Avery's liner (both as sold and following use) lacks an "embossed pattern," because each fragment of polyurethane (or the holes remaining after removal) differs in size and shape. Indeed, 3M's own expert admitted that these random shapes

could not result from any known embossment. (Tr. 831:24-834:23 (Strong)). Moreover, the clear weigh of evidence established that each fragment of polyurethane (or the holes remaining after removal) does not meet the Court's definition of "pattern."

Second, the weight of evidence overwhelmingly established that Avery could not be liable for vicarious infringement. For the same reasons Avery does not directly infringe, its customers could not directly infringe either. Moreover, 3M offered no evidence that any Avery customer made, used, sold, or offered for sale any infringing article. 35 U.S.C. § 271(a).

Third, the weight of evidence cannot support the jury's finding of infringement under the doctrine of equivalents. As a matter of law, infringement under the doctrine of equivalents cannot exist when (as here) an entire claim limitation is missing from the accused product. Aside from this legal issue, however, the clear weigh of evidence showed that Avery achieves positionability in a substantially different way, and indeed better way, than described and claimed in the '930 patent. As described in the '930 patent, positionability is obtained by embossing depressions into the surface of a liner and then filling with small particles. To obtain positionability, both the creation of depression and filling the depressions must take place before embossing the lands and ridges. (Px 18; Tr. 867:14 - 868:5 (Strong)). In contrast, Avery created a better, and patentable novel way of achieving positionability through the embedment of polyurethane dots, which is done simultaneous with embossing the lands and ridges. (Tr. 959:19-25 (Hannington), Tr. 1209:4-16 (McHugh)). Finally, with respect to equivalence, 3M offered only the conclusory opinion of Dr. Strong, which he admittedly based on a lack of understanding

regarding the legal test for equivalence. (Tr. 862:16 - 864:20 (Strong)).

For these reasons, in the alternative to judgment as a matter of law, Avery respectfully requests a new trial on 3M's infringement claims.

## V. CONCLUSION

For the foregoing reasons, Avery respectfully asks that the Court grant judgment as a matter of law, or alternatively, a new trial, on direct infringement, inducing infringement, and infringement under the doctrine of equivalents.

DATED: February 10, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 – Facsimile

**EXHIBIT A**

## F&R News



### Fish & Richardson wins jury verdict for 3M

On December 21, 2005 a Minneapolis jury found that a product sold by Pasadena, California-based Avery Dennison Corporation infringed a patent held by Fish & Richardson's client 3M on a product used to wrap buses, trucks and light rail cars in graphics film and advertising.

The jury verdict, which came at the end of an eight-day trial before United States District Court Judge John Tunheim, ended a four-year battle in the case, which was filed by 3M in United States District Court in Minneapolis in 2001. The jury returned its verdict in less than three hours.

The patent covers an invention by a now-retired 3M corporate scientist, Dr. Clyde Calhoun. The invention relates to a specially-structured liner which allows the graphics film to be easier to apply on buses and trucks and easier for the end user to release entrapped air in the graphics film.

The jury found that Avery's product, which it advertises and sells as "EZ Film," infringed five separate claims of the '930 Patent. The jury also rejected Avery's defenses that the 3M patent was invalid and Avery's defense that the patent listed the wrong inventors.

The parties had previously reached an agreement on the issue of damages, and that issue was not before the jury. By statute, 3M now has the ability to ask the Court to issue a permanent injunction against further sale of Avery's EZ Film. Juanita Brooks, a principal in Fish & Richardson's San Diego office, was lead counsel for 3M. She was assisted by Twin Cities principals John Adkisson and Jonathan Singer. Avery was represented in the case by Hennigan, Bennett and Dorman in Los Angeles.

Resource information:
Click here for a pdf of the complaint in the case

Back