IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ALTER OR AMEND JUDGMENT, OR ALTERNATIVELY, FOR RELEIF FROM JUDGMENT, AND REQUEST FOR NEW BENCH TRIAL ON ISSUES OF ENFORCEABILITY**

# TABLE OF CONTENTS

**(Page)**

I. INTRODUCTION .......... 1

II. THE FACTS ESTABLISHED AT TRIAL SUPPORT SETTING ASIDE THE VERDICT TO ALLOW A BENCH TRIAL ON AN AMEDED INEQUITABLE CONDUCT CLAIM .......... 2

A. Failure to Abide by the Duty of Candor to the Patent Office in Applying for the '930 Patent Constitutes Inequitable Conduct, Invalidating the Patent .......... 2

B. Evidence at Trial Supports a *Prima Facie* Case that Dr. Calhoun and Mr. Hornickel Failed to Meet Their Duty of Candor To the Patent Office .......... 4

1. The Materiality of the Unitika Patent Cannot Be Questioned .......... 4

2. 3M's Justification at Trial for Not Disclosing the Unitika Patent Gives Rise to a Strong Inference of an Intent to Deceive .......... 6

III. FEDERAL LAW AUTHORIZES THE RELIEF AVERY SEEKS .......... 8

A. Rules 59(e) and 60(b) Allow the Court to Vacate Judgments When Post Trial Amendments to Complaints or Counterclaims Are Warranted .......... 8

B. Rule 15 Motions to Amend Should be Liberally Granted, Even After Trial is Concluded .......... 10

IV. AVERY'S PRIOR MOTION TO AMEND IS IRRELEVANT TO THE CURRENT REQUEST .......... 12

V. CONCLUSION .......... 14

**TABLE OF AUTHORITIES**

**(Page)**

**Cases**

Akzo N.V. v. Int'l Trade Comm'n,
808 F.2d 1471 (Fed. Cir. 1986) .......... 3, 6

Baxter Int'l, Inc. v. McGaw, Inc.,
149 F.3d 1321 (Fed. Cir. 1998) .......... 3, 6

Critikon, Inc. v. Becton Diskinson Vascular Access, Inc.,
120 F.3d 1253 (Fed. Cir. 1997) .......... 3

FDIC v. Conner,
20 F.3d 1376 (5th Cir. 1994) .......... 12

Firestone v. Firestone,
76 F.3d 1205 (D.C. Cir. 1996) .......... 10, 13

Foman v. Davis,
371 U.S. 178 (1962) .......... 10

Harley v. Zoesch,
413 F.3d 866 (8th Cir. 2005) .......... 9

Hurn v. Retirement Fund Trust of Plumbing,
Heating & Piping Indus. of So. Cal.,
648 F.2d 1252 (9th Cir. 1981) .......... 11

Kingstown Medical Consultants, Ltd. v. Hollister, Inc.,
863 F.2d 867 (Fed. Cir. 1988) .......... 3

Lipman v. Dickinson,
174 F.3d 1363 (Fed. Cir. 1999) .......... 4

MIF Realty L.P. v. Rochester Assocs.,
92 F.3d 752 (8th Cir. 1996) .......... 9

Milanese v. Rust-Oleum Corp.,
244 F.3d 104 (2d Cir. 2001) .......... 12

Missouri Housing Develop. Comm'n v. Brice,
919 F.2d 1306 (8th Cir. 1990) .......... 11

**TABLE OF AUTHORITIES (cont'd)**

**(Page)**

Molins PLC v. Textron, Inc.,
48 F.3d 1172 (Fed. Cir. 1995) ........................................................................ 2

Ortiz v. Gaston County Dyeing Machine Co.,
277 F.3d 594 n.1 (1st Cir. 2002)........................................................................ 8

PerSeptive Biosystems v. Pharmacia Biotech,
225 F.3d 1315 (Fed. Cir. 2000) ........................................................................ 3

