IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br>Plaintiffs,<br>v.<br>AVERY DENNISON CORPORATION,<br>Defendant. | Civil Action No. 01-1781 JRT/FLN |

**3M'S MEMORANDUM OF LAW IN OPPOSITION TO AVERY DENNISON CORPORATION'S MOTION TO ALTER OR AMEND JUDGMENT, OR ALTERNATIVELY, FOR RELIEF FROM JUDGMENT, AND REQUEST FOR NEW BENCH TRIAL ON ISSUES OF ENFORCEABILITY**

First, Avery's post-trial motion regarding the alleged unenforceability of the '930 patent can—and should—be denied because it is procedurally improper. Avery already filed a motion to bring an inequitable conduct defense based on the Unitika '060 patent, and that motion was denied by Magistrate Judge Noel on June 6, 2002. (Doc. No. 85.) Avery never appealed this ruling or said another word about inequitable conduct based on the Unitika '060 patent for more than three and a half years—*i.e.*, until after the jury returned its verdict against Avery. Avery plainly waived its right to seek review of Magistrate Judge Noel's ruling.

Moreover, Avery's belated attempt to revive its inequitable conduct defense after trial also runs afoul of Rules 16, 59, and 60 of the Federal Rules of Civil Procedure. Allowing Avery to assert, after trial, a defense that was never part of this case—Avery was told it could not plead it and it was not referenced in Avery's pre-trial submissions (if

it had been, 3M would have moved in limine to exclude it)—would make a mockery of this Court's Scheduling Order and would constitute trial by ambush. The Court may stop here and deny Avery's motion based on these procedural defects alone.

But in addition, just like Avery's other post-trial motions, this motion is based on a selective and miscast summary of the evidence at trial. Avery is simply wrong on the facts of this case and the law of inequitable conduct. Avery's motion should be denied.

## I. Background

### A. Procedural Background: Avery Never Appealed Magistrate Judge Noel's Order Denying Avery's Motion to File a Second Amended Answer Alleging Inequitable Conduct Based on the Unitika '060 Patent.

Both Avery's answer, filed on November 7, 2001, and Avery's amended answer, filed on January 9, 2002 after 3M moved to strike Avery's original answer for violating Federal Rule of Civil Procedure 9(b), pled inequitable conduct based solely on 3M's failure to disclose United States Patent No. 5,405,675 (i.e., the Sawka reference). (Doc. No. 17 at 4; Doc. No. 55 at 4.) Avery later dropped its claim for inequitable conduct based on the Sawka reference.

On January 14, 2002, Magistrate Judge Noel issued the pretrial scheduling order that governed this case pursuant to Federal Rule of Civil Procedure 16. (Doc. No. 57.) The order provided that "[a]ll motions which seek to amend the pleadings or add parties must be served by May 1, 2002." (*Id*. at 1.) The order explicitly cautioned that "[t]he schedule may be modified only upon formal motion and a showing of good cause as required by Local Rule 16.3." (*Id*.)

On April 30, 2002, Avery moved to file a second amended answer to allege inequitable conduct based on 3M's alleged failure to disclose thirty-two additional references to the examiner during prosecution. The motion specifically included the Unitika '060 patent. (Doc. No. 76.) Magistrate Judge Noel denied Avery's motion on June 6, 2002. (Doc. No. 85.) Avery did not file any objections to that ruling.

Nor did Avery ever raise the issue of amending its answer to plead inequitable conduct based on the Unitika '060 patent, or any other reference, after this case was remanded to this Court from the Federal Circuit. In fact, in June 2004, when Avery's counsel suggested to 3M that Avery might bring an unspecified charge of inequitable conduct that "conformed to the evidence at trial," 3M explicitly told Avery that "we will oppose any attempt by Avery (through Rule 15(b) or otherwise) to insert inequitable conduct back into this case." (Declaration of Katherine A. Moerke ("Moerke Decl.") Ex. A at 2.) Likewise, Avery never mentioned a charge of inequitable conduct during the pre-trial proceedings.[1]

**B. The Evidence Adduced at Trial: The Patent Examiner Who Allowed the Calhoun Patent Had the Unitika '060 Patent Before Him.**

Despite its agreement regarding the prior art, Avery's counsel referenced an unidentified "British reference" during Avery's opening statement at trial. (Moerke Decl. Ex. B at 201:9-202:11.) Avery's counsel represented that this reference was never before the examiner of the '930 patent, Danny Lee:

[1] In fact, shortly before trial, Avery stipulated to a list of prior art references that Avery would rely on for its invalidity defenses at trial, and this list did not even include the Unitika '060 patent. (*See* Doc. No. 263.)

> Similarly, you will learn about a British reference that has a nearly identical disclosure that not only was in 3M's files but was cited by 3M in another patent application they filed on the very same day, but which they never brought to this examiner, Danny Lee's, attention.

(Moerke Decl. Ex. B at 202:2-6.) Avery's counsel also suggested that, had the Unitika '060 patent been before the examiner of the '930 patent, he would not have granted the '930 patent. (Moerke Decl. Ex. B at 197:8-12 ("The prosecution history is a window into the mind of the patent examiner, Danny Lee. In asking you to invalidate the product claims of the '930 patent in this case, ladies and gentlemen, I will only ask you to do what Danny Lee would have done if he knew all the facts that by the end of this trial you will know.").)

The next day, Avery's counsel clarified that he had been referring to the Unitika '060 patent. (Moerke Decl. Ex. B at 209:15-20.) Avery represented that leaving this reference off the agreed-upon list of prior art was "error." (Moerke Decl. Ex. B at 209:21-22.) Based on that explanation, the Court allowed Avery to introduce the Unitika '060 patent at trial in support of Avery's invalidity defense. Avery never mentioned, let alone requested, that the Unitika '060 patent be used to support the inequitable conduct defense that Magistrate Judge Noel had not allowed in this case three and a half years before.

Although inequitable conduct was not an issue at trial, 3M rebutted Avery's argument that 3M improperly failed to disclose the Unitika '060 patent to the Patent Office. First, 3M demonstrated that the Unitika '060 patent was before the patent examiner of the '930 patent, Danny Lee. Avery's expert, Dr. McHugh, admitted that the

Unitika ’060 patent was disclosed in the prosecution of 3M’s United States Patent No. 6,197,397 (“the ’397 patent”):

> Q. . . . This Unitika reference was brought to the patent examiner’s attention even according to Mr. Dorman in a different patent, the Sher ’397 patent, is that right?
> A. Since that—since that reference was—was discussed in the background of the specifications of what is the ’397 patent, yeah, for sure it was in there.
> Q. For sure that Unitika reference was brought to the examiner’s attention during the prosecution of the ’397 patent, right?
> A. Yes.

(Moerke Decl. Ex. B at 1237:10-20.) Dr. McHugh then admitted that the ’397 patent was incorporated by reference in the Calhoun patent-in-suit, United States Patent No. 5,897,930 (“the ’930 patent”):

> Q. . . . Isn’t it true that the Sher patent that I just referred you to, the Sher application, was incorporated by reference in the ’930 patent?
> A. Yes, it was.

(Moerke Decl. Ex. B at 1238:6-13.)

Finally, Dr. McHugh tied these admissions together by conceding that Danny Lee was the examiner for the ’397 patent as well as the ’930 patent:

> Q. Sure. Looking right now at what is on the screen in front of you which is already in evidence as Plaintiffs’ Exhibit 180 at page 189, who is the examiner at this point in time that is receiving and reviewing the Unitika—we’re trying to just figure out because the signature is hard to read who that is?
> A. The documents you've shown me indicate that the patent in question, the Unitika patent, was part of this package that was submitted with the ’397—with what became the ’397. What you're showing me is initials to the left and then on the bottom the name of the person. Yes to all of those.
> Q. And who is that person, sir?
> A. Mr. or maybe it’s Dr. Danny Lee.

(Moerke Decl. Ex. B at 1240:15-1241:3.)

## II. Argument

Avery's motion is procedurally improper. Avery simply ignores the requirements of the Federal Rules of Civil Procedure, and this Court's Local Rules, in this belated attempt to add the inequitable conduct defense that Magistrate Judge Noel threw out, without any objection by Avery, more than three and a half years ago. Avery's defense is likewise premised on an inaccurate characterization of the trial record and the law of inequitable conduct.

### A. Avery's Motion Is Procedurally Improper and Should Be Denied on That Basis Alone.

#### 1. Avery Long Ago Waived the Right to Plead Inequitable Conduct Based on the Unitika '060 Patent.

Both Rule 72(b) of the Federal Rules of Civil Procedure and Local Rule 72.1(b)(2) require objections to a Magistrate Judge's pre-trial orders to be filed within 10 days after a party is served with the order. The implications of failing to do so could not be spelled out more clearly: "[A] party may not thereafter assign as error a defect in the magistrate judge's order to which objection was not timely made." Fed. R. Civ. P. 72(a); Local Rule 72.1(b)(2); *see also Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) ("Appellant's failure to file any objections waived his right to de novo review by the district court of any portion of the report and recommendation of the magistrate judge as well as his right to appeal from the findings of fact contained therein.").

On June 6, 2002, Magistrate Judge Noel denied Avery's motion to file a second amended answer to charge 3M with inequitable conduct based on allegations that 3M had

failed to disclose material prior art to the Patent Office during prosecution of the ’930 patent. (Doc. No. 85) Avery’s motion expressly included the Unitika ’060 patent as one of those references. (Doc. No. 76.)

Avery’s time to object to Magistrate Judge Noel’s ruling expired 10 days later. Avery did not do so, and in fact, said not one word about inequitable conduct based on the Unitika ’060 patent for the next three and a half years.

Avery offers two excuses for failing to object to Magistrate Judge Noel’s order: (1) that Avery had not yet taken Dr. Calhoun’s deposition[2]; and (2) that Avery thought it would win on noninfringement. (*See* Doc. No. 358 at 16-18.) But neither Rule 72(b) of the Federal Rules of Civil Procedure nor Local Rule 72.1(b)(2) recognizes such excuses for a party’s failure to object within the express ten day time limit.

In sum, Avery’s failure to object to Magistrate Judge Noel’s June 6, 2002 order denying Avery’s request to bring an inequitable conduct defense based on the Unitika ’060 patent waived Avery’s right to challenge the order or raise the defense again. Avery’s motion should be denied on this basis alone.

### 2. Avery’s Request to Amend Its Answer Is Procedurally Improper Under Federal Rules of Civil Procedure 16, 59, and 60.

Once a judgment is entered, a motion to file an amendment to the pleadings is not allowed unless the court sets aside or vacates the judgment under Rule 59 or Rule 60.

---

[2] Of course, Avery could have objected to Magistrate Judge Noel’s order on the basis that it needed this discovery, but Avery never raised this excuse until now.

*Ahmed v. Dragovich*, 297 F.3d 201, 207-08 (3d Cir. 2002); *Lindauer v. Rogers*, 91 F.3d 1355, 1357 (9th Cir. 1996); *Acevedo-Villalobos v. Hernandez*, 22 F.3d 384, 389 (1st Cir. 1994); *First Nat. Bank v. Cont'l Ill. Nat. Bank & Trust Co.*, 933 F.2d 466, 468 (7th Cir. 1991); *Denny v. Barber*; 576 F.2d 465, 471 (2d Cir. 1978); 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1489 (2d ed. 1990); *see also* 6 Charles Alan Wright et al., *Federal Practice & Procedure* § 1489 (2d ed. 1990). To succeed on such a motion, the moving party must satisfy the requirements of Rule 59 or Rule 60, in addition to those of Rules 15 and 16. *See Ahmed*, 297 F.3d at 207 (holding that Rule 15's amendment policy does not apply once judgment has been entered in a case); *see also In re Milk Prods. Antitrust Litigation*, 195 F.3d 430, 437 (8th Cir. 1999) (holding that when a scheduling order has been entered in a case, if a party attempts to amend its pleadings, Rule 15 does not control because Rule 16's requirements must be considered). To hold otherwise would allow parties to employ the liberal amendment policy of Rule 15(a) in a way that is contrary to the philosophy favoring finality of judgments and the expeditious termination of litigation. Wright, *supra,* § 1489.

**a. Avery Does Not Meet Rule 59(e)'s Requirements to Alter or Amend Judgment.**

Rule 59(e) serves the limited function of allowing for the correction of "manifest errors of law or fact or to present newly discovered evidence." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs.*, 141 F.3d 1284, 1286 (8th Cir. 1998) (quoting *Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988)). Motions pursuant to Rule

59(e) cannot be used to introduce new evidence, tender new legal theories, or raise arguments that could have been offered or raised prior to the entry of judgment.

*Innovative Home Health Care*, 141 F.3d at 1286; *Global Network Techs. v. Reg'l Airport Auth.*, 122 F.3d 661, 665-66 (8th Cir. 1997).

Avery does not argue that the judgment entered in this case contained manifest errors of law or fact, or that Avery has newly discovered evidence to present. In fact, Avery's motion provides no explanation at all why the Court should consider altering or amending judgment under Rule 59(e). Avery's motion focuses on evidence that was available well before trial, legal theories that the court has already considered and rejected, and arguments that could have been made during trial. Avery simply wants a second bite at the apple, and Avery offers no justification for an alteration or amendment of the judgment in this case.

**b. Avery Does Not Meet Rule 60(b)'s Requirements for Relief from Judgment.**

Rule 60(b) provides district courts with the power to grant a party relief from judgment. The Rule includes a "catch-all" provision that allows the court to grant relief for "any other reason justifying relief from the operation of the judgment," in addition to five provisions detailing specific circumstances when such relief is proper. Fed. R. Civ. P. 60(b)(6). Despite its broad language, the "catch-all" provision does not give courts unlimited equitable authority; instead, relief under Rule 60(b)(6) "is an extraordinary remedy." *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir. 1989); *see also Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005). "It is not a substitute for other legal remedies.

[Rule 60(b)(6)] relief is to be granted only when exceptional circumstances prevented the moving party from seeking redress through the usual channels." *Zimmerman*, 869 F.2d at 1128. Exceptional circumstances do not lie when a party has simply failed to take advantage of opportunities to litigate an issue prior to judgment. *Id.* (finding no exceptional circumstances when the plaintiff failed to use procedures that were legally available prior to judgment).

Additionally, parties may invoke Rule 60(b)(6) only when there are reasons for relief *other* than those set out in the more specific clauses of Rule 60(b)(1)-(5). *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 864 n.11 (1988) (stating that Rule 60(b)(6) and the other provisions of Rule 60(b) are "mutually exclusive"). To read the Rule any other way would eliminate the need for the specific clauses and would eliminate the limitations that are imposed on those specific conditions. 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.48[1] (3d ed. 2005). As a result, parties who "attempt to garb their motion in the raiment of clause (6) run aground on the bedrock principle that clause (6) may not be used as vehicle for circumventing clauses (1)-(5)." *Cotto v. United States*, 993 F.2d 274, 278 (1st Cir. 1993).

Avery does not provide any reasons for the Court to properly grant relief under the specific provisions of Rule (60)(b)(1)-(5), nor the "catch-all" provision of Rule 60(b)(6). No exceptional circumstances lie in this case to justify Rule 60(b)(6) relief; to the contrary, Avery had a full and fair opportunity to litigate the issue of inequitable conduct. Avery asserted the defense of inequitable from the very beginning of this case. Avery initially pled inequitable conduct based on the Sawka patent and later tried unsuccessfully

to amend its defense to include, among many other references, the Unitika ’060 patent. During the discovery period, Avery had an opportunity to take discovery of all of the witnesses and documents that Avery wanted to support any such defense. Avery deposed the inventors of both the ’930 and the ’397 patents, as well as the attorney who prosecuted both of the patents. Avery had access to all of the pertinent documents, including the ’930 patent, the ’397 patent, and all of the references disclosed in those patents. Avery simply cannot claim that it was denied the opportunity to plead and prove inequitable conduct.

Additionally, Avery’s entire motion rests on the assertion that “new” evidence was adduced *at* trial. Rule 60(b)(2) specifically considers relief for “newly discovered evidence.” However, it is well established that this clause does not apply unless the new evidence is discovered *after* the trial. *Mitchell v. Shalala*, 48 F.3d 1039, 1041 (8th Cir. 1995). Relief under Rule 60(b)(2) is improper here because Avery does not assert that it discovered any new evidence after the conclusion of the trial.

Avery’s reliance on Rule 60(b)(6) is also improper because that Rule may only be invoked when there are reasons for relief other than those set out in the more specific clauses of Rule 60(b)(1)-(5). Any claim of new evidence by Avery falls squarely within Rule 60(b)(2). Avery’s attempt to “garb their motion in the raiment of clause (6)” would, if allowed, eliminate the “after trial” limitation that is imposed on Rule 60(b)(2). *Cotto*, 993 F.2d at 278.

**c. Avery Has Not, and Cannot, Show the "Good Cause" Required to Amend Its Answer Under Rule 16(b).**

Even if Avery had met the stringent requirements of Rules 59 or 60, the Court's Scheduling Order would still stand in its way. Avery argues that the Court may properly allow Avery to amend its answer based on the liberal amendment standard of Rule 15(a). Avery dismisses the Scheduling Order entered in this case as an afterthought, relegating it to a footnote in which Avery suggests that its amendment is merely a "matter of procedure." (*See* Doc. No. 358 at 14 (page 10 n.1).)

Once again, Avery cannot simply pretend that this Court's pre-trial orders are mere formalities to be disregarded in order to set aside the jury's verdict. The Scheduling Order in this case set a deadline of May 1, 2002 for motions to amend. (Doc. No. 57 at 1.) Avery recognized this deadline when it tried, but failed, to amend its pleadings on April 30, 2002. (Doc. No. 76.) Thereafter, amendments to the pleadings, such as the one Avery now seeks nearly four years later, must meet the "good cause" standard that Rule 16(b) requires for amending a Scheduling Order. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) ("When the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order.").

Avery's plea that the Court ignore Rule 16(b) and focus only on Rule 15(a) would require the Court to disregard the law. Such a focus on Rule 15(a) would "render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure." *In re Milk Prods.*, 195 F.3d at

437-48. Using Rule 15(a) to make an exception to the good cause requirement of Rule 16 would cause a "devastating undercutting of that requirement." *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 583 (D. Minn. 1999). This Court has already clearly spoken out against the very action Avery requests.

Avery does not and cannot make a showing of "good cause" here. The "good cause" standard of Rule 16(b) is an exacting one, for it demands a demonstration that the existing schedule could not reasonably have been met despite the diligence of the party seeking the extension. *North Star Mutual Ins. Co. v. Zurich Ins. Co.*, 269 F. Supp. 2d 1140, 1144 (D. Minn. 2003). The question of good cause does not turn on the existence or absence of prejudice to the non-moving party. *Id*.

Avery's motion provides no basis for the court to find good cause—and for good reason. Avery simply was not diligent on this issue, and cannot establish any cause, let alone good cause, for such a late amendment. Avery raised the defense of inequitable conduct from the beginning of the litigation. Avery sought to raise the very defense it now seeks to revive, was denied, and failed to object until it lost at trial. Avery argues that an amendment would not cause unnecessary delay, would not prejudice 3M, and would not be futile. 3M disagrees, but in any event, Avery completely misses the mark: the good cause standard focuses squarely on the actions of Avery. Here, Avery said not one word about inequitable conduct based on the Unitika '060 patent for more than three and a half years after the deadline for amending pleadings had passed. That shows anything but diligence or "good cause."

### B. Avery's Motion Fails to Cite Facts or Law that Would Even Approach the Clear and Convincing Showing Needed for Inequitable Conduct.

#### 1. Avery's Primary Argument—that 3M "Withheld" the Unitika '060 Patent—Is Just Plain Wrong.

Turning, *arguendo*, to the merits of Avery's motion, Avery's cries of inequitable conduct are premised, first and foremost, on the charge that 3M "withheld" the Unitika '060 patent during prosecution of the '930 patent. (*See* Doc. No. 358 at 5-6, 8, 10-12.) As 3M demonstrated at trial, Avery is wrong on the facts and the law.

The Manual of Patent Examining Procedure (MPEP), in Section 2163.07, entitled "Incorporation by Reference," provides that material incorporated by reference in a patent application is as much a part of the specification as is the actual text of the patent application itself:

> The information incorporated is as much a part of the application as filed as if the text was repeated in the application, and should be treated as part of the text of the application as filed.

MPEP § 2163.07.

Here, the Calhoun '930 patent expressly incorporates by reference the application that led to the '397 patent:

> An example of the use of multiple embossed webs of the present invention is as a release liner as disclosed in copending U.S. patent application Ser. No. 08/775,884 (Sher et al.) (Attorney Docket 52771USA9A) incorporated by reference herein.

(Moerke Decl. Ex. C at 3:33-37.)

Going one step further, the Unitika '060 patent is referenced expressly in the specification of the '397 patent:

> Another approach to topographical adhesives is the formation of ridges or recesses in a release or transfer liner to generate a temporary topography on the adhesive. For example, British Patent Specification 1,511,060 discloses a heat- and pressure sensitive adhesive on an impermeable backing that is formed by application of heat and pressure and a release liner having a specific topography or by coating the adhesive onto the release liner, whereupon the release liner is removed. Then, bonding of the adhesive to the desired substrate also requires a step of heat and pressure that adheres the adhesive layer to the substrate. This step is also required to improve the appearance of the final product. This complicated procedure of generating the adhesion of the layer to the backing and then generating the adhesion to the final substrate minimizes utility of the construction for use in large format graphics and other industrial requirements. Furthermore, the depth of the recesses used to create an effective temporary topography on the nontacky adhesive surface is at least 45 µm, and then only if the width of the recesses is at least 130 µm.

(Moerke Decl. Ex. J at 1:48-67.)[3] Thus, as 3M demonstrated at trial, under the PTO rules that 3M followed, the above incorporation by reference had the legal effect of making the specification of the ’397 patent, including the above disclosure of the Unitika ’060 patent, part of the specification of the ’930 patent. (Moerke Decl. Ex. B at 1237:10-20, 1238:6-

---

[3] Avery wrongly contends that 3M’s description of the Unitika ’060 patent in the background section of the ’397 patent is false. (*See* Doc. No. 358 at 8, 11-12 (claiming that 3M “committed inequitable conduct by falsely describing the Unitika ’060 patent in another application”).) The description of the Unitika ’060 patent in the ’397 patent basically came verbatim from the Unitika ’060 patent itself. (Ex. D at 3-4 (“As seen in Table 1, it has been found that in the case where the height of the ridges of arcuate cross-section on the release sheet is 45µ, i.e., the depth of the recesses in the surface of the adhesive layer is 45µ, complete degassing is possible provided that the pitch DL is 6cm or below and the width *w* is greater than 130µ. When the width *w* was 1000µ, however, the recesses were visible from the surface of the sheet after the sheet was bonded, this being undesirable.”)

Avery also wrongly contends that Dr. Calhoun “conceded that the description of the Unitika patent provided in the Sher application was not accurate.” (*See* Doc. No. 358 at 12 (citing Dr. Calhoun’s testimony at 410:3-403:14 [sic]).) Dr. Calhoun did not concede any such thing, and it is unclear to 3M what part of the transcript Avery’s citation for this contention is even referencing.

13, 1240:15-1241:3, 1294:19-1295:7.) Thus, the Unitika ’060 patent was in no way “withheld” from the PTO during prosecution of the ’930 patent. Avery’s argument that 3M somehow “withheld” the Unitika ’060 patent from the PTO is as wrong factually as it is flawed legally.

Moreover, contrary to Avery’s lead counsel’s misrepresentation to the jury in his opening statement, the Unitika ’060 patent was before Danny Lee, the patent examiner on both the ’397 and ’930 patents. As a factual matter, there can be no dispute that Mr. Lee knew of the Unitika ’060 patent. Indeed, 3M not only disclosed it to him, 3M described it in the background section of the ’397 patent, making the disclosure even more prominent than simply placing the patent in a list of submitted references.

Thus, Avery’s inequitable conduct argument fails at the very first step. 3M did not “withhold” the Unitika ’060 patent from the PTO. Instead, the reference was disclosed in the specification of the ’930 patent, by virtue of the incorporation by reference of the ’397 patent in the ’930 patent. *See* MPEP Section 2163.07. The Federal Circuit has held that such disclosure of prior art in a patent specification is sufficient to defeat a charge of inequitable conduct. *See Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 670 (Fed. Cir. 2000) (affirming the denial of an award of attorneys’ fees on grounds of inequitable conduct because allegedly undisclosed prior art was discussed in the specifications of the patents-in-suit); *Speedplay, Inc. v. Bebop, Inc*., 211 F.3d 1245, 1259 (Fed. Cir. 2000) (affirming the finding of no inequitable conduct based in part on the mere fact that “patent specifications discussed, in general terms, much of the prior art”).

**2. There Is No Evidence of an Intent to Deceive, Much Less Clear and Convincing Evidence.**

The Federal Circuit just recently explained the high standard needed to prove an intent to deceive the PTO: "Intent to deceive can not be inferred solely from the fact that information was not disclosed; there must be a factual basis for a finding of deceptive intent." *M. Eagles Tool Warehouse, Inc. v. Fisher Tooling Co.*, Nos. 05-1224, 05-1228, 2006 WL 454355, at *4 (Fed. Cir. Feb. 27, 2006); *see also Northern Telecom, Inc. v. Datapoint Corp.*, 908 F.2d 931, 939 (Fed. Cir. 1990) ("Intent to deceive should be determined in light of the realities of patent practice, and not as a matter of strict liability whatever the nature of the action before the PTO."). Moreover, evidence of good faith must be taken into account: "To satisfy the requirement of the intent to deceive element of inequitable conduct, 'the involved conduct, viewed in light of all the evidence, including evidence of good faith, must indicate sufficient culpability to require a finding of intent to deceive.'" *M. Eagles Tool Warehouse*, 2006 WL 454355, at *5 (quoting *Paragon Podiatry Lab. v. KLM Lab.*, 984 F.2d 1182, 1189 (Fed. Cir. 1993)).

Here, it almost goes without saying that there can be no intent to deceive when 3M (1) cited the Unitika '060 patent to the PTO; and (2) incorporated that citation into the specification of the patent-in-suit. This alone evidences 3M's good faith and lack of intent to deceive. Avery has not and cannot point to any evidence even remotely suggesting that 3M intended to deceive Danny Lee or anyone else at the PTO based on these undisputed facts. For this separate and independent reason, Avery's belated cries of inequitable conduct are futile. *See Purdue Pharma L.P. v. Endo Pharm. Inc.*, Nos. 04-

1189, 04-1347, 04-1357, 2006 WL 231480, at *9 (Fed. Cir. Feb. 1, 2006) ("[I]t is important to remember that materiality does not presume intent, which is a separate and essential component of inequitable conduct." (quotations omitted)).

**C. 3M Should Be Awarded Its Fees and Costs in Defending This Motion.**

Because Avery had no good faith basis to bring this motion, which is both procedurally barred and contrary to the law, 3M seeks its fees and costs incurred in opposing the motion. Such an award is proper under Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, which authorizes sanctions when an attorney "multiplies the proceedings in any case unreasonably and vexatiously," and under the Court's inherent powers. *See, e.g.*, *Powell v. Nat'l Football League*, 139 F.R.D. 381, 383-84 (D. Minn. 1991) ("The court concludes that defendants' motion . . . is utterly baseless and escalates litigation costs 'unnecessarily and vexatiously.' . . . Accordingly, based on Federal Rule of Civil Procedure 11 and its inherent powers, the court grants plaintiffs' request for costs, expenses and attorneys' fees . . . ."). Such awards are at the Court's discretion. *See, e.g.*, *Chamber v. Nasco, Inc.*, 501 U.S. 32 (1991) (citing *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765 (1980)).

On January 10, 2006, Avery filed a post-trial motion regarding "issues of enforceability." (*See* Doc. No. 345.) On January 11, 2006, 3M sent Avery a letter explaining that, because Avery has waived any right to further litigate the defense of inequitable conduct, 3M would move for its fees and costs if Avery refused to withdraw this motion and proceeded to file any additional briefing, forcing 3M to respond. (Moerke Decl. Ex. E.) On January 12, 2006, Avery responded to 3M's letter and stated

that it refused to withdraw its motion. (Moerke Decl. Ex. F.) Accordingly, 3M asks the Court to award its costs and fees as compensation for Avery's meritless post-trial motion on unenforceability.

## III. Conclusion

For the reasons provided above, 3M respectfully requests that the Court deny Avery's motion for judgment as a matter of law or a new trial on the issue of infringement and award 3M's fees and costs incurred in opposing Avery's motion.

Dated: March 3, 2006

FISH & RICHARDSON P.C., P.A.

By: s/Katherine A. Moerke

Jonathan E. Singer (#283459)
John C. Adkisson (#266358)
Katherine A. Moerke (#312277)
FISH & RICHARDSON P.C., P.A.
60 South Sixth Street, Suite 3300
Minneapolis, MN 55402
Tel: (612) 335-5070
Fax: (612) 288-9696

Juanita R. Brooks
(Admitted Pro Hac Vice)
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Tel: (858) 678-5070
Fax: (858) 678-5099

Kevin H. Rhodes (#318115)
3M Innovative Property Company
3M Center
P.O. Box 33427
St. Paul, MN 55133

Attorneys for Plaintiffs
3M INNOVATIVE PROPERTIES
COMPANY and MINNESOTA MINING
AND MANUFACTURING COMPANY

60343697.doc