UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, Plaintiffs, vs. AVERY DENNISON CORPORATION Defendant. | ) | No. 01-CV-1781 (JRT/FLN) |

**AVERY DENNISON CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ALTER OR AMEND JUDGMENT, OR ALTERNATIVELY, FOR RELIEF FROM JUDGMENT, AND REQUEST FOR NEW BENCH TRIAL ON ISSUES OF ENFORCEABILITY**

## INTRODUCTION

The evidence presented at trial demonstrates that 3M did not fulfill its duty of candor to the PTO in conjunction with the prosecution of the application for the patent-in-suit,[1] and that 3M deceived the PTO by mischaracterizing the teachings of the Unitika '060 [2] prior art reference. Critical evidence regarding 3M's inequitable conduct was developed for the very first time during the trial of this action. Avery seeks, and is entitled to, a resolution of this issue on the merits. 3M's argument that Magistrate Judge Noel's pretrial decision precludes this Motion is a tactical gambit designed to deflect the Court's attention from the merits of this issue. Avery's Motion is not barred by

1 U.S. Patent No. 5,897,930 ("Calhoun '930").
2 GB Patent Specification No. 1,511,060 ("Unitika '060") (Def.'s Trial Ex. 512).

Magistrate Judge Noel's pretrial decision because the present Motion is based on new facts not before the Magistrate Judge and is substantively different from Avery's earlier proposed amendment. This Motion is consistent with both the letter and the spirit of the Federal Rules of Civil Procedure, and it should be granted to allow both Avery and 3M to present evidence regarding this critical issue.

## ARGUMENT

### A. Avery's Motion Is Procedurally Proper and Should be Granted.

#### 1. Avery's Motion to Amend Post-Trial Is Not Barred by Magistrate Judge Noel's Denial of Its Motion to Amend Prior to Trial.

In its Memorandum in Opposition, 3M completely misconstrues Avery's Motion to Amend as a motion appealing or objecting to Magistrate Noel's June 6, 2002 Order denying Avery leave to amend to add a claim of inequitable conduct prior to trial.[3] Avery does not seek to review the decision by Magistrate Noel in 2002 that Avery could not amend its claim, based on the evidence known at that time and the Federal Circuit's interpretation of the patent at that time. Rather, this Motion seeks to amend based on *new evidence adduced at trial* related specifically to the Unitika patent and 3M's conduct relating to that critical prior art reference.

A simple comparison between the two motions to amend, and the proposed amended complaints, show their stark differences. In its pretrial motion to amend, Avery

[3] Throughout this section of its Memorandum, 3M consistently cites Federal Rule of Civil Procedure 72(b) and Local Rule 72.1(b)(2) as prohibiting Avery's Motion. *See Pl.'s Memo.* (Doc. 362) at 6-7. Rule 72(b) does not apply to this situation because a motion to amend an answer is nondispositive, and Rule 72(b) applies only to dispositive motions. Second, the Local Rules were substantially restructured in 2005, and Local Rule 72.1(b)(2) no longer existed as of the time 3M filed its Motion; Local Rule 72.2, which contains substantially similar language, has taken its place.

sought to raise the inequitable conduct defense based primarily on the grounds that 3M's patent counsel chose not disclose prior art references during the prosecution of the Calhoun '930 patent, even though these prior art references were cited in the applications for the Sher '937 patent[4]. *See* (Docs. 76 & 77). In this Motion, Avery seeks to amend its answer and raise the inequitable conduct defense based on very particularized facts—facts that Avery did not have in its possession when the pretrial motion to amend was brought before Magistrate Judge Noel.

Avery seeks to assert the inequitable conduct defense based on inventor Calhoun's specific knowledge of the Unitika '060 patent and his failure to meet PTO standards for the disclosure of this prior art reference. While in his deposition Calhoun had denied any knowledge of the Unitika reference, at trial he admitted that he was aware of this important prior art. Thus, Avery proposes to amend its answer to allege that both Mr. Hornickel (3M's in-house patent counsel) and Dr. Calhoun were familiar with the Unitika '060 patent when they applied for the '930 patent. This proposed amendment is also based on the particularized allegation that Mr. Hornickel and Dr. Calhoun deceived the PTO by misdescribing the Unitika '060 reference. At trial 3M revealed that it purported to have met its obligations to disclose Unitika '060 in the prosecution of the Calhoun '930 patent by referencing and thereby "incorporating" a related patent application, an application which included 3M's description of the Unitika '060 patent. However, as alleged in Avery's proposed Second Amended Answer, 3M mischaracterized the teachings of the Unitika '060 patent in the companion application so

---

4 U.S. Patent No. 6,197,397 ("Sher '397") (Def.'s Trial Ex. 51).

as to lead the PTO to the conclusion that this prior art reference did not teach the invention of the Calhoun ’930 patent. In fact, the Unitika ’060 patent described a solution to the air bubble problem through ridge and land height limitations that were within the range claimed by the Calhoun ’930 patent application. In other words, the teachings of the Unitika ’060 patent that were most relevant to the PTO’s consideration of the Calhoun ’930 patent application were not disclosed to the PTO. Instead, 3M described the Unitika ’060 prior art reference in a cleverly deceptive manner so that the examiner would believe that this prior art had no bearing on his analysis of the Calhoun ’930 application. Dr. Calhoun essentially admitted to this during cross examination at trial.

These facts were not known to Avery when it brought its pretrial motion to amend, and hence were not specifically alleged in Avery’s proposed amended answer, nor were they presented to Magistrate Judge Noel in support of Avery’s motion. These significant facts, having been adduced for the first time at trial, now form the core of Avery’s proposed Second Amended Answer.

This proposed Second Amended Answer and the factual basis for Avery’s proposed amendment is fundamentally different from the amendment proposed prior to trial. This amended answer rests on new facts which were not known to Avery prior to the commencement of trial. Hence, Magistrate Judge Noel’s decision cannot have any preclusive effect on Avery’s current Motion. In its Memorandum in Opposition, 3M provided no legal authority, and Avery could find none, holding that Avery cannot seek to amend its pleadings after evidence at trial gives rise to a *prima facie* defense, even

when the earlier request for a different amendment (prior to the close of discovery) has been denied.[5]

**2. Avery's Motion Is Not Procedurally Improper Under the Federal Rules.**

**a. Avery Does Meet the Standards of Rules 59 or 60.**

Contrary to 3M's contentions, Avery does meet the standards under Rules 59 or 60 to alter, amend, or to be relieved from the judgment. Rule 59(e) provides a court the power "to correct its own mistakes in the time period immediately following entry of judgment," including "manifest errors of law or fact." *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black Hills*, 141 F.3d 1284, 1286-87 (8th Cir. 1998) (citations and quotations omitted) (affirming district court's decision to grant Rule 59(e) motion and dismiss counterclaims based on the court's specifically-cited "errors or changes of heart regarding the merits of the legal arguments" made in the case); *ANR W. Coal Dev. Co. v. Basin Elec. Power Coop.*, 276 F.3d 957, 969 n.13 (8th Cir. 2002) (reversing and remanding case based on errors of law, and holding that, because the magistrate judge erred in applying the correct law related to a party's damage claim, that the magistrate judge also abused his discretion to deny the party's Rule 59(e) motion on the issue). Similarly, a judgment may be vacated or set aside pursuant to Rule 60(b) to

[5] The only case cited by 3M in support of this argument is inapposite—a *habeas corpus* case in which the 8th Circuit held that a prisoner could not challenge a magistrate's factual finding that the prisoner had been given sufficient notice of incorrect legal advice prior to the expiration of statutory deadlines to file a state proceeding. *Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994). The *Griffini* court merely recognized the generally accepted rule that a failure to object to a report and recommendations waives a claimant's right to de novo district court review on a *dispositive* matter decided by the magistrate. It does not even apply to nondispositive, civil matters, much less this situation, where new evidence raises a new claim for amendment of the pleadings.

allow a party to assert new claims or defenses. *See, e.g.*, *Wilburn v. Pepsi-Cola Bottling Co.*, 492 F.2d 1288, 1290 (8th Cir. 1974).

Relief is proper under either Rule 59 or 60 because the judgment, without consideration of 3M's inequitable conduct, would constitute a judgment entered upon "manifest errors of law and fact." During his deposition, Dr. Calhoun, the inventor of the patent-in-suit, had represented that he was not aware of or had not reviewed the Unitika '060 patent. (Depo. of Clyde Calhoun at 161:5-21, Kaiser Aff. ex. A.) During trial Dr. Calhoun changed his testimony and he revealed for the first time that he was familiar with the specifications of that patent. (Trial Tr. at 390:11-23, 393:19-20, Kaiser Aff. ex. B.) Further, Dr. Calhoun admitted that the statements made to the PTO in the Sher '397 application were an incomplete description of the Unitika '060 patent and withheld a material teaching of the Unitika patent. (Trial Tr. at 399:8-19, 403:4-14, Kaiser Aff. ex. B.) The disclosure of those teachings would have established a *prima facie* case of unpatentability of the '930 application. 37 C.F.R. § 1.56. This important testimony was new and a surprise. *See* Fed. R. Civ. P. 60(b)(1). Contrary to 3M's argument, it was not available well before trial, and it was based upon factual issues that had never been presented to the Court, much less considered and rejected.

This Motion meets the "exceptional circumstance" standard of Rule 60(b)(6) because it is based on important evidence learned for the first time at trial—evidence based on changed testimony by the inventor and a new explanation from the patent holder regarding how it met its disclosure obligation. Had Avery known about this evidence prior to trial and been allowed to present an inequitable conduct defense based on the

Unitika patent, judgment would not have been entered for 3M. *United States v. Washington*, 98 F.3d 1159, 1164 (9th Cir.1996) (Kozinski, J., concurring) ("Rule 60(b)(6) authorizes setting aside a judgment only for reasons that would have prevented entry of the judgment in the first place, had the reasons been known at the time judgment was entered."). As it currently stands, the judgment against Avery is a vehicle of injustice. *Harley v. Zoesch*, 413 F.3d 866, 870 (8th Cir. 2005) (quotations and citations omitted). Therefore it should be altered, amended or corrected by granting this motion.

**b. Avery Has Shown that Leave to Amend Should be Granted.**

3M next argues that the Court should only allow Avery's amendment to add the defense of inequitable conduct if Avery demonstrates "good cause" to amend its answer pursuant to Rule 16(b), rather than the general, liberal amendment standard of 15(a). 3M asserts that this higher standard is proper because Avery's Motion has been filed after the scheduling order was entered. However, "amendments to complaints are liberally allowed under the Federal Rules of Civil Procedure up to and even after trial, judgment, and appeal, in cases where there is no harm to the defendant from the tardy amendment." *United States v. Security Pac. Bus. Credit, Inc.*, 956 F.2d 703, 707-08 (7th Cir. 1992); *accord Laber v. Harvey*, 438 F.3d 404 (4th Cir. 2006) ("[A] district court may not deny [a motion to amend pursuant to Rule 15(a)] simply because it has entered judgment . . . be it a judgment for dismissal, a summary judgment, or a judgment after trial on the merits."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 331-32 (1971) (analyzing request for leave to amend pleadings under Rule 15(a), although request was filed one year after close of evidence ); *Gamma-10 Plastics, Inc. v. Am.*

*President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994) (analyzing trial court's denial of plaintiff's motion to amend to add punitive damages claim midway through trial pursuant to Rule 15(a)).[6]

Regardless of whether the Court analyzes this issue pursuant to Rule 15(a) or Rule 16(b), the amendment should be granted. Avery could not have sought its amendment earlier. The critical facts on which Avery's Motion and the proposed Second Amended Answer are based were adduced at trial, not before. New facts came to light, and important testimony changed, thus altering the landscape of this case. In his deposition Dr. Calhoun testified that he could not remember reviewing the Unitika '060 Patent. (Calhoun Depo. at 161:5-21, Kaiser Aff. ex. A.) . However, the opposite was disclosed at trial—Calhoun admitted he *did* have acknowledge about the Unitika '060 patent. He further testified (again for the first time) that 3M's description of the Unitika '060 prior art in the Sher '397 patent application was incomplete and deceptive because it taught away from, rather than candidly disclosing, the most relevant elements of the Unitika reference. (Trial Tr. at 399:8-19, 403:4-14, Kaiser Aff. ex. B.) Avery could not have filed *this* motion to amend within the scheduling order deadlines because the factual basis for such an amendment was unknown at the time. The specific information demonstrating 3M's inequitable conduct—having specific knowledge of the Unitika '060

[6] The cases cited by 3M merely recognize that a trial court "may" require that good cause be shown for leave to amend a pleading that is "substantially out of time" from the deadlines set in a pretrial scheduling order. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (noting that it was not an abuse of discretion to deny amendment when the amending party provided no reason why amendment could not have been filed earlier). At best, this permissive inquiry merely encapsulates the Rule 15(a) standards that amendments not be filed with undue delay or result in prejudice to the opposing party. *See Foman v. Davis*, 371 U.S. 178, 182 (1962).

patent and providing a misleading description of the Unitika ’060 patent in the Sher ’397 application—was not disclosed until trial. Such evidence is sufficient for the Court to grant Avery’s Motion for relief from judgment pursuant to Rule 59(e) or 60(b); it would be more than sufficient to grant Avery’s motion to amend pursuant to either Rule 15(a) or 15(b).

**B. Avery Can Show by Clear and Convincing Evidence that 3M Committed Inequitable Conduct during the Prosecution of the ‘930 Patent.**

Patent applicants must prosecute their applications with candor, good faith, and honesty, and have a duty to disclose information known to the applicants to be material to patentability. *Purdue Pharma, L.P. v. Endo Pharma., Inc.*, ___ F.3d ___, 2006 WL 231480 at * 4 (Fed. Cir. 2006). A breach of this duty may constitute inequitable conduct when, among other things, an applicant fails to disclose a material reference with an intent to deceive the PTO. *Id.* To analyze whether an applicant’s actions constitute inequitable conduct, the court first must determine whether the misleading information meets a threshold level of materiality. *See, e.g.*, *Akzo N.V. v. U.S. Int’l Trade Comm’n*, 808 F.2d 1471, 1481 (Fed. Cir. 1986). If that threshold is satisfied, the court must determine whether the evidence shows a threshold level of intent to deceive the PTO. *Baxter Int’l Inc. v. McGaw, Inc.*, 149 F.3d 1321, 1327 (Fed. Cir. 1998). Intent to deceive may be inferred from the surrounding circumstances. *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1255 (Fed. Cir. 1997).

### 1. 3M's Failure to Site a Material Reference in the '930 Patent is Prima Facie Evidence of Inequitable Conduct.

3M does not argue that the Unitika '060 patent is not a material reference for the patent-in-suit. Rather, 3M argues that it satisfied its duty of candor (1) by including the Unitika '060 reference in the Sher '397 patent, (2) by "incorporating by reference" the Sher application (in its totality) into the '930 patent, and (3) given the fact that Danny Lee was the patent examiner for both the '397 and the '930 patent-in-suit, (4) therefore, the Unitika '060 reference was "before the patent office." *See Pl.'s Memo*. (Doc. 362) at 3-5, 14-16. 3M's syllogism is logically flawed and contrary to the plain language of the law and regulations delineating the duty of candor.

37 C.F.R. §§ 1.56, 1.97, and 1.98 describe a patent applicant's duty of candor in disclosing information material to patentability. Among the requirements are that information material to a patent application must be provided to the PTO as part of an Information Disclosure Statement and a physical copy of all foreign patent documents be provided to the examiner. *Id.*

It is a simple and uncontroverted fact that 3M did not provide any such disclosures for the Unitika '060 patent. 3M does not event attempt to argue that it met the disclosure standard. Rather, 3M claims that such disclosures were "incorporated by reference" to the Sher '397 patent. Any such incorporation is improper, ineffective, and insufficient.

First, 3M did not satisfy the regulatory requirements for incorporation by reference. It cited to an unpublished, co-pending application, did not disclose with particularity what essential material was being incorporated, and did not amend the

Calhoun '930 patent to reflect the incorporated material as required by PTO practice at the time. *See* 37 C.F.R § 1.57(c) (2005) (allowing "essential material to be incorporated by reference, but only by way of an incorporation by reference to a U.S. patent or U.S. patent application publication); Manual of Patent Examining Procedure § 608.01(p)(B) (7th ed. 1998) (delineating particular requirements, at the time the Calhoun '930 patent was filed, for disclosure and amendment of applications incorporating other applications, including inserting all material incorporated by reference prior to issuance); *Adv. Semiconductor Materials Am., Inc. v. Applied Materials, Inc.*, 922 F. Supp. 1439, 1447 (N.D. Cal. 1996) (noting unique circumstances when incorporation by reference is satisfied by reference to a co-pending application); *Quaker City Gear Works, Inc. v. Skil Corp.*, 747 F.2d 1446, 1455 (Fed. Cir. 1984) ("Incorporation by reference has never been permissible … of material necessary for an adequate disclosure which is unavailable to the public.").

Second, the reference incorporated, found in the Sher '397 patent, blatantly mischaracterizes the teaching of the Unitika '060 patent. The reference states that "the depth of the recesses used to create an effective temporary topography on the nontacky adhesive surface is *at least 45 µm*, and the only if the width of the recesses is at least 130 µm." (Def.'s Trial Ex. 512 (emphasis added)). This is an incomplete description of the Unitika patent, which actually discloses lands and ridges within the height limitations claimed as an invention in the '930 patent. Thus, 3M's description of the Unitika reference would have deceived the patent examiner into believing that this prior art had no relevance to 3M's application, when, in fact, the Unitika prior art taught air egress

using technology similar if not identical to the technology which 3M was seeking to patent. It is well established that where, as here, an applicant mischaracterizes the teachings of a prior art reference, intent to deceive is presumed. *See, e.g.*, *Bristol-Myers Squibb Co. v. Ben Venue Labs.*, 90 F. Supp. 2d 522, 531-33 (D.N.J. 2000); *Akzo N.V.*, 808 F.2d at 1481-82 (Fed. Cir. 1986); *Baxter*, 149 F.3d at 1327 (Fed. Cir. 1998). 3M mischaracterized the Unitika '060 reference in a specific way to deceive the examiner about the true import and teachings of this prior art. These facts create a strong case of inequitable conduct and warrant a trial on these issues.

Because the Calhoun '930 application did not disclose the Unitika '060 patent and because 3M misdescribed this prior art in 3M's companion application, the patent examiner did not consider Unitika's '060 reference when he evaluated the patentability of the invention claimed in 3M's '960 application. This is demonstrated by the fact that the examiner did not cite Unitika '060 as a prior art reference considered during the examination process. *Cf. Adv. Semiconductor Materials*, 922 F. Supp. at 1447 (noting sufficient disclosure of application incorporated by reference where examiner inserted referenced application into patent-in-suit upon referenced application's issuance). Further, and perhaps most importantly, the examiner stated that he allowed the patent to issue because the prior art did not teach lands and ridges within the height limitations claimed in 3M's application. Of course, the examiner's conclusion was false. Had 3M properly disclosed the Unitika '060 prior art reference to him, the examiner would have understood that this prior art reference taught the very height limitations for lands and

ridges which 3M was attempting to patent. Therefore, in all likelihood, the examiner would have denied 3M's patent application based on the Unitika '060 prior art reference.

### 2. 3M's Method of Phantom Disclosure Provides Evidence of Intent to Deceive.

3M used a clever but legally insufficient technique, the "incorporation by reference" approach, to avoid full and candid disclosure of the Unitika '060 reference in conjunction with 3M's '930 patent application. By disclosing the Unitika '060 prior art in a sister application for the '397 patent, 3M created the illusion of disclosure when, in fact, proper disclosure was not made. Now 3M claims that of course there was no intent to deceive and no deception because the same examiner, Mr. Lee, examined both the '930 application and the '397 application, and hence, of course, Mr. Lee was fully aware of the Unitika '060 reference and considered it in evaluating the novelty and inventiveness of 3M's '930 application.

In the end, 3M's machinations regarding its purported disclosure of the Unitika '060 prior art reference fail. 3M had no way of knowing, and could not know, that the same examiner would examine both of the applications for the Calhoun '930 and the Sher '397 patents. It was purely serendipitous that Mr. Lee examined both of these applications submitted by 3M on the same day. Since 3M could not have known that the same examiner would examine both applications, it cannot be argued that 3M properly disclosed the Unitika '060 reference in conjunction with the Calhoun '930 application by referring the examiner to a completely different application, the application for the Sher '397 patent. Very simply, the patent system does not work that way. 3M did not do what

it was required to do: it did not directly disclose the Unitika '060 reference as a part of the '930 application, and it did not provide a copy of this patent to the examiner so the examiner could have it in front of him when he evaluated prior art in relationship to the claimed invention. And if Mr. Lee or any other examiner had reviewed the description of the Unitika '060 patent which 3M included in the Sher '397 application, then the examiner would have been misled about the true significance of the Unitika '060 reference and its relation to the claimed invention of the Calhoun '930 application. In sum, 3M created the illusion of disclosure in order to have plausible deniability in the event anyone challenged, as Avery does now, 3M's conduct in conjunction with the Calhoun '930 application process.

## CONCLUSION

The facts before the Court do not demonstrate candor and good faith before the PTO; they evidence an intent on the part of 3M to deceive the patent office regarding critical prior art. The full extent of this intent to deceive was not discovered until 3M's witnesses testified at trial, inconsistently with their previous deposition testimony. Avery is not attempting a second bite at the apple to amend based on the same arguments made and rejected by Magistrate Judge Noel. It requests amendment, and a new trial, based on new theories and new evidence Avery could not have presented earlier. Therefore, allowing the judgment to stand would constitute a manifest injustice. This motion should

be granted, the judgment should be set aside, Avery should be allowed to amend its Answer to include a defense of inequitable conduct, and a new trial should be granted.[7]

DATED: March 17, 2006

Respectfully submitted,

By /S/ David P. Pearson

David P. Pearson
Kyle J. Kaiser
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN LLP
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(213) 694-1200 - Telephone
(213) 621-1234 - Facsimile

2668426v2

[7] In its Memorandum in Opposition, 3M requests its attorney fees for defending against the Motion pursuant to Rule 11 and the Court's inherent powers. 3M states that it informed Avery it would seek attorney's fees because "Avery has waived any right to further litigate the defense of inequitable conduct." *Pl's. Memo.* at 18. As noted above, no such waiver has occurred, and Plaintiff did not cite one case on point to supports such an argument. Avery's motion is not unmeritorious. Further, this motion has not "unreasonably and vexatiously multiplied the proceedings." In this five-year old, hotly contested and heavily litigated case, wherein Defendants prevailed on summary judgment, the Federal Circuit remanded the case, the case went to a jury verdict, and both sides have prepared copious motions, this motion has not multiplied the proceedings. *See, e.g.*, *Teamsters Nat'l Freight Indus. Negotiating Comm.* v. *MME, Inc.*, 116 F.3d 1241 (8th Cir. 1997) (per curiam). Avery's motion has merit and should be granted, and 3M should be denied any fees.