UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>vs.<br><br>AVERY DENNISON CORPORATION<br><br>Defendant. | No. 01-CV-1781 (JRT/FLN) |

**AFFIDAVIT OF KYLE KAISER IN SUPPORT OF AVERY DENNISON CORPORATION'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO ALTER OR AMEND JUDGMENT, OR ALTERNATIVELY, FOR RELIEF FROM JUDGMENT, AND REQUEST FOR NEW BENCH TRIAL ON ISSUES OF ENFORCEABILITY**

STATE OF MINNESOTA )
) ss.
COUNTY OF HENNEPIN )

I, Kyle J. Kaiser, being first duly sworn upon oath, depose and state:

1. I am an associate with the law firm of Winthrop & Weinstine, P.A. and duly licensed to practice in the states of Minnesota and Iowa and before this honorable Court. I represent Defendant Avery Dennison Corporation in this matter.

2. Attached hereto as Exhibit A is a true and correct copy of an excerpt of the deposition of Clyde Calhoun, Ph.D., taken on June 5, 2002.

3. Attached hereto as Exhibit B is a true and correct copy of an excerpt of the transcript of the cross examination of Clyde Calhoun taken from the trial in this matter.

FURTHER YOUR AFFIANT SAITH NOT.

Kyle J. Kaiser

Subscribed and sworn to
before me this 17th day
of March, 2006.

SUE E. HALTERMAN
NOTARY PUBLIC-MINNESOTA
My Commission Expires Jan. 31, 2010

Notary Public

2673152v1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MINNESOTA

3M INNOVATIVE PROPERTIES COMPANYand MINNESOTA MINING AND MANUFACTURING COMPANY,,

Plaintiffs,

vs. No. 01-CV-1781 (DSD/FLN)

AVERY DENNISON CORPORATION,

Defendant.

---

The Videotaped Deposition of CLYDE CALHOUN, Ph.D., taken pursuant to Notice of Taking Deposition, takenbefore Kel the County of Hennepin, State of Minnesota, taken on the 5th day of June, 2002, at Minneapolis, Minnesota, commencing at approximately 8:34 a.m.

Job No. 8589

EXHIBIT

A

you know why?

MR. MADERA: Objection to form.

A. No, I don't know why.

BY MR. HADLEY:

Q. Let me hand you Exhibit 512. This is a UK patent specification number 1511060. Do you recognize this document?

A. I can't say whether I have or haven't seen it.

Q. I'm sorry, whether you have --

A. Yeah, I can't, again, give you a definitive answer. You know, I'm looking at some figures and then I've read, you know, an early part of it. If I have seen it before I don't remember, but maybe I did.

Q. Again, this patent was cited in connection with the 397 Patent application but not the 930. Do you know why?

A. No.

MR. MADERA: Objection to form.

BY MR. HADLEY:

Q. Was that a no?

A. No.

(At this time CALHOUN Deposition Exhibit 542 was marked for identification by the Court Reporter.)

BY MR. HADLEY:

(In open court without the Jury present.)

THE COURT: You may be seated, everyone. Good morning. I'm glad to see that everyone made it through the snow. Our last juror has just arrived so we can proceed shortly. Was there an issue to discuss this morning?

Mr. Hadley?

MR. HADLEY: Yes. Good morning, Your Honor. We have one small matter to raise. Yesterday at the end of the day, Your Honor inquired of 3M what remaining witnesses that it had and what order they would testify in.

THE COURT: Mm-hmm.

MR. HADLEY: And one of the 3M witnesses that they indicated would testify on their exhibit list is a Mr. Cavaleri. Last weekend we discussed the testimony of a number of witnesses to determine whether we could streamline the trial in any way.

And we understand that Mr. Cavaleri is going to testify to authenticate something called profilometer tests, which are, I don't know much about them, except that it is an instrument that is used to measure very small heights, and what Mr. Cavaleri did is use this instrument to measure the heights of the ridges on Avery's accused liner and to determine whether they were in the 3 to 45 micron range.

And as we understand it, Mr. Cavaleri will

Furthermore, the depth of the recesses used to create an effective temporary topography on the nontacky adhesive surface is at least 45 microns and then only if the width of the recesses is at least 130 microns.

A. That's what I remembered reading.

Q. That's what you were referring to a moment ago?

A. Yes.

Q. And when you read that you understood from the words that appeared in your patent application that this reference, this British reference, taught that the heights had to be at least 45 and maybe higher to even work; isn't that what's communicated here?

A. It says that they have to be at least that high.

Q. At least that high?

A. Yes. They could be higher than that.

Q. Right. But they can't be lower?

A. Well, in this particular reference to this particular work, that's what the summary -- whoever wrote this section, that's what they're saying.

Q. Right. And this was either you or your patent lawyer that wrote this --

A. Right.

Q. -- right?

A. Yes.

Q. And what's being communicated to the reader, and the

EXHIBIT B

reader is going to be the examiner, is that you can look at this prior art reference, but what it teaches is that to practice this with the channels it has to be greater than 45 microns; that's what you reasonably understand from reading these words, don't you?

A. Right. You know, I haven't read this patent, but evidently, you know, it's with that type of adhesive system. It seems to be an adhesive system that requires heat in order to tackify it. It appears as though it's not a room temperature pressure sensitive adhesive.

Q. Right. But how about the answer to my question. Isn't it a fair understanding reading these words that what's being communicated to the reader is that you can look to this prior art reference generally for the issue about a topography to assist with air bleed, but that reference only teaches that it will work above 45 microns in height; that's what this is saying, isn't it?

A. Okay. Yes, within this adhesive system, yes.

Q. Now, let's go back to Exhibit 512 a minute and let's look at a particular example that is provided in this --

A. Where are you at, sir?

Q. I am now on, I believe, the fourth page where it shows Table 2 and see where it says --

MR. DORMAN: Let's blow up example 2, just the language. Forget about the table for a moment. We'll get

there in a moment, but example 2.

BY MR. DORMAN:

Q. Read along with me. It says, With a fixed pitch DL of 4 centimeters, five different recess depths R of 20 microns, 40 microns, 60 microns, 80, and 100, four different widths of 100 microns, 200 microns, 500 microns, and 1,000 microns for each of said depths totaling 20 combinations and three different cross sectional shapes of recesses, arc, triangle, and square, 60 release sheets having parallel recesses were prepared. The recessed surfaces of these release sheets were coated with the adhesive agent used in experiment example 1. The adhesive layers were applied to the backs of adhesive sheets for transfer to prepare 60 different air impermeable heat and pressure sensitive adhesive sheets having parallel ridges on their adhesive layer surfaces. They were bonded under heat and pressure to objects, the results of observation being shown in Table 2.

Now, Table 2 is what appears below. Do you see that?

A. Yes.

Q. Now, there are in --

MR. DORMAN: If you can just blow up a portion of it so that we can talk about it.

BY MR. DORMAN:

Q. There are marks here -- the way the table is, there's a

height and these are the heights of the channels that are created in the adhesive, correct?
A. Correct.
Q. Okay. And the width is the width of the channels, correct?
A. Correct.
Q. And then it says Xs, Xs, and it has Os and it has triangles. Let's go back to Table 1 in this patent, at the bottom of Table 1 at the notes section that describes what these mean. These are -- X means large air bubbles.
MR. DORMAN: No, let's just keep that up for a minute. Let's not get too fancy.
BY MR. DORMAN:
Q. X is large air bubbles, the triangle is trace amount of air bubbles, and the 0 means completely degassed. Do you see that?
A. Yes.
Q. So you understand if a 0 -- the test result is that there's complete degassing, it got all of the air bubbles out if a 0 would appear in the table, correct?
A. Um-hmm.
Q. You understand that, right, sir?
A. Yes, I do.
Q. Let's go back to Table 2 now that we know the legend and the notes. Now let's look at the heights for 20 microns and

40 microns. Now, you'll agree with me that 20 and 40 are both less than, not more than, 45?
A. Yes.
Q. And do you see with respect to the 40 micron heights there are two references in the square cross section shape on the far right where it successfully degassed the adhesive liner; do you see that?
A. Yes, I see it.
Q. Now, doesn't this prior art reference show you, and this is back in 1974, that there are channels in an adhesive that are within the range of 3 to 45 microns that are successfully degassing a laminated adhesive strip?
A. That's what it seems to indicate. I haven't read the entire document, but that's what it seems to indicate.
Q. Thank you. I would like to go back, sir, to that demonstrative that was shown you yesterday, I think PX1. Now, would you look at --
MR. DORMAN: Can you -- we are having trouble finding it here. Just the first Controltac section, would you make that larger so everyone can easily read it.
BY MR. DORMAN:
Q. Now, we talked about this yesterday, the Danielson patent. Do you recall that?
A. Yes.
Q. You were aware of the Danielson patent in connection