THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

**AVERY DENNISON CORPORATION'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT AS A MATTER OF LAW AND FOR A NEW TRIAL ON ISSUES OF INVALIDITY**

**TABLE OF CONTENTS**

**(Page)**


I. INTRODUCTION .......... 1

II. CLAIMS 1-5 OF THE ‘930 PATENT ARE ANTICIPATED BY THE SAWKA PRIOR ART PATENT .......... 2

A. Sawka Discloses an Array of Depressions .......... 2

B. Sawka Discloses That the First Embossed Pattern is in the Second Embossed Pattern .......... 3

C. The Evidence Establishes that Sawka Discloses Lands .......... 4

D. Sawka Discloses the Required Height of Ridges Over Lands .......... 5

E. Claims 1-5 of the ‘930 Would be Infringed by Sawka if it Were Later in Time .......... 6

III. CLAIMS 1-5 OF THE ‘930 PATENT ARE OBVIOUS .......... 7

A. A Person of Ordinary Skill in the Art Would Have Been Motivated to Combine Calhoun with Unitika or Matsui .......... 7

B. There Is No Evidence of a Long-Felt Need for a Film That is Capable of Both Repositionability and Air Bleed .......... 10

C. 3M Did Not Present Any Legally Sufficient Evidence of Secondary Considerations of Non-Obviousness .......... 11

1. 3M Has Not Demonstrated Commercial Success or the Requisite Nexus .......... 12

2. 3M Has Not Demonstrated a Long-Felt, but Unmet Need .......... 14

3. 3M Has Not Pointed to Any Evidence of Copying or Failure of Others .......... 15

IV. CONCLUSION .......... 16

# TABLE OF AUTHORITIES

**(Page)**

## Cases

*Advanced Display Systems, Inc. v. Kent State Univ.*
212 F.3d 1272 (Fed.Cir. 2000) .......... 14

*Akzo N.V. v. U.S. Int'l Trade Comm'n*
808 F.2d 1471 (Fed. Cir. 1986) .......... 5

*Atlas Powder Co. v. IRECO Inc.*
190 F.3d 1342 (Fed. Cir. 1999) .......... 6

*Celeritas Techs. v. Rockwell Int'l Corp.*
150 F.3d 1354 (Fed. Cir. 1998) .......... 3

*Custom Accessories, Inc. v. Jeffrey-Allen Industries, Inc.*
807 F.2d 955 (Fed. Cir. 1986) .......... 8

*Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*
851 F.2d 1387 (Fed. Cir. 1988) .......... 13

*Hewlett-Packard Co. v. Mustak Sys., Inc.*
340 F.3d 1314 (Fed. Cir. 2003) .......... 3

*In re Bond*
910 F.2d 831 (Fed. Cir. 1990) .......... 4

*In re Clay*
966 F.2d 656 (Fed. Cir. 1992) .......... 9

*In re GPAC*
57 F.3d 1573 (Fed. Cir. 1995) .......... 9

*In re Huang*
100 F.3d 135 (Fed. Cir. 1996) .......... 7

*J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*
106 F.3d 1563 (Fed. Cir. 1997) .......... 12

*Merck & Co., Inc. v. Teva Pharms. USA, Inc.*
395 F.3d 1364 (Fed. Cir. 2005) .......... 10

*Newell Companies, Inc. v. Kenney Mfg. Co.*
864 F.3d 757 (Fed.Cir. 1988) .......... 14

**TABLE OF AUTHORITIES (cont'd)**

**(Page)**

*Nicholas v. Perricone, M.D.*
432 F.3d 1368 (Fed. Cir. 2005) .......... 3

*Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*
707 F.2d 1376 (Fed. Cir. 1983) .......... 14

*Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*
411 F.3d 1332 (Fed. Cir. 2005) .......... 9

*Richdel, Inc. v. Sunspool Corp.*
714 F.2d 1573 (Fed. Cir. 1983) .......... 14

*Ruiz v. A.B. Chance Co.*
234 F.3d 654 (Fed. Cir. 2000) .......... 12

*Schering Corp. v. Geneva Pharms, Inc.*
339 F.3d 1373 (Fed. Cir. 2003) .......... 6

*Simmons Fastener Corp. v. Ill. Tool Works, Inc.*,
739 F.2d 1573 (Fed. Cir. 1984) .......... 12

*Sjoland v. Musland*
847 F.2d 1573 (Fed. Cir. 1988) .......... 14

*Stratoflex, Inc. v. Aeroquip Corp.* 713 F.2d 1530 (Fed. Cir. 1983) .......... 11

## I. INTRODUCTION

3M has not shown that the jury's finding that claims 1-5 of the '930 patent are valid is supported by substantial evidence. Instead, 3M ignores much of the evidence of record and the case law cited by Avery in its motion and mischaracterizes the testimony in an effort to convince the Court that the jury acted reasonably. It did not.

The evidence at trial establishes that 3M conceived of the carrier web disclosed in the '930 patent by merely embossing the carrier web for its Controltac Plus film with ridges to permit air egress between the Controltac Plus film and the substrate to which it was adhered. There was nothing novel or inventive about what 3M did. 3M's Controltac Plus film (disclosed in the Calhoun '790 patent) and the act of embossing a carrier web to permit air egress in a film (disclosed in Unitika and Matsui) were both known in the prior art. 3M does not dispute that, when combined, these references meet all of the limitations of claims 1-5 of the '930 patent. Instead, 3M contends that there was no motivation for one of ordinary skill in the art to combine these references. This is not the case; the '930 patent itself defines the problem to be solved as air egress and the Unitika and Matsui references explicitly state that their purpose was to solve the air egress problem.

From a structural standpoint, when the patent examiner allowed the '930 patent to issue, he confirmed that all of the claimed features, except for the ridge heights of between 3-45 µm, were known in the prior art. As the Examiner expressed, the only point of novelty in the allowed patent claims was the recited ridge heights. Yet such ridge heights were known, both to 3M's inventors and throughout the prior art. This fact alone makes the jury's rejection of Avery invalidity defense unreasonable, and 3M utterly ignores the Examiner's statement in its opposition.

Finally, the recited ridge heights, and all of the other features of claims 1-5, were disclosed in the Sawka reference, which the examiner did not have before him when he examined the '930 patent application. 3M's arguments that Sawka lacked certain features are inconsistent with Sawka itself and with the testimony of Avery's expert. 3M

did not offer any expert testimony of its own.

## II. CLAIMS 1-5 OF THE '930 PATENT ARE ANTICIPATED BY THE SAWKA PRIOR ART PATENT

### A. Sawka Discloses an Array of Depressions

3M contends that Sawka does not disclose the claim limitation of a first embossed pattern which "forms an array of depressions." The Court construed the claim term "array" to mean "an orderly arrangement." According to 3M, Avery's only argument that Sawka discloses an array of depressions is the statement in Sawka that the pattern of depressions "may have virtually any shape or design." (Ex. 85, Col. 4, ll. 14-15). 3M then argues that an "array of depressions" would not have been inherent to one of ordinary skill in the art from Sawka's statement that the pattern of depressions "may have virtually any shape or design."

This is *not* Avery's argument. Avery contends that the statement in Sawka that "the actual embossed pattern may have virtually any shape or design, including a pebbled, sandblasted, brushed, grained, simulated leather, parchment paper appearance, etc." *explicitly* discloses arrays of depressions (i.e., depressions in an orderly arrangement). In its opening brief, Avery demonstrated that Figure 1 of the Sawka patent discloses depressions arranged in an array and interspersed among the ridges. Avery also demonstrated that the jury's finding that Avery's liner, which *randomly* looses over 10% of its polyurethane dots, infringes means that the jury found that the Avery liner has an orderly arrangement, and thus has an "array of depressions." This jury finding must likewise mean that the disclosure of Sawka, which states that "the actual embossed pattern may have virtually any shape or design, including a pebbled, sandblasted, brushed, grained . . . appearance," *explicitly* discloses depressions having an orderly arrangement, and thus Sawka discloses an "array of depressions." 3M does *not* addresses either of these arguments in its opposition.

3M further ignores Dr. McHugh's testimony that a "pebbled appearance" is an

array when made by an embossing tool, which establishes explicit disclosure of an array in Sawka. (Tr. 1267:15-23 (McHugh)).

3M's contention that the portion of the Sawka specification which states that the embossed pattern "may have virtually any shape or design" does not inherently disclose an array of depressions is incorrect. 3M contends that this phrase can encompass both: (1) an orderly arrangement (which would be the disclosure of an array of depressions); and (2) a non-orderly arrangement (which would not be the disclosure of an array of depressions). Thus, according to 3M, because Sawka discloses that, in some instances, the embossed pattern may be in a non-orderly array, Sawka does not *inherently* disclose orderly arrays for the purpose of proving anticipation. Thus, Sawka *explicitly* discloses depressions having an orderly arrangement. "The anticipation analysis asks solely whether the prior art reference discloses and enables the claimed invention, and not how the prior art characterizes that disclosure or whether alternatives are disclosed." *Hewlett-Packard Co. v. Mustak Sys., Inc.*, 340 F.3d 1314, 1324, n 6 (Fed. Cir. 2003), *citing*, *Celeritas Techs. v. Rockwell Int'l Corp.*, 150 F.3d 1354, 1361 (Fed. Cir. 1998); *See also*, *Nicholas v. Perricone, M.D.*, 432 F.3d 1368, 1376 (Fed. Cir. 2005) ("This court rejects the notion that one of these ingredients cannot anticipate because it appears without special emphasis in a longer list. To the contrary, the disclosure is prior art to the extent of its enabling disclosure.");

### B. Sawka Discloses That the First Embossed Pattern is in the Second Embossed Pattern

3M contends that Sawka does not disclose that the first embossed pattern is in the second embossed pattern. The Court did not construe this phrase from the claims of the '930 patent. According to 3M, Avery relies on a passage from Col. 4, ll. 20-33 of Sawka as support. Avery, however, never relied on this passage from Sawka; Avery relies on Sawka's Example 3 (Col. 15, ll. 51-59).

3M attempts to confuse Sawka's Example 3 with the passage of Sawka at Col. 4,

ll. 20-33. Sawka's use of the term "may" throughout Col. 4, ll. 20-33 demonstrates that this embodiment is not necessary to the practice of Sawka; replacing one embossed pattern with another embossed pattern was merely one of the many embodiments that Sawka disclosed. Sawka's Example 3 is a different embodiment.

In Example 3, the second embossed pattern did not replace the first embossed pattern. Sawka discloses that the *entire* film was embossed with both the first and second embossed patterns, not just a portion of the film: "[t]he embossed film [not a portion of the film] was then high frequency re-embossed as described above to provide the film [not a portion of the film] with simultaneous first and second embossed patterns that were different." (Ex. 85, at Col. 15, ll. 56-60). If, in Example 3, the second pattern had replaced the first pattern, then presumably Sawka would have said that the resulting film had *only* the second embossed pattern. Instead, Sawka said that, following the second embossing, *both* the first and second embossed patterns existed *simultaneously* in the resulting film and stated that the first and second embossed patterns were different.

Further, Sawka defined "embossed" to mean "that base layer 12 *permanently retains* an embossed pattern at temperatures equal to or above that to which the film 10 may be exposed during use." (Ex. 85, at Col. 3, ll. 63-66; emphasis added). If the film created in Example 3 is described by Sawka as having "simultaneous first and second *embossed* patterns that were different," then, by definition, the first embossed (permanently retained) pattern is in the second embossed (permanently retained) pattern.

**C. The Evidence Establishes that Sawka Discloses Lands**

3M contends that Sawka does not disclose "lands," because Sawka does not use the term "lands" in his patent. Although Sawka does not use the term "lands," Sawka clearly discloses "lands," as that term was construed by the Court.

Anticipation is not an "ipsissimis verbis" test, and therefore a prior art patent may anticipate a later-filed patent even though the prior art patent does not use the terminology of the later-filed patent. *In re Bond*, 910 F.2d 831, 832 (Fed. Cir. 1990),

*citing*, *Akzo N.V. v. U.S. Int'l Trade Comm'n*, 808 F.2d 1471, 1479 n 11 (Fed. Cir. 1986). Thus, the fact that Sawka does not use the word "lands" in his patent is irrelevant to proving anticipation.

3M ignores the Court's construction for the term "lands." The Court defined "lands" to mean "areas of the surface of the carrier web between the ridges." 3M does not dispute that Sawka discloses a surface with ridges and areas between the ridges. Indeed, figure 1 of the Sawka patent clearly discloses areas of the surface of the film between ridges, and therefore Figure 1 explicitly discloses "lands" as the Court construed that term.

There is no testimony or other evidence to dispute or rebut the fact that Figure 1 explicitly discloses "lands," and 3M supplies none. Instead, 3M contends that no "lands" are present in Sawka, because Avery drew an imaginary blue line drawn on Figure 1. Avery does not rely on the blue line as evidence of lands; the blue line merely *demonstrated* for the jury the location of a land portion that was explicitly disclosed in Sawka. 3M further contends that Avery cannot rely on Dr. Cavaleri's testimony regarding lands. 3M, however, does not contend, nor could it contend, that Dr. Cavaleri's testimony demonstrates that there are no lands disclosed in Sawka.

**D. Sawka Discloses the Required Height of Ridges Over Lands**

3M contends that Sawka does not disclose the claim limitation that the height of the ridges over the lands is between about 3 to about 45 µm. 3M contends that, because Sawka does not disclose "lands," Sawka cannot disclose that the height of the ridges over the lands is between about 3 to 45 µm. 3M therefore contends that Sawka only discloses the height of ridges over depressions.

Sawka discloses that the base layer thickness for motor vehicle applications is between 25 to 350 µm and discloses that the depth of the embossed pattern preferably represents no more than about one-third of the total thickness of base layer 12. (Ex. 85, Col. 4, ll. 6-10; Col. 5, ll. 14-16). Dr. McHugh testified that the range of depths, even

measuring from the top of a ridge to the bottom of a depression, can fall within the 3 to 45 micron range recited in the claims of the ‘930 patent. (Tr. 1162:7-21 (McHugh)). 3M did not offer any testimony to rebut Dr. McHugh.

3M contends that, even if Sawka discloses an embodiment that meets the height limitation of the ‘930 patent claims, this disclosure would fail the test for proving anticipation by inherency. Again, 3M mischaracterizes the test for anticipation. Sawka discloses and enables the claimed invention; the claimed invention is anticipated. *See, Helwett-Packard*, 340 F.3d at 1324, n 6; *Nicholas*, 432 F.3d at 1376.

### E. Claims 1-5 of the ‘930 Would be Infringed by Sawka if it Were Later in Time

Avery believes that the record establishes, by clear and convincing evidence, that claims 1-5 of the ‘930 patent are anticipated by the Sawka patent. The Court may confirm this fact by applying the patent law principle: “that which would literally infringe if later in time anticipates if earlier.” *Schering Corp. v. Geneva Pharms., Inc.*, 339 F.3d 1373, 1380 (Fed. Cir. 2003). “If granting patent protection on the disputed claim would allow the patentee to exclude the public from practicing the prior art, then that claim is anticipated.” *Id., quoting*, *Atlas Powder Co. v. IRECO Inc.*, 190 F.3d 1342, 1346 (Fed. Cir. 1999).

In this case, if a carrier web were made in accordance with certain embodiments disclosed in Sawka discussed above, that carrier web would infringe claims 1-5 of the ‘930 patent. All unclaimed material described in Sawka is in the public domain, which includes the disclosures described here. 3M should not be permitted, through claims 1-5 of the ‘930 patent, to take these embodiments from the public domain and prevent the public from practicing what is freely available to all.

## III. CLAIMS 1-5 OF THE '930 PATENT ARE OBVIOUS

### A. A Person of Ordinary Skill in the Art Would Have Been Motivated to Combine Calhoun with Unitika or Matsui

3M does not dispute that combining the Calhoun '790 patent with either the Unitika or Matsui references results in a teaching of carrier webs which meet every limitation of claims 1-5 of the '930. This means that the Court must find that Avery has met its burden of proving by clear and convincing evidence that the combination of these references results in the carrier webs of claims 1-5.

3M also ignores the Examiner's reasons for allowance. In allowing the '930 patent to issue, the Examiner found that the prior art available to the Examiner disclosed every element of claims 1-5 of the '930 patent except for the ridge heights of between 3-45 µm. Both Unitika and Matsui references, which the Examiner did not consider when examining the '930 patent application, disclosed ridge heights of between 3-45 µm. These references which Avery introduced at trial, therefore supplied the information which the Examiner found to be missing from the prior art. Had the Examiner considered either of these references, he would certainly not have allowed claims 1-5 to issue. The jury's finding on validity therefore cannot be reconciled with these undisputed facts.

Instead of addressing any missing elements in the combination of Calhoun with Unitika or Matsui or addressing the Examiner's findings, 3M contends that Avery has not proven that a motivation to combine these references exists. The parties agree that the motivation to combine references may come from the nature of the problem to be solved and that the problem to be solved may be defined directly by the patent-in-suit. (Doc. 361 at 20: "Avery correctly states that motivation to combine references may come from the 'nature of the problem to be solved,' (Doc. No. 352 at 23 (quoting *Ruiz*, 234 F.3d at 665)), and 'the problem to be solved may be defined directly by the patent-in-suit.' (*Id.* (citing *In re Huang*, 100 F.3d 135, 139 n. 5 (Fed. Cir. 1996))").

3M mischaracterizes the problem to be solved that is defined directly by the patent-in-suit as merely "making graphic films easier to apply." The '930 patent defines

a much more specific problem, i.e., making durable films having a pressure sensitive adhesive layer and displaying image graphics easier to apply to a substrate by allowing for the removal of trapped air between the film and the substrate, without having to re-apply or perforate the film. (‘930 patent, Col. 1, 11.9-31).

3M contends that Avery finds the motivation to combine these references solely in the problem’s *solution* as taught in the ‘930 patent, i.e., that Avery improperly uses hindsight to find the motivation to combine. This is not so. This portion of the ‘930 patent (from the section entitled “Background of the Invention”) defines the *problem* (air removal in films having a pressure sensitive adhesive, without having to re-apply or perforate the film), but does *not* provide the *solution* to the problem (embossed ridges for air egress).

3M contends that Dr. McHugh’s testimony (Tr. 1146:2-10) demonstrates that Dr. McHugh looked to the ‘930 patent itself to find the motivation to combine references. Dr. McHugh merely stated that he looked to the “Background Section” of the ‘930 patent and that he found in this section reference to the Calhoun ‘790 patent. The Calhoun ‘790 patent is prior art to the ‘930 patent and therefore it is presumed to have been available to the hypothetical person of ordinary skill in the art to whom the issue of obviousness is directed. *Custom Accessories, Inc. v. Jeffrey-Allen Industries, Inc.*, 807 F.2d 955, 962 (Fed. Cir. 1986) (The hypothetical person of ordinary skill in the art is “presumed to know the relevant prior art.”)

One of ordinary skill in the art would have been motivated to select the film disclosed in the Calhoun ‘790 patent to solve the air egress problem described in the ‘930 patent, because the film of the Calhoun ‘790 patent is the type of film described in the ‘930 patent as suffering from the air egress problem. The prior art Calhoun ‘790 patent discloses a durable film having a pressure sensitive adhesive which is adhered to a substrate and which displays image graphics. (‘790 Patent, Col. 5, ll. 19-40). The film of the ‘790 patent also has surface features, i.e., microspheres, used for repositionability. In

3M's U.S. Patent No. 6,197,397, which the '930 incorporates by reference, the patentees described adhesive problems which occur when the space between the microspheres is used for air egress. ('397 patent, Col. 2, 1l. 65 – Col. 3, 1l. 6).

One of ordinary skill in the art would also have been motivated to select the Unitika and Matsui references, because it is undisputed that each of these prior art references specifically address the air egress problem described by the '930 patent. *See*, *In re GPAC*, 57 F.3d 1573, 1578 (Fed. Cir. 1995), *citing*, *In re Clay*, 966 F.2d 656, 658 (Fed. Cir. 1992) ("If a reference disclosure relates to the same problem as that addressed by the claimed invention, 'that fact supports the use of that reference in an obviousness rejection. An inventor may well have been motivated to consider the reference when making his invention.'")

3M also attempts to distinguish Mr. Meixner's testimony that it was no secret and obvious to anybody that air could be removed from the Controltac Plus liner that had depressions filled with glass beads if the Controltac Plus liner were embossed with ridges. (Tr. 483:9-17 (Meixner)). 3M contends that Mr. Meixner's testimony only establishes that he knew that if he followed Dr. Calhoun's instructions, he could make a liner that would allow repositionability and air egress. (Doc. 361 at 21 (citing Tr. 482:1-483:17.)) This is not Mr. Meixner's testimony; Mr. Meixner makes no mention of Dr. Calhoun. Even if Mr. Meixner had followed Dr. Calhoun's instructions, he nevertheless testified that he knew perfectly well (as did others at 3M knowledgeable in the field), that embossing a Controltac Plus liner with ridges would create air egress channels in the adhesive, and doing so for the removal of air bubbles in a film was, as he admitted "pretty obvious." Mr. Meixner's testimony establishes that the motivation to modify the Controltac Plus liner, as shown in the Calhoun '790 patent, with ridges for air egress was within the knowledge of one of ordinary skill in the art. *See*, *Princeton Biochemicals, Inc. v. Beckman Coulter, Inc.*, 411 F.3d 1332, 1338 (Fed. Cir. 2005) (finding that unrebutted testimony that the claimed combination was known by "everybody" was

sufficient evidence of motivation.); *Merck & Co., Inc. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1375 (Fed. Cir. 2005) (finding that motivation to combine existed where "Merck's own inventors admit the difference in dosing is obvious.")

3M does not address, let alone distinguish, any of the cases which Avery cited in its opening brief which establish that there was a motivation for one of ordinary skill in the art in December 1996 to combine the Calhoun '790 patent with the Unitika and Matsui references to arrive at the carrier webs of claims 1-5 of the '930 patent.

### B. There Is No Evidence of a Long-Felt Need for a Film That is Capable of Both Repositionability and Air Bleed

3M attempts to demonstrate that Avery's evidence of motivation to combine actually demonstrates non-obviousness, because 3M contends that it solved a long-felt need for films capable of both repositionability and air bleed. 3M failed to cite any evidence of record which establishes that there was a long-felt need for films capable of both repositionability and air bleed, because there is none.

3M contends that Mr. Meixner testified that "no one before Dr. Calhoun had been capable of obtaining both repositionability and air bleed, despite the fact that that the need to solve this problem was known and longstanding." (Doc 361 at 21 (citing Tr. 456:3-458:18) (Meixner)). Nothing in Mr. Meixner's, or any testimony or other evidence in this case, establishes that obtaining *both* repositionability and air bleed was a known and longstanding problem. At most, Mr. Meixner's testimony establishes, consistent with Avery's contentions, that air bleed *alone* was the problem to be solved. (Tr. 457:6-12 and 458:6-11 (Meixner)).

3M contends that Dr. McHugh testified that the '930 patent met a long-felt need by combining air bleed and repositionability. Dr. McHugh did *not* testify that there was a long-felt need for the combination of air bleed and repositionability. 3M relies on the *question* posed to Dr. McHugh, but Dr. McHugh did not testify that there was a long-felt need. 3M's counsel's question is *not* evidence – the Court instructed the jury that

counsel's questions to the witnesses are not evidence. (See, Doc. 331 No. 5).

In arguing that a "long felt need" existed, 3M ignores the testimony of its own marketing manager, Mr. Charles Calisto. Mr. Calisto's testimony establishes that there was *no* long-felt need in the market for a film capable of repositionability and air bleed. He testified on direct examination that the market did not recognize any problems, let alone air entrapment problems, with 3M's Controltac Plus product and testified that *no* demand existed for a product capable of both repositionability and air bleed *until* 3M's marketing department created a new market – called short-term advertising – to use such films. (Tr. 624:4 – 625:6 (Calisto)).

### C. 3M Did Not Present Any Legally Sufficient Evidence of Secondary Considerations of Non-Obviousness

3M contends that Dr. McHugh's failure to consider any secondary considerations of non-obviousness means that the jury was free to reject Dr. McHugh's opinion that claims 1-5 of the '930 patent are obvious. Dr. McHugh correctly reached his opinion of non-obviousness without opining on secondary considerations of non-obviousness.[1] 3M offered no expert testimony of its own that claims 1-5 of the '930 patent were not obvious.

The rule that a court must consider evidence of secondary considerations of non-obvious arises *only* when such evidence is actually present. *Stratoflex, Inc. v. Aeroquip Corp.*, 713 F.2d 1530, 1538 (Fed. Cir. 1983) ("Thus evidence rising out of the so-called 'secondary considerations' must always *when present* be considered en route to a determination of obviousness.") Here, the parties are in agreement that it is not Avery's burden to come forward with evidence of secondary considerations; it is 3M's burden, as the patentee, to come forward with this evidence. Moreover, evidence of the considerations is not enough. For any purported evidence of secondary considerations to

[1] 3M short-cites Dr. McHugh's testimony regarding why he did not consider the secondary considerations of non-obviousness. Dr. McHugh stated that issues, such as commercial success, are outside of his area of expertise (Tr. 1101:2-6 (McHugh)).

be given any weight, 3M must prove that a nexus exists "between the merits of the claimed invention and evidence of secondary considerations." *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 668 (Fed. Cir. 2000), *quoting*, *Simmons Fastener Corp. v. Ill. Tool Works, Inc.*, 739 F.2d 1573, 1575 (Fed. Cir. 1984).

In its opposition, 3M contends that there was "unrebutted evidence of commercial success, long-felt need, copying and failure of others to make the patented invention." (Doc. 361 at 23-24). 3M, however, has not met its burden of proving the existence of any secondary considerations of non-obviousness for two reasons: (1) 3M did not present any evidence of copying or failure by others; and (2) 3M's purported evidence of commercial success and long-felt need lacked the required nexus.

### 1. 3M Has Not Demonstrated Commercial Success or the Requisite Nexus

The evidence relied on by 3M does not demonstrate commercial success, and, even if 3M has demonstrated commercial success, 3M has not proven that a nexus exists between the merits of the claimed carrier webs and the purported evidence of commercial success.

3M points to Mr. Calisto's testimony at Tr. 639:13-640:18 as proof of commercial success. However, Mr. Calisto's testimony establishes that, initially, 3M did not make many sales, but following 3M's marketing, 3M made sales to Ryder, Polaris, Harley-Davidson, and others. This testimony does not establish commercial success, because 3M offered no evidence of the volume of these sales or evidence that these sales were significant in any relevant market. *J.T. Eaton & Co. v. Atlantic Paste & Glue Co.*, 106 F.3d 1563, 1571 (Fed. Cir. 1997) (commercial success is "usually shown by significant sales in a relevant market.")

If anything, Mr. Calisto's testimony establishes that any alleged commercial success was not due to the product, but it was due to 3M's marketing ability. Mr. Calisto states that, initially, there "wasn't a lot of sales activity." (Tr. 639:15-17 (Calisto)).

Clearly, there was no "long-felt need" for this product. However, after 3M *marketed* the product in a "showdown," 3M was able to create awareness, interest, trial use and then reuse: "Well, with that showdown, we really proved and created the awareness, the interest and the trial, and the use and reuse really started to take place." (Tr. 640:10-12 (Calisto)). Mr. Calisto's testimony alone rebuts any proof of commercial success. *See, Demaco Corp. v. F. Von Langsdorff Licensing Ltd.*, 851 F.2d 1387, 1393 (Fed. Cir. 1988).

Further, 3M failed to show that its Comply product (the alleged commercial embodiment of its invention) is coextensive with the structure of the carrier web recited in claim 1. Without such evidence, no nexus between the claimed carrier webs and any possible commercial success can exist. *Demaco Corp.*, 851 F.2d at 1392 ("When the thing that is commercially successful is not coextensive with the patented invention -- for example, if the patented invention is only a component of a commercially successful machine or process -- the patentee must show prima facie a legally sufficient relationship between that which is patented and that which is sold."). While 3M argues it offered such evidence (Doc. 361 at 25 (citing Tr. 239:4-9; 632:13-20; 639:13-640:18), the testimony referenced does not come close to addressing this issue. Similarly, 3M's reliance on the Tr. 631:4-632:20 (Calisto); 635:16-23 (Calisto); and 639:13-640:18 (Calisto) as evidence that Comply is commercially successful because of the air bleed property is entirely misplaced, because *air bleed is not even mentioned in any of this testimony*.

3M's Comply product is a graphics film having clumps of glass beads in the adhesive which are used for repositionability. Nothing in claims 1-5 of the '930 patent contemplates that the depressions of the carrier web are filled with glass beads or that the film has glass beads used for repositionability. Glass beads are therefore an *unclaimed feature* of 3M's Comply product. Because 3M contends that the commercial success of its Comply product is due to the repositionability feature, and because repositionability is

achieved with an *unclaimed feature* of the Comply product, 3M cannot contend that a legally sufficient nexus exists between the claimed carrier web and any purported commercial success. *Sjoland v. Musland*, 847 F.2d 1573, 1582 (Fed. Cir. 1988).

3M cannot establish a legally sufficient nexus for another reason. The two features of the Comply product on which 3M relies – glass beads for repositionability and grooves for air bleed – were readily available in the prior art. 3M cannot show that any commercial success for its Comply product was due to features that were not readily available in the prior art. *J.T. Eaton*, 106 F.3d at 1571, *citing, Richdel, Inc. v. Sunspool Corp.*, 714 F.2d 1573, 1580 (Fed. Cir. 1983).

Lastly, even if the Court agrees with 3M that it has proven commercial success for its Comply product and that 3M has proven a legally sufficient nexus between the claimed carrier web and the commercial success, this still does not require a finding of non-obviousness, because there is strong evidence of obviousness over the Calhoun '790 patent and the Unitika or Matsui references. *See, Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.3d 757, 768 (Fed.Cir. 1988) ("In this case, as well, although the record shows a highly successful product, the record also establishes such a strong case of obviousness based on admissions and the teachings of the prior art. . .")

**2. 3M Has Not Demonstrated a Long-Felt, but Unmet Need**

In contending that there existed a legally relevant "long-felt" need which demonstrates non-obviousness, 3M fails to address, let alone distinguish, the case law cited by Avery which requires that 3M provide evidence of "failed attempts by others" to meet the unmet need and requires that the need be both recognized and persistent. *See, Advanced Display Systems, Inc. v. Kent State Univ.*, 212 F.3d 1272, 1285-86 (Fed.Cir. 2000) and *Orthopedic Equip. Co. v. All Orthopedic Appliances, Inc.*, 707 F.2d 1376, 1382 (Fed. Cir. 1983). 3M also does not address the fact that even its own witness, Mr. Meixner, admitted that the solution for removing air – embossing ridges – had been known by persons skilled in the art for decades. (Tr. 481:14-23 (Meixner)). Avery did

not need to present its own evidence at trial of the absence of a long-felt need, because 3M's witnesses rebutted any evidence of long-felt need themselves.

3M's reliance on the testimony of Mr. Calisto at Tr. 624:22 – 625:6 as proof of long-felt need is misplaced. 3M does not cite Mr. Calisto's complete answer. 3M's counsel asked Mr. Calisto whether he had heard about any problems with Controltac Plus and specifically the air entrapment problem and he responded: "Well, we didn't hear about an air entrapment problem from anybody per se." (Tr. 624:4-12 (Calisto)). If the consumers believed that there was no air entrapment problem, then there was no long-felt need for a solution.

**3. 3M Has Not Pointed to Any Evidence of Copying or Failure of Others**

3M contends in its opposition that there was evidence at trial of copying by Avery and failures by others to make the patented invention. (Doc. 361, at 23-24). 3M does not cite to any evidence of record of copying by Avery or failures by other to make the patented invention. Therefore, 3M has not met its burden of proving these secondary considerations.

## IV. CONCLUSION

For the foregoing reasons, Avery respectfully asks that the Court grant Avery judgment as a matter of law or, alternatively, a new trial, on issues of anticipation and obviousness.

DATED: March 17, 2006

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
601 South Figueroa Street, Suite 3300
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile