FISH & RICHARDSON P.C., P.A.

3300 Dain Rauscher Plaza
60 South Sixth Street
Minneapolis, Minnesota
55402

Telephone
612 335-5070

Facsimile
612 288-9696

Web Site
www.fr.com

Frederick P. Fish
1855-1930

W.K. Richardson
1859-1951

BOSTON
DALLAS
DELAWARE
NEW YORK
SAN DIEGO
SILICON VALLEY
TWIN CITIES
WASHINGTON, DC

March 23, 2006

**VIA ECF AND MESSENGER**

The Honorable John R. Tunheim
United States District Court
for the District of Minnesota
U.S. Courthouse, Suite 13E
300 South 4th Street
Minneapolis, MN 55415

Re: *3M Innovative Properties Co., et al. v. Avery Dennison Corp.*
Civil Action No. 01-1781 JRT/FLN

Dear Judge Tunheim:

I write on behalf of 3M in response to Mr. Dorman's March 22, 2006 letter regarding the issue of whether Avery's distributors can continue to sell Avery's EZ Film product in inventory that Avery transferred to them in advance of the permanent injunction on March 17, 2006.

Rule 65(d) of the Federal Rules of Civil Procedure extends the scope of an injunction to the parties to the case, as well as "those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Thus, Avery cannot unilaterally narrow the scope of the injunction merely by asserting, as Mr. Dorman does in his letter, that Avery's distributors are not parties to the case. To the contrary, under longstanding precedent, the question is whether their actions to assist Avery in the distribution of its infringing EZ Film product constitute "active concert or participation" with Avery. *See Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945) (defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding). As a result, it is well within this Court's authority to clarify that its injunction extends to Avery's distributors who are aiding and abetting Avery in its efforts to avoid the impact of the injunction, as this Court and others have done in numerous cases that enjoined further infringement of intellectual property rights by the defendant's ***distributors***. *See, e.g., Ecolab, Inc. v. Gardner Mfg. Co.*, 2003 WL 1856434, at *2 (D. Minn. April 9, 2003) (enjoining distributors from selling devices that infringed the patent); *CSC Brands LP v. Herdez Corp.*, 191 F. Supp. 2d 1145, 1154 (E.D. Cal. 2001) (including distributors in the preliminary injunction); *CBS Inc. v. Primetime 24 Joint Venture*, 9 F. Supp. 2d 1333, 1346 (S.D. Fla. 1998) (holding that "PrimeTime 24's distributors are . . . 'persons in active concert or participation'" under Rule 65(d)); *Ivac Corp. v. Terumo Corp.*, 1990 WL 180201, at *3 (S.D. Cal.

April 10, 1989) (ordering distributors to return all infringing products to the adjudged infringer).

Regrettably, Avery has induced its distributors to act in active concert or participation with the "business as usual" strategy Avery has pursued since the jury verdict and final judgment in this case last December. During the intervening three months, Avery has had ample time to unload its inventory to these distributors for resale, in an effort to undermine the impending injunction. Avery has made no record whatsoever that it cannot ask for return of this inventory or otherwise require its distributors to stop further infringement of 3M's patent rights.[1] Having been adjudged an infringer, Avery should not be allowed to circumvent the Court's order so easily, simply by asserting that it has moved its infringing inventory to warehouses not owned by Avery.[2]

Indeed, Avery's actions since the final judgment was entered seem purposefully designed to make it as difficult as possible for 3M or this Court to ensure that Avery is complying with the injunction. For example, Avery's website still touts the infringing EZ Film, without any mention that it is no longer available, *see* http://www.averygraphics.com/pls/avery/avery_ext_products.family_detail?p_site_name=SIGNAGE&p_product_family_id=1037. Even worse, Avery plans to launch a new allegedly "redesigned" product under the exact same name as the enjoined product—"EZ Series Fleet Marking Film"—a tactic designed to mislead customers and make it as difficult as possible for the Court to police compliance with its injunction order.

In sum, 3M respectfully asks that Avery's tactics of obfuscation and "business as usual," which translate into further infringement of 3M's patent rights, be put to a stop. 3M asks that the Court clarify that the distributors to whom Avery transferred its infringing EZ Film inventory for resale since the jury verdict in order to beat the injunction are acting in active concert or participation with Avery, and thus any resale of such inventory by Avery's distributors would be in violation of the Court's March 17, 2006 Permanent Injunction.

---

[1] Avery's argument that 3M somehow agreed to a 20% royalty on the infringing inventory is a red herring. Once Avery's distributors return the inventory and Avery credits them for it, such inventory is no longer subject to the royalty. Contrary to Avery's cries that this will condemn the parties to accounting nightmares, excluding returned goods from the royalty base is a simple accounting issue that is commonplace in patent cases. Indeed, the sales figures that Avery has provided to 3M already include deductions for returns and rebates.

[2] Contrary to Avery's unsupported assertions, 3M has not threatened any Avery distributor with legal action. In fact, 3M has specifically informed the industry that the scope of the injunction is a matter of dispute between the parties that will need to be decided by the Court.

We thank the Court for its assistance in expeditiously resolving this dispute.

Sincerely,

s/John C. Adkisson

John C. Adkisson

JCA:
cc: Roderick G. Dorman (via ECF and facsimile)
David P. Pearson (via ECF and facsimile)