**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

3M INNOVATIVE PROPERTIES COMPANY, and MINNESOTA MINING AND MANUFACTURING COMPANY,

Plaintiffs,

v.

AVERY DENNISON CORPORATION,

Defendant.

Civil No. 01-1781 (JRT/FLN)

**MEMORANDUM OPINION AND ORDER**

Katherine A. Moerke, Jonathan E. Singer, and John C. Adkisson, **FISH & RICHARDSON PC, PA – MN**, 60 South Sixth Street, Suite 3300, Minneapolis, MN 55402; Juanita R. Brooks, **FISH & RICHARDSON - SAN DIEGO**, 12390 El Camino Real, San Diego, CA 92130; Kevin H. Rhodes, **3M COMPANY**, P.O. Box 33427, St. Paul, MN 55113-3427; for plaintiffs.

Lawrence M. Hadley and Roderick G. Dorman, **HENNIGAN BENNETT & DORMAN**, 601 Figueroa Street South, Suite 3300, Los Angeles, CA 90017; David P. Pearson, **WINTHROP & WEINSTINE, PA**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629; for defendant.

3M Innovative Properties Company and Minnesota Mining and Manufacturing Company (collectively "3M") brought this lawsuit against Avery-Dennison Corporation ("Avery"), alleging that Avery infringes claims 1 through 5 of 3M's U.S. Patent No. 5,897,930 ("the '930 patent") by making and selling its EZ Series Fleet Marketing Film.[1] On December 21, 2005, the jury rendered a verdict for 3M. Specifically, the jury found

[1] A more detailed factual discussion can be found at *3M Innovative Props. Co. v. Avery Dennison Corp.*, 185 F. Supp. 2d 1031 (D. Minn. 2002).

14

that Avery infringed the ’930 patent literally, under the doctrine of equivalents, and by inducing others to infringe. The jury rejected all of Avery’s invalidity defenses. Based on this verdict, the Court entered Judgment in favor of 3M on December 23, 2005. This matter is before the Court on Avery’s motions for judgment as a matter of law, or alternatively, for a new trial. For the reasons explained below, the Court denies the post-trial motions.

## ANALYSIS

### I. Standard Of Review

In considering a motion for judgment as a matter of law, the Court must view all evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party. *Wahpeton Canvas Co., Inc. v. Frontier, Inc.*, 870 F.2d 1546, 1551 (Fed. Cir. 1989) (applying Eighth Circuit law). The Court should refrain from weighing the evidence’s credibility or substituting its view for that of the jury. *Id.* A motion for judgment as a matter of law should generally be denied unless the Court, keeping all these principles in mind, concludes that judgment cannot be entered on the jury verdict. *Id.*

### II. Avery’s Motion For Judgment As A Matter Of Law Or, Alternatively, For A New Trial On Issues Of Infringement

Avery seeks judgment as a matter of law or for a new trial on the issue of infringement, claiming that 3M did not offer sufficient evidence at trial to justify the

jury's verdict of direct infringement, infringement under the doctrine of equivalents, and indirect infringement by inducing others to infringe.

**A. Direct Infringement**

Avery argues that not all of the claim limitations in the '930 patent are found in its EZ Film product. First, Avery argues that its product does not have "depressions" because the embedded dots in its product are flush with the surface. The Court construed the term "depressions" as "lower, sunken, or depressed areas of the carrier web." The Court also explained that depressions may be either empty or filled according to any number of processes or uses. At trial, 3M offered the testimony of Dr. A. Brent Strong. Strong testified that Avery's EZ Film contains filled depressions that are caused by embedding polyurethane dots in the carrier web. Strong analogized to a lakebed, explaining that a lakebed is a depression in the surface of the earth, whether or not that depression is filled. Avery insists that filled depressions must have at some point been empty. Neither logic nor this Court's claim construction requires depressions to have once been empty. The lakebed analogy remains helpful. Consider a glacial lake that is formed when a glacier pushes into the surface of the earth, and then melts. The glacier creates a depression that was never empty. Strong also testified that the polyurethane is not part of the liner, and the liner serves as the carrier web for both the polyurethane forms and the adhesive. The jury was reasonable in crediting the entirety of Strong's testimony.

Second, Avery argues that there is no "embossed pattern" of depressions in Avery's product. To begin, Avery asserts that the surface must have a difference in planar dimension of a type that a web or tooling could generate. Nothing in the definition of "embossed" requires that the depressions could have been formed with a web or tooling. Strong explicitly addressed this point in his testimony. According to the claim construction, "'embossed' means 'a topography on a web or on tooling having an effective three-dimensional pattern that generates a difference in surface planar dimension in the liner or the tooling.'" The Federal Circuit explicitly rejected the definition, "topography created on material by impressing a corresponding inverse topography on its surface," even though the adopted definition seems to conflict with the ordinary technical usage. *See 3M Innovative Props. Co. v. Avery Dennison Corp.*, 350 F.3d 1365, 1374 (Fed. Cir. 2003). Next, Avery argues that because each depression is irregular and random, the depressions cannot meet the definition of "pattern." The definition of pattern is provided in the '930 patent: "'Pattern' means any formation of embossings that can utilize any theory of geometry . . . ." 3M argued at trial that there could be a pattern of depressions even though each depression is unique – just like there can be a pattern of uniquely shaped snowflakes. The jury reasonably accepted this explanation.

Third, Avery insists that an embossed pattern requires more than depressions in an orderly arrangement. According to Avery, "array" refers to an orderly arrangement, and "pattern" refers to the shape of the depressions, which must utilize a theory of geometry. Avery argues that if "pattern" and "array" both referred to the arrangement of the surface

depressions on the web, the language would be redundant. *See Bancorp Servs., L.L.C. v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1373 (Fed. Cir. 2004) ("[T]he use of both terms in close proximity in the same claim gives rise to an inference that a different meaning should be assigned to each."). However, it is not unknown for different words to be used to express similar concepts, even though it may be poor drafting practice. *Id.* The Court is not persuaded by Avery's argument. The definition of pattern does not necessarily refer to the shape of the individual depression. Rather, the claim construction and the common usage of the word both lead to an interpretation that "pattern" is synonymous with "orderly arrangement."

At trial, Strong testified that each element of each of claims 1-5 of the '930 patent is present in Avery's EZ Film. The Court finds that Strong provided sufficient evidence for the jury to find direct infringement. Avery's motion for judgment as a matter of law or a new trial on this ground is therefore denied.

### B. Doctrine Of Equivalents

Avery argues that it is not liable under the doctrine of equivalents because there is no "first embossed pattern forming an array of depressions." At trial, Strong testified that this element is present in Avery's EZ Film under the doctrine of equivalents. The jury was perfectly reasonable in crediting this testimony. Avery also argues 3M's experts did not address the function-way-result test, but the function-way-result test is not the only way to prove liability under the doctrine of equivalents. The other way is the insubstantial difference test. *See, e.g., Lighting World, Inc. v. Birchwood Lighting, Inc.*,

382 F.3d 1354, 1357 (Fed. Cir. 2004). Strong testified that Avery's product achieves positionability in the same way as taught in the '930 patent.

The Court finds that Strong provided sufficient evidence for the jury to conclude that Avery's product infringed under the doctrine of equivalents. Avery's motion for judgment as a matter of law or a new trial on this ground is therefore denied.

### C. Indirect Infringement

Avery argues that no customer vicariously infringes 3M's patent because the customers discard the spent release liners and therefore do not use them. The jury could have reasonably concluded that the liner is used when the customer has peeled back part of the liner to apply the exposed film. 3M presented expert testimony from Charles Calisto, who testified that Avery distributes instructions to its customers directing them to separate the film from the release liner. The Court finds that 3M presented sufficient evidence for the jury to conclude that Avery induces its customers to infringe 3M's patent. Avery's motion for judgment as a matter of law or a new trial on this ground is therefore denied.

## III. Avery's Motion For New Trial On Issues Of Invalidity

Avery seeks judgment as a matter of law or a new trial on the issue of whether claims 1-5 of the '930 patent are valid over the prior art.

First, Avery argues that each limitation of claims 1-5 of the '930 patent is disclosed in U.S. Patent 5,405,675 ("the Sawka patent"). The jury needed to find that only one limitation of the '930 patent was missing from the Sawka patent to conclude

that Avery failed to satisfy its burden of proving the ’930 patent invalid due to anticipation. At trial, 3M argued that the Sawka patent is missing “lands,” an “array of depressions,” and depressions of the first embossed pattern that are in the second embossed pattern. 3M primarily relied upon testimony from Avery’s expert, Dr. Anthony McHugh, and the Court concludes that ample evidence supports the jury’s verdict. For example, the jury could have reasonably concluded that the Sawka patent does not have “an array of depressions.” The Court construed the claim term “array” as “an orderly arrangement.” The Sawka patent teaches that its pattern of depressions “may have virtually any shape or design,” which does not disclose an orderly arrangement either explicitly or inherently. *See Electro Medical Sys., S.A. v. Cooper Life Sciences*, 34 F.3d 1048, 1052 (Fed. Cir. 1994) (refusing to grant judgment as a matter of law because the challenger established only that a prior art reference was capable of meeting the claimed limitation but did not prove that the limitations were “necessarily present”).

Second, Avery argues that the evidence at trial established that the structure recited in claims 1-5 of the ’930 patent results from taking an existing Controltac Plus liner and embossing a second pattern of ridges within a 3 to 45 micron height range. 3M owns the patent for the Controltac Plus liner – U.S. Patent 5,141,790, and the 3 to 45 micron range was disclosed in two prior art patents, namely the Unitika patent and Matsui patent. The law of obviousness requires proof that there would be a motivation to actually select the references and combine them in a particular way. *In re Rouffet*, 149 F.3d 1350, 1359 (Fed. Cir. 1998). Further, a conclusion of obviousness cannot be reached without first considering objective indications of non-obviousness, including

commercial success, failure of others, long-felt need, and unexpected results. *Minn. Mining and Mfg. Co. v. Johnson & Johnson Orthopaedics*, 976 F.2d 1559, 1573 (Fed. Cir. 1992). At trial, Avery presented some evidence of motivation to combine the prior art references based on the problem that the ’930 patent addressed (air egress) and the prior art addressing this problem. However, 3M offered unrebutted testimony that its product is commercially successful because of the air bleed property that is a function of its claimed properties. The jury could have reasonably relied upon the commercial success of the Comply product, and the other evidence of non-obviousness that 3M presented at trial.

In sum, the Court finds that the evidence supports the jury’s conclusion that Avery failed to satisfy its burden of proving the ’930 patent invalid due to anticipation or obviousness.

## IV. Motion To Alter Or Amend Judgment, Or Alternatively, For Relief From Judgment, And Request For New Bench Trial On Issues Of Enforceability

Avery argues that the facts adduced at trial establish a prima facie case of inequitable conduct. Specifically, Avery asserts that 3M did not properly disclose the Unitika patent as part of the prosecution of the ’930 patent, in an attempt to mislead the Patent and Trade Office (“PTO”). Pursuant to Rules 59(e) and 60(b)(6), Avery seeks an order to alter or amend judgment by vacating or setting aside the judgment, or alternatively, for relief from judgment. *See* Fed. R. Civ. P. 59(e) and 60(b)(6). Additionally, pursuant to Rule 15(a), Avery moves for an order to amend its answer and

counterclaims on its defense of unenforceability. *See* Fed. R. Civ. P. 15(a). Finally, Avery requests a bench trial on the issues of inequitable conduct.

**A. Timeliness Of This Claim**

Once judgment is entered, a party may not amend its answer until judgment is set aside or vacated pursuant to Rule 59(e) or 60(b). *See Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1087 (10th Cir. 2005). Rule 59(e) allows for correction of "manifest errors of law or fact or to present newly discovered evidence," but cannot be used to raise arguments that could have been raised prior to entry of judgment. *Innovative Home Health Care, Inc. v. P.T.-O.T. Assocs. of the Black*, 141 F.3d 1284, 1286 (8th Cir. 1998). Similarly, relief under Rule 60(b)(6) is available only where exceptional circumstances have denied the moving party the full and fair opportunity to litigate the claim. *Harley v. Zoesch*, 413 F.3d 866, 871 (8th Cir. 2005). In addition, the scheduling order in this case provided that all motions to amend the pleadings must be served by May 1, 2002. *See* Docket No. 57. As such, Avery would need to show "good cause" to amend the scheduling order. *See* Fed. R. Civ. P. 16(b).

Avery argues that it has good cause for waiting until now to seek leave to amend its answer. Specifically, Avery asserts it was not aware of the facts establishing a prima facie claim of inequitable conduct until trial because the inventor of the '930 patent, Clyde Calhoun, contradicted his deposition testimony at trial.

The Court is not convinced that Avery was prevented from asserting this defense earlier. The key facts that Avery relies upon in asserting this defense were available to

Avery when this case was filed nearly five years ago. Namely, Avery was aware that 3M did not disclose the Unitika patent using an Information Disclosure Statement, and that 3M did not mention the Unitika patent in its application for the ’930 patent but rather incorporated it by reference through the application for the Sher ’397 patent. Moreover, the change in Calhoun’s testimony is not significant. At his deposition testimony and at trial, Calhoun testified that he could not recall whether or not he had reviewed the Unitika patent.

As such, the Court concludes that Avery could have brought this claim earlier, and that there are therefore numerous procedural bars to bringing the claim now.

**B. Prima Facie Case Of Inequitable Conduct**

Even if the Court were to assume that Avery has good cause for seeking to amend its answer now, the Court nevertheless concludes that Avery has failed to establish a prima facie case of inequitable conduct.

Applicants for patents are required to prosecute patent applications in the PTO with candor, good faith, and honesty. *Molins PLC v. Textron*, 48 F.3d 1172, 1178 (Fed. Cir. 1995). Inequitable conduct includes affirmative misrepresentation of a material fact, failure to disclose material information, or submission of false material information, coupled with intent to deceive. *Id.* One who alleges inequitable conduct arising from a failure to disclose prior art must offer clear and convincing proof of the materiality of the prior art, knowledge chargeable to the applicant of that prior art and of its materiality, and the applicant’s failure to disclose the prior art, coupled with an intent to mislead the PTO.

*Id.* The key dispute here is whether 3M properly disclosed the Unitika patent in its application for the ’930 patent, and whether 3M had the intent to mislead the PTO.

Information material to a patent application must be provided to the PTO as part of an Information Disclosure Statement (“IDS”). 37 C.F.R. §§ 1.56, 1.98. The IDS must be accompanied by a legible copy of any foreign patent included in the list. 37 C.F.R. § 1.98(a)(2)(i). 3M’s patent attorney submitted two IDS’s during the application for the ’930 patent, but neither IDS listed the Unitika patent, which is a foreign patent. As such, the Court agrees with Avery that 3M did not properly disclose the Unitika patent. However, the Unitika patent was nevertheless presented to the PTO because it was included in the application for the Sher ’397 patent, which was submitted at about the same time. 3M “incorporated by reference” the references in the Sher ’397 patent in its application for the ’930 patent. *See* Manual of Patent Examining Procedure § 2163.07 (providing that material incorporated by reference in a patent application is as much a part of the specification as is the actual text of the patent application itself).

Although 3M failed to properly disclose the Unitika patent, the Court concludes Avery has not met its burden to show that 3M intended to deceive the PTO. The Court recognizes that direct evidence of deceptive intent is not required, and that intent is “usually inferred from the patentee’s overall conduct.” *Ulead Sys., Inc. v. Lex Computer & Mgmt. Corp.*, 351 F.3d 1139, 1146 (Fed. Cir. 2003). Avery argues that an intent to deceive can be inferred by 3M’s failure to properly disclose the Unitika patent and 3M’s description of the Unitika patent in the Sher ’397 patent application.

The Court agrees with Avery that the description of the Unitika patent in the Sher ’397 patent application is incomplete. The Unitika patent describes a liner embossed with ridges of varying depths and widths, and the ridges show channels in an adhesive to allow for air egress. The examples in the Unitika patent show that complete air egress can be obtained with embossed ridges at 45 and 40 microns. The application for the Sher ’397 patent described the Unitika patent but did not mention that the ridges taught in the Unitika patent create air egress channels. This could have caused the examiner to assume that the Unitika patent is not relevant for the ’930 patent. The description also stated that the ridges taught in the Unitika patent needed to be “at least 45 [microns], and then only if the width of the recesses is at least 130 [microns].” However, the Unitika patent also covers ridge heights of 40 microns, which is within the 3 - 45 micron ridge height taught in the ’930 patent.

In weighing evidence of inequitable conduct, the court must balance the levels of materiality and intent, “with a greater showing of one factor allowing a lesser showing of the other.” *Union Pac. Resources Co. v. Chesapeake Energy Corp.*, 236 F.3d 684, 693 (Fed. Cir. 2001). Even though the Unitika patent is highly material, Avery does not have clear and convincing proof that 3M intended to deceive the PTO. 3M failed to disclose the Unitika patent in the IDS, and provided an incomplete description of the Unitika patent in the Sher ’397 patent. This was not 3M’s finest hour, but Avery has not shown that the company intended to deceive the PTO.

Accordingly, the Court denies Avery's motion to alter or amend judgment, or alternatively, for relief from judgment, and also denies Avery's request for a new bench trial on issues of enforceability.

**ORDER**

Based on the foregoing, all the records, files and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Avery's Motion for New Trial on Issues of Invalidity [Docket No. 343] is **DENIED**;

2. Avery's Motion for Judgment As a Matter of Law or, Alternatively, for a New Trial on Issues of Infringement [Docket No. 344] is **DENIED**;

3. Avery's Motion to Alter Judgment or Amend Judgment, or Alternatively, for Relief from Judgment, and Request for New Bench Trial on Issues of Enforceability [Docket No. 345] is **DENIED**.

DATED: September 25, 2006
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge