IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | |
| Plaintiffs, | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | |
| AVERY-DENNISON CORPORATION, | |
| Defendant. | |

**AVERY DENNISON CORPORATION'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO ENFORCE THE PARTIES' DAMAGES AGREEMENT AND FOR JUDGMENT IN THE AMOUNT OF $5,897,062.00**

## TABLE OF CONTENTS

**(Page)**


I. INTRODUCTION AND SUMMARY .......... 1

II. 3M CANNOT ENFORCE A MONETARY JUDGMENT WHICH DOES NOT EXIST .......... 4

III. 3M'S REQUEST FOR NEARLY $5.9 MILLION FAR EXCEEDS THE DAMAGES AWARDABLE APPLYING THE TERMS OF THE APRIL 29 AGREEMENT .......... 5

A. The April 29 Agreement Provides for Application of the 20% Royalty Only on Avery's Sales, Not Sales by Others .......... 6

B. 3M Is Not Entitled To Pre-Judgment Interest Under the April 29 Agreement, Minnesota State Law, or Federal Patent Law .......... 10

*1. The terms of the April 29 agreement allow for a 20% royalty and nothing more* .......... 10

*2. Even if the Court determines that the April 29 agreement is ambiguous as to "prejudgment interest," the relevant extrinsic evidence shows that the 20% royalty encompasses all past damages, including any prejudgment interest* .......... 11

3. *Under these circumstances, no prejudgment interest is allowable under State contract law* .......... 12

*4. If any prejudgment interest is awarded under Minnesota contract law, it should only be awarded from the date of the jury verdict on infringement* .......... 13

*5. 3M is not entitled to pre-judgment interest under the Patent Act* .......... 14

6. *Section 284 makes the award of interest at the Court's discretion subject to the policies of Section 284* .......... 15

C. Post Judgment Interest Under 28 U.S.C. § 1961 Is Not Allowable Because This Court Has Not Entered a Judgment For Money Damages on Infringement .......... 16

**TABLE OF CONTENTS (cont'd)**

**(Page)**

IV. IF THIS COURT DETERMINES THE APRIL 29, 2002 AGREEMENT IS UNAMBIGUOUS IN ACCORDANCE WITH AVERY'S CONSTRUCTION, A MONETARY JUDGMENT IN THE CORRECT AMOUNT SHOULD BE ENTERED.................................17

V. IF THIS COURT DETERMINES THE APRIL 29, 2002 AGREEMENT IS AMBIGUOUS ON ITS FACE, THE COURT SHOULD SCHEDULE FURTHER PROCEEDINGS IN ACCORDANCE THEREWITH ......................................................................17

VI. CONCLUSION ..........................................................................................19

**TABLE OF AUTHORITIES**

**(Page)**

*Beeks v. Hundley*,
34 F.3d 658 (8th Cir. 1994) .......... 5, 6, 7

*Cargo Protectors, Inc. v. American Lock Co.*,
32 F. Supp. 2d 926 (D. Minn. 2000) .......... 17

*Condor Corp. v. Arlen Realty and Dev't Corp.*,
529 F.2d 87 (8th Cir. 1976) .......... 13

*Del Maritime Avionics, Inc. v. Quinton Instrument Co.*,
836 F.2d 1320 (Fed. Cir. 1987) .......... 14, 15

*Donnay v. Boulware*,
144 N.W.2d 711 (D. Minn. 1966) .......... 18

*Fox Sports Net North, LLC v. Minnesota Twins Partnership*,
319 F.3d 329 (8th Cir. 2003) .......... 18

*Gander v. Gander*,
250 F.3d 606 (8th Cir. 2001) .......... 18

*General Motor Corp. v. Devex Corp.*,
461 U.S. 648 (1983) .......... 15

*Great West Casualty Co. v. Barnick*,
542 N.W.2d 400 (Minn. App. 1996) .......... 12

*H.B. Fuller Co. v. Nt'l Starch and Chemical Corp.*,
689 F. Supp. 923 (D. Minn. 1988) .......... 14

*Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075 (Fed. Cir. 1983) .......... 14

*Happy Chef System, Inc. v. John Hancock Mutual Life Insurance Co.*,
933 F.2d 1433 (8th Cir. 1991) .......... 16

*Hennings v. State Farm*,
438 N.W.2d 680 (Minn. App. 1989) .......... 13, 15

**TABLE OF AUTHORITIES (cont'd)**


**(Page)**

*Kaiser Aluminum & Chemical Corp. v. Bonjorno*,
494 U.S. 827 (1990) ........................................ 16

*King Instrument Corp. v. Otari Corp.*,
767 F.2d 853 (Fed. Cir. 1985) ........................................ 14

*Nike Inc. v. Wal-Mart Stores Inc.*,
1996 U.S. Dist. LEXIS 20489 (E.D. Va. November 18, 1996) ........................................ 14

*Nt'l America Insurance Co. v. Hogan*,
173 F.3d 1097 (8th Cir. 1999) ........................................ 7, 8, 9

*In re Pester Refining Co.*,
964 F.2d 842 (8th Cir. 1992) ........................................ 16

*Sunny Fresh Foods, Inc. v. Michael Foods, Inc.*,
2002 U.S. Dist. LEXIS 27763 at *7-8 (D. Minn. 2002) ........................................ 10, 17, 18

*TP Orthodontics Inc. v. Professional Positioners, Inc.*,
1991 U.S. Dist. LEXIS 9660 (E.D. Wis. July 2, 1991) ........................................ 15

*Thiesen's, Inc. v. Red Owl Stores, Inc.*,
243 N.W.2d 145 (1976) ........................................ 7

*Thomas v. Thomas*,
383 N.W.2d 727 (Minn. App. 1986) ........................................ 13

*Trana v. W.W. Holes Manufacturing Co.*,
1998 Minn. App. LEXIS 450 (Minn. App. April 21, 1998) ........................................ 12

*Uniroyal, Inc. v. Rudkin-Wiley Corp.*,
1989 U.S. Dist. LEXIS 16707 (Fed. Cir. June 26, 1989) ........................................ 16

*Wachs v. Winter*,
569 F. Supp. 1438 (E.D.N.Y. 1983) ........................................ 16

*Warrick v. Garffiti, Inc*,
550 N.W.2d 303 (Minn. App. 1996) ........................................ 14

**TABLE OF AUTHORITIES (cont'd)**

**(Page)**

## STATUTES

28 U.S.C. § 1961 .......... 16

35 U.S.C. § 284 .......... passim

Fed. R. Civ. P. 58.......... 16

Fed. R. Civ. P. 69(a) .......... 1, 5

Minn. Stat. § 549.09 .......... 14

## I. INTRODUCTION AND SUMMARY

3M moves for the "enforcement" of a damages agreement under Federal Rule of Civil Procedure 69(a) and for an award of $5,897,062.00 on the sale of Avery's EZ Series Fleet Marking Film. 3M's motion for enforcement is premature for two reasons. First, the parties have a computational dispute that the Court must first resolve before any money judgment can be entered in this case. Second, a money judgment must first be entered by the Court before it can be enforced under Rule 69(a), Fed. R. Civ. Pro. 3M's pending motion should therefore be denied.

Prior to the completion of discovery in this case, the parties agreed to forego the expense of litigation over damages should liability be established against Avery. Instead of conducting damages fact discovery and hiring damages experts, the parties stipulated that a 20% royalty on the revenue Avery received for its EZ products would adequately compensate 3M for any proven infringement. After agreeing to the 20% royalty rate, the parties documented their damages stipulation in an April 29, 2002 letter from Arthur B. Moore to Gary Lee Griswold, which provides in relevant part:

> As a final effort to get a deal done, and to avoid unnecessary damage expert, discovery and trial costs to both Avery and to 3M, Avery will stipulate to a twenty percent (20%) royalty applicable to Avery's total sales of EZ liner products (subject to an appropriate accounting) in the event 3M proves infringement by Avery of one or more valid, enforceable claims of the '930 patent.

(Cotton Dec., Ex. 3.) The parties do not dispute that the April 29 letter forms a binding contract between Avery and 3M, which alone controls the determination of the appropriate damages award in this case. Although the parties agreed to a 20% royalty on EZ liner products if liability against Avery were established, 3M's request that the Court "enforce" a judgment in the amount of nearly $5.9 million under Fed. R. Civ. P. 69(a) is grossly inflated and procedurally improper.

There are only three issues this Court needs to resolve, not the five issues discussed by 3M in its opening memorandum.

(1) ***Which sales apply***: The parties dispute whether the 20% figure applies to defendant Avery's sales, including Avery's sales to overseas Avery affiliated customers (Avery's contention), or whether the 20% figure applies both to defendant Avery's sales to unaffiliated customers and to sales by Avery's foreign affiliated customers to end users in Europe (3M's contention). Notably, the sales by Avery's foreign affiliates of EZ Liner products is the subject of a separate, parallel patent infringement proceeding in the Netherlands by 3M against Avery about which 3M never informed this Court. When Avery's affiliated customers (not defendant Avery) resell EZ Film products to end customers overseas, they often do so at a higher price, typically reflecting value-added services performed outside the United States, as well as foreign market conditions. By its motion, 3M impermissibly seeks to apply the 20% royalty on the higher amount received by Avery's affiliated foreign customers rather that the amount defendant Avery actually received. The April 29 agreement expressly refers to "Avery's total sales," not the sales by Avery's customers, including Avery's affiliated foreign organizations, that are separate and different legal entities. If this Court determines the April 29 agreement is ambiguous on this issue, the Court cannot enter a monetary judgment by motion practice and the issue must be resolved in an evidentiary hearing.

(2) ***Whether prejudgment interest applies***: The parties dispute whether prejudgment interest should apply to any royalty amount. Although 3M offers no evidence proving that the April 29 agreement contemplates prejudgment interest on any award, 3M's monetary request includes $ 172,069.00 in prejudgment interest running from the first sales of EZ film. 3M cannot dispute that the April 29 agreement is silent on prejudgment interest. But in agreeing to substitute an extraordinarily high 20% royalty rate for a damage determination by this Court, that computation was the sole compensatory relief bargained for between the parties. Moreover, under the parties

agreement, any prejudgment interest could only run from the date "3M prove[d] infringement by Avery of one or more valid, enforceable claims of the '930 patent"—namely, December 23, 2005. Like the issue regarding which sales amount should be applied to the 20% rate, any ambiguity concerning the applicability of prejudgment interest in the April 29 agreement must be resolved in an evidentiary hearing, not on a Rule 69(a) motion.

(3) ***Whether post judgment interest applies:*** Similar to prejudgment interest, the parties dispute whether post judgment interest should apply to any royalty amount. While 3M seeks another $238,816.00 in post judgment interest, 3M, again, cannot dispute that the April 29 agreement is silent on post judgment interest. Like prejudgment interest, Avery contends that the parties intended to include post judgment interest in the extraordinarily high 20% royalty rate. Moreover, even if the parties' April 29 agreement is construed to allow for post judgment interest, such interest cannot apply, as a matter of law, until the Court enters a monetary judgment (which it has not yet done). Any ambiguity in the April 29 agreement on whether post judgment interest applies, and (if so) when it begins running, must be resolved in an evidentiary hearing, not on a Rule 69(a) motion.

There is no dispute for this Court to resolve concerning the other two issues discussed by 3M in its opening brief. 3M's motion asserts that its efforts to determine the amount of damages "were met with obfuscation and delay." 3M's contention is both irrelevant and wrong. The documents attached to the Cotton Declaration reflect no "obfuscation" or "delay." To the contrary, each time 3M requested information, Avery complied. Avery's compliance in each instance resulted in further questions and requests for more information. Some of the additional information requested, such as the prices that customers obtained on overseas re-sales (converted to U.S. dollars) proved difficult to obtain. Moreover, the piecemeal nature of 3M's requests took time. Nonetheless, Avery worked diligently to provide the requested data in less than two months, and 3M

does not now contend it lacks sales information it needs. Ultimately, this cooperative exchange of information helped crystallize the factual disputes now arising under the April 29 agreement, which this Court must resolve—either as a matter of law or (if an ambiguity in the agreement exists) in an evidentiary hearing. But 3M's characterization of a cooperative exchange of information resulting in these disputes as "obfuscation" belies the record and is gratuitous "mud-slinging."

The second "non-issue" raised by 3M is the allegation that Avery seeks to limit damages by contending that "the royalty should apply to sales of only the liner component of Avery's EZ Film … instead of sales of Avery's actual EZ Film product." (3M Mot. at 2.) Pages 12 through 14 of 3M's Opening Brief are devoted to this "non-issue." Avery does not contend that the royalty should apply to sales of only the liner component of Avery's EZ Film except in those rare instances where Avery sold only the liner, and not the composite EZ Liner product to a customer. In those rare instances, the total, actual revenue received by Avery from the sale is included in the sales figures.

## II. 3M CANNOT ENFORCE A MONETARY JUDGMENT WHICH DOES NOT EXIST

On its face, the April 29 agreement provides for a 20% royalty rate applicable to "Avery's total sales of EZ Liner Products." Avery contends "Avery" in the damages stipulation means defendant Avery, identified by 3M in its complaint. 3M contends that "Avery" in the damages stipulated means defendant Avery, identified by 3M in its complaint, and also any domestic or foreign corporation bearing the name "Avery." The parties agree that this is a dispute about $1,257,656, not including prejudgment or post-judgment interest. (3M Mot. at 11, 12.)

This dispute must be resolved before any monetary judgment can be entered, much less "enforced" under Rule 69(a), Fed. R. Civ. P. Without a monetary judgment, Rule 69(a) provides no procedural basis for "enforcing" or "executing" a dollar-specific amount. *See* Fed. R. Civ. Proc. 69(a) (providing that the "[p]rocess to ***enforce a***

***judgment for the payment of money*** shall be by a writ of execution, unless the court directs otherwise.") (emphasis added). Thus, all factual disputes regarding the amount that should be applied to the 20% rate must be resolved before the Court can enter a monetary judgment subject to enforcement under Fed. R. Civ. P. 69(a).

3M provides no authority to the contrary. In its motion, 3M cites *Beeks v. Hundley*, 34 F.3d 658, 660 (8th Cir. 1994), which simply notes that Rule 69(a) allows courts to enforce and execute on judgments in supplemental proceedings, and that courts have continued jurisdiction to conduct such proceedings. Avery does not dispute that this Court has jurisdiction to enforce monetary judgments once entered. Nor does Avery dispute that the Court has jurisdiction to resolve the disputes that have arisen regarding how the dollar amount of damages should be determined in this case under the parties' April 29 agreement. Indeed (as discussed below), if this Court finds the April 29 agreement ambiguous as to any of the disputes, Avery acknowledges that this Court retains jurisdiction and must hold an evidentiary hearing to resolve the dispute. But nothing in either the Federal Rules of Civil Procedure or in *Beeks* gives Courts jurisdiction to enforce money judgments that do not yet exist.

Procedurally, this Court must (1) construe the April 29 agreement and determine if any ambiguity exists, (2) determine the appropriate amount of damages in light of the properly construed agreement, and (3) enter a money judgment—in that order. Only then is an enforcement motion under Rule 69(a) appropriate. Of course, such a motion will be unnecessary because Avery intends to bond the money judgment once it is entered, pending its already-filed appeal.

## III. 3M'S REQUEST FOR NEARLY $5.9 MILLION FAR EXCEEDS THE DAMAGES AWARDABLE APPLYING THE TERMS OF THE APRIL 29 AGREEMENT

3M acknowledges that the April 29 agreement alone must determine the calculation of damages in this case. While 3M uses the 20% royalty rate from the April

29 agreement, it ignores other provisions of the agreement. Specifically, 3M's damages calculation applies the 20% royalty rate to the wrong sales. It also improperly seeks to boost the agreed 20% rates through its claim for interest. Under the April 29 agreement, as properly construed, the 20% royalty must be applied to defendant Avery's sales, not sales by overseas, third parties that are affiliated with Avery. Additionally, the parties contemplated no interest. Thus, the ultimate damages judgment should be limited accordingly.

### A. The April 29 Agreement Provides for Application of the 20% Royalty Only on Avery's Sales, Not Sales by Others

The April 29 agreement expressly states that the 20% royalty is "applicable to Avery's total sales of EZ liner products…." Making the royalty applicable to Avery's sales made sense; 3M named only Avery as a defendant in this action.

Between 2001 and 2006, Avery sold its EZ liner products to end customers in the United States—primarily "converters" who print the film and provide the end product to end users.[1] During this period, Avery also sold EZ liner products to Avery affiliates in Europe, Latin America, and Asia. These were actual sales by Avery. In some cases, these affiliates resold product it had purchased from Avery, and in other cases these foreign Avery affiliates provided value-added services and enhancements to the products before reselling to end users overseas. For example, overseas affiliates have adjusted the width and length of the film to conform to customer standards or metric measurements, which are common overseas. In other circumstances, Avery sold the film and liner separately to overseas affiliates. The overseas affiliates then applied their own adhesive and sold the completed EZ Film product to the customer. Finally, overseas affiliates have provided training with the sale of EZ liner products, and conducted validation testing to meet customer requirements, which may be different for European customers. All this

[1] Declaration of John W. Cornell, ¶ 3.

work is done outside the United States.[2]

With these value added services and enhancements, overseas affiliates have resold EZ liner products at a higher price than they purchase the products from Avery.[3] Yet regardless of what the overseas affiliate do to the EZ liner product before resale to enhance value, and regardless of the price received by the overseas affiliate, defendant Avery's total revenue from European customers is limited to the sale amount received from the overseas affiliates.[4] In this case, defendant Avery has received a total of $21,142,607 for all EZ liner product sales. (Shultz Dec., Ex. 1.) This amount is not disputed between 3M and Avery.

Despite the express terms of the April 29 agreement, 3M now seeks to rewrite its damages stipulation and also claim damages on sales by Avery's overseas affiliates (even though defendant Avery received no revenue from these sales). For a host of reasons, 3M's request to do so should be denied.

1. 3M in a separate patent infringement proceeding in Europe is seeking infringement damages from Avery foreign affiliates for infringement of the same patent—the European counterpart of the '930 patent.[5] This fact is conveniently omitted from 3M's moving papers. If 3M had in fact understood that its damages stipulation extended to sales not only by defendant Avery but also by Avery's affiliates in Europe, there would have been no need for 3M to file that parallel action. *Thiesen's, Inc. v. Red Owl Stores, Inc.*, 243 N.W.2d 145, 149 (1976) (looking to conduct following execution of

---

[2] *Id.*

[3] *Id.* In circumstances where Avery sells the liner separate from the film to an overseas affiliate, there is particularly no justification for applying a 20% royalty to the combined end product made available to the customer, because the jury found that only the liner infringes, not the film portion of the product.

[4] *Id.*, ¶ 4.

[5] *Id.*, Exs. 1A-1C.

agreement as evidence of intent); *Nt'l Am. Ins. Co. v. Hogan*, 173 F.3d 1097, 1180 (8th Cir. 1999). By that Netherlands proceeding, a determination of which is anticipated in the next week, 3M seeks the very same infringement damages from sales by Avery's foreign affiliates of the EZ Liner product that it is now contending 3M and Avery agreed to include in the damages stipulation in this case.

2. 3M, not Avery, is requesting this Court to apply a special definition to the term "Avery sales" in connection with the damages stipulation. Avery's interpretation is immutably consistent and applies directly to every single sales transaction it had in connection with its EZ Liner Product. Avery is not treating its sales to Avery foreign affiliated entities differently from sales to non-affiliated customers for computational purposes—it is consistently taking the revenue it actually received from all such sales into account in determining the stipulated damage amount. The fact that the price Avery charges and receives from various customers worldwide differs is legally irrelevant. The total sales figure from which damages are to be computed is $21,142,607 because that is the amount Avery actually received from its sales of the EZ Liner product. Contrastingly, 3M is **imputing** sales by foreign, affiliated Avery entitles, which are not defendant Avery, to defendant Avery for computational purposes.

3. 3M's argument concerning "internal transfer price" confuses accounting transactions among divisions in a single company with actual sales between affiliated but separate legal entities. 3M's motion describes the price Avery receives for its EZ liner products from its overseas affiliates as an "internal transfer price." (3M Mot. at 9-12.) The phrase "internal transfer price" is a phrase commonly used to economically document product transfers between divisions in a single company, hence the word "internal." But 3M offers no evidence that the affiliate sales are based on an "internal" price, and that concept has no practical application here. Avery's affiliates are different

companies, incorporated under the laws of different nations.[6] Even if Avery offers these affiliated companies lower prices than it offers unaffiliated customers in the U.S., nothing in either the April 29 agreement or in the Patent Act requires that a royalty be applied to a higher amount.

4. 3M's construction argument based on the word "total" has no substance. In arguing that the parties intended to apply the 20% royalty on all revenues received by any Avery affiliated entity worldwide (including companies other than Avery) for the sales of EZ liner products, 3M focuses just on the word "total" in the April 29 agreement. (3M Mot. at 9.) But a plain reading of the April 29 agreement demonstrates that the word "total" unambiguously applies to the ***volume*** of Avery's sales, not the identity or definition of "Avery."

5. Should this Court find the damages stipulation ambiguous and thereafter conduct an evidentiary hearing, extrinsic evidence supports Avery's, not 3M's construction. Extrinsic evidence does not support 3M's contention that the parties intended to apply the royalty on the sales price received by overseas affiliates (which Avery does not receive). For example, 3M cites sales figures provided in an April 14, 2002 email from Roderick Dorman to Kurt Glitzenstein. (Cotton Dec., Ex. 4.) But contrary to 3M's assertion (3M Mot. at 11), the revenue shown for 2002 was defendant Avery's revenue—not the revenue received by foreign affiliates of Avery.[7] Avery did not "secretly plan to use a different accounting scheme for international sales." (3M Mot. at 10.) Certainly foreign affiliates of 3M make sales of 3M produced products, and if 3M had intended the royalty agreement to be based on Avery affiliate sales price, rather than defendant Avery's sales price, it would have requested language specifying that different sales base. It did not, and as a result 3M should be held to the deal reflected in the April

[6] *Id.*, ¶ 3.

[7] *Id.*, ¶ 5.

29 agreement.

### B. 3M Is Not Entitled To Pre-Judgment Interest Under the April 29 Agreement, Minnesota State Law, or Federal Patent Law

3M asserts it is entitled to prejudgment interest under 35 U.S.C. § 284. But the April 29 agreement, not the Federal Patent Act, controls the determination of all damages in this case, and the parties set a rate at a level that they intended would encompass all compensation due—including interest.[8] Interest is not separately mandated or automatically available under general state or federal law. Moreover, under the April 29 agreement, no damages liability for Avery sales attached until the jury rendered its verdict. Thus, 3M should not be awarded interest in addition to the negotiated compensation provided under the April 29 agreement.

#### *1. The terms of the April 29 agreement allow for a 20% royalty and nothing more*

The April 29 agreement expressly states that "to avoid unnecessary damage expert, discovery and trial costs to both Avery and 3M, Avery will stipulate to a twenty (20%) royalty applicable to Avery's total sales of EZ liner products … in the event 3M proves infringement by Avery." This stipulation provided a single, straightforward measure of damages – in the event 3M proved infringement, Avery would pay a 20% royalty on Avery's total sales. No other provisions were included in the stipulated royalty. Thus, unless the Court finds the agreement ambiguous, Avery and 3M are entitled to rely solely on the April 29 agreement to define their rights and responsibilities. *See Sunny Fresh Foods, Inc. v. Michael Foods, Inc.*, 2002 U.S. Dist. LEXIS 27763 at *7-8 (D. Minn. 2002). As such, on the date that it was determined that 3M "prove[d] infringement," Avery was responsible for only the 20% royalty and nothing more.

[8] *Id.*, ¶ 6.

### 2. *Even if the Court determines that the April 29 agreement is ambiguous as to "prejudgment interest," the relevant extrinsic evidence shows that the 20% royalty encompasses all past damages, including any prejudgment interest*

Although Avery contends that the April 29 agreement is unambiguous (and there is no need to consider extrinsic evidence), if the Court were to consider extrinsic evidence in an evidentiary proceeding (see Section V *infra*.), that evidence would demonstrate that the parties intended that the exceedingly high 20% royalty would include all past damages, including any prejudgment interest. For example, in an e-mail between the parties, counsel for Avery stated during the negotiations "[t]his is what we should do: Let's just agree for the purpose of this case only … a reasonable royalty rate to apply ***for past damages*** if 3M succeeds [in proving infringement]."[9] Not once during the negotiations or following the verdict on infringement did 3M mention the payment of interest as separate and distinct from the damages stipulated to by the parties. In fact, 3M only raised the issue of prejudgment interest ***more than four years*** after the parties entered the April 29 agreement when counsel for 3M conceived of a new argument to seek more money, stating that "we are assuming that Avery is prepared to pay prejudgment and post-judgment interest on the amount of damages that is owed under the [A]greement."[10]

3M argues that the April 29 agreement did not include prejudgment interest because parties agreed to a "low" 20% royalty rate. (3M Mot. at 16). This is absolute nonsense. Avery "held its nose" and agreed to an exorbitant 20% rate, believing the case would be over and it would never have to pay such an inflated rate, which is greater than any royalty rate it had ever paid for anything. Furthermore, by 3M's own admission, the parties intended 20% royalty to compensate 3M for all damages in the event 3M

---

[9] Cotton Dec., Ex. 4.

[10] Cotton Dec., Ex. 15.

prevailed on infringement.[11] In fact, 3M stated during the negotiations that "a 10% royalty might be fair if damages in this case were limited to a reasonable royalty award," but 3M wanted a higher royalty because it did not intend on requesting a reasonable royalty but instead intended on requesting lost profits from the Court.[12] The parties then stipulated to a 20% royalty under the Agreement, stating that "these damages are for this case only, and shall not be used by either party for any other purpose or case."[13] Although 3M now attempts to argue that the parties' stipulation slighted 3M and forced it to accept much lower damages than to which it was entitled, the negotiations between the parties show otherwise. Indeed, 3M stated that their proposed, stipulated royalty during negotiations "represents a fair compromise between the parties' respective damages theories [lost profits and reasonable royalty]."[14]

### 3. *Under these circumstances, no prejudgment interest is allowable under State contract law*

3M stipulated in advance to exactly what damages it was willing to accept from Avery should it prevail on its infringement claims, rather than presenting proof to the Court and allowing the Court to determine what exactly would amount to "compensation" for the infringement. 3M made a business decision substituting a contract between two parties for a judicially adjudicated damage award. Under Minnesota law, 3M cannot now claim prejudgment interest as a means to fully compensate it for the true cost of the damages incurred where it has already stipulated to damages, and has not presented a damages case for the Court's determination. *Great West Casualty Co. v. Barnick*, 542 N.W.2d 400 (Minn. App. 1996) (denial of

[11] Cornell Dec., Ex.2.

[12] *Id.*

[13] *Id.*; see also Cotton Dec., Ex. 3.

[14] *Id.*

prejudgment interest where there was a prior settlement as to damages because to award prejudgment interest would frustrate the compensatory purposes of the state statute governing prejudgment interest); *Trana v. W.W. Holes Mfg. Co.*, 1998 Minn. App. LEXIS 450 at *9 (Minn. App. April 21, 1998) (prejudgment interest inappropriate when an issue is settled before trial).

#### 4. *If any prejudgment interest is awarded under Minnesota contract law, it should only be awarded from the date of the jury verdict on infringement*

3M claims it is entitled to prejudgment interest from the time of Avery's first sales of EZ liner products in 2001. (Shultz Dec., Ex. 4.) But if this Court awards prejudgment interest (which was not contemplated by the express provisions of the April 29 agreement and Minnesota law), it can only be calculated from the date of the jury verdict on infringement (December 21, 2005). The April 29 agreement states that the parties stipulated to a 20% royalty "in the event 3M proves infringement by Avery of one or more valid, enforceable claims of the '930 patent." Because the contract—not the Patent Act—controlled when damage liability arose, prejudgment interest, if any, could not begin to accrue until the time specified in the contract. *See Condor Corp. v. Arlen Realty and Dev't Corp.*, 529 F.2d 87 (8th Cir. 1976) (interest is computed from the time it became due under contract); *Thomas v. Thomas,* 383 N.W.2d 727, 729 (Minn. App. 1986) (where the money is due based on a contingency, no interest is awarded until the contingency occurs); *Hennings v. State Farm*, 438 N.W.2d 680, 686 (Minn. App. 1989) (prejudgment interest where damages were previously stipulated and then later adjusted were awarded from date of the jury verdict). By the terms of the April 29 agreement, Avery was not responsible for paying the 20% royalty until 3M proved infringement by Avery. This did not occur until the jury rendered its verdict, and thus any interest could not begin accruing prior to that time.[15]

[15] The same analysis regarding any potential ambiguity in the April 29 agreement applies to the accrual of prejudgment interest. In other words, if the Court determines that the April 29

***5. 3M is not entitled to pre-judgment interest under the Patent Act***

Although 3M argues that interest is necessarily part of every patent case (3M Mot. at 15), it is not. In fact, Section 284 of the Patent Act clearly states that "[u]pon a finding for the claimant ***the court shall award*** the claimant damages ***adequate to compensate for*** the infringement." *See* 35 U.S.C. § 284 (emphasis added). Courts have upheld the compensatory nature of the statute and "construed section 284 to allow a patentee to establish damages by either ***proving*** lost profits or by ***proving*** the reasonable royalty for use of the patented invention." *See H.B. Fuller Co. v. Nt'l Starch and Chem. Corp.*, 689 F. Supp. 923, 946 (D. Minn. 1988) (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983)) (emphasis added). In it's argument, 3M misses a key point—3M has proved absolutely no damages to this Court; in fact, this Court has not been asked to, nor has this Court awarded any damages to 3M at all. It would be inappropriate to award prejudgment interest where this Court has not received any evidence from the parties as to damages and has not reached any independent conclusions concerning the money damages necessary to "compensate" 3M for the infringement. *See H.B. Fuller*, 689 F. Supp. at 946 and 949 (setting forth the process by which a court determines a reasonable royalty and stating that "[i]n determining a reasonable royalty rate, the Court must apply the pertinent *Georgia Pacific* factors"); *see also Del Mar Avionics, Inc. v. Quinton Instrument Co.*, 836 F.2d 1320, 1326 (Fed. Cir. 1987) (when requesting lost profits the patentee must show that, but for the infringement, he would have made the sales made by the infringer); *King Instrument Corp. v. Otari Corp.*, 767 F.2d 853, 863 (Fed. Cir. 1985) (patentee must present proper evidence as to lost profits).

Under Federal Circuit law, 3M has no right to prejudgment interest without presenting a damages analysis to the Court. In other words, unless the Court has the

---

agreement allows for prejudgment interest, but that the agreement is ambiguous as to the accrual time, it must hold an evidentiary hearing to determine the parties' intent. (see Section V *infra*.)

opportunity to make a complete damages analysis of its own, the Court cannot award prejudgment interest under section 284.[16] *See Nike Inc. v. Wal-Mart Stores Inc.*, 1996 U.S. Dist. LEXIS 20489 at *17 (E.D. Va. November 18, 1996) (denying pre-judgment interest where plaintiff had received full recovery in part because defendants could not provide all documentation; the court determined that plaintiff did not need pre-judgment interest to make it whole) *aff'd in part, rev'd in part*, 138 F.3d 1437 (Fed. Cir. 1998); *Del Mar Avionics*, 836 F.2d at 1326 (district court is free to use discretion in calculating damages as long as the measure is just and reasonable). This result makes sense in light of the parties stipulation to a 20% rate. Had the Court determined the appropriate rate, it might have found that a much lower rate would have reasonably compensated 3M for the infringement. *See Hennings v. State Farm*, 438 N.W.2d 680 (Minn. App. 1989) (the reasonableness of a prior settlement on damages was tried and the verdict resulted in less than the previously stipulated damages). Thus, an agreed upon 20% royalty rate presumptively includes all amounts needed to reasonably compensate 3M for infringement.

### 6. *Section 284 makes the award of interest at the Court's discretion subject to the policies of Section 284*

Awarding prejudgment interest under section 284 of the Patent Act is at the Court's discretion. *See General Motor Corp. v. Devex Corp.*, 461 U.S. 648, 653 (1983); 35 U.S.C. § 284 ("as fixed by the court"); Chisum on Patents, v.7 § 20.03[4]. Any award of prejudgment interest under 284 is meant to be compensatory, "to ensure that the patent holder is placed in as good a position as he would have been in had the infringer entered into a reasonable royalty agreement." *See General Motor Corp.*, 461 U.S. at 655; 35

[16] In this regard, Minnesota state law is similar to the Federal law. Specifically, prejudgment interest under Minn. Stat. § 549.09 is inappropriate where there is "no actual judgment or award upon which it [prejudgment interest] could properly be based." *See Warrick v. Garffiti, Inc*, 550 N.W.2d 303, 309 (Minn. App. 1996).

U.S.C. § 284 ("adequate to compensate for infringement"). In this case, it is undisputed that the royalty agreed upon by the parties constituted, at the very least, a "reasonable royalty." As expressed in the April 29 agreement, the parties elected to conserve party and judicial resources by avoiding proof of damages in exchange for an advance agreement as to damages. To now award prejudgment interest on top of the deal reached by the parties would provide 3M with a windfall, contradicting the compensatory nature of the damages provisions of the Patent Act. *See TP Orthodontics Inc. v. Professional Positioners, Inc.*, 1991 U.S. Dist. LEXIS 9660 (E.D. Wis. July 2, 1991) (denying a certain interest rate because it would result in a windfall and 284 is meant to be compensatory); *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 1989 U.S. Dist. LEXIS 16707 at *30 (Fed. Cir. June 26, 1989) (denying prejudgment interest during the period of the stay that both parties agreed upon). Thus, prejudgment interest should be denied.

### C. Post Judgment Interest Under 28 U.S.C. § 1961 Is Not Allowable Because This Court Has Not Entered a Judgment For Money Damages on Infringement

3M is not entitled to post judgment interest on the stipulated damages under 28 U.S.C. § 1961. Under federal law, "interest shall be allowed on any **money judgment** in a civil case recovered in a district court." *See* 28 U.S.C. § 1961. Rule 58 of the Federal Rules of Civil Procedure provides that a judgment must be set forth on a separate document and entered on the docket by the clerk. *See* Fed. R. Civ. P. 58.

Based on the parties' stipulation, no money judgment for damages due to infringement has yet been entered in this case. Nor has the Court heard any evidence whatsoever to support a finding of money damages. *See Kaiser Aluminum & Chem. Corp. v. Bonjorno*, 494 U.S. 827, 835-36 (1990) (post judgment interest not allowable where "judgment on damages was not supported by the evidence"). The judgment, entered on December 23, 2005, states only, "judgment is entered in favor of Plaintiffs and against Defendant. Plaintiffs recover from Defendant for the costs of action."

Accordingly, post judgment interest under section 1961 cannot be computed until such time as a final money judgment for a sum certain is reflected in the records of the clerk's office. *See* Fed. R. Civ. P. 58(a)(2)(ii); *Happy Chef Sys., Inc. v. John Hancock Mutual Life Ins. Co.*, 933 F.2d 1433, 1437 (8th Cir. 1991) (post judgment interest cannot accrue until a money judgment has been entered); *Wachs v. Winter*, 569 F. Supp. 1438, 1449 (E.D.N.Y. 1983). The only post judgment interest 3M is currently entitled to receive is interest on the costs of the action, not on the stipulated damages for infringement. *See In re Pester Refining Co.*, 964 F.2d 842, 849 (8th Cir. 1992) (where a bankruptcy plan was silent as to interest, the allowed post judgment interest from the date of the money judgment entered by the court).

## IV. IF THIS COURT DETERMINES THE APRIL 29, 2002 AGREEMENT IS UNAMBIGUOUS IN ACCORDANCE WITH AVERY'S CONSTRUCTION, A MONETARY JUDGMENT IN THE CORRECT AMOUNT SHOULD BE ENTERED

The parties computationally agree that if defendant Avery's total sales constitute the sales upon which the 20% is calculated, the total royalty amount owed (excluding interest) is $4,228,521, not $5,486,177 as requested by 3M. If this Court determines the April 29, 2002 Agreement is unambiguous in accordance with Avery's construction, a monetary judgment in the amount of $4,228,521 should be entered.

## V. IF THIS COURT DETERMINES THE APRIL 29, 2002 AGREEMENT IS AMBIGUOUS ON ITS FACE, THE COURT SHOULD SCHEDULE FURTHER PROCEEDINGS IN ACCORDANCE THEREWITH

3M further offers extrinsic evidence allegedly supporting its claim that the parties intended the April 29 agreement to apply the 20% royalty on the revenue received by overseas affiliates rather than the revenue Avery received. While Avery agrees that the objectively manifested intent of the parties controls the construction of the April 29 agreement—and thus whether the 20% royalty applies to Avery's revenue or the overseas affiliates' revenue—3M's motion is premature and contradicts Minnesota law in that it

asks this Court to consider extrinsic evidence to determine the parties' intent ***before*** this Court has determined whether or not the April 29, 2002 agreement is ambiguous. Under Minnesota law, this Court cannot consider any extrinsic evince in construing the April 29 agreement without ***first*** finding that the April 29 agreement is ambiguous as a matter of law. *See Sunny Fresh Foods, Inc. v. Michael Foods, Inc.*, 2002 U.S. Dist. LEXIS 27763 at *7-8 (D. Minn. August 23, 2002). In determining if ambiguity exists, this Court must look only to the agreement itself. *See id.; see also Cargo Protectors, Inc. v. American Lock Co.*, 32 F. Supp.2d 926, 932 (D. Minn. 2000) (a court must first examine the "four corners of the document to discern the intention of the parties … [i]f the language is unambiguous, then the contract is interpreted without resort to extrinsic evidence"). A contractual term is ambiguous if it is susceptible to more than one interpretation.

If the Court determines that the April 29 agreement is ambiguous as to whether the 20% royalty applies to the revenue received by Avery alone or whether the royalty applies to revenue also received by Avery's overseas affiliates following Avery's sale of product to its overseas affiliates, then extrinsic evidence of the parties' intent can be considered by the fact finder to resolve the ambiguity. *See Fox Sports Net North, LLC v. Minnesota Twins Partnership*, 319 F.3d 329, 334 (8th Cir. 2003) (where terms are ambiguous, extrinsic evidence is used by the finder of fact). In that event, this Court must hold an evidentiary hearing to explore the extrinsic evidence of the parties' intent, and Avery requests such a hearing. *See Donnay v. Boulware*, 144 N.W.2d 711, 716 (D. Minn. 1966) (where ambiguity exists "the trial court should allow the parties a full opportunity to present evidence of facts and circumstances and conditions surrounding as execution and the conduct of the parties relevant thereto"); *see also Gander v. Gander*, 250 F.3d 606, 610 (8th Cir. 2001) (holding an evidentiary hearing where the ambiguous terms of an agreement were in dispute); *Sunny Fresh Foods, Inc.*, 2002 U.S. Dist. LEXIS 27763 at *7-8.

## VI. CONCLUSION

For all the foregoing reasons and authorities, 3M's Motion to Enforce the Parties Damage Agreement and for Judgment in the Amount of $5,897,062 should be denied.

DATED: January 16, 2007

Respectfully submitted,

By /S/ Lawrence M. Hadley

David P. Pearson
Matthew D. Spohn
WINTHROP & WEINSTINE, P.A.
225 South Sixth Street, Suite 3500
Minneapolis, Minnesota 55402
(612) 347-0700 - Telephone
(612) 347-0600 - Facsimile

Of Counsel:

Roderick G. Dorman
Lawrence M. Hadley
HENNIGAN, BENNET & DORMAN
865 South Figueroa Street, Suite 2900
Los Angeles, California 90017
(216) 694-1200 - Telephone
(216) 621-1234 - Facsimile