**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MINNESOTA**

| | | |
|---|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY, | : | |
| Plaintiffs, | : | Civil Action No. 01-CV-1781 (JRT/FLN) |
| vs. | : | |
| AVERY-DENNISON CORPORATION, | : | |
| Defendant. | : | |

# DECLARATION OF JOHN W. CORNELL IN SUPPORT OF OPPOSITION TO MOTION TO ENFORCE PARTIES' DAMAGES AGREEMENT

I, John W. Cornell, declare and state as follows:

1. I am Associate Patent Counsel for Avery Dennison Corporation ("Avery") in Mentor, Ohio. Part of my responsibilities for Avery include oversight of the litigation that 3M filed against Avery for infringement of the '930 patent in connection with the EZ Film products. I make this Declaration in support of Avery's Opposition to 3M's Motion to Enforce the Parties' Damages Agreement and for Judgment in the Amount of $5,987,062.00. I have personal knowledge of the facts set forth herein, and if called upon to testify, I could and would competently testify as to these facts.

2. Besides the litigation between 3M and Avery over infringement of the '930 patent in the United States, 3M sued an Avery affiliate – Avery Dennison Materials Nederland B.V. – in the Netherlands for infringement of the European counterpart to the '930 patent. The Netherlands case is proceeding, and a decision by the trial court is expected within the next 30 days. True and correct copies of English translations of the relevant pleadings are attached as Exhibits 1A to 1C.

3. Between 2001 and 2006, Avery sold its EZ liner products to end customers in the United States – primarily "converters" who print the film and provide the final product to end users. During this period, Avery also sold EZ liner products to affiliates in Europe, Latin America, and Asia. Avery's affiliates are different companies, incorporated under the laws of different nations. In some cases, these affiliates have provided enhancements to the products before reselling to end users overseas. For example, overseas affiliates have adjusted the width and length of the film to conform to customer standards or metric measurements, which are common overseas. In other circumstances, Avery sold the film and liner separately to overseas affiliates. The overseas affiliates then applied their own adhesive and sold the completed product. Finally, overseas affiliates have provided training with the sale of EZ liner products, and conducted validation testing to meet customer requirements, which may be different for European customers. All this work is done outside the United States. With these value added services and enhancements, most overseas affiliates have been able to re-sell EZ liner products at a higher price than Avery receives for the sale of the EZ liner products to the overseas affiliates.

4. Regardless of what the overseas affiliate do to the EZ liner product before resale to enhance value, and regardless of the price received by the overseas affiliate, Avery's total revenue is limited to the sale amount received from the overseas affiliate. In other words, any difference between the cost the overseas affiliate pays Avery for the EZ liner product, and the price that the affiliate receives from the overseas customer, is the affiliate's profit, not profit to Avery.

5. In an April 14, 2002 email from Roderick Dorman to Kurt Glitzenstein, Avery provided sales figures for Avery's EZ products in Q1 of 2002. It also provided projected revenue figures. Those figures show the revenue received by Avery, not revenue received by overseas affiliates.

6. My understanding of the April 29, 2002 agreement between 3M and Avery

is that the 20% royalty was intended to compensate 3M fully for any infringement found in this case. The parties did not intend or contemplate additional damages in the form of interest payments. Also, I understand that the parties intended the 20% royalty to apply to the price received by Avery, not the price received by foreign affiliates.

7. Attached as Exhibit 2 is a true and correct copy of an April 25, 2002 email from Gary Lee Griswold, Chief Intellectual Property Counsel to 3M, to Arthur B. Moore, Chief Intellectual Property Officer to Avery.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 15th day of January, 2007 at Mentor Ohio.

John W. Cornell

John W. Cornell