patent in suit.

As the further documents in the proceedings are less close, the claims of the main request are novel.

## IV Main Request, inventive step

The closest prior art is D1 since this document solves the same problem as the present invention, namely the prevention of entrapped air bubbles, and solves it by the same means, namely the provision of microchannels in the adhesive surface. The skilled man who has to put the teaching of D1 into practice inevitable has to decide how many channels he is going to inscribe in the adhesive surface, and thus how large the remaining "contact" surface will be. Since a firm final bond is desired in D1, the surface available for bonding must be not too small. D1 indicates in the examples that the film is treated with a heated roller in order to obtain a firm bond without entrapped air, see also page 2 lines 22-26 where it is indicated that - under the influence of heat and pressure - a closed adhesive interface should be formed. The more channels there are - and thus the lower the "contact" surface is going to be- the more difficult it will be to close them all in order to obtain a homogeneous adhesive interface, and this also will lead the skilled person to a contact surface that is not too small. The skilled man will thus be led to design a sheet wherein the contact surface of the adhesive will be well over 35 % of the total surface. Note also that there is no evidence in the patent that the value of 35 % is a sharply defined limit. Claim 1 of the main request thus does not involve an inventive step and this request cannnot be allowed.

## V First auxiliary request

**Rule 71a EPC** This request was entered by the Patentee in the course of the oral proceedings. Claims 1 and 9 of this request were obtained by inclusion of the subject-matter of claim 8 as granted in the claims 1 respectively 10 of the patent as granted. A new request based exclusively on a combination of claims of the patent as granted cannot surprise the Opponent and its introduction during oral proceedings is allowable under Rule 71a EPC. Claim 14 of this request is identical to claim 13 of the third auxiliary request filed with Patentees letter dated 29-03-2005 and thus also cannot surprise the Opponent. The Opposition Division therefore uses its discretion to admit this first auxiliary request in the procedure.

**Article 123 EPC** With regard to claim 14, the requirements of this article are met since paragraphs [0042] and [0052] provide sufficient support.

**Article 84 EPC** Said claim also meets the requirements of Article 84 EPC. The passages [0042] in connection with [0044] and [0048] make clear that the "contact area" in this claim indicates the surface of the lands, and thus the total surface between the ridges, regardless of the area occupied by the depressions. It is further clear that the "maximum difference of less than 45 m in surface planar dimension" refers to the difference in height between the lands and the ridges, because the passage [0052] allows a depth of the depression largely exceeding the value of 45 µm; the depth of the depression clearly cannot be added to the height of the ridges in order to calculate the "maximum difference in surface planar dimension".

**Novelty** The subject-matter of claims 1-13 is clearly novel, see the discussion of claim 1 of the main request. The subject-matter of claim 14 is novel because D1 does not disclose the presence of depressions as well as ridges in the liner.

**Inventive step** Again D1 is the closest prior art here. The proviso that the topography of the adhesive surface is maintained "for a time effective to allow exhaustion of fluids .... " does not necessarily mean that the topography is maintained for a noticeable time after application of the sheet to the substrate, as argued by the Patentee. It reads as well on maintaining said topography from the moment in which the liner is removed from the adhesive surface to the moment in which the sheet is finally fixed to the substrate by firm pressure with simultaneous removal of air bubbles. D1 mentions that the structure with microchannels also *facilitates the elimination of entangled* (= entrapped) *air* and this implies a method in which the sheet is first fixed lightly, with entrapment of some air bubbles, followed by firm pressing to remove the air bubbles. D1 thus discloses at least one embodiment meeting the conditions of former claim 8. Selecting a contact area of at least 35 % is well within reach of the skilled man as discussed above with respect to claim 1 of the main request, and the selection of a maximum contact area of 99 % is not inventive for the same reasons. The subject-matter of claims 1 and 8 of the first auxiliary request thus does not involve an inventive step, and this request cannot be allowed.

**VI Second auxiliary request**

**Article 123 EPC** As mentioned above, the patent as granted, and the PCT application, clearly disclose an embodiment in which the liner is provided with depressions in the lands and the adhesive layer accordingly is provided with pegs extending above the contact surface, see [0042] and [0052]. The presence of microchannels in the adhesive surface and of ridges on the liner is mentioned throughout the description, see inter alia paragraphs [0042] to [0050]. The range of 35 to 99 % of the contact area is disclosed in paragraph [0048]. The amendments do not extend the scope of the claims and the claims of the second auxiliary request meet the requirements of Article 123 EPC.

**Novelty** Novelty is evident, see the earlier discussion of D1 and D18.

**Inventive step** The embodiment now claimed provides two effects: not only a good exhaustion of air from the adhesion interface, but also at least repositionability of the sheet. If the upper surface of the pegs consists of adhesive, the sheet will be merely repositionable, and if the surface consists of non-adhesive material the sheet will be slideable. The claims of this request cover both possibilities.

D1 was discussed above and shows one of these effects, namely the exhaustion of air, and one of the technical features, namely the microchannels.

D3 forms part of the prior art under Article 54(2) EPC and discloses pressure sensitive adhesive sheets with a non-adhesive liner. The liner is provided with depressions and the adhesive surface is correspondingly provided with pegs ("square truncated pyramids"), with a height of 3 to 50 µm, see figures 1 and 2, page 7 paragraphs [0020] and [0021], page 8 line paragraph [0024]. The effects are that the sheet is repositionable and that air entrapped between the adhesive layer and the substrate can easily be removed, see page 10 paragraphs [0041] and [0042], and further paragraphs [0003], [0005], [0006], [0008] and [0009]. D3 thus discloses both effects and one of the technical features of the claims of the 2nd auxiliary request, namely the provision of pegs on the adhesive.

It is acccepted practice of the EPO to select the document having the most of the effects and the technical features in common with the claims under discussion as closest prior art for discussing the inventive step. In the present case that is document D3.

The comparative examples 10, 12, 14 and 16 of the patent in suit show an adhesive sheet with only pegs (glass filled) which has a very good slideability but does not prevent entrapment of air, as shown by the rating of "poor" in the hot application/reapplication test. This goes counter to the teaching of D3 and the problem to be solved would be to make

pressure sensitive adhesive sheets having both good slideability/repositionability and air exhaustion. In view of the assertion in D3 that the pegs/truncated pyramids do allow the exhaustion of air, a skilled person will be led to solve the problem by altering the shape and/or number of the pegs. Alternatively, in view of D1 and D18, he might be led to change from a structure with pegs to a structure as shown in according to D18 with parallel ridges and channels, because D18 promises repositionability and the channels might be assumed to allow air exhaustion on the basis of common sense or on the basis of the teaching of D1. The skilled man would not necessarily be led to combine the teaching of D3 and D1 in such a way as to obtain a pressure sensitive adhesive sheet showing both pegs and microchannels. Only with hindsight would such a combination be seen as the straightforward solution that would offer itself to the skilled worker.

The subject-matter of the claims of the second auxiliary request such seems to be not only novel but also to involve an inventive step. As the description has been amended so as to agree with the claims and as the other requirements of the EPC are also met, the second auxiliary request can be allowed.

************************

**Article 106**
**Decisions subject to appeal**

(1) An appeal shall lie from decisions of the Receiving Section, Examining Divisions, Opposition Divisions and the Legal Division. It shall have suspensive effect.

(2) An appeal may be filed against the decisions of the Opposition Division even if the European patent has been surrendered or has lapsed for all the designated States.

(3) A decision which does not terminate proceedings as regards one of the parties can only be appealed together with the final decision, unless the decision allows separate appeal

(4) The apportionment of costs of opposition proceedings cannot be the sole subject of an appeal.

(5) A decision fixing the amount of costs of opposition proceedings cannot be appealed unless the amount is in excess of that laid down in the Rules relating to Fees.

**Article 107**
**Persons entitled to appeal and to be parties to appeal proceedings**

Any party to proceedings adversely affected by a decision may appeal. Any other parties to the proceedings shall be parties to the appeal proceedings as of right.

**Article 108**
**Time limit and form of appeal**

Notice of appeal must be filed in writing at the European Patent Office within **two months** after the date of notification of the decision appealed from. The notice shall not be deemed to have been filed until after the fee for appeal has been paid. Within **four months** after the date of notification of the decision, a written statement setting out the grounds of appeal must be filed.

**Further information concerning the filing of an appeal**

(a) The appeal is to be filed with the European Patent Office either at its seat in Munich, at its branch at The Hague or at its Berlin sub-office. The postal addresses are as follows:

(i) European Patent Office
D-80298 Munich
Germany
(Telex: 523656 epmu d)
(Fax: +49 89 2399-4465)

(ii) European Patent Office
Branch at The Hague
Patentlaan 2
Postbus 5818
NL-2280 HV Rijswijk (ZH)
Netherlands
(Telex: 31651 epo nl)
(Fax: +31 70 340-3016)

(iii) European Patent Office
Berlin sub-office
D-10958 Berlin
Germany
(Fax: +49 30 25901-840)

(b) The notice of appeal must contain the name and address of the appellant in accordance with the provisions of Rule 26(2)(c) EPC, and a **statement** identifying the decision which is impugned and the extent to which amendment or cancellation of the decision is requested (see Rule 64 EPC). The notice of appeal and any subsequent submissions stating the grounds for appeal must be signed.

(c) Notice of appeal must be **filed in writing** (typewritten or printed (Rule 36(2) EPC), by telegram, telex or fax (Rule 36(5) EPC; OJ EPO 6/89, 219-225; OJ EPO 9/89, 396)).

(d) The fee for appeal is laid down in the Rules relating to Fees. The equivalents in the national currencies in which the fee for appeal can be paid are regularly published in the Official Journal of the European Patent Office under the heading "Guidance for the payment of fees, costs and prices".