Rechtbank 's-Gravenhage
Zitting 10 november 2006
Rolnummer 2005/3435

# PRODUCTIE 29

SOLV.

Trial - Day 3 Calhoun, Meixner, Sher

UNITED STATES DISTRICT COURT DISTRICT OF MINNESOTA
------------------------------------------------------------ )
3M Innovative Properties )Company and Minnesota Mining)
and Manufacturing Company, ) File No. 01cv1781 ) (JRT/FLN)
Plaintiffs, ) )
vs. ) Minneapolis, Minnesota ) December 14, 2005
Avery Dennison Corporation, ) 9:15 A.M. ) Volume III
Defendant. ) )
------------------------------------------------------------ BEFORE THE HONORABLE JOHN R. TUNHEIM
UNITED STATES DISTRICT COURT JUDGE
(TRIAL - VOLUME III )
APPEARANCES
For the Plaintiffs: JUANITA R. BROOKS, ESQ.
JONATHAN E. SINGER, ESQ.
JOHN C. ADKISSON, ESQ.
KEVIN RHODES, IN-HOUSE COUNSEL
For the Defendant: RODERICK G. DORMAN, ESQ.
LAWRENCE HADLEY, ESQ.
DAVID P. PEARSON, ESQ.
JOHN W. CORNELL, IN-HOUSE COUNSEL
Court Reporter: KRISTINE MOUSSEAU, CRR-RPR
LORI A. SIMPSON, RDR-CRR
1005 United States Courthouse
300 Fourth Street South
Minneapolis, Minnesota 55415

Q. That's the written description before the claims, right?
A. Yes.
Q. And there is a background section where you describe the advantages of the '397 patent, right?
A. Yes.
Q. And in that section describing the advantages of the '397 patent, one of the things that you told the patent office about in the application for the '397 patent was an earlier patent developed back in 1978 or so where inventors had taken a liner for a pressure sensitive adhesive and created ridges on it to solve the air bleed problem, right?
A. I believe it's in there, yes.
Q. And so you knew it was no secret at the time that you applied for what became the '397 patent, and Dr. Calhoun applied for what became the '930 patent, the patent that is at issue here, that making ridges on the surface of a liner would impart grooves or channels in the pressure sensitive adhesive of a film to solve an air bleed problem, right?
A. Yes.
Q. And that was something that was known in the art, correct?
A. Yes.
Q. So when Dr. Calhoun or Mr. Sher -- well, let me back up.



When you undertook to take the Controltac 2 liner and to put an embossed pattern on it to create the ridges, whether you were -- whether you thought you would be successful in making those ridges or not, you knew if you were successful that in all likelihood, you could improve the performance of Controltac 2 by giving it air bleed characteristics, right?
A. That's why we did the work, yes.
Q. I'm sorry? That's why you did the work?
A. Yes.
Q. All right. So let me just make sure I understand this. You knew that a Controltac 2 liner gave you positionability, right?
A. Yes.
Q. And this is back in the 1995 time frame, right?
A. Yes.
Q. And you knew that installers of these graphic films liked to be able to put them on easily, right?
A. Yes.
Q. And you knew that just like anybody hanging wallpaper, you want to be able to -- installers would want to be able to position this material, right?
A. Yes.
Q. And you knew that you could put these large scale graphic films on easier if you could get air bubbles out of them, right?
A. Yes.
Q. And you knew, it was no secret to anybody, that air bubbles can be aesthetically, you know, displeasing, right?
A. Yes.
Q. Installers, people that pay for these films to put them on the sides of trucks want them to look pretty, right?
A. Yes.
Q. And you knew that if you could be successful in embossing a Controltac 2 liner that had the depressions filled with glass beads, you would solve this problem, right? You could get the air out?
A. Yes.
Q. And that was no secret to anybody, was it?
A. No.
Q. It was pretty obvious, right?
A. Yes.
MR. HADLEY: That's all I have.
THE COURT: Is there any redirect examination, Mr. Singer?
MR. SINGER: Very briefly, Your Honor.
THE COURT: Go ahead.





REDIRECT EXAMINATION

BY MR. SINGER:
Q. Hello, Mr. Meixner.
A. Hello.
Q. Did you believe you could make a multiple embossed liner to achieve the goals of air egress and positionability together?
A. No.
Q. Regardless of how desirable it might be?
A. Yes.
Q. Now, I would like to show you a couple pages from your notebook that Mr. Hadley showed you, real quickly.
A. Okay.
Q. And I want to go to the page from March.
And, Your Honor, we had a redacted exhibit that was shown to the jury or published. We would simply move that we substitute the full, the full copy of the page here in the actual notebook.
MR. HADLEY: Your Honor, I just want to make it clear that the redaction was not something that Avery did. That was produced to us by 3M in that redacted format. If they want to now disclose the whole document, we're fine with that.
THE COURT: It will be admitted without the redaction.