**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

| | |
|---|---|
| 3M INNOVATIVE PROPERTIES COMPANY and MINNESOTA MINING AND MANUFACTURING COMPANY,<br><br>Plaintiffs,<br><br>v.<br><br>AVERY-DENNISON CORPORATION,<br><br>Defendant. | Civil No. 01-1781 (JRT/FLN)<br><br>**MEMORANDUM OPINION AND ORDER ON PLAINTIFFS' MOTION TO ENFORCE THE PARTIES' DAMAGES AGREEMENT** |

Jonathan E. Singer, John C. Adkisson, and Sara Cotton, **FISH & RICHARDSON PC, PA – MN**, 60 South Sixth Street, Suite 3300, Minneapolis, MN 55402; Juanita R. Brooks, **FISH & RICHARDSON - SAN DIEGO**, 12390 El Camino Real, San Diego, CA 92130; Kevin H. Rhodes, **3M COMPANY**, P.O. Box 33427, St. Paul, MN 55113-3427; for plaintiffs.

Lawrence M. Hadley and Roderick G. Dorman, **HENNIGAN BENNETT & DORMAN**, 601 Figueroa Street South, Suite 3300, Los Angeles, CA 90017; David P. Pearson, **WINTHROP & WEINSTINE, PA**, 225 South Sixth Street, Suite 3500, Minneapolis, MN 55402-4629; for defendant.

This matter is before the Court on a motion by 3M Innovative Properties Company and Minnesota Mining and Manufacturing Company (collectively "3M") to enforce the parties' damages agreement and for judgment in the amount of $5,897,062. For the reasons explained below, the Court grants in part and denies in part 3M's motion.

14

**BACKGROUND**

On September 27, 2001, 3M brought this lawsuit against Avery Dennison Corporation ("Avery"). On December 21, 2005, a jury found that Avery infringes claims 1 through 5 of 3M's U.S. Patent No. 5,897,930 ("the '930 patent") by making and selling its EZ Series Fleet Marketing Film ("EZ Film"). Specifically, the jury found that Avery infringed the '930 patent literally, under the doctrine of equivalents, and by inducing others to infringe. The jury rejected all of Avery's invalidity defenses. Based on the jury verdict, the Court entered judgment in favor of 3M on December 23, 2005, stating that judgment is entered for plaintiffs and against defendant and that plaintiffs shall recover the costs of their action from defendant.

3M now moves for enforcement of the parties' damages agreement under Federal Rule of Civil Procedure 69(a). Both parties agree that the damages agreement is a binding contract, but the parties offer differing interpretations of this contract. The damages agreement states in relevant part:

> As a final effort to get a deal done, and to avoid unnecessary damage expert, discovery, and trial costs to both Avery and to 3M, Avery will stipulate to a twenty percent (20%) royalty applicable to Avery's total sales of EZ liner products (subject to an appropriate accounting) in the event 3M proves infringement by Avery of one or more valid, enforceable claims of the '930 patent.

(Cotton Decl. Ex. 3.) The total requested by 3M is $5,897,062, which includes $5,486,177 in damages, $172,069 in pre-judgment interest, and $238,816 in post-judgment interest.

## ANALYSIS

3M moves for enforcement of the parties' damages agreement under Federal Rule of Civil Procedure 69(a). However, a motion for enforcement under Rule 69(a) is only appropriate after a money judgment is entered. Rule 69(a) provides a "[p]rocess to enforce a judgment for the payment of money." Fed. R. Civ. P. 69(a). The proper procedure is for the Court to construe the damages agreement, decide on an appropriate damages award, and enter a money judgment. If upon entry of a money judgment Avery does not pay, then a motion for enforcement of the judgment by 3M would be appropriate. Nevertheless, the parties agree that the Court has jurisdiction to resolve disputes regarding the damages agreement. The Court addresses below each of the disputes regarding the damages agreement.

### I. Transactions With International Affiliates In Calculating Avery's Total Sales

The first issue is whether Avery should pay the 20 percent royalty on sales of EZ Film by its international affiliates. When Avery sells its product to the international affiliates it charges those affiliates a lower price than it charges its customers in the United States. 3M characterizes the transactions between Avery and its international affiliates as "internal transfers." Avery emphasizes that the international affiliates are separate companies, which are incorporated under different laws of different countries.

3M argues that the lower "transfer price" should not be used to calculate the royalty, but rather the royalty should be based on the price ultimately charged to

customers by international affiliates.[1] Avery argues that the ultimate price charged by international affiliates is irrelevant because Avery only gets revenue from its direct transaction with the affiliates. Avery further argues that the international affiliates often increase the value of the product prior to selling to the customer. For example, the international affiliates might provide customized sizing of the film, while sometimes the affiliates merely resell the film at a profit after applying their own adhesive.

The Court is not persuaded by 3M's attempt to characterize the sale of film by Avery to its international affiliates as "internal transfers." The international affiliates are companies separate from Avery, and the damages agreement refers to "Avery's" total sales. The Court therefore concludes that Avery had $21,142,607 in total sales.

## II. Pre-judgment and Post-judgment Interest

3M next argues that it is entitled to interest in addition to the 20 percent royalty on Avery's total sales. Avery argues that the damages agreement provided for the total amount that Avery must pay 3M.

According to 3M, the 20 percent royalty in the damages agreement simply reflects an agreement on the royalty rate and cannot preclude 3M's statutory right to interest. The patent statute provides,

> Upon finding for the claimant the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer,

[1] Under 3M's interpretation, Avery had $27,430,885 in total sales. Under Avery's interpretation, Avery had $21,142,607 in total sales. Application of the 20 percent royalty to these competing figures results in a difference in damages of $1,257,656.

> together with interest and costs as fixed by the court. When the damages are not found by a jury, the court shall assess them.

35 U.S.C. § 284.

In response, Avery argues that the parties made a business decision to enter into a damages agreement in lieu of a judicially adjudicated damages award based on statute. The stipulation is silent on interest, and Avery argues that 3M should have included reference to interest if it intended interest on top of the royalty. Avery further argues that a 20 percent royalty is "extraordinarily high" and that this is evidence that any entitlement to interest was intended to be included in the 20 percent rate. However, 3M explains that it believes it could have received a much higher damages award than a 20 percent royalty based on lost profits, conveyed goods, and price erosion.

3M must be fully compensated for Avery's infringement. *See Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.*, 807 F.2d 964, 967 (Fed. Cir. 1986) ("The normal procedure . . . is to award prejudgment interest from the date of infringement to the date of payment, since only such award will satisfy 'Congress' overriding purpose [in section 284] of affording patent owners complete compensation.'"). However, the Court is persuaded that the damages agreement entered into by the parties was intended to fully compensate 3M. The Court finds that the 20 percent royalty rate encompasses all pre-judgment interest to which 3M is entitled.

Finally, the Court concludes that 3M does not have a right to post-judgment interest on the damages award until the Court quantifies the damage award and enters a money judgment. Under federal law, "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court." 28 U.S.C. § 1961; *see Happy Chef Sys., Inc.*

*v. John Hancock Mut. Life Ins. Co.*, 933 F.2d 1433, 1437 (8th Cir. 1991) ("Section 1961(a) does not provide for interest until a money judgment has been entered."). As such, post-judgment interest on the damages award shall begin to accrue upon entry of a money judgment by the Clerk of Court.[2]

**ORDER**

Based on the foregoing, all the records and files herein, **IT IS HEREBY ORDERED** that:

1. 3M's Motion to Enforce the Parties' Damages Agreement and for Judgment in the Amount of $5,897,062 [Docket No. 402] is **GRANTED IN PART** and **DENIED IN PART**. The Court determines that Avery must pay 3M a sum in the amount of $4,228,521. This sum reflects the parties' agreed upon 20 percent royalty rate applied to the Court's finding of Avery's total sales in the amount of $21,142,607. Post-judgment interest on the damages award shall begin to accrue upon entry of a money judgment by the Clerk of Court.

2. The Clerk is directed to **ENTER JUDGMENT** against defendant Avery and in favor of plaintiffs 3M in the amount of $4,228,521.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: April 24, 2007
at Minneapolis, Minnesota.

s/ John R. Tunheim
JOHN R. TUNHEIM
United States District Judge

[2] The Judgment entered on December 23, 2005 states that plaintiffs shall recover from defendant the costs of the action. As such, post-judgment interest on the costs of action began accruing on December 23, 2005.