Tool Box, Inc. v. Ogden City Corp.,
419 F.3d 1084 (10th Cir. 2005) ........................................................................ 9, 10

Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.,
351 F.3d 1139 (Fed. Cir. 2003) ........................................................................ 11

Union Pac. Res. Co. v. Chesapeake Energy Corp.,
236 F.3d 684 (Fed. Cir. 2001) ........................................................................ 4

Wilburn v. Pepsi-Cola Bottling Co.,
492 F.2d 1288 (8th Cir. 1974) ........................................................................ 9, 10

**Rules**

37 C.F.R. §§ 1.56, 1.97, and 1.98........................................................................ 7

Fed. R. Civ. P. 15(a) ........................................................................ 1, 9, 10

Fed. R. Civ. P. 59(e) ........................................................................ 8, 9, 10

Fed. R. Civ. P. 60(b)(6) ........................................................................ 1, 9, 14

**Treatises**

Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice and Procedure*,
§ 1489, at 692 (2d ed. 1990) ........................................................................ 9, 10

## I. INTRODUCTION

The facts adduced a trial established a *prima facie* case of inequitable conduct. According to trial testimony, 3M's inventors and patent attorney admittedly knew about the prior art most relevant to the novelty of the inventions claimed in the '930 patent. In fact, they knew about a British patent that directly contradicted the Examiner's expressed understanding of the state of the prior art relevant to the novelty of 3M's claims. But 3M did not disclose this British patent to the Examiner as part of the prosecution of the '930 patent. Instead, 3M did its best to ensure that the Examiner would overlook the British patent, by citing it in another application, then simply incorporating that application "by reference" in the application for the '930 patent.

Incorporating material prior art by reference from another application cannot satisfy 3M's duty of candor to the patent office. Even more troubling, 3M's deception did not end there: In the "incorporated" application, 3M admittedly described the British patent in an erroneous manner. Avery should be allowed to both amend its complaint to recite these allegations and to present them to the Court in a short bench trial evidence on inequitable conduct.

Pursuant to Rules 59(e) and 60(b)(6) of the Federal Rules of Civil Procedure, Avery seeks an order to alter or amend judgment by vacating or setting aside the judgment, or alternatively, for relief from judgment. Additionally, pursuant to Fed. R. Civ. P. 15(a), Avery moves for an Order to Amend its Answer and Counterclaims on its defense of unenforceability. These orders should be granted so the Court can set a bench trial on the issues of inequitable conduct raised in Avery's proposed Amended Answer

and Counterclaims.

## II. THE FACTS ESTABLISHED AT TRIAL SUPPORT SETTING ASIDE THE VERDICT TO ALLOW A BENCH TRIAL ON AN AMEDED INEQUITABLE CONDUCT CLAIM

In this case, the facts adduced at trial established a *prima facie* case of inequitable conduct. 3M owed a duty of candor to the Patent & Trademark Office, which required the disclosure of all known material prior art in the then pending patent application for the '930 patent. Dr. Calhoun testified that he knew about GB Patent Specification No. 1,511,060 (the "Unitika '060 patent"). It is beyond dispute that the Unitika '060 patent was material to the patentability of the claims in the '930 patent. 3M's conduct in failing to disclose the Unitika patent as part of the application for the '930 patent, and misrepresenting the content of Unitika in another patent application, then incorporating that application by reference into the '930 patent, evidences an intent to deceive. Avery should be allowed to amend its complaint to recite these allegations, and the Court should let Avery fairly present this evidence in a bench trial on inequitable conduct.

### A. Failure to Abide by the Duty of Candor to the Patent Office in Applying for the '930 Patent Constitutes Inequitable Conduct, Invalidating the Patent

Applicants for patents must prosecute their applications in the Patent Office with candor, good faith, and honesty. Molins PLC v. Textron, Inc., 48 F.3d 1172, 1178 (Fed. Cir. 1995). Failure to meet this standard constitutes inequitable conduct and renders a patent unenforceable. Inequitable conduct includes affirmative misrepresentations of a material fact, failure to disclose material information, or submission of false material information, coupled with an intent to deceive. PerSeptive Biosystems v. Pharmacia

Biotech, 225 F.3d 1315, 1318 (Fed. Cir. 2000).

Determination of inequitable conduct requires a two-step analysis. First the court must determine whether the withheld and/or misleading information meets a threshold level of materiality. Information is material where, at a minimum, there is a substantial likelihood that a reasonable examiner would have considered it important in making a patentability decision. Akzo N.V. v. Int'l Trade Comm'n, 808 F.2d 1471, 1481 (Fed. Cir. 1986).

Once materiality is established, the court must determine whether the evidence shows a threshold level of intent to deceive the Patent Office. Baxter Int'l, Inc. v. McGaw, Inc., 149 F.3d 1321, 1327 (Fed. Cir. 1998). While "gross negligence" is not enough to prove intent, Kingstown Medical Consultants, Ltd. v. Hollister, Inc., 863 F.2d 867, 876 (Fed. Cir. 1988), courts recognize that direct proof of wrongful intent is rarely available. Accordingly, it is well settled that intent to deceive may be inferred from the surrounding circumstances and weight of evidence. See Critikon, Inc. v. Becton Diskinson Vascular Access, Inc., 120 F.3d 1253, 1255 (Fed. Cir. 1997) (reversing a district court's finding of no deceptive intent as "contrary to the weight of the evidence."); Baxter Int'l Inc. v. McGaw, Inc., 149 F.3d 1321, 1330 (1998) (upholding a district court's finding of inequitable conduct absent direct proof of intent where inventors were clearly aware of material, undisclosed prior art, and the inventor's understanding of its importance to the claimed invention could be inferred). By inferring intent under the correct legal standard, equitable conduct can exist, even without direct evidence of intent to deceive. Lipman v. Dickinson, 174 F.3d 1363, 1370 (Fed. Cir.

1999).

Once the thresholds of materiality and intent are established, the trial court weighs the evidence and determines whether the patent is unenforceable for inequitable conduct. Id. In weighing the evidence for inequitable conduct, the court must balance the levels of materiality and intent, "with a greater showing of one factor allowing a lesser showing of the other." Union Pac. Res. Co. v. Chesapeake Energy Corp., 236 F.3d 684, 693 (Fed. Cir. 2001). In other words, if the evidence of materiality is high, a lesser showing of intent will support a finding of inequitable conduct. Id.

### B. Evidence at Trial Supports a *Prima Facie* Case that Dr. Calhoun and Mr. Hornickel Failed to Meet Their Duty of Candor To the Patent Office

In this case, the evidence adduced at trial easily satisfies both threshold requirements for a finding that John Hornickel (3M's attorney responsible for prosecuting the '930 patent application) and Clyde Calhoun (the inventor named on the '930 patent) committed inequitable conduct. Specifically, Mr. Hornickel and Dr. Calhoun failed to satisfy their duty of candor by not disclosing to the Patent Examiner the Unitika '060 patent during the application for the '930 patent. Additionally, Mr. Hornickel and Dr. Calhoun committed inequitable conduct by falsely describing the Unitika '060 patent in another application, which they incorporated by reference into the application for the '930 patent.

#### 1. The Materiality of the Unitika Patent Cannot Be Questioned

The materiality of the Unitika patent to the application for the '930 patent cannot be seriously questioned. In applying for the '930 patent, the inventors described the

invention as solving the problem of removing air bubbles, when applying large scale graphic films, without reapplying or perforating the film. (Px. 18, Col. 1, ll. 21-30). According to the specification of the ‘930 patent, Dr. Calhoun solved this problem by embossing the liner for such films with a pattern of lands and ridges, which create air egress channels in the adhesive. (Id., Col. 7 ln. 65 – col. 9, ln. 30).

Like the ‘930 patent, the Unitika ‘060 patent describes the same solution to the air bubble problem. (Dx. 512). Specifically, the Unitika patent describes a liner embossed with ridges of varying depths and widths. The ridges form channels in an adhesive to allow for air egress when applying adhesive-coated materials to a substrate. In both examples, the Unitika patent shows that complete air egress can be obtained with embossed ridges at 45 and 40 microns.

During prosecution, the Patent Examiner confirmed that any prior art showing ridges in the 3 to 45 micron range would be highly relevant. In allowing the ‘930 patent claims, the Examiner provided a “Statement of Reasons for Allowance.” According to the Statement, the Examiner allowed the application for the ‘930 patent because “[t]he prior art does not suggest or teach a carrier web with ridges and lands that ranges from 3 to 45 µm.” (Dx 102). Yet the Unitika ‘060 patent expressly shows that embossing ridges at 40 and 45 microns results in channels that allowed for complete “degassing.” In other words, the Unitika patent shows exactly what the Examiner found lacking in the prior art – embossed ridges within the 3 to 45 micron range.

Finally, during cross-examination at trial, Dr. Calhoun admitted the materiality of the Unitika ‘060 patent to the application for the ‘930 patent. (Tr. 410:3 – 403:14

(Calhoun)). Without question, therefore, the Unitika patent would have been important to a reasonable examiner, and not cumulative of the prior art that the Examiner considered. Akzo N.V., 808 F.2d at 1481.

### 2. 3M's Justification at Trial for Not Disclosing the Unitika Patent Gives Rise to a Strong Inference of an Intent to Deceive

Considerable evidence gives rise to an inference of intent to deceive. Dr. Calhoun admitted at trial that he was familiar with the Unitika '060 patent when he applied for the '930 patent. (Tr. 393:14-20 (Calhoun)). Likewise, Mr. Hornickel conceded during his deposition in this case that he knew about the Unitika patent at the time he drafted the application for the '930 patent. Finally, it is undisputed that neither Mr. Hornickel nor Dr. Calhoun submitted the Unitika '060 patent to the Examiner when applying for the '930 patent.

During depositions in this case, neither Mr. Hornickel nor Dr. Calhoun could explain why they did not cite the Unitika patent during prosecution of the application for the '930 patent, despite their knowledge of its materiality. Such undisputed knowledge of a material reference, combined with an admission of non-disclosure, is enough to infer the threshold of intent. Baxter Int'l, 149 F.3d at 1330

Here, even stronger evidence of intent exists. At trial, 3M offered for the first time its justification for not raising the Unitika during prosecution of the application for the '930 patent. 3M's purported justification only confirms the deceptive intent. Specifically, 3M claimed to have properly brought the Unitika patent to the Examiner's attention as part of the application for the Sher '397 patent, which 3M "incorporated by

reference" into the application for the '930 patent. (E.g., Tr. 391:22 – 392:12 (Calhoun)). But 3M's purported justification runs directly afoul of express Patent Office regulations governing a patent applicant's duty of candor in disclosing information material to patentability. Under 37 C.F.R. §§ 1.56, 1.97, and 1.98, information material to a patent application must be provided to the Patent Office as part of an Information Disclosure Statement ("IDS"). Additionally, a physical copy of all foreign patent documents must be provided to the Examiner.

The undisputed facts establish that 3M did not bring the Unitika patent to the Examiner's attention in the prescribed manner as part of the application that issued as the '930 patent. Mr. Hornickel submitted two IDS's during the application for the '930 patent Neither IDS listed or disclosed the Unitika patent. Likewise, Mr. Hornickel never provided a copy of the Unitika patent to the examiner as part of the application for the '930 patent. Even more troubling, the evidence at trial showed that Mr. Hornickel submitted the IDS forms to the Patent Office for the Sher '397 at about the same time he submitted the IDS forms for the '930 patent. In the IDS forms pertaining to the Sher application, Mr. Hornickel did disclose the Unitika patent. Yet in the IDS forms for the '930 patent, Mr. Hornickel elected to withhold the Unitika reference.

Intent to deceive is evident in this case for another reason. In the application for the Sher '397 patent, Mr. Hornickel and Dr. Calhoun described the Unitika '060 patent, but never mention that the ridges taught in the '060 patent create air egress channels. Moreover, Mr. Hornickel and Dr. Calhoun stated in the Sher application that the ridges taught in the Unitika '060 patent needed to be "at least 45 [microns], and then only if the

width of the recesses is at least 130 [microns]." During his trial examination, Dr. Calhoun conceded that the Unitika '060 patent disclosed complete air egress with ridges as small as 40 microns and recess width at 100 microns. (Tr. 410:3 – 403:14 (Calhoun)). He further conceded that the description of the Unitika patent provided in the Sher application was not accurate. (Id.) Given the Examiner's stated belief that the prior art lacked any disclosures of ridges between 3 and 45 microns, which formed the basis for the Examiner's allowance of the '930 patent, these false statements are particularly indicative of an intent to deceive.

Considering the highly material nature of the Unitika patent, only minimal evidence of intent is needed for a finding of inequitable conduct. But here, considerable evidence of intent exists. Thus, the Court should consider whether 3M can enforce the '930 patent.

## III. FEDERAL LAW AUTHORIZES THE RELIEF AVERY SEEKS

Federal law allows this Court to vacate judgment and to grant Avery's request to amend its Complaint based on the evidence adduced at trial. Federal law also allows the Court to grant a bench trial on inequitable conduct.

### A. Rules 59(e) and 60(b) Allow the Court to Vacate Judgments When Post Trial Amendments to Complaints or Counterclaims Are Warranted

The power to "alter or amend" judgments by motion under Fed. R. Civ. P. 59(e) includes vacating or setting aside the judgment. See Ortiz v. Gaston County Dyeing Machine Co., 277 F.3d 594, 597 n.1 (1st Cir. 2002) (Rule 59(e) motions "properly may seek to vacate . . . judgment rather than merely amend it") (internal quotations omitted).

Rule 59(e) may be used by Courts to set aside a verdict, allowing a party to amend its pleading so that it conforms to evidence adduced at trial. Tool Box, Inc. v. Ogden City Corp., 419 F.3d 1084, 1087 (10th Cir. 2005); Wilburn v. Pepsi-Cola Bottling Co., 492 F.2d 1288, 1290 (8th Cir. 1974) ("The provisions of Rule 15(a) are invoked by a proper motion under either Rule 59(e), motion to alter or amend a judgment, or Rule 60(b), motion to relieve a party from a final judgment or order for mistake, inadvertence, surprise or excusable neglect and for other reasons, accompanied by a proposed amended complaint."). See also Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure,* § 1489, at 692-93, 693 n.1 (2d ed. 1990).

Similarly, Rule 60(b) permits the court to "relive a party or a party's legal representative from a final judgment, order, or proceeding" for a variety of reasons, including "any other reason justifying relief from the operation of the judgment. Fed. R. Civ. P. 60(b)(6). The rule is "grounded in equity and exists 'to prevent the judgment from becoming a vehicle of injustice.'" Harley v. Zoesch, 413 F.3d 866, 870 (8th Cir. 2005) (quoting MIF Realty L.P. v. Rochester Assocs., 92 F.3d 752, 755 (8th Cir. 1996)). A 60(b)(6) motion should be granted under circumstances where the moving party has been denied the opportunity to litigate his claim or has been prevented from receiving adequate redress. Id. Like a Rule 59(e) motion, Rule 60(b)(6) can be used to vacate a judgment so that a party may amend its pleadings to assert claims or defenses confirming to evidence adduced at trial. See Wilburn v. Pepsi-Cola Bottling Co., 492 F.2d at 1290.

**B. Rule 15 Motions to Amend Should be Liberally Granted, Even After Trial is Concluded**

The Federal Rules of Civil Procedure recognize a liberal amendment policy, even allowing pleadings to be amended to conform to the evidence after trial has concluded. *See* Fed. R. Civ. P. 15(a), (b). Pursuant to Federal Rule of Civil Procedure 15(a), leave to amend a pleading, including an answer, should be freely given when justice so requires. Foman v. Davis, 371 U.S. 178, 182 (1962). Once judgment is entered, however, a party may not amend its answer "until judgment is set aside or vacated pursuant to Fed. R. Civ. P. 59(e) or 60(b)." Tool Box, 419 F.3d at 1087; Wilburn, 492 F.2d at 1290 (reversing a district court's refusal to allow post-judgment amendment of complaint to plead that defendant was estopped from invoking a statute of limitations defense). Nonetheless, the Court may consider both the Rule 59(e)/60 Motions and the Rule 15(a) Motion to Amend simultaneously. 6 Wright, Miller, & Kane, supra § 1489.

Once the court determines that the motion to amend or set aside the judgment pursuant to rules 59(e) or 60 is appropriate, however, the court should apply the liberal amendment standard of Rule 15(a).[1] Id. Firestone v. Firestone, 76 F.3d 1205, 1208 (D.C. Cir. 1996). See also Foman, 371 U.S. at 181-82 (evaluating the liberal amendment standards after determining that a motion to vacate under 59(e) was proper). The liberal standards for amending pleadings reflects the strong federal policy for determining cases on the merits, with pleadings playing a limited role. Foman, 371 U.S. at 182.

Given the strong policy favoring leave to amend, courts may exercise discretion to

[1] As a matter of procedure, the Court may need to make an exception to the scheduling order in this case to allow the amendment. Fed. R. Civ. P. 16(b).

deny a Rule 15 motion only in limited circumstances. First, undue delay in combination with other factors may be sufficient to deny a Rule 15 motion, but delay itself typically will not suffice. See Hurn v. Retirement Fund Trust of Plumbing, Heating & Piping Indus. of So. Cal., 648 F.2d 1252, 1254 (9th Cir. 1981). Irrespective of whether other circumstances are required, Avery did not unduly delay in this case. The facts establishing a *prima facie* inequitable conduct claim were not fully revealed until trial. Furthermore, Avery could not have discovered the facts any sooner. After the Federal Circuit reversed summary judgment, the Magistrate Judge disallowed any further discovery except on a narrow issue pertaining to a different prior art reference. Moreover, issues of inequitable conduct are questions of law, usually determined during bench trials, not jury trials. Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp., 351 F.3d 1139, 1146 (Fed. Cir. 2003). Thus, even if Avery had amended sooner, this Court could not have resolved the inequitable conduct issue before now, and would have needed to schedule a bench trial to consider the claim, just as Avery requests.

Second, courts may deny Rule 15 motions when the proposed amendment is interposed solely an improper reason, such as delaying trial, defeating the court's jurisdiction, or unfairly prejudicing the opposing party. Missouri Housing Develop. Comm'n v. Brice, 919 F.2d 1306, 1316 (8th Cir. 1990). Here, Avery seeks no delay, and 3M cannot show prejudice. 3M has its judgment of infringement. But that judgment cannot be enforced if the '930 patent is unenforceable. Adjudication of the unenforceability issue can be resolved in a one-day bench trial without any further discovery. No discovery is needed because all facts concerning inequitable conduct are

exclusively within 3M's possession and control, and Avery does not seek further discovery on the issue. More specifically, all additional facts needed to establish unenforceability were adduced during trial. Accordingly, this Court could set an immediate bench trial on inequitable conduct, and the evidence could all be admitted quickly through deposition or trial transcripts in a matter of minutes. That would simply leave argument of counsel, which could be completed in a half day. Thus, Avery's requested bench trial to adjudicate fairly the issue inequitable conduct issue on the merits could be scheduled without delay and take less than a day.

Third, courts can properly deny leave to amend when the proposed amendment would be futile. See FDIC v. Conner, 20 F.3d 1376, 1385 (5th Cir. 1994). But a proposed amendment is futile only if no set of facts can be proved under the amendment, which would constitute a valid claim or defense. Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001). For the reasons explained below, the evidence already established at trial, combined with completed deposition testimony, establishes that the an inequitable conduct defense not only lacks futility, it can be proven clearly and convincingly.

## IV. AVERY'S PRIOR MOTION TO AMEND IS IRRELEVANT TO THE CURRENT REQUEST

In April 30, 2002, Avery sought to amend its unenforceability defense based on inequitable conduct.[2] At the time, 3M had not yet made Dr. Calhoun available for

[2] Originally, Avery alleged unenforceability based on the failure to disclose the Sawka '675 patent. In its proposed amended pleading, Avery sought to revise its inequitable conduct claim to include all the references that 3M disclosed to the Patent Office as part of the application for the Sher '397 patent, but did not disclose as part of

deposition, but Avery was forced to seek the amendment because Magistrate Judge Noel had set a May 1, 2002 deadline for amending pleadings. Magistrate Judge Noel denied Avery's motion to amend its unenforceability defense without providing any statement of the reasons for its refusal, which alone constitutes an abuse of discretion. Firestone v. Firestone, 76 F.3d 1205, 1209 (D.C. Cir. 1996). Rather than pursue the unenforceability issue further, Avery believed (correctly at the time) that the case could be resolved by way of summary judgment on the infringement issue. After the Federal Circuit remanded the case, Avery could neither move to amend its counterclaims nor raise an unenforceability defense at trial, because Magistrate Judge Noel had disallowed its prior proposed amendment, and then denied any further discovery.

Based on the evidence at trial, Avery seeks to amend its answer and counterclaims more narrowly to assert that Mr. Hornickel and Dr. Calhoun committed inequitable conduct by failing to disclose to the Examiner during the application for the '930 patent the Unitika '060 patent in accordance with Patent Office regulations, and by falsely describing the '060 patent in the Sher '397 application.

3M has suggested that the Magistrate Judge's earlier denial bars this motion. It does not. Avery's proposed amendment differs considerably from its earlier proposed amendment. Moreover, Avery never agreed to drop all claims of inequitable conduct. Rather, Avery agreed not to assert inequitable conduct based on non-disclosure of the

---

the application for the '930 patent. After Avery completed the deposition of Mr. Hornickel and Dr. Calhoun, it agreed to withdraw its unenforceability claim based on the non-disclosure of the Sawka '675 patent because it found no evidence that either Mr. Hornickel or Dr. Calhoun knew about the Sawka patent.

Sawka prior art reference, which Avery honored. Simply put, Avery is aware of no legal authority holding that it cannot seek to amend its pleadings after evidence at trial gives rise to a *prima facie* defense, even when an earlier request for a different amendment (prior to the close of discovery) has been denied.

## V. CONCLUSION

For the foregoing reasons, this Court should grant Avery's Rule 56(e) or Rule 60(b)(6) motion to vacate the judgment and allow Avery to amend its inequitable conduct claim. After granting the amendment, Avery respectfully asks that this Court immediately set a one-day bench trial on the inequitable conduct issue, and accept evidence by deposition and trial transcripts. If the Court does not find inequitable conduct, and if the Court denies Avery's other post-trial motions, the Court could then reinstate the judgment. Only in this matter can the enforceability of 3M's '930 patent be fairly adjudicated on the merits.

DATED: February 10, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